IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHAMROCK HOLDINGS OF CALIFORNIA, INC., SHAMROCK CAPITAL ADVISORS, INC., EUGENE I. KREIGER, GEORGE J. BUCHLER and BRUCE J. STEIN, | ) ) ) ) ) | |
| | ) | Civil Action No. 04-1339-SLR |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| AVIE ARENSON, SELK, LLC and LAUREL EQUITY GROUP, INC. | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' REPLY TO**
**SUPPLEMENT ON MOTION TO REMAND**


MORRIS, NICHOLS, ARSHT & TUNNELL
A. Gilchrist Sparks, III (#467)
Kenneth J. Nachbar (#2067)
S. Mark Hurd (#3297)
Samuel T. Hirzel (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
   Attorneys for Plaintiffs Shamrock Holdings   of
California, Inc., Shamrock Capital   Advisors, Inc., Eugene
I. Krieger, George J.   Buchler and Bruce J. Stein

OF COUNSEL:

GREGORY P. JOSEPH LAW OFFICES LLC
Gregory P. Joseph
Pamela Jarvis
805 Third Avenue, 31st Floor
New York, NY 10022
(212) 407-1200


March 4, 2005

Plaintiffs respectfully submit this reply to Defendants' February 22, 2005 "Supplement" (D.I. 30) concerning the principal place of business ("PPB") of NACA, a member and 70% owner of Defendant SELK, and Sallervale, a member and 75% owner of Defendant Laurel. *See* D.I. 25, Exhs. H and I ¶¶2-3, 5.[1]

Defendants have made four unsuccessful attempts to carry their burden of "demonstrating that [they have] met the requirements for removal." *Holly Farms Corp. v. Taylor*, 722 F. Supp. 1152, 1156 (D. Del. 1989) (emphasis added). The defects in the first three attempts -- filed prior to the Court's Memorandum Order ("Mem. Order;" D.I. 29) -- can be summarized as follows:

- Defendants' October 6, 2004 Notice of Removal (D.I. 1) -- signed pursuant to Rule 11 -- failed, *inter alia*, to identify all members of SELK and Laurel and the citizenship of each. The Notice of Removal also asserted that one or more members of Laurel were citizens of Belgium, but when pressed by Plaintiffs for more specifics, Defendants admitted this was untrue. Answering Brief (D.I. 24) at 2 n.2.

- Defendants' October 29, 2004 Responses to Plaintiffs' Interrogatories (D.I. 11-13) -- verified under penalty of perjury -- purported to identify the members of SELK and Laurel.[2] However, they objected to answering Interrogatories seeking essential information concerning citizenship. For example, Defendants stated that the natural person members of SELK and Laurel were "residents" of New York and New Jersey, but did not state whether they were U.S. citizens or where they were domiciled. *See, e.g.*, Buchler Dec. (D.I. 20) Exhs. E at 3, G at 4-6, and H at 4-6. SELK asserted that NACA is a British Virgin Islands ("BVI") corporation and that it conducts business in the BVI (*id.* Exh. G at 3, 8), but then withdrew the latter assertion. Laurel stated that Sallervale is a Bahamian corporation, but was silent on where it conducts business. *Id.* Exh. H at 3, 8.

- Defendants' Declarations submitted with their December 6, 2004 Answering Brief (D.I. 25) -- also verified under penalty of perjury -- asserted that NACA's PPB is in Tortola, BVI, and that Sallervale's PPB is in Nassau, Bahamas. As pointed out in Plaintiffs' Reply, the governing documents of NACA and Sallervale prohibit these entities from having their PPBs -- within the meaning of the Third Circuit's "center of corporate activities" test -- in their respective jurisdictions of incorporation. *See* Mem. Order (D.I. 29) at 4. In the Supplement, all references to these alleged PPBs have disappeared.

---

[1]  *See* defined terms used in Plaintiffs' Opening Brief (D.I. 16) and Reply (D.I. 27).

[2]  The identity of Laurel's members remains unclear. Plaintiffs have just discovered the website of Lakestar Properties ("Lakestar"), operated by Laurel members Mark and Chesky Frankel. *See* http://www.lakestarproperties.com/profile.htm. Lakestar states that it is an investor and joint venturer in ALH. *See* http://www.lakestarproperties.com/ventures.htm. This shows that Lakestar is part of Laurel's ownership structure with respect to ALH, such that Lakestar's citizenship would bear directly on diversity. According to official state records (*see* Exh. A hereto), Lakestar is a New Jersey LLC. Defendants have never disclosed the existence of Lakestar, let alone the identity or citizenship of its members.

