**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SHAMROCK HOLDINGS OF CALIFORNIA, ) | |
| INC., SHAMROCK CAPITAL ADVISORS, ) | |
| INC., EUGENE I. KRIEGER, GEORGE J. ) | |
| BUCHLER and BRUCE J. STEIN ) | |
| ) | |
| **Plaintiffs** ) | |
| ) | **Civil Action No. 04-1339-SLR** |
| **v.** ) | |
| ) | |
| AVIE ARENSON, SELK, LLC, LAUREL ) | |
| EQUITY GROUP, LLC, J12ALH ) | |
| ASSOCIATES, A. ARENSON HOLDINGS, ) | |
| LTD. AND D.A. GARDENS, LTD. ) | |
| ) | |
| **Defendants** ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**THE FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF**

COZEN O'CONNOR
Sean J. Bellew (#4072)
David A. Felice (#4090)
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
(302) 295-2000
(302) 295-2013 (Fax)

THOMAS M. WOOD, IV
Neuberger, Quinn, Gielen, Rubin
& Gibber, P.A.
One South Street, 27th Floor
Baltimore, Maryland 21202-3201
(410) 332-8523 (Direct)
(410) 332-8564 (Fax)

Attorneys for Defendants

DATED: June 3, 2005

# Table of Contents

STATEMENT OF NATURE AND STAGE OF THE PROCEEDING .................................... 1

SUMMARY OF ARGUMENT ..................................................................................... 3

STATEMENT OF FACTS .......................................................................................... 5

    A. Arenson ..................................................................................................... 5
    B. Arenson Holdings and D.A. Gardens ........................................................... 6
    C. J12 Associates .......................................................................................... 7

ARGUMENT ........................................................................................................... 7

I.     Arenson Did Not Waive His Right to Object to Personal Jurisdiction ........................ 8

II.   Plaintiffs Have Failed To Establish That This Court Has Personal Jurisdiction Over
     Arenson, Arenson Holdings, D.A. Gardens and J12. ...................................................... 10

    A. Delaware's Long-Arm Statute Does Not Provide a Basis for Asserting Personal
       Jurisdiction Over Arenson, Arenson Holdings, D.A. Gardens and J12. ................... 10

       1. Arenson ............................................................................................. 13
       2. Arenson Holdings, D.A. Gardens and J12 ............................................. 17

    B. Arenson Is Not A Manager of ALH and Has Not Consented to Jurisdiction Under
       6 Del. C. § 18-109 ............................................................................................ 21

    C. J12 Is Not Subject To Personal Jurisdiction Because Its General Partner, A
       Delaware LLC, Is Subject to Jurisdiction Under 6 Del. C. § 18-105. .................... 25

III.  Because This Court Lacks Jurisdiction Over Arenson Holdings, D.A. Gardens and
     J12, Selk and Laurel Move to Dismiss the Amended Complaint For Failure To Join
     Necessary Parties. ..................................................................................................... 27

    A. Under Fed.R.Civ.P. 19(a), Arenson Holdings, D.A. Gardens and J12 are "necessary"
       parties but their joinder is not feasible. .......................................................... 27

    B. Under Fed.R.Civ.P. 19(b), "In Equity and Good Conscience," This Action Should
       Not Proceed Without Arenson Holdings, D.A. Gardens and J12 .............................. 30

    C. Since Joinder of All Class B Members Is Not Feasible, the Court Should Decline to
       Grant Declaratory Relief. ................................................................................. 33

CONCLUSION ..................................................................................................... 34

i.

# Table of Citations

<u>Cases</u>

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967)................................................... 34

*Aereos De Angola v. Ronair, Inc.*, 544 F. Supp. 858 (D. Del. 1982) ......................... 10

*Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F.Supp. 1458 (D.Del. 1991)............ 11

*Blue Ball Properties v. McClain*, 658 F. Supp. 1310 (D. Del. 1987) .......................... 11

*Boone v. Oy Partek Ab*, 724 A.2d 1150 (Del. Super. 1997) ......................................... 8

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)............................. 14, 15, 18, 20

*Carteret Savings Bank v. Shushan*, 954 F.2d 141 (3d Cir.1992).................................... 7

*Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963 (Del. Ch. 2000) ................. 17

*Delno v. Market Street Railway Co.*, 124 F.2d 965 (9th Cir. 1942) .............................. 34

*Delpro Co. v. Nat'l Mediation Board of the U.S.*, 509 F. Supp. 468 (1981)................. 34

*Gardiner v. Virgin Islands Water & Power Authority*, 145 F.3d 635 (3rd 1998) ................. 31, 32

*Greenly v. Davis*, 486 A.2d 669 (Del. Super. 1984)...................................................... 7

*Harmon v. Eudaily*, 407 A.2d 232 (Del. Super. 1979) .................................................. 7

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) .................. 14

*HMG/Courtland Properties, Inc. v. Gray*, 729 A.2d 300 (De. Ch. 1999).......... 4, 25, 26

*In re Daimlerchrysler Ag Securities Litigation*, 197 F. Supp. 2d 86 (D. Del. 2002)..................... 9

*Intel Corp. v. Silicon Storage Technology, Inc.*, 20 F.Supp.2d 690 (D.Del. 1998) ....................... 8

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ....................................... 14

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984)............................................... 15

*LaNuova D & B, S.p.a. v. Bowe Co.*, 513 A.2d 764 (Del.1986).................................... 10

*Marketing Products Management, LLC v. HealthandBeautyDirect.com*, 2004 WL 249581, *1
(Del. Super. Jan. 28, 2004) ......................................................................................... 17

*McGee v. International Life Insurance Co.*, 355 U.S. 220 (1957) ................................ 15

*Mellon Bank (East) PSFS, N.A. v. Farino*, 960 F.2d 1217 (3d Cir. 1992) ................... 14

*Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.*, 685 A.2d 724 (Del.
1996) ............................................................................................................................ 11

*Papendick v. Bosch*, 410 A.2d 148 (Del. 1979).......................................................... 17

ii.

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968)........................ 30, 32

*Reach & Associates, P.C. v. Dencer*, 269 F.Supp.2d 497 (D.Del. 2003) .................................... 11

*Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Productions*, 1991 WL 129174
(Del. Ch. July 10, 1991)........................................................................................................... 15

*Savini v. Sheriff of Nassau County*, 209 F. Supp. 946 (D. N.Y. 1962)......................................... 34

*Shaffer v. Heitner*, 433 U.S. 286, 212 (1977) ............................................................................... 17

*Werner v. Miller Technology Management, L.P.*, 831 A.2d 318 (Del. Ch. 2003)................. passim

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)........................................ 15, 16

*Wylain, Inc. v. Kidde Consumer Durables Corp.*, 74 F.R.D. 434 (D. Del. 1977) ....................... 27

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)............................. 14

**Statutes**

10 Del. C. §3104(c).............................................................................................................. passim

6 Del. C. § 18-101(10) .................................................................................................... 4, 22, 23

6 Del. C. § 18-105 ................................................................................................................ passim

6 Del. C. § 18-109 ................................................................................................................ passim

6 Del. C. § 3114 ............................................................................................................................ 26

**Rules**

Federal Rule of Civil Procedure 12(b)(2) .......................................................................... 2, 7, 27

Federal Rules of Civil Procedure 12(b)(7)........................................................................... passim

Federal Rules of Civil Procedure 19 ......................................................................................... 2

Federal Rules of Civil Procedure 19(b) ............................................................................... passim

N.Y. C.P.L.R. § 310(a) ................................................................................................................. 8

**Treatises**

Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1604, 41 ...................... 29, 30

Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d, § 1608................................. 31

iii.

# Exhibits

1    Declaration of Abraham Arenson

2    Declaration of Abraham Arenson on Behalf of A. Arenson Holdings, Ltd

3    Declaration of Abraham Arenson on Behalf of D. A. Gardens, Ltd

4    Declaration of Michael Jesselson on Behalf of J12ALH Associates

5    Article VI of Operating Agreement of ALH Holdings LLC

6    *Marketing Products Management, LLC v. HealthandBeautyDirect.com*,
     2004 WL 249581, *1 (Del. Super. Jan. 28, 2004).

