Not Reported in A.2d                                             **Page  1**
Not Reported in A.2d, 1991 WL 129174
**(Cite as: Not Reported in A.2d)**
н

Not Reported in A.2d, 1991 WL 129174
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Court of Chancery of Delaware, New Castle
County.
RED SAIL EASTER LIMITED PARTNERS, L.P.,
a Delaware limited partnership, Delphi Easter
Partners Limited Partnership, a New York limited
partnership, Plaintiffs,
v.
RADIO CITY MUSIC HALL PRODUCTIONS,
INC., a Delaware corporation, Rockefeller Group,
Inc., a New York corporation, Spectacular Partners,
Inc., a Delaware corporation, Easter Show Limited
Partnership, a Delaware limited partnership,
Defendants.
Civ. A. No. 12036.

Submitted: June 12, 1991.
Decided: July 10, 1991.

William Prickett , and Ronald A. Brown, Jr. of
Prickett, Jones, Elliott, Kristol & Schnee,
Wilmington, for plaintiffs.
William D. Johnston , and Melanie K. Sharp of
Young, Conaway, Stargatt & Taylor , Wilmington
(Ronald S. Rauchberg , Esquire, and Michael D.
Povman of Proskauer Rose Goetz & Mendelsohn,
New York City, of counsel), for defendants Radio
City Music Hall Productions, Inc., Rockefeller
Group, Inc. and Spectacular Partners, Inc.
Joseph A. Rosenthal of Morris, Rosenthal, Monhait
& Gross, P.A., Wilmington, for Easter Show
Limited Partnership.

*MEMORANDUM OPINION*

ALLEN , Chancellor.
**\*1** This is an action by the limited partners of a
Delaware limited partnership against the
partnership, its corporate general partner, and the
corporate parent and grandparent of the general
partner.   The allegation is that defendants have
breached duties arising out of the limited partnership
agreement and certain ancillary agreements between
the limited partners and the general partner and its
parent.   Pending is a motion of the corporate
grandparent-Rockefeller Group, Inc.-to dismiss the
complaint for lack of personal jurisdiction.

Plaintiffs, Red Sail Limited Partners, L.P., and
Delphi Easter Partners Limited Partnership, are the
only limited partners of Easter Show Limited
Partnership.   The principal defendants are:  the
general partner, Spectacular Partners, Inc.;   its sole
stockholder, Radio City Music Hall Productions,
Inc.;   and Rockefeller Group, Inc., the sole
stockholder of Radio City.   Easter Show is a
Delaware limited partnership, and Spectacular
Partners and Radio City are both Delaware
corporations.   Rockefeller Group is a New York
corporation.

Rockefeller Group has moved for dismissal under
Rule 12(b)(2) and (5).   It claims that no facts exist
that would justify the assertion of personal
jurisdiction over it by this court because it was not a
party to the partnership agreement or any of the
other agreements at issue;   it does no business in
Delaware;   and it has done no act in Delaware
related to this transaction.   It affirms that it did
cause the incorporation of Radio City Music Hall
Products, Inc., as a Delaware corporation (as well as
certain other subsidiaries), and it acknowledges that
that required a filing in Delaware, but it asserts that
that act was years ago and has no relationship
whatsoever with the claims that plaintiffs would
require it now to defend in this jurisdiction.   This
sole contact, unrelated to the facts alleged to
constitute a wrong, is, it says, insufficient under the
*International Shoe* line of cases FN1 to support this
court's exercise of personal jurisdiction over it.

Plaintiffs respond that, in *Sternberg v. O'Neil,*
Del.Supr., 550 A.2d 1105 (1988) , the Delaware
Supreme Court interpreted *International Shoe* and
its progeny to permit the courts of this state to
exercise personal jurisdiction over the parent of a
wholly-owned subsidiary incorporated in Delaware
on any cause of action arising out of the operation of
that subsidiary. FN2

Rockefeller Group's principal place of business is
New York City.   Its principal activity is
developing, owning, and operating real estate.   The
record contains no evidence that Rockefeller Group
owns real estate in Delaware or that it otherwise
conducts business in Delaware.   The only acts in
Delaware that Rockefeller Group has done involve
filings necessary to form and to merge several

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                          **Page   2**
**(Cite as: Not Reported in A.2d)**

wholly-owned subsidiaries. Neither the formation nor the merger of any of those corporations constitute any part of the facts alleged in the complaint as a wrong. The record establishes that, before April of 1984, Rockefeller Group created four Delaware subsidiaries and caused two of those subsidiaries to merge into one of the other two. One of these two remaining Delaware subsidiaries is Radio City, the other is not a party to this litigation or otherwise associated with the agreements at issue.

**\*2** The record also contains evidence of activity in Delaware by subsidiaries of Rockefeller Group. In April of 1984 a subsidiary of Rockefeller Group registered to do business in Delaware. This subsidiary, however, is in no way involved in this case.

