EXHIBIT 5

OPERATING AGREEMENT

OF

ALH HOLDINGS LLC

DATED AS OF JUNE 12, 1998

DO NY/83645.17

Membership Interest, except to the extent otherwise required by Code Section 706(d). Distributions made on or after the effective date of transfer shall be made to the transferee, regardless of when such distributions accrued on the books of the Company. The effective date of the transfer shall be (a) in the case of a voluntary transfer, the date on which the Manager receives written notice of the transfer, or (b) in the case of an involuntary transfer, the date of the operative event.

5.6  Company Adjustments.  Upon a transfer of a Membership Interest (within the meaning of "transfer of an interest in a partnership" in Code Section 743), or upon the death of a Member, the Company shall, if requested by any Member, elect in a timely manner pursuant to Code Section 754 and pursuant to corresponding provisions of applicable state and local tax laws, to adjust the basis of the assets of the Company pursuant to Code Sections 734 and 743.

## ARTICLE VI
## MANAGEMENT OF THE COMPANY AND SUBSIDIARIES

6.1  Manager.

(a)  Subject to the terms of this Agreement, the overall business, operations and affairs of the Company shall be managed by a manager designated pursuant to the terms of this Agreement (the "Manager") in the ordinary course of business, in compliance with applicable law and the terms of this Agreement. Subject to the terms of Section 6.1(b), the Manager of the Company shall be Lion LLC (the "Initial Manager"). The initial officers of the Company shall be the individuals as set forth on Exhibit D hereto, who shall hold the offices set forth opposite their respective names on Exhibit D until replaced as provided herein. No Member acting alone, other than the Manager acting as authorized pursuant to this Agreement, shall have any right, power or authority to bind the Company.

(b)  In the event of an Operational Default, then (i) the Class A Members acting by a Class A Vote (the "Removal Notice"), shall be entitled to (x) appoint a Manager to replace the Initial Manager; (y) remove and replace the Class D Representatives appointed pursuant to Section 6.2(b)(iii) and those directors appointed pursuant to Section 6.3(d); provided that a Removal Notice (1) shall be given to all other Members not less than five (5) business days, following such removal and appointment; (2) sets forth the names of individuals designated to replace such Class D Representatives and directors; and (3) is signed on behalf of the Class A Members and (z) remove and replace any or all officers of the Company.

6.2 <u>Supervisory Board</u>.

(a) Except as provided elsewhere herein, Major Decisions (as defined herein) shall be decided upon only by the Members, acting through a Supervisory Board (the "<u>Supervisory Board</u>") as provided in Section 6.2(c). The Supervisory Board shall be comprised of five individual representatives (the "<u>Representatives</u>") appointed by the Members pursuant to Section 6.2(b). Any Representative on the Supervisory Board may be removed or replaced at any time, with or without cause, by the Class represented by such Representative, effective immediately upon notice to the Members of the other Classes. Each Representative shall be an officer, director of, or holder of a direct or indirect equity interest in, a Member or an officer or director of a corporation controlled by a Member. Each Representative may, from time to time, designate a deputy representative, by duly executed power of attorney (each, a "<u>Deputy Representatives</u>") and written notice to the Company and each of the Members, to attend and vote at Supervisory Board meetings in such Representative's absence. A reasonable number of Deputy Representatives or other assistants to the Representatives may also attend meetings of the Supervisory Board at which the applicable Representative is present.

(b) Each Class shall (from time to time as necessary) vote such Class' Membership Interest to nominate and elect to the Supervisory Board (or remove therefrom as directed in writing by the Class nominating such director) the Representatives designated separately by Members (or classes thereof) to serve on the Supervisory Board as follows:

(i) the Class A Members shall be entitled and required (acting by Class A Vote) to designate two Representatives to serve on the Supervisory Board (the "<u>Class A Representatives</u>");

(ii) the Class B Members shall be entitled and required (acting by a Class B Vote) to designate one Representative to serve on the Supervisory Board (the "<u>Class B Representative</u>"); and

(iii) until the occurrence of an Operational Default, the Class D Member shall be entitled and required to designate two Representatives to serve on the Supervisory Board (the "<u>Class D Representatives</u>") and after the occurrence of an Operational Default such Class D Representatives shall be designated by the Class A Members.

