IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHAMROCK HOLDINGS OF | ) | |
| CALIFORNIA, INC., SHAMROCK | ) | |
| CAPITAL ADVISORS, INC., EUGENE I. | ) | |
| KRIEGER, GEORGE J. BUCHLER and | ) | |
| BRUCE J. STEIN, | ) | |
| | ) | Civil Action No. 04-1339-SLR |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AVIE ARENSON, SELK, LLC, LAUREL | ) | |
| EQUITY GROUP, LLC, J12ALH | ) | |
| ASSOCIATES, A. ARENSON | ) | |
| HOLDINGS, LTD. AND D.A. | ) | |
| GARDENS, LTD., | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT ARENSON'S MOTION TO DISMISS

MORRIS, NICHOLS, ARSHT & TUNNELL
A. Gilchrist Sparks, III (#467)
S. Mark Hurd (#3297)
Samuel T. Hirzel (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
 Attorneys for Plaintiffs

OF COUNSEL:

Gregory P. Joseph Law Offices LLC
Gregory P. Joseph
Pamela Jarvis
805 Third Avenue, 31st Floor
(212) 407-1200
New York, NY 10022

August 8, 2005

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                           ii

NATURE AND STAGE OF THE PROCEEDINGS                                           1

SUMMARY OF ARGUMENT                                                           1

STATEMENT OF FACTS                                                            2

ARGUMENT                                                                      3

II.   BY NOT MOVING TO DISMISS THE ORIGINAL
      COMPLAINT FOR FAILURE TO STATE A CLAIM,
      ARENSON WAIVED HIS RIGHT TO BRING THIS MOTION.                          4

III.  THE AMENDED COMPLAINT STATES A CLAIM FOR A
      DECLARATORY JUDGMENT AGAINST ARENSON.                                   4

CONCLUSION                                                                    17

<u>TABLE OF CITATIONS</u>

<u>Cases</u>                                                                          <u>Page(s)</u>

*Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227 (1937)                            3-4

*Alfred Hofmann, Inc. v. Knitting Machs. Corp.*,
    123 F.2d 458 (3d Cir. 1941)                                             12

*Assist Stock Mgmt. LLC v. Rosheim*, 753 A.2d 974 (Del. Ch. 2000)               11-12

*Cairns v. Gelmon,* 1998 WL 276226 (Del. Ch. May 21, 1998)                      *passim*

*Cameron & Barkley Co. v. Fabreeka Int'l., Inc.*,
    144 F. Supp. 2d 1382 (M.D. Ga 2001)                                   14, 15

*Coleman v. Taub,* 638 F.2d 628 (3d Cir. 1981)                                    11

*Collins County, Tex. v. Homeowners Ass'n for Values Essential to*
    *Neighborhoods, (HAVEN),* 915 F.2d 167 (5th Cir. 1990)                   9

*Conley v. Gibson,*  355 U.S. 41 (1957)                                           3

*Enka B. V. v. E. I. duPont de Nemours & Co*.,
    519 F. Supp. 356 (D. Del. 1981)                                        15

*Essex Ins. Co. v. Kasten Railcar Servs., Inc.,*
    129 F.3d 947 (7th Cir. 1997)                                         12, 13

*Fischer & Porter Co. v. Moorco Int'l, Inc.*, 869 F. Supp. 323 (E.D. Pa. 1994)   3 n.2

*Franklin Life Ins. Co. v. Johnson*, 157 F.2d 653 (10th Cir. 1946)               12

*GNB Battery Techs., Inc. v. Gould, Inc.,* 65 F.3d 615 (7th Cir. 1995)           6

*Grace Holdings, L.P. v. Sunshine Mining and Refining Co.*,
    901 F. Supp. 853 (D. Del. 1995)                                    3, 3 n.2, 4

*Japan Gas Lighter Ass'n v. Ronson Corp.,*
    257 F. Supp. 219 (D.N.J. 1966)                                         15

*Kehr Packages, Inc. v. Fidelcor, Inc.,*
    926 F.2d 1406 (3d Cir. 1991)                                            3

*Myers v. Am. Dental Ass'n*, 695 F.2d 716 (3d Cir. 1982)                          4

*Mylan Pharms., Inc. v. Thompson,* 268 F.3d 1323 (Fed. Cir. 2002)                9

*Pfeiffer v. Price*, 2004 WL 3119780 (D. Del. 2004)                             3

*Pursuit Athletic Footwear, Inc. v. Save Power Ltd.,*
    1996 WL 328596 (D. Del. June 7, 1996)                   9 n.7, 11

*Solar Cells, Inc. v. True North Partners, LLC,*
    2002 WL 749163 (Del. Ch. Apr. 25, 2002)                 *passim*

*Stifel Fin. Corp. v. Cochran,* 809 A.2d 555 (Del. 2002)                        11

*Tera Sys., Inc. v. Mentor Graphics Corp.* C.A. 20300,
    2003 Del. Ch. LEXIS (Del. Ch. Aug. 21, 2003)            15-16

*The Cont.l Ins. Co. v. The Law Office of Thomas J. Walker, Jr.,*
    171 F.R.D. 183 (D. Md. 1997)                            12, 13

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,*
    140 F.3d 478 (3d Cir. 1998)                             3

*Welch v. Centex Home Equity Co.*, 262 F. Supp. 2d 1263
    (D. Kan. 2003)                                          13


Rules

Federal Rule of Civil Procedure 8                                               6

Federal Rule of Civil Procedure 12                                              1, 4

Federal Rule of Civil Procedure 23.1                                            12


Statutes

10 Del. C. § 6501                                                               3

28 U.S.C. § 2201-02                                                             3


Other Authorities

10B Charles Alan Wright et al., *Federal Practice
    and Procedure* § 2751 (3d ed. 1998)                     15

## NATURE AND STAGE OF THE PROCEEDINGS

Although he filed no motion to dismiss for failure to state a claim with respect to the original complaint, defendant Avie Arenson ("Arenson") has filed a motion to dismiss the Amended Complaint (D.I. 37) for failure to state a claim (D.I. 46). This is Plaintiffs' Answering Brief in opposition to that motion.[1]

## SUMMARY OF ARGUMENT

1. In response to Plaintiffs' original complaint, Arenson moved only to dismiss for lack of personal jurisdiction. Therefore, under the plain language of Rules 12(g) and 12(h)(2) of the Federal Rules of Civil Procedure, Arenson may not now make his current motion to dismiss for failure to state a claim under Rule 12(b)(6).

2. In any event, the Amended Complaint unquestionably states a claim for relief with respect to Arenson's rights and obligations as the Class B Representative on ALH's Supervisory Board. The Amended Complaint details Arenson's claims that Plaintiffs (a) wrongfully deprived him of the opportunity for meaningful participation in the Supervisory Board's decision-making process, and (b) caused ALH to take significant actions in violation of his alleged right to consent. All of the Defendants in this action (except Arenson) have repeated these claims in their recently-filed complaint in the U.S. District Court in North Carolina. Arenson also has interfered with Plaintiffs' rights to indemnification and advancement of expenses under Delaware law, and it is undisputed that Arenson, through his ownership and control of two Class B Members, has a

---

[1]     So as to not burden the Court with unnecessary repetition, Plaintiffs incorporate by reference herein the complete recitation of the nature and stage of the proceedings in Plaintiffs' Answering Brief in Opposition to Defendants' Motion to Dismiss, or in the Alternative, for Stay of Proceedings.

cognizable interest in the Class B Members' spurious claims that Plaintiffs have wrongfully caused injury to ALH and the value of the Class B Members' investment in ALH. Plaintiffs therefore state a claim for declaratory relief against Arenson, and his belated motion to dismiss should be denied.

## STATEMENT OF FACTS

A full statement of relevant facts is contained in Plaintiffs' Answering Brief in Opposition to Defendants' Motion to Dismiss the First Amended Complaint for Declaratory Relief, and is incorporated herein by reference.

<u>ARGUMENT</u>

I.    <u>THE APPLICABLE LEGAL STANDARDS</u>

A court may only dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if it is clear that the plaintiffs are not entitled to relief under any set of facts that could be proven consistent with the allegations. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Pfeiffer v. Price*, No. Civ. 04-296-SLR, 2004 WL 3119780, at *2 (D. Del. 2004). All allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the plaintiffs. *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir. 1998); *Pfeiffer,* 2004 WL 3119780, at *2. The moving party has the burden of persuasion. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991); *Pfeiffer,* 2004 WL 3119780, at *2.

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201-02, empowers this Court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." [2] *See also Grace Holdings, L.P. v. Sunshine Mining and Refining Co.*, 901 F. Supp. 853, 857 (D. Del. 1995). To state a claim for a declaratory judgment, a plaintiff must demonstrate the

---

[2]    Because this action was removed to this Court, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, rather than the Delaware Declaratory Judgment Act, 10 *Del. C.* § 6501 (under which this action was originally brought in the Court of Chancery of the State of Delaware), is applicable. *See Fischer & Porter Company v. Moorco Int'l Inc.*, 869 F. Supp. 323, 326 (E.D. Pa. 1994); *Grace Holdings, L.P. v. Sunshine Mining and Refining Co.*, 901 F. Supp. 853, 857 (D. Del. 1995). The Federal Declaratory Judgment Act, however, is similar to the Delaware Declaratory Judgment Act in that they both provide courts with the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201; *see also* 10 Del. C. § 6501.

existence of an actual controversy in which the parties have adverse legal interests, and which is of sufficient immediacy to warrant a declaration of rights. *Id.* (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240-41 (1937)).

II.     BY NOT MOVING TO DISMISS THE ORIGINAL COMPLAINT FOR FAILURE TO STATE A CLAIM, ARENSON WAIVED HIS RIGHT TO BRING THIS MOTION.

Under the plain terms of Federal Rule of Civil Procedure 12, Arenson has waived the right to bring this motion. "Rule 12(g) requires a party who raises a defense by motion prior to answer to raise all such possible defenses in a single motion. They cannot be raised in a second, pre-answer motion." *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 720 (3d Cir. 1982). Here, after Arenson challenged the original complaint solely with respect to the exercise of personal jurisdiction over him, Plaintiffs amended the complaint to, *inter alia*, include detailed allegations further supporting personal jurisdiction based upon Arenson's material participation in the affairs of ALH as well as his extensive and purposeful contacts with the State of Delaware. Like the original complaint, the Amended Complaint reiterates Defendants' assertions that Plaintiffs wrongfully caused ALH to make significant and adverse decisions without their consent. Accordingly, by not asserting that the original complaint failed to state a claim under Rule 12(b)(6), Arenson has waived the right to move to dismiss the Amended Complaint on such grounds.

III.     THE AMENDED COMPLAINT STATES A CLAIM FOR A DECLARATORY JUDGMENT AGAINST ARENSON.

Wholly apart from Arenson's waiver of his belated Rule 12(b)(6) motion, Plaintiffs and Arenson clearly have adverse interests with respect to Arenson's rights as

the Class B Representative and as an indirect holder of Class B equity interests. The Amended Complaint, the allegations of which must be accepted as true for purposes of this motion, avers, among other things, that:

> A controversy has arisen between plaintiffs and defendants with respect to whether plaintiffs have violated Arenson's rights as Class B Representative.

D.I. 37 ¶ 182.  *See also id.* ¶ 158 (alleging that a controversy has arisen among the parties as to their respective rights and obligations under the Operating Agreement which, *inter alia*, defines Arenson's rights and obligations as the Class B Representative on ALH's Supervisory Board).[3]

A violation of someone's right to participate in the deliberations of an entity's governing body is actionable under Delaware law.  *See, e.g., Cairns v. Gelmon,* No. Civ. A. 16062, 1998 WL 276226 (Del. Ch. May 21, 1998); *Solar Cells, Inc. v. True North Partners, LLC*, *No. Civ. A. 19477*, 2002 WL 749163 (Del. Ch. Apr. 25, 2002).  In *Cairns*, the plaintiffs claimed that the defendants had wrongfully caused them to lose their equity in a Delaware corporation.  Mr. Cairns was a director of the corporation at the time the board acted to amend the corporate charter to increase the number or authorized shares, but was not given notice "and was deprived of the opportunity to join in the board's deliberations."  1998 WL 276226, at *6.  The Court of Chancery concluded that these allegations were sufficient to state a cognizable claim for relief, and denied the motion to dismiss.  *Id.*

---

[3]     The rights and obligations of the Representatives to ALH's Supervisory Board are set forth in Article VI of the Operating Agreement.  *See* D.I. 20 Ex. B.

Similarly, in *Solar Cells,* defendants argued that a transaction that eliminated plaintiff's right to <u>minority</u> representation on the LLC's managing board, where the defendants already could control the business and affairs of the company, caused no harm to the plaintiff. 2002 WL 749163, at *7. The Court of Chancery held:

> *That argument carries no weight whatsoever.* To accept that assertion would be to believe that every time the ability to elect a manager or director of a corporation is negotiated, there is no benefit derived therefrom if there is not a right to elect a majority of the managers or directors. Such a notion would certainly come as a surprise to all those who have given valuable consideration in negotiating such valueless rights. *The right to participate in a management group is a valuable right whether or not that participation includes control of the group.*

*Id.* (emphasis added). Accordingly, the allegation in paragraph 182 of the Amended Complaint, in and of itself is sufficient to state a claim for declaratory relief as to Arenson.

Defendants nonetheless argue, *ipse dixit,* that paragraph 182's averment of fact is "conclusory" (D.I. 47 at 5). Defendants thus fail to acknowledge the notice pleading standard applicable to Plaintiffs' claim for declaratory relief. *See* FED. R. CIV. P. 8; *see also GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 620 (7th Cir. 1995) ("It is well established that pleadings in declaratory judgment actions are subject to the same rules of notice pleading as all other actions"). In addition to ignoring Rule 8, Defendants also ignore the fact that the paragraph 182 is supported by other allegations of the Amended Complaint. [4]

---

[4]     Tellingly, Defendants have refrained from arguing that there is in fact no controversy between the parties, and have *not* offered to stipulate that Plaintiffs have not in any way violated Arenson's rights as Class B Representative.

The Amended Complaint, by way of example, alleges that Defendants have repeatedly accused Plaintiffs of wrongfully seizing control of ALH. Specifically, the Amended Complaint alleges that Defendants:

> Supported the Lion Settlement, which resulted in the Class A Members having the right to designate three out of five Representatives on ALH's Supervisory Board, *but claim now that this wrongfully deprived them of a meaningful role in the Board's decision-making process.*

D.I. 37 ¶ 68(g) (emphasis added); *see also id.* ¶ 139 ("Defendants have repeatedly accused plaintiffs of seizing control of ALH. As set forth above, all the Class Representatives, including Arenson, approved the Lion LLC Settlement, which gave the Class A Members the right to designate three of the five Representatives on ALH's Supervisory Board.").

Similarly, paragraph 71 of the Amended Complaint alleges that ALH's Supervisory Board has always had five members and generally requires majority approval for action to be effective, that the Operating Agreement generally does not require the specific consent of the Class B Representative or Class B Members, and that although Major Decisions require the consent of two Class A Representatives, the Operating Agreement does not authorize the two Class A Representatives, acting alone, to make Major Decisions requiring Supervisory Board approval. *Id.* ¶ 71; *see also id.* ¶ 68(b) (Defendants entered into "the Operating Agreement, which created the ALH governance structure that they now attack"). Further confirming the existence of the controversy, Defendants continue to assert that Arenson "has no authority," that his participation is "not important" and that he "does not have any influence" on the Supervisory Board. D.I. 44 at 24; *see also* D.I. 37 ¶ 127 (allegation that Arenson stated

7

in December 2004 that "any further participation [in the Supervisory Board's consideration of the sale of certain ALH operations] would be a waste of [his] time," reflecting Arenson's view that he was not being accorded a meaningful role in his capacity as Class B Representative on the Supervisory Board).

In addition to setting forth Arenson's charge that he was wrongfully being deprived of a meaningful role in the Supervisory Board's decision-making process, the Amended Complaint alleges that "Defendants have also accused plaintiffs of *wrongfully causing ALH to make certain decisions* – especially in connection with the sale of ALH – *without defendants' consent*." *Id.* ¶ 140 (emphasis added). The sale process, and Defendants' consent thereto, necessarily occurred at the level of ALH's Supervisory Board. Plaintiffs have alleged that "the decision to sell ALH was not unilaterally made by plaintiffs; it was unanimously made by ALH's Supervisory Board." *Id.* ¶ 132. In short, the parties dispute whether Arenson, the Class B Representative on ALH's Supervisory Board, approved the decision to sell ALH, and the Amended Complaint therefore states a claim.

Defendants' contentions that Plaintiffs wrongfully deprived Arenson of a meaningful role in the Board's decision-making process and wrongfully caused ALH to make sale decisions without Arenson's consent, although incorrect,[5] state a cognizable claim under Delaware law.[6] Here, like the plaintiffs in *Cairns*, 1998 WL 276226, at *6,

---

[5] As alleged in the Amended Complaint, Arenson in fact consented to certain of the decisions Defendants now challenge.

[6] The alleged wrongful deprivation of information is yet another manifestation of the controversy between the parties. Prior to the filing of this action, Arenson's counsel claimed that Plaintiffs had not advised Arenson of material facts concerning ALH, such that he had not been able to participate meaningfully in

(continued . . .)

Arenson was allegedly deprived of the opportunity to participate in Supervisory Board deliberations and consent to actions by ALH.  *See also Solar Cells,* 2002 WL 749163, at *7 ("The right to participate in a management group is a valuable right whether or not that participation includes control of the group"); *cf. Mylan Pharms., Inc. v. Thompson*, 268 F.3d 1323, 1330 (Fed. Cir. 2002) ("Because it is 'the underlying cause of action of the defendant against the plaintiff that is actually litigated in a declaratory judgment action, a party bringing a declaratory judgment action must have been a proper party had the defendant brought suit on the underlying cause of action.'") (quoting *Collins County, Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods (HAVEN),* 915 F.2d 167, 171 (5th Cir. 1990)).

That there is an actual controversy between Plaintiffs and Arenson that is appropriate for declaratory relief is further confirmed by Defendants' recently-filed complaint in the U.S. District Court for the District of North Carolina (the "NC Complaint").[7]  In the NC Complaint, the Class B Members allege*, inter alia*, that "*without any consent* of the Class B Members, SCA entered into a consulting agreement" with ALH, and that "the concerns and proposals raised by the Class B members *were*

---

(. . . continued)

      Supervisory Board deliberations.  *See, e.g.*, August 8, 2005 Declaration of Pamela Jarvis, Exhibits AA, DD, KK, filed herewith.  To the extent the Court has any concerns regarding whether the Amended Complaint states a claim for declaratory relief against Arenson, Plaintiffs are prepared to file a motion to amend that would include further details regarding the disputes between the parties as to Arenson's participation as a Representative of the ALH Supervisory Board.

[7]     The NC Complaint was included as an exhibit in connection with Defendants' moving papers, D.I. 41, Attachment 9 (Exhibit I), and the Court also may take judicial notice of its contents.  *See Pursuit Athletic Footwear, Inc. v. Save Power Ltd.*, No. Civ. A. 96-40 MMS, 1996 WL 328596, at *10 n.2 (D. Del. June 7, 1996) (taking judicial notice of complaint filed in Texas state court).

*ignored and continued to be ignored*".   NC Complaint ¶¶ 4, 46 (emphasis added). Pursuant to the plain terms of the Operating Agreement, the consent of Class B Members, and their participation in the making of Major Decisions, *occur through Arenson*, their representative on the ALH Supervisory Board:   "Except as provided elsewhere herein, Major Decisions (as defined herein) shall be decided upon only by the Members, *acting through a Supervisory Board.  . .*"   *See* D.I. 20 E. B at § 6.2(a) (emphasis added).   As such, the rights of the Class B Members are inextricably intertwined with the rights of Arenson.

The NC Complaint specifically alleges, by way of example, that at a "June 26, 2003 Supervisory Board meeting . . . Arenson recommended that existing members finance another infusion of capital to assist ALH compete [sic] more effectively . . . rather than sell off the assets piecemeal."   NC Complaint ¶ 48.   According to the NC Complaint, after further discussion among the Representatives on ALH's Supervisory Board, "Arenson voted against the sale." *Id.* ¶ 50.   Similarly, the NC Complaint contains specific allegations regarding a March 24, 2004 meeting of the Supervisory Board, alleging that "Arenson stated that he opposed the sale of BBC for the same reasons he had expressed in connection with the sale of ABI" and that the Supervisory Board "voted in favor of the proposed sale of BBC *over the protests of Arenson* and another member of the Board."   *Id.* ¶¶  51-54 (emphasis added).   Simply put, and contrary to Defendants' assertion that a declaration in favor of Plaintiffs would have no effect upon Arenson (D.I. 47 at 3), the relief Plaintiffs request will prevent Arenson from asserting against Plaintiffs the *Cairns* and *Solar Cells*-type claims that he was deprived of his rights as a member of ALH's Supervisory Board.

As set forth in the Amended Complaint, a dispute also has arisen among Plaintiffs and Arenson regarding Plaintiffs' rights to advancement and indemnification, rights which the Delaware Supreme Court has instructed should be "broadly interpreted" to further the important policy goals of indemnification. *See Stifel Fin. Corp. v. Cochran,* 809 A.2d 555, 561 (Del. 2002). Arenson falsely argues that he has no interest in this dispute, despite the fact that it directly implicates his role as the Class B Representative on ALH's Supervisory Board. The Amended Complaint states that Plaintiffs have demanded indemnification, including reimbursement and advancement of legal fees and other expenses, pursuant to the Consulting Agreement between SCA and ALH and under Section 7.4 of the By-Laws of ALH II. D.I. 37 ¶¶ 149-50. Arenson, in his role as the Class B Representative on ALH's Supervisory Board, is in a position to authorize ALH to advance to Plaintiffs their legal fees and other expenses, but such authorization has been refused. *Id.* ¶ 152. The Amended Complaint expressly alleges that Arenson, in his capacity as Class B Representative, has sought "to interfere with the indemnification rights of officers and directors of Delaware corporations (SCA and ALH), under the SCA Consulting Agreement and By-Laws of ALH II, including the right to advancement of legal expenses." *Id.* ¶ 68(l).

As alleged in the Amended Complaint, this is a case involving substantial disagreements among the parties regarding their respective rights and obligations — matters involving the internal affairs of a Delaware entity, and in which Delaware has a compelling interest. *See Coleman v. Taub*, 638 F.2d 628, 629 n.1 (3d Cir. 1981) (internal affairs of Delaware corporation are governed by Delaware law); *Assist Stock Mgmt. LLC v. Rosheim,* 753 A.2d 974, 981 (Del. Ch. 2000). In *Assist*, for example, a shareholder in

11

a Delaware limited liability company sought a declaratory judgment to resolve a dispute regarding the respective rights and obligations of managers of a Delaware limited liability company. In denying defendant's motion to dismiss for lack of personal jurisdiction, the court noted that the "parties will have to look to Delaware statutory and case law regarding the allocation of managerial power," and that Delaware has "a compelling interest in the resolution of disagreements" about such issues. 753 A.2d at 981. Given that compelling interest, there can be no doubt that the Amended Complaint states a claim for declaratory relief with respect to Arenson.

In addition to ignoring the allegations of the Amended Complaint, Arenson's brief in support of his motion argues that, although Arenson owns and controls entities claiming to hold approximately 17% of the Class B Membership interests in ALH, he does not have a "direct" interest in the subjects of this declaratory judgment action because he did not sign the ALH Operating Agreement in his individual capacity. The relief accorded by the Declaratory Judgment Act, however, is not limited to those with a "direct" interest in the controversy so long as their interests might be affected by the declaration that is sought. *See, e.g., Essex Ins. Co. v. Kasten Railcar Servs.*, *Inc.,* 129 F.3d 947 (7th Cir. 1997); *The Cont. Ins. Co. v. The Law Office of Thomas J. Walker, Jr.*, 171 F.R.D. 183 (D. Md. 1997); *Alfred Hofmann, Inc. v. Knitting Machs. Corp.*, 123 F.2d 458, 460 (3d Cir. 1941) (claim based on use of allegedly infringing machines was sufficient to maintain a declaratory judgment action); *Franklin Life Ins. Co. v. Johnson*, 157 F.2d 653, 658 (10th Cir. 1946) (person with a contingent interest may be required to defend an action for a declaratory judgment). *Cf. also* FED. R. CIV. P. 23.1 (shareholder of corporation may, if demand is excused, bring action on behalf of the corporation).

In *Essex*, the plaintiff sought a declaration of no coverage and named both the alleged insured and the victim of a dog bite (Riley) as defendants. On appeal, the Seventh Circuit ruled that "[a]lthough Riley is not a party to the contract of insurance, he was a proper party defendant in the district court and has standing to appeal." 129 F.3d at 948. Similarly, in *Walker*, Continental sought a declaration that a malpractice insurance policy issued to defendants was void *ab initio*. Former clients of Walker, who possessed malpractice claims, sought to intervene in the declaratory judgment action, notwithstanding the fact that they were not "direct" parties to the insurance policy. Recognizing that the declaration could affect the former clients' recovery on their malpractice claims, the court concluded they were proper parties who should be permitted to intervene. 171 F.R.D. at 185-86. In each of *Essex* and *Walker*, the courts recognized that a claimant can have a financial interest in another party's claims that makes the claimant a proper party for purposes of declaratory relief. Here, the record before the Court establishes that Arenson controls two Class B Members and is the sole person who would benefit from any recovery by these Class B Members. Thus, even apart from his status as Class Representative, Arenson's interests are real and can be affected by the declaration Plaintiffs seek.

The lone case cited in the Arenson brief, *Welch v. Centex Home Equity Co.*, 262 F. Supp. 2d 1263 (D. Kan. 2003), provides no support for his position. In that case, the court held that the plaintiff, who alleged that signatures on loan documents had been forged, failed to state a claim for a declaratory judgment against the individual who attested to the signatures. *Id.* at 1270. The court reasoned that the defendant was not a party to the loan documents, and that neither party to the loan documents contended that

13

he had a direct or indirect interest in the loan or the underlying real estate. *Id.* In this case, Arenson has a direct interest in the parties' disagreements about Arenson's rights and obligations as a member of ALH's Supervisory Board, as well as a financial interest through his ownership and control of two Class B Members, in Defendants' claims against Plaintiffs. These interests are independently sufficient to state a claim for declaratory relief as to Arenson.

A declaratory judgment is warranted here. Regards of the potential for *liability* on the part of Arenson and the Class B Members, there is an actual *controversy* between Arenson, Plaintiffs and the other Defendants involving their legal rights and interests that can be effectively resolved through a declaratory judgment. *See Cameron & Barkley Co. v. Fabreeka Int'l., Inc.*, 144 F. Supp. 2d 1382 (M.D. Ga. 2001). In *Cameron*, the defendant threatened legal action against the plaintiff on the grounds that he was in breach of contract. Plaintiff sought a declaratory judgment that no current contractual relationship existed between the parties and that it had satisfied all of its contractual obligations to defendant. Defendant moved to dismiss, arguing that the court should decline to hear the complaint for declaratory relief because it deprived defendant of its right to choose the forum and the time to bring its claims.

The court denied the motion to dismiss, noting that declaratory judgments are routinely used by potential litigants to anticipate each other's claims and that the filing of a complaint for declaratory relief before the other party can file its own complaint is not inappropriate and may even be "a wise strategy." *Id.* at 1384. The court further noted that the Declaratory Judgment Act "relieves potential defendants 'from the Damoclean threat of impending litigation which a harassing adversary might brandish,

14

while initiating suit at his leisure – or never.'" *Id.* (quoting 10B Charles Alan Wright et al., Federal Practice and Procedure § 2751, at 457 (3d ed. 1998) quoting *Japan Gas Lighter Ass'n v. Ronson Corp.*, 257 F. Supp. 219, 237 (D.N.J. 1966)).  Here too, Defendants repeatedly threatened to sue Plaintiffs but did not file an action against them until eight months after this declaratory judgment action was filed.  Because Defendants were content to accuse Plaintiffs of wrongdoing without subjecting their claims to adjudication, Plaintiffs' decision to seek a declaratory judgment was, like the one in *Cameron*, a "wise strategy."  144 F. Supp. 2d at 1384.

A declaratory judgment would have significant utility to the parties with respect to their rights and obligations and permit the Plaintiffs to wind down ALH without the specter of future liability after ALH has distributed its remaining assets. Courts have recognized that a declaratory judgment may serve a useful function to corporate decision-makers by providing them with a judicial stamp of validity.  *See, e.g.* *Enka B. V. v. E. I. duPont de Nemours & Co.*, 519 F. Supp. 356, 360-61 (D. Del. 1981) (A "declaratory judgment . . . prevents a patentee from abusing the presumption of validity by threatening would-be competitors with his patent, yet refusing to face adjudication of its merit in an infringement action."); *Tera Sys., Inc. v. Mentor Graphics Corp.*, C.A. 20300, 2003 Del. Ch. LEXIS 149, at *1 (Del. Ch. Aug. 21, 2003) (Lamb, V.C.) (granting declaratory judgment to corporation that merger was valid and governed by Delaware law despite defendant stockholder's "unusual path of taking no position on the merits of either the complaint or . . . the applicability of California law").  Arenson is significantly involved in the controversy that has arisen regarding the legal rights and interests of the Class B Members of ALH, which are intertwined with Arenson's voting

15

rights as Class B Representative and financial interests through the Class B Members he owns and controls. Plaintiffs, therefore, state a claim against him for a declaratory judgment of non-liability. The adverse relationship between Plaintiffs and Arenson reflected in the allegations of the Amended Complaint, and now alleged in the NC Complaint, are more than sufficient to state a claim for a declaratory judgment.

<u>CONCLUSION</u>

For the foregoing reasons, Arenson's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be denied.


MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ S. Mark Hurd
_____
A. Gilchrist Sparks, III (#467)- asparks@mnat.com
S. Mark Hurd (#3297)- SHurd@mnat.com
Samuel T. Hirzel (#4415)- shirzel@mnat.com
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
  Attorneys for Plaintiffs


OF COUNSEL:

Gregory P. Joseph Law Offices LLC
Gregory P. Joseph
Pamela Jarvis
805 Third Avenue, 31st Floor
(212) 407-1200
New York, NY 10022

August 8, 2005

17

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day August, 2005, copies of the within document were served on the following attorneys of record as follows:

### BY eFILE:

Sean J. Bellew, Esquire
David A. Felice, Esquire
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, Delaware  19801

_____
S. Mark Hurd (#3297)