## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHAMROCK HOLDINGS OF CALIFORNIA, INC.,  SHAMROCK CAPITAL ADVISORS, INC., EUGENE I. KRIEGER, GEORGE J. BUCHLER and BRUCE J. STEIN , )))))))) | |
| Plaintiffs, )) | Civil Action No.:  04-1339 - SLR |
| v. ))) | |
| AVIE ARENSON, SELK, LLC and LAUREL EQUITY GROUP, LLC, ))))) | |
| Defendants. )) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR STAY OF PROCEEDINGS

MORRIS, NICHOLS, ARSHT & TUNNELL
A. Gilchrist Sparks, III (#2467)
S. Mark Hurd (#3297)
Samuel T. Hirzel (#4415)
1201 N. Market Street
Wilmington, DE 19899
302-658-9200
Attorneys for Plaintiffs Shamrock Holdings of California, Inc., Shamrock Capital Advisors, Inc., Eugene I. Krieger, George J. Buchler, and Bruce J. Stein

OF COUNSEL:

Gregory P. Joseph Law Offices LLC
Gregory P. Joseph
Pamela Jarvis
805 Third Avenue, 31st Floor
(212) 407-1200
New York, NY 10022

DATED: August 8, 2005

**TABLE OF CONTENTS**

TABLE OF CITATIONS ................................................................................................ i

PRELIMINARY STATEMENT ..................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 2

SUMMARY OF ARGUMENT ...................................................................................... 6

STATEMENT OF FACTS ............................................................................................. 7

ARGUMENT ............................................................................................................... 16

    I.  As to SELK and Laurel, the Forum Motion is Untimely ................................ 16

    II.  As to All Defendants, the Forum Motion Has No Merit ................................. 19

CONCLUSION ............................................................................................................ 31

TABLE OF CITATIONS

**Cases**                                                                                                   **Page**

*Argos v. Orthotec, LLC,* 304 F. Supp. 591 (D. Del. 2004).................................................................. 21-22

*Bell Tel. Labs., Inc. v. Int'l Bus. Machines Corp.*, 630 F. Supp. 373 (D. Del. 1984)..................................19

*Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.,*
    265 F. Supp. 445 (D. Del. 2003) ...........................................................................................*passim*

*Corixa Corp. v. IDEC Pharm. Corp.*, C.A. No. 01-615- GMS,
    2002 U.S. Dist. LEXIS 2980 (D. Del. Feb. 25, 2002)..................................................... 23-24, 28-29

*Dippold-Harmon Enter., Inc. v. Lowe's Companies, Inc.*, C.A. No. 01-532 GMS,
    2001 U.S. Dist. LEXIS 18547 (D. Del. Nov 13, 2001)........................................................ 20, 24-25

*E.E.O.C. v. Univ. of Penn.*, 850 F.2d 969 (3d Cir. 1988)..........................................................................20

*Eastman Kodak Co. v. Studiengesellschaft*, 392 F. Supp. 1152 (D. Del. 1775)...........................................29

*EnviroMetrics Software, Inc. v. Georgia-Pacific Corp.*, No. Civ. A. 97-243-SLR,
    1997 WL 699328 (D. Del. Nov. 4, 1997)..............................................................25, 26, 26 n.7, 27

*Genfoot, Inc. v. Payless Shoesource, Inc.*, Civ. No. 03-398-SLR,
    2003 U.S. Dist. LEXIS 22437 (D. Del. Dec. 2, 2003) ............................................................20, 24

*Gilmore v. Shearson/American Express, Inc.*, 811 F.2d 108 (2d Cir. 1987).................................................17

*Gribin v. Hammer Galleries*, 793 F. Supp. 233 (C.D. Cal. 1992)................................................................26

*GT Plus, Ltd. v. Ja-Ru, Inc.*, 41 F. Supp. 2d 421 (S.D.N.Y. 1998) .............................................................28

*Guidant Corp. v. St. Jude Med., Inc.*, Civ. No. 04-067-SLR,
    2004 U.S. Dist. LEXIS 17218 (D. Del. Aug. 27, 2004).....................................................20, 21, 24

*Joint Stock Society v. Heublein, Inc.*, 936 F. Supp. 177 (D. Del. 1996).......................................................22

*Matsushita Battery Indus. Co., Ltd. v. Energy Conversion Devices, Inc.,*
    Civ. No. 96-101-SLR, 1996 U.S. Dist. LEXIS 8153 (D. Del. April 23, 1996)........................ 22-23

*Miteq, Inc. v Comtech Telecomms. Corp.*, C.A. No 02-1336-SLR,
    2003 U.S. Dist. LEXIS (D. Del. Jan 23, 2003) .............................................................................25

*Mobilificio San Giacomo S.p.A. v. Stoffi*, C.A. No. 96-415-SLR,
    1998 U.S. Dist. LEXIS 3288 (D. Del. Jan. 29, 1998) ...................................................................18

*Moore Corp. Ltd. v. Wallace Computer Servs., Inc.*, 898 F. Supp. 1089 (D. Del. 1995)............................28

*Padcom, Inc. v. NetMotion Wireless, Inc.*, Civ. No. 03-983-SLR,
2004 U.S. Dist. LEXIS 9658 (D. Del. May 24, 2004) ............................................................21, 25

*Riviera Trading Corp. v. Oakley, Inc.*, 944 F. Supp. 1150 (S.D.N.Y. 1996) ..................................27 n.8, 28

*Rowley v. McMillan*, 502 F.2d 1326 (4th Cir. 1974)...............................................................................17

*Siemens Med. Sys. v. Fonar Corp.*, Civ. No. 95-261-SLR,
1995 U.S. Dist. LEXIS 22334 (D. Del. April 27, 1995) ........................................................*passim*

*Step-Saver Sys., Inc. v. Wyse Tech., The Software Line, Inc.*, 912 F. 2d 643 (3d Cir. 1990) .....................29

*Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213 (3d Cir. 1989)............................................29 n.9

*Tuff Torq. Corp. v, Hydro-Gear Ltd. P'ship*, 882 F. Supp. 359 (D. Del. 1994).........................................19

## Statutes and Rules

12 U.S.C. §1391 ...................................................................................................................................15

28 U.S.C. § 2201 .......................................................................................................................16, 23, 24

Fed. R. Civ. P. 12 ........................................................................................................................*passim*

Fed. R. Civ. P. 13 ................................................................................................................................19

Fed. R. Civ. P. 19 ........................................................................................................................*passim*

10 Del. C. § 347 ...............................................................................................................................9, 26

28 Del. C. § 1404...........................................................................................................................*passim*

28 Del. C. § 1406..............................................................................................................................4, 6

573779

**PRELIMINARY STATEMENT**

Plaintiffs Shamrock Holdings of California, Inc. ("Shamrock"), Shamrock Capital Advisors, Inc. ("SCA"), Eugene I. Krieger ("Krieger"), George J. Buchler ("Buchler") and Bruce J. Stein ("Stein") respectfully submit this brief in opposition to Defendants' June 3, 2005 Motion to Dismiss, or in the Alternative, for Stay of Proceedings (the "Forum Motion"; *see* D.I. 40 and 41). In the Forum Motion, Defendants A. Arenson Holdings, Ltd. ("Arenson Holdings"), D.A. Gardens, Ltd. ("D.A. Gardens"), J12ALH Associates ("J12"), SELK, LLC ("SELK") and Laurel Equity Group, LLC ("Laurel") seek to dismiss or stay this action (the "DE Action") in favor of the <u>much later</u> action (the "NC Action") commenced by Defendants in the United States District Court for the Western District of North Carolina (the "NC Federal Court").[1]

In support of the Forum Motion, Defendants argue that, contrary to this Court's well-established "first filed" rule, Plaintiffs' choice of Delaware as the forum for this litigation should be disregarded, even though:

- The DE Action (filed on September 13, 2004) was litigated here for <u>more than eight months</u> before Defendants commenced their mirror image NC Action (filed on June 2, 2005).

- Contrary to Defendants' unsupported assertions, there were <u>no ongoing settlement negotiations</u> between the parties when the DE Action was filed.

- Contrary to Defendants' unsupported assertions, Plaintiffs were <u>not informed of an imminent lawsuit in North Carolina</u> before the DE Action was filed.

- The NC Action consists entirely of claims that are <u>compulsory counterclaims in the DE Action</u>.

- <u>None of the parties resides or does business in North Carolina</u>. By contrast, the DE Action has strong ties to this forum, including, *inter alia*, that: (1) all issues between the parties arise from the <u>formation and management of a Delaware limited liability company</u>; (2) all claims are <u>governed by Delaware law</u>; and (3) there are <u>Delaware entities on both sides</u> of the case.

---

[1]    Except as otherwise indicated, the term "Defendants" refers to all defendants in the DE Action except Avie Arenson ("Arenson"). Arenson, who owns and controls Arenson Holdings and D.A. Gardens (the "Arenson Entities") (*see* D.I. 37 at ¶¶ 9-18), is the only defendant in the DE Action who is not a plaintiff in the NC Action and has not joined in the Forum Motion.

- Defendants <u>concede that venue is proper in Delaware</u> and hence have never moved to dismiss the DE Action on venue grounds or moved to transfer it to North Carolina.

In these circumstances, there is no reason to depart from this Court's well-established "first-filed" rule, under which the plaintiff's choice of forum is a paramount consideration, to be departed from only in rare and exceptional cases. Where, as here, Plaintiffs have a rational basis for having sought relief in a Delaware court, Defendants cannot show any circumstances that would warrant overriding Plaintiffs' choice.

## NATURE AND STAGE OF THE PROCEEDINGS[2]

On September 13, 2004, Plaintiffs commenced this action seeking declaratory relief (D.I. 20 Ex. A) in the Court of Chancery of the State of Delaware (the "Chancery Court"). The action arises from the formation, funding and management of ALH Holdings, LLC ("ALH"), a Delaware limited liability company ("LLC"). Shamrock, as a holder of Class A equity in ALH ("Class A Member"), is the single largest investor in ALH, having invested over $9 million. (D.I. 37 at ¶¶ 2, 7; D.I. 20 Ex. A ¶¶ 2, 7). The Arenson Entities, J12, SELK and Laurel are the five Class B equity investors in ALH (the "Class B Members") (D.I. 37 at ¶¶ 9-18, 52, 57, 59; D.I. 20 Ex. B at Ex. B).

As set forth in the Amended Complaint, all Defendants (including Arenson) directly or indirectly invested in the equity of ALH, which was organized under Delaware law in June 1998 to engage in the home-building business (D.I. 37 at ¶ 2). Shamrock invested millions of dollars more in the equity of ALH than did any of the Defendants (*id.*). Due to no wrongdoing by any of the Plaintiffs, ALH was ultimately unsuccessful, with the result that both Shamrock and the Defendants lost most of what they invested in ALH (*id.*).

Under the June 12, 1998 Operating Agreement creating ALH, as amended (the "Operating Agreement") (D.I. 20 at ¶ 3 and Ex. B), the economic rights of the Class A and Class

---

[2]     Extensive factual support for Plaintiffs' position on this and Defendants' other motions is contained in the accompanying Declarations of Pamela Jarvis ("Jarvis Dec.") and George J. Buchler ("Buchler Dec.") in Opposition to Defendants' Motions to Dismiss or Stay.

B Members are *pari passu*. D.I. 37 at ¶ 3; D.I. 20 at ¶ 20; Jarvis Dec. Ex. C-1. The Class A Members have no financial priority or preference over the Class B Members (*id*). The only difference is that Shamrock's share of ALH's losses is necessarily larger than that of Defendants, because Shamrock's investment in ALH is larger (D.I. 37 at ¶ 3). No setback experienced by ALH could hurt Defendants without hurting Shamrock more (*id.*). Even though there was no basis for holding any of the Plaintiffs liable for ALH's disappointing performance, all of the Defendants (including Arenson) made spurious accusations and repeatedly threatened to sue. *Id.* at ¶¶2-6. These threats and accusations gave rise to this action (*id.* at ¶¶ 6, 132-42).

In the Amended Complaint (D.I. 37 at ¶¶ 153-84), Plaintiffs seek a declaratory judgment that: (1) Plaintiffs did not breach any fiduciary duty in connection with ALH, particularly ALH's sale of its home-building subsidiaries and its repayment of loans from certain ALH investors (Count I); (2) Plaintiffs have no liability under ALH's Operating Agreement (Count II); (3) Plaintiffs have no liability under the July 1, 2001 consulting agreement between ALH and SCA (the "Consulting Agreement") (Count III); (4) Plaintiffs relied in good faith on the advice of ALH's outside legal counsel and financial/investment banking advisors (Count IV); (5) Plaintiffs are entitled to indemnification and advancement of expenses (Count V); (6), SELK has released its claims against Plaintiffs (Count VI); (7) SELK's equity interest in ALH should be reduced or eliminated to the extent of any shortfall in the capital contribution of ALH's Class E Member (Count VII); and (8), Plaintiffs have not violated Arenson's rights as Class B Representative on ALH's Supervisory Board (Count VIII).

On or around October 5, 2004, the original defendants, including Arenson, entered a general appearance in the Chancery Court, without any reservation of rights as to personal jurisdiction (D.I. 38). On October 6, 2004, the original defendants removed the original complaint to this Court (D.I. 1). On October 14, 2004, the original defendants filed two motions to dismiss the original complaint: (1) Arenson moved under FED. R. CIV. P. 12(b)(2) to dismiss for lack of personal jurisdiction (D.I. 4); and (2) SELK and Laurel moved under FED. R. CIV. P.

12(b)(7) to dismiss for failure to join indispensable parties under FED. R. CIV. P. 19 (D.I. 3). Notably, the original defendants did not move to dismiss on grounds of improper venue and did not move to transfer the action to North Carolina under 28 U.S.C. § 1404 or § 1406.

On November 5, 2004, Plaintiffs moved to remand the original complaint to the Chancery Court, on the grounds that the original defendants had failed to carry their burden of establishing diversity jurisdiction (D.I. 15). In connection with the remand motion, Defendants provided discovery concerning their ownership, controlling persons and business activities. *See, e.g.*, D.I. 20 Exs. F-H. On January 27, 2005, this Court issued a Memorandum Order (D.I. 29 at 9-12) in which, *inter alia*, the Court (1) found that the evidence provided by SELK and Laurel with regard to principal place of business was "negligible" and (2) gave SELK and Laurel permission to make a supplemental submission on that issue. Thereafter, SELK and Laurel made two supplemental factual and legal submissions to this Court (D.I. 30 & 32) and Plaintiffs made one (D.I. 31).[3]

On March 22, 2005, the Court denied the motion to remand (D.I. 33). The Amended Complaint (D.I. 37) was filed on April 22, 2005. On June 3, 2005, (1) Defendants filed the present Forum Motion, (2) Arenson, the Arenson Entities and J12 moved to dismiss this action for lack of jurisdiction and SELK and Laurel moved to dismiss for failure to join indispensable parties (D.I. 43 & 44), and (3) Arenson moved to dismiss this action for failure to state a claim on which relief may be granted (D.I. 46 & 47).

*Defendants' "Mirror Image" NC Action*

On June 2, 2005, Defendants commenced the NC Action, which is essentially a mirror image of the DE Action (except that Arenson is not a party to the NC Action and the NC Action does not address Plaintiffs' claims for such relief as indemnification and advancement of expenses). *See* D.I. 41 Ex. I. The complaint in the NC Action (the "NC Complaint") purports to

---

[3]     In connection with the removal/remand proceedings, Defendants made the same claims of bad faith and forum shopping that they now make in the present Forum Motion. *See, e.g.*, D.I. 24 at 1, 3, 7-8.

state claims against the Plaintiffs for: (1) alleged breach of fiduciary duty in connection with ALH, particularly ALH's sale of its home-building subsidiaries and its repayment of loans made by certain ALH investors (Count I); (2) alleged liability under the Operating Agreement (Count II); (3) alleged breach of the Consulting Agreement (Count III); (4) alleged gross negligence in connection with the sale of ALH's home-building subsidiaries and the retention of outside legal counsel (Count IV); (5) alleged self-dealing in connection with the sale of ALH's home-building subsidiaries (Count V); and (6) alleged civil conspiracy in connection with ALH's sale of ALH's home-building subsidiaries, its repayment of loans, and its retention of consultants and outside legal counsel (Count VI).

In both the NC Action and the DE Action, Count I concerns the same alleged breaches of fiduciary duty by Plaintiffs in connection with ALH. Count II of both actions concerns the alleged breach by Plaintiffs of the Operating Agreement and Count III of both actions concerns the alleged breach by Plaintiffs of the Consulting Agreement. Counts IV, V and VI of the NC Action are variations on the alleged breaches of fiduciary duty asserted in Count I of the NC Action. The references in Counts IV and VI to retention of outside legal counsel and consultants are counterparts to Count IV of the DE Action concerning Plaintiffs' good faith reliance on professionals and experts. *Compare* D.I. 37 *with* D.I. 41 Ex. I.

*Defendants' Pending Motions in the DE Action*

By stipulation of the parties so ordered by this Court on May 5, 2005 (D.I. 39), Defendants had until June 3, 2005 to move, plead or otherwise respond to the Amended Complaint. No answers were filed. Instead, on June 2, 2005, all Defendants (except Arenson) filed the NC Action. On June 3, 2005, all Defendants (except Arenson) filed the present Forum Motion. In addition, Defendants filed the following motions:

(1)     A three-part motion (D.I. 43 & 44) consisting of:

- A motion by Arenson Holdings, D.A. Gardens and J12 (the three Class B Members who were added by the Amended Delaware Complaint) to dismiss

the DE Action under FED. R. CIV. P. 12(b)(2) for lack of personal jurisdiction.

- A motion by SELK and Laurel (the two Class B Members who were Original Defendants) to dismiss the DE Action under FED. R. CIV. P. 12(b)(7) for failure to join Arenson Holdings, D.A. Gardens and J12 as indispensable parties pursuant to FED. R. CIV. P. 19 (the "Rule 19 Motion") — despite the fact that Arenson Holdings, D.A. Gardens and J12 are currently defendants in the DE Action.

- A motion by Arenson to dismiss the DE Action for lack of personal jurisdiction.

(2)    A motion by Arenson (D.I. 46 & 47) to dismiss the DE Action under FED. R. CIV. P. 12(b)(6) for failure to state a claim on which relief may be granted.

*The Status of the NC Action*

On consent of the parties, the NC Federal Court has ordered that (1) the defendants in the NC Action (*i.e.*, Plaintiffs in the DE Action) shall have until September 2, 2005 to answer, move or otherwise respond to the NC Complaint, (2) the plaintiffs in the NC Action (*i.e.*, Defendants in the DE Action) shall have until October 14, 2005 to file their opposition papers, and (3) the defendants in the NC Action (*i.e.*, Plaintiffs in the DE Action) shall have until November 14, 2005 to file their reply papers. The defendants in the NC Action (*i.e.*, Plaintiffs in the DE Action) currently intend, *inter alia*, to move to dismiss the NC Action on grounds of improper venue under FED. R. CIV. P. 12(b)(3) or, in the alternative, to transfer the NC Action to this Court under 28 U.S.C. § 1404 and/or §1406. Jarvis Dec. at ¶ 103.

## SUMMARY OF ARGUMENT

### I.    *As to SELK and Laurel, the Forum Motion is Untimely*

Defendants contend that, as to SELK and Laurel, the Forum Motion is a proper FED. R. CIV. P. 12(b) motion in lieu of answer to the Amended Complaint. FED. R. CIV. P. **II.    *As    to All Defendants, the Forum Motion Has No Merit***

Under this Court's well-established first-filed rule, Plaintiffs' choice of forum is a paramount consideration. Defendants have not proven — and cannot prove — the kind of exceptional circumstances that might warrant disregarding Plaintiffs' decision to file this action in

Delaware nearly a year ago. Contrary to Defendants' unsupported contentions: (a) there were <u>no ongoing settlement negotiations</u> between the parties when the DE Action was filed, and (2) the Plaintiffs were <u>not informed of an imminent lawsuit</u> in North Carolina before the DE Action was filed. The fact that the DE Action seeks declaratory judgment does not affect the applicability first-filed rule. Moreover Defendants do not even attempt to make an affirmative showing that this litigation belongs in North Carolina. Therefore, even assuming *arguendo* that the Defendants could negate the application of the first-filed rule by showing that the DE Action was an anticipatory, bad-faith filing (which they cannot), Defendants have not provided any basis for this Court to defer to Defendants' choice of a North Carolina forum — especially given that, *inter alia*, none of the parties resides or does business there.

## STATEMENT OF FACTS

Defendants' sole argument in support of the Forum Motion is that even though the DE Action was filed in September 2004 — more than eight months before the NC Action — Plaintiffs' choice of a Delaware forum is not protected by the first-filed rule because the DE Action was "filed solely to deprive defendants of their choice of forum." D.I. 41 at 4. This argument relies on two factual premises that are demonstrably false. Contrary to Defendants' unsupported contentions: (1) there were <u>no ongoing settlement negotiations</u> between the parties when the DE Action was filed, and (2) the Plaintiffs were <u>not informed of an imminent lawsuit</u> in North Carolina before the DE Action was filed.

Defendants have filed declarations under oath in support of their other pending motions against the DE Action, but have conspicuously shied away from making any sworn statement to substantiate the supposed factual premises of the Forum Motion. This absence of evidentiary support is particularly striking because the record in the DE Action, in connection with the removal/remand proceedings, already contains Plaintiffs' sworn refutation of alleged ongoing settlement negotiations and notification of intent to sue in North Carolina:

7

Defendants' assertions in their Answering Brief (at 7-8) [D.I. 24] that the parties were engaged in a "race to the courthouse" and that Plaintiffs "filed this lawsuit in order to 'forum shop'" are untrue. It is also untrue that Defendants "informed plaintiffs that they intended to file [a lawsuit against Plaintiffs] in North Carolina."

For months prior to the filing of the Complaint in this action, Defendants (through their counsel, [Isaac] Neuberger) had been threatening baseless claims against Plaintiffs. In the hope of reaching an expeditious resolution of the matter at a relatively reasonable cost, Plaintiffs suggested that the parties try mediating their differences in the Court of Chancery, pursuant to that court's voluntary mediation program. Plaintiffs believed that this would bring a neutral, experienced perspective to bear on the matter. . . .

After more than two weeks of waiting for Defendants to agree to mediation, Plaintiffs filed their Complaint in the Court of Chancery. Defendants' assertion that, at the time Plaintiffs filed the Complaint, the parties were "engaged in ongoing settlement discussions" . . . is untrue. To the contrary: [P]laintiffs had hoped that Defendants would agree to participate in the proposed mediation, and that this might lead to a resolution of the matter, but Defendants did not agree to mediate.

D.I. 28 at ¶¶7-9. Even now, in making the Forum Motion, Defendants have provided no evidentiary support for their assertions, but instead seem to hope that no one will notice the absence of record cites.

*No Ongoing Settlement Negotiations When Original Delaware Complaint Was Filed*

Defendants' first false premise is that Plaintiffs commenced the DE Action while the parties were "engaged in ongoing settlement negotiations." D.I. 41 at 2. From approximately mid-July through August 2004, Plaintiffs and Defendants engaged in a nearly daily exchange of correspondence to try to set up a meeting at which the parties might discuss and attempt to resolve their differences. Jarvis Dec. at ¶¶ 95-96. It proved to be impossible to get the parties to agree on a face-to-face meeting. *Id.* at ¶ 96. Even arranging the date and time for a conference call was difficult. *Id.* & Exs. PP, QQ, RR.

There was sharp disagreement concerning what might be discussed during the possible conference call. *Id.* at ¶ 97 & Ex. TT. Defendants sought to discuss the compensation they wanted from the Plaintiffs for ALH's disappointing performance. *See* Jarvis Dec. at ¶ 97 & TT. Plaintiffs maintained that Defendants had no right to any such compensation, but Plaintiffs were willing to discuss the possibility of a business transaction that would address the future of ALH.

*See* Jarvis Dec. at ¶ 97 & Exs. QQ, SS, TT.  In any event, the call would give the parties an opportunity to assess whether a face-to-face meeting would be worthwhile.  *See, e.g.,* Jarvis Dec. Ex. PP.

Finally, on August 26, 2004, the parties and their counsel held a conference call.  *See* Buchler Dec. ¶ 23.[4]  The parties agreed in advance that the call (in contrast to the parties' correspondence) "will be in the nature of settlement discussions and will be without prejudice and 'off the record' and not useable in any context."  Jarvis Dec. Exs. UU, VV.  Following the conference call, Plaintiffs concluded that there was no common ground between the parties that might serve as a starting point for settlement discussions.  Buchler Dec. at ¶ 23.  Defendants seem to have reached the same conclusion: the day after the conference call, Defendants sent Plaintiffs an email stating that, *inter alia,* "it appears that Shamrock is unwilling to see its way clear towards an acceptable resolution."  D.I. 41 Ex. E.  At no time after the conference call did either party attempt to schedule any further discussions.  Jarvis Dec. at ¶ 98.

Despite the failure of the August 26, 2004 conference call to set in motion any negotiations between the parties, it occurred to Plaintiffs that a respected mediator experienced in the applicable principles of Delaware law might be able to help Defendants see that they had no basis for asserting liability against Plaintiffs.  Buchler Dec. at ¶ 24.  Accordingly, Plaintiffs suggested that Defendants consider mediation in the Delaware Chancery Court under 10 Del. C. § 347, but Defendants did not agree.  *See* D.I. 41 Exs. E, F, G; Jarvis Dec. Exs. WW, XX, YY; D.I. 28 ¶¶8-9; D.I. 20 ¶ 23.

Thus, as of September 13, 2004, when the DE Action was filed, there were no ongoing settlement negotiations between the parties.  Indeed, given that Defendants had not agreed to mediation, there was not even a prospect of such negotiations.  As of September 13, 2004, Defendants had not explicitly refused to mediate, but neither had they agreed to it.  Jarvis Dec.

---

[4]     Defendants incorrectly state that "[a] conference was eventually held in September 2004."  D.I. 41 at 13.  This creates the misimpression that the parties sent their August 27 and 30, 2004 emails (*id.* Exs. D-G) before the conference call rather than after it.

Exs. WW, XX, YY. As discussed below, it appeared that Defendants were not serious about mediating, but were instead hoping to obtain information that they might at some point try to use in a lawsuit. Buchler Dec. ¶ 24. In any event, Defendants' noncommittal response to the possibility of mediation can hardly be characterized as "ongoing settlement negotiations." D.I. 41 at 10.

*Defendants Gave No Notice of Imminent Intent to Sue in North Carolina*

Defendants' second false premise is that the Plaintiffs "rushed" to file the DE Action as a "preemptive measure against the imminent tort action" that Defendants had "informed" Plaintiffs "they intended to file in North Carolina." D.I. 41 at 2; *see also* 3, 6. In fact, Defendants did not "inform" Plaintiffs of anything concerning litigation, let alone that they were about to file suit in North Carolina or anywhere else.

On August 27, 2004, while Plaintiffs were still hoping that Defendants might agree to a mediation in Delaware, Plaintiffs' counsel emailed Defendants' counsel, stating that: "It occurred to me that you might not be aware that Section 10.2 of the ALH Holdings LLC Operating Agreement provides that 'All questions concerning the construction, validity and interpretation of this Agreement and the performance of the obligations imposed by this Agreement shall be governed by the internal law, not the law of conflicts, of the State of Delaware.'" D.I. 41 Ex. D.

By email the same day, Defendants responded by asking whether Section 10.2 of the Operating Agreement had the effect of a forum selection clause precluding litigation outside Delaware: "We are aware of this provision . . . it does NOT prevent the filing of a suit in North Carolina, does it?" D.I. 41 Ex. E (ellipsis in original). This single line in Defendants' August 27, 2004 email is the only thing cited by Defendants in support of their assertion that they "informed Plaintiffs of their intention to file the North Carolina Complaint." D.I. 41 at 2, 6, 10. Defendants' August 27, 2004 email also asked a second question: whether mediation in Delaware would afford the same discovery "that we would be entitled *[sic]* if we proceed in a different forum" (emphasis added). D.I. 41 at Ex. E.

By email dated August 30, 2004, Plaintiffs responded to Defendants' August 27 email. D.I. 41 Ex. F. Plaintiffs stated that: "In addition to confirming that Delaware law governs, Section 10.2 of the Operating Agreement would weigh in favor of Delaware as the appropriate forum." In addition, Plaintiffs stated that: "The Delaware mediation process . . . does not provide for formal discovery, but the parties could of course agree to exchange whatever information they want to. *Id*. Also, participation in the mediation would not affect the parties' ability to obtain discovery in <u>future litigation, if any</u>" (emphasis added). *Id*.

Plaintiffs did not understand Defendants' August 27, 2004 email to be a notification of imminent intent to sue in North Carolina or anywhere else. Even assuming that one or both of the questions in Defendants' August 27, 2004 email were rhetorical in nature, at most they express Defendants' view that the Delaware choice of law provision in Section 10.2 of the Operating Agreement did not prevent Defendants from suing in North Carolina or "in a different forum." D.I. 41 Ex. E.[5] Such communications could not objectively be understood as notification of an imminent intention to sue.

Moreover, Defendants did not imminently sue. Between August 27, 2004, when Defendants posed their questions, and September 13, 2004, when Plaintiffs filed the DE Action, more than two weeks elapsed. During this period, Defendants <u>did not sue and did not threaten to sue</u>. Jarvis Dec. at ¶ 99. In addition, during the <u>eight months after</u> Plaintiffs filed the DE Action, Defendants <u>did not sue and did not threaten to sue</u>. *Id*.

By email dated September 5, 2004, Defendants stated that, before agreeing to a mediation in Delaware, "we will require that Shamrock . . . agree to the same level of discovery that we

---

[5] Several weeks before the August 26 conference call, Defendants' counsel put the following question to Plaintiffs' counsel: "IF THIS CASE IS BROUGHT IN DELWARE, NORTH CAROLINA OR ELSEWHERE OTHER THAN NYC, WILL YOU PARTICIPATE?" Jarvis Dec. Ex. TT (capitalization in original). This suggested, as had other communications from Defendants, that they were contemplating the possibility of litigation, but it was hardly a notification of imminent intent to sue. In addition, to the extent it indicates any specificity of thought regarding a possible lawsuit, it suggests that Defendants themselves considered Delaware an appropriate forum in which to sue Plaintiffs.

think we could achieve <u>if</u> we were to file a lawsuit.  I have asked Sam Wood [a partner in Defendants' counsel's law firm] to scope that out and to provide you with the <u>outline [of] a lawsuit that would be the basis of the mediation</u>" (emphasis added).  Jarvis Dec. Ex. YY. Mr. Wood never provided the "outline of a lawsuit," whether as a basis for mediation or for any other purpose.  *Id.* at ¶ 100.  Nor did he provide any other information regarding the discovery that Defendants supposedly wanted as a condition of agreeing to mediation.  *Id.*

On September 8, 2004, Defendants sent one more email asking about "the extent of the discovery that [Shamrock] would consider if we were to agree to the Mediation."  Jarvis Dec. Ex. YY.  That same day, Plaintiffs responded by asking for the information from Mr. Wood that was promised on September 5.  *Id.*  Defendants provided nothing.  Jarvis Dec. at ¶ 101.  By this point, it appeared to Plaintiffs that Defendants might merely be toying with the idea of mediation, in the hope of getting extra-judicial discovery to use as the basis for a lawsuit.  Buchler Dec. at ¶ 24.  *See, e.g.*, Jarvis Dec. Ex. WW (asking Shamrock to provide discovery information to show that it is sincere "in seeking a resolution through mediation").

By letter dated September 13, 2004 enclosing a courtesy copy of the Original Delaware Complaint, Plaintiffs advised Defendants that:

> The commencement of this action reflects no diminution in plaintiffs' desire to engage in the previously discussed mediation with your clients.  However, it has been more than two weeks since plaintiffs first proposed the mediation, and you have yet to agree to it. Consequently, plaintiffs thought it prudent to pursue the mediation in the context of a pending action.

D.I. 41 Ex. H at 1.  Since then, Defendants have not expressed the slightest interest in pursuing mediation or settlement discussions.  Jarvis Dec. at ¶ 102.

*Defendants' Inchoate Threats to Sue Plaintiffs*

Plaintiffs do not deny that, by the time they filed the DE Action, Defendants had intermittently been threatening litigation for months.  For example, in a July 12, 2004 letter to Shamrock, Krieger and Buchler, Defendants stated that "we are exploring the rights of the Class B shareholders to seek recovery of their equity and damages, as well," and that "millions of

dollars may have been lost by what we feel is actionable behavior." D.I. 41 Ex. A at 2-3. In this July 2004 letter, Defendants also <u>threatened to try to harm Shamrock's reputation by publicizing the Defendants accusations</u>. *Id.* Ex. at 2.

For even longer, Defendants had been accusing Plaintiffs of breaches of fiduciary duty. *See, e.g.*, April 1, 2004 email from Arenson to Buchler, stating that Defendants "FEEL VERY STRONGLY THAT SHAMROCK USED ITS CONTROLLING POSITION TO FURTHER SHAMROCK'S ENDS, WITHOUT REGARD TO THE IMPACT ON OTHER ALH SHAREHOLDERS." Jarvis Dec. Ex. OO (upper case in original). Especially in this context, Defendants' August 27, 2004 email <u>asking</u> whether Section 10.2 of the Operating Agreement prevented the filing of a lawsuit in North Carolina is patently inadequate to support Defendants' assertion that they had <u>informed</u> Plaintiffs of their imminent intention to sue in North Carolina.

*The Litigation Has No Material Connection with North Carolina*

Other than to needlessly increase Plaintiffs' litigation expenses, Defendants had no reason for commencing the NC Action. Indeed, they offer not a single reason for why North Carolina is a preferable forum. Defendants' Forum Motion is not a motion to dismiss the DE Action for improper venue or to transfer the DE Action to North Carolina. Thus, it does not attempt to set forth any reasons why Delaware is an inappropriate or inconvenient forum or why North Carolina would be a more appropriate or convenient forum. The sole objective of the Forum Motion is to discredit the DE Action as "forum shopping" and thereby establish the primacy of the NC Action. D.I. 41 at 12; *see also id.* at 2-4, 6-7, 10.

As noted above, if Defendants had a legitimate interest in proceeding in North Carolina, they could have sought to transfer the DE Action there. Instead they opened a whole second litigation front, such that the Plaintiffs must simultaneously defend multiple motions in the DE Action while addressing the numerous additional issues raised by the NC Action. On a motion to dismiss for improper venue or a motion to transfer, Defendants would bear a substantial burden to show that the case belonged in North Carolina. *See* Point II *infra*. Defendants' failure to make

such a motion shows that they did not and do not believe themselves able to carry this burden. By commencing the NC Action, Defendants apparently hope to shift to Plaintiffs the burden of seeking to transfer the NC Action to this Court.

The NC Complaint does not allege that any of the Plaintiffs or Defendants is a citizen or resident of North Carolina. None of the Defendants claims to conduct any business in North Carolina or to have any presence of any kind there. According to the NC Complaint (D.I. 41 Ex. I at ¶¶ 14-15), Arenson Holdings is an Israeli corporation with its principal place of business in Israel and D.A. Gardens is a Panamanian corporation with its principal place of business in Panama. J12 is alleged to be a New York general partnership with two partners: an individual who is a citizen of New York and a Delaware LLC which has as its members twelve New York trusts that have New York trustees. NC Complaint at ¶ 16.

SELK is alleged to be a Delaware LLC with two members: an individual who is a citizen of New York and a British Virgin Islands ("BVI") corporation. *Id.* at ¶ 17. The NC Complaint does not identify any principal place of business for SELK. According to the NC Complaint, the BVI corporation which is one of SELK's two members "does not have one principal place of business." *Id.* The BVI corporation allegedly "engages in business activities throughout Europe and Israel and occasionally the United States." *Id.* The NC Complaint alleges that the BVI corporation's "day to day activities, including investment decisions, as well as corporate decisions, are made in Europe, Israel and occasionally in New York." *Id.* Laurel is alleged to be a Delaware LLC with three members: two individuals who are citizens of New York and New Jersey, respectively, and a Bahamian corporation which has its principal place of business in Geneva, Switzerland, "where all corporate business decisions are made." *Id.* at ¶ 18.

According to the NC Complaint (¶ 26), Mulvaney Homes, Inc. ("MHI"), which operated in North Carolina, was one of ALH's three home-building subsidiaries. In December 2004, MHI was the last of ALH's home-building subsidiaries to be sold. Arenson, as Class B Representative, apparently deemed the sale of MHI to be of no importance — he did not even bother to attend the

December 15, 2004 Supervisory Board meeting at which the proposed sale of MHI was considered. Jarvis Dec. Ex. GG. Arenson explained this by stating that "any further participation [in ALH's affairs] would be a waste of my time." Jarvis Dec. Ex. GG at 1.

The NC Complaint alleges that, in February 2003, some of the parties met in North Carolina to discuss current and future problems of ALH. NC Complaint ¶¶ 45-46. Defendants allege that, at this meeting, they expressed concerns and made proposals that were ignored by the Plaintiffs. *Id.* Defendants further allege that, at this meeting, Plaintiffs stated that they did not want to continue carrying the burden of managing ALH. *Id.* Even assuming *arguendo* that these allegations in the NC Complaint were true, it would not mean that "a substantial part of the events or omissions giving rise to [Defendants' claims] occurred" in North Carolina. *See* 12 U.S.C. §1391(a). To the contrary, the "events or omissions" alleged in the NC Complaint as the basis of the Defendants' claims occurred <u>before</u> the February 2003 meeting, <u>outside</u> of North Carolina.

In addition to the fact that the DE Action has been litigated in this Court for nearly a year, parties on both sides are Delaware entities: SELK and Laurel are Delaware LLCs, SCA is a Delaware corporation and one of J12's general partners is a Delaware LLC. D.I. 37 at ¶¶ 52, 57, 60, 68(l). There are other sound reasons for the DE Action to have been brought in Delaware and to remain here. After the parties' August 26, 2004 conference call proved useless and Defendants did not agree to mediation, Plaintiffs filed their original complaint in the hope of obtaining a prompt resolution of the parties' dispute. D.I. 20 ¶23. As reflected in Plaintiffs' September 13, 2004 letter to Defendants enclosing the original complaint, Plaintiffs believed that a pending action in the Chancery Court might be conducive to getting Defendants involved in the mediation process in that court. D.I. 41 Ex. H.

Moreover, all of the issues in this case arise from the creation and management of a Delaware LLC and are governed by Delaware law. The courts in Delaware have particular expertise in matters of this kind. Given that Defendants' claims against Plaintiffs are derivative in nature (*see* Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss the First Amended

Complaint for Declaratory Relief at Point II), the expertise of the Delaware courts is of particular value in this case.  Delaware is also geographically fair and convenient.  Defendants' lead counsel is in Baltimore and Plaintiffs' lead counsel is in New York.  Both parties have extremely able Delaware counsel, who will be needed by the parties to advise on Delaware law regardless of where the case is heard,  To the extent that Defendants' principals are in the U.S., they are in the Northeast, *e.g.*,  Michael Jesselson (J12) and Shalom Lamm (SELK) are in New York and Mark and Yeheskel Frankel (Laurel) are in New York and New Jersey.  To the extent that Defendants must travel from overseas and Plaintiffs must travel from California, air service to and from the Wilmington, Delaware area (including Philadelphia, New York and Washington) is certainly more plentiful than it is to Charlotte, North Carolina.[6]

## ARGUMENT

**I.    As to SELK and Laurel, the Forum Motion is Untimely**

The Forum Motion purports to be a motion "under the Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure Rule 12(b)" (D.I. 40 at 1).  Neither the Forum Motion nor Defendants' supporting brief identifies any subsection of FED. R. CIV. P. 12(b) under which a motion in lieu of answer could be made (D.I. 40 & 41).  The Forum Motion does not purport to be a motion to dismiss for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1), for improper venue under FED. R. CIV. P. 12(b)(3) or for failure to state a claim under FED. R. CIV. P. 12(b)(6).  Nonetheless, Defendants contend that, as to SELK and Laurel, the Forum Motion is a valid Rule 12(b) motion in lieu of answer.

The fatal flaw in SELK and Laurel's position is that if the Forum Motion is deemed to be a FED. R. CIV. P. 12(b) motion in lieu of answer, it should have been made as part of their October 14, 2004 motion under FED. R. CIV. P. 12(b)(7) to dismiss the Original Complaint for failure to join indispensable parties under FED. R. CIV. P. 19 (the "Original Motion") (D.I. 3).

---

[6]      As set forth in Point II below, it is by no means Plaintiffs' burden to show the convenience of Delaware as a forum for this case.  But given that Defendants have made no attempt to address these issues, the basis for denial of their Forum Motion is that much clearer.

The fact that the Original Complaint was superseded by the Amended Complaint does not revive the right to present by motion defenses that were available but were not asserted in a timely fashion prior to the amendment. *See, e.g.*, *Rowley v. McMillan*, 502 F.2d 1326, 1333 (4th Cir. 1974) (amendment to initial pleading permits defendant to assert only those FED. R. CIV. P. 12 defenses that were not available at time of defendant's initial response, so unasserted defense available at time of initial response may not be asserted when initial pleading is amended); *Gilmore v. Shearson/American Express, Inc.*, 811 F.2d 108, 112 (2d Cir. 1987) (amended complaint ordinarily supersedes original pleading, but does not automatically revive all defenses and objections that defendant has waived in response to the original pleading; FED. R. CIV. P. 12 defenses may not be resurrected merely because plaintiff has amended complaint).

Assuming *arguendo* that the Forum Motion could be construed as a motion to dismiss for improper venue under FED. R. CIV. P. 12(b)(3), SELK and Laurel long ago waived any right to assert a venue defense. Their Original Motion did not raise improper venue. The Amended Complaint adds nothing concerning venue that was not in the Original Complaint. Therefore, under FED. R. CIV. P. 12(h)(1), SELK and Laurel have waived any improper venue defense they may have had.

Furthermore, if the Forum Motion could be construed as a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6), SELK and Laurel would be barred by FED. R. CIV. P. 12 (g) and 12(h)(1) from making the Forum Motion. Their Original Motion did not move to dismiss under FED. R. CIV. P. 12(b)(6). The Amended Complaint makes no change on which such a motion could be based — it adds new causes of action but does not alter the existing ones. Consequently, in accordance with FED. R. CIV. P. 12(g) and 12(h)(2), SELK and Laurel's next opportunity to raise by motion a defense of failure to state a claim on which relief may be granted would be a motion for judgment on the pleadings, which cannot be made until after the pleadings are closed. FED. R. CIV. P. 12(c)

Similarly, if the Forum Motion could be construed as a motion to dismiss for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1), SELK and Laurel would be barred by FED. R. CIV. P. 12(g) from making the Forum Motion. Their Original Motion did not move to dismiss under FED. R. CIV. P. 12(b)(1). The Amended Complaint offers no new grounds for such a motion. Consequently, under FED. R. CIV. P. 12(g), SELK and Laurel "shall not . . . make a motion based on the defense or objection" of lack of subject matter jurisdiction.

In connection with the previous removal/remand proceedings herein, Defendants made the same claims of bad faith and forum shopping that they now make in the Forum Motion. *See, e.g.*, D.I. 24 at 1, 3, 7-8. As this Court has admonished, "'[t]here is a strong policy in this court 'against tardily raising defenses that go not to the merits of the case but to the legal adequacy of the initial steps taken by the plaintiff in his litigation.' Equally pervasive is a strong policy of conservation of judicial time and effort." *Mobilificio San Giacomo S.p.A. v. Stoffi*, C.A. No. 96-415-SLR, 1998 U.S. Dist. LEXIS 3288, at *21 (D. Del. Jan. 29, 1998) (internal citation omitted) (defendants waited until eight months into litigation before seeking leave to file forum selection clause motion, and did not mention forum selection clause defense in previous motion to dismiss under FED. R. CIV. P. 12(b)(6)).

As in *Mobilfilicio*, SELK and Laurel waited more than eight months to file their Forum Motion, even though the supposed grounds for such motion were not only known to them but had been asserted in the course of the removal/remand proceedings. For this reason alone, the Forum Motion should be denied as to SELK and Laurel. *See id.* at *22.

It is also noteworthy that move to dismiss this action under FED. R. CIV. P. 12(b)(7)for failure to join the Arenson Entities and J12 as indispensable parties pursuant to FED. R. CIV. P. 19 (the "Rule 19 Motion"). the Arenson Entities and J12ALH are currently defendants in this action, so the Rule 19 Motion is defective on its face. SELK and Laurel's <u>hope</u> that the Arenson Entities and J12 will in the future be dismissed for lack of personal jurisdiction does not alter the fact that they <u>are not now and may never be absent from this action.</u>

18

It appears that SELK and Laurel, by making this untimely Forum Motion and the patently defective Rule 19 Motion, are struggling mightily to find some rationale for not answering the Amended Complaint and filing their counterclaims herein. Under FED R. CIV. P 13(a), a pleading

> shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that this the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if . . . at the time the action was commenced the claim was the subject of another pending action . . ..

Here, the mirror image NC Complaint (D.I. 41 Ex. I) leaves no doubt that SELK and Laurel have claims against Plaintiffs that are compulsory counterclaims in this action.

SELK and Laurel are clearly attempting to use the Forum Motion (and the Rule 19 Motion) as procedural camouflage for their failure to file their answer and counterclaims in this action. *See, e.g., Bell Telephone Labs., Inc. v. Int'l Bus. Machines Corp.*, 630 F. Supp. 373, 379 (D. Del. 1984) ("[w]hen a party violates Rule 13(a) by bringing a second action rather than filing a compulsory counterclaim in the first action, 'normally, the first suit should have priority'"); *Tuff Torq. Corp. v, Hydro-Gear Ltd. P'ship*, 882 F. Supp. 359, 364 (D. Del. 1994) (characterizing the filing of a case in another district to avoid filing a counterclaim in the first action as "blatant forum shopping"). The fact that SELK and Laurel filed the NC Action the day before their deadline to answer (and counterclaim) or move (if they had a valid motion, which they do not) with respect to the Amended Complaint is further confirmation that Defendants — not Plaintiffs — are the forum shoppers here.

II.     **As to All Defendants, the Forum Motion Has No Merit**

In the words of this Court:

> More than fifty years ago, the Third Circuit adopted the "first-filed rule" where "in all cases of federal concurrent jurisdiction the court which first had possession of the subject must decide it." Consequently, the second filed action should be stayed or transferred to the court where the first filed action is pending. The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank."

*Guidant Corp. v. St. Jude Med., Inc.*, Civ. No. 04-067-SLR, 2004 U.S. Dist. LEXIS 17218, at

*11-12 (D. Del. Aug. 27, 2004) (internal citations omitted); *Genfoot, Inc. v. Payless Shoesource,*

*Inc.*, Civ. No. 03-398-SLR, 2003 U.S. Dist. LEXIS 22437, at *3 (D. Del. Dec. 2, 2003) (same).

The objective of the first-filed rule is "to avoid concurrent litigation of the same issues,

between the same parties, in more than one federal court." *Dippold-Harmon Enters., Inc. v.*

*Lowe's Cos., Inc.*, C.A. No. 01-532 GMS, 2001 U.S. Dist. LEXIS 18547, at *13-14 (D. Del. Nov

13, 2001) (internal citations omitted). In an "eminently practical" fashion, the first-filed rule

benefits both litigants and the courts:

> For the benefit of litigants, "the party who first brings a controversy into a court of
> competent jurisdiction for adjudication should . . . be free from the vexation of
> subsequent litigation over the same subject matter." For the benefit of courts and the
> public they serve, "courts already heavily burdened with litigation with which they must
> of necessity deal should . . . not be called upon to duplicate each other's work involving
> the same issues and the same parties."

*Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*, 265 F. Supp. 2d 445, 448 (D. Del.

2003) (internal citations omitted).

Accordingly, the decisions of this Court reflect an "overwhelming preference toward the

first-filed case." *Guidant*, 2004 U.S. Dist. LEXIS 17218, at *12. Invocation of the first-filed rule

is "'the norm, not the exception. Courts must be presented with exceptional circumstances before

exercising their discretion to depart from the first-filed rule.'" *Genfoot*, 2003 U.S. Dist. LEXIS

22437, at *4 (citing *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 979 (3d Cir. 1988)). "Only in 'rare or

extraordinary circumstances' should the first-filed action give way to one filed later." *Chase*

*Manhattan Bank*, 265 F. Supp at 448 (citing *E.E.O.C. v. Univ. of Pa.*, 850 F.2d at 972).

"Plaintiffs' choice of forum is 'paramount.'" *Siemens Med. Sys. Inc. v. Fonar Corp.*,

Civil Action No. 95-261-SLR, 1995 U.S. Dist. LEXIS 22334, at *10 (D. Del. April 27, 1995)

(citation omitted). *See also ARGOS v. Orthotec, LLC*, 304 F. Supp. 2d 591, 597-98 (D. Del.

2004) (in context of motion to transfer venue, "plaintiff's choice of forum is a paramount

consideration" to which courts accord "substantial weight"). Even where "'the plaintiff has not

20

chosen its 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's

choice of forum is still of paramount consideration.'" *Siemens*, 1995 U.S. Dist. LEXIS 22334, at

*10 n.3.

"The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has

selected the forum for some legitimate reason." *Guidant*, 2004 U.S. Dist. LEXIS 17218, at *7

(citations omitted); *Padcom, Inc. v. NetMotion Wireless, Inc.*, Civ. No. 03-983-SLR, 2004 U.S.

Dist. LEXIS 9658, at *22 (D. Del. May 24, 2004) (citations omitted).  *See also, e.g., Siemens*,

1995 U.S. Dist. LEXIS 22334, at *10.  For example, it is "legitimate and rational . . . for a

plaintiff to choose to litigate in a forum in which it is incorporated." *The Joint Stock Society v.

Heublein, Inc.*, 936 F. Supp. 177, 187 (D. Del. 1996).  The    fact    that    defendants    are

incorporated in Delaware is likewise a legitimate reason for a forum choice.  *Siemens*, 1995 U.S.

Dist. LEXIS 22334, at *10 & n.4 (it can be assumed that defendant Delaware corporation desired

the benefits of Delaware law; having chosen Delaware as its legal home, defendant cannot

complain of being sued in Delaware).  *See Chase Manhattan Bank*, 265 F. Supp. at 451 (in

denying defendants' transfer motion under 28 U.S.C. § 1404(a), the Court noted that both

defendants were Delaware corporations and that "'[c]learly this forum's interest extends to these

corporate citizens that have sought the protection of Delaware's laws'")  As this Court stated in

*ARGOS*, 304 F. Supp. 2d at 598:

> ARGOS filed suit against Orthotec in the District of Delaware because Orthotec is a
> Delaware limited liability company.  Given Orthotec's choice for incorporation, the court
> finds that it voluntarily exposed itself to the possibility of litigation in Delaware.
> Orthotec cannot now attempt to shield itself from litigation in this forum by arguing that
> no conduct occurred in Delaware, that no injury was felt in Delaware, and that deposition
> and trial in Delaware would involve additional expense.

In order for a Delaware court to transfer venue, "'defendants brought into suit in Delaware must

prove that litigating in Delaware would pose a "unique or unusual burden" on their operations.'"

*Id.* at 597.

Even if a plaintiff does not have legitimate, rational reasons for filing in Delaware, the defendant is not automatically entitled to a transfer of the action under 28 U.S.C. § 1404(a). *Joint Stock Society*, 936 F. Supp. at 187. "[T]he defendant's burden of proof that a transfer is appropriate does not change merely because the plaintiff lacks legitimate, rational reasons for filing in Delaware. The defendant still must prove that the convenience of the parties and witnesses and the interest of justice strongly favor a transfer." *Id.*

In accordance with the well-established principles set forth above, this Court has consistently applied the first-filed rule and rejected putative claims of bad faith and forum-shopping such as those asserted by Defendants. For example:

- ***Matsushita Battery Indus. Co., Inc. v. Energy Conversion Devices, Inc.***, Civil Action No. 96-101-SLR, 1996 U.S. Dist. LEXIS 8153 (D. Del. April 23, 1996). The day after plaintiffs (MBI) sued defendants (ECD) for declaratory judgment in this Court, ECD sued MBI in Michigan federal court concerning the same patent. ECD moved to dismiss or stay the first-filed Delaware action, or alternatively, transfer first-filed action to Michigan. MBI moved to enjoin the second-filed action Michigan action. *Id.* at *2. This Court denied ECD's motion and granted MBI's motion. *Id.* at *3.

  ECD argued that the first-filed rule did not apply because (1) MBI had engaged in an improper race to the courthouse in order to avoid litigating in Michigan, and (2) MBI filed its suit in bad faith, knowing that ECD was awaiting a response to its request for further negotiations. *Id.* at *8-9. The Court stated that whether a party has filed a declaratory judgment action anticipatorily or in bad faith is a factor — but not the only factor — to consider in deciding whether to dismiss a first-filed action. *Id.* at *9-10. The parties offered conflicting versions of the tenor of their negotiations. ECD claimed that there had been a long and fruitful history of negotiations, that they were awaiting a response from MBI, and that they were shocked at having been sued before MBI responded to their offer to negotiate. MBI characterized their decision to sue as a reasonable response to ECD's repeated demands that MBI enter into a joint venture, despite MBI's emphatic rejection of previous such demands. *Id.* at *10.

  The Court found that the record was unclear as to the precise tone of the negotiations between the parties. *Id.* Noting that MBI may have "acted hastily" in filing suit without responding as it had indicated it would, the Court could not conclude from the record before it that an improper race to the courthouse had occurred. *Id.* at *10-11. Moreover, even if MBI's suit could be considered anticipatory, the Court declined to grant ECD's motion in this ground alone, without any other factors weighing toward dismissal or transfer. *Id.* at 11.

- ***Siemens***, 1995 U.S. Dist. LEXIS 22334. Less than three weeks after Siemens filed its original declaratory judgment action in this Court, and two days after Siemens amended its complaint to seek declaratory judgment with respect to two additional patents, defendants sued Siemens in New York federal court on the same two patents. *Id.* at *1-3.

22

The Court rejected defendants' contention that Siemens' had engaged in an improper "race to the courthouse" and denied defendants' motion to dismiss or stay the first-filed Delaware action or transfer it to New York under 28 U.S.C. § 1404(a). *Id*. at *2, 4, 5.

In support of dismissal, defendants asserted that the first-filed rule should not be applied because (1) Siemens had purposefully misused the Declaratory Judgment Act, 28 U.S.C. § 2201(a), to engage in forum shopping, and (2) its application would be inconsistent with judicial and litigant economy and the just and effective disposition of disputes. In addition, defendants argued that Siemens' declaratory judgment action should be dismissed in the interest of judicial economy and for the convenience of parties and witnesses. *Id*. at *4-5.

As to the alleged misuse of the Declaratory Judgment Act, Defendants claimed that Siemens had not filed its lawsuit to avoid accrual of avoidable damages or to obtain an early adjudication of its rights. According to defendants, Siemens knew that if it "failed to negotiate a license in good faith," it would be sued by one of the defendants immediately after the conclusion of a litigation between that defendant and a third party. *Id*. at *4-5. Supposedly, Siemens began its race to the courthouse as that litigation drew to a close. *Id*. at *5.

In response, Siemens stated that it chose the Delaware forum for convenience of parties and witnesses, including its more central location. *Id*. at *7-8. According to Siemens, the Delaware forum was "not inconsistent judicial and litigant economy and the just and effective disposition of disputes." *Id*. at *7. The Court concluded that defendants had failed to meet their burden of demonstrating that the relevant factors warrant dismissal, noting that Siemens "ha[s] not clearly engaged in forum shopping in contravention of the purpose behind the Declaratory Judgment Act." *Id*. at *8 (emphasis added).

- ***Corixa Corp. v. IDEC Pharm. Corp.***, C.A. No. 01-615-GMS, 2002 U.S. Dist. LEXIS 2980 (D. Del. Feb. 25, 2002). Two days after IDEC sued for declaratory judgment action in California federal court, Corixa filed a mirror image action in this Court. This Court granted IDEC's motion under 28 U.S.C. § 1404(a) to transfer the second-filed Delaware action to California. *Id*. at *13. The court observed that the first-filed rule "applies equally well where the first-filed action is one for declaratory judgment." *Id*. at *4 (emphasis added).

  In opposing IDEC's motion to transfer, Corixa argued that the first-filed rule was inapplicable because, *inter alia*, IDEC had improperly "'raced to the courthouse'" just before a regulatory announcement that would have permitted Corixa to sue. The Court acknowledged that IDEC's timing seemed "providential," but that the California court had specifically found that IDEC "possessed a reasonable apprehension of suit when it filed its declaratory judgment action." The California court further stated that because an actual controversy existed, IDEC's suit "'was not motivated by "forum shopping alone," but rather was a legitimate exercise of its opportunity under the Declaratory Judgment Act.'" *Id*. at *5-6 (emphasis added).

- ***Chase Manhattan Bank***, 265 F. Supp. 2d 445. Chase sued UTN for declaratory judgment in this Court; UTN sued Chase in New York federal court an hour and a half later on the same day. *Id*. at 446-47. The two cases involved the same operative facts. *Id*. at 446, 450. UTN's motion to dismiss the first-filed Delaware action or transfer it to New York under 28 U.S.C. § 1404(a) was denied, as was UTN's motion to stay the

Delaware action pending a decision in the New York court on UTN's motion to require the parties' dispute to be litigated there. *Id*. at 446 & n.1. Chase moved to enjoin the second-filed New York action on grounds of, *inter alia*, the first-filed rule and a forum selection agreement between the parties; this motion was granted. *Id*. at 446, 448-49.

Before the litigation started, the parties "apparently engaged in negotiations to resolve their differences but, after [UTN] failed to respond by a specified deadline to a . . . settlement offer from Chase, Chase immediately filed suit in this Court." *Id*. at 447. In granting Chase's motion to enjoin the New York action, the Court pointed out that "<u>UTN itself initiated this dispute by effectively threatening Chase with suit</u>." *Id*. at 449 (emphasis added).

The basis for UTN's motion to dismiss the first-filed Delaware action was that Chase "improperly invoked this Court's jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a)." *Id*. at 450 n.8. The Court stated that "[t]his aspect of [UTN's] motion warrants no more than a footnote," noting that UTN itself acknowledged that it had threatened legal action and that "<u>the purpose of the Declaratory Judgment Act is 'to enable a person caught in a controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist</u>.'" *Id*. (emphasis added).

- ***Guidant***, 2004 U.S. Dist. LEXIS 17218. <u>Three weeks</u> after plaintiffs filed their declaratory judgment action in this Court, one of the plaintiffs filed a second action against the same defendants in Minnesota federal court. *Id*. at *1-3. Defendants moved under 28 U.S.C. §1404(a) to transfer the first-filed Delaware action to the Minnesota court, asserting, *inter alia*, that the two actions involved the same type of product and that both sides had corporate headquarters in Minnesota. *Id*. at *4-5, 9. Noting that a <u>plaintiff's choice of forum is a paramount consideration</u> and that the defendant must show that the relevant factors weigh strongly in favor of transfer, this Court denied the transfer motion, relying on the first-filed rule.

- ***Genfoot***, 2003 U.S. Dist. LEXIS 22437. <u>Seven months</u> after Genfoot filed its action in Kansas federal court, Payless sued Genfoot in this Court for declaratory judgment. *Id*. at *1-3. Noting that the Delaware case involved the same parties, the same patent and the same legal theories as the first-filed Kansas action, this Court found <u>no exceptional circumstances</u> justifying departure from the first-filed rule. *See id*. at *4. Accordingly, the Court granted Genfoot's motion under 28 U.S.C. §1404(a) to transfer the second-filed Delaware action to Kansas. *Id*. at *4-5.

- ***Dippold-Harmon***, 2001 U.S. Dist. LEXIS 18547. <u>Less than three months</u> after a Lowe's subsidiary sued Dippold in North Carolina state court (action was later removed to federal court), Dippold sued Lowe's in this Court. *Id*. at *1-2. Dippold was a Delaware corporation with its principal place of business in Delaware; the Lowe's subsidiary was a North Carolina corporation with its principal place of business in North Carolina. *Id*. at *2-3. Lowe's moved under the first-filed rule and 28 U.S.C. §1404(a) to transfer the second-filed Delaware action to North Carolina or, alternatively, to stay the Delaware action pending the outcome of the North Carolina action. *Id*. at *1-2, 13. The two actions involved essentially the same parties and issues. *Id*. at *14-15. The Court found that the first-filed rule weighed heavily in favor of transfer and that the § 1404(a) transfer factors also favored transfer, so the Court transferred the second-filed action to North Carolina. *Id* at *23.

24

- ***Padcom***, 2004 U.S. Dist. LEXIS 9658.  <u>Within two weeks</u> after Padcom sued in this Court, defendants filed an action in California federal court mirroring the issues raised in the first-filed Delaware action.  *Id*. at *1-2.  One of the defendants (DSI) moved under 28 U.S.C. § 1404(a) to transfer the first-filed Delaware action to California.  *Id*. at *2. Noting that Padcom was located in Pennsylvania, DSI was located in New Jersey, and the second defendant was located in Seattle but trying to conduct business on a nationwide basis, the Court denied DSI's motion to transfer.  The Court stated that "consistent with the <u>deference afforded a plaintiff's choice of forum</u> [and other factors], the court is satisfied that this litigation can be maintained without undue burden to the parties."  *Id*. at *24-25 (emphasis added).

- ***Miteq, Inc. v Comtech Telecomms. Corp.***, C.A. No 02-1336-SLR, 2003 U.S. Dist. LEXIS 1015 (D. Del. Jan 23, 2003).  A little more than three months after Comtech filed (but did not serve) its complaint against Miteq in federal court in Arizona, Miteq sued Comtech in this Court for declaratory judgment concerning the same patent.  Comtech did not serve its complaint on Miteq until after it was sued by Miteq.  Comtech said it refrained from serving its complaint on Miteq "in order to 'permit a dialogue between the parties.'"  *Id*. at *1-2.  Comtech moved to dismiss or stay Miteq's second-filed action or transfer it to Arizona.  *Id*. at *3.  At the time when Miteq sued Comtech, Miteq had not been served with Comtech's complaint.  Nonetheless, the Court ruled in favor of Comtech's first-filed action.  The Court noted that the burden was on Miteq to present "exceptional circumstances" to justify departure from the first-filed rule.  *Id*. at *4.  Had the Court denied Comtech's transfer motion, it "would simply be transferring the inconvenience of traveling" from Miteq to Comtech, which it declined to do.  The Court pointed out that "[m]ere inconvenience to one party does not rise to the level of exceptional circumstances that would require the court to depart from the principles of the first-filed rule."  *Id*. at *5.

In contrast to the solid body of case law set forth above, Defendants cite only one case in which this Court dismissed or stayed a first-filed action.  This Court's decision in *EnviroMetrics Software, Inc. v. Georgia-Pacific Corp.*, No. Civ.A. 97-243-SLR, 1997 WL 699328 (D. Del. Nov. 4, 1997) (D.I. 41 Ex. J), dismissed only one of three counts of a first-filed lawsuit — and it did so under circumstances that bear no resemblance to the situation between Plaintiffs and Defendants here.

In *EnviroMetrics,* at the time the plaintiff software licensor (ESI) filed its lawsuit against the defendant software licensee (G-P), the parties "had been discussing G-P's complaints for only a matter of days (and were still discussing possible resolutions) when plaintiff ESI filed this lawsuit."  *Id*. at *4.  As this Court pointed out, "[s]uch a time frame from notice of breach to lawsuit surely is insufficient to generate the magnitude of uncertainty and insecurity typically

associated with declaratory judgment actions . . .." *Id.*[7] The Court also noted that a "'race to the courthouse'" is particularly inappropriate under circumstances where the party entitled to bring a coercive action has not failed or delayed in bringing it. *Id.* at *3 (citing *Gribin v. Hammer Galleries*, 793 F. Supp. 233, 236 (C.D. Cal. 1992) (relied on by Defendants; *see* D.I. 41 at 11) (declaratory judgment actions serve useful purpose of relieving uncertainty or insecurity caused by adversary's failure or delay in bringing suit)).

The case at bar bears no material resemblance to *EnviroMetrics*. As set forth in detail in the Statement of Facts above, for two months, Defendants threatened litigation and made virulent accusations against Plaintiffs — indeed, the accusations had begun many months before. *See, e.g.,* Jarvis Dec. Ex. OO. From mid-July through late August of 2004, notwithstanding the efforts of counsel, the parties were unable to agree on a place and time for a face-to face meeting and were barely able to schedule a conference call. During the pre-call correspondence, Defendants kept demanding to be "made whole" for their entire investment in ALH — a demand that Plaintiffs expressly rejected. The parties were fundamentally at odds concerning the agenda for the call: Plaintiffs wanted a forward-looking discussion of possible transactional resolutions, while Defendants seemed intent on rehashing the past.

After the call, it was apparent to both sides that there was no common ground for further calls or meetings, and none were scheduled or even discussed. Plaintiffs' counsel suggested mediation under 10 Del. C. § 347, *et seq.*, in the last-ditch hope that a Chancery Court judge might help Defendants accept that they have no legal claim against Plaintiffs for ALH's

---

[7]     ESI seems to have made quite an effort to lull G-P into a false sense of complacency. On May 2, 1997, just a few days before ESI filed its complaint on May 7, 1997, G-P received a letter from ESI's president offering a "'no-risk'" set of services by which ESI would help G-P with the problems in ESI's software. 1997 WL 699328, at *1. The letter concluded by stating that "'I look forward to hearing from you, and am hopeful that we can work with you in the near future.'" *Id.* Even after ESI filed its complaint, ESI encouraged G-P to believe that ESI's mission was to fix the software problems. On May 14, 1997, ESI's president wrote to G-P: "There are people here, Jim, who are prepared for this challenge and want to work very hard for you. I hope you'll take us up on this offer." It was several days later, on May 16, 1997, when G-P received service of ESI's complaint, that G-P first understood that the parties' negotiations had been terminated. *Id.*

disappointing results. But Defendants were noncommittal. They did not even provide the information concerning the discovery they said they would want <u>if</u> they were to agree to mediation. Prior to the filing of the DE Action, the last communication between the parties was a second request by Plaintiffs for the promised discovery information. The ball was in Defendants' court and they chose not to respond.[8]

Moreover, Defendants greatly delayed in bringing the NC Action they now claim was "imminent" a year ago, whereas the time between the filing of the ESI and G-P actions was only a month and a half. *EnviroMetrics*, 1997 WL 699328, at \*2. As the Fourth Circuit pointed out in a case where the delay in filing the second action was only four to six weeks, "there can be no race to the courthouse when only one party is running." *Learning Network, Inc. v. Discovery Comms., Inc.*, No. 01-1202, 2001 U.S. App. LEXIS 11881, at \*11 (4th Cir. June 7, 2001). Also, in *EnviroMetrics*, part of the basis for the Court's exercise of its discretion was the fact that the Georgia action included the president of ESI, who was not a party to the action in this Court. The case at bar is the other way around: the NC action does not include Arenson, who is a party to the DE Action here.

Defendants also rely on this Court's decision in *Moore Corp. Ltd. v. Wallace Computer Servs., Inc.*, 898 F. Supp. 1089 (D. Del. 1995). Moore, the bidder in a tender offer, sued Wallace, the target company, to prevent Wallace from blocking the tender offer. Two weeks later, Wallace sued Moore in New York State federal court, alleging that Moore's proposed acquisition of

---

[8]    *Compare Riviera Trading Corp. v. Oakley, Inc.*, 944 F. Supp. 1150 (S.D.N.Y. 1996) (relied on by Defendants; *see* D.I. 41 at 9-10). There, the court found that Riviera's failure to respond to a recent cease and desist letter from Oakley containing a revised draft settlement agreement indicated that Riviera's first-filed lawsuit was motivated in part by forum shopping. *Id.* at 1153, 1158-59. Here, in contrast, it was Defendants who failed to respond to Plaintiffs. In addition, Oakley's cease and desist letter "served the dual purpose of furthering settlement discussions and putting Riviera on notice that the failure of negotiations would lead to litigation." *Id.* at 1159. (D.I. 41 Ex. E) Neither furthered settlement discussions nor put Plaintiffs on notice that there would be litigation if negotiations failed. The one abortive conference call between Plaintiffs and Defendants was nothing like the negotiations in *Riviera*, which had already been partly successful. *Id.* at 1159. Also, the four days between the two lawsuits in *Riviera* (*id.* at 1153-54) are nothing like the more than eight months between the DE Action and the NC Action.

Wallace would violate the antitrust laws and that Moore had made false and misleading statements in connection with the tender offer. *Id.* at 1093-94. Wallace moved to dismiss Moore's first-filed action on the grounds that (1) the action was not ripe, and (2) Moore had engaged in forum shopping to avoid Second Circuit precedent that favored Wallace by granting antitrust standing to targets of hostile tender offers.

Having disposed of Wallace's argument that Moore's action was not ripe, this Court ruled that "only where forum shopping is the *sole* motivating factor is dismissal proper. *Id.* at 1099 (emphasis in original). Noting that the Third Circuit's decision in the *EEOC* case "broadly states that 'forum shopping [has] always been regarded as [a] proper basis for departing from the [first-filed] rule,' the cases cited for that proposition hold that <u>only</u> where forum shopping is the <u>sole factor</u> motivating a choice of forum <u>might</u> dismissal be proper." *Id.* (emphasis added). In *Moore*, the fact that "the issues raised involve Delaware law, a Delaware corporation and a Delaware Board of Directors" was sufficient to overcome the charge of forum shopping. *Id.*

As set forth in the Statement of Facts above, there are multiple legitimate reasons for the DE Action to be in this Court. It is Defendants' choice of the North Carolina (with which none of the parties has any relationship) that is unexplained and, as a practical matter, inexplicable — a tell-tale sign of forum shopping. *See GT Plus, Ltd. v. Ja-Ru, Inc.*, 41 F. Supp. 2d 421 (S.D.N.Y. 1998) ("'Forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated his choice'"), citing *Riviera*, 944 F. Supp. at 1158, relied on by Defendants in D.I. 41 at 9-10.

In support of their argument that the DE Action is suspect because it is an action for declaratory judgment, Defendants cite this Court's decision in *Eastman Kodak Co. v. Studiengesellschaft*, 392 F. Supp. 1152 (D. Del. 1775) (D.I. 41 at 11). But in *Eastman Kodak*, the Court dismissed a second-filed declaratory judgment action in favor of a Texas action filed six weeks earlier — the opposite of the relief Defendants seek here. As this Court put it in *Corixa*, 2002 U.S. Dist LEXIS, at *4: "The first-filed doctrine . . . applies equally well where the first-

filed action is one for a declaratory judgment." To the same effect is *Chase Manhattan Bank*, 265 F. Supp. at 450 n.8, where the Court emphasized that "the purpose of the Declaratory Judgment Act is 'to enable a person caught in a controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist.'"

In their discussion of declaratory judgment actions, Defendants also cite *Step-Saver Sys., Inc. v. Wyse Tech., The Software Line, Inc.*, 912 F. 2d 643 (3d Cir. 1990) (D.I. 41 at 11). There, the plaintiff's claim for declaratory relief arose from suits by plaintiff's customers asserting defects in products that plaintiff bought from defendant and then adapted for sale to the customers. Plaintiff's complaint asked the court to find that "if" the customer suits established defects as alleged by the customers, then defendant's conduct constituted intentional misrepresentation. The Third Circuit upheld the district court's dismissal of this claim as unripe, explaining that "[t]he main problem with [plaintiff's claim] lies in its first word, 'if.' Whatever defendants' warranties may have said, the defendants are not liable for damages that Step-Saver itself has not incurred." Id. at 647.[9]

*Step-Saver* could not be more different from the case at bar, where Defendants' have now sued (in the NC Action) on the same claims as to which Plaintiffs seek declaratory relief. Indeed, the NC Action "renders it 'quite impossible' to say that there was no ripe dispute at the time the [original] complaint was filed." *See Moore*, 898 F. Supp. at 1096-97. The parties here are adverse and the factual predicate for the pending claims has already occurred. The DE Action will resolve present disputes, not only as to Plaintiffs' liability for past acts, but also as to issues that will affect the parties' conduct going forward.

---

[9]    Defendants cite two other Third Circuit cases: *EEOC*, 850 F 2d 969, and *Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213 (3rd Cir. 1989) (D.I. 41 at 7-8, 10). These cases are inapposite. In *EEOC*, the issue before the Court was whether the district court had abused its discretion by refusing to dismiss a second-filed action in favor of a first-filed action filed three days before the end of a 20-day grace period, "to preempt an inevitable subpoena enforcement action." 850 F.2d at 975. *Terra Nova* did not involve the first-filed rule at all. The only cases cited by Defendants but not addressed in this brief are decisions that are from neither this Court nor the Third Circuit, which in any event do not support Defendants' position.

Although ALH no longer has any operations, it still exists and will eventually have to wind up its affairs. Buchler Dec. ¶ 22. Decisions with respect to, *e.g.*, the distribution of any remaining assets, will have to be made by the Supervisory Board. *Id*. Thus, the declaratory relief sought with respect to the parties' rights and duties under ALH's Operating Agreement and Delaware law will affect how (and by whom) such future decisions are made. Other prospective implications of the DE Action include, *inter alia*, whether, SELK's equity interest in ALH should be eliminated, as alleged in Count VII of the Amended Complaint (D.I. 37 at ¶¶177-80) — this would determine whether SELK will have any future role as a Class B Member. *See also* Plaintiffs' Answering Brief in Opposition to Defendant Arenson's Motion to Dismiss, Point III.

In short, Defendants have wholly failed to establish any factual or legal basis for their Forum Motion, which should accordingly be denied.

**CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss, or in the Alternative, for Stay of Proceedings.

MORRIS NICHOLS ARSHT & TUNNELL

_____/s/ S. Mark Hurd_____
A. Gilchrist Sparks, III (#467) (Asparks@mnat.com)
S. Mark Hurd (#3297) (SHurd@mnat.com)
Samuel T. Hirzel (#4415) (Shirzel@mnat.com)
1201 N. Market Street
Wilmington, DE 19899
302-658-9200
   Attorneys for Plaintiffs Shamrock Holdings of California, Inc., Shamrock Capital Advisors, Inc., Eugene I. Krieger, George J. Buchler and Bruce J. Stein

GREGORY P. JOSEPH LAW OFFICES LLC
Gregory P. Joseph
Pamela Jarvis
805 Third Avenue, 31st Floor
(212) 407-1200
New York, NY 10022

DATED:  August 8, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day August, 2005, copies of the within document were served on the following attorneys of record as follows:

**BY eFILE:**

Sean J. Bellew, Esquire
David A. Felice, Esquire
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, Delaware 19801

S. Mark Hurd (#3297)