IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHAMROCK HOLDINGS OF CALIFORNIA, INC., SHAMROCK CAPITAL ADVISORS, INC., EUGENE I. KRIEGER, GEORGE J. BUCHLER and BRUCE J. STEIN, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 04-1339 - SLR |
| v. | ) ) | |
| AVIE ARENSON, SELK, LLC, LAUREL EQUITY GROUP, LLC, J12 ALH ASSOCIATES, A. ARENSON HOLDINGS, LTD. and D.A. GARDENS, LTD. | ) ) ) ) ) ) | |
| Defendants. | | |

**DECLARATION OF GEORGE J. BUCHLER
IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS OR STAY**

**GEORGE J. BUCHLER** declares pursuant to 28 U.S.C. § 1764 that:

1. I am one of the Plaintiffs in the above-captioned action. I submit this declaration on behalf of Plaintiffs Shamrock Holdings of California, Inc. ("Shamrock"), Shamrock Capital Advisors, Inc. ("SCA"), Eugene I. Krieger ("Krieger"), Bruce J. Stein ("Stein") and myself, in opposition to the following motions filed by Defendants on June 3, 2005: (1) Defendants' Motion to Dismiss the First Amended Complaint for Declaratory Relief; and (2) Defendants' Motion to Dismiss, or in the Alternative, for Stay of Proceedings. Unless otherwise indicated, I have personal knowledge of the matters set forth in this Declaration, and as to such other matters, I believe that the statements herein are true.

1

2. Because of the substantial expertise of Defendant Avie Arenson ("Arenson") in the real estate, contracting and construction businesses, from time to time he visited the home-building operations of ALH, LLC ("ALH"), talked to local management and made suggestions for improving the operations.

3. Since the inception of ALH in 1998, Arenson has served on ALH's Supervisory Board as the representative ("Class B Representative") of the investors ("Members") in ALH's Class B equity (the "Class B Members").

4. To the best of my knowledge, information and belief: (a) in or around June 1998, all of ALH's investors, including the Class B Members, negotiated the terms of their investments in ALH, a limited liability company ("LLC") to be organized under Delaware law to engage in the home-building business; and (b) on or around June 12, 1998, all of ALH's investors, including the Class B Members, signed ALH's Operating Agreement and funded their investments in ALH.

5. To the best of my knowledge, information and belief, Arenson has at all times been the sole spokesperson and signatory for the Arenson Entities in connection with ALH (except to the extent that the Arenson Entities have been represented for legal and/or business purposes by Isaac M. Neuberger, Esq., and/or his law firm).

6. Plaintiffs have never denied Arenson, in his capacity as Class B Representative, access to any information he requested concerning ALH. To the best of my knowledge, information and belief, no one at ALH has ever done so.

7. On or around December 9, 1998, the representatives of the various classes of investors in ALH ("Class Representatives"), including Arenson, decided it would be in

ALH's best interests to form a Delaware corporate subsidiary to be the parent company of all of ALH's operating subsidiaries. To this end, all the Class Representatives, including Arenson, approved the creation of ALH II, Inc. ("ALH II"). ALH II was created in part for tax planning purposes, in order to, *inter alia*, capture the consolidated tax liability of ALH, while taxable income would flow directly to ALH's Members. ALH II was used as the vehicle for obtaining debt financing for ALH's operations and acquisitions. ALH II's financial statements were presented to lenders in connection with the initial arrangement and subsequent modification of such loans.

8. All the Class Representatives, including Arenson, approved the January 2000 loan to ALH II by Wachovia, N.A. ("Wachovia'), as well as the related arrangements.

9. All the Class Representatives, including Arenson, approved the borrowings by ALH II from certain of its Members pursuant to ALH's April 6, 2000 loan agreement (the "2000 Loan Agreement").

10. By early 2001, both the Class A and Class B Members of ALH were extremely dissatisfied with the performance Lion ALH Capital LLC ("Lion LLC"), as Manager of ALH under § 6.1(a) of ALH's Operating Agreement. The Class A and Class B Members of ALH believed that Lion LLC, Shalom Lamm and certain of their associates owed ALH millions of dollars in misappropriated and/or misused funds and unauthorized expenditures.

11.   Neither Arenson, as Class B Representative, nor the Class B Members have ever asked to terminate the July 1, 2001 Consulting Agreement between ALH and SCA (the "Consulting Agreement").

12.   Substantial services were provided to ALH under the Consulting Agreement. Krieger, Stein and I spent thousands of hours on ALH matters, including but not limited to the negotiation and renegotiation of loans and other financial arrangements with Wachovia, Swiss Reinsurance America Corporation ("Swiss Re") and Ohio Savings Bank.

13.   In or around early 2001, because of, *inter alia*, ALH's ongoing financial problems and disappointing performance, the Class Representatives, including Arenson, decided that it would be in ALH's best interests to consider selling ALH's operations.

14.   In March 2002, ALH and ALH II engaged Jolson Merchant Partners ("JMP") to provide financial advisory and investment banking services in connection with the possible sale of some or all of ALH's operations. With the knowledge and consent of ALH's Supervisory Board, including Arenson, JMP spent more than six months seeking a buyer for the ALH or substantially all of its assets. After these efforts to sell ALH in its entirety proved unsuccessful, JMP began seeking potential buyers of ALH's separate operations.

15.   In early 2002, regardless of whether some or all of ALH's operations would be sold, the Class Representatives, including Arenson, decided that ALH needed additional funding. After considering and exploring various alternatives, the Class Representatives, including Arenson, concluded that it would not be feasible to raise

additional equity from ALH's existing Members or obtain additional equity or loans from outside parties.

16. Pursuant to a loan agreement dated May 7, 2002 (the "2002 Loan Agreement"), certain of ALH's Members loaned approximately $4.4 million to ALH II. All the Class Representatives, including Arenson, approved the borrowings by ALH II pursuant to the 2002 Loan Agreement.

17. At ALH's June 26, 2003 Supervisory Board meeting, Arenson suggested that the loans to ALH II pursuant to the 2000 and 2002 Loan Agreements be repaid from the proceeds of the sale of Atlantic Builders, Inc. ("ABI"). All the Class Representatives, including Arenson, approved these loan repayments. Since then, Defendants have claimed that Plaintiffs wrongfully caused these repayments to be made, but they have not offered to return to ALH the loan repayments they received.

18. Until Arenson voted against the sale of ABI at ALH's June 26, 2003 Supervisory Board meeting, all Supervisory Board decisions had been unanimous.

19. As Class B Representative, Arenson had unrestricted access to ALH management, including at the operating level. After receiving financial reports and other information concerning ALH, he would, as he saw fit, contact William R. Lanius, Executive Vice President and Chief Financial Officer of ALH II, or other ALH management to ask follow-up questions or make comments.

20. In late July 2002, Arenson, on behalf of the Class B Members, advised Plaintiffs that the Class B Members were interested in buying out ALH's Class A equity.

Despite repeated invitations by Shamrock, the Class B Members never made a written proposal to acquire the Class A equity.

21.  Defendants contend (D.I. 44 at 13) that the formation of ALH and ALH II "were acts by Plaintiffs, not Arenson." In fact, in or around June 1998, <u>all of ALH's investors</u> caused ALH to be formed and begin operations, by (a) negotiating the terms of the transaction that would create ALH, as a Delaware LLC, to engage in the home-building business, (b) entering into the Subscription Agreements and the Operating Agreement, and making their capital contributions. Plaintiffs did not physically file the papers to form ALH or ALH II

22.  Even though ALH no longer has any operations, it still exists and will eventually have to wind up its affairs. Decisions with respect to, *e.g.*, the distribution of any remaining assets, will have to be made by the Supervisory Board.

23.  Following the parties' August 26, 2004 conference call, Plaintiffs concluded that there was no common ground between the parties that might serve as a starting point for settlement discussions.

24.  Despite the failure of the August 26, 2004 conference call to set in motion any negotiations between the parties, it occurred to Plaintiffs that a respected mediator experienced in the applicable principles of Delaware law might be able to help Defendants see that they had no basis for asserting liability against Plaintiffs. Plaintiffs proposed such a mediation, but Defendants did not agree to it. As of early September 2004, it appeared to Plaintiffs that Defendants might merely be toying with the idea of mediation, in the hope of getting extra-judicial discovery to use as the basis for a lawsuit.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Los Angeles, California, this 8th day of August, 2005.

_____
George J. Buchler

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day August, 2005, copies of the within document were served on the following attorneys of record as follows:

**BY eFILE:**

Sean J. Bellew, Esquire
David A. Felice, Esquire
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, Delaware 19801

_____
S. Mark Hurd (#3297)