# EXHIBIT A

*State of Delaware*

## Office of the Secretary of State    PAGE  1



I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF LIMITED LIABILITY COMPANY OF "ALH
HOLDINGS LLC", FILED IN THIS OFFICE ON THE THIRD DAY OF JUNE,
A.D. 1998, AT 1 O'CLOCK P.M.

*Edward J. Freel, Secretary of State*

2903934  8100

981394463

AUTHENTICATION:    9351237

DATE:    10-13-98

*STATE OF DELAWARE*
*SECRETARY OF STATE*
*DIVISION OF CORPORATIONS*
*FILED 01:00 PM 06/03/1998*
*981213185 – 2903934*

# CERTIFICATE OF FORMATION

## OF

## ALH HOLDINGS LLC

This Certificate of Formation of ALH Holdings LLC (the "LLC"), dated June 3, 1998, is being duly executed and filed by Jeeun P. Kahng, as an authorized person, to form a limited liability company under the Delaware Limited Liability Company Act (6 Del.C. §18-101, et seq).

### I.

The name of the limited liability company formed hereby is ALH Holdings LLC.

### II.

The address of the registered office of the LLC in the State of Delaware is c/o The Corporation Trust Center, 1209 Orange Street, Wilmington, New Castle County, Delaware 19801.

### III.

The name and address of the registered agent for service of process on the LLC in the State of Delaware is The Corporation Trust Company, 1209 Orange Street, Wilmington, New Castle County, Delaware 19801.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation as of the date first above written.

Jeeun P. Kahng
Authorized Person

DO NY-120580.1

# CERTIFICATE

The undersigned, an authorized officer of Kaufman + Bernstein, *INC.* hereby certifies that he has caused to be delivered to each member listed on Schedule A , except Shamrock Holdings of California, Inc., a copy of the Operating Agreement of ALH Holdings, LLC and the Class A subscription agreement sent to me under cover of a memorandum dated June 9, 1998 in connection with their subscription of Class A membership interest in ALH Holdings, LLC.

Date:  June 11, 1998

by _[signature]_

Name:  HOWARD BERNSTEIN
Title:  SECRETARY

# EXHIBIT B



**AMENDMENT DATED MARCH 15, 1999**

**TO OPERATING AGREEMENT**

**OF**

**ALH HOLDINGS LLC**

**DATED AS OF JUNE 12, 1998**

48773

## AMENDMENT TO ALH HOLDINGS LLC OPERATING AGREEMENT

Amendment, dated as of March 15, 1999 (the "Amendment"), to the Operating Agreement of ALH Holdings LLC ("the Company") dated as of June 12, 1998 (the "Operating Agreement") by and among Lion ALH Capital LLC, a Delaware limited liability company, the Persons listed on Exhibit A thereto, the Persons listed on Exhibit B thereto, Landmark Equity Investors LLC, a Delaware limited liability company and Shalom E. Lamm.

## EXPLANATORY STATEMENT

The Company and the members of the Company have agreed to amend the Operating Agreement as set forth in this Amendment. As of the date of this Amendment and pursuant to the Subscription Agreement, dated as of June 12, 1998, between the Company and Shalom E. Lamm, the Class E Member has repaid in full the Elovic Debt and has repaid $900,000 of the $5,600,000 owed on the Arbor Debt. The Class E Member has advised the Company that no Interest Amount or Discount Amount was due in connection with such repayments on the Elovic Debt or Arbor Debt.

All capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to them in the Operating Agreement.

1. The following definitions are added to Article 1.1.

"Bowden Date" means the date on which all closing conditions set forth in Article VIII of the Stock Purchase Agreement have been completely satisfied or waived.

"Stock Purchase Agreement" means the Stock Purchase Agreement by and among ALH Tennessee Acquisition, Inc., Donald L. Bowden, Sr. and Helen E. Bowden, and Bowden Building Corporation, dated January 20, 1999.

2. Article 3.2 is amended and restated in its entirety as follows:

3.2    Additional Capital Contributions.

(a)    Pursuant to the terms of that certain subscription agreement, dated as of June 12, 1998, between the Company and Shalom E. Lamm, as amended (the "Subscription Agreement"), prior to March 1, 1999, the Class E Member has repaid $2,000,000 in payment of that portion of the American Debt owed to Eugene Elovic (the "Elovic Debt") thereby satisfying the Elovic Debt in full and has also repaid $900,000 in partial payment of that portion of the American Debt owed to Arbor National Commercial Mortgage (the "Arbor Debt"). Pursuant to the Subscription Agreement, on or prior to July 1, 1999, the Class E Member shall contribute to the Company in one or more installments (either in cash for the satisfaction of the Arbor Debt or by direct satisfaction of the Arbor Debt on behalf of ALH) an amount of $2,000,000, in partial payment of the Arbor Debt. Pursuant to the Subscription Agreement, on or prior to November 1, 1999, the Class E Member shall contribute to the Company an amount of $2,700,000 in payment

48773

of the remainder of the Arbor Debt plus that portion of the Discount Amount relating to the Arbor Debt, if any, plus that portion of the Interest Amount relating to the Arbor Debt, if any, in exchange for an aggregate 100% Class E Membership Interest. Upon the occurrence of an event that gives rise to an obligation of the Company to make payment of any Interest Amount relating to the Arbor Debt, then the Class E Member shall make further contributions to the Company from time to time promptly following the occurrence of any such event in the amount of such Interest Amount. The Company, the Class A Members, the Class B Members, the Class C Member, the Class D Member and the Class E Member agree that, if the payments described above are made in cash, they (or such lessor amount as may be paid in full satisfaction of the Arbor Debt) will be used to satisfy the Arbor Debt on behalf of ALH. The $2,000,000 paid by the Class E Member to satisfy the Elovic Debt and the $900,000 paid prior to March 1, 1999 by the Class E Member in partial payment of the Arbor Debt together with the $4,700,000 that remains to be paid on the Arbor Debt constitute the "Class E Capital Contribution". The Class E Capital Contribution will not be deemed paid in full until the Class E Member makes all of the contributions described above, which contributions shall be unconditionally guaranteed by SELK, LLC ("SELK"), a Class B Member. In addition to any other remedies the Company may have as a result of the failure of the Class E Member to make the contributions described above, if SELK fails to perform under such guaranty, SELK's Capital Account and SELK's Unrecovered Class B Capital shall be reduced on a dollar-for-dollar basis by the amount that the Class E Member has failed to contribute pursuant to this Section 3.2. Once SELK's Capital Account is reduced to zero, SELK's Membership Interest will be terminated.

(b) On the Bowden Date, each of the Class A Members shall contribute to the Company the amount set forth opposite its name on Exhibit A to the Amendment under the caption entitled "Additional Capital Contribution", comprising $4,687,500 in the aggregate. These additional contributions will be used solely for the purpose of providing funds for the purchase by ALH Tennessee Acquisition, Inc. of Bowden Building Corporation on the terms set forth in the Stock Purchase Agreement.

(c) On the Bowden Date, each of the Class B Members shall contribute to the Company the amount set forth opposite its name on Exhibit B to the Amendment under the caption entitled "Additional Capital Contribution", comprising $2,812,500 in the aggregate. These additional contributions will be used solely for the purpose of providing funds for the purchase by ALH Tennessee Acquisition, Inc. of Bowden Building Corporation on the terms set forth in the Stock Purchase Agreement.

(d) The Company will give notice to the Class A Members and Class B Members five days prior to the occurrence of the Bowden Date. If the Bowden Date shall not have occurred prior to May 1, 1999, the obligations of the Class A Members and the Class B Members under paragraphs (b) and (c) above will be terminated and of no further force and effect. The Stock Purchase Agreement may not be altered or amended by the Company, nor may any conditions thereto be waived by the Company, without the prior approval of a majority of Class A Members.

48773

IN WITNESS WHEREOF, ALH and the members of ALH have duly executed this Amendment as of the date first above written.

ALH HOLDINGS LLC

By: _____

Name: _____

Title: _____

48773

**CLASS A MEMBERS**

SHAMROCK HOLDINGS OF CALIFORNIA, INC.

By: _George Buehler_____
     Name: George Buehler
     Title: _V.P._

_____
Richard Dean Anderson

The Richard Clayton Trust of 1992

By: _____
     Name:
     Title:

_____
David Corwin

_____
Daniel Corwin

_____
Clint Eastwood

_____
James Foley

48773

06/07/99   MON 14:34 FAX 310 277 1049       K.B.O.T.M. LLC                              ☒004

CLASS A MEMBERS                        SHAMROCK HOLDINGS OF CALIFORNIA, INC.

By: _____
　　　Name:
　　　Title:

_____
Richard Dean Anderson


The Richard Clayton Trust of 1992


By: _____
　　　Name:
　　　Title:


_____
David Corwin


_____
Daniel Corwin


_____
Clint Eastwood


_____
James Foley


48773

**CLASS A MEMBERS**

**SHAMROCK HOLDINGS OF CALIFORNIA, INC.**

By: _____
    Name:
    Title:

_____
Richard Dean Anderson

The Richard Clayton Trust of 1992

By: _____
    Name:
    Title:

_____
David Corwin

_____
Daniel Corwin

_____
Clint Eastwood

_____
James Foley

**CLASS A MEMBERS**

SHAMROCK HOLDINGS OF CALIFORNIA, INC.

By: _____
     Name:
     Title:


_____

Richard Dean Anderson


The Richard Clayton Trust of 1992

By: _____
     Name:
     Title:

David Corwin


_____

Daniel Corwin


_____

Clint Eastwood


_____

James Foley


48773

**CLASS A MEMBERS**                            SHAMROCK HOLDINGS OF CALIFORNIA, INC.

By: _____
        Name:
        Title:


_____
Richard Dean Anderson


The Richard Clayton Trust of 1992

By: _____
        Name:
        Title:


_____
David Corwin

_____
Daniel Corwin


_____
Clint Eastwood


_____
James Foley


48773

**CLASS A MEMBERS**                    **SHAMROCK HOLDINGS OF CALIFORNIA, INC.**

By: _____
     Name:
     Title:


_____

**Richard Dean Anderson**


**The Richard Clayton Trust of 1992**

By: _____
     Name:
     Title:


_____

**David Corwin**


_____

**Daniel Corwin**

_____

**Clint Eastwood**.


_____

**James Foley**

48773

06/07/99  MON 14:34 FAX 310 277 1049        K.B.O.T.M. LLC                                    ☑006

**CLASS A MEMBERS**                    SHAMROCK HOLDINGS OF CALIFORNIA, INC.

By: _____
       Name:
       Title:


_____

Richard Dean Anderson


The Richard Clayton Trust of 1992

By: _____
       Name:
       Title:


_____

David Corwin


_____

Daniel Corwin


_____

Clint Eastwood


_____

James Foley

48773

The Fogelson Trust of 1992

By: _____
    Name:
    Title:


Ganz Family Trust of 1993


By: _____
    Name:
    Title:


_____
Jason Gedrick


_____
Gerren Keith


_____
Bruce M. Ramer


The Perry Family Trust


By: _____
    Name:
    Title:


48773

The Fogelson Trust of 1992

By:  _____
       Name:
       Title:


Ganz Family Trust of 1993

By:  _~Lowell Ganz~_ (signature)
       Name:
       Title:


_____
Jason Gedrick


_____
Gerren Keith


_____
Bruce M. Ramer


The Perry Family Trust

By:  _____
       Name:
       Title:


48773

The Fogelson Trust of 1992

By: _____
     Name:
     Title:


Ganz Family Trust of 1993

By: _____
     Name:
     Title:

_____
Jason Cedrick


_____
Gerren Keith


_____
**Bruce M. Ramer**


The Perry Family Trust

By: _____
     Name:
     Title:

48773

The Fogelson Trust of 1992

By: _____
      Name:
      Title:


Ganz Family Trust of 1993

By: _____
      Name:
      Title:


_____
Jason Gedrick


_____
Gerren Keith


_____
Bruce M. Ramer


The Perry Family Trust

By: _____
      Name:
      Title:

48773

06/10/99  THU 13:07 FAX 310 277 1049         K.B.O.T.M. LLC                    ☑002

**The Fogelson Trust of 1992**

By: _____
      Name:
      Title:


**Ganz Family Trust of 1993**

By: _____
      Name:
      Title:


_____
**Jason Gedrick**


_____
**Gerren Keith**


_____
Bruce M. Ramer


**The Perry Family Trust**

By: _____
      Name:
      Title:


48773

The Fogelson Trust of 1992     .

By: _____
        Name:
        Title:


Ganz Family Trust of 1993

By: _____
        Name:
        Title:


_____

Jason Gedrick


_____

Gerren Keith


_____

**Bruce M. Ramer**

The Perry Family Trust

By: _____
        Name:
        Title:


48773

Penn Trust of 1992

By: _____
Name:
Title:

_____
Ann Ramer

The Shallet Chemel Trust of 1994

By: _____
Name:
Title:

The Tarcher Family Trust

By: _____
Name:
Title:

_____
Christopher Thompson

_____
Gy Waldron

48773

@015

Penn Trust of 1992

By: _____
      Name:
      Title:

      _____
Ann Ramer


The Shalla Chemel Trust of 1994

By: _____ Trustee
      Name:
      Title:


The Tarcher Family Trust

By: _____
      Name:
      Title:


_____
Christopher Thompson


_____
Gy Waldron

48773

05/04/99    TUE 10:59 FAX 310 277 1049    K.B.O.T.M. LLC                    ☒ 025



Christopher Thompson

08/01/99  MON 14:38 FAX 310 277 1049    R.B.U.T.M.  LLC    ☒019

Penn Trust of 1992

By: _____
       Name:
       Title:


_____

Ann Ramer


The Shallat Chemel Trust of 1994

By: _____
       Name:
       Title:


The Tarcher Family Trust

By: _____
       Name:
       Title:


_____

Christopher Thompson


_____

Gy Waldron

48773

Yorkin Family Limited Partnership

By: _____

Name:

Title:


The Roy and Judy Kaufman Living Trust

By: _____

Name:

Title:


Bernstein Trust of 1989

By: _____

Name:

Title:


_____

David Bernstein


_____

Lori Bernstein


_____

Bunny Wasser


_____

Andrew Wasser


_____

Noah Fogelson


48773

Yorkin Family Limited Partnership


By:  _____
      Name:
      Title:



The Roy and Judy Kaufman Living Trust


By:  _____
      Name:
      Title:



Bernstein Trust of 1989

By:  _____
      Name:
      Title:



_____
David Bernstein


_____
Lori Bernstein


Bunny Wasser

_____
Andrew Wasser


_____
Noah Fogelson


48773

06/01/99   MON 14:57 FAX 310 277 1049    K.B.O.T.M. LLC                                      ☒027

Yorkin Family Limited Partnership

By: _____
      Name:
      Title:


The Roy and Judy Kaufman Living Trust

By: _____
      Name:
      Title:


Bernstein Trust of 1989

By: _____
      Name:
      Title:

_____
David Bernstein


_____
Lori Bernstein


_____
Bunny Wasser


_____
Andrew Wasser


_____
Noah Fogelson

48773

**Yorkin Family Limited Partnership**

**By:** ______________________________
**Name:**
**Title:**

**The Roy and Judy Kaufman Living Trust**

**By:** ______________________________
**Name:**
**Title:**

**Bernstein Trust of 1989**

**By:** ______________________________
**Name:**
**Title:**

______________________________
**David Bernstein**

______________________________
**Lori Bernstein**

______________________________
**Bunny Wasser**

______________________________
**Andrew Wasser**

______________________________
**Noah Fogelson**

48773

[ RECEIVED 06/10 13:13 1999 AT 284601B     PAGE  2 (PRINTED PAGE  2) ]
  06/10/99  THU 13:10 FAX 310 277 1049     K.B.O.T.M. LLC                    002

Yorkin Family Limited Partnership

By: _____
      Name:
      Title:

The Roy and Judy Kaufman Living Trust

By: _____
      Name:
      Title:

Bernstein Trust of 1989

By: _____
      Name:
      Title:

_____
David Bernstein

_____
Lori Bernstein

_____
Bunny Wasser

_____
Andrew Wasser

_____
Noah Fogelson

48773

_Adam Fogelson_

**Harold and Ruth Burden Trust**

By: _____
　　　Name:
　　　Title:

_____
Harold Brown

_____
Ms. Hermione Brown

_____
Tom R. Camp, Esq.

**Hirshan Family Trust**

By: _____
　　　Name:
　　　Title:

**Katz Family Trust**

By: _____
　　　Name:
　　　Title:

48773

Adam Fogelson

Harold and Ruth Burden Trust

By: _____
     Name:
     Title:

_____
Harold Brown

_____
Ms. Hermione Brown

_____
Tom R. Camp, Esq.

Hirshan Family Trust

By: _____
     Name:
     Title:

Katz Family Trust

By: _____
     Name:
     Title:

48773

06/07/99  MON 14:35 FAX 310 277 1049    K.B.O.T.M. LLC    @016

Adam Fogelson

Harold and Ruth Burden Trust

By: _____
Name:
Title:

Harold Brown

Ms. Hermione Brown

Tom R. Camp, Esq.

Hirshan Family Trust

By: _____
Name:
Title:

Katz Family Trust

By: _____
Name:
Title:

48773

ry. June 12, 1999  1:29 AM    To: SHERI FOX    From: IRA SHULMAN,    Page: 2 of 2

06/11/99  FRI 10:35 FAX 310 277 1049    K.B.O.T.M. LLC    002

Stephen M. Miller, M.D.

Mr. Ira Shulman

Mr. Alfred Stern

Dennis M. Wasser, Esq.

48773

_____
Stephen M. Miller, M.D.


_____
Ms. Ira Shulman


_____
Mr. Alfred Stern


_____
Dennis M. Wasser, Esq.

48773

_____

Stephen M. Miller, M.D.


_____

Ms. Ira Shulman


_____
Mr. Alfred Stern


_____

Dennis M. Wasser, Esq.

48773

_____

Stephen M. Miller, M.D.


_____

Ms. Ira Shulman


_____

Mr. Alfred Stern


_____

Dennis M. Wasser, Esq.

A ARENSON LTD    ⓐ001/001

**CLASS B MEMBERS**

A. Arenson Holdings, Ltd.

By: _____
      Name:
      Title:

D.A. Gardens, Ltd.

By: _____
      Name:
      Title:

J12ALH, Associates LLC

By: _____
      Name:
      Title:

SELK, LLC

By: _____
      Name:
      Title:

Laurel Equity Group

By: _____
      Name:
      Title:

212 459 9797;    Mar-16-99  1:40PM;    Page 2/2

3-15-1999 2:52PM    FROM LION AND LAMM 2128676323    P. 1

**CLASS B MEMBERS**

A. Arenson Holdings, Ltd.

By: _____
    Name:
    Title:

D.A. Gardens, Ltd.

By: _____
    Name:
    Title:

J12ALH, Associates LLC

By: _____
    Name: Michael G. Jesselson
    Title: Manager

SELK. LLC

By: _____
    Name:
    Title:

Laurel Equity Group

By: _____
    Name:
    Title:

48773

**CLASS B MEMBERS**

A. Arenson Holdings, Ltd.

By: _____
      Name:
      Title:

D.A. Gardens, Ltd.

By: _____
      Name:
      Title:

J12ALH, Associates LLC

By: _____
      Name:
      Title:

SELK LLC

By: _____
      Name:
      Title:

Laurel Equity Group

By: _____
      Name:
      Title:

48773

**CLASS B MEMBERS**

A. Arenson Holdings, Ltd.

By: ______________________
Name:
Title:

D.A. Gardens, Ltd.

By: ______________________
Name:
Title:

J12ALH, Associates LLC

By: ______________________
Name:
Title:

SELK, LLC

By: ______________________
Name:
Title:

Laurel Equity Group

By: [signature]
Name: MENASHE FRANKEL
Title: President

48773

3-15-1999 12:52PM    FROM _ION AND LAMM 2128676383                    P 1

**CLASS C MEMBER**

LANDMARK EQUITY INVESTORS LLC

By: _____
Name:  Gerold Drogin
Title:

68:73

**CLASS D MEMBER**

LION ALH CAPITAL LLC

By: _____

Name: _____

Title: _____

48773

**CLASS E MEMBER**                      Shalom E. Damm

48773

EXHIBIT A TO AMENDMENT

Class A Members

| Names and Addresses | Additional Capital Contribution |
|---|---|
| Shamrock Holdings of California, Inc.<br>4444 Lakeside Drive<br>Burbank, CA 91505 | $2,941,406.25 |
| Richard Dean Anderson<br>2049 Century Park East<br>Suit 2500<br>Los Angeles, CA 90087 | $46,875.00 |
| The Richard Clayton Trust of 1992<br>2049 Century Park East<br>Suite 2500<br>Los Angeles, CA 90087 | $23,437.50 |
| David Corwin<br>2049 Century Park East<br>Suite 2500<br>Los Angeles, CA 90087 | $23,437.50 |
| Daniel Corwin<br>2049 Century Park East<br>Suite 2500<br>Los Angeles, CA 90087 | $23,437.50 |
| Clint Eastwood<br>2049 Century Park East<br>Suite 2500<br>Los Angeles, CA 90087 | $351,562.50 |
| James Foley<br>2049 Century Park East<br>Suite 2500<br>Los Angeles, CA 90087 | $23,437.50 |

48773

| | |
|---|---|
| The Fogelson Trust of 1992<br>2049 Century Park East<br>Suite 2500<br>Los Angeles, CA 90087 | $46,875.00 |
| Ganz Family Trust<br>2049 Century Park East<br>Suite 2500<br>Los Angeles, CA 90087 | $35,156.25 |
| Jason Gedrick<br>2049 Century Park East<br>Suite 2500<br>Los Angeles, CA 90087 | $23,437.50 |
| Gerren Keith<br>2049 Century Park East<br>Suite 2500<br>Los Angeles, CA 90087 | $35,156.25 |
| Bruce Ramer<br>2049 Century Park East<br>Suite 2500<br>Los Angeles, CA 90087 | $11,718.75 |
| The Perry Family Trust<br>2049 Century Park East<br>Suite 2500<br>Los Angeles, CA 90087 | $35,156.25 |
| Penn Trust of 1992<br>2049 Century Park East<br>Suite 2500<br>Los Angeles, CA 90087 | $46,875.00 |
| Ann Ramer<br>2049 Century Park East<br>Suite 2500<br>Los Angeles, CA 90087 | $35,156.25 |
| The Shallet Chemel Trust of 1994<br>2049 Century Park East<br>Suite 2500<br>Los Angeles, CA 90087 | $35,156.25 |

48773

The Tarcher Family Trust                    $46,875.00
2049 Century Park East
Suite 2500
Los Angeles, CA  90087

Christopher Thompson                        $35,156.25
2049 Century Park East
Suite 2500
Los Angeles, CA  90087

Gy Waldron                                  $35,156.25
2049 Century Park East
Suite 2500
Los Angeles, CA  90087

Yorkin Family Limited Partnership           $351,562.50
2049 Century Park East
Suite 2500
Los Angeles, CA  90087

The Roy and Judi Kaufman Living Trust       $46,875.00
2049 Century Park East
Suite 2500
Los Angeles, CA  90087

Bernstein Trust of 1989                     $46,875.00
2049 Century Park East
Suite 2500
Los Angeles, CA  90087

David Bernstein                             $11,718.75
2049 Century Park East
Suite 2500
Los Angeles, CA  90087

Lori Bernstein                              $11,718.75
2049 Century Park East
Suite 2500
Los Angeles, CA  90087

Bunny Wasser                                $11,718.75
2049 Century Park East
Suite 2500
Los Angeles, CA  90087

48773

Andrew Wasser                                         $11,718.75
2049 Century Park East
Suite 2500
Los Angeles, CA  90087

Noah Fogelson                                         $11,718.75
2049 Century Park East
Suite 2500
Los Angeles, CA  90087

Adam Fogelson                                         $11,718.75
2049 Century Park East
Suite 2500
Los Angeles, CA  90087

Harold and Ruth Borden Trust                         $35,156.25
Mr. & Mrs. Harold Borden
10580 Wilshire Boulevard, Unit 73
Los Angeles, CA  90024

Mr. Harold Brown                                     $70,312.50
Gang, Tyre, Ramer & Brown, Inc.
132 S. Rodeo Drive
Beverly Hills, CA  90212

Ms. Hermione Brown                                   $23,437.50
Gang, Tyre, Ramer & Brown, Inc.
132 S. Rodeo Drive
Beverly Hills, CA  90212

Tom R. Camp, Esq.                                    $23,437.50
Gang, Tyre, Ramer & Brown, Inc.
132 S. Rodeo Drive
Beverly Hills, CA  90212

Hirshan Family Trust                                 $35,156.25
Mr. Leonard Hirshan
William Morris Agency
151 El Camino Drive
Beverly Hills, CA  90212

Katz Family Trust                                    $23,437.50
Dr. & Mrs. Albert M. Katz
9607 Wendover Drive
Beverly Hills, CA  90210

Stephen M. Miller, M.D.                 $23,437.50
10594 N. 65th Street
Longmont, CO  80503

Mr. Ira Shulman                         $23,437.50
48 Gladstone Road
New Rochelle, NY  10804

Mr. Alfred Stern                        $11,718.75
Schroders
10877 Wilshire Boulevard
Suite 500
Los Angeles, CA  90024

Dennis M. Wasser, Esq.                  $46,875.00
Wasser, Rosenson & Carter
2029 Century Park East
Suite 1200
Los Angeles, CA  90067

48773

EXHIBIT B TO AMENDMENT

<u>Class B Members</u>

| <u>Names and Addresses</u> | <u>Additional Capital Contribution</u> |
| --- | --- |
| A. Arenson Holdings, Ltd.<br>5 Hashita Street<br>P.O. Box 3566<br>Caesarea, Israel | $468,750<br>(including contribution by<br>D.A. Gardens, Ltd.) |
| D.A. Gardens, Ltd.<br>c/o Fimanor AG<br>Seefeldstrasse 45<br>Zurich 8008 Switzerland | $468,750<br>(including contribution by<br>A. Arenson Holdings, Ltd.) |
| J12ALH, Associates LLC<br>Suite 4101<br>1301 Avenue of the Americas<br>New York, New York  10019 | $468,750 |
| SELK, LLC<br>c/o Shalom E. Lamm<br>489 Fifth Avenue<br>New York, New York  10017 | $937,500 |
| Laurel Equity Group<br>c/o Suite 501<br>Hovenierstraat 2<br>Antwerp, Belgium | $937,500 |

48773

# EXHIBIT C-1

# Gene Krieger

| | |
|---|---|
| **From:** | Gene Krieger |
| **Sent:** | Thursday, April 18, 2002 6:08 PM |
| **To:** | 'Arenson Avie' |
| **Cc:** | George Buchler; 'Shalom Lamm' |
| **Subject:** | RE: ALH Loan Agreement |

Dear Avie:

I tried to reach you on your mobile phone to discuss your email, but since we haven't connected, I thought I would respond by email.

I don't think we have any serious disagreements with the points your raise. However, I would like to give more background information and our viewpoint of this situation.

The current financial crisis came to our attention approximately 2 weeks ago when we were informed of Wachovia's decision to pull out of the expected Mulvaney facility. This news was a big surprise and an obvious blow to MHI's ability to reach its 2002 projections, which are critical to achieving a successful sale of the company. Early last week, we were told that the adverse impact to MHI's operating profit, per MHI, would be $4.5 million, but Shalom said the adverse impact would more likely be $3 million. The impact of such a fall-off in operating performance would erode our equity value very significantly. You can do the math. If we are hoping to sell the company at a 6x multiple of EBITDA, the impact would easily be $15 to $20 million - perhaps 1/2 of our expected exit proceeds.

Shalom indicated that MHI would need a line of $5 to $10 million to get back on track. But, he also indicated that with some time and effort, we might get by on less than $5 million. His suggestions included a $2 million guarantee by Shamrock (to grease the skids), and that it would be reasonable for ALH to pay a fee to Shamrock for such a guarantee. (Aside from questions of fairness and possible conflicts of interest in such an arrangement, Shamrock does not issue such guarantees and we are unwilling to share the very private financial information that would be necessary for such an arrangement.)

We quickly accepted the urgency of this matter and suggested that the need to protect the equity of all owners called for an "equity raise". Based on the unlikely possibility that we could get another lender to support ALH immediately, we thought this was the only realistic alternative. Also, in the midst of all this, ALH's auditors, Ernst & Young, advised Lanius that they were not going to issue an unqualified ("clean") opinion on ALH's financial statements. The absence of a clean opinion would preclude, or certainly significantly delay, any prospect of outside funding. Time was critical - Ted was canceling lot take-downs, and delaying construction, etc. Positive financial support was needed immediately.

Our suggestion was extremely fair. Without more capital, all Class A & B owners would suffer significantly. If all owners participate in a pro rata funding, the terms of the deal would be largely irrelevant. Any owner's pro rata loan would essentially be a loan to himself. On the other hand, if we all don't participate, the non participating investor gets a substantial benefit of riding on the capital of the contributing investors.

Shamrock and the other Class A members were not interested in loaning money to ALH. We didn't hear of any other ALH owners willing to step up and provide the capital. We do want to protect our equity as do all the other investors. So, we are not trying to disadvantage any investor - we want all investors to be treated the same.

11/1/2004

We proposed a fall-back position to Shalom. If all investors don't participate, we would support an equity round at the current risky valuation. Such a process would take longer and be much more cumbersome. Most importantly, however, it would result in substantial dilution to those investors who don't participate. That would be fair. That is the way the capital markets work.

Faced with the need to act quickly, Shamrock expressed a willingness to contribute our share of a $3 to $5 million pro rata loan, and we undertook to get the other Class A members committed on that basis. We promptly met with Kaufman and Bernstein (the representatives of the other Class A members), and quickly got their support for this approach. We asked Shalom to undertake a similar effort with the B investors. As I mentioned earlier, if this program was accepted, the loan terms are not important. I believe Shalom agreed to this approach, and expressed confidence that the Bs would participate. Since he obviously couldn't commit for all the Bs, we asked him to get the Bs to participate as a group, so we could get the total participation. As you know, Shalom attracted these investors to ALH -- we do not know them (except you), and we have never had any contact with them. With the possibility that there might be some non pro rata participation by the Bs, we suggested that Shalom advise us of an appropriate interest rate since it would only be relevant to the Bs. We indicated a rate of 16%, and on Friday, Shalom thought it might need to be slightly higher. Shalom never gave us a "rate", so we therefore put 18% in the draft loan document.

On Tuesday, we heard from Shalom that Laurel Equities (Frankel) would likely not participate. While it was good news that 87 1/2 % of the investors have stepped forward, it was also disappointing that we don't have full participation. We were willing to commit our funds and we got the commitment of the other As on the basis of 100% participation. Without 100% participation, there is an element of unfairness in the arrangement. If given the choice, we would also prefer to stand on the side lines, not fund, and let others take up the call – even at a very high interest rate. I think you can appreciate the tremendous amount of time, expense and energy that Shamrock has unselfishly devoted to ALH, so we are upset to see some lack of support for this funding.

Now, let me respond more specifically to the issues in your email:

1. I agree that there is "no particular amount of money we 'must' have". However, we responded based on the input from management and Shalom. The approach we have taken so far is to fund $3 million immediately, and fund additional amounts if needed. We thought it imprudent to get a smaller commitment, and risk having to go back for more later. Certainly, if ALH doesn't need the funds, we would not request further advances under the proposed loan facility.

2. I do not know of, and have not been advised of, any "legitimate reasons" why others shouldn't fund. The fact that they are passive investors is not relevant as far as I'm concerned. They have money at stake as we and you do - all our money is treated the same.

3. Your suggestion of 12% interest and a 15% fee is not much different than the current draft, which has an 18% interest rate with a one year minimum. (12% for 6 months = 6%, plus 15% fee = 21%. 18% for one year with a 3% fee would make the total cost the same.)   Regardless of the approach to the rate and terms, we are in the same ballpark. The difference is that we based this on 100% participation.

4. I am aware of the risks of conflicts; however, they are all eliminated if we have 100%.

I apologize for such a lengthy response, but I want to be sure you are in the loop and up-to-date. I will be in my office tomorrow morning (our time), and I would be happy to discuss this further. My direct dial phone number is +1-818-973-4295.

11/1/2004

Best personal regards.

Gene

-----Original Message-----
**From:** Arenson Avie [mailto:avie@arenson.co.il]
**Sent:** Thursday, April 18, 2002 7:58 AM
**To:** gkrieger@shamrock.com
**Cc:** George Buchler; Shalom Lamm
**Subject:** ALH Loan Agreement

Hello Gene:

I got back from the Independence Day break and have looked over the e-mails I have been copied on. I am aware that I don't have all the correspondence, or all the mass of on- going details that have to be considered in making any decision, but I am going to hazard putting forward my thoughts.

A and B shareholders have basically the same risks and benefits with regard getting back equity or moneys lent. There is no particular amount of money we 'must' have. The company can manage on 4 or 5 million or even considerably less. We don't have an axe to grind with any of the other investors who basically let us do what we thought best in the company. I could think of any number of legitimate
reasons why any of the other more passive investors would not or could not come up with their share on such short notice. I think that at a suitable interest rate or one time placement fee to the A and B shareholders who do make funds available, we would benefit the company and ourselves, without letting anybody have a free ride. Instead of 16% per annum, I thought that 12% per annum plus a one time 15% placement fee would insure that those participating would be amply rewarded, and the company would have a sufficient motivation not to ask for unnecessary
funds and would make every effort to repay it quickly.

Another point  I am sure we are all sensitive to is the possibility of the appearance of conflict of interest in our dealings with the company in  our various capacities and in our legal council.

I am not sure that my writing skills (?) are up to the challenge of this important question.  If not, I would be very happy to expand on  it together with any or all of you at your convenience  by telephone.  At any time in the next 4 or 5 hours.

best regards

Avie

11/1/2004

# EXHIBIT C-2

Holdings Update

## Bruce Stein

| | |
|---|---|
| **From:** | Arenson Avie [avie@arenson.co.il] |
| **Sent:** | Sunday, June 23, 2002 3:01 AM |
| **To:** | Gene Krieger; 'Shalom Lamm' |
| **Cc:** | George Buchler; Bruce Stein |
| **Subject:** | Re: Holdings Update |

I agree with Gene. There is no legal reason why a person cannot be fired while on holiday or whatever and the damage these guys are causing has to be limited. When they come back there may be a brief handover period if John and Bill still feel it is necessary but they should be informed that they do not represent the company any more and should stop all activities.

avie

**From:** Gene Krieger

**To:** 'Shalom Lamm' ; Arenson Avie
**Cc:** George Buchler ; Bruce Stein
**Sent:** Friday, June 21, 2002 8:30 PM
**Subject:** RE: Holdings Update

On behalf of George, Bruce and myself, we object to the delay in terminating Ted and David. While we are mindful of the logistical problems you set forth regarding next week, we don't want to postpone this critical issue until after the July 4th weekend. If at all possible, the termination should occur at the end of next week or the beginning of the following week. We agreed to act quickly, and the comments in your note below only serve to remind us of the urgency of this matter.

While it would be nice to have the Ohio Savings Bank loan closed, I think we are far enough along with them that we can speak with confidence that it will be in place imminently. Also, we could similarly talk about Mike's new role even if he's not on the scene on "D" day.

Last, but not least, any delay adds additional time to the sale process by delaying the time when we can have final negotiations and open discussions with the buyer.

Regards.

Gene

-----Original Message-----
**From:** Shalom Lamm [mailto:slamm@lionlamm.com]
**Sent:** Friday, June 21, 2002 8:38 AM
**To:** Arenson Avie; George Buchler; Gene Krieger; Bruce Stein
**Subject:** Holdings Update

**FOR THE MEMBERS OF THE BOARD OF ALH HOLDINGS, LLC ONLY**

Gentlemen:

I spoke with our attorney at Fried Frank with respect to the minutes of our meeting. Those are in process.

I've had numerous phone calls with both John Laguardia and Bill Lanius with respect to the termination of Ted and David (as we speak, the games these two have been playing continue -- there was another potential disastrous letter that David sent to Ohio Savings Bank yesterday. The banker was "livid." Bill has been working to reverse this latest issue).

As we discussed, we were planning to execute the change of top management this coming week. Standing in the way of that is a number of logistical issues. Ted is taking his mother back to the hospital this coming week and plans on being out for a substantial portion of the week, David Knoble will be on vacation, as will Mike Mulvaney. In addition, Bill is unavailable Monday, and potentially Tuesday (depositions on the Bowden matter). Add to the mix that the meetings John and Bill had yesterday demonstrated a healthy dose of skepticism on the part of the employees -- who have been guided in their opinions by top management.

Given these facts, the three of us have concluded that there will be a decided credibility advantage to closing the Ohio Savings loan FIRST, demonstrating our ability to provide financial stability, and then in close coordination with Mike Mulvaney and all of the elements we are planning, to dismiss Ted and David. In all, this can be done immediately following the Fourth of July break. I endorse this plan and think it makes much practical sense.

Please let me know if you object to this altered plan.

Regards,

-Shalom

--
Shalom Lamm
Phone: 212.867.6363
or: 516-565-0868
Fax: 212.867.6303
or: 516-565-1819

10/29/2004

# EXHIBIT C-3

## George Buchler

**From:** Arenson Avie [avie@arenson.co.il]
**Sent:** Tuesday, July 30, 2002 10:03 AM
**To:** George Buchler; Gene Krieger
**Cc:** Isaac M. Neuberger
**Subject:** ALH II

As I told you last week, the Class B investors met together in London.

While we had never met before, I am pleased to report that we had a very constructive discussion. The unanimous view of the Class Bs is that a sale of Bowden is ill advised at this time and that while we would like to continue the ALH operation with Shamrock, if Shamrock is unwilling to continue, we are prepared to explore in a very serious and expedited fashion a buy-out of Shamrock's position.

As I told you, the time frame for a Shamrock buy-out is one of weeks and not months.

We feel very strongly that under these circumstances a sale of Bowden NOW, makes no sense for either ALH or for that matter Shamrock. The analysis flowing from a Bowden sale at $19 Million seems to only to weaken ALH and to make the sale of the remaining components that more difficult.

If in the next few weeks, it becomes apparent that we will not proceed with a buy-out of Shamrock, I will certainly advise you.

Avie Arenson

# EXHIBIT C-4

**George Buchler**

| From: | Arenson Avie [avie@arenson.co.il] |
|---|---|
| Sent: | Thursday, August 01, 2002 12:18 AM |
| To: | Shalom Lamm; George Buchler; Gene Krieger; Bruce Stein |
| Subject: | Re: J. Laguardia Modification |

I have no problem with this.
Avie
----- Original Message -----
From: "Shalom Lamm" <slamm@lionlamm.com>
To: "Arenson Avie" <avie@arenson.co.il>; "George Buchler" <gbuchler@shamrockinc.com>;
"Gene Krieger" <gkrieger@shamrockinc.com>; "Bruce Stein" <bstein@shamrockinc.com>
Sent: Wednesday, July 31, 2002 3:38 PM
Subject: J. Laguardia Modification


> Gentlemen:
>
> As you know, John's son died this passed week.  His son had a small
> construction operation in Orlando that his father was guiding him on.
John
> has forwarded to me a modification of his own employment agreement
> (attached) that he has asked me to execute which would allow him to
> have some greater activity associated with that business.  He details
> what he
is
> is asking for in the brief letter.  To me it seems quite innocuous and
> I have no objection to executing this modification to his agreement.
> He specifically states that it will have no impact on his performance
> of
duties
> at our companies.
>
> Please let me know if you have any objection to my executing this.
>
> -Shalom
>
> --
> Shalom Lamm
> Phone: 516-565-0868
> fax: 516-565-1819
> cell: 917-282-7375
>
>

1

# EXHIBIT C-5

## George Buchler

| | |
|---|---|
| **From:** | Arenson Avie [avie@arenson.co.il] |
| **Sent:** | Thursday, August 01, 2002 2:14 AM |
| **To:** | George Buchler; Gene Krieger |
| **Cc:** | Shalom Lamm; isaac m. neuberger |
| **Subject:** | bowden |

Hello George and Gene:

These are the estimates of the incremental sale of the divisions. I think it decisively, shows that we would be in a lose-lose situation if we went this path. Please get back to me.

| | | |
|---|---|---|
| Bowden Sale: | $ | 19,000,000 |
| 1.50% costs of trans: | $ | 285,000 |
| Net Sale: | $ | 18,715,000 |
| | | |
| Inventory Loans: | $ | 9,452,800 |
| Bowden Litigation: | $ | 4,000,000 |
| | | |
| Total Net Proceeds: | $ | 5,262,200 |
| | | |
| ABI Sale: | $ | 30,000,000 |
| 1.50% costs of trans: | $ | 450,000 |
| Net Sale: | $ | 29,550,000 |
| | | |
| Inventory Loans: | $ | 12,295,244 |
| | | |
| Total Net Proceeds: | $ | 17,254,756 |

From 2 Sales:

11/10/2004

Pay Down of Debt/Obligations:     $        25,748,044

Net Cash from Sales:              $        22,516,956


Pay Down Swiss Re:                  $      20,000,000

Balance for MHI ops/LGA:     $        2,516,956


Obligations Remaining:

Swiss Re: Deb                     $         7,500,000

MHI Inventory Debt:             $       27,210,000

DA Gardens/Shamrock Loan:         $        1,187,499

Investor Loan:                 $         4,354,200

        Total Debt Load:       $        40,251,699


best regards


Avie


11/10/2004

# EXHIBIT C-6

## George Buchler

| | |
|---|---|
| **From:** | George Buchler |
| **Sent:** | Thursday, August 15, 2002 11:48 AM |
| **To:** | 'Arenson Avie'; 'Shalom Lamm' |
| **Cc:** | Bruce Stein; Gene Krieger |
| **Subject:** | RE: Board Meeting |

I think we're all in agreement here - October 2 in Jacksonville it will be.  Shalom - please put together an agenda as you usually do for our Board meetings - if you'd like to send a draft out prior to the meeting, I'd be happy to provide input.

As we get close to this date, we should discuss logistics in more detail.

> -----Original Message-----
> **From:** Arenson Avie [mailto:avie@arenson.co.il]
> **Sent:** Thursday, August 15, 2002 5:05 AM
> **To:** Shalom Lamm
> **Cc:** George Buchler; Gene Krieger
> **Subject:** Re: Board Meeting
>
> Hello All:
>
> sorry about my tardy replies. Lots going on. Your date is fine Shalom. 2nd Oct Jacksonville, and I'll start a day or two early and see what's left of Charlotte, Memphis, etc.
>
> Avie
>
> > ----- Original Message -----
> > **From:** Shalom Lamm
> > **To:** Arenson Avie
> > **Sent:** Thursday, August 15, 2002 1:10 AM
> > **Subject:** FW: Board Meeting
> >
> > Received the message below from George a few minutes ago.  This works for me.  I've suggested Wednesday October 2nd in Jacksonville as the venue.  I believe this will give you time to visit the other divisions.  Please let me know if this works for you.
> >
> > Warmest,
> >
> > -Shalom
> >
> > --
> > Shalom Lamm
> > Phone: 516-565-0868
> > fax: 516-565-1819
> > cell: 917-282-7375
> >
> > ----------
> > **From:** George Buchler <gbuchler@shamrock.com>
> > **Date:** Wed, 14 Aug 2002 15:17:10 -0700
> > **To:** 'Shalom Lamm' <slamm@lionlamm.com>
> > **Cc:** Gene Krieger <gkrieger@shamrock.com>, Bruce Stein <bstein@shamrock.com>
> > **Subject:** RE: Board Meeting

11/10/2004

Thanks for tracking down Avie and getting back to me.

Unfortunately, all three of us (Bruce, Gene and I) have conflicts during the week of September 23. The following week is conflict-free for the three of us - could we have the Board meeting then.

I tend to think that Jacksonville might be the best site for this meeting, but I'm open to suggestions.

-----Original Message-----
**From:** Shalom Lamm [mailto:slamm@lionlamm.com]
**Sent:** Monday, August 12, 2002 3:59 PM
**To:** George Buchler
**Subject:** Re: Board Meeting

Yes, I spoke with Avie this afternoon. I now realize why it took a bit to get to him -- he called me from the border of Croatia and Slovakia!

I cannot make, the meeting during the week of the 28th, you cannot make the following week. Avie suggested the week of Sukkot (September 23rd). That makes sense to me. I am available virtually any day that week as is Avie (if I understood our long distance conversation correctly). We would also, presumably by then have a bit more clarity on many of our issues, and therefore be sensible. Does that week work for you? As for Lanius/Laguardia, I believe that would work for them as well.

Regards,

-Shalom


--
Shalom Lamm
Phone: 516-565-0868
fax: 516-565-1819
cell: 917-282-7375


> **From:** George Buchler <gbuchler@shamrock.com>
> **Date:** Mon, 12 Aug 2002 08:23:47 -0700
> **To:** 'Shalom Lamm' <slamm@lionlamm.com>
> **Subject:** RE: Board Meeting



> Have we heard anything yet from Avie - I'd like to get this coordinated ASAP. Please advise.

> George

> -----Original Message-----
> **From:** Shalom Lamm [mailto:slamm@lionlamm.com]
> **Sent:** Friday, August 09, 2002 9:15 AM
> **To:** George Buchler
> **Subject:** Board Meeting

> I am just waiting for a response by Avie to my e-mail to narrow times and dates.

> Do you have a proposed agenda? (in other words, outside of the normal review

of ops reviews -- what would you like to see on the agenda).  Thanks.

-SEL

--
Shalom Lamm
Phone: 516-565-0868
fax: 516-565-1819
cell: 917-282-7375

# EXHIBIT C-7

ALH                                                                    Page 1 of 3

## Gene Krieger

**From:**      Gene Krieger
**Sent:**      Friday, September 06, 2002 4:11 PM
**To:**        'Arenson Avie'
**Cc:**        George Buchler
**Subject:**   RE: ALH

Dear Avie:

Best wishes to you and yours for a healthy, happy and safe New Year. Let's pray that the new year brings new hope for peace in Israel.

I am sorry to hear that progress on the buyout has slowed down. We understand that a meeting was held a few days ago in Miami with Landstar, so I assume they are the party you expect to respond by September 9th. Since you indicate that Shalom is important to this process, I am willing to hold off a while longer on addressing ALH's issues with him. What do you mean that "he is taking advantage of his personal relationship in an unconscionable fashion"? Do you think his role in helping facilitate a buyout is being used as a shield (or a delaying tactic) from facing the issues he has with ALH?

As you know, we are having a meeting with management in Memphis on the 10th. I don't think it would be practical to hook you in by phone, but we would be happy to bring you up to date after the meeting. Shalom will not be able to attend either. Since it has been so long since we have had any face to face contact with the management, and we don't get much information from Shalom, we wanted to get an informal update on the business operations. Had we been able to get everybody together for a Board meeting sooner than October 2nd, we wouldn't need this management meeting.

Things are moving ahead with Walter Industries. They have asked for a lot more information, and they are meeting today in Memphis to cover some of their final due diligence matters. We expect to hear something more definitive from them at the end of next week. Indications are that they remain very interested in Bowden, and I hope they will come forward with an acceptable offer.

We expect to hear from prospective buyers next week about their interest in Jacksonville. Assuming positive responses, we hope to move that process forward as quickly as possible.

Please keep us in the loop. I want to be respectful of the B's interest - both as a current partner and as a possible buyer of the A's interest, but we need to continue to move forward.

Regards.

Gene

-----Original Message-----
**From:** Arenson Avie [mailto:avie@arenson.co.il]
**Sent:** Tuesday, September 03, 2002 3:16 AM
**To:** Gene Krieger
**Subject:** Re: ALH

Dear Gene:

11/1/2004

ALH                                                                                    Page 2 of 3

I have delayed answering because the situation continues to be very fluid. We seem to have an acceptable and interested third party to buy you out, but have no definite word from him to go ahead. This after a round with an earlier potential buyer who finally decided he wasn't interested. We expect to know whether he will go ahead or not by 09Sept. We have not eliminated the possibility that the 'B's among themselves take up your shares, but sentiment is definitely in favour of an third party who is from the industry. I am aware of the Walter timetable.

At this point I cannot tell you what Shalom's involvement in the ultimate management set-up would be, if at all. Obviously he is quite important, if not vital, to the sale process, so that this is not a good time for a major distraction.

I think that he is taking advantage of his personal relationship in an unconscionable fashion.

what do to about it and when, is a good question.

I would be happy to take part by speaker phone in your non-board meeting on 9th, if you think it is practical, to exchange thoughts and bring each other up to date, and look forward to the 2-Oct meeting in Jacksonville.

best wishes for the New Year

Avie Arenson


----- Original Message -----
**From:** Gene Krieger
**To:** Avie Arenson (E-mail)
**Cc:** George Buchler
**Sent:** Friday, August 30, 2002 1:21 AM
**Subject:** ALH


Dear Avie:

A month has now passed and we have heard nothing from you on the possible buyout by the Bs, nor have I gotten a response to my note below. While we have heard from Shalom that information regarding ALH has been furnished to parties assisting in this transaction, we have not gotten any meaningful feedback that this transaction is progressing.

The timing of this issue is becoming more important. Walter Industries is making progress on their due diligence of Bowden, and we expect that they will provide us an offer and draft documents in a week or so. We know of no issues that have arisen that might deter them from proceeding.

The "book" on ABI has been furnished to several prospective buyers, and we expect to get expressions of interest and valuation within the next two weeks.

Lastly, if we are to move forward regarding an October resolution of Shalom's obligations to ALH, we need to get back to that issue. As I indicated in my note below, I would like to get you input on this matter.

I hope all is well.

Best regards.

Gene


-----Original Message-----
From: Gene Krieger
Sent: Wednesday, August 14, 2002 6:38 PM
To: Avie Arenson (E-mail)
Cc: George Buchler
Subject:


11/1/2004

Dear Avie:

Since we haven't had an ALH Board meeting for quite some time, and we have been preoccupied with matters related to financings, the sale process and management issues, I haven't had an opportunity to bring you up to date on an important matter that has been dragging on for quite a while.

I think you are aware that Shalom is in default on his obligations to ALH arising out of the settlement agreement reached with him about a year ago. Shalom has not made any payments against the two installments which were due in February and May, and these past due obligations now aggregate approximately $750,000. There is another (final) payment due in November. Shalom has requested that we modify the payment terms to accommodate his current financial condition, and we agreed to entertain such a request. Notwithstanding our offers to discuss this in good faith, Shalom has not put forth a proposal, has delayed this process unreasonably, has failed to meet promises and has created obstacles to our attempts to have meetings and discussions. Most recently, we were trying to arrange a meeting with Shalom for the end of July, when you raised the prospect of the B interests buying the A interests. Because of that development, and not knowing how Shalom fit into your plans, we held off any further attempt to address this issue with Shalom.

I believe it is important to protect ALH's interest, and I don't want this matter to drag on unnecessarily. However, if you tell me that we should hold off on this issue because of Shalom's involvement with you on a possible buyout, I would be willing to consider a further delay. On the other hand, if you do not object to renewing our attempts to reach an arrangement with Shalom, we will try to do that once again. We would do this with a view to bringing the issue to you and the Board by the next meeting. I would appreciate your thoughts on this matter.

It has now been over two weeks since you indicated that the Bs were seriously interested in a buyout of the A's interest in ALH, and you said the process would be one of weeks not months. I haven't heard anything further from you on this issue. Please let me know if the prospects of a transaction are real and the likely timetable.

Best personal regards.

Gene

11/1/2004

# EXHIBIT C-8

**Gene Krieger**

| | |
|---|---|
| **From:** | Gene Krieger |
| **Sent:** | Wednesday, September 11, 2002 8:42 PM |
| **To:** | 'Avie Arenson (E-mail)' |
| **Cc:** | George Buchler |
| **Subject:** | ALH Update |

I want to give you a quick update on our meeting yesterday in Memphis.

1. Memphis - sale seems to be on track. We hope to shortly get an indication from Walter of price and terms. Jeff continues to hit his forecast for this year and seems to have several successful developments just now opening for business. Jeff is happy with the Walter people and is interested in pursuing future employment with them, which is also what Walter wants.

2. Jacksonville - continues to perform well and beat the beginning of year forecast. Climate has become increasingly competitive, especially from the major national homebuilders. Next year looks flat with this year, at best, according to Bill Holt. In both Jacksonville as well as Memphis, more capital is needed to continue to grow the business - Bill mentioned the need for over $1MM to fund the required lot takedown of Plantation Oaks, a development of much promise.

3. Charlotte - the worst of the Ted/David aftermath seems to be over, particularly in terms of personnel. Gary and Lani(sp?) seem both to be over their consternation and are performing well. John and Bill are spending about 3 days a week in Charlotte. The most troublesome issue confronting us was that Mulvaney signed seven different land deals, all requiring specific performance (no walkaway rights). John/Bill successfully negotiated us out of one of the deals - the others will hopefully work out OK. Citiside is very troublesome, with a huge amount of debt and equity capital tied up in a non-performing project - both in 112 lots and 35 spec homes. Bill and John are trying to work out a compromise with Mike Mulvaney on this project, including our future takedown obligations. Bruce will also spend a significant amount of time on this issue, as it currently presents the greatest operating and financial challenge to ALH.

4. We received updates on all of the various litigation. Bill Lanius has been authorized to work with the attorneys and negotiate closure (hopefully) on all of this stuff - Bowden/Schickner, Caruso and Futrelle/Knoble. Caruso is an old case claiming a $500,000 fee for finding ALH the Mulvaney deal. Negotiations have been underway with the lawyer for Futrelle and Knoble. It appears that we can settle with them at a tolerable cost - maximum $100,000.

5. It was agreed we would continue the Gold Pot for the Mulvaney employees, who are apparently very concerned that we would put an end to it this year. John will reassure the employees that this is not the case.

6. We are going to ask Shalom not to visit the locations in the next few weeks, as we believe he was planning to do. Our management is very stretched right now with the sale process and the Mulvaney operations. We did not feel we should distract and burden our leadership with hosting such visits.

Having received a rather thorough operational update, we would like to change the Board meeting from its currently scheduled October 2 date to a later date - one that would allow us to review third quarter financials. This meeting will be more focused on corporate issues, rather than operational reviews. Sweeney and Holt would not need to attend. At Shamrock, we're available to meet on 10/24, 11/4, 11/5 and 11/6. Which of these dates work for you? Currently, we're not sure of where to have the meeting, but a site other than Jacksonville is desired, due to the difficulty of getting there. We would suggest New York or Charlotte if you want to visit the operating divisions. If not, we could meet in Los Angeles.

In your last email you mentioned a discussion planned for September 9th to decide on the proposed buyout by the Bs. Do you have anything to report?

Please let me know if you have any questions, etc.

Best regards.

Gene

# EXHIBIT C-9

## George Buchler

| | |
|---|---|
| **From:** | Arenson Avie [avie@arenson.co.il] |
| **Sent:** | Tuesday, September 24, 2002 8:19 AM |
| **To:** | George Buchler; Gene Krieger |
| **Cc:** | Shalom Lamm |
| **Subject:** | Walter Industries |

I just heard of Walter's disappointing offer. Have we decided what net this offer of 17m will generate? Do you agree with me that it is not worth taking up?
I think that the Swiss Re renewal is becoming very urgent. I know you are pessimistic about the outcome but I think we have to make the effort. I would suggest you grit your teeth and we ask John Zick to go at it for us as quickly as possible, reporting every action and reaction, but to be free of scheduling limitations with you George, since there is so little effective time left.
The 'B's, or most other potential investors for that matter, would be much more positive if we had Swiss Re in place.
What are your thoughts?

Avie

# EXHIBIT C-10

## Gene Krieger

| | |
|---|---|
| **From:** | Gene Krieger |
| **Sent:** | Wednesday, October 02, 2002 4:10 PM |
| **To:** | 'Arenson Avie' |
| **Cc:** | George Buchler; Bruce Stein |
| **Subject:** | RE: Alh |

**Dear Avie:**

I apologize for the delay in responding to your previous email, but we have been very busy on various ALH issues and other matters (as you know, we don't spend full time on ALH, but if often seems like we do!).

<u>Walter</u>   Their $17 million offer was so far off the mark, that it raised significant issues about their credibility and seriousness.  As a tactic, we did not respond immediately, so their investment banker called our banker.  Our banker got back to them with an approach to focus on the net price in order to avoid protracted negotiations regarding liabilities, etc.  Based on an August 31st balance sheet, our calculation of a net price on a $19.5 million deal was $7.754 million, so we asked for a response to that approach and authorized our banker to let them know there may be some room to negotiate.  They came back earlier this week at around $4 million.  While there may be some room for further discussions, I am very doubtful that we can do a deal with them at an acceptable price.  Nevertheless, the door is still open and we will be meeting with our banker tomorrow.

<u>Swiss Re</u>   I think you have misunderstood any hesitation I may have expressed about going to Swiss Re.  I only wanted to talk to them when we would have a clearer picture on the exit.  Without knowing our status, it could be a mistake to talk to them about a strategy that might not work out and thereby disappoint them and lose critical credibility.  Also, while we want to take advantage of Zich's relationship, we do not want him or Shalom to "go it alone".  George, and likely Bill Lanius, will be involved.  Now that a sale is not likely, we can plan our strategy with Swiss Re, which will be started immediately.  We are very mindful of this matter and the need to get something done as soon as possible.

<u>Board Meeting</u>   With so many people involved, scheduling is becoming a problem.  None of the dates you propose will work for various parties.  How about the 21st of November?  Any other dates acceptable?   Neither George nor I can do it the week of Nov 11th.

<u>Shalom</u>   We understand that Shalom has reached a settlement with Elovic that includes transferring to Elovic his Class E interest in ALH.  Such an assignment is not permitted under our Operating Agreement without the Members' approval, so we are trying to deal with Shalom on this matter.

We still haven't pressed Shalom further on his obligation to ALH in view of all that has been going on, but we should not let this continue to drift.  Shalom has not taken any initiative to move this forward.

11/1/2004

In your email to me of September 13th, you expressed the view "that Shalom is planning to walk". What do you know about this that we should be aware of?

**B Investors**   Your email of September 13th said the second offerer was not interested, but that a decision in principle about a B buyout would be made in the next few days.   We have not heard anything from you on this point.   Should be assume that a buyout by the Bs is no longer on the agenda?

**Regards.**

**Gene**

-----Original Message-----
**From:** Arenson Avie [mailto:avie@arenson.co.il]
**Sent:** Tuesday, October 01, 2002 5:58 AM
**To:** George Buchler; Gene Krieger; Shalom Lamm
**Subject:** Alh

Hello All:

I feel out of the loop.  Have you decided the date of the Board Meeting? I asked that it take place on the 12th or 19th of Nov. What was Walter's offer? What is our reaction to it?  Why have I not heard that we are sending someone, preferably Jon Zick, to Swiss Re?

Please advise.

Best wishes

Avie

11/1/2004

# EXHIBIT C-11

## George Buchler

| | |
|---|---|
| **From:** | George Buchler |
| **Sent:** | Friday, October 04, 2002 11:16 AM |
| **To:** | 'avie@arenson.co.il'; 'Shalom Lamm (E-mail)' |
| **Cc:** | Gene Krieger |
| **Subject:** | Update on Bowden Sale Process |

**Contacts:** Avie Arenson

Gene and I met yesterday with Tony Avila to discuss the Bowden transaction.  Here's an update of what's happening:

1. When we originally solicited offers for Bowden, our 2002 EBITDA projection was $4.3MM - it was subsequently revised to $4.1MM, and will shortly undergo another revision to $3.8MM.  The downward revisions, I am told, are due to limitations on the starts Bowden can initiate at one time due to financing constraints - constraints that are sure to tighten in the coming weeks.

2. Our desire to sell Bowden at a gross sales price of approximately $19MM equated to a "net" to the equity holders of about $7.5MM.  Currently, JM Walter is offering $5MM.  Tony feels that he can get them to at least $6MM.

We would like very much to sell Bowden, have a significant boost to our liquidity, and have something to bargain with when we visit Swiss Re for an amendment to our current payment schedule.  Gene and I would like to authorize Tony to negotiate a transaction which would net us $6.5MM for Bowden.  This would of course be prior to any payments to Jeff or Tony for their participation in the deal.

Please give me your thoughts on this issue as soon as possible.  Time is of the essence here, as I'd like Tony to get this done (if possible) early next week.

Let me or Gene know if you have any questions regarding this proposal.

11/10/2004

# EXHIBIT C-12

### George Buchler

**From:**    Arenson Avie [avie@arenson.co.il]
**Sent:**    Tuesday, October 08, 2002 7:33 AM
**To:**    Gene Krieger
**Cc:**    George Buchler
**Subject:** ALH

I have some points I do not understand regarding the Walter proposal. I tried to get answers from Shalom and found that he too was uncertain. You will, I believe, shortly get a letter from him detailing the points. Please send me a copy of your answer.
I am in the Miami from the 13th through to the 18th of Nov. the idea of coming hanging around till the end of the week could be pleasant but I am much too pressured for time to consider it. I would appreciate a meeting on the 19th or I could even come up for a few hours on most of the days between the 13th -18th, subject to fine-tuning schedules. please advise.

I had heard unofficially of Shalom's agreement with Dr. Enovic. This is the basis of my fear that Shalom may walk, since his personal interest would be largely over.

I cannot say that the 'B's are very enthusiastic but do not yet rule out the possibility of an offer.

Subject to clarification of the points Shalom will raise, We should get an answer out to you in a day or two.

best regards

Avie

11/10/2004

# EXHIBIT C-13

## Gene Krieger

| | |
|---|---|
| **From:** | Gene Krieger |
| **Sent:** | Friday, November 01, 2002 4:51 PM |
| **To:** | 'Arenson Avie' |
| **Cc:** | 'Shalom Lamm'; George Buchler |
| **Subject:** | RE: alh |

Dear Avie:

As we have said on several occasions, we would be happy to receive an offer from the Bs to buy us out. However, there has been such a long delay in this process, we are not sure these expressions of interest are really credible. The beginning of this process was in late July with an indication that any offer would occur within a matter of days or possibly weeks. It is now more than three months since that time, and we have received no meaningful indication of the price or the timing of a possible transaction. Nevertheless, we are still open to this idea, so we will make John and Bill available, subject to the following:

1. We need to know exactly who is in your group. There has been some uncertainty about which B investors are involved, and their actual identity. This is especially true of the SELK interest.

2. There is no problem as far as I am concerned with the B investors getting additional financial information; however, there is a need for confidentiality. We are involved in a sale process and we are working regularly with investment bankers and potential buyers, so the information you require is sensitive and requires confidential treatment.

3. We expect to get a draft purchase agreement from Walter Industries early next week on the acquisition of Bowden for a net price of $6 million. We will be trying to move this along quickly, so if your group would like to see Bowden retained as part of ALH, they will need to respond very, very quickly.

4. The involvement of John and Bill must be subject to their ongoing management duties. As you know, they have their hands full with day-to-day operations, especially since they have taken over the leadership roles at Mulvaney.

With respect to Swiss Re, George has made arrangements with Shalom to get Zich's continued assistance in getting the extension. The process is getting started, and George will be directly involved in all aspects of the discussions. We need to move this forward quickly, but based on prior experience, dealings with Swiss Re are likely to take a while. Therefore, if your group's buyout proposal will be contingent on an extension by Swiss Re, this may end up being a slower process. Also, if you approach the deal this way, and we do get the Swiss Re extension, much of the current risk to ALH is diminished, and the buyout price will need to take that important factor into consideration.

Best regards.

Gene

-----Original Message-----
From: Arenson Avie [mailto:avie@arenson.co.il]

**Sent:** Thursday, October 31, 2002 8:21 AM
**To:** George Buchler; Gene Krieger
**Cc:** Shalom Lamm
**Subject:** alh

Hello

Some of the B investors (including myself) are interested in making Shamrock an offer to buy out the A's. In order to do so we would like ALH management, John and Bill, to prepare some estimates as to cash flow and other things. We would like to meet them to have them discuss with us these estimates and thus let my colleagues have a first -hand impression of them. I would like your agreement to this before approaching John and Bill.
What is happening on the Swiss RE front?

Avie

11/1/2004

# EXHIBIT C-14

## Gene Krieger

| | |
|---|---|
| **From:** | Gene Krieger |
| **Sent:** | Friday, November 08, 2002 3:17 PM |
| **To:** | 'Avie Arenson (avie@arenson.co.il)' |
| **Subject:** | The silence is deafening . . . |

Dear Avie:

It has been a week since I wrote you regarding your request for access to John and Bill in connection with a possible buyout by the Bs.   Your lack of responsiveness is further eroding any sense of seriousness on the part of the Bs and your own personal credibility.

We received the draft purchase agreement from Walter earlier this week, and we are actively engaged in trying to move this forward.   There are many open issues in this deal, and we are not certain that we will get it done.   Nevertheless, we are working hard to make something happen for ALH, and we thought you would be a bit more involved. On October 8th, you wrote us that you would "get us an answer in a day or two". George responded to you and Shalom, yet we never heard anything further from you on this important transaction.

Regards.

Gene

> -----Original Message-----
> **From:** Gene Krieger
> **Sent:** Friday, November 01, 2002 4:51 PM
> **To:** 'Arenson Avie'
> **Cc:** Shalom Lamm; George Buchler
> **Subject:** RE: alh
>
> Dear Avie:
>
> As we have said on several occasions, we would be happy to receive an offer from the Bs to buy us out. However, there has been such a long delay in this process, we are not sure these expressions of interest are really credible.   The beginning of this process was in late July with an indication that any offer would occur within a matter of days or possibly weeks.   It is now more than three months since that time, and we have received no meaningful indication of the price or the timing of a possible transaction.  Nevertheless, we are still open to this idea, so we will make John and Bill available, subject to the following:
>
> 1. We need to know exactly who is in your group.  There has been some uncertainty about which B investors are  involved, and their actual identity.  This is especially true of the SELK interest.
>
> 2. There is no problem as far as I am concerned with the B investors getting additional financial information; however, there is a need for confidentiality.  We are involved in a sale process and we are working regularly with investment bankers and potential buyers, so the information you require is sensitive and requires confidential treatment.
>
> 3. We expect to get a draft purchase agreement from Walter Industries early next week on the acquisition of Bowden for a net price of $6 million. We will be trying to move this along quickly, so if your group would like to see Bowden retained as part of ALH, they will need to respond very, very quickly.

11/1/2004

4. The involvement of John and Bill must be subject to their ongoing management duties. As you know, they have their hands full with day-to-day operations, especially since they have taken over the leadership roles at Mulvaney.

With respect to Swiss Re, George has made arrangements with Shalom to get Zich's continued assistance in getting the extension. The process is getting started, and George will be directly involved in all aspects of the discussions. We need to move this forward quickly, but based on prior experience, dealings with Swiss Re are likely to take a while. Therefore, if your group's buyout proposal will be contingent on an extension by Swiss Re, this may end up being a slower process. Also, if you approach the deal this way, and we do get the Swiss Re extension, much of the current risk to ALH is diminished, and the buyout price will need to take that important factor into consideration.

Best regards.

Gene

-----Original Message-----
From: Arenson Avie [mailto:avie@arenson.co.il]
Sent: Thursday, October 31, 2002 8:21 AM
To: George Buchler; Gene Krieger
Cc: Shalom Lamm
Subject: alh

Hello

Some of the B investors (including myself) are interested in making Shamrock an offer to buy out the A's. In order to do so we would like ALH management, John and Bill, to prepare some estimates as to cash flow and other things. We would like to meet them to have them discuss with us these estimates and thus let my colleagues have a first -hand impression of them. I would like your agreement to this before approaching John and Bill. What is happening on the Swiss RE front?

Avie

# EXHIBIT C-15

## George Buchler

**From:** Arenson Avie [avie@arenson.co.il]
**Sent:** Monday, December 02, 2002 10:52 PM
**To:** Shalom Lamm; George Buchler
**Subject:** Re: Holt base Pay

If it has little impact on severance pay etc, I agree.
Avie

----- Original Message -----
**From:** Shalom Lamm
**To:** George Buchler ; Arenson Avie
**Sent:** Tuesday, December 03, 2002 1:51 AM
**Subject:** FW: Holt base Pay

Gentleman:

I spoke with John Laguardia today regarding a pay increase requested by Bill Holt. We discussed the matter for about ten or twelve minutes. John recommends the pay increase strongly, and given Holt's performance, the market, and pay levels in Memphis, I agree with him. Holt has been a strong performer, and we are vulnerable to losing him.

I asked John to put his thoughts in writing, which appears below.

Please let me know your thoughts.

Regards,

-Shalom

--
Shalom Lamm
Phone: 516-565-0868
fax: 516-565-1819
cell: 917-282-7375

------
**From:** "John Laguardia" <j.laguardia@mulvaneyhomesinc.com>
**Date:** Mon, 2 Dec 2002 17:11:18 -0500
**To:** "Shalom Lamm" <slamm@lionlamm.com>
**Subject:** Holt base Pay

Shalom:

Bill Holt has approached me about a substantial increase in his base pay - from $150,000 to $210,000. Based on one comp study that Bill L and I have received this amount is within the range for a company the size of ABI. The Jacksonville employment market for senior executives with proven track records is hot. KB, Morrison, Beazer and Ryland are reputed to be seeking a division President. Bill H has told Bill L that he has been approached by two local companies.

Bill H has performed exceptionally well. Under his leadership ABI continues to meet it's budget goals in spite of moratorium on starts occasioned by change in Florida building code and the disruptions of financing lines during the Swiss Re / Wachovia hiatus. Additionally, Bill has continued to bring attractive lot acquisition opportunities to the company; notably Oak Leaf Plantation and Johns Creek.

I believe that Bill is central to the success of the Jacksonville operation and strongly recommend that the Board approve this increase effectible 10/01/02.

John L

# EXHIBIT C-16

**George Buchler**

| | |
|---|---|
| **From:** | Arenson Avie [avie@arenson.co.il] |
| **Sent:** | Wednesday, December 18, 2002 12:08 AM |
| **To:** | Gene Krieger; George Buchler |
| **Cc:** | Michael G. Jesselson (E-mail); Michel Konig (E-mail); Isaac M. Neuberger |
| **Subject:** | ALHII |

Dear George and Gene:

Since our last conference call, (Gene, George, Isaac and me) the meeting with Swiss Re occurred and I know that you were gratified (as were we) to hear of the extension. Obviously, we now need to get Wachovia to accept the Swiss Re "bond" or find a different bank that will. There is real doubt on our part that Wachovia will not see this as an opportunity to force us out of the Bank. Wachovia is in fact First Union (in the merger, First Union bought Wachovia and changed their name) and they have shown NO interest in continuing their relationship with ALH.

In that connection and in connection with expanding the Ohio Savings Bank facilities, we remain gravely concerned that the sale of Bowden will seriously impair the viability of ALH, as while it might serve some short term end and may fund the Bowden litigation settlement, which we feel is not a "priority", it will hinder and cripple ALH going forward. The "auction" process is busted and it has made ALH look even weaker.

The Bs are prepared to fund needed working capital. We appreciate that the As have made a decision to exit and are NOT prepared to invest additional amounts. Since we fear that we have been placed in a liquidation mode, the Bs, in an effort to save their investment and seize an opportunity (that the As either do not believe is there or that they choose not to pursue) have been willing to offer the As a limited sum to exit and it is that amount that we need to agree upon.

What the Bs simply can not accept is to allow the As to liquidate ALH in a piecemeal fashion.

That said, we need to conclude a buy-out of the As on mutually acceptable terms or recommit ourselves to running ALH in a positive and forward looking manner and abandon, for the time being, the notion of a sale.

I look forward to hearing from you.

Avie

# EXHIBIT C-17

**George Buchler**

From:    George Buchler
Sent:    Friday, December 20, 2002 3:55 PM
To:      Bruce Stein
Subject: FW: ALHII funding

-----Original Message-----
From: William R. Lanius [mailto:wrlanius@bellsouth.net]
Sent: Thursday, December 19, 2002 10:59 AM
To: 'Arenson Avie'
Cc: 'George Buchler'; 'Gene Krieger'; 'John Laguardia'
Subject: RE: ALHII funding

Avie...... My sense is that we have a good relationship w/ Wachovia. Earlier this year they increased
our MHI construction line of credit to $21 million and approved a new BBC/ABI line for $5 million. I
speak with various officers of Wachovia frequently and keep them apprised of our situation. Up to this
point, I have received no adverse indication from the bank concerning renewal of the $27.5 million term
loan.

At the meeting last month in New York (w/ the "B" Members, et al), a concern was raised by Isaac
Neuberger about whether or not Wachovia would renew the loan. Apparently, surety bonds are not as
highly regarded because lenders have experienced difficulties collecting (and have needed to litigate) in
the Enron matter. It is not clear to me how much the facts of that case apply to ours.

I expressed a belief that that Wachovia would ultimately renew the loan based on continuing surety
bonds from SwissRe. Should Wachovia fell forced into this position, they might want to lower their
exposure on the construction lending side, especially in consideration of the difficulties we have
experienced in Charlotte.

We now have a signed letter from SwissRe indicating their willingness to renew the surety bonds. I have
subsequently scheduled a meeting w/ Wachovia on Monday to discuss the loan extension. Therefore, we
should have a more clear understanding of their position next week.

Please let me know if you have any questions or need more information. Best wishes to you this holiday
season...... WRL


Bill Lanius
e-mail: wrlanius@bellsouth.net
mobile: 904-219-8460

          -----Original Message-----
          From: Arenson Avie [mailto:avie@arenson.co.il]
          Sent: Thursday, December 19, 2002 3:45 AM
          To: John Laguardia; Bill Lanius
          Cc: George Buchler; Gene Krieger
          Subject: ALHII funding

          Hello Bill and John


11/10/2004

My congratulations on the Swiss Re extension. Nice work, I was under the impression that there would still be a problem with the Wachovia approval. Gene disagrees with me. He feels they should be very pleased to extend.  Where did I get my impression?

Seasons Greetings

Avie

11/10/2004