# EXHIBIT D

Sent By: JESSELSON CAPITAL CORP;          2127513377;          Dec-14-04  6:22PM;          Page 2

# PARTNERSHIP AGREEMENT

## OF

## J12ALH ASSOCIATES

Dated: June 2 , 1998

**GOLENBOCK, EISEMAN, ASSOR & BELL**
437 MADISON AVENUE
NEW YORK, NY 10022-7302

## J12ALH ASSOCIATES
## PARTNERSHIP AGREEMENT

AGREEMENT made as of the 2nd day of June, 1998, by and between Erica Jesselson and Jays Twelve LLC, both having an address for purposes of this Agreement at 1301 Avenue of the Americas, New York, New York.

The Partners agree as follows:

1. **Creation of Partnership.** The partners hereby agree to create a general partnership to be known as J12ALH ASSOCIATES (the "Partnership") under the laws of the State of New York and, except as provided in this Agreement, the rights and obligations of the Partners shall be governed by the New York Partnership Law.

2. **The Partners.** The partners are as follows:

| | |
|---|---|
| Erica Jesselson | Class "A" Partner |
| Erica Jesselson | Class "B" Partner |
| Jays Twelve LLC | Class "B" Partner |

3. **Purpose.** The purposes of the Partnership are (a) acquiring, owning, managing, investing in, or disposing of an interest in ALH Holdings LLC, and other investment opportunities and activities relating to enterprises of all kinds, and (b) carrying on such other business activities whether in connection with the foregoing or not as the Partners may determine.

87552.1

4.  <u>Nature of Interest</u>.  A Partner's interest in the Partnership shall constitute personal property for all purposes. All property of the partnership shall be held in the name of the Partnership (or in the name of a nominee for the Partnership) and deemed owned by the Partnership as an entity, and no Partner, individually, shall have any ownership interest in any property owned by the Partnership.

5.  <u>Principal Place of Business</u>.  The principal place of business of the Partnership shall be 1301 Avenue of the Americas, New York, New York, or at such other place within or without the State of New York as may from time to time be designated by the Partners.

6.  <u>Term</u>.  The Partnership shall commence on the date hereof and shall continue until the close of business on December 31, 2047, unless sooner terminated as hereinafter provided.

7.  <u>Capital Contributions</u>.

(a)  The Partners shall contribute the following amounts to the capital of the Partnership:

| | | |
|---|---|---|
| Erica Jesselson | – | $888,889 for her Class "A" partnership interest |
| Erica Jesselson | – | $11,111 for her Class "B" partnership interest |
| Jays Twelve LLC | – | $100,000 for its Class "B" partnership interest |

(b)  No Partner shall be entitled to withdraw any part of his capital contribution to the Partnership, or to receive any

distribution from the Partnership, except as expressly provided in this Agreement.  No Partner shall receive any interest on his capital contribution.

8.   <u>Capital Accounts</u>.  The Partnership shall maintain a capital account for each Partner in accordance with Section 704(b) of the Internal Revenue Code of 1986 and the regulations thereunder, which shall be (a) credited with the amount of his capital contribution to the Partnership, (b) credited or charged, as the case may be, with his distributive share of Partnership income or loss, and (c) charged with the amounts of any distributions to him.

9.   <u>Distributions: Allocation of Income and Loss</u>.

(a)  <u>Definitions</u>.  As used in this Agreement, the following terms shall have the following meanings:

(i)  "Cash Flow" shall mean, for each Partnership fiscal year, all of the unreserved cash of the Partnership as of the last day of such fiscal year.  The Partners shall from time to time determine the amount of cash that shall be reserved for such fiscal year.  In determining the amount of cash to be reserved, the Partners shall reserve funds which they shall deem necessary or appropriate to meet the reasonable business needs of the Partnership, including the payment or making provision for the payment, when due, of obligations of the Partnership, reserves against possible losses, and reserves for intended capital expenditures or for future investment or reinvestment.

#7552.1                            3

(ii) "Percentage Interest" shall mean the following percentage interests of the Partners:

| Partner | Percentage Interest |
|---|---|
| Erica Jesselson, as Class "A" Partner | -0- |
| Erica Jesselson, as Class "B" Partner | 10% |
| Jays Twelve LLC, as Class "B" Partner | 90% |

(iii) "Priority Return" for a Partnership fiscal year shall mean an amount equal to seven (7%) percent of the average Unrecouped Capital Contribution during such fiscal year (based upon the amount of Unrecouped Capital Contribution outstanding on each day during such fiscal year).

(iv) "Profits" and "Losses" shall mean, for each Partnership fiscal year, the net income or loss of the Partnership for such fiscal year as determined in accordance with principles applied in determining income, gains, expenses, deductions or losses, as the case may be, reported by the Partnership for Federal income tax purposes on its federal partnership information return. Profits and Losses shall include net gain from capital transactions and shall be reduced by any net loss from capital transactions.

(v) "Unrecouped Capital Contribution" shall mean the excess of (A) the value of the total aggregate capital contribution of the Class "A" Partner as provided in paragraph "7" hereof, over (B) the aggregate amount of all distributions, other

than distributions of Priority Return, made by the Partnership to the Class "A" Partner.

        (b)  <u>Distributions</u>.

        (i)  <u>Distributions of Cash Flow</u>.  Cash Flow for each fiscal year shall be distributed to the Partners in the following order of priority:

        (A)  First, to the Class "A" Partner in an amount equal to the unpaid Priority Return for previous fiscal years, and the Priority Return for the current fiscal year.

        (B)  Second, to the Class "A" Partner up to an amount equal to her then Unrecouped Capital Contribution.

        (C)  Third, any balance thereof shall be distributed to the Partners in accordance with their respective Percentage Interests.

        (ii)  <u>Timing of Annual Distributions</u>.  Distributions of Cash Flow shall be made within seventy-five (75) days after the close of each fiscal year.

        (iii)  <u>Deferral of Priority Return</u>.  In the event the Cash Flow shall be insufficient to pay the Priority Return due to the Class "A" Partner for any fiscal year of the Partnership, such payment shall be made during the four (4) year period beginning at the end of the fiscal year for which such payment was due.

(c)  <u>Allocation of Profits and Losses</u>.  Subject to any special allocations required by the Internal Revenue Code or the regulations thereunder, Profits and Losses for each fiscal year shall be allocated among the Partners, as follows:

(i)  Profits shall be allocated as follows:

(A)  First, to the Class "A" Partner: all of such profits up to the sum of (x) the Priority Return for the current fiscal year; and (y) that portion of the aggregate Priority Return for all prior fiscal years which exceeds the aggregate amount of Profits allocated to the Class "A" Partner (with respect to the Priority Return) for all such prior fiscal years.

(B)  Second, to the Class "A" Partner to the extent any losses shall have been allocated to her in prior fiscal years (but only to the extent profits shall not have been previously allocated pursuant to this subparagraph "(c)(i)(B)").

(C)  The balance of any Profits shall be allocated to the Class "B" Partners in accordance with their respective Percentage Interests.

(ii) Losses shall first be allocated to the Class "B" Partners in accordance with their respective Percentage Interests so long as a Partner shall have a positive balance in his capital account; then losses shall be allocated to the Class "A" Partner so long as she shall have a positive balance in her capital account; and then losses shall be allocated to the Class "B" Partners in accordance with their respective Percentage Interests.

10. <u>Tax Elections</u>. An election under Internal Revenue Code Section 754 shall be made by the Partnership at the request of any Partner.

11. <u>Rights and Powers of Partners</u>.

(a) The Partnership shall keep complete and accurate books and financial records with respect to the Partnership business in accordance with sound business practices.

(b) Within seventy-five (75) days after the end of each fiscal year, the Partnership's accountants shall prepare and send to each Partner an information return showing the amount of Cash Flow, taxable income or loss, capital gain and capital loss, if any, distributed or allocated to such Partner during such fiscal year, and an annual report which shall include a balance sheet and a statement of the receipts, disbursements, Cash Flow and taxable income or tax loss of the Partnership and such other information as the accountants may deem appropriate in order fairly to set forth the condition of the Partnership.

(c) The books of account and all other records of the Partnership shall be maintained at the principal office of the Partnership. All Partners and their duly authorized representatives shall have the right to examine the books of the Partnership at all reasonable times.

(d) All receipts, funds and income of the Partnership shall be deposited in the name of the Partnership in such bank or banks as the Partners from time to time shall determine.

87352.1                                    7

Withdrawals from such bank or banks shall be made on signatures of such person or persons as the Partners shall determine.

(e)  Each Partner acting alone is specifically authorized for and on behalf of the Partnership to enter into and execute on behalf of the Partnership any and all subscription agreements, other contracts, documents, notices and instruments, as he may deem appropriate to carry out the intents and purposes of this Agreement.

12.  Dissolution.

(a)  The Partnership shall dissolve upon, but not before, the first to occur of:

(i)  the expiration of the term of the Partnership;

(ii) the written consent of all of the Partners.

(b)  Upon the dissolution of the Partnership, the Partners shall proceed diligently to wind up the affairs of the Partnership and distribute its assets in accordance with the provisions of this paragraph "12".

(c)  Upon the termination of the Partnership, any Partner having a deficit balance in his capital account (after allocations of profits and losses) shall be required to restore the amount of such deficit balance to the Partnership, and the assets of the Partnership shall then be distributed in the following order of priority:

87552.1                                    8

(i)    First, to the payment of any debts and liabilities of the Partnership, other than to Partners, which then shall be due and payable.

(ii)    Second, to the establishment of any reserve which the Partners deem necessary to provide for any contingent or unforeseen liabilities or obligations of the Partnership.

(iii)    Third, to any Partner who has made loans to the Partnership, an amount equal to the unpaid accrued interest on, and the unpaid principal balance of, such loans.

(iv) Fourth, to the Class "A" Partner up to an amount equal to the sum of any unpaid Priority Return plus the then balance of her Unrecouped Capital Contribution.

(v)    Fifth, to the Partners in accordance with the balances of their respective capital accounts (after adjusting such capital accounts for all distributions required to be made pursuant to the previous provisions of this paragraph "12").

(vi) Sixth, the balance, if any, to all the Partners in proportion to their Percentage Interests.

(d)    Distributions of Partnership property to Partners pursuant to this paragraph "12" may be made in kind. The amount by which the fair market value of any Partnership property to be distributed in kind exceeds or is less than the basis of such property for federal income tax purposes shall, to the extent not otherwise recognized by the partnership, be taken into account in

87552.1

9

computing gain or loss for purposes of crediting or charging the capital accounts of, and distributing proceeds to, the Partners pursuant to this Agreement.

13. **Assignment of Partnership Interests.**

(a) Except as otherwise specifically permitted in this Agreement, no Partner shall have the right at any time to assign, sell, transfer, hypothecate, pledge or otherwise dispose of all or any part of his interest in the Partnership.

(b) With the prior written consent of all of the Partners, any Partner shall have the right to transfer and dispose of all or any part of his interest in the Partnership.

14. **Death or Incapacity.** Upon the death, or adjudication of incompetency of any individual Partner, the partnership shall not be dissolved, the business of the Partnership shall continue under and pursuant to the provisions of this Agreement, and such Partner's interest shall descend to and vest in the legal representatives, heirs, legatees, trustees, committee or other successors of such Partner.

15. **Notices.** All notices, demands, consents, offers and other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be considered as properly given or made if mailed by certified or registered mail, return receipt requested, postage prepaid, addressed to the respective address of such party set forth at the beginning of this Agreement.

87552.1                    10

16.  <u>Binding Effect</u>.  This Agreement shall inure to the benefit of and be binding upon the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto.

17.  <u>Agreement in Counterparts</u>.  This Agreement may be executed in any number of counterparts which together shall constitute one and the same instrument.

18.  <u>Rules of Construction</u>.  Each paragraph and section of this Agreement shall be considered severable, and if for any reason any paragraph, paragraphs, section or sections herein are determined to be invalid and contrary to any existing or future laws, such invalidity shall not impair the operation or affect the portions of this Agreement which are valid.

19.  <u>Governing Law</u>.  The validity, interpretation and construction of this Agreement shall be determined and governed in all respects by the laws of the State of New York.

20.  <u>Captions</u>.  Captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit, extend or describe the scope of this agreement or the intent of any provision hereof.

21.  <u>Creditors</u>.  None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Partnership.

22.  **Entire Agreement**.  This Agreement constitutes the entire agreement among the parties pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings of the parties in connection therewith.  No covenant, representation or condition not expressed in this Agreement shall effect or be effective to interpret, change or restrict the express provisions of this Agreement.

23.  **Pronouns**.  All pronouns and any variation thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

_____
Erica Jesselson

JAYS TWELVE LLC

By: _____

# EXHIBIT E

**Minutes of a Joint Meeting of the
Supervisory Board of ALH Holdings LLC
Board of Directors of ALH II, Inc.
Board of Directors of ALH Tennessee Acquisition, Inc.
And
Bowden Building Corporation
Held on April 13, 2004**

A duly scheduled telephonic meeting of the Supervisory Board of ALH Holdings LLC, a Delaware limited liability company (the "Company"), and the Boards of Directors of ALH II, Inc., a Delaware corporation, ALH Tennessee Acquisition, Inc., a Delaware corporation, and Bowden Building Corporation, a Tennessee corporation ("Bowden"), was held on April 13, 2004, pursuant to Section 6.2 of the Operating Agreement of the Company. In attendance were the following members of the Boards:

Avie Arenson
George Buchler
Eugene Krieger
Bruce Stein

David K. Robbins and Laura Long of Fried, Frank, Harris, Shriver & Jacobson LLP, counsel to the Company, and Robert J. Pinstein of Husch & Eppenberger LLC, counsel to the Company, also attended the meeting at the invitation of the Boards. The meeting was called to order at 8:00 AM PST. Mr. Stein was asked to serve as secretary for the meeting.

Mr. Buchler explained that the meeting was called to update the Boards on the previously approved sale of 100% of the issued and outstanding shares of Bowden, to Levitt Corporation, a Florida corporation traded on the New York Stock Exchange ("Buyer").

## APPROVAL OF PRIOR MINUTES

Mr. Buchler referred the Boards to the previously circulated minutes (the "Minutes") of the Board meeting held on March 24, 2004. Upon motion duly made and seconded, the Minutes were unanimously approved.

## UPDATE ON PROPOSED SALE OF BOWDEN

Mr. Buchler explained that the proposed sale of Bowden was moving forward, and both sides expected the closing to take place shortly. He noted that one open issue was whether and when the Company would be permitted to draw down amounts out of escrow to settle outstanding third party litigation. He also noted that Buyer was negotiating with Messrs. Laguardia and Sweeney with respect to finalizing their employment agreements, and that the Company was negotiating with Messrs. Laguardia and Sweeney with respect to their certification of the representations and warranties in the Bowden Stock Purchase Agreement. A full discussion of the progress on the proposed sale ensued. Mr. Pinstein informed the Boards that he felt the disclosure schedules were in good shape. He stated that Tennessee counsel had held two sessions with Messrs. Laguardia and Sweeney for the

1

88239

purpose of reviewing the representations and warranties in the Purchase Agreement and had also had a number of other informal diligence discussions with Messrs. Laguardia and Sweeney.

## APPROVAL OF TERMINATION OF BOWDEN 401(K) PLAN

Mr. Buchler informed the Boards that Buyer has required as a condition to the sale of Bowden that the board of directors of Bowden terminate Bowden's 401(k) Plan, effective immediately prior to the closing of the Bowden sale.  Upon motion duly made and seconded, the following resolutions were adopted by the Board of Directors of Bowden, with Messrs. Buchler and Krieger voting in favor and Mr. Lamm absent:

### APPROVAL OF 401(K) PROFITSHARING PLAN TERMINATION AGREEMENT

WHEREAS, Bowden Building Corporation (the "Corporation") desires to enter into a Stock Purchase Agreement (the "Purchase Agreement") among Levitt Corporation, a Florida corporation ("Levitt"), ALH Tennessee Acquisition, Inc., a Delaware corporation, the Corporation, and ALH II, Inc., a Delaware corporation, pursuant to which Levitt would purchase all of the outstanding shares of the Corporation, which Purchase Agreement has been reviewed and approved by the Board of Directors of the Corporation; and

WHEREAS, as a condition to entering into the Purchase Agreement, Levitt is requiring the Corporation to terminate the 401(k) Profitsharing Plan previously adopted by the Corporation (the "Plan"); and

WHEREAS, the Board of Directors of the Corporation has determined it to be in the best interests of the Corporation to enter into the Purchase Agreement; and

WHEREAS, in connection with the execution of the Purchase Agreement, the Board of Directors of the Corporation has determined it to be in the best interests of the Corporation to terminate the Plan.

NOW, THEREFORE, BE IT RESOLVED, that the Plan shall be terminated effective immediately prior to the closing of the transactions contemplated by the Purchase Agreement, and that such termination of the Plan, be, and it hereby is, approved, adopted, ratified and confirmed.

RESOLVED, that the officers of the Corporation be and each of them hereby is authorized and empowered, for and on behalf of the Corporation, to negotiate, execute and deliver such applications, certificates, documents, agreements or instruments required or desired to be delivered by the Corporation in connection with the termination of the Plan, on such terms as such officers may deem advisable, necessary or desirable, the

2

88239

preparation, execution and delivery of such applications, certificates, documents, agreements or instruments to be conclusive evidence of such due authorization by the Corporation.

GENERAL RESOLUTIONS

RESOLVED, that each of the officers of the Corporation be and each of them hereby is authorized, directed and empowered on behalf of the Corporation and in its name, to prepare, execute, deliver and/or file any applications, certificates, documents, agreements, or any other instruments or any amendments or supplements thereto, and to incur all fees and to pay all expenses which such officers may deem necessary or appropriate to enable the Corporation to carry out the obligations of the Corporation under, and to effect the transactions contemplated by, the foregoing resolutions and to do and to cause to be done any and all other acts and things as such officers may in their discretion deem necessary or appropriate to carry out the purposes of the foregoing resolutions, the preparation, execution, delivery and/or filing of such applications, certificates, documents, agreements, or any other instruments or any amendments or supplements thereto, or the doing or causing to be done of such other acts and things, to be conclusive evidence of such due authorization by the Corporation.

RESOLVED, that all actions heretofore taken by any officer of the Corporation in connection with any of the foregoing be, and each of them hereby is, ratified, confirmed and approved.

**SPECIAL COMPENSATION COMMITTEE DETERMINATION**

Mr. Buchler then noted that Shalom Lamm had reported to him, on behalf of the Special Compensation Committee established at the Boards' March 24, 2004 meeting, that the Committee had determined not to grant a fee to Shamrock Holdings of California, Inc., a California corporation and Class A Member of the Company, in connection with its efforts to facilitate the Bowden sale.

88239

3

There being no further business to discuss, upon motion duly made and seconded and unanimously approved, the meeting was adjourned.

Respectfully submitted,

Bruce Stein
Secretary of the Meeting

APPROVED:

_____
George Buchler
Chairman of the Meeting

88239

# EXHIBIT F

# Delaware

**The First State**

PAGE   1

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF FORMATION OF "JAYS TWELVE LLC", FILED
IN THIS OFFICE ON THE TWELFTH DAY OF JANUARY, A.D. 1998, AT 9
O'CLOCK A.M.

Harriet Smith Windsor
Harriet Smith Windsor, Secretary of State

**2844899   8100**

**050247317**

AUTHENTICATION: 3769067

DATE: 03-28-05

## CERTIFICATE OF FORMATION

### OF

### JAYS TWELVE LLC

This Certificate of Formation of Jays Twelve LLC (the "LLC") is being duly executed and filed by Thomas J. Wilson, Esq., an authorized person, to form a limited liability company under the Delaware Limited Liability Company Act.

FIRST:  The name of the limited liability company formed hereby is: Jays Twelve LLC

SECOND:  The address of the registered office of the LLC in the State of Delaware is 1013 Centre Road, Wilmington, New Castle County, Delaware, 19805.  The LLC's registered agent for service of process at that address is Corporate Service Company.

IN WITNESS WHEREOF, the undersigned has caused this Certificate of Formation to be duly executed as of January 9, 1998.

_____
Thomas J. Wilson, Organizer

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 01/12/1998
981011763 - 2844899

# EXHIBIT G

**GUARANTEE AGREEMENT**

**BY AND BETWEEN**

**ALH HOLDINGS LLC**

**AND**

**SELK, LLC**

GUARANTEE AGREEMENT

All capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to them in the Subscription Agreement dated as of June 12, 1998 by and between ALH Holdings LLC, a Delaware limited liability company (the "Company") and Shalom E. Lamm, a Delaware limited liability company (the "Purchaser"), as amended (the "Subscription Agreement").

Pursuant to this Guarantee Agreement (the "Guarantee") between the Company and SELK, LLC ("the Guarantor"), to induce the Company to consent to the Amendment, dated as of March 15, 1999, to the Subscription Agreement, and in consideration thereof, the Guarantor hereby unconditionally and irrevocably guarantees to the Company, the prompt and complete payment when due, including any Interest Amount or Discount Amount thereon, of the Second and Third Capital Contributions (the "Guaranteed Obligations"), which guaranteed amount the Guarantor acknowledges is equal to a principal amount of $4,700,000. The Guarantor further agrees to pay any and all expenses which may be paid or incurred by the Company, in enforcing any rights with respect to, or collecting against, the Guarantor under this Guarantee.

This Guarantee shall remain in full force and effect until the Guaranteed Obligations have been fully and indefeasibly paid and satisfied. The Guarantee shall be construed as a continuing, absolute and unconditional guarantee of payment of the Guaranteed Obligations without regard to any defense (other than the defense of payment), set-off or counterclaim which may at any time be available to or be asserted by the Guarantor against the Company. The Guarantor waives notice of or proof of reliance by the Company upon this Guarantee or acceptance of this Guarantee, and the Guaranteed Obligations, and any of them, shall conclusively be deemed to have been created, contracted or incurred in reliance upon this Guarantee, and all dealings between the Purchaser or the Guarantor and the Company shall be conclusively presumed to have been had or consummated in reliance upon this Guarantee. The Guarantor unconditionally waives, to the extent permitted by applicable law, any and all rights the Guarantor may have or that at any time hereafter may be conferred upon him, by statute, regulation or otherwise, to terminate or cancel this Guarantee.

IN WITNESS WHEREOF, the undersigned has caused this Guarantee to be duly executed and delivered on this _I5_ day of March, 1999.

GUARANTOR

SELK, LLC

By: _____

Name: _____

Title: _____

Agreed to and Acknowledged by:

ALH HOLDINGS LLC

By: _____

Name: _____

Title: _____

2

# EXHIBIT H

# MORRIS, NICHOLS, ARSHT & TUNNELL

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

302 658 9200
302 658 3989 FAX

S. MARK HURD
302 575 7354
302 498 6202 FAX
shurd@mnat.com

January 14, 2005

## BY FAX AND FIRST CLASS MAIL

Sean J. Bellew, Esq.
David A. Felice, Esq.
Cozen O'Connor
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE 19801

Thomas M. Wood, IV, Esq.
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street, 27th Floor
Baltimore, MD 21202-3201

> Re: *Shamrock Holdings of California, Inc. v. Arenson*
> C.A. No. 04-1399-SLR

Gentlemen:

It has come to our attention that, by means of a Settlement Agreement and Mutual Release dated December 17, 2004 (the "SAMR"), Shalom E. Lamm ("Lamm"), on behalf of himself and his heirs, successors, assigns, subsidiaries, affiliates (including Lion ALH Capital LLC and Lion & Lamm Capital, LLC), agents, attorneys, employees, officers, directors, shareholders and managers (collectively the "Lamm Affiliates"), has released ALH Holdings, LLC, ALH II, Inc., and Mulvaney Homes, Inc. and their respective subsidiaries, affiliates, agents, attorneys, employees, officers, directors, shareholders, managers, members, successors and assigns (collectively the "ALH Affiliates"), from "any and all claims, demands, debts, duties, bonds, damages, liabilities, actions, causes of action, suits, other sums of money, accounts, covenants, agreements, contacts and promises" (collectively "Claims") of Lamm or the Lamm Affiliates that "relate[] to or aris[e] out of [any] past transactions between or amongst them." *See* SAMR §2 (copy enclosed).

Sean J. Bellew, Esq.
David A. Felice, Esq.
Thomas M. Wood, IV, Esq.
January 14, 2005
Page 2

  The sworn Declaration filed by Lamm on behalf of SELK, LLC ("SELK"), on or about December 6, 2004, in opposition to plaintiffs' motion to remand the above-captioned action (the "Action"), states among other things that Lamm (1) is "the managing member" of SELK, (2) holds a 30% membership interest in SELK, and (3) on behalf of SELK, authorized the removal of the Action from the Court of Chancery of the State of Delaware to the United States District Court for the District of Delaware (the "District Court"). See Lamm Declaration ¶¶2, 5 and 7. Consequently, SELK is a Lamm Affiliate which has released any Claims it may have against the ALH Affiliates, including but not limited to the threatened claims which referenced in the Action.

  We therefore propose that the parties to the Action file a stipulation under Fed. R. Civ. P. 41 (a)(1)(ii) dismissing with prejudice any claims that have been or could be asserted by SELK against plaintiffs or by plaintiffs against SELK. A stipulation to this effect, signed by us, is enclosed. Please sign it and return it to us; we will take care of filing with the Court.

       Very truly yours,

       S. Mark Hurd

SMH/dmd
Enclosures

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is made and entered into as of December 17, 2004 by and among ALH Holdings, LLC, a Delaware limited liability company ("ALH"), ALH II, Inc. a Delaware corporation ("ALH II"), and Mulvaney Homes, Inc., a North Carolina corporation ("Mulvaney"), on the one hand, and Shalom E. Lamm, an individual resident in New York ("Lamm") on the other hand, with reference to the following facts:

    A.    Lamm is obligated to ALH in the amount of US$ 1,400,000, plus accrued interest, under that certain Promissory Note, dated July 1, 2001, (the "Note Obligation").

    B.    On May 27, 2004, judgment in favor of ALH Holdings, LLC against Lamm and others in the sum of $3,550,807.16 was entered based on Lamm's Affidavit of Confession of Judgment in an action entitled ALH Holdings LLC v. Shalom E. Lamm in New York County Supreme Court, index 108088/04 (the "Judgment").

    C.    Lamm is currently an officer and director of Mulvaney and its wholly owned subsidiary Mulvaney Homes/ALH, Inc., a North Carolina corporation ("ALH/Mulvaney").

    D.    ALH II has agreed to sell, and Mattamy (US) Acquisition Corporation has agreed to purchase, all of the capital stock of Mulvaney (the "Mulvaney Sale").

    E.    To permit the Mulvaney Sale to close, ALH, ALH II and Mulvaney have requested Lamm to execute a resignation as an officer of Mulvaney and ALH/Mulvaney and a release in favor of such companies effective as of the closing, which Lamm is willing to do in exchange for the releases set forth herein .

NOW, THEREFORE, in consideration of the mutual promises herein contained, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

    1.    Upon execution and delivery of this Agreement by both parties, Lamm shall promptly execute and deliver to ALH a Resignation and Release in form and substance similar to that attached hereto as Exhibit A.

    2.    Lamm, for himself and for his heirs, successors, assigns, subsidiaries, affiliates (including Lion ALH Capital LLC and Lion & Lamm Capital, LLC), agents, attorneys, employees, officers, directors, shareholders, managers, members, and each of them (collectively, the "Lamm Affiliates"), does hereby, in perpetuity, release,

remise and discharge ALH, ALH II and Mulvaney, and their respective subsidiaries, affiliates, agents, attorneys, employees, officers, directors, shareholders, managers, members, successors, assigns, and each of them (collectively, the "ALH Affiliates") from any and all claims, demands, debts, duties, bonds, damages, liabilities, actions, causes of action, suits, other sums of money, accounts, covenants, agreements, contracts and promises (referred to herein as "Claims"), in law or in equity, which Lamm or the Lamm Affiliates now have, have had or at any time may have against ALH, ALH II, Mulvaney, and/or the ALH Affiliates, whether or not they have been subject to dispute and whether or not known or unknown or suspected or unsuspected or liquidated or unliquidated, by reason of any matter, cause or thing whatsoever related to or arising out of the Note Obligation or any other past transactions between or amongst them.

3.    ALH, ALH II, and Mulvaney, for themselves and the ALH Affiliates do hereby, in perpetuity, release, remise and discharge Lamm and the Lamm Affiliates from any and all Claims, in law or in equity, which ALH, ALH II, Mulvaney, or the ALH Affiliates now have, have had or at any time may have against them, whether or not they have been subject to dispute and whether or not known or unknown or suspected or unsuspected or liquidated or unliquidated, by reason of any matter, cause or thing whatsoever, related to or arising out of the Note Obligation or any other past transactions between or amongst them.

4.    Upon execution hereof by the parties hereto, ALH Holdings LLC shall, at its sole cost and expense, including satisfaction of any and all Sheriff and Marshall fees, (a) provide Lamm with a Satisfaction of Judgment in the form annexed hereto as Exhibit B; (b) promptly discontinue with prejudice the supplementary proceeding entitled, ALH Holdings LLC v. Chase Manhattan Bank and Tina S. Lamm pending in New York County Supreme Court and provide Lamm with a Stipulation of Discontinuance with prejudice in substantially the form annexed hereto as Exhibit C; (c) promptly release all restraints and/or levies issued against Lamm and/or his wife, Tina S. Lamm, including but not limited to, the Chase account which is the subject of the supplementary proceeding; and (d) promptly withdraw all subpoenas, restraining notices, levies, income or property executions and all other judgment enforcement devices as against Lamm and/or Tina S. Lamm and provide Lamm with copies of all documents withdrawing such documents and notify all credit reporting agencies of the satisfaction of the Judgment. It is the intention of the parties that all collection efforts by ALH Holdings LLC or its attorneys against Lamm or the Lamm Affiliates shall be promptly withdrawn.

5.    Each party hereto expressly represents that such party has carefully read this Agreement; knows the contents thereof; has had the advice of counsel of such party's choosing in connection with the subject matter hereof, the resolution thereof reflected herein, and the releases, warranties, representations, conditions and agreements contained herein; has signed this Agreement freely and voluntarily; and has not been influenced to any extent whatsoever in doing so by any party hereto or

2

by any other person or entity, except for those representations, statements and promises expressly set forth herein.

6. It is the intention of the parties hereto that this Agreement shall be effective as a full and final accord and satisfaction and release of each party hereto. It is expressly understood by the parties that Section 1542 of the Civil Code of the State of California provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The parties hereto acknowledge that they are aware that they may hereafter discover facts in addition to and/or different from those which they now know or believe to be true with respect to the subject matter of this Agreement, but that, notwithstanding that fact, it is their intention hereby to fully, finally, and forever release all claims, actions, obligations and matters released herein and settle all disputes and differences related to the subject matter hereof, except as otherwise expressly provided in this Agreement, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, which now exist, or may in the future exist or heretofore have existed between each of them, and such releases herein shall be and remain in effect as full and complete releases, notwithstanding the discovery or existence of any such additional or different facts.

7. Each of ALH, ALH II, Mulvaney and Lamm represents and warrants that it/he has neither assigned nor transferred, and will not hereafter assign or transfer, any of the Claims released herein.

8. This Agreement shall be deemed to have been entered into in the State of California and the validity, interpretation and legal effect of this Agreement shall be governed by the laws of the State of California applicable to contracts entered in and performed entirely within the State of California, without regard to any conflict of laws principles.

9. Each and every provision of this Agreement is severable from each and all of the other provisions of this Agreement. In the event that any provision or provisions of this Agreement are for any reason unenforceable, the balance of said provisions shall nonetheless remain in full force and effect.

10. This Agreement may be modified only by written agreement executed by the parties in interest at the time of the modification.

11. This Agreement represents the entire agreement of the parties with respect to the subject matter hereof, and supersedes all prior and contemporaneous

3

oral or written communications, negotiations, possible and alleged agreements, representations, covenants and warranties concerning the subject matter hereof.

12. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, representatives, successors and assigns. Each party hereto represents and warrants that (a) it is authorized to execute, deliver and perform this Agreement; and (b) this Agreement constitutes a legal, valid and binding obligation of such party enforceable against such party in accordance with its terms.

13. Except as expressly set forth above with respect to the ALH Affiliates and the Lamm Affiliates, nothing in this Agreement is intended to relieve or discharge the obligation or liability of any third parties to any party hereto, nor of any party hereto to any third parties.

14. Any notice or communication required or permitted under this Agreement shall be effective when personally delivered in writing; or on the date when the notice, service or communication is transmitted by electronic facsimile (with a confirmation copy to be sent by mail) or the day after the notice, service or communication is sent by overnight air courier service (e.g., FedEx Courier); or five (5) days after the date of mailing. All notices shall be sent to the parties at the notice addresses listed below or to such other persons and notice addresses as may be designated in writing by the parties to each other.

To ALH, ALH II, or Mulvaney:

> ALH Holdings, LLC
> 444 Lakeside Drive, Second Floor
> Burbank, CA 91505
> ATTN: George J. Buchler
> Facsimile: (818) 556-6995

To Lamm:

> Shalom E. Lamm
> 330 Elm Street
> West Hempstead, NY 11552
> Facsimile: (877) 869-6465

15. Nothing contained in this Agreement shall constitute a release of any party hereto from liability for failure of such party to perform as required by the terms of this Agreement. In the event of any litigation or other dispute arising as a result of or by reason of this Agreement, the prevailing party in any such litigation or other dispute shall be entitled to, in addition to any other damages assessed, its reasonable attorneys' fees, and all other costs and expenses incurred in connection

4

with settling or resolving such dispute. The attorneys' fees which the prevailing party is entitled to recover shall include fees for prosecuting or defending any appeal and shall be awarded for any supplemental proceedings until final judgments is satisfied in full. In addition to the foregoing award of attorneys' fees to the prevailing party, the prevailing party in any lawsuit or arbitration based on this Agreement shall be entitled to its reasonable attorneys' fees incurred in any post-judgment proceedings to collect or enforce the judgment. This attorneys' fees provision is separate and several and shall survive the merger of this Agreement into any judgment.

      16.    This Agreement may be executed in one or more counterparts, and taken together shall constitute one and the same instrument. Facsimile signatures (sent via facsimile machine or e-mail) shall be equally valid and binding as original signatures.

[signature page follows]

5

IN WITNESS WHEREOF, the parties have caused this Settlement Agreement and Mutual Release to be duly executed as of the date first above written.

**"ALH"**
ALH HOLDINGS, LLC

By: _George Buchler_

Name: George Buchler

Title: Vice President


**"ALH II"**
ALH II, INC.

By: _George Buchler_

Name: George Buchler

Title: Vice President


**"Mulvaney"**
MULVANEY HOMES, INC.

By: _George Buchler_

Name: George Buchler

Title: Vice President


**"Lamm"**

_____

SHALOM E. LAMM

6

IN WITNESS WHEREOF, the parties have caused this Settlement Agreement and Mutual Release to be duly executed as of the date first above written.

"ALH"
ALH HOLDINGS, LLC

By:_____

Name:_____

Title:_____

"ALH II"
ALH II, INC.

By:_____

Name:_____

Title:_____

"Mulvaney"
MULVANEY HOMES, INC.

By:_____

Name:_____

Title:_____

"Lamm"

_____
SHALOM E. LAMM

## EXHIBIT A

## RESIGNATION AND RELEASE

Effective as of the closing of the transactions contemplated by the Stock Purchase Agreement dated as of the 17th day of December 2004, by and among Mattamy Homes Corporation, a Delaware corporation, ALH II, Inc., a Delaware corporation, and Mulvaney Homes, Inc., a North Carolina corporation, I, Shalom Lamm, hereby resign from the following positions:

Director and Secretary of Mulvaney Homes, Inc.; and

Secretary of Mulvaney Homes/ALH, Inc., a North Carolina corporation.

Mulvaney Homes, Inc. and  Mulvaney Homes/ALH, Inc. are referred to herein collectively as the "Mulvaney Companies".

I hereby remise, release and forever discharge each of the Mulvaney Companies of and from all actions, causes of action, suits, proceedings, debts, duties, accounts, bonds, covenants, contracts, claims and demands whatsoever which I, as a director, officer or employee of the Mulvaney Companies or otherwise, had, now have or hereafter shall or may have arising out of any cause, matter or thing whatsoever existing up to the present time, whether pursuant to statute, contract, common law or otherwise, and, in particular, without in any way limiting the generality of the foregoing, claims, demands or proceedings arising out of the following: my office, directorship, status, rights, interests or employment or the termination, cessation or loss thereof; and any moneys advanced, notice, pay in lieu of notice, severance pay, bonuses, benefits, perquisites, expenses, director's fees, participation in profits or earnings or other remuneration, whether authorized, pursuant to or provided for by by-law, resolution, statute, contract, common law or otherwise.

The provisions hereof shall inure to the benefit of the successors and assigns of each of the Mulvaney Companies and shall be binding upon my heirs, executors, administrators and legal personal representatives.


Dated: December ___, 2004


_____
Shalom Lamm

# 2463118_v2

**EXHIBIT B**

SUPREME COURT OF THE STATE OF NEW YORK

| COUNTY OF NEW YORK | X | SATISFACTION OF JUDGMENT FOR |
| | | LION ALH CAPITAL LLC, LION & LAMM |
| ALH HOLDINGS LLC, | | CAPITAL,LLC ,and SHALOM E. LAMM ONLY |
| | Plaintiff, | |
| - against – | | |
| | | |
| LION ALH CAPITAL LLC, LION & LAMM CAPITAL, | | INDEX#: 108088 /04 |
| LLC, JOHN D. HOURIHAN, SHALOM E. LAMM, and | | |
| JONATHAN ZICH, | | |
| | Defendants.. X | |

A Judgment was duly entered in the above-entitled action in favor of Plaintiff, ALH Holdings LLC, and against Defendants, Lion ALH Capital LLC, at 489 Fifth Avenue, New York, NY, Lion & Lamm Capital, LLC, at 489 Fifth Avenue, New York, NY, John D. Hourihan, at 15 East Green Cay, Christianstead, St. Croix, USVI, Shalom E. Lamm, at 330 Elm Street, West Hempstead, NY and Jonathan Zich at 180 Riverside Drive, New York, NY in the Supreme Court, County of New York on, *May 27, 2004* under index 108088/04.

Transcripts of the aforesaid Judgment have been duly filed with the offices of the Clerk of the County of Nassau County on October 7, 2004; Clerk of the County of Queens County on October 8, 2004; and Clerk of the County of Suffolk County on October 8, 2004.

The aforesaid Judgment entered for $3,550,807.16, plus post judgment interest accruing at the legal rate of 9% from May 27, 2004 minus a payment of $2,032.17 made on September 13, 2004 leaving a balance due on the Judgment of $ 3,726,341.19 minus a payment of $100.00 made on December 16, 2004, leaving a balance due on the Judgment of $ 3,726,341.19 as of December 16, 2004 with post judgment interest continuing to accrue at the legal rate of 9%.

Plaintiff will promptly notify the Sheriff/Marshall to withdraw any outstanding executions with respect to Shalom E. Lamm, Lion ALH Capital LLC and Lion and Lamm Capital LLC.

Thus, said Judgment against Defendants, Lion ALH Capital LLC, Lion & Lamm Capital, LLC, and, Shalom E. Lamm, only is acknowledged to be satisfied and the Clerk of the Courts are directed and authorized to satisfy said Judgment, or transcripts thereof, of record on the dockets thereof, and to make an entry thereof. **The Judgment remains in effect on other Defendants, JOHN D. HOURIHAN and JONATHAN ZICH.**

Dated:                                                      ALH HOLDINGS LLC

                                                              BY: _____

                                                              TITLE: _____

_____

**COUNTY OF FAIRFAX**
**COMMONWEALTH OF VIRGINIA**

On _____, before me the undersigned personally appeared, _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the statement, the individual or the person on behalf of which the individual acted, executed the instrument.

                                        _____
                                        **NOTARY PUBLIC**

## EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X

ALH HOLDINGS LLC,                                      **STIPULATION OF**
                         Petitioner,                   **DISCONTINUANCE**
                                                       **WITH PREJUDICE**

- against -
                                                       Index No. 04-114207

CHASE MANHATTAN BANK and TINA S. LAMM,

                         Respondents,

      - and -

LION ALH CAPITAL LLC, LION & LAMM CAPITAL,
LLC, JOHN D. HOURIHAN, SHALOM E. LAMM
and JONATHAN ZICH,
                         Judgment Debtors.
-------------------------------------------------------------X

    IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned,
the attorneys of record for all the parties, that whereas no party hereto is an infant,
incompetent person for whom a committee has been appointed or conservatee and no
person not a party has an interest in the subject matter of the action, the above entitled
action can be, and the same hereby is discontinued with prejudice, and without costs to
either party as against the other; and

    IT IS FURTHER STIPULATED THAT plaintiff's counsel shall advise the court
that it is withdrawing its petition currently returnable on January 6, 2005; and

    IT IS FURTHER STIPULATED that the discontinuance of this action has no
effect on the companion action commenced in the Supreme Court of New York County
under Index # 108088/04 which shall continue only as it pertains to John A. Hourihan
and Jonathan Zich; and

1

IT IS FURTHER STIPULATED that facsimile signatures, shall be deemed an original.

Dated:                                    Dated:

ALH HOLDINGS LLC

By: _____        By: _____
        Title: _____              Joseph Capobianco/Craig M. Johnson
                                              REISMAN, PEIREZ & REISMAN
                                              L.L.P. Attorneys for Defendants Lion
                                              ALH Capital LLC, Lion & Lamm
                                              Capital, LLC, and, Shalom E. Lamm
                                              1350 Frankling Avenue
                                              Garden City, NY 11530

# 2474619_v1

2

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

SHAMROCK HOLDINGS OF )
CALIFORNIA, INC., SHAMROCK )
CAPITAL ADVISORS, INC., EUGENE I. )
KRIEGER, GEORGE J. BUCHLER and )
BRUCE J. STEIN, )
                                  )    Civil Action No. 04-1339-SLR
            Plaintiffs, )
                                    )
         v. )
                                      )
AVIE ARENSON, SELF, LLC AND )
LAUREL EQUITY GROUP, LLC, )
                                      )
            Defendants. )

## STIPULATION AND ORDER OF DISMISSAL WITH PREJUDICE

WHEREAS, this action was originally commenced on September 13, 2004 in the Court of Chancery of the State of Delaware (the "Chancery Court") and was removed by defendants to this Court on October 6, 2004; and

WHEREAS, on November 5, 2004, plaintiffs moved to remand this action back to the Chancery Court, and such motion is now *sub judice*; and

WHEREAS, by means of that certain Settlement Agreement and Mutual Release dated December 17, 2004 (the "SAMR"), defendant SELK LLC ("SELK") has released any and all claims it has asserted or could assert against plaintiffs in this action (whether in this Court or the Chancery Court); and

WHEREAS, by means of the SAMR, plaintiffs have released any and all claims they have asserted or could assert against defendant SELK in this action (whether in this Court or the Chancery Court);

IT IS HEREBY STIPULATED AND ORDERED, pursuant to Rule 41 of the

Federal Rules of Civil Procedure, that:

    1.    SELK dismisses with prejudice any and all claims it has asserted or could

assert against plaintiffs in this action (whether in this Court or the Chancery Court); and

    2.    Plaintiffs dismiss with prejudice any and all claims they have asserted or

could assert against SELK in this action (whether in this Court or the Chancery Court).

MORRIS NICHOLS ARSHT & TUNNELL

_____
A. Gilchrist Sparks, III (#247)
S. Mark Hurd (#3297)
Samuel T. Hirzel (#4415)
1201 N. Market Street
Wilmington, DE 19899
302-658-9200
    Attorneys for Plaintiffs Shamrock Holdings of
California, Inc., Shamrock Capital Advisors,
Inc., Eugene I. Krieger, George J. Buchler, and
Bruce J. Stein

COZEN O'CONNOR

_____
Sean J. Bellew (#4072)
David A. Felice (#4090)
1201 N. Market Street
Wilmington, DE 19899
302-295-2000
    Attorneys for Abraham Arenson, SELK,
LLC, Laurel Equity Group, LLC

OF COUNSEL:

Gregory P. Joseph Law Offices LLC
Gregory P. Joseph
Pamela Jarvis
805 Third Avenue, 31st Floor
New York, NY 10022
(212) 407-1200

OF COUNSEL

Neuberger, Quinn, Gielen, Rubin &
Gibber, P.A.
Thomas M. Wood, IV
One South Street, 27th Floor
Baltimore, MD 21202
(410) 332-8550

IT IS HEREBY ORDERED this ___ day of January, 2005.

_____
United States District Judge

LAW OFFICES

# NEUBERGER, QUINN, GIELEN, RUBIN & GIBBER, P.A.

27TH FLOOR
ONE SOUTH STREET
BALTIMORE, MARYLAND 21202-3282
www.nqgrg.com
(410) 332-8550

THOMAS M. WOOD, IV.
(410) 332-8523

FAX No.
(410) 332-8564
E-MAIL ADDRESS:
TMW@NQGRG.COM

January 19, 2005

VIA FACSIMILE: 302-498-6202
AND REGULAR MAIL

S. Mark Hurd, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

RE:    *Shamrock Holdings of California, Inc. v. Arenson*
       C.A. No: 04-1399-SLR

Dear Mr. Hurd:

I am in receipt of your letter dated January 14, 2005 proposing that SELK, LLC ("SELK") enter into a stipulation dismissing any claims that it has asserted or could have asserted against Shamrock Holdings of California, Inc., Shamrock Capital Advisors, Inc., George J. Buchler, Eugene I. Krieger and Bruce J. Stein ("Shamrock"), in the above-captioned matter. Your proposal is absurd, disingenuous and so far beyond the pale that it hardly merits a response. Obviously, SELK will not enter into any such stipulation.

Your position that SELK released any claims it has against Shamrock in the above-captioned matter or in any other matter is ridiculous. The Settlement Agreement and Mutual Release ("SAMR") entered into by Shalom Lamm did not release any claims that SELK has against Shamrock. The SAMR makes clear that its purpose was to release Lamm in connection with the Note Obligation and a confessed judgment entered in New York in return for Lamm's resignation as an officer of Mulvaney Homes, Inc. ("MHI") and Mulvaney Homes/ALH, Inc. so that ALH II could sell the stock of MHI to Mattamy.

Your contention that SELK is an affiliate of Lamm and that the words in the SAMR that "Lamm, for himself and his heirs, successors, assigns, subsidiaries, affiliates (including Lion ALH Capital, LLC and Lion & Lamm Capital, LLC")", agents, attorneys, employees, officers,

215408.3/1060.3

# NEUBERGER, QUINN, GIELEN, RUBIN & GIBBER, P.A.

S. Mark Hurd, Esquire
January 19, 2005
Page 2 of 2

directors, shareholders and managers (collectively the "Lamm Affiliates"), release any of SELK's claims against Shamrock is ludicrous. SELK is not an affiliate of Lamm nor is affiliate defined anywhere in the SAMR.

Undoubtedly, the Court will not look upon your letter or your position with favor. Any further assertion of this position will result in a request for sanctions with the Court.

Very truly yours,

Thomas M. Wood, IV

TMW/tem

215408.3/1060.3

# EXHIBIT I

*State of Delaware*

## Office of the Secretary of State    PAGE  1

---

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "ALH II, INC.", FILED IN THIS OFFICE ON THE NINTH DAY OF DECEMBER, A.D. 1998, AT 9 O'CLOCK A.M.



*Edward J. Freel, Secretary of State*

2976631   8100

991076752

AUTHENTICATION:  9600512

DATE:   02-26-99

*STATE OF DELAWARE*
*SECRETARY OF STATE*
*DIVISION OF CORPORATIONS*
*FILED 09:00 AM 12/09/1998*
*981473321 - 2976631*

## CERTIFICATE OF INCORPORATION

### . OF

### ALH II, INC.

FIRST.  The name of this corporation shall be:

### ALH II, INC.

SECOND.  Its registered office in the State of Delaware is to be located at 1013 Centre Road, in the City of Wilmington, County of New Castle and its registered agent at such address is CORPORATION SERVICE COMPANY.

THIRD.  The purpose or purposes of the corporation shall be:

To engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

FOURTH.  The total number of shares of stock which this corporation is authorized to issue is:

One Thousand Five Hundred (1,500) Shares With No Par Value

FIFTH.  The name and address of the incorporator is as follows:

Kimberly Wright
Corporation Service Company
1013 Centre Road
Wilmington, DE  19805

SIXTH.  The Board of Directors shall have the power to adopt, amend or repeal the by-laws.

SEVENTH.  No director shall be personally liable to the Corporation or its stockholders for monetary damages for any breach of fiduciary duty by such director as a director.  Notwithstanding the foregoing sentence, a director shall be liable to the extent provided by applicable law, (i) for breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) pursuant to Section 174 of the Delaware General Corporation Law or (iv) for any transaction from which the director derived an improper personal benefit.  No amendment to or repeal of this Article Seventh shall apply to or have any effect on the liability or alleged liability of any director of the Corporation for or with respect to any acts or omissions of such director occurring prior to such amendment.

IN WITNESS WHEREOF, the undersigned, being the incorporator hereinbefore named, has executed, signed and acknowledged this certificate of incorporation this ninth day of December, A.D., 1998.

_Kimberly Wright_
Kimberly Wright
Incorporator

# EXHIBIT J

# Schedule 2.0(k)

**ALH II, Inc.**
**Scheduled of Corporate Loan Guarantees**
**as of June 30, 2001**

| Borrower | Lender | Description | Estimated Exposure at 6/30/01 | |
|---|---|---|---|---|
| **ALH II Operating Group** | | | | |
| ABI | New South FSB | Construction Revolver | 6,855,000 | |
| ABI / BBC | GMAC / RFC | Construction Revolver | 8,798,000 | [a] |
| ALH Tenn | Bowden (Don & Helen) | BBC Acquisition | 2,250,000 | [b] |
| BBC | 1st Trust Bank | Construction Loan(s) | 1,882,000 | |
| BBC | Bank of Bartlett | Construction Loan(s) | 90,000 | |
| BBC | Enterprise Nat'l Bank | Construction Loan(s) | 1,241,000 | |
| BBC | GMAC Mortgage | Construction Loan(s) | 2,879,000 | |
| BBC | Midsouth Bank | Construction Loan(s) | 36,000 | |
| BBC | Munford Union Bank | Construction Loan(s) | 1,422,000 | |
| BBC | Southtrust Bank | Construction Loan(s) | 796,000 | |
| BBC | Union Planters | Construction Loan(s) | 529,000 | |
| MHI | Central Carolina Bank | Construction Revolver | 3,019,000 | |
| MHI | Centura Bank | Construction Revolver | 8,050,000 | |
| MHI | Wachovia Bank | Construction Revolver | 10,684,000 | |
| Subtotal | | | 48,531,000 | |
| | | | | |
| **Related / Other Parties** | | | | |
| L&L Arlington Assoc., L.P. | Peoples Bank | Lot Acquisition Loan | 1,344,000 | |
| ALH of Florida | New South FSB | Lot Acquisition Loan | 467,027 | [c] |
| Sedona at Avila, L.P. | New South FSB | A&D Loan | 239,289 | |
| Subtotal | | | 2,050,316 | |
| | | | | |
| Total | | | 50,581,316 | |

The foregoing schedule is a summary of debt for which ALH II, Inc. is a guarantor.

Notes:
[a] ALH II is the actual borrower.  However, this loan facility is used by both ABI and BBC and the outstanding principal amounts are recorded on their balance sheets.
[b] ALH II is a guarantor for the note provided to the Bowden's at the time of BBC's acquisition.
[c] Aggregate balance outstanding as of August 31, 2001 is 389,040.

# EXHIBIT K

# WACHOVIA

Wachovia Bank, N.A.
Post Office Box 31608
Charlotte, North Carolina 20231-6071

January 5, 2000

Mr. Jonathan Zich, Secretary
ALH II, Inc.
489 Fifth Avenue, 28th Floor
New York, New York   10017

Dear Mr. Zich:

Wachovia Bank, N.A. ("Bank"), is pleased to make available to ALH II, Inc. (the "Company") a Twenty Seven Million Five Hundred Thousand Dollar ($27,500,000.00) term loan facility with two tranches, as follows: a $13,000,000.00 tranche ("Tranche One") and a $14,500,000.00 tranche ("Tranche Two"). This loan will become effective upon your acceptance of this commitment letter, your return of the executed copy of same to the Bank and, subject to the conditions set forth herein, a closing of the transaction in a manner satisfactory to the Bank. "Closing", "close", or "closed", as used herein, shall mean the execution, recordation where necessary, and delivery to the Bank of all documentation required by this commitment letter. After closing, this loan will mature as follows: Tranche One: January 14, 2002, or two years from closing date, Tranche Two: January 14, 2003, or three years from closing date. This loan commitment is subject to the maintenance by your Company of a condition satisfactory to the Bank and the following terms and conditions.

As used herein, the term "loan" shall include loan, line of credit, advance, drawing, debit, liability, and any other obligation of your Company to the Bank arising out of this commitment.

1.    Interest Rate. The rate of interest is One Month LIBOR, plus the applicable margin as defined in the attached Exhibit A. The rate of interest shall be calculated on the basis of a 360-day year for the actual number of days in each interest period. Interest shall be due and payable monthly in arrears. In addition, your Company will obtain a fixed rate of interest on Tranche One and Tranche Two individually via the use of interest rate management products, which will result in a fixed rate of interest not to exceed the respective two year and three year U.S. Treasury rates in effect at the time of closing, plus 1.00% per annum.

2.    Underwriting Fee. The Bank shall receive an underwriting fee in the amount of .25% of the total amount of Tranche One and .35% of the total amount of Tranche Two to be paid to the Bank at the closing of this transaction, which underwriting fee shall be fully earned when paid, and non-refundable.

3.    Use of Proceeds. The loan will be used by your Company to acquire the homebuilding assets of The Mulvaney Group Ltd., Charlotte, North Carolina ("Mulvaney").

4.    Principal Repayment. The principal of the loan will be repaid in one payment as follows:

Page 2

Tranche One: $13,000,000.00 on January 14, 2002, or two years from closing date, Tranche Two: $14,500,000.00 on January 14, 2003, or three years from closing date.

5.    Prepayment.  At your Company's election, your Company may prepay this loan in whole or in part at any time upon payment of applicable interest rate management breakage fees.

6.    Collateral.  The loan will be secured by: Note Purchase Option Agreement ("Option Agreement") from ALH Holdings, LLC ("Principal"), Surety Bonds ("Surety Bonds") jointly and severally issued by Swiss Reinsurance America Company and Amwest Surety Insurance Company ("Sureties") in the cumulative amount of $28,000,000.00 ("Bonds").  The Company will also pledge pursuant to a Pledge Agreement (the "Pledge Agreement") in form and substance satisfactory to the Bank a first priority security interest and lien on an Interest Reserve Account in the Company's name, to be maintained at the Bank, in a minimum amount equal to sixty (60) days interest (based upon a 360 day year) on the loan computed at the fixed interest rate pursuant to Item #1 above.

7.    Conditions Precedent.  The Bank's obligation to make the loan described above is subject to conditions precedent which are standard in loan documentation for similar loans made by the Bank, including the conditions that: (a)  Mulvaney Homes, Inc. and your Company have executed a commitment letter to the Bank for an $18,000,000.00 construction loan facility; (b) Bank has received the loan documents as set forth in paragraph 8 in form and substance satisfactory to the Bank; (c) the Bank has received satisfactory opinions of counsel for your Company, Principal and Sureties regarding the authorization for your Company to execute and perform the loan documents, the Principal to execute and perform the Note Purchase Option Agreement, and the Sureties to execute and perform the Bonds, the enforceability of the loan documents, the perfection and priority of the Bank's security interest and lien and related matters;  (d) all representations and warranties made by your Company, the Principal and the Surety to the Bank shall be true and correct as of the date of the loan's funding; (e) as of the date of the loan's funding, your Company's, the Principal's and the Surety's business and industry are in a condition satisfactory to the Bank, your Company's and the Principal's present management and ownership have not changed, and no material adverse change from that reflected in the financial statements dated June 30, 1999 has occurred in the financial condition of your Company or Principal, and (f) as of the date of the loan's funding, there exists no event of default (or event with which notice or lapse of time or both could constitute an event of default) under the loan documents.

8.    Loan Documents.  The Bank shall be furnished with such loan documents as the Bank shall deem necessary for its protection.  All loan documents as well as all questions relating to the validity and priority thereof shall be determined by and shall be satisfactory to the Bank and the Bank's counsel.  In this regard, the Bank designates Mr. Jim Lilly, Attorney At Law, Womble Carlyle Sandridge & Rice, PLLC as its counsel to prepare such loan documents.  The Bank shall have the right to designate local counsel of its choice with respect to all matters involving the laws of the state in which such collateral is governed.  The loan documents will include this commitment, notes evidencing Tranche One and Tranche Two of the loan (the "Notes"), the Surety Bonds, the Option Agreement, the Pledge Agreement and such other documents as the Bank shall deem necessary in order to document the loan and to create and perfect the security for the loan.

Page 3

9.   **Financial Information.**  The loan documents will require that your Company furnish the Bank a continuous flow of financial information to include quarterly (within 30 days after the end of each calendar quarter) a balance sheet, income statement and cash flow statement prepared in accordance with generally accepted accounting principles, signed by a Company officer, and an annual audit (within 90 days after the end of each fiscal year) accompanied by a certificate regarding covenant compliance, prepared by a certified public accounting firm acceptable to the Bank.  Your Company shall also provide the Bank with such additional information as the Bank may request from time to time.

10.  **Affirmative Covenants.**   Your Company covenants and agrees that from the date hereof and until ment in full of the principal and interest on the Notes, unless the Bank shall otherwise consent in writing, your Company will:

(a) Maintain a Minimum Interest Coverage Ratio of 1.25X (tested on a rolling four-quarter basis).

(b) Maintain its corporate existence and conduct its business in substantially the same manner and substantially the same fields as such business is now conducted and maintained.

(c) Maintain at the Bank, pledged in form and substance satisfactory to the Bank, an Interest Reserve account, pursuant to paragraph #6, equal to a minimum of sixty (60) days interest on the loan.

(d) Pay dividends only for the payment of taxes.

(e) Establish its primary banking depository relationship with the Bank within thirty (30) days of closing the loan.

11.  **Negative Covenant.**   Until payment in full of the Notes and interest thereon, your Company covenants that it will not, without the prior written consent of the Bank, make any material change in ownership, executive staff or management of your Company or Principal, or in the manner in which its business is conducted.

12.  **Defaults.**  The Notes shall set forth defaults permitting acceleration of the maturity of the loan and pursuit of the remedies available under the loan documents and applicable law. Such defaults shall include, without limitation, any default in connection with the $18,000,000 construction loan facility provided by the Bank to Mulvaney, payment default, bankruptcy or insolvency, covenant violations, and failure of Swiss Reinsurance America Corporation to maintain a minimum long-term debt rating of AAA from Standard & Poor's and Aaa from Moody's Investors Service, Inc.

13.  **Costs.**  Your Company agrees to pay all of the costs, expenses, and fees incurred in connection with the negotiation, preparation for, and closing of the loan herein committed, whether or not the committed loan is closed, including but not limited to all legal fees including the fees of the Bank's counsel, license and permit fees, environmental assessment inspection report costs, intangible taxes, survey costs and filing fees.

14.  **Non-Assignability.**  This commitment is not assignable by your Company and no party other than your Company is entitled to rely on this commitment.

Page 4

15. Consequential Damages. In no event shall either your Company or the Bank be liable to the other for indirect, special, or consequential damages, including the loss of anticipated profits which may arise out of or are in any way connected with the issuance of this commitment.

16. Modifications. No condition or other term of this commitment may be waived or modified except by a writing signed by both your Company and the Bank. This requirement of a writing to waive or modify provisions of this commitment cannot itself be waived or otherwise negated by any agreement or other conduct of the parties, expressed or implied, other than by a writing to that effect signed by both parties.

17. Termination of Commitment. The Bank may terminate this commitment prior to the closing of the transactions contemplated hereby by notice in writing to your Company, in the event that: (a) your Company, Principal or either Surety shall fail or refuse to comply in a timely manner with any of the terms, provisions or conditions of this commitment or the other loan documents; (b) the Bank determines in its sole discretion that a material adverse change has occurred in the financial condition of your Company, Principal or either Surety; (c) any of the information, data, representations, exhibits and other materials submitted to the Bank by your Company, Principal or either Surety contain any inaccuracy or misrepresentation or shall omit to set forth any information that is material to the completeness and accuracy of such information, data, representations, exhibits and other materials or to the Bank's decision to issue this commitment; or (d) any default by your Company to the Bank or any third party shall occur or exist, including but not limited to the Bank's $18,000,000.00 construction loan facility to Mulvaney. Upon giving of such notice by the Bank, the obligations and liabilities of the Bank under this commitment shall cease and terminate without further act and all notes shall become due and payable.

18. Applicable Law. This commitment shall be interpreted, construed, enforced, and governed by the laws of the State of North Carolina.

**Page 5**

Upon return by your Company to the Bank of a fully-executed copy of this commitment before its expiration date of January 10, 2000, this commitment will be considered accepted and will constitute an agreement obligating the Bank to make and your Company to accept the loan in accordance with the terms and conditions set forth above. If the executed copy is not received by the Bank by the expiration date noted above, this commitment shall be considered null and void. If this commitment is accepted by your Company, it must be closed by January 31, 2000, or it may be considered null and void at the option of the Bank. Time is of the essence.

Very truly yours,

Kenneth M. Harris
Senior Vice President

Accepted this 5 day of January, 2000.

ALH II, Inc.

By:_____

Title: Secretary

Accepted Copy Received by Bank
Date:_____
By:_____

CommitmentLetterALHIII_5_2000



Wachovia Bank, N.A.
Post Office Box 31608
Charlotte, North Carolina 28231-6071

January 5, 2000

Mr. Jonathan Zich, Secretary
ALH II, Inc.
489 Fifth Avenue, 28th Floor
New York, New York   10017

Dear Mr. Zich:

Wachovia Bank, N.A. ("Bank"), is pleased to make available to ALH II, Inc. (the "Company") a Twenty Seven Million Five Hundred Thousand Dollar ($27,500,000.00) term loan facility with two tranches, as follows: a $13,000,000.00 tranche ("Tranche One") and a $14,500,000.00 tranche ("Tranche Two"). This loan will become effective upon your acceptance of this commitment letter, your return of the executed copy of same to the Bank and, subject to the conditions set forth herein, a closing of the transaction in a manner satisfactory to the Bank.  "Closing", "close", or "closed", as used herein, shall mean the execution, recordation where necessary, and delivery to the Bank of all documentation required by this commitment letter.  After closing, this loan will mature as follows: Tranche One: January 14, 2002, or two years from closing date, Tranche Two: January 14, 2003, or three years from closing date. This loan commitment is subject to the maintenance by your Company of a condition satisfactory to the Bank and the following terms and conditions.

As used herein, the term "loan" shall include loan, line of credit, advance, drawing, debit, liability, and any other obligation of your Company to the Bank arising out of this commitment.

1.    Interest Rate. The rate of interest is One Month LIBOR, plus the applicable margin as defined in the attached Exhibit A.  The rate of interest shall be calculated on the basis of a 360-day year for the actual number of days in each interest period.  Interest shall be due and payable monthly in arrears.  In addition, your Company will obtain a fixed rate of interest on Tranche One and Tranche Two individually via the use of interest rate management products, which will result in a fixed rate of interest not to exceed the respective two year and three year U.S. Treasury rates in effect at the time of closing, plus 1.00% per annum.

2.    Underwriting Fee. The Bank shall receive an underwriting fee in the amount of .25% of the total amount of Tranche One and .35% of the total amount of Tranche Two to be paid to the Bank at the closing of this transaction, which underwriting fee shall be fully earned when paid, and non-refundable.

3.    Use of Proceeds. The loan will be used by your Company to acquire the homebuilding assets of The Mulvaney Group Ltd., Charlotte, North Carolina ("Mulvaney").

4.    Principal Repayment. The principal of the loan will be repaid in one payment as follows:

## Page 2

Tranche One: $13,000,000.00 on January 14, 2002, or two years from closing date. Tranche Two: $14,500,000.00 on January 14, 2003, or three years from closing date.

5.    Prepayment. At your Company's election, your Company may prepay this loan in whole or in part at any time upon payment of applicable interest rate management breakage fees.

6.    Collateral. The loan will be secured by: Note Purchase Option Agreement ("Option Agreement") from ALH Holdings, LLC ("Principal"), Surety Bonds ("Surety Bonds") jointly and severally issued by Swiss Reinsurance America Company and Amwest Surety Insurance Company ("Sureties") in the cumulative amount of $28,000,000.00 ("Bonds"). The Company will also pledge pursuant to a Pledge Agreement (the "Pledge Agreement") in form and substance satisfactory to the Bank a first priority security interest and lien on an Interest Reserve Account in the Company's name, to be maintained at the Bank, in a minimum amount equal to sixty (60) days interest (based upon a 360 day year) on the loan computed at the fixed interest rate pursuant to Item #1 above.

7.    Conditions Precedent. The Bank's obligation to make the loan described above is subject to conditions precedent which are standard in loan documentation for similar loans made by the Bank, including the conditions that: (a)  Mulvaney Homes, Inc. and your Company have executed a commitment letter to the Bank for an $18,000,000.00 construction loan facility; (b) Bank has received the loan documents as set forth in paragraph 8 in form and substance satisfactory to the Bank; (c) the Bank has received satisfactory opinions of counsel for your Company, Principal and Sureties regarding the authorization for your Company to execute and perform the loan documents, the Principal to execute and perform the Note Purchase Option Agreement, and the Sureties to execute and perform the Bonds, the enforceability of the loan documents, the perfection and priority of the Bank's security interest and lien and related matters; (d) all representations and warranties made by your Company, the Principal and the Surety to the Bank shall be true and correct as of the date of the loan's funding; (e) as of the date of the loan's funding, your Company's, the Principal's and the Surety's business and industry are in a condition satisfactory to the Bank, your Company's and the Principal's present management and ownership have not changed, and no material adverse change from that reflected in the financial statements dated June 30, 1999 has occurred in the financial condition of your Company or Principal, and (f) as of the date of the loan's funding, there exists no event of default (or event with which notice or lapse of time or both could constitute an event of default) under the loan documents.

8.    Loan Documents. The Bank shall be furnished with such loan documents as the Bank shall deem necessary for its protection. All loan documents as well as all questions relating to the validity and priority thereof shall be determined by and shall be satisfactory to the Bank and the Bank's counsel. In this regard, the Bank designates Mr. Jim Lilly, Attorney At Law, Womble Carlyle Sandridge & Rice, PLLC as its counsel to prepare such loan documents. The Bank shall have the right to designate local counsel of its choice with respect to all matters involving the laws of the state in which such collateral is governed. The loan documents will include this commitment, notes evidencing Tranche One and Tranche Two of the loan (the "Notes"), the Surety Bonds, the Option Agreement, the Pledge Agreement and such other documents as the Bank shall deem necessary in order to document the loan and to create and perfect the security for the loan.

## Page 3

9.  Financial Information.  The loan documents will require that your Company furnish the Bank a continuous flow of financial information to include quarterly (within 30 days after the end of each calendar quarter) a balance sheet, income statement and cash flow statement prepared in accordance with generally accepted accounting principles, signed by a Company officer, and an annual audit (within 90 days after the end of each fiscal year) accompanied by a certificate regarding covenant compliance, prepared by a certified public accounting firm acceptable to the Bank.  Your Company shall also provide the Bank with such additional information as the Bank may request from time to time.

10.  Affirmative Covenants.  Your Company covenants and agrees that from the date hereof and until ment in full of the principal and interest on the Notes, unless the Bank shall otherwise consent in writing, your Company will:

(a) Maintain a Minimum Interest Coverage Ratio of 1.25X (tested on a rolling four-quarter basis).

(b) Maintain its corporate existence and conduct its business in substantially the same manner and substantially the same fields as such business is now conducted and maintained.

(c) Maintain at the Bank, pledged in form and substance satisfactory to the Bank, an Interest Reserve account, pursuant to paragraph #6, equal to a minimum of sixty (60) days interest on the loan.

(d) Pay dividends only for the payment of taxes.

(e) Establish its primary banking depository relationship with the Bank within thirty (30) days of closing the loan.

11.  Negative Covenant.  Until payment in full of the Notes and interest thereon, your Company covenants that it will not, without the prior written consent of the Bank, make any material change in ownership, executive staff or management of your Company or Principal, or in the manner in which its business is conducted.

12.  Defaults.  The Notes shall set forth defaults permitting acceleration of the maturity of the loan and pursuit of the remedies available under the loan documents and applicable law. Such defaults shall include, without limitation, any default in connection with the $18,000,000 construction loan facility provided by the Bank to Mulvaney, payment default, bankruptcy or insolvency, covenant violations, and failure of Swiss Reinsurance America Corporation to maintain a minimum long-term debt rating of AAA from Standard & Poor's and Aaa from Moody's Investors Service, Inc.

13.  Costs.  Your Company agrees to pay all of the costs, expenses, and fees incurred in connection with the negotiation, preparation for, and closing of the loan herein committed, whether or not the committed loan is closed, including but not limited to all legal fees including the fees of the Bank's counsel, license and permit fees, environmental assessment inspection report costs, intangible taxes, survey costs and filing fees.

14.  Non-Assignability.  This commitment is not assignable by your Company and no party other than your Company is entitled to rely on this commitment.

Page 4

15. Consequential Damages. In no event shall either your Company or the Bank be liable to the other for indirect, special, or consequential damages, including the loss of anticipated profits which may arise out of or are in any way connected with the issuance of this commitment.

16. Modifications. No condition or other term of this commitment may be waived or modified except by a writing signed by both your Company and the Bank. This requirement of a writing to waive or modify provisions of this commitment cannot itself be waived or otherwise negated by any agreement or other conduct of the parties, expressed or implied, other than by a writing to that effect signed by both parties.

17. Termination of Commitment. The Bank may terminate this commitment prior to the closing of the transactions contemplated hereby by notice in writing to your Company, in the event that: (a) your Company, Principal or either Surety shall fail or refuse to comply in a timely manner with any of the terms, provisions or conditions of this commitment or the other loan documents; (b) the Bank determines in its sole discretion that a material adverse change has occurred in the financial condition of your Company, Principal or either Surety; (c) any of the information, data, representations, exhibits and other materials submitted to the Bank by your Company, Principal or either Surety contain any inaccuracy or misrepresentation or shall omit to set forth any information that is material to the completeness and accuracy of such information, data, representations, exhibits and other materials or to the Bank's decision to issue this commitment; or (d) any default by your Company to the Bank or any third party shall occur or exist, including but not limited to the Bank's $18,000,000.00 construction loan facility to Mulvaney. Upon giving of such notice by the Bank, the obligations and liabilities of the Bank under this commitment shall cease and terminate without further act and all notes shall become due and payable.

18. Applicable Law. This commitment shall be interpreted, construed, enforced, and governed by the laws of the State of North Carolina.

**Page 5**

Upon return by your Company to the Bank of a fully-executed copy of this commitment before its expiration date of January 10, 2000, this commitment will be considered accepted and will constitute an agreement obligating the Bank to make and your Company to accept the loan in accordance with the terms and conditions set forth above. If the executed copy is not received by the Bank by the expiration date noted above, this commitment shall be considered null and void. If this commitment is accepted by your Company, it must be closed by January 31, 2000, or it may be considered null and void at the option of the Bank. Time is of the essence.

Very truly yours,

Kenneth M. Harris
Senior Vice President

Accepted this 5 day of January, 2000.

ALH II, Inc.

By:_____

Title: Secretary

Accepted Copy Received by Bank
Date: _____
By: _____

CommitmentLetterALH II_5_2000