Like its three predecessors, the Supplement (D.I. 30) abjectly fails to carry Defendants' burden. For whatever reason, Defendants have not provided the information expressly sought by this Court regarding the PPBs of NACA and Sallervale. *See* Mem. Order (D.I. 29) at 11-12. This reticence is Defendants' prerogative, but with it comes the unavailability of federal jurisdiction. As the Seventh Circuit stated in a case where, as here, defendant had multiple opportunities to establish diversity, "[w]e gather than [defendant] wants to keep its ownership secret. That is its owners' right, but one consequence is lack of access to federal courts under the diversity jurisdiction." *Meyerson v. Showboat Marina Casino P'ship*, 312 F.3d 318, 321 (7th Cir. 2002).

The most glaring defect in the Supplement is its total failure to assert <u>any</u> PPB for NACA or Sallervale. As this Court has ruled, Defendants' previous averments as to PPB -- made "in a conclusory fashion" without factual support -- were insufficient to carry Defendants' burden. Mem. Order (D.I. 29) at 11. Given that Defendants themselves are now <u>unwilling to make even a conclusory assertion</u> regarding the PPBs of NACA and Sallervale, Defendants cannot meet the minimal pleading requirements of 28 U.S.C. §1446(a), let alone carry their burden on this motion. Having abandoned but not replaced their assertions that the PPBs of NACA and Sallervale are the BVI and the Bahamas, respectively, Defendants have created a gaping vacuum in the already "negligible" evidence of record. *See* Mem. Order (D.I. 29) at 11.[3]

---

[3] The Supplement (D.I. 30 at 1) asserts that NACA and Sallervale have not made any investments in or conducted any business in California or Delaware. *See* Declaration of Mark Cohen and Isaac M. Neuberger (D.I. 30) ¶4. Such negative, conclusory assertions cannot carry the removing party's burden. *See, e.g., Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (removal notice asserting that corporate defendants were <u>not</u> citizens of California was inadequate; litigant invoking diversity jurisdiction should <u>affirmatively state</u> actual citizenship of parties so that existence of complete diversity can be confirmed); *Lamm v. Bekins Van Lanes Co.*, 139 F. Supp. 2d 1300, 1314-15 (M.D. Ala. 2001) (removal notice must <u>distinctly and affirmatively</u> allege each party's citizenship, including PPBs of business of all corporate parties); *McGovern v. Am. Airlines, Inc.*, 511 F.2d 653, 654 (5th Cir. 1975) (where plaintiff was citizen of South Dakota, plaintiff's allegation that defendants were incorporated in and had their PPBs "in states other than South Dakota" was inadequate). Moreover, the Supplement carefully omits any indication of whether Defendants' denial that they "conducted any business in California or Delaware" refers to the kind of activities that determine PPB under *Kelly v. U.S. Steel Corp.*, 284 F.2d 850, 853-54 (3rd Cir. 1960). Given Defendants' track record of repeatedly providing incomplete and inconsistent information and changing and withdrawing their

<span style="float:right">(continued . . .)</span>

An equally fatal defect in the Supplement is Defendants' continued withholding of essential information concerning where NACA and Sallervale conduct their day-to-day business activities. Even before this information was sought by the Memorandum Order (D.I. 29 at 11-12), Defendants were well aware of the Third Circuit's "center of corporate activities" test, as set forth in *Kelly*, 284 F.2d at 853-54. *See* Plaintiffs' Reply (D.I. 27) at 11-12. Yet the supplement ignores both the *Kelly* test and the Court's request (D.I. 29 at 11) for, "detail as to the corporations' business activities, for example, what business affairs are conducts and where."

The Supplement (D.I. 30 at 1) states that NACA and Sallervale make "equity and debt investments worldwide." *See* Cohen and Neuberger Decs. (D.I. 30) ¶3. But the Supplement is utterly silent on where the day-to-day activities and management of these worldwide investment companies are located. Businesses of this kind naturally entail such activities as identification and screening of potential investment opportunities; negotiation of preliminary and final terms; due diligence; retention and supervision of legal counsel and other advisors; participation in closings; tracking and reporting of financial results; exercise of equity voting rights; preparation of tax documents; analysis of potential dispositions; collection of capital for additional and new investments; negotiation of credit arrangements; management of bank accounts and currency matters; and implementation of distributions. Somewhere there must be human beings who perform such tasks for NACA and Sallervale, but Defendants refuse to say where they are.

Instead, the Supplement (D.I. 30 at 1) emphasizes where "final corporate decisions are made" -- at most a secondary factor. *See* Cohen and Neuberger Decs. (D.I. 30) ¶5.[4] Beyond that, the

---

(. . . continued)
    sworn statements of "fact," Defendants' sweeping negative assertions in the Supplement -- unsupported by any documents or other corroborative evidence -- are particularly unworthy of credence.

[4]    *See Kelly*, 284 F.2d at 854 (Third Circuit looks to "headquarters of day-to-day corporate activity and management"); *Mennen Co. v. Atl. Mut. Ins. Co.*, 147 F.3d 287, 292-93 (3rd Cir. 1998) (corporation with U.S. affiliates but no U.S. employees had PPB in New Jersey; Third Circuit "stress[es] pragmatic facts of corporate life" and uses "consistently functional approach" that focuses on "actual
                                                              (continued . . .)

3

Supplement points to several loans by NACA and Sallervale, made in unspecified amounts at unspecified

times, to entities in unspecified jurisdictions that own and/or owned real estate in Arizona, Ohio and New

York. Cohen and Neuberger Decs. (D.I. 30) ¶4. Even more inexplicably, Mr. Neuberger emphasizes that

he, as counsel and agent for SELK, was typically at his office in Baltimore when he received instructions

from and dispensed advise to SELK regarding ALH. Neuberger Dec. (D.I. 30) ¶¶5-6. None of this bears

on the PPBs of NACA and Sallervale.[5] Indeed, were such factors relevant, the evidence of record would

point to NACA and Sallervale has having their PPBs in California, based on the claims of SELK and

Laurel that their substantial equity and debt investments in ALH were entirely controlled by Plaintiffs,

who live and operate in California. *See, e.g.,* Buchler Dec. (D.I. 20) ¶¶13-14 and Ex. A ¶¶76-77, 79, 83-

86, Answering Brief (D.I. 24) at 13-16).[6]

        In sum, the Supplement exacerbates the defects in the already "negligible" evidence of

record before this Court. Therefore, remand and Plaintiffs' costs and expenses should be granted.

---

(. . . continued)
> day-to-day activities"); *Grand Union Supermkts. of the Virgin Is. v. H.E. Lockhart Mgmt., Inc.*, 316
> F.3d 408, 411 (3rd Cir. 2003) (*Kelly* "emphasized" that PPB "is not 'where . . . final decisions are
> made on corporate policy,' but rather where the corporation 'conducts its affairs'"); *Holly* 772 F.
> Supp. at 1157 (*Kelly* "explicitly rejected" the notion that PPB depends exclusively on location of the
> board and those who develop broad corporate policies).

[5]   *See Bel-Bel Int'l. corp. v. Cmty. Bank of Homestead*, 162 F.3d 1101, 1106 (11th Cir. 1998)
(corporation with sole investment in Florida did not have PPB there, even though, *inter alia*, it had
accountants and attorneys in Florida who monitored investment); *Vareka Inves. N.V. v. Am. Inv.
Props., Inc.*, 724 F.2d 907, 908, 910 (11th Cir. 1984) (corporation with sole investment in Florida did
not have PPB there, despite various connections with Florida, *e.g.*, final negotiation and closing of
investment, qualification as foreign corporation to transact business, appointment of resident agent,
maintenance of bank account, and continued representation by lawyer); *see also Mennen*, 147 F.3d at
293 (*Vareka* uses "total activities" test which synthesizes "center of corporate activities" and "nerve
center" tests).

[6]   Plaintiffs are <u>not</u> contending that the PPBs of NACA and Sallervale are in California -- Defendants
have consciously made a record that is patently inadequate to support any reasoned position on where
the PPBs of NACA and Sallervale might be. Plaintiffs are simply noting that, under Defendants'
approach in the Supplement, the operations of NACA and Sallervale have more connection to
California than to the other places implicitly suggested in the Supplement, *i.e.*, Arizona, Ohio, New
York or Baltimore.

MORRIS, NICHOLS, ARSHT & TUNNELL

_____
A. Gilchrist Sparks, III (#467)
Kenneth J. Nachbar (#2067)
S. Mark Hurd (#3297)
Samuel T. Hirzel (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
   Attorneys for Plaintiffs Shamrock Holdings    of
California, Inc., Shamrock Capital    Advisors, Inc., Eugene
I. Krieger, George J.    Buchler and Bruce J. Stein

OF COUNSEL:

GREGORY P. JOSEPH LAW OFFICES LLC
Gregory P. Joseph
Pamela Jarvis
805 Third Avenue, 31st Floor
New York, NY 10022
(212) 407-1200

March 4, 2005