7    *Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall
     Productions*,   1991 WL 129174 (Del. Ch. July 10, 1991).

iv.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHAMROCK HOLDINGS OF CALIFORNIA, ) | |
| INC., SHAMROCK CAPITAL ADVISORS, ) | |
| INC., EUGENE I. KRIEGER, GEORGE J. ) | |
| BUCHLER and BRUCE J. STEIN ) | |
| ) | |
| Plaintiffs ) | |
| ) | Civil Action No. 04-1339-SLR |
| v. ) | |
| ) | |
| AVIE ARENSON, SELK, LLC, LAUREL ) | |
| EQUITY GROUP, LLC, J12ALH ) | |
| ASSOCIATES, A. ARENSON HOLDINGS, ) | |
| LTD. AND D.A. GARDENS, LTD. ) | |
| ) | |
| Defendants ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

Defendants, Abraham (Avie) Arenson ("Arenson"), A. Arenson Holdings, Ltd.

("Arenson Holdings"), D.A. Gardens, Ltd. ("D.A. Gardens"), J12ALH Associates

("J12"), Selk, LLC ("Selk") and Laurel Equity Group ("Laurel") (collectively the

"Defendants"), by their undersigned counsel, submit this memorandum in support of their

Motion to Dismiss the First Amended Complaint for Declaratory Relief (the "Amended

Complaint") filed by Plaintiffs, Shamrock Holdings of California, Inc. ("Shamrock"),

Shamrock Capital Advisors, Inc. ("SCA"), Eugene I. Krieger ("Krieger"), George J.

Buchler ("Buchler"), and Bruce J. Stein ("Stein") (hereinafter collectively "Plaintiffs").

## STATEMENT OF NATURE AND STAGE OF THE PROCEEDING

On September 13, 2004, fully aware that Defendants intended to sue Plaintiffs in

North Carolina, Plaintiffs filed this declaratory judgment action in the Delaware Court of

Chancery against Arenson, Selk and Laurel.[1]  Plaintiffs filed this action solely to control the forum in which their self-dealing and breaches of fiduciary duties in their mismanagement of ALH Holdings, LLC ("ALH") will be litigated.

Defendants appropriately removed the action to the United States District Court for the District of Delaware and moved to dismiss the claims against them.  Defendant Arenson moved to dismiss the claims against him for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and Defendants Selk and Laurel moved to dismiss the claims against them for failure to join all necessary parties—all the Class B members—pursuant to Federal Rules of Civil Procedure 19 and 12(b)(7) (hereinafter collectively the "Motions").

On October 22, 2004, the parties stipulated that Plaintiffs' responses to the Motions would not be due until after the Court issued a decision on Plaintiffs' motion to remand the case to the Delaware Court of Chancery.  On March 22, 2005, the Court denied Plaintiffs' motion to remand.  Rather than respond to the Motions, Plaintiffs implicitly conceded that the remaining Class B Members—Arenson Holdings, D.A. Gardens and J12—are necessary parties by amending their Complaint and joining Arenson Holdings, D.A. Gardens and J12 as defendants.  Plaintiffs, however, have failed to establish that this Court has personal jurisdiction over Arenson, Arenson Holdings, D.A. Gardens and J12.  Defendants, therefore, again move to dismiss the Amended Complaint.

---

[1] ALH's wholly owned subsidiary, Mulvaney Homes. Inc. operated in Charlotte, Greensboro and Winston-Salem, North Carolina.

2

## SUMMARY OF ARGUMENT

*Arenson did not waive his right to object to personal jurisdiction.*

1.      Arenson did not waive any objection based on personal jurisdiction. Arenson, through counsel, entered an appearance, moved to dismiss the claims against him for lack of personal jurisdiction and participated in the removal of the action to federal court. Arenson has not raised or addressed any of the substantive issues in this case. Accordingly, Arensen's participation in the removal and filing of a motion to dismiss for lack of personal jurisdiction does not amount to a waiver of the defense of lack of personal jurisdiction. See infra § I.

*Plaintiffs have failed to establish that Delaware's long-arm statute provides a basis for personal jurisdiction over Arenson, Arenson Holdings, D.A. Gardens and J12.*

2.      Delaware's long-arm statute,10 Del. C. §3104(c)(1), does not provide a basis for asserting personal jurisdiction over Defendants Arenson, Arenson Holdings, D.A. Gardens and J12. Delaware courts have consistently held that personal jurisdiction may be asserted over a nonresident defendant on the basis of a "single act" related to Delaware if the resulting claim has its basis in the asserted transaction. Plaintiffs have failed to allege that Defendants Arenson, Arenson Holdings, D.A. Gardens and J12 performed a single act in Delaware. Further, Plaintiffs cannot establish that the exercise of personal jurisdiction over Defendants Arenson, Arenson Holdings, D.A. Gardens and J12 will not violate the due process requirements of the United States Constitution. Accordingly, Plaintiffs have failed to establish that this Court has personal jurisdiction over Defendants Arenson, Arenson Holdings, D.A. Gardens and J12 pursuant to Delaware's long-arm statute. See infra § II.A.

*Arenson is not a manager of ALH and thus, has not consented to personal jurisdiction under 6 Del. C. § 18-109.*

3.        Arenson has not consented to jurisdiction under 6 <u>Del. C.</u> § 18-109, which provides that a nonresident consents to jurisdiction when acting as a manager of a limited liability company. Arenson is not a manager as defined in § 18-101(10) because he is not named as a manager in ALH's Operating Agreement. Arenson is not a manager of ALH as defined in 6 <u>Del. C.</u> § 18-109(a)(ii) because he did not participate materially in the management of ALH. Therefore, since Arenson is not a manager as defined in §§ 18-101(10) and 18-109(a)(ii), he has not consented to jurisdiction under 6 <u>Del. C.</u> § 18-109. See <u>infra</u> § II.B.

*J12 is not subject to personal jurisdiction because its general partner, a Delaware limited liability company, is subject to jurisdiction under 6 <u>Del. C.</u> § 18-105.*

4.        Plaintiffs attempt to assert personal jurisdiction over J12, a New York general partnership, based on the statutorily implied consent to jurisdiction in § 18-105 with respect to its general partner, Jays LLC. Jays LLC, a Delaware limited liability company, does not conduct business in Delaware or engage in a persistent course of conduct in Delaware and thus, personal jurisdiction over it is based solely on its statutorily implied consent pursuant to 6 <u>Del. C.</u> § 18-105. In <u>HMG/Courtland Properties, Inc. v. Gray</u>, 729 A.2d 300 (De. Ch. 1999), the court held that jurisdiction over a general partner based on statutorily implied consent could not be imputed to the general partnership. Accordingly, Plaintiffs cannot obtain jurisdiction over J12 by imputing the statutorily implied consent of Jays LLC to J12. See <u>infra</u> § II.C.

4

*Since this Court lacks personal jurisdiction over Arenson Holdings, D.A. Gardens and J12, the Amended Complaint should be dismissed under Fed.R.Civ.P. 12(b)(7) because Plaintiffs cannot join all necessary parties.*

5.      Rule 12(b)(7) allows dismissal of an action for "failure to join a party under Rule 19." Fed.R.Civ.P. 12(b)(7). Rule 19(a) provides for the joinder of all "necessary" parties where feasible. Arenson Holdings, D.A. Gardens and J12 are "necessary" parties under Rule 19(a). Joinder of Arenson Holdings, D.A. Gardens and J12 is necessary but not feasible because this Court lacks personal jurisdiction over them. Under the four factors in Rule 19(b), "in equity and good conscience," the action should not proceed without Arenson Holdings, D.A. Gardens and J12 because: (1) their ability to litigate the claims will be negatively impacted by declarations in favor of Plaintiffs; (2) prejudice cannot be avoided by shaping the relief requested because the Court cannot limit a declaration regarding the Plaintiffs' rights with respect to only some of the Class B members; (3) a judgment rendered in the absence of all Class B members will not be adequate; and (4) Plaintiffs undoubtedly have a remedy if the case is dismissed. Accordingly, weighing the four factors under Rule 19(b), "in equity and good conscience," the Amended Complaint should be dismissed because Arenson Holdings, D.A. Gardens and J12 are indispensable parties. See infra § III.

## STATEMENT OF FACTS

### A.    Arenson

Plaintiffs have failed to establish that the Court has personal jurisdiction over Arenson. As demonstrated by Arenson's declaration attached hereto as Exhibit 1, Arenson has insufficient minimum contacts with Delaware to support personal jurisdiction. Arenson is a resident of Israel. See Exhibit 1, ¶ 2. He does not conduct

5

business in Delaware and has no contact with the State. <u>See</u> Exhibit 1, ¶ 10-13. As a representative of ALH's Class B members, he has no contact with Delaware. Although registered as a Delaware limited liability company, ALH has in the past conducted business in North Carolina, Florida and Tennessee but has never conducted business in Delaware. Arenson's service on ALH's Supervisory Board as the representative of ALH's Class B Members is not a Delaware contact. Arenson is **not** a member of ALH but he is a director and shareholder of Class B Member Arenson Holdings and a beneficial shareholder of Class B Member D.A. Gardens. In view of Arenson's virtually complete lack of contacts with Delaware, this Court does not have personal jurisdiction over him and Arenson seeks dismissal of all claims against him in the Amended Complaint.

**B.      Arenson Holdings and D.A. Gardens**

As demonstrated by the declarations attached hereto as Exhibits 2 and 3, Arenson Holdings and D.A. Gardens lack sufficient minimum contacts with Delaware to support personal jurisdiction and all claims against them in the Amended Complaint should be dismissed. Arenson Holdings, an Israeli corporation, is a Class B member of ALH and owns approximately 8% of the Class B membership interest. <u>See</u> Exhibit 2, ¶ 3. D.A. Gardens, a Panamanian corporation, is a Class B member of ALH and owns approximately 8.7% of the Class B membership interest. <u>See</u> Exhibit 3, ¶ 3. Arenson Holdings and D.A. Gardens have not and do not conduct business in Delaware. <u>See</u> Exhibits 2 and 3, ¶¶ 4,5. Their investment in ALH is not sufficient contact with Delaware to establish jurisdiction. Plaintiffs have failed to establish that the Court has personal jurisdiction over both Arenson Holdings and D.A. Gardens.

### C.    J12 Associates

As demonstrated by Jesselson's declaration attached hereto as Exhibit 4, J12 does not conduct business in Delaware and lacks sufficient minimum contacts with Delaware to support personal jurisdiction.   J12, a New York general partnership, is a Class B member of ALH and owns approximately 17% of the Class B membership interest in ALH.   The partners of J12 are Erica Jesselson, a New York resident, and Jays Twelve, LLC ("Jays LLC"), a Delaware limited liability company, whose members are various New York trusts.   Plaintiffs failed to establish that the Court has personal jurisdiction over J12.

Plaintiffs have failed to establish personal jurisdiction over Defendants Arenson, Arenson Holdings, D.A. Gardens and J12 and thus, the claims against them must be dismissed.   Further, since Arenson Holdings, D.A. Gardens and J12 are necessary parties and this Court cannot exercise jurisdiction over them, Defendants Selk and Laurel again move to dismiss the Amended Complaint under Rule 12(b)(7) and Rule 19 for failure to join all necessary parties.

### ARGUMENT

Plaintiffs have failed to establish that this Court has jurisdiction over Arenson, Arenson Holdings, D.A. Gardens and J12.   When personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the basis for the court's exercise of jurisdiction over the nonresident defendant.   Carteret Savings Bank v. Shushan, 954 F.2d 141, 146 (3d Cir.1992); see also Greenly v. Davis, 486 A.2d 669, 670 (Del. Super. 1984); Harmon v. Eudaily, 407 A.2d 232, 233 (Del. Super. 1979).

7

The determination of *in personam* jurisdiction involves a two-step inquiry. First, a court must determine "whether service of process on the nonresident is authorized by statute; and second, . . . whether the exercise of jurisdiction is, in the circumstances presented, consistent with due process." Werner v. Miller Technology Management, L.P., 831 A.2d 318, 326 (Del. Ch. 2003); Intel Corp. v. Silicon Storage Technology, Inc., 20 F.Supp.2d 690, 694 (D.Del. 1998). In making this determination, the court must view all factual disputes in a light most favorable to the plaintiff. Boone v. Oy Partek Ab, 724 A.2d 1150 (Del. Super. 1997). "In applying the Delaware long-arm statute, the court will defer to the interpretations of the Delaware state courts." Intel Corp., 20 F. Supp.2d at 694.

Here, Plaintiffs allege that this Court has personal jurisdiction over Defendants under the following statutes:  6 Del. C. § 18-105, which provides for service of process on domestic limited liability companies, 6 Del. C. § 18-109 which provides for service of process on managers of a limited liability company, 10 Del. C. § 3104(c)(1), which provides jurisdiction under Delaware's long-arm statute for persons transacting business in Delaware and § 310(a) of the New York State Civil Practice Law and Rule ("NY CPLR"), which provides for service of process on persons conducting a business as a partnership. Amended Complaint ¶ 66. For the reasons that follow, Plaintiffs cannot establish personal jurisdiction over Defendants Arenson, J12, Arenson Holdings or D.A. Gardens.

**I.    Arenson Did Not Waive His Right to Object to Personal Jurisdiction.**

Plaintiffs allege that "Arenson, SELK and Laurel entered a general appearance in the Chancery Court, without any reservation of rights with respect to personal jurisdiction

8

[and] [t]hus . . . waived any objection based on lack of personal jurisdiction." Amended

Complaint ¶ 66.  Arenson did not waive his right to object to jurisdiction.[2]  This Court

addressed a similar issue in In re Daimlerchrysler Ag Securities Litigation, 197 F. Supp.

2d 86 (D. Del. 2002).  In that case, the defendant moved to dismiss the action for lack of

personal jurisdiction and in a separate letter to the court addressed the issue of

consolidation raised by his co-defendants.  The plaintiffs claimed that the defendant

consented to jurisdiction and waived his right to challenge personal jurisdiction.  The

court explained the concept of waiver:

> The requirement of personal jurisdiction, like other individual rights, can
> be waived as a result of a party's actions. Generally, "where a party seeks
> affirmative relief from a court, it normally submits itself to the jurisdiction
> of the court with respect to the adjudication of claims arising from the
> same subject matter." However, the mere participation in or filing of a
> motion does not necessarily amount to a waiver of the defense of lack of
> personal jurisdiction. Nevertheless, to conserve judicial time and
> resources, the Court of Appeals for the Third Circuit has concluded that
> "preliminary matters such as ... personal jurisdiction ... should be raised
> and disposed of before the court considers the merits or quasi-merits of a
> controversy."

Id. at 91 (internal citation omitted).  The court held that the defendant did not waive any

objection based on personal jurisdiction because he "did not participate in briefing on any

substantive issues in the case and merely voiced his opinion with respect to a procedural

matter that Plaintiffs were pressing." Id. at 92.

Similarly, in the present case, Arenson did not waive any objection based on

personal jurisdiction.  Arenson, through counsel, entered an appearance, moved to

dismiss the claims against him for lack of personal jurisdiction and participated in the

removal of the action to federal court.  Arenson has not raised or addressed any of the

---

[2] Defendants Laurel and Selk also did not waive their right to object to personal jurisdiction but since both
are Delaware limited liability companies, this Court can exercise jurisdiction pursuant to 6 Del. C. § 18-
105.

substantive issues in this case.  Accordingly, Arensen's participation in the removal and

the filing of a motion to dismiss for lack of personal jurisdiction do not amount to a

waiver of the defense of lack of personal jurisdiction.

**II.      Plaintiffs Have Failed To Establish That This Court Has Personal
Jurisdiction Over Arenson, Arenson Holdings, D.A. Gardens and J12.**

> **A.    Delaware's Long-Arm Statute Does Not Provide a Basis for Asserting
> Personal Jurisdiction Over Arenson, Arenson Holdings, D.A. Gardens
> and J12.**

Delaware's long-arm statute does not provide a basis for asserting personal

jurisdiction over Defendants Arenson, Arenson Holdings, D.A. Gardens and J12.  Like

those of many other states, Delaware's long-arm statute is construed to extend jurisdiction

over nonresident defendants to the full extent permitted by the Due Process Clause.

Aereos De Angola v. Ronair, Inc., 544 F. Supp. 858, 864 (D. Del. 1982).  "However, it is

important not to collapse the long-arm inquiry into the due process inquiry. The Delaware

Supreme Court has not determined that § 3104(c) is coextensive with federal due process,

nor does it substitute federal due process analysis for state long-arm analysis."  Intel

Corp. v. Silicon Storage Tech., Inc., 20 F. Supp.2d 690, 694 (D. Del. 1998).

Because Defendants are not residents of Delaware, a two step analysis is required

to determine whether personal jurisdiction may be exercised over them.  See LaNuova D

& B, S.p.a. v. Bowe Co., 513 A.2d 764, 768-69 (Del.1986).  First, the Court must

determine whether the facts of this case fall within the reach of Delaware's long-arm

statute.  Id.  Second, the Court must determine whether the exercise of personal

jurisdiction will violate the due process requirements of the United States Constitution.

Id.

Plaintiffs allege that this Court has personal jurisdiction over Arenson, Arenson Holdings, D.A. Gardens and J12 based on an application of § 3104(c)(1) of Delaware's long-arm statute, which provides in relevant part:

> (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>     (1) Transacts any business or performs any character of work or service in the State;

10 Del. C. §3104(c)(1). Subsection (c)(1) "provide[s] for specific jurisdiction, under which the cause of action must arise from the contacts with the forum." Applied Biosystems, Inc. v. Cruachem, Ltd., 772 F.Supp. 1458, 1466 (D.Del. 1991). Specific jurisdiction can only be obtained under subsection (c)(1) if, Arenson, Arenson Holdings, D.A. Gardens and J12 have conducted any business in Delaware. In Reach & Associates, P.C. v. Dencer, 269 F.Supp.2d 497, 503 (D.Del. 2003), the court explained:

> While examining an individual's conduct, including actions in his fiduciary capacity, the Court must be mindful of the requirement of Subsections (c)(1) and (c)(3) of the Delaware long-arm statute that the transactions, acts or omissions occur in the State of Delaware. Thus, in order for any act to be relevant in a personal jurisdiction analysis under Subsections (c)(1) or (c)(3), the individual's acts, even as a fiduciary, must occur in Delaware.

Id. at 503. Delaware courts have consistently held that personal jurisdiction may be asserted over a nonresident defendant on the basis of a "single act" related to Delaware if the resulting claim has its basis in the asserted transaction. Blue Ball Properties v. McClain, 658 F. Supp. 1310, 1316 (D. Del. 1987); see also Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc., 685 A.2d 724 (Del. 1996)(holding a single act may create sufficient minimum contacts but some act must be performed "in the State" in order to support specific jurisdiction under § 3104(c)(1).).

11

In the present case, the Amended Complaint alleges:

J12 is also subject to personal jurisdiction in Delaware because it transacted business in Delaware from which the present causes of action arise and intentionally availed itself of the benefits and protections of Delaware law.

*        *        *

Arenson and [Arenson Holdings and D.A. Gardens] are subject to personal jurisdiction in Delaware under 10 Del. C. § 3104(c)(1), in that they transacted business in Delaware from which the present causes of action arise and intentionally availed themselves of the benefits and protections of Delaware law, including Delaware's advanced body of law on alternative entities such as limited liability companies. Among other things, [Arenson Holdings and D.A. Gardens] and Arenson himself (as Class B Representative and as agent for [Arenson Holdings and D.A. Gardens]):

> (a) Entered into the ALH Transaction, i.e. agreed to form and fund the Delaware limited liability company that became ALH. . .
> (b) Entered into the Operating Agreement . . .
> (c) Agreed that their rights and obligations in connection with ALH should be governed by Delaware law . . .
> (d) Supported creating of ALH II, a Delaware corporation, which was used as the vehicle to obtain debt financing . . .
> (e) Made additional capital contributions to ALH for the express purpose of acquiring BBC. . .
> (f) Participated in loans to ALH II and the repayment of loans by ALH II . . .
> (g) Supported the Lion Settlement . . .
> (h) Supported the engagement of JMP to provide advisory and investment banking services . . .
> (i) Approved a $200,000 bonus for Shamrock . . .
> (j) Made efforts over a period of many months to acquire the Class A Membership Interest in ALH . . .
> (k) In connection with their efforts to acquire the Class A Membership Interest in ALH, supported a proposal to transfer the assets of BBC so as to shield them from creditors . . .
> (l) Seek to interfere with the indemnification rights of officers and directors of Delaware corporation . . .
> (m) Threatened repeatedly to bring claims against the plaintiffs for mismanagement of ALH and waste of its assets

12

Amended Complaint ¶¶ 65, 68. This long laundry list does not contain any allegations that Arenson, Arenson Holdings, D.A. Gardens or J12 performed a single act in Delaware.

### 1.    Arenson

Arenson has not performed any activities in Delaware and Plaintiffs have not alleged that he has. Arenson owns no real property in Delaware and has never visited Delaware. Exhibit 1 ¶¶ 12-13. Arenson has not committed a single act in Delaware that relates to the allegations in the Amended Complaint. His status as the Class B Representative for ALH is not a sufficient jurisdictional contact and Plaintiffs did not allege that Arenson performed any activities in Delaware as the Class B representative.

Plaintiffs allege that Arenson, as the Class B representative, agreed to form and fund ALH, a Delaware limited liability company and supported creating ALH II, a Delaware corporation. Plaintiffs do not claim that Arenson actually formed ALH or ALH II by filing articles of incorporation or a certificate of limited liability company with the Office of the Secretary of State of the State of Delaware. Amended Complaint ¶ 19. Moreover, even if Arenson did file the articles of incorporation or a certificate of limited liability company with the Office of the Secretary of State—which he did not—Plaintiffs' claims do not relate to the formation of ALH or ALH II. See Exhibit 1, ¶¶ 14-15. The formation of ALH and ALH II are the **only** activities that actually occurred in Delaware and they were acts by Plaintiffs not Arenson. Accordingly, as applied to Defendant Arenson, the jurisdictional prerequisites required by § 3104(c)(1) have not been satisfied.

Even assuming that Plaintiffs were able to establish that Arenson fell within the reach of Delaware's long-arm statute—which they cannot—they still cannot establish that

13

the exercise of personal jurisdiction will not violate the due process requirements of the

United States Constitution. The Constitutional limits, as explained in Zippo Mfg. Co. v.

Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), are as follows:

> The Constitutional limitations on the exercise of personal
> jurisdiction differ depending upon whether a court seeks to exercise
> general or specific jurisdiction over a non-resident defendant. Mellon
> Bank (East) PSFS, N.A. v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992).
> General jurisdiction permits a court to exercise personal jurisdiction over a
> non-resident defendant for non-forum related activities when the
> defendant has engaged in "systematic and continuous" activities in the
> forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S.
> 408, 414-16 (1984).  In the absence of general jurisdiction, specific
> jurisdiction permits a court to exercise personal jurisdiction over a non-
> resident defendant for forum-related activities where the "relationship
> between the defendant and the forum falls within the 'minimum contacts'
> framework" of International Shoe Co. v. Washington, 326 U.S. 310 (1945)
> and its progeny. Mellon, 960 F.2d at 1221.

Id. at 1122.  Plaintiffs did not allege that Arenson engaged in "systematic and

continuous" activities in Delaware sufficient to confer general jurisdiction over him.

Therefore, as no general jurisdiction exists, this Court must determine whether it can

exercise specific jurisdiction.

"A three-pronged test has emerged for determining whether the exercise of

specific personal jurisdiction over a non-resident defendant is appropriate: (1) the

defendant must have sufficient "minimum contacts" with the forum state; (2) the claim

asserted against the defendant must arise out of those contacts; and (3) the exercise of

jurisdiction must be reasonable." Zippo, 952 F. Supp. at 1122 (quoting Burger King

Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). The "Constitutional touchstone" of the

minimum contacts analysis is embodied in the first prong, "whether the defendant

purposefully established "contacts with the forum state." Id.  In Zippo, the court

explained:

14

Defendants who "'reach out beyond one state' and create continuing relationships and obligations with the citizens of another state are subject to regulation and sanctions in the other State for consequences of their actions." Id. "[T]he foreseeability that is critical to the due process analysis is . . . **that the defendant's conduct and connection with the forum State are such that he should reasonably expect to be haled into court there.**" World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). This protects defendants from being forced to answer for their actions in a foreign jurisdiction based on "random, fortuitous or attenuated" contacts. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984). "Jurisdiction is proper, however, where contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (citing McGee v. International Life Insurance Co., 355 U.S. 220, 223 (1957)).

Zippo, 952 F.Supp. at 1122 (emphasis added).

In this case, Arenson's contacts (or lack thereof) with the forum are so far attenuated that he could not have reasonably expected to be haled into court in Delaware. Arenson, an Israeli citizen, is an officer and shareholder of an Israeli corporation and a beneficial shareholder of a Panamanian corporation both of which are Class B members of ALH, a Delaware limited liability company, that did business in North Carolina, Florida, and Tennessee.

In Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Productions, 1991 WL 129174 (Del. Ch. July 10, 1991), the court held that the actions of the foreign corporate grandparent of the general partner of the limited partnership were not sufficient to establish personal jurisdiction over it. The case involved an action by the limited partners of a Delaware limited partnership against (1) the partnership, (2) the partnership's corporate general partner, a Delaware corporation, (3) the corporate general partner's sole shareholder (the "parent corporation"), also a Delaware corporation, and (4) the parent corporation's sole shareholder (the "grandparent corporation"), a New York

15

corporation. The grandparent corporation moved to dismiss the complaint for lack of personal jurisdiction. The grandparent corporation claimed that it was not a party to the partnership agreements or any agreements at issue and that it did not conduct business in Delaware or conduct any act in Delaware related to the transaction. Id. at * 1. The only act the grandparent corporation admitted to committing in Delaware was the act of incorporating the parent corporation. The court held that it did not have jurisdiction over the grandparent corporation because its only acts in Delaware consisted of filings necessary to form and merge several wholly owned subsidiaries and the facts alleged in the complaint did not arise out of those acts. Id. at *3.

Similarly, in this case, Arenson did not form ALH or ALH II but was merely a representative of minority members on the Supervisory Board without any power to make any decisions other than those approved by the Class A representatives. Amended Complaint ¶ 71 ("All Major Decisions require the consent of the Class A Representatives on the Supervisory Board."). Arenson is not a member of ALH and is not a party to ALH's Operating Agreement or any of the agreements at issue. Plaintiffs have no claims against him and he has no individual claims against them. Arenson has committed no act in Delaware that would make the exercise of specific personal jurisdiction over him appropriate. Accordingly, Arenson's contacts with Delaware are so minimal that allowing Plaintiffs to maintain the suit against him will offend "traditional notions of fair play and substantial justice." Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

16

2.    **Arenson Holdings, D.A. Gardens and J12**

Arenson Holdings, D.A. Gardens and J12 have no contacts with Delaware. They only have a minority interest in ALH. Arenson Holdings, an Israeli corporation, does not conduct any business in Delaware and owns no real property in Delaware. See Exhibit 2 ¶¶ 4-5, 7. D.A. Gardens, a Panamanian corporation, does not conduct any business in Delaware and owns no real property in Delaware. See Exhibit 3 ¶¶ 4-5, 7. J12, a New York partnership, does not conduct any business in Delaware and owns no real property in Delaware. See Exhibit 4 ¶¶ 6-8, 7. Arenson Holdings, D.A. Gardens and J12 only have Class B membership interests in ALH.

The law in Delaware is well settled that "mere ownership of stock in a Delaware corporation is insufficient to establish jurisdiction over a majority or sole shareholder." Marketing Products Management, LLC v. HealthandBeautyDirect.com, 2004 WL 249581, *1 (Del. Super. Jan. 28, 2004); see also Shaffer v. Heitner, 433 U.S. 286, 212 (1977)(holding that where the ownership of stock was not at issue, the underlying cause of action did not relate to the ownership of the stock, and defendant had no other contacts with Delaware, mere ownership of stock in a corporation having its situs in Delaware is not sufficient to confer personal jurisdiction); Crescent/Mach I Partners, L.P. v. Turner, 846 A.2d 963, 975-76 (Del. Ch. 2000)(holding partnership's controlling interest in Delaware corporation is not, without more, sufficient contact on which to base personal jurisdiction); but see Papendick v. Bosch, 410 A.2d 148 (Del. 1979)(holding that German limited liability company's ownership of stock in a Delaware subsidiary corporation was sufficient contact on which to base personal jurisdiction where German

LLC came into Delaware, created a subsidiary corporation for the purpose of implementing its purchase contract and accomplishing its acquisition of stock and the cause of action arose from the activities relating to the purchase contract). Accordingly, as applied to Arenson Holdings, D.A. Gardens and J12, the jurisdictional prerequisites required by § 3104(c)(1) of Delaware's long-arm statute have not been satisfied.

Even assuming that Plaintiffs were able to establish that Arenson Holdings, D.A. Gardens and J12 fell within the reach of Delaware's long-arm statute—which they cannot—Plaintiffs still cannot establish that the exercise of personal jurisdiction will not violate the due process requirements of the United States Constitution. "A basic tenet of the due process analysis of a court's exercise of personal jurisdiction is whether the party "purposefully availed" itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Werner v. Miller Technology Management, L.P., 831 A.2d 318, 330 n. 46 (Del. Ch. 2003)(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). "This 'purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" Id.

Arenson Holdings, D.A. Gardens and J12 do not have the requisite contacts with Delaware to allow this Court to exercise personal jurisdiction consistent with due process. See Werner, 831 A.2d at 336. In Werner, the court held that it lacked personal jurisdiction over limited partners that were also members of the partnership's advisory board. The defendants were limited partners of Interprise Technology Partners, L.P ("Interprise"), a Delaware limited partnership, and members of Interprise's advisory

18

board (the "advisory board defendants"). Interprise's principal place of business was in Florida. Werner, a limited partner of Interprise, brought direct and derivative actions against MTM and its limited partners that served on the advisory board (the "advisory board defendants") alleging claims for self-dealing and breach of fiduciary duty. The advisory board defendants filed a motion to dismiss for lack of personal jurisdiction. The plaintiff alleged that based on an application of § 3104(c)(1), the court had personal jurisdiction because the advisory board defendants transacted business in Delaware through their "management of the Partnership." Id. at 328.

The Werner court examined the partnership agreement and the private placement of limited partnership interests agreement ("PPM") to determine whether the advisory board defendants had transacted business through managing the partnership. The partnership agreement provided that the advisory board members are limited partners in Interprise and as such can "take no part in the control, management, direction or operation of the affairs of [Interprise]." The court determined that "sections of the Partnership Agreement and the PPM upon which [plaintiff] relies indicate that the Advisory Board's role is to advise and assist the general partner as needed, not to manage the partnership." Werner, 831 A.2d at 328. The court also noted that the plaintiff had failed to allege any facts to show that the advisory board defendants actually exerted any control over Interprise. The court held that the plaintiff failed to satisfy the requirements of Delaware's long-arm statute.

The court further held that "[e]ven if plaintiff could satisfy the requirements of Delaware's long-arm statute, the advisory board defendants do not have the requisite contacts with Delaware to allow this court to exercise personal jurisdiction consistent

19

with due process." Id. at 330. The court noted that "[a]side from the fact that the Advisory Board Defendants are limited partners in a Delaware limited partnership, none has any contacts with the State of Delaware whatsoever." Id. at 331. The plaintiff argued that the advisory board defendants had minimum contacts based on their management of the partnership. The court rejected that argument. Finally, the plaintiff pointed to the existence of the choice of law provision in support of his claim that the advisory board defendants had minimum contacts with Delaware. In support of his argument, the plaintiff relied on Burger King Corp. v. Rudzewicz, 471 U.S. at 482, "to argue that the choice of law provision in the Partnership Agreement shows that the Advisory Board Defendants had deliberately affiliated themselves with the State of Delaware and are therefore subject to personal jurisdiction." Id. at 331. The court rejected this argument and held:

> [Plaintiff's] reliance on Burger King is somewhat misplaced. The court recognized in Burger King that, while a choice of law provision should not be ignored in a jurisdictional analysis, such a provision does not by itself confer jurisdiction. Because, in this case, the provision is essentially standing alone, it cannot be said to bestow personal jurisdiction on the defendants. The partners could have, if they had chosen, availed themselves of Delaware law through a forum selection clause in the Partnership Agreement, but they did not.

Werner, 831 A.2d at 331. Accordingly, the Werner court dismissed the claims against the advisory board defendants for lack of personal jurisdiction.

Similarly, in the present case, the Court should dismiss the claims against Arenson Holdings, D.A. Gardens and J12 because they have less contacts with Delaware than the defendants in Werner had. The ALH Operating Agreement makes clear that members take no part in the control, management, direction or operation of ALH. See

20

ALH Operating Agreement ¶ 6.1(a) and 6.6(a).[3]    Further, Arenson Holdings, D.A.

Gardens and J12 do not reside in Delaware, they do not conduct business in Delaware,

and they own no real property in Delaware.   Aside from their minority interests in ALH,

Arenson Holdings, D.A. Gardens and J12 have no contacts with Delaware.

Plaintiffs also alleged that they "[a]greed that their rights and obligations in

connection with ALH should be governed by Delaware law, as expressly provided in the

Operating Agreement[.]" Amended Complaint ¶ 68(c).    However, as in Werner, the

members of ALH could have chosen to avail themselves of Delaware law through a

forum selection clause in the Operating Agreement, but they did not.   Accordingly,

Arenson Holdings, D.A. Gardens and J12 do not have the requisite contacts with

Delaware to allow this Court to exercise personal jurisdiction consistent with due

process.

**B.    Arenson Is Not A Manager of ALH and Has Not Consented to Jurisdiction Under 6 Del. C. § 18-109**

Arenson is not a manager of ALH and has not consented to jurisdiction under 6

Del. C. § 18-109.   Specifically, section 18-109 provides in relevant part:

> (a) A manager or a liquidating trustee of a limited liability company may
> be served with process in the manner prescribed in this section in all civil
> actions or proceedings brought in the State of Delaware involving or
> relating to the business of the limited liability company or a violation by
> the manager or the liquidating trustee of a duty to the limited liability
> company . . . .

A manager, as defined in § 18-109,

---

[3] Section 6.1(a) of the ALH Operating Agreement provides "Subject to the terms of this Agreement, the overall business, operations and affairs of the Company shall be managed by a manager designated pursuant to the terms of the Agreement (the "Manager") in the ordinary course of business [.]"   Section 6.6(a) provides "No Member is an agent of the Company solely by virtue of being a Member, and no Member has authority to act for the Company solely by virtue of being a Member."

21

. . . refers (i) to a person who is a manager as defined in § 18-101(10) of this title and (ii) to a person, whether or not a member of a limited liability company, who, although not a manager as defined in § 18-101(10) of this title, participates materially in the management of the limited liability company; provided however, that the power to elect or otherwise select or to participate in the election or selection of a person to be a manager as defined in § 18-101(10) of this title shall not, by itself, constitute participation in the management of the limited liability company.

6 Del. C. § 18-109 (a).

Arenson is not a manager as defined in § 18-101(10) because he is not named as a manager in ALH's Operating Agreement. Section 18-101(10) provides "'Manager' means a person who is named as a manager of a limited liability company in, or designated as a manager of a limited liability company pursuant to, a limited liability company agreement or similar instrument under which the limited liability company is formed." Article 6 of ALH's Operating Agreement provides for the designation of a manager. Specifically, Article 6.1 provides:

(a)    Subject to the terms of this Agreement, the overall business, operations and affairs of the Company shall be managed by a manager designated pursuant to the terms of this Agreement (the "Manager") in the ordinary course of business, in compliance with applicable law and the terms of this Agreement. Subject to the terms of Section 6.1(b),[4] the Manager of the Company shall be Lion LLC (the "Initial Manager"). the initial officers of the Company shall be the individuals as set forth on Exhibit D hereto, who shall hold the offices set forth opposite their respective names on Exhibit D until replaced as provided herein. No Member acting alone, other than the Manger acting

---

[4] Section 6.1(b) of the Operating Agreement provides:

In the event of an Operational Default, then (i) the Class A Members acting by a Class A Vote (the "Removal Notice"), shall be entitled to (x) appoint a Manager to replace the Initial Manager; (y) remove and replace the Class D Representative appointed pursuant to Section 6.2(b)(iii) and those directors appointed pursuant to Section 6.3(d); provided that a Removal Notice (1) shall be given to all Members not less than five (5) business days, following such removal and appointment; (2) sets forth the names of the individuals designated to replace such Class D Representatives and directors; and (3) is signed on behalf of the Class A Members and (z) remove and replace any or all officers of the Company.

22

as authorized pursuant to this Agreement, shall have any right, power or authority to bind the Company.

Lion LLC was named as the Initial Manager of ALH and Arenson has never been an officer or member of Lion LLC.[5] Amended Complaint ¶ 36. Therefore, pursuant to § 18-109 (a)(i), Arenson is not a Manager.

Arenson is not a manager as defined in § 18-109 (a)(ii). Section 18-109 (a)(ii) provides that a manager can also be "a person, whether or not a member of a limited liability company, who, although not a manager as defined in § 18-101(10) of this title, participates materially in the management of the limited liability company. . . ." Arenson is not a member of ALH and did not participate materially in the management of ALH.

Arenson serves on ALH's Supervisory Board as the Class B representative. However, even as a member of the Supervisory Board, Arenson does not "participate materially" in the management of ALH. All "Major Decisions" are decided only upon the adoption of a resolution by the Class A representatives present at a meeting of the Supervisory Board or the unanimous written consent of the Class A representatives for action taken without a meeting. See Operating Agreement, Article 6.2(c). There are twenty-two "major decisions" that may only be decided by the unanimous approval of the Class A representatives, among those are: consolidation, combination or merger of ALH, the making of any loans to any person, the issuance or sale to any person of any membership interests, the approval of the Annual Budget or any amendment thereto and the removal or replacement of any of the five most highly compensated employees of ALH. See Exhibit 5, Article 6.2(c)(i),(v),(vi),(xiv) and (xvi).

---

[5] In or around July 2001, ALH became dissatisfied with Lion LLC's management and entered into a settlement with Lion, which, *inter alia*, resulted in further control by the Class A members by allowing the Class A members to designate one of the two Class D representatived on the Supervisory Board. Amended Complaint ¶ 39.

23

Plaintiffs concede that as the Class B representative, Arenson, does not participate materially in the management of ALH. Specifically, Plaintiffs allege:

> . . . Nothing in the Operating Agreement requires the consent of the Class B Representative for any action or decision by the Supervisory Board. Nothing in the Operating Agreement requires the consent of the Class B Members for actions or decisions by ALH (except that Members must unanimously consent to amendments of the Operating Agreement that modify their limited liability, alter their interest in the profits, losses or distributions of ALH, or alter the the number of voting rights of the Representatives). Actions and decisions by ALH are generally effective by majority vote of the five Representatives on the Supervisory Board. **All Major Decisions require the consent of the Class A Representatives on the Supervisory Board.**

Amended Complaint, ¶ 71 (emphasis added). Accordingly, the only members of the Supervisory Board that participate materially in the management of the limited liability company are the Class A representatives while the remaining representatives, including Arenson, serve an advisory role with no control. See Werner v. Miller Technology Management, L.P., 831 A.2d 318.

As the Class B representative, Arenson has no authority to make major decisions without the consent of the Class A representatives. See Operating Agreement, Article 6.2(c). His participation on the Supervisory Board cannot accurately be characterized as participating materially in the management of ALH. Arenson's participation on the Supervisory Board is not important or even necessary to the management of ALH because he has no authority or control with respect to major decisions. Further, his participation on the Supervisory Board does not have any influence because as alleged by Plaintiffs, "Nothing in the Operating Agreement requires the consent of the Class B Representative." Even if Arenson and the other class representatives unanimously voted in favor of a decision, it would not be effective unless the Class A representatives

24

approved it.[6]  Accordingly, Arenson does not participate materially in the management of

ALH and has not consented to jurisdiction under 6 Del. C. § 18-109.

    **C.**    **J12 Is Not Subject To Personal Jurisdiction Because Its General Partner, A Delaware LLC, Is Subject to Jurisdiction Under 6 Del. C. § 18-105.**

Plaintiffs failed to allege sufficient facts to support personal jurisdiction over J12

through its general partner, Jays LLC.  Specifically, Plaintiffs alleged "J12, a New York

general partnership, is subject to personal jurisdiction in Delaware through service of

process of Jays LLC, one of its general partners.  Jays LLC, a Delaware limited liability

company, is subject to service of process in Delaware."  Amended Complaint ¶ 65.

Plaintiffs rely on J12's general partner, Jays LLC, to obtain personal jurisdiction over

J12.  Jurisdiction over Jays LLC is based **solely** on its statutorily implied consent

pursuant to 6 Del. C. § 18-105.

The Court will not impute the implied consent of Jays LLC to J12.  See

HMG/Courtland Properties, Inc. v. Gray, 729 A.2d 300 (De. Ch. 1999).  In HMG, the

court held that jurisdiction over a general partner based on statutorily implied consent

would not be imputed to the general partnership.  In HMG, the plaintiffs claimed that the

court had personal jurisdiction over NAF Associates because if the court can obtain

jurisdiction over one general partner, it has jurisdiction over the general partnership.  One

of NAF's general partners, Norman Fieber, as director of HMG, a Delaware corporation,

was subject to personal jurisdiction based on the statutorily implied consent to

---

[6]  Section 6.1(c) of the Operating Agreement provides in relevant part: "The following matters (each, a "Major Decision") may be decided only upon . . . the adoption of a resolution by (y) the Class A Representatives or their Deputy Representatives present in person or by proxy at a meeting of the Supervisory Board or (z) the unanimous written consent of the Class A Representatives or the Deputy Representatives for action taken without a meeting[.]"

jurisdiction in 6 <u>Del.</u> <u>C.</u> § 3114.[7]  The court, however, refused to impute the statutorily

implied consent of Fieber, the general partner, to NAF, the nonresident partnership.  The

court reasoned:

> The legal fiction of implied consent embodied in § 3114 rests on one real fact: § 3114 is in the Delaware Code and provides clear notice to any reasonably informed director that accepting service as a director of a Delaware corporation brings with it an obligation to defend official capacity suits here. This fact is the underpinning of § 3114's constitutionality.
>
> This fact is missing as to defendants who are alleged alter egos or agents. In the absence of express statutory language, I have difficulty conceptualizing how agents or even alter egos can be thought to have fair notice that they can be haled into court in Delaware because of their mere relationship to a nonresident director and their participation in out-of-state conduct which is later alleged to be a breach of the director's fiduciary duties. Building fiction on fiction is the job of novelists writing sequels, not that of judges trying to apply the words of a statute in a common sense way.

<u>HMG</u>, 729 A.2d at 306.  The court held that it did not have jurisdiction over NAF.

Similarly, in the present case, Plaintiffs attempt to assert personal jurisdiction

over J12, a general partnership, based on the statutorily implied consent to jurisdiction in

§ 18-105 of its general partner, Jays LLC.  Jays LLC does not conduct business in

Delaware or engage in a persistent course of conduct in Delaware.  Thus, jurisdiction

over Jays LLC is based **solely** on its statutorily implied consent pursuant to 6 <u>Del.</u> <u>C.</u> §

18-105.  J12 did not have fair notice that it could be haled into court in Delaware because

of its mere relationship to Jays LLC, its general partner that conducts no business in

Delaware.  Accordingly, as in <u>HMG</u>, Plaintiffs cannot obtain jurisdiction over J12 by

imputing the statutorily implied consent of Jays LLC to J12.

---

[7]  The court emphasized that "§ 3114 authorizes service only in actions where directors, trustees or members of the governing body of a Delaware corporation are necessary or proper parties or where the cause of action is grounded on such individuals' breach of the fiduciary duties owed to the corporation and its owners." <u>HMG</u>, 729 A.2d at 305.

26

III.    **Because This Court Lacks Jurisdiction Over Arenson Holdings, D.A. Gardens and J12, Selk and Laurel Move to Dismiss the Amended Complaint For Failure To Join Necessary Parties.**

Defendants Selk and Laurel move to dismiss the Amended Complaint pursuant to Rule 12(b)(7) because Arenson Holdings, D.A. Gardens and J12 are not subject to effective service of process in Delaware. Rule 12(b)(7) allows dismissal for "failure to join a party under Rule 19." Fed.R.Civ.P. 19(a) provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined. Fed.R.Civ.P. 19(b). Plaintiffs' Amended Complaint attempts to join Arenson Holdings, D.A. Gardens and J12, but, since this Court lacks personal jurisdiction over them, the claims against them will be dismissed pursuant to Fed.R.Civ.P. 12(b)(2). Accordingly, Arenson Holdings, D.A. Gardens and J12 continue to be absent parties.

A.    **Under Fed.R.Civ.P. 19(a), Arenson Holdings, D.A. Gardens and J12 are "necessary" parties but their joinder is not feasible.**

Arenson Holdings, D.A. Gardens and J12 (hereinafter the "Absent Parties") are "necessary" parties under Rule 19(a). Under Rule 19(a), the court must first determine whether a person should be joined in the lawsuit. Wylain, Inc. v. Kidde Consumer Durables Corp., 74 F.R.D. 434, 436 (D. Del. 1977). Rule 19(a) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii)

27

leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. . . .

Fed.R.Civ.P. 19(a). Rule 19(a) is written in the disjunctive and, if a party's absence results in any of the identified situations, this Court must treat that party as necessary.

In the present case, to determine whether joinder is required by either standard in Rule 19(a), it is necessary to examine the relief Plaintiffs have requested. Specifically, Plaintiffs request a judgment declaring the following:

A.    declaring that [Plaintiffs] have not breached any fiduciary duty to defendants;

B.    declaring that [Plaintiffs] have not breached any obligations to defendants, or violated any rights of defendants, under this Operating Agreement;

C.    declaring that (1) in rendering services pursuant to the Consulting Agreement, [Plaintiffs] did not commit bad faith, gross negligence or willful misconduct, and (2) they are protected from any liability to defendants by the Consulting Agreement;

D.    declaring that [Plaintiffs] relied in good faith on JMP and ALH's outside counsel;

E.    declaring that [Plaintiffs] are entitled to indemnification, including advancement of legal fees and other expenses;

F.    declaring that SELK's claims against them have been released by the SAMR, or in the alternative, that SELK's equity interest is reduced or eliminated by the shortfall in the Class E Capital Contribution;

G.    declaring the plaintiffs have not violated Arenson's rights as Class B Representative; and

H.    granting such other and further relief as the Court may deem just and proper.

Amended Complaint, p. 50.

Under Rule 19(a), the first test requires the court to consider "if (1) in the person's absence complete relief cannot be accorded among those already parties." Fed.R.Civ.P. 19(a)(1). "The first joinder standard . . . is designed to protect those already parties by

28

requiring the presence of all persons who have an interest in the litigation so that any relief that may be awarded will effectively and completely adjudicate the dispute." Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1604, 41. "This standard also furthers the interest of the public in judicial economy by avoiding repeated lawsuits involving essentially the same subject matter." Id. at 47.

In this case, Plaintiffs request a judgment declaring that they did not breach their fiduciary duties or their obligations under the Operating Agreement. Since these claims involve the rights of all Class B members not just Defendants Laurel and Selk, for purposes of judicial economy, the factually similar claims should be tried together. Therefore, pursuant to Rule 19(a)(1), the Absent Parties are necessary and should be joined as parties to the action if feasible.

Even if joinder is not necessary under Rule 19(a)(1), the Court must conclude that joinder is necessary under Rule 19(a)(2)(i). The second test "relates to situations in which the action cannot be effectively adjudicated because the absentee claims an interest in the subject matter of the action and disposing of the case in the person's absence may prejudice either those already before the court or the absentee." Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d, § 1604, 51. Specifically, Rule 19(a)(2)(i) "requires a court to take into consideration the effect that resolution of the dispute among the parties before it may have on an absent party" and "whether determination of the rights of the parties before it would impair or impede an absent party's ability to protect its interest in the subject matter of the litigation." Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 406 (C.A.3 (Pa.), 1993). The Supreme Court of the United States has directed courts to evaluate the potential for prejudice with an eye

29

toward the practical context in which a case arises. <u>See</u> <u>Provident Tradesmens Bank &</u>
<u>Trust Co. v. Patterson</u>, 390 U.S. 102 (1968); <u>see</u> <u>also</u> Fed.R.Civ.P. 19 Advisory
Committee's note (1966) ("[T]he case should be examined pragmatically and a choice
made between the alternatives of proceeding with the action in the absence of particular
interested persons, and dismissing the action."); <u>Wright, Miller & Kane, Federal Practice</u>
<u>and Procedure: Civil 3d</u> § 1604, 60 ("It should be noted that the prejudicial effect of
nonjoinder . . . may be practical rather than legal in character.").

As a practical matter, any decision declaring Plaintiffs' liability to Class B
members should include all of the members. The nature of the requests are such that a
judgment declaring Plaintiffs' rights will prejudice the Absent Parties who also have
similar claims against Plaintiffs. Therefore, any judgment in favor of Plaintiffs,
prejudices the Absent Parties. Accordingly, pursuant to Rule 19(a)(2)(i), the Absent
Parties are necessary.

Joinder of the Absent Parties is not feasible because this Court lacks personal
jurisdiction over them and thus, they are not subject to service of process. Joinder is not
feasible if it would destroy diversity or if the person is not "subject to service of process."
Fed.R.Civ.P. 19(a). Joinder of the Absent Parties is not feasible because they are not
subject to service of process in Delaware. <u>See</u> discussion <u>infra</u> at § II.

**B.    Under Fed.R.Civ.P. 19(b), "In Equity and Good Conscience," This
       Action Should Not Proceed Without Arenson Holdings, D.A. Gardens
       and J12.**

After determining that the Absent Parties are necessary and that joinder is **not**
feasible, the court must determine whether under Rule 19(b), "in equity and good
conscience," the action should proceed without the Absent Parties. Specifically, Rule

30

19(b) provides, "[i]f a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Factors to consider under Rule 19(b) include "[1] to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; [2] the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; [3] whether a judgment rendered in the person's absence will be adequate; and [4] whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Fed.R.Civ.P. 19(b). Weighing the four factors under Rule 19(b), "in equity and good conscience," the Amended Complaint should be dismissed for failure to join necessary parties.

"The first factor under Rule 19(b) overlaps considerably with the Rule 19(a) analysis." Gardiner v. Virgin Islands Water & Power Authority, 145 F.3d 635, 641 n.4 (3rd 1998) (citing Wright, Miller & Kane, Federal Practice and Procedure, § 1608 at 91). As previously discussed, a judgment in favor of Plaintiffs rendered in the absence of all Class B members would encourage piecemeal litigation requiring Plaintiffs to re-litigate the same issues in a direct action by the absent Class B members. The Absent Parties will still be able to maintain direct actions against Plaintiffs but, as a practical matter, their ability to litigate the claims will be negatively impacted by any declarations in favor of Plaintiffs. Therefore, the first factor weighs in favor of dismissal.

The second factor is "the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or

31

avoided". Fed.R.Civ.P. 19(b). Prejudice cannot be avoided by shaping the relief requested. Specifically, Plaintiffs request declarations that interpret the Operating Agreement, a contract between Plaintiffs and all Class B members. Because Defendants Laurel and Selk are also Class B members, the court cannot limit a declaration regarding the Plaintiffs' rights with respect to some of the Class B members. For example, there is no way to minimize the prejudicial effect on the Absent Parties of a declaration that Plaintiffs' actions did not constitute a breach of fiduciary duty to Defendants Laurel and Selk. Therefore, because Plaintiffs are seeking a judgment declaring their rights with respect to some Class B members, protective provisions in the judgment would not minimize the prejudice to the Absent Parties, who are also Class B members.

The third factor under Rule 19(b) is "whether a judgment rendered in the person's absence will be adequate." In Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102 (1968), the court made the following comment about this factor:

> We read the Rule's third criterion, whether the judgment issued in the absence of the nonjoined person will be 'adequate,' to refer to this public stake in settling disputes by wholes, whenever possible, for clearly the plaintiff, who himself chose both the forum and the parties defendant, will not be heard to complain about the sufficiency of the relief obtainable against them.

Id. at 111. In the present case, a judgment rendered in the absence of the Absent Parties will not be adequate. "[W]ithout a perfect identity of interests, a court must be very cautious in concluding that a litigant will serve as a proxy for an absent party." Tell v. Trustees of Dartmouth College, 145 F.3d 417 (1st Cir. 1998). The interests of Defendants Laurel and Selk are not identical to the interests of the Absent Parties. The Absent Parties—Arenson Holdings, D.A. Gardens, and J12—and Defendants Laurel and Selk each own a different percentage of the Class B membership interest, which may

32

affect the manner in which they litigate the issues. Therefore, a judgment rendered in the absence of all Class B members will not be adequate.

The fourth factor under Rule 19(b) is "whether the plaintiff has a remedy if the action is dismissed for nonjoinder." Plaintiffs undoubtedly have a remedy if the case is dismissed. They simply must file their declaratory judgment action in another forum where they will be able to join all necessary parties. In fact, all the Class B Defendants have filed their own action against Plaintiffs in this action in the United States District Court for North Carolina a forum where ALH conducted business and where all of Plaintiffs in this action have conducted business. Plaintiffs here will be able to litigate against all the Class B members there as defendants rather than as plaintiffs in a precipitous declaratory judgment proceeding. Therefore, Plaintiffs have a remedy if the action is dismissed for nonjoinder.

Accordingly, under Rule 19(a), the Absent Parties are necessary and should be joined if feasible. Since the Absent Parties are not subject to personal jurisdiction, their joinder is not feasible. Weighing the four factors under Rule 19(b), "in equity and good conscience," the Amended Complaint should be dismissed because the Absent Parties are indispensable.

**C.      Since Joinder of All Class B Members Is Not Feasible, the Court Should Decline to Grant Declaratory Relief.**

Further, this Court should decline to grant declaratory relief since Plaintiffs seek only declaratory relief and this Court lacks jurisdiction over all Class B members. "Although the Declaratory Judgment Act authorizes the granting of declaratory relief it may **not** be said that the courts must provide such a remedy in every case. The Declaratory Judgment Act confers a discretion on the court rather than an absolute right

33

in a litigant." <u>Savini v. Sheriff of Nassau County</u>, 209 F. Supp. 946, 950 (D. N.Y. 1962)(emphasis added). Further, "[t]he purpose of the Declaratory Judgment Act is to avoid trying cases 'piecemeal' and to afford an adequate, expedient and inexpensive remedy for declaring the rights and obligations of litigants in one action." <u>Id.</u> Thus, when the action is a declaratory judgment action, it is within the court's discretion to decline "to grant declaratory relief because of the non-joinder of an interested party, regardless of whether the absent party is indispensable within the meaning of Rule 19(b) of the Federal Rules of Civil Procedure." <u>Delpro Co. v. Nat'l Mediation Board of the U.S.</u>, 509 F. Supp. 468, 476 (1981) (citing <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 155 (1967) (dictum), *overruled on other grounds*; <u>Delno v. Market Street Railway Co.</u>, 124 F.2d 965, 968-69 (9th Cir. 1942)). In this case, therefore, the Court should grant the motion to dismiss because joinder of all remaining Class B members is not feasible in this court and a judgment declaring Plaintiffs' rights with respect to the existing Defendants will not finally resolve the issues as to all Class B members.

Accordingly, Defendants Selk and Laurel request that the Amended Complaint be dismissed.

## CONCLUSION

Plaintiffs have failed to establish that this Court has personal jurisdiction over Defendants Arenson, Arenson Holdings, D.A. Gardens and J12 and the claims against them must be dismissed. Further, since Arenson Holdings, D.A. Gardens and J12 are necessary parties and this Court cannot exercise jurisdiction over them, Defendants Selk

34

and Laurel's Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(7) for

failure to join a necessary party under Rule 19 should be granted.

DATE: June 3, 2005

_____
SEAN J. BELLEW (#4072)
DAVID A. FELICE (#4090)
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
(302) 295-2000
(302) 295-2013 (Fax)

THOMAS M. WOOD, IV
Neuberger, Quinn, Gielen, Rubin
 & Gibber, P.A.
One South Street, 27th Floor
Baltimore, Maryland 21202-3201
(410) 332-8523 (Direct)
(410) 332-8564 (Fax)

Attorneys for Defendants

220409v3-1060.3

35