The question whether to exercise personal jurisdiction over a non-resident defendant involves a two part inquiry: (1) may the defendant constitutionally be required to litigate the plaintiff's claim in this jurisdiction given the defendant's conduct, its relationship with the forum and the claims sought to be adjudicated; and (2) does the Delaware statutory law authorize exercise of the constitutional power (if it exists in the circumstances) to compel such adjudication in the courts of this state.

I need not express an opinion on the constitutionality of requiring one in the position of Rockefeller Group to defend litigation of this sort in Delaware since I am firmly of the view that the language of the statutory enactment plaintiffs invoke to justify service of process-Section 3104 of Title 10 of the Delaware Code-cannot be stretched to cover this case without breaking the necessary connection between statutory words and common usage of the English language. *See Trans-Americas Airlines, Inc. v. Kenton,* Del.Supr., 491 A.2d 1139, 1142-43 (1985).

Plaintiffs invoke three subsections of Section 3104(c) as authorizing service of process on Rockefeller Group in this case. The pertinent statutory language is as follows:

(c) As to a cause of action brought by any person *arising from any of the acts enumerated in this section,* a court may exercise personal jurisdiction over any nonresident, or his personal representative,

who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State. (emphasis added)

Application of these words to the acknowledged facts of Rockefeller Group's involvement with the alleged wrongs does not require great subtlety or the recitation of legal precedent. It is rather straight-forward.

In organizing subsidiary corporations in Delaware, Rockefeller Group has transacted business in this state (subsection (c)(1)), but the claims sought to be litigated here-breach of contract and breach of alleged fiduciary duties, or wrongful participation or conspiracy in either-in no sense relates to those activities in Delaware. *Compare Papendick v. Bosch,* Del.Supr., 410 A.2d 148 (1979), *cert. denied,* 446 U.S. 909 (1980). Section 3104 expressly requires that where substituted service is employed under its terms, the wrong alleged must arise from the "acts enumerated." As the wrongs here alleged do not arise from the business that Rockefeller Group transacted in Delaware, subsection (c)(1) of Section 3104 does not authorize service of process upon it in this case.

**\*3** Subsection (c)(3) authorizes service of process when there is a tortious injury in the state by an act or omission in this state. Since the only act in Delaware that Rockefeller Group can be said to have done is to cause the formation and merger of its subsidiaries, and since those acts themselves are no part of any wrong (in this state or outside of it), this subsection offers plaintiffs no ground to require Rockefeller Group to appear in this action.  FN3

These two sub-sections address specific personal jurisdiction-that is, jurisdiction to adjudicate a specific claim that itself is associated in some way with the forum jurisdiction. Subsection (c)(4)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

addresses a situation in which a defendant is generally affiliated with the forum jurisdiction. That is, subsection (c)(4) will apply when a defendant has had contacts with this state that are so extensive and continuing that it is fair and consistent with state policy to require that the defendant appear here and defend a claim even when that claim arose outside of this state and causes injury outside of this state. *See Sternberg v. O'Neil,* 550 A.2d at 1117; *Sears, Roebuck & Co. v. Sears plc,* 744 F.Supp. 1297, 1302-04 (D.Del.1990). Plainly, the minimal connection that Rockefeller Group has had with this state would be insufficient to predicate service of process on Section 3104(c)(4). There is here no "persistent course of conduct in the State" nor is there any suggestion that Rockefeller Group "derives substantial revenue from services, or things used or consumed in the State." Therefore, subsection (c)(4) is unavailing to plaintiffs.

I conclude therefore that Section 3104 does not authorize this court to exercise jurisdiction over Rockefeller Group. This conclusion is not inconsistent with the holding in *Sternberg v. O'Neil,* Del.Supr., 550 A.2d 1105 (1988). That case addressed the constitutional issue that questions of personal jurisdiction over non-resident defendants inevitably raises. It did not concern the separate question whether Delaware law authorized service of process, since the defendant there had appointed an agent and so was "present" in the state. *Id.* at 1109 (citing *Pennsylvania Fire Ins. Co. v. Gold Issue Mining and Milling Co.,* 243 U.S. 93, 95 (1917). FN4

In *Sternberg,* the Delaware Supreme Court held that it was consistent with traditional notions of fair play and substantial justice-that is, it was constitutional-to require a foreign corporation that had long owned all of the stock of a Delaware corporation to appear and defend a double derivative suit charging the directors of the Delaware company and its parent with breach of fiduciary duty.

Plaintiffs argue that, after *Sternberg,* this court must be authorized to exercise jurisdiction under Section 3104 over an out-of-state parent of a Delaware corporation because Section 3104 has been "construed to confer jurisdiction to the maximum extent possible under the due process clause." *LaNuova D & B, S.p.A. v. Bowe Co., Inc.,* Del.Supr., 513 A.2d 764, 768 (1988). In my

opinion, the Supreme Court did not intend in *LaNuova* to direct the trial court to ignore the specific words of Section 3104 and to henceforth analyze all questions arising under Section 3104 only in the broad terms of fundamental fairness that guide determination of the constitutional question. The Supreme Court commands that this statute be given a liberal construction so that its purpose is achieved, but it has not directed that the application of statutory words to the facts in hand be slighted.

*\*4 Nor on the current record can the activities of Rockefeller Group's subsidiaries in Delaware be attributed to Rockefeller Group. FN5 Courts in Delaware will ignore the separate corporate existence of a subsidiary and attribute its activities in Delaware to the parent only if the subsidiary is the alter ego or a mere instrumentality of the parent, or if the subsidiary acts as the agent of the parent. *Buechner v. Farbenfabriken Bayer Aktiengesellschaft,* Del.Supr., 154 A.2d 684 (1959) ; *Sears, Roebuck & Co.,* 744 F.Supp. at 1304; *Mobile Oil Corp. v. Linear Films, Inc.,* 718 F.Supp. 260, 265-72 (D.Del.1989). The record contains no evidence that either basis for imputing the acts of the subsidiary to the parent apply to Radio City or to the Rockefeller Group subsidiary that registered to do business here.

Finally, plaintiffs assert personal jurisdiction over Rockefeller Group based on a conspiracy theory of jurisdiction. It cites *Istituto Bancario Italiano SpA v. Hunter Eng. Co., Inc.,* Del.Supr., 449 A.2d 210 (1982), but that case too dealt with the constitutional fairness issue, not with statutory construction. In all events, the claim is that Rockefeller Group conspired with its wholly owned subsidiary to breach the partnership agreement and the ancillary agreements, and that the formation of Spectacular Partners and Easter Show were acts in Delaware in furtherance of that conspiracy.

A theory of personal jurisdiction based upon an alleged conspiracy between a foreign corporation and its wholly owned Delaware subsidiary is very close to being merely another way to assert that a controlling shareholder may always be sued in Delaware on any claim made against the subsidiary. A controlling shareholder does by definition control (or have the power to control) the acts of its subsidiary. Thus, an attempt to apply a conspiracy theory to parent-subsidiary corporations in order to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                    **Page   4**
**(Cite as: Not Reported in A.2d)**

extend the reach of Section 3104 raises particular concerns.     I need not address those concerns, however, because, assuming that Rockefeller Group may be subjected to the compulsion of legal process under Section 3104 if any party with whom it is in conspiracy could be served under Section 3104, still plaintiffs have failed to show that any of the defendants could be served under the terms of that statute.     In other words, if the conspiracy theory means Rockefeller Group may be sued in any jurisdiction in which an act in furtherance of the conspiracy occurred, plaintiffs have failed to make a *prima facie* case that the only Delaware acts-filing of the Spectacular Partners incorporation document and of the limited partnership documents-were part of a conspiracy to breach duties created by the funding of the limited partnership obligations.     It is not enough to sustain service of process under Section 3104 when challenged on a motion under Rule 12(b)(2) or (5) that plaintiffs might imagine that an act in Delaware might possibly be related to the wrong alleged and that a non-resident defendant might possibly have participated in some way in that action ("conspired").     Plaintiffs' obligation is to come forward with some evidentiary support for such speculation.     *See Hart Holding Co. Inc. v. Drexel Burnham Lambert Inc.,* Del.Ch., C.A. No. 11514, Allen, C. (Feb. 13, 1991).     Here they have not done so.

**\*5** The motion to dismiss is therefore GRANTED.

FN1.     *See, e.g., International Shoe Co. v. Washington,* 326 U.S. 310 (1945) ;   *Shaffer v. Heitner,* 433 U.S. 186 (1977) ;   *Burger King v. Rudzewicz,* 471 U.S. 462 (1985) ;   *Burnham v. Superior Court of California,* 110 S.Ct. 2105 (1991) .

FN2. This principle is breath-taking in scope.     It would apply for example to support jurisdiction over a New York corporation that owned a Delaware subsidiary whose employee was involved, during the course of his employment, in an intersection collision in Los Angeles.

FN3. In so concluding I need not express any view on the question whether a financial impact on a Delaware corporation (arising for example from the misappropriation of trade secrets) is "tortious injury in the State" within the meaning of this section.

FN4. The present case is also different in this respect from *In re USACafes, L.P. Lit.,* Del.Ch., Cons. C.A. 11146, Allen, C. (June 7, 1991), where the directors of a Delaware corporation were subject to service of process under the director's longarm statute, 10 *Del.C.* § 3114.

FN5. Indeed, the record does not disclose any such activities in Delaware, except the filing by Radio City of the incorporation documents of Spectacular Partners and the filing by Spectacular Partners of the limited partnership documents.     Thus, while those Rockefeller Group subsidiaries are plainly "present" in Delaware by reason of their incorporation, they do not do business generally in this state for purposes of Section 3104(c).

Del.Ch.,1991.
Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Productions, Inc.
Not Reported in A.2d, 1991 WL 129174

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.