(c) The following matters (each, a "<u>Major Decision</u>") may be decided only upon (and the Company or any Subsidiary, and the Manager and the officers of the Company or such Subsidiary on its behalf, shall not take any action relating to such matters without) the adoption of a resolution by (y) the Class A Representatives or their

Deputy Representatives present in person or by proxy at a meeting of the Supervisory Board or (z) the unanimous written consent of the Class A Representatives or their Deputy Representatives for action taken without a meeting:

    (i) The consolidation, combination or merger of the Company or any Subsidiary with or into any other Person or the sale, disposition, assignment, transfer or lease of (y) all or substantially all the assets or (z) any securities of, or other ownership interest in, the Company or any Subsidiary to another Person (other than a pledge of assets as security for a loan) including, without limitation, a Public Sale (each such occurrence, a "Capital Event");

    (ii) The acquisition by the Company or any Subsidiary of all or substantially all the assets of or securities or other ownership interest in any other Person;

    (iii) Subject to Section 10.6, any modification of or amendment to this Agreement;

    (iv) The engagement by the Company in any business other than the business described in this Agreement;

    (v) The making of any loan(s) to, or guarantee(s) of any obligation(s) of, any Person, or causing the Company or any Subsidiary to become a surety, guarantor or accommodation party, other than any guarantee(s) required under the Credit Facility;

    (vi) The issuance or sale (or the offer to issue or sell) to any Person of any Membership Interest or other interest or participation in the profits, losses, assets, properties, capital or business of the Company or any Subsidiary;

    (vii) Any distribution of cash flow, capital proceeds or other assets or property by the Company or any Subsidiary to any Member other than in accordance with Sections 4.1 and 5.1 of this Agreement;

    (viii) Any change of the Company's or any Subsidiary's Fiscal Year;

    (ix) The establishment, amendment or modification of rules for the operation of the Supervisory Board or similar governing body of any Subsidiary, including, without limitation, levels of authority for the officers of the Company or any Subsidiary;

(x) The incurrence of any indebtedness for borrowed money (other than borrowings under a Credit Facility) from any Person (including any Member) or the granting of any lien, pledge, mortgage or security interest on any assets of the Company or any Subsidiary other than in the ordinary course of the Company's or any Subsidiary's business;

(xi) The taking of any action that would constitute a Bankruptcy of the Company or any Subsidiary;

(xii) The assignment, transfer, pledge, compromise or release of any claim or debt due to the Company or any Subsidiary, which assignment, transfer, pledge, compromise or release is for an amount in excess of $500,000;

(xiii) Any settlement of any claim, litigation or proceeding, which settlement would require payments by the Company or any Subsidiary aggregating in excess of $500,000, or the commencement of any litigation or proceeding against any Person;

(xiv) The approval of the Annual Budget or any amendment thereto by the Company or any Subsidiary;

(xv) The making of any capital expenditure by the Company or any Subsidiary (other than for the purchase of land for development or other purchases of equipment, in each case in the ordinary course of the Company's or any Subsidiary's business and as is consistent with the Annual Budget or provisional budget, as applicable) in excess of $50,000 or which exceeds any budgeted amount in any Annual Budget or Provisional Budget by more than twenty percent 20% of such budgeted amount;

(xvi) The removal or replacement of any of the five (5) most highly compensated employees of the Company (including for this purpose, employees of any Subsidiary);

(xvii) The execution by the Company or any Subsidiary of any contract or agreement (x) with any Affiliate of the Company or any Member, (y) which requires aggregate payments by the Company over the term thereof in excess of $100,000 or (z) the fixed term of which extends beyond the second anniversary of the date of this Agreement;

(xviii) The contribution by the Company of any capital to Landmark Homes of Florida, Inc. (other than capital in an amount of up to

$3,250,000 to be contributed to Landmark Homes of Florida, Inc. out of the Capital Contributions being made to the Company on the date hereof;

(xix) Any modification or amendment to any Credit Facility (other than any modification or amendment which does not increase the amount of any such Credit Facility);

(xx) the taking of any action (A) other than in the ordinary course of business or (B) not in compliance with the Annual Budget or Provisional Budget (as the case may be), except as may be permitted pursuant to Section 6.2(c)(xv) above or as may otherwise constitute immaterial deviations from the Annual Budget or Provisional Budget; and

(xxi) any increase in the Ash Payment or any acceleration of the time or priority of its payment or any granting of security for such payment.

(d) Meetings of the Supervisory Board shall be held at the Company's principal place of business or such other place as the Supervisory Board may agree and at such regular times not less frequently than once each calendar month as may be specified by the Manager and, in addition, special meetings may be called by any Member by giving at least five (5) Business Days prior notice thereof to each of the Representatives. Notice of each meeting shall be in writing and shall state the date, time and place at which such meeting is to be held and the purposes for which such meeting is called. An annual meeting of the Supervisory Board shall be held no later than sixty (60) days prior to the beginning of each Fiscal Year or at such other time and place as the Representatives may mutually designate.

(e) The attendance of a Representative (or his or her Deputy Representative) at a meeting shall constitute a waiver of notice of such meeting. Subject to Section 6.2(c), the presence at a meeting of at least four Representatives (or Deputy Representatives) shall constitute a quorum for the transaction of all business of the Supervisory Board. Any meeting of the Supervisory Board which is properly called and at which a quorum is present may be adjourned to a date which is no later than twenty-one (21) days from the date upon which the initial meeting was called. A Representative (or his or her Deputy Representative) may vote either in person or by written proxy signed by the Representative (or his or her Deputy Representative) or by his or her duly authorized attorney-in-fact. Each Representative (or his or her Deputy Representative) shall have one vote on all matters presented to the Supervisory Board for approval, and except with respect to a Major Decision, the vote of a majority of the Representatives at a meeting which is properly called and at which a quorum is present shall be binding on the Supervisory Board. Any action taken by the Representatives (or his or her Deputy Representatives) pursuant to this Agreement shall be binding on such

Member. Any action required or permitted to be taken at a meeting of the Supervisory Board may be taken (i) by means of a telephone conference in which all Persons participating in the meeting and constituting a quorum can hear and speak to each other or (ii) by means of unanimous written consent executed by all of the Representatives (or Deputy Representatives) representing all Representatives. All action taken pursuant to the immediately preceding sentence shall be deemed for all purposes to have been taken at a meeting of the Supervisory Board.

(f) Neither the Manager nor any Representative or Deputy Representative shall be liable, responsible, or accountable in damages or otherwise to the Company or any of the Members for any failure to take any action or the taking of any action within the scope of authority conferred on it, him or her by this Agreement made in good faith, except that the Manager, Representatives and Deputy Representatives shall be liable, responsible and accountable for their own fraud, criminal action, bad faith or gross negligence. Nothing in this Section 6.2(f) shall be deemed to make the Manager or any Representative or Deputy Representative liable, responsible or accountable to any Person other than the Company or the Members.

6.3 <u>Subsidiary Boards of Directors</u>. Subject to the terms of Section 6.1(b), each Class shall (from time to time as necessary) vote such Class' Membership Interest to nominate and elect to the board of directors of ALH or any other Subsidiary, as the case may be (each a "<u>Subsidiary Board</u>") (or remove therefrom as directed in writing by the Class nominating such director) the directors designated separately by the Classes to serve on such Subsidiary Board as follows:

(a) the Class A Members shall be entitled and required (acting by Class A Vote) to designate two directors to serve on a Subsidiary Board;

(b) the Class B Members shall be entitled and required (acting by Class B Vote) to designate one director to serve on a Subsidiary Board;

(c) the Class A Members and the Class B Member (acting by a Class A Vote and a Class B Vote, respectively) shall be entitled and required to jointly designate one director to serve on a Subsidiary Board; and

(d) until the occurrence of an Operational Default the Class D Member shall be entitled and required to designate two directors to serve on a Subsidiary Board and thereafter the Class A Members shall have the right to designate such directors.

6.4 <u>Annual Budget</u>. Not later than sixty (60) days prior to the commencement of each Fiscal Year, the Manager shall prepare and submit to the Supervisory Board a draft of annual capital and operating budgets, business plan and cash flow projections for

such Fiscal Year of the Company (the "Draft Annual Budget"). Promptly following the submission of the Draft Annual Budget, and in any event not later than ten (10) days after such submission, the Supervisory Board shall review and consider the Draft Annual Budget, make such revisions or amendments thereto as the Supervisory Board shall deem appropriate and adopt the Draft Annual Budget as so revised or amended (such budget as adopted and as revised or amended by the Supervisory Board with, where applicable, the approval of the Class A Representatives, the "Annual Budget") and shall submit the Annual Budget to the Class A Representatives for approval. Promptly thereafter, the Class A Representatives shall review the Annual Budget and, subject to receipt of the Draft Annual Budget as provided above, not later than fifteen (15) days prior to the commencement of the Fiscal Year, shall notify the Supervisory Board and the Manager of its approval or disapproval of the Annual Budget and, in the case of its disapproval, shall provide in reasonable detail the reasons for its disapproval. If the Class A Representatives shall have disapproved the Annual Budget, the Manager and the Class A Representatives shall consult in good faith to agree on the Annual Budget. If, following such consultation, the Class A Representatives do not approve the Annual Budget on or before the commencement of any Fiscal Year, a provisional budget (calculated as provided below) (the "Provisional Budget") shall be used until such time as an Annual Budget is approved by the Class A Representatives, and all references to Annual Budget shall be to such Provisional Budget. The Provisional Budget shall be calculated as follows: for items constituting expenses, the Provisional Budget amount shall be equal to the greater of (i) 100% of the actual expenditures for such items in the immediately preceding Fiscal Year or (ii) the lesser of the amounts adopted by the Supervisory Board or proposed by the Class A Representatives, respectively, in their discussions of the Annual Budget for such Fiscal Year. For other items, the Provisional Budget amount shall be the amounts adopted by the Supervisory Board.

While the Provisional Budget is in effect, the Manager and the Class A Representatives shall consult in good faith to agree on an Annual Budget. Notwithstanding the foregoing, if an Annual Budget is not approved by the Class A Representatives, in the exercise of their reasonable judgment within three months after commencement of any Fiscal Year, then commencing on the first day of the fourth month of such Fiscal Year, an Operational Default shall be deemed to have occurred.

6.5    Member Voting.

(a)    In the event that pursuant to the Act or this Agreement, the Members are entitled or required or choose to vote on any matter, each Member shall have the number of votes set forth below:

| Member | Number of Votes |
|---|---|
| Class A Members | 10 |
| Class B Member | 6 |
| Class C Member | 1 |
| Class D Member | 1 |
| Class E Member | 1 |

(b) In the case of any vote cast by the Class A Members or Class B Member, as the case may be, any such vote shall be by a Class A Vote or Class B Vote as applicable.

6.6 <u>Limitation on Authority of Members</u>.

(a) No Member is an agent of the Company solely by virtue of being a Member, and no Member has authority to act for the Company solely by virtue of being a Member.

(b) Any Member who takes any action or binds the Company in violation of this Article VI shall be solely responsible for any loss and expense incurred by the Company or any other Member as a result of the unauthorized action and shall indemnify and hold the Company and any such other Member harmless with respect to the loss or expense, including any reasonable attorney fees.

## ARTICLE VII
## TRANSFERS OF INTERESTS

7.1 <u>Transfers</u>.

(a) Except as set forth herein, no Member may Transfer all or any portion of such Member's Membership Interest except with the prior written consent of each Member, which consent may be given or withheld in the sole discretion of such Member, or as provided in Section 7.1(b). The Transfer of any Membership Interest in violation of the prohibition contained in this Section 7.1 shall be deemed invalid, null and void, and of no force or effect. Any Person to whom a Membership Interest is attempted to be transferred in violation of this Section 7.1 shall not be entitled to vote on matters coming before the Supervisory Board or the Members, appoint Representatives (or Deputy Representatives) to serve on the Supervisory Board, participate in the management of the Company, receive distributions (liquidating or otherwise) from the