# EXHIBIT L



140 Broadway , 21st Floor
New York City, NY, 10005-1101

02/09/2000

ALH Holdings, LLC
489 Fifth Avenue, 28th Floor
New York, NY  10017

In Re:   Collateral Receipt No. 1250038801
              (Various bonds including bond number 125002282          )

Enclosed are two (2) copies of Collateral Receipt number  1250038801
in addition to our current policy regarding the release of said collateral.  In order to properly process your collateral
and to insure that its release will be executed in as timely a manner as possible, please make sure the following is
completed:

        Review and sign both copies of the Collateral Receipt, keeping the "Collateral Owner" copy for your records.

        Verify and sign enclosed W-9 form.

        Review and sign the Notice to Owner of Collateral.

        Return the "SURETY" copy of the Collateral Receipt, W-9 form and Notice to Owner of Collateral in the
        envelope provided.

Please return all required information within five (5) days of receipt.  Retain your copy of the Collateral Receipt; it
will be required upon release of the collateral.  Please do not hesitate to call if you have any questions regarding
this matter.

Yours truly,

Edward V. Mahoney
Amwest Surety Insurance Company

BK 0349R (9/76)

## IRREVOCABLE STOCK POWER

**For value received** ____ALH Holdings, LLC____

hereby sell, assign and transfer unto ___Amwest Surety Insurance Company___

<u>One Hundred</u>                              (100)

| | |
|---|---|
| (Name of Transferee) | (Number of Shares) |

Shares of the____Common____

(If Common or Preferred state which)

Capital Stock of the ____ALH II, Inc.____

(Name of Corporation)

standing in____ALH Holdings, LLC____

name on the books of said ____ALH II, Inc.____

represented by Certificate No.____1____

herewith, and do hereby irrevocably constitute and appoint_____

_____attorney to

(This space must be left blank)

transfer the said stock on the books of the within named Company with full Power of Substitution in

the premises.

Dated ____14 January 2000____

ALH Holdings, LLC

(Witness only signs here)

Its **Managing Member**

(Person executing this power signs here)

Signature Guaranteed by :

**READ CAREFULLY:**

The signature to this assignment must correspond with the name as written upon the face of the certificate(s) in every particular without alteration or enlargement or any change whatever. The signature of the person executing this power must be guaranteed by a bank, trust company, or member of the New York Stock Exchange.



**P.O. Box 4500**
**Woodland Hills, CA 91365-4500**

CSRA No.:   **1250038801**

## COLLATERAL SECURITY RECEIPT AND AGREEMENT

Various bonds including Bond No. **125002282**   in the amount of **$13,194,000.00**   Dated   **02/09/2000**

Principal   **ALH Holdings, LLC**

Address   **489 Fifth Avenue, 28th Floor , New York, NY 10017**
No., Street, City, State, Zip

Owner of
Collateral Security   **ALH Holdings, LLC**    SSN # or Tax I.D.

Address   **489 Fifth Avenue, 28th Floor , New York, NY 10017**    **(212) 867-6363**
No., Street, City, State, Zip    Phone

Owner of
Collateral Security    SSN # or Tax I.D.

Address    Phone
No., Street, City, State, Zip

Owner of
Collateral Security    SSN # or Tax I.D.

Address    Phone
No., Street, City, State, Zip

Amwest Surety Insurance Company and/or Far West Insurance Company (hereinafter called Surety) acknowledges receipt of the following security from the party(ies) designated above as Owner(s), deposited with Surety for the benefit of Surety and its co-sureties, reinsurers, successors and assigns, for good consideration and under the agreements and upon the conditions hereinafter stated:

Collateral Type:   **STOCK**

Amount (if other than Trust Deed or Mortgage):   **N/A**

ILOC Approval #:

Collateral Description:   **100 Shares of Common Stock / Issuer: ALH II, Inc. / Owner: ALH Holdings, LLC**

### This is a legal document. Read it carefully before you sign it.

Signed, sealed and dated at   **New York City, NY,**    this day of   **02/09/2000**

Witness:

ALH Holdings, LLC by ~~~~
~~~~
Owner

by:   ~~~~
Owner

Branch Office   **New York City**    By   ~~~~
Edward V. Mahoney    Attorney-In-Fact

(continued on next page)

Collateral Owner's Copy

CSRA No.  1250038801        **AGREEMENT AND CONDITIONS OF DEPOSIT:**        PAGE TWO OF TWO PAGES
                                              (continued)

**1. INTEREST PAID ON COLLATERAL SECURITY**

If the collateral security pledged herein is in the form of cash deposited with the Surety, the Surety agrees to pay the owner of the collateral security interest of _n/a_ % per annum, compounded monthly on a 360/365 basis upon release of this collateral security. If the collateral security pledged is in the form of a Letter of Credit, upon conversion of such Letter of Credit to cash, the surety shall not pay any interest on such funds. It is further understood that the Surety may, at its discretion, invest such cash collateral security, in any investment it deems proper, and that the income received on this investment may be greater than or less than the interest paid to the owner of the collateral security.

**2. COLLATERAL INFORMATION RELEASE**

By signing this collateral receipt, the collateral owner authorizes the Surety to periodically confirm the status of the stated collateral with the designated financial institution.

**3. PURPOSE OF COLLATERAL SECURITY DEPOSIT**

The collateral security, together with income thereon, is pledged and deposited with Surety as security:

Against any and all demands, liabilities, losses, costs, charges described herein below, damages, attorneys' fees and expenses of whatever kind or nature which arise by reason of, or in consequence of, the execution by the Surety of any Bond on behalf of the Principal and whether or not the Surety shall have paid any sums in partial or complete payment thereof, including but not limited to: sums paid including interest, or liabilities incurred in settlement of claim: expenses paid or incurred in connection with claims, suits, or judgments under such Bonds; expenses paid or incurred in enforcing the terms of this Agreement; expenses paid or incurred in procuring or attempting to procure release from liability under its Bond by Surety; expenses incurred in recovering or attempting to recover losses or expenses paid or incurred; attorneys' fees (including in-house attorney fees) and all legal expenses related to any items hereunder; investigation, accounting or engineering services; adjustment of claims.

**4. SURETY'S RIGHT TO USE, APPLY OR SELL COLLATERAL SECURITY**

To accomplish the purposes of such deposit, Surety is authorized, at any time and without notice or legal process, to use said collateral security, and to apply the same to payment of or reimbursement for losses, costs or damages, expenses, attorneys' fees, premiums or liabilities, as it may elect; and, at its option and in its sole discretion, to sell any of said collateral security at public or private sale to itself or to any other person, or to deposit, invest, convert, cash, exchange, renew or dispose of said collateral security or the proceeds thereof in any manner, in such form and on such terms as it deems proper. The rights given to Surety under this agreement shall be in addition to, and not in limitation of, any other rights which Surety may have, including rights under any separate agreements.

**5. OWNER'S REPRESENTATION OF OWNERSHIP**

Owner represents himself to be the sole owner of said collateral security, and agrees to save Surety harmless from any loss, costs, expenses or attorneys' fees arising from claims to any part thereof by any persons claiming adversely to Owner.

**6. DEPRECIATION OF COLLATERAL SECURITY**

If the collateral security shall, by reason of depreciation below its market value as of the time of deposit, become insufficient for Surety's protection, owner shall, upon demand, deposit additional collateral security, satisfactory to Surety, of a value at least equal to the amount of such depreciation.

**7. SURETY'S LIABILITY FOR LOSS OR DEPRECIATION OF COLLATERAL SECURITY**

Surety shall not be liable for any loss or depreciation of the collateral security or the proceeds thereof, or damage thereto, unless caused by gross negligence of Surety's officers or employees. In connection with any certificate of deposit or any other instrument evidencing the deposit of money with any person, firm or corporation included in the collateral security, it is understood that Owner has selected the depository, and assumes full responsibility for the safety of the deposited funds.

**8. SUBSTITUTION OF COLLATERAL SECURITY**

It is hereby acknowledged that any additional and/or substitute security subsequently pledged as collateral on behalf of the above principal is subject to the terms of this collateral security receipt and agreement.

**9. ADDITIONAL FEES FOR SUBSTITUTION, SUBORDINATION, OR EARLY RELEASE OF COLLATERAL SECURITY**

Should the undersigned:

    A. Request Surety to accept substitute collateral in place of collateral previously pledged;

    B. Request Surety to subordinate its previously secured interest in real property;

    C. Request Surety to release collateral before the Surety has been discharged from all liability under its bonds, (such requests involve the reunderwriting of the principal's account(s) ); or

    D. Request a change or alteration, in any matter, of the existing collateral;

then the undersigned agrees to pay, in advance, to Surety a nonrefundable file initiation and processing fee of $250.00. The undersigned shall also pay Surety any expenses incurred in acting upon the request. It is understood that Surety is under no obligation to comply with any of the requests if in the opinion of the Surety, after its investigation into the matter, such request would not be in its best interest and none of the fees paid shall be refundable nor shall the undersigned be relieved of the liability for their payment.

**10. ADDITIONAL FEES FOR "NOTICE OF DEFAULT" OR "NOTICE OF TRUSTEE SALE"**

If the collateral posted under this agreement is a security interest in real property, the undersigned agrees to pay a file initiation and processing fee of $250.00 plus any actual expenses incurred by Surety for every "Notice of Default" the Surety receives on any other security or encumbrance relating to the subject property. It is further agreed that an additional file initiation and processing fee in the sum of $500.00 plus any actual expenses incurred, will be paid to Surety for every "Notice of Trustee Sale" or any other notice of involuntary sale received by the Surety relating to the subject property.

**11. ADDITIONAL FEE FOR FAILURE TO RENEW LETTER OF CREDIT**

If the security pledged herein is in the form of an irrevocable Letter of Credit, it is the responsibility of the undersigned to provide the Surety with a notice of renewal of that Letter of Credit at least thirty (30) days prior to its maturity date. This responsibility of the undersigned shall continue for every renewal period unless the undersigned receives written notification from Surety that no renewal will be required thereafter. Should the undersigned fail to provide a notice of renewal to Surety within the time allowed under this paragraph then the undersigned agrees to pay a non-refundable processing fee of $250.00 to the Surety and any other actual expenses incurred by Surety in obtaining such a renewal. In addition to this fee, the Surety may exercise its right to draw on the Letter of Credit.

**12. RELEASE OF COLLATERAL SECURITY**

Upon receipt of written evidence satisfactory to Surety of its discharge from all liability under such bonds, and of ownership of the collateral security by the applicant (it being recognized that differences of opinion with regard to proof of ownership and of termination of liability, require the giving of considerable latitude to Surety in that determination of what evidence is reasonable), and of payments of all amounts due as provided herein, Surety shall, within a reasonable time, return said collateral security or the proceeds thereof, less any deductions pursuant to the terms of this agreement, to the account of the party then designated as Owner.

**13. AGREEMENT NON ASSIGNABLE OR TRANSFERABLE**

THIS RECEIPT IS NOT ASSIGNABLE OR TRANSFERABLE EXCEPT UNDER CONSENT OF AN AUTHORIZED OFFICER OF SURETY.

**14.** This Agreement shall in no manner alter the General Indemnity Agreement (GIA) executed by the undersigned(s). All provisions of the GIA shall remain in full force and effect. By entering into this Agreement, and providing the collateral as described in this Agreement, the Principal and Indemnitors agree that Surety has made no promise that it will issue any additional bonds nor that it will issue any final bonds for pending bid bonds, and that any future bonds that the Surety considers on behalf of Principal and Indemnitors will be approved only if such bonds meet the underwriting criteria then in effect at the time the bond is underwritten by the Surety.

CO-A8002 (12/99)

 **Amwest**

## NOTICE TO OWNER OF COLLATERAL

### RE: Collateral Release Procedure

The following is our policy for releasing collateral you have placed with us:

**CONTRACT PERFORMANCE AND LABOR AND MATERIAL PAYMENT BONDS**
A. Collateral will be retained by Surety for a minimum of ninety (90) days after the date the obligee has accepted the contract(s) as satisfactorily completed.

B. When ninety (90) days after acceptance have elapsed, Surety will consider processing the release of collateral if the following conditions are met:

    1. No claim has been made against any bond(s).

    2. Principal has given us an affidavit stating that all suppliers of labor and materials, subcontractors and taxing authorities have been paid.

    3. Principal has fulfilled all obligations under the terms of the bonded contract(s).

    4. Obligee has submitted a written statement to Surety, dated ninety (90) days from acceptance, that the contract(s) was/were accepted as complete and there are not unpaid suppliers of labor or materials (all payment obligations have been met).

If the above conditions are completed, the branch location will proceed with the release of your collateral by submitting a Release Request Form ("Form") to the Home Office. The Form will incorporate information and documentation processed by the branch pertaining to your bonding obligations. Upon receipt of this completed Form, the Home Office will approve and authorize the release of your collateral within a reasonable time frame.

**LICENSE, PERMIT AND COURT BONDS**
A. Surety will retain collateral posted as security for a minimum of __90 Days__ after acceptance of the cancellation notice by the obligee or until exoneration from the court.

B. Upon expiration of __90 Days__ from acceptance by the obligee or exoneration from the court, surety will consider processing the release of the collateral posted if the following conditions are met:

    1. No claim has been made against any bond(s) for which the collateral was posted.

    2. Principal shall have fulfilled all of his obligations under the terms of the bond.

By placing your signature below, you understand that a release of collateral will only be considered after compliance with the above terms, and that this arrangement is fully understood by you and you agree to these terms.

Thank you.

Date: __02/09/2000__

Owner of Collateral Sign Here: _____

Name of Principal: __ALH Holdings, LLC__

Collateral Receipt Number: __1250038801__

Bond Number: __125002282__

# Amwest

**Amwest Surety Insurance Company**

Woodland Hills, California

**COMMERCIAL SURETY
GENERAL INDEMNITY
AGREEMENT**

This Agreement of Indemnity, made and entered into this ___4th___ day of ___January___ ___2000___ 19___ is executed by the Undersigned for the purpose of indemnifying from all losses and costs of any kind AMWEST SURETY INSURANCE COMPANY AND FAR WEST INSURANCE COMPANY, herein referred to as "Surety", in connection with any Bonds for which AMWEST SURETY INSURANCE COMPANY AND FAR WEST INSURANCE COMPANY now or hereafter become Surety for any of the following as Principal: **ALH HOLDINGS, LLC ANY COMPANY WHICH IS SUBSIDIARY TO ALH HOLDINGS, LLC (WHEHER NOW OR HEREAFTER CREATED OR ACQUIRED); ANY PERSON OR ENTITY FOR WHOM ALH HOLDINGS, LLC REQUESTS A BOND OR BONDS.**

In consideration of the execution of any such Bonds for Principal and as an inducement to such execution by Surety, the Undersigned, jointly and severally, agree as follows:

1.  **DEFINITIONS** – The following definitions apply in this Agreement:

    **Bond:** Any contractual obligation undertaken by Surety for Principal, before or after the date of this Agreement and any renewal or extension of said obligation.

    **Principal:** The person(s) or entity(ies) set forth above or any one of them or any combination thereof, or their successors in interest, whether alone or joint venture with others named herein or not.

    **Surety:** AMWEST SURETY INSURANCE COMPANY, FAR WEST INSURANCE COMPANY and any of their affiliates, subsidiaries or reinsurers, and any other person(s) or entity(ies) which the Surety may procure to act as a Surety or as a Co-Surety on any Bond, or any other person or entity who executes a Bond at the request of Surety.

2.  **INDEMNITY**

    a.  Undersigned agrees to pay to Surety upon demand:

        (i)  all losses, costs, damages, attorneys' fees and expenses of whatever kind or nature which arise by reason of, or in consequence of, the execution by the Surety of any Bond on behalf of the Principal.

        (ii)  an amount sufficient to discharge any claim made against Surety on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any Bond.

        (iii)  any premium due for any Bond; at a rate equal to that charged by the Surety for such Bonds; and for any renewal premiums until such time as adequate proof is presented to the Surety discharging it from any further liability.

    b.  Regarding claims against Surety:

        (i)  Surety shall have the exclusive right for itself and the Undersigned to determine whether any claim or suit upon any Bond shall on the basis of liability, expediency or otherwise, be paid, compromised, defended or appealed.

        (ii)  Surety shall have the right to incur such expenses in handling a claim as it shall deem necessary including but not limited to the expenses for investigative, technical and legal services.

        (iii)  Surety shall have the foregoing rights irrespective of the fact that the Undersigned may have assumed or offered to assume the defense of the Surety upon such claim. In any claim or suit hereunder, an itemized statement of the aforesaid losses and expenses, sworn to by an officer of the Surety or the vouchers or other evidence of disbursement by Surety shall be prima facie evidence of the fact and extent of the liability hereunder of the Undersigned.

        (iv)  Repeated actions may be maintained by Surety on this instrument as breaches of it occur without any former action operating as a bar to any subsequent action.

        (v)  Undersigned shall authorize Surety to join any and all of the Undersigned as defendants in any action, regardless of venue, against the Surety on account of any Bond, and to enforce the obligations hereunder directly against any of the Undersigned and without the necessity of first proceeding against the Principal.

3.  **GENERAL PROVISIONS**

    a.  Surety may consent or refuse to consent in changes to a Bond, but either action shall not affect the obligations of the undersigned under this Agreement.

    b.  Surety shall have the right, at its option and in its sole discretion, to issue or cancel or decline the execution of any Bond, or renewal thereof.

    c.  Until Surety has been furnished with conclusive evidence of its discharge without loss from any Bonds, and until Surety has been otherwise fully indemnified as hereunder provided, Surety shall have right of free access to the books, records and accounts of the Undersigned for the purpose of examining and copying them. The Undersigned hereby authorize third parties, including but not limited to depositories of funds of the Undersigned, to furnish to Surety any information requested by Surety in connection with any transaction. Surety may furnish any information, which it now has or may hereafter acquire concerning the Undersigned, to other persons, firms or entities for the purpose of procuring co-suretyship or reinsurance or of advising such persons, firms, or entities as it may deem appropriate.

Form ComIGIA1 (7/19/95) Ω

d.   Surety shall have every right, defense, or remedy which a personal Surety without compensation would have, including the right of exoneration, and the right of subrogation.  Undersigned will, upon the request of the Surety, procure the discharge of Surety from any Bond and all liability by reason thereof.  If such discharge is unattainable, Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such Bond or Bonds, or make provisions acceptable to Surety for the funding of the bonded obligation(s).  Undersigned warrants that each of them is specifically and beneficially interested in obtaining each Bond and agree to pay the initial, renewal, and additional premiums thereon according to the Surety's current rate manual or rate filings recognizing that the initial premium is fully earned upon execution of each Bond.  If the execution of this Agreement by any of the Undersigned shall be found defective or invalid for any reason, such defect or invalidity shall not affect the validity of this Agreement with respect to any other of the Undersigned.  The invalidity of any provision of this Agreement by reason of the law of any state or by any other reason shall not affect the validity of any other provision of this Agreement.

e.   Liability of Undersigned hereunder shall not be affected by:

   (i)   the failure of the Principal to sign any Bond;

   (ii)  any claim that other indemnity or security was to have been obtained;

   (iii) the release of any indemnity; and

   (iv)  the return or exchange of any collateral that may have been obtained.

f.   This Agreement may not be changed or modified orally.  No change or modification shall be effective unless specifically agreed to in writing.  Surety shall have the right to fill in any blanks left herein and to correct any errors by filling in any blanks herein.

4.  **TERMINATION** -- This Agreement is a continuing obligation of Undersigned unless terminated by written notice to Surety as provided hereafter.  In order to terminate liability as to future Bonds of Principal, Undersigned must:

a.   give written notice of such termination by means of certified mail to Surety at its office as listed above; and

b.   state in such notice the effective date (not less than thirty days after receipt thereof by Surety) of termination of such Undersigned's liability for future Bonds.  After the effective date of such termination by giving notice, Undersigned shall nonetheless be liable hereunder for Bonds executed or authorized prior to such date and renewals, substitutions and extensions thereof.  Such termination of liability as to an Undersigned shall in no way affect the obligation of any other Undersigned who has not given notice as herein provided.

**CORPORATIONS** — To be signed and attested to by authorized officers of the corporation

Attest: _____   By: _____ (SEAL)
Print Name                              Print Name
And Title                               And Title

Attest: _____   By: _____ (SEAL)
Print Name                              Print Name
And Title                               And Title

Attest: _____   By: _____ (SEAL)
Print Name                              Print Name
And Title                               And Title

Attest: _____   By: _____ (SEAL)
Print Name                              Print Name
And Title                               And Title

Attest: _____   By: _____ (SEAL)
Print Name                              Print Name
And Title                               And Title

**PARTNERSHIPS** — To be signed by Partner (or General Partner if a Limited Partnership)

ALH HOLDINGS, LLC

By: _____   By: _____
Print Name                              Print Name
And Title    Jonathan Zich              And Title
             Managing Member

By: _____   By: _____
Print Name                              Print Name
And Title                               And Title

**INDIVIDUALS** — Including Proprietorships

By: _____   By: _____
Print Name                              Print Name

By: _____   By: _____
Print Name                              Print Name

By: _____   By: _____
Print Name                              Print Name

By: _____   By: _____
Print Name                              Print Name

**ALL SIGNATURES MUST BE NOTARIZED**

Form Com/GIA1 (7/19/95) Ω

**ACKNOWLEDGEMENTS**

State of _New York_

County of _New York_

On _1/4/2000_ before me, _David M. Hartman_ (here insert name) Notary Public,

personally appeared _Jonathan Zick_, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _David M. McGee_

DAVID M. HARTMAN
NOTARY PUBLIC, State of New York
No. 02HA5022008
Qualified in Westchester County
(Seal) Commission Expires January 18, 200_

---

State of _____

County of _____

On _____ before me, _____ (here insert name) Notary Public,

personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

---

State of _____

County of _____

On _____ before me, _____ (here insert name) Notary Public,

personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

---

State of _____

County of _____

On _____ before me, _____ (here insert name) Notary Public,

personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

---

State of _____

County of _____

On _____ before me, _____ (here insert name) Notary Public,

personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

State of _____

County of _____

On_____ before me, _____ (here insert name) Notary Public,

personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____     (Seal)

---

State of _____

County of _____

On_____ before me, _____ (here insert name) Notary Public,

personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____     (Seal)

---

**ACKNOWLEDGEMENTS**

State of _____

County of _____

On_____ before me, _____ (here insert name) Notary Public,

personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____     (Seal)

---

State of _____

County of _____

On_____ before me, _____ (here insert name) Notary Public,

personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____     (Seal)

---

State of _____

County of _____

On_____ before me, _____ (here insert name) Notary Public,

personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____     (Seal)

FROM KENNEDY, COVINGTON,    LOBDELL & HICKMAN    (MON) 2. 7' 00 17:40/ST. 17:36/NO. 4800000551 P 10

Bond No. <u>125002284</u>

KNOW ALL MEN BY THESE PRESENTS, that ALH Holdings, LLC, a limited liability company organized and existing under the laws of the State of Delaware (hereinafter called the "Principal") as Principal, and Swiss Reinsurance America Corporation, a corporation organized and existing under the laws of the State of New York (hereinafter called the "Swiss Re"), and Amwest Surety Insurance Company, a corporation duly existing under the laws of the State of Nebraska, (hereinafter collectively referred to as "Amwest" ; Swiss Re and Amwest (hereinafter individually called "Surety" and collectively referred to the "Sureties"), as Co-Sureties are held and firmly bound jointly and severally, unto Wachovia Bank, N.A., a national banking association organized and existing under the laws of the United States (the "Obligee") in the penal sum of Fourteen Million Eight Hundred Six Thousand Dollars ($14,806,000.) to the payment of which sum well and truly to be made, the said Principal and Sureties, bound ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, the Principal is required to provide to the Obligee a surety bond to guarantee that the payment of the purchase price by the Principal required to purchase from the Obligee the "Notes" as described in and pursuant to paragraph A of that certain Note Purchase Agreement dated the 13th day of January, 2000 (hereinafter called the "Agreement") by and among the Principal, the Obligee and ALH II, Inc. a Delaware

Corporation (hereinafter referred to as the "Company") will be made in accordance with the terms of the Agreement.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH THAT IF, during the term of this bond, the Principal shall fully pay all amounts as are required by the Agreement, then this bond shall be null and void, otherwise, to remain in full force and effect.

PROVIDED, HOWEVER, THAT THIS BOND IS EXECUTED BY THE SURETIES AND ACCEPTED BY THE OBLIGEES SUBJECT TO THE FOLLOWING CONDITIONS:

1.  The term of this bond shall be from January 13, 2000 to April 16, 2003.

2.  Obligee's acceptance of this bond will constitute Obligee's agreement to repay to Sureties the funds paid by Sureties to Obligee hereunder and not used in satisfaction of or reimbursement of any payments due to Obligee under the Agreement.

3.  It is understood and agreed that if the Principal fails to make such payments as required by the Agreement, then the Sureties, jointly and severally, shall pay to the Obligee the full amount of this bond less any amounts previously paid to the Obligee in respect to amounts due to it under the Agreement.

4.  Sureties hereby undertake, jointly and severally, to pay any amounts up to the limit of $14,806,000 within ten (10) business days of the Obligee presenting to it at the office of Amwest Surety Insurance Company, 140 Broadway, New York, New York 10005 a duly completed Letter of Notification, attached hereto as Exhibit A, either personally, by facsimile transmission (with an original forwarded thereafter by first class mail), or by registered or certified mail, postage prepaid, return receipt requested, duly executed by an officer of the Obligee duly authorized to make such presentment so long as such notification is made on or before the termination date of this Bond as provided in Section 1 above. Any number of Letters of Notification may be presented hereunder, not exceeding $14,806,000 in the aggregate. Neither the Principal nor the Sureties shall have any right to terminate or amend this Bond without prior written consent of the Obligee.

5.  Each Surety's obligations under this bond are absolute and not subject to any agreement, condition or qualification and are not contingent on the ability of

FROM KENNEDY, COVINGTON,    LOBDELL & HICKMAN    (MON) 2. 7'00 17:40/ST. 17:36/NO. 4800000551 P 12

either Surety to obtain reimbursement with respect to any payments required to be made.

6.  Each Surety's obligation under this bond shall be payable without diminution because of the insolvency of the Company, the Principal, either Surety or any other person. In the event that the Company, the Principal or either Surety, is prohibited from making a payment to the Obligee by reason of any applicable law, rule, regulation, decree, judgement or order of any governmental authority (including any such decree, judgement or order issued pursuant to any proceeding in bankruptcy or reorganization or otherwise), each Surety hereby jointly or severally, agrees that (without in any way limiting the obligations of either Surety hereunder) the Obligee may demand and such Surety shall make payment of any amount demanded hereunder to the Obligee.

7.  The obligations of Sureties hereunder are irrevocable, absolute and unconditional, irrespective of the value, genuineness, validity, regularity or enforceability of the obligations of the Principal, or the Company, to the Obligee or of any agreement or instrument referred to herein or in any Letter of Notification delivered pursuant hereto, or any substitution, release or exchange of any other guaranty of or security for any obligations of the Principal, or the Company, to the Obligee, and, to the fullest extent permitted by applicable laws and governmental rules and regulations, irrespective of any other circumstances whatsoever which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor, it being the intent of this bond that the obligations of each Surety hereunder shall be absolute and unconditional under any and all circumstances. To the fullest extent permitted by applicable laws, government rules and regulations, the obligations of each Surety hereunder shall not be subject to any abatement, reduction, limitation, impairment, termination, setoff, defense, counterclaim or recoupment whatsoever or any right to any thereof, and shall not be released or discharged. Without limiting the generality of the foregoing, it is agreed that, to the fullest extent permitted by applicable laws, government rules and regulations, the occurrence of any one or more of the following (with or without notice to either Surety) shall not alter or impair the liability of either Surety hereunder, which shall remain absolute and unconditional as described above:

    (a)  at any time or from time to time, the time for any performance of or compliance with any obligation of the Principal or the Company to the Obligee shall be extended, or such performance or compliance shall be waived;

    (b)  the maturity of any obligation of the Principal or the Company to the Obligee shall be accelerated, or shall be modified, supplemented or amended in any respect, or any right under any agreement or instrument referred to herein or in any Letter of Notification delivered pursuant hereto shall be waived or any other guaranty or any security for any obligation of

the Principal or the Company to the Obligee shall be released or exchanged in whole or part or otherwise dealt with:

(c)     any lien or security interest as security for any obligation of the Principal or the Company or the Co-Obligee to the Obligee shall fail to be perfected; and

(d)     this bond or any document referred to herein or in the Letter of Notification delivered pursuant hereto shall be rejected in any bankruptcy, insolvency or similar proceeding (nothing herein being a concession that any obligation hereunder or thereunder is properly classified as an executory obligation).

To the fullest extent permitted by applicable laws, government rules and regulations, each Surety hereby expressly waives diligence, presentment, demand of payment, protest and all notices whatsoever, and any requirement that the Principal of the Obligee exhaust any right, power or remedy or proceed against any person.

8.     This Bond shall be subject to and governed by the laws of the State of California

9.     Each Surety will make all payments to be made by it hereunder by wire transfer in immediately available funds to the account entitled ALH Holdings, LLC Bond Account maintained by the Principal with the Obligee at Wachovia Bank N.A. 400 South Tryon Street Charlotte, NC 28231 Routing Number and Transit Number: 053000183 Account Number: 1860049252 , or to such other account and/or address as the Obligee may from time to time specify in a written notice to Sureties.

10.    In no event shall the Sureties' aggregate liability to the Obligee under this bond exceed the penal sum of this bond.

IN WITNESS WHEREOF, the undersigned have set their hand and seal this 13th day of

January, 2000.



ALH HOLDINGS, LLC

By:_____

                                          , Principal

SWISS REINSURANCE AMERICA

CORPORATION

By: _____

Douglas J. Paterson, Attorney-in-Fact


AMWEST SURETY INSURANCE COMPANY


By: _____

**Daniel P. Aguilar**  , Attorney-in-Fact


ALH HOLDINGS, LLC
By its sole Manager, LION ALH CAPITAL LLC,
By its sole Manager, LION & LAMM CAPITAL LLC,

By: _____
     Jonathan Zich, Member

## Exhibit A

Amwest Surety Insurance Company and Swiss Reinsurance Corporation Bond No. <u>125002284</u>

Ladies and Gentlemen:

Reference is made to Amwest Surety Insurance Company and Swiss Reinsurance America Corporation Bond No. <u>125002284</u> dated January 13, 2000 (the "Bond") issued by you by order and for ALH HOLDINGS, LLC (the "Principal").

The undersigned, a duly authorized representative of Wachovia Bank, N.A. (the "Obligee") under Amwest Surety Insurance Company and Swiss Reinsurance America Corporation Bond No. <u>125002284</u> certifies that:

1.     The Obligee is the beneficiary of the Bond and the Obligee is entitled to demand payment          hereunder.
2.     The amount due is, as of the date hereof, equal to _____
($_____ ) in        accordance with the Note Purchase Agreement.
3.     The amount hereby demanded, when added to all other amounts paid to the Obligee under Amwest Surety Insurance Company and Swiss Reinsurance America Corporation Bond No. <u>125002284</u>, if any, does not exceed Fourteen Million Eight Hundred Six Thousand Dollars ($14,806,000.).

Accordingly, please pay the amount stated in this certificate in accordance with the terms of Amwest Surety Insurance Company and Swiss Reinsurance America Corporation Bond No. <u>125002284</u>.

IN WITNESS WHEREOF, the undersigned has executed this payment certificate on
_____

WACHOVIA BANK, N.A.,
as Obligee

_____
BY:
TITLE

FROM KENNEDY, COVINGTON, LOBDELL & HICKMAN    (MON) 2. 7' 00 17:42/ST. 17:36/NO. 4800000551 P 16

**Swiss Re America**

## Power of Attorney

**Know all Men by these Presents:** That the Swiss Reinsurance America Corporation, a Corporation organized under the laws of the State of New York, having its principal office in the City and State of New York, pursuant to the following By-Law, which was adopted by the Stockholders of the said Corporation on May 2, 1978, and amended September 10, 1990, to wit:

Article III, Section 9. Execution of Contracts: (c) All contracts for fidelity and surety coinsurance shall be signed by an attorney-in-fact appointed under a written instrument signed, whether manual or facsimile, by the president or, if authorized by the president to make such appointment, by an elected officer, and attested by another officer of the Corporation, and such attorney-at-fact shall have power to cause the corporate seal or a facsimile thereof to be impressed or affixed.

does hereby nominate, constitute and appoint    Douglas J. Paterson, Ralph V. Pulver

Mary Scheiner and Michael J. Lahn of Calabasas, California, each in

his/her individual capacity as

its true and lawful attorney(s)-in-fact, to make, execute, seal and deliver for and on its behalf, and as its act and deed: any and all bonds, undertakings or obligations in co-suretyship with

Amwest Surety Insurance Company of Calabasas, California

whether or not there are other co-sureties, wherein the co-surety participation of Swiss Reinsurance America Corporation does not exceed    Twenty Million——————————————————————————

Dollars ($ 20,000,000   ) and reserving to itself full power of substitution and revocation.

The execution of such contracts in pursuance of these presents shall be binding upon said Corporation, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the Corporation at its office in New York, New York, in their own proper persons.

This Power of Attorney shall expire and all authority hereunder shall terminate without notice at midnight (Standard Time where said Attorney(s)-in-Fact is authorized to act), December 31, 2000

In Witness Whereof, the Swiss Reinsurance America Corporation has caused its corporate seal to be hereunto affixed and these presents to be signed by its Member of Senior Management this 27th    day of    December    in the year one thousand nine hundred and Ninety-Nine

Swiss Reinsurance America Corporation

By _____
Member of Senior Management

_____
Corporate Secretary

FROM KENNEDY, COVINGTON,    LOBDELL & HICKMAN    (MON) 2. 7' 00 17:42/ST. 17:36/NO. 4800000551 P 17

# LIMITED POWER OF ATTORNEY
## *Amwest Surety Insurance Company*
## *Far West Insurance Company*

| Expiration Date: | 06/09/00 | POWER NUMBER | 0000893147 |
|---|---|---|---|

This document is printed on white paper containing the artificial watermarked logo ( ) of Amwest Surety Insurance Company on the front and brown security paper on the back. Only unaltered originals of the Limited Power of Attorney ("POA") are valid. This POA may not be used in conjunction with any other POA. No representations or warranties regarding this POA may be made by any person. This POA is governed by the laws of the State of Nebraska and is only valid until the expiration date. Amwest Surety Insurance Company and Far West Insurance Company (collectively the "Company") shall not be liable on any limited POA which is fraudulently produced, forged or otherwise distributed without the permission of the Company. Any party concerned about the validity of this POA or an accompanying Company bond should call your local Amwest branch office at (818) 871-2000

KNOW ALL BY THESE PRESENT, that Amwest Surety Insurance Company, a Nebraska corporation and Far West Insurance Company, a Nebraska corporation (collectively the "Company"), do hereby make, constitute and appoint:
    Daniel P. Aguilar
    As Employee of Amwest Surety Insurance Company

its true and lawful Attorney-in-fact, with limited power and authority for and on behalf of the Company as surety to execute, deliver and affix the seal of the company thereto if a seal is required on bonds, undertakings, recognizances, reinsurance agreement for a Miller Act or other performance bond or other written obligations in the nature thereof as follows:
    All Bonds up to $25,000,000.00

and to bind the company thereby. This appointment is made under and by authority of the By-Laws of the Company, which are now in full force and effect.

I, the undersigned secretary of Amwest Surety Insurance Company, a Nebraska corporation and Far West Insurance Company, a Nebraska corporation, DO HEREBY CERTIFY that this Power of Attorney remains in full force and effect and has not been revoked and furthermore, that the resolutions of the Board of Directors of both Amwest Surety Insurance Company and Far West Insurance Company set forth on this Power of Attorney, and that the relevant provisions of the By-Laws of each company, are now in full force and effect.

Bond No. **125002284**    Signed & sealed this **13th** day of **January**, **2000**    *Karen G. Cohen*
                                                                                                    Karen G. Cohen, Secretary

• • • • • • • • • • • • • • • **RESOLUTIONS OF THE BOARD OF DIRECTORS** • • • • • • • • • • • • • • • • • • • •

This POA is signed and sealed by facsimile under and by the authority of the following resolutions adopted by the Board of Directors of Amwest Surety Insurance Company at a meeting duly held on December 15, 1975 and Far West Insurance Company at a meeting duly held on July 28, 1983:
    RESOLVED, that the President or any Vice President, in conjunction with the Secretary or any Assistant Secretary, may appoint attorneys-in-fact or agents with authority as defined or limited in the instrument evidencing the appointment in each case, for and on behalf of the Company, to execute and deliver and affix the seal of the Company to bonds, undertakings, recognizances, and suretyship obligations of all kinds; and said officers may remove any such attorney-in-fact or agent and revoke any POA previously granted to such person.
    RESOLVED FURTHER, that any bond, undertaking, recognizance, or suretyship obligation shall be valid and bind upon the Company:
        (i)    when signed by the President or any Vice President and attested and sealed (if a seal be required) by any Secretary or Assistant Secretary; or
        (ii)   when signed by the President or any Vice President or Secretary or Assistant Secretary, and countersigned and sealed (if a seal be required) by a duly authorized attorney-in-fact or agent; or
        (iii)  when duly executed and sealed (if a seal be required) by one or more attorneys-in-fact or agents pursuant to and within the limits of the authority evidenced by the power of attorney issued by the Company to such person or persons.
    RESOLVED FURTHER, that the signature of any authorized officer and the seal of the Company may be affixed by facsimile to any POA or certification thereof authorizing the execution and delivery of any bond, undertaking, recognizance, or other suretyship obligations of the Company; and such signature and seal when so used shall have the same force and effect as though manually affixed.

IN WITNESS WHEREOF, Amwest Surety Insurance Company and Far West Insurance Company have caused these present to be signed by its proper officers, and its corporate seals to be hereunto affixed this 12th day of December, 1997.

*John E. Savage*                                     *Karen G. Cohen*
John E. Savage, President                            Karen G. Cohen, Secretary

State of California
County of Los Angeles
    On December 12, 1997 before me, Peggy B. Lofton Notary Public, personally appeared John E. Savage and Karen G. Cohen, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature    *Peggy B. Lofton*    (Seal)

PEGGY B. LOFTON
Commission #105049
Notary Public — California
Los Angeles County
My Comm. Expires Aug 6, 1999

| 5230 Las Virgenes Road  Calabasas, CA 91302 | TEL 818 871-2000 |
|---|---|

FROM KENNEDY, COVINGTON,  LOBDELL & HICKMAN    (MON) 2. 7' 00 17:37/ST. 17:36/NO. 4800000551 P  2

Bond No. <u>125002282</u>

KNOW ALL MEN BY THESE PRESENTS, that ALH Holdings, LLC, a limited

liability company organized and existing under the laws of the State of Delaware

(hereinafter called the "Principal") as Principal, and Swiss Reinsurance America

Corporation, a corporation organized and existing under the laws of the State of New

York (hereinafter called "Swiss Re"), and Amwest Surety Insurance Company, a

corporation duly organized and existing under the laws of the State of Nebraska,

(hereinafter collectively referred to as  "Amwest"; Swiss Re and Amwest hereinafter

referred to as "Surety" and collectively referred to as the "Sureties"), as Co-Sureties, are

held and firmly bound jointly and severally unto Wachovia Bank, N.A., a national

banking association organized and existing under the laws of the United States  (the

"Obligee"), in the penal sum of Thirteen Million One Hundred Ninety-Four Thousand

Dollars ($13,194,000.) to the payment of which sum well and truly to be made, the said

Principal and Sureties bound ourselves, our heirs, executors, administrators, successors

and assigns, jointly and severally, firmly by these presents.

WHEREAS, the Principal is required to provide to the Obligee a surety bond to

guarantee that the payment of the purchase price by the Principal required to purchase

from the Obligee the " Notes" as described in and pursuant to paragraph A of that certain

Note Repurchase Agreement dated the 13th day of January, 2000 (hereinafter called the

"Agreement") by and among the Principal, the Obligee and ALH II, Inc. a Delaware

Corporation (hereinafter referred to as the "Company") will be made in accordance with the terms of the Agreement.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH THAT IF, during the term of this bond, the Principal shall fully pay all amounts as are required by the Agreement, then this bond shall be null and void, otherwise, to remain in full force and effect.

PROVIDED, HOWEVER, THAT THIS BOND IS EXECUTED BY THE SURETIES AND ACCEPTED BY THE OBLIGEE SUBJECT TO THE FOLLOWING CONDITIONS:

1.  The term of this bond shall be from January 13, 2000 to April 16, 2002.

2.  Obligee's acceptance of this bond will constitute Obligee's agreement to repay to Sureties the funds paid by Sureties to Obligee hereunder and not used in satisfaction of or reimbursement of any payments due to Obligee under the Agreement.

3.  It is understood and agreed that if the Principal fails to make such payments as required by the Agreement, then the Sureties, jointly and severally, shall pay to the Obligee the full amount of this bond less any amounts previously paid to the Obligee in respect to amounts due to it under the Agreement.

4.  Sureties hereby undertake, jointly and severally, to pay any amounts up to the limit of $13,194,000 within ten (10) business days of the Obligee presenting to it at the office of Amwest Surety Insurance Company, 140 Broadway, New York, New York 10005 a duly completed Letter of Notification, attached hereto as Exhibit A, either personally, by facsimile transmission (with an original forwarded thereafter by first class mail), or by registered or certified mail, postage prepaid, return receipt requested, duly executed by an officer of the Obligee duly authorized to make such presentment so long as such notification is made on or before the termination date of this Bond as provided in Section 1 above. Any number of Letters of Notification may be presented hereunder, not exceeding $13,194,000 in the aggregate. Neither the Principal nor the Sureties shall have any right to terminate or amend this Bond without prior written consent of the Obligee.

FROM KENNEDY, COVINGTON,    LOBDELL & HICKMAN    (MON) 2. 7' 00 17:38/ST. 17:36/NO. 4800000551 P 4

5.   Each Surety's obligations under this bond are absolute and not subject to any agreement, condition or qualification and are not contingent on the ability of either Surety to obtain reimbursement with respect to any payments required to be made.

6.   Each Surety's obligation under this bond shall be payable without diminution because of the insolvency of the Company, the Principal, or either Surety or any other person.  In the event that the Company, the Principal, or either Surety is prohibited from making a payment to the Obligee by reason of any applicable law, rule, regulation, decree, judgment or order of any governmental authority (including any such decree, judgment or order issued pursuant to any proceeding in bankruptcy or reorganization or otherwise),  each Surety hereby agrees that (without in any way limiting the obligations of either Surety hereunder) the Obligee may demand and such Surety shall make payment of any amount demanded hereunder to the Obligee.

7.   The obligations of Sureties hereunder are irrevocable, absolute and unconditional, irrespective of the value, genuineness, validity, regularity or enforceability of the obligations of the Principal or the Company to the Obligee or of any agreement or instrument referred to herein or in any Letter of Notification delivered pursuant hereto, or any substitution, release or exchange of any other guaranty of or security for any obligations of the Company or the Principal to the Obligee, and, to the fullest extent permitted by applicable laws and governmental rules and regulations, irrespective of any other circumstances whatsoever which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor, it being the intent of this bond that the obligations of each Surety hereunder shall be absolute and unconditional under any and all circumstances. To the fullest extent permitted by applicable laws, government rules and regulations, the obligations of either Surety hereunder shall not be subject to any abatement, reduction, limitation, impairment, termination, setoff, defense, counterclaim or recoupment whatsoever or any right to any thereof, and shall not be released or discharged.  Without limiting the generality of the foregoing, it is agreed that, to the fullest extent permitted by applicable laws, government rules and regulations, the occurrence of any one or more of the following (with or without notice to either Surety) shall not alter or impair the liability of either Surety hereunder, which shall remain absolute and unconditional as described above:

(a)   at any time or from time to time, the time for any performance of or compliance with any obligation of the Principal or the Company  to the Obligee shall be extended, or such performance or compliance shall be waived:

    (b)     the maturity of any obligation of the Principal or the Company to the Obligee shall be accelerated, or shall be modified, supplemented or amended in any respect, or any right under any agreement or instrument referred to herein or in any Letter of Notification delivered pursuant hereto shall be waived or any other guaranty or any security for any obligation of the Principal or the Company to the Obligee shall be released or exchanged in whole or part or otherwise dealt with;

    (c)     any lien or security interest as security for any obligation of the Principal or the Company to the Obligee shall fail to be perfected; and

    (d)     this bond or any document referred to herein or in the Letter of Notification delivered pursuant hereto shall be rejected in any bankruptcy, insolvency or similar proceeding (nothing herein being a concession that any obligation hereunder or thereunder is properly classified as an executory obligation).

To the fullest extent permitted by applicable laws, government rules and regulations, each Surety hereby expressly waives diligence, presentment, demand of payment, protest and all notices whatsoever, and any requirement that the Principal of the Obligee exhaust any right, power or remedy or proceed against any person.

8.     This Bond shall be subject to and governed by the laws of the State of California.

9.     Each Surety will make all payments to be made by it hereunder by wire transfer in immediately available funds to the account entitled ALH Holdings, LLC Bond Account maintained by the Principal with the Obligee at Wachovia Bank, N.A. 400 South Tryon Street   Charlotte, NC 28231  Routing Number and Transit Number: 053000183 Account Number: 1860049252, or to such other account and/or address as the Obligee may from time to time specify in a written notice to Sureties.

FROM KENNEDY, COVINGTON,    LOBDELL & HICKMAN    (MON) 2. 7' 00 17:39/ST. 17:36/NO. 4800000551 P  6

10.    In no event shall the Sureties' aggregate liability to the Obligee under this bond exceed the penal sum of this bond.

IN WITNESS WHEREOF, the undersigned have set their hand and seal this 13th day of January 2000.

ALH HOLDINGS, LLC

By:_____, Principal

SWISS REINSURANCE AMERICA

CORPORATION



By:_____
Douglas J. Paterson/Attorney-in-Fact

AMWEST SURETY INSURANCE COMPANY

By:_____
Daniel P. Aguilar    , Attorney-in-Fact

ALH HOLDINGS, LLC
By its sole Manager, LION ALH CAPITAL, LLC,
By its sole Manager, LION & LAMM CAPITAL LLC,

By:_____
    Jonathan Zich, Member

# EXHIBIT "A"

Amwest Surety Insurance Company and Swiss Reinsurance Company Bond No. 125002282

Ladies and Gentlemen:

Reference is made to Amwest Surety Insurance Company and Swiss Reinsurance America Corporation Bond No. 125002282 dated January 13, 2000 (the "Bond") issued by you by order and for ALH HOLDINGS, LLC (the "Principal").

The undersigned, a duly authorized representative of Wachovia Bank, N.A. (the "Obligee") under Amwest Surety Insurance Company and Swiss Reinsurance America Company Bond No. 125002282 certifies that:

1.   The Obligee is the beneficiary of the Bond and the Obligee is entitled to demand payment hereunder.
2.   The amount due is, as of the date hereof, equal to _____ ($_____) in accordance with the Note Purchase Agreement.
3.   The amount hereby demanded, when added to all other amounts paid to the Obligee under Amwest Surety Insurance Company and Swiss Reinsurance America Company Bond No. 125002282, if any, does not exceed Thirteen Million One Hundred Ninety Four Thousand Dollars ($13,194,000).

Accordingly, please pay the amount stated in this certificate in accordance with the terms of Amwest Surety Insurance Company and Swiss Reinsurance America Company Bond No. 125002282.

IN WITNESS WHEREOF, the undersigned has executed this payment certificate on _____.

WACHOVIA BANK, N.A.,
as Obligee

_____
BY:
TITLE

**Swiss Re America**

## Power of Attorney

**Know all Men by these Presents: That the Swiss Reinsurance America Corporation, a Corporation** organized under the laws of the State of New York, having its principal office in the City and State of New York, pursuant to the following By-Law, which was adopted by the Stockholders of the said Corporation on May 2, 1978, and amended September 10, 1990, to wit:

Article III, Section 9. Execution of Contracts: (c) All contracts for fidelity and surety coinsurance shall be signed by an attorney-in-fact appointed under a written instrument signed, whether manual or facsimile, by the president or, if authorized by the president to make such appointment, by an elected officer, and attested by another officer of the Corporation, and such attorney-at-fact shall have power to cause the corporate seal or a facsimile thereof to be impressed or affixed.

does hereby nominate, constitute and appoint · Douglas J. Paterson, Ralph V. Pulver

Mary Scheiner and Michael J. Lahn of Calabasas, California, each in

his/her individual capacity as

its true and lawful attorney(s)-in-fact, to make, execute, seal and deliver for and on its behalf, and as its act and deed: any and all bonds, undertakings or obligations in co-suretyship with

Amwest Surety Insurance Company of Calabasas, California

whether or not there are other co-sureties, wherein the co-surety participation of Swiss Reinsurance America Corporation does not exceed __Twenty Million_____ Dollars ($ 20,000,000 ) and reserving to itself full power of substitution and revocation.

The execution of such contracts in pursuance of these presents shall be binding upon said Corporation, as fully and amply, to all intents and purposes, as if they had been duly executed and acknowledged by the regularly elected officers of the Corporation at its office in New York, New York, in their own proper persons.

This Power of Attorney shall expire and all authority hereunder shall terminate without notice at midnight (Standard Time where said Attorney(s)-in-Fact is authorized to act), December 31, 2000.

In Witness Whereof, the Swiss Reinsurance America Corporation has caused its corporate seal to be hereunto affixed and these presents to be signed by its Member of Senior Management this 27th day of December in the year one thousand nine hundred and Ninety-Nine.

Swiss Reinsurance America Corporation

By _Martin R. Brady_____
   Member of Senior Management

_Corporate Secretary_

FROM KENNEDY, COVINGTON, LOBDELL & HICKMAN    (MON) 2. 7'00 17:39/ST. 17:36/NO. 4800000551 P 9

# LIMITED POWER OF ATTORNEY

### *Amwest Surety Insurance Company*
### *Far West Insurance Company*

| | |
|---|---|
| **Expiration Date:**　　06/09/00 | **POWER NUMBER**　　**0000893146** |

This document is printed on white paper containing the artificial watermarked logo ( ) of Amwest Surety Insurance Company on the front and brown security paper on the back. Only unaltered originals of the Limited Power of Attorney ("POA") are valid. This POA may not be used in conjunction with any other POA. No representations or warranties regarding this POA may be made by any person. This POA is governed by the laws of the State of Nebraska and is only valid until the expiration date. Amwest Surety Insurance Company and Far West Insurance Company (collectively the "Company") shall not be liable on any limited POA which is fraudulently produced, forged or otherwise distributed without the permission of the Company. Any party concerned about the validity of this POA or an accompanying Company bond should call your local Amwest branch office at (818) 871-2000.

KNOW ALL BY THESE PRESENT, that Amwest Surety Insurance Company, a Nebraska corporation and Far West Insurance Company, a Nebraska corporation (collectively the "Company"), do hereby make, constitute and appoint:

　　Daniel P. Aguilar
　　As Employee of Amwest Surety Insurance Company

its true and lawful Attorney-in-fact, with limited power and authority for and on behalf of the Company as surety to execute, deliver and affix the seal of the company thereto if a seal is required on bonds, undertakings, recognizances, reinsurance agreement for a Miller Act or other performance bond or other written obligations in the nature thereof as follows:

　　All Bonds up to $25,000,000.00

and to bind the company thereby. This appointment is made under and by authority of the By-Laws of the Company, which are now in full force and effect.

I, the undersigned secretary of Amwest Surety Insurance Company, a Nebraska corporation and Far West Insurance Company, a Nebraska corporation, DO HEREBY CERTIFY that this Power of Attorney remains in full force and effect and has not been revoked and furthermore, that the resolutions of the Board of Directors of both Amwest Surety Insurance Company and Far West Insurance Company set forth on this Power of Attorney, and that the relevant provisions of the By-Laws of each company, are now in full force and effect.

Bond No. **125002282**　　Signed & sealed this **13th** day of **January**　　**2000**　-　*Karen G. Cohen*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Karen G. Cohen, Secretary

• • • • • • • • • • • • • •　　RESOLUTIONS OF THE BOARD OF DIRECTORS　• • • • • • • • • • • • • • • • • •
This POA is signed and sealed by facsimile under and by the authority of the following resolutions adopted by the Board of Directors of Amwest Surety Insurance Company at a meeting duly held on December 15, 1975 and Far West Insurance Company at a meeting duly held on July 28, 1983:
　　RESOLVED, that the President or any Vice President, in conjunction with the Secretary or any Assistant Secretary, may appoint attorneys-in-fact or agents with authority as defined or limited in the instrument evidencing the appointment in each case, for and on behalf of the Company, to execute and deliver and affix the seal of the Company to bonds, undertakings, recognizances, and suretyship obligations of all kinds; and said officers may remove any such attorney-in-fact or agent and revoke any POA previously granted to such person.
　　RESOLVED FURTHER, that any bond, undertaking, recognizance, or suretyship obligation shall be valid and bind upon the Company:
　　　(i)　　when signed by the President or any Vice President and attested and sealed (if a seal be required) by any Secretary or Assistant Secretary; or
　　　(ii)　　when signed by the President or any Vice President or Secretary or Assistant Secretary, and countersigned and sealed (if a seal be required) by a duly authorized attorney-in-fact or agent; or
　　　(iii)　　when duly executed and sealed (if a seal be required) by one or more attorneys-in-fact or agents pursuant to and within the limits of the authority evidenced by the power of attorney issued by the Company to such person or persons.
　　RESOLVED FURTHER, that the signature of any authorized officer and the seal of the Company may be affixed by facsimile to any POA or certification thereof authorizing the execution and delivery of any bond, undertaking, recognizance, or other suretyship obligations of the Company; and such signature and seal when so used shall have the same force and effect as though manually affixed.

IN WITNESS WHEREOF, Amwest Surety Insurance Company and Far West Insurance Company have caused these present to be signed by its proper officers, and its corporate seals to be hereunto affixed this 12th day of December, 1997.

　　　　　　*John E. Savage*　　　　　　　　　　　　　*Karen G. Cohen*
　　　　　　　John E. Savage, President　　　　　　　　　　　　　　Karen G. Cohen, Secretary

State of California
County of Los Angeles
　　On December 12, 1997 before me, Peggy B. Lofton Notary Public, personally appeared John E. Savage and Karen G. Cohen, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

　　WITNESS my hand and official seal.

Signature　　*Peggy B. Lofton*　　　　(Seal)
　　　　　　　Peggy B. Lofton Notary Public

PEGGY B. LOFTON
Commission #1054048
Notary Public — California
Los Angeles County
My Comm. Expires Aug 6, 1999

5230 Las Virgenes Road  Calabasas, CA 91302　　TEL 818 871-2000

# EXHIBIT M

## NOTE PURCHASE AGREEMENT

This Note Purchase Agreement (this "Agreement") is entered into the 13th day of January, 2000, by and among Wachovia Bank, N.A., a national banking association organized under the laws of the United States of America ("Wachovia"), ALH II, Inc., a Delaware corporation ("Borrower"), and ALH Holdings, LLC, a Delaware limited liability company ("ALH").

Background:

A.    Wachovia has made a loan to Borrower in the principal amount of $27,500,000 ("the Loan"). The Loan is evidenced by two Promissory Notes, each dated January 13, 2000, one in the principal amount of $13,000,000 and the other in the principal amount of $14,500,000 ("the Notes"), and secured by one or more security instruments (the "Security Instruments"). The Notes, Security Instruments, commitment letter dated January 5, 2000 executed in connection with the Loan and other documents held by Wachovia which evidence or secure the Loan are collectively referred to as the Loan Documents. The Loan Documents together with all collateral securing the Loan now or hereafter held by Wachovia are collectively referred to as the Assets.

B.    As a condition of funding the Loan, Wachovia has required that it receive this Agreement which will obligate ALH to purchase the Assets on the terms and conditions as hereinafter provided. ALH is under common ownership and control with Borrower and acknowledges that it benefits from the making of the Loan.

NOW, THEREFORE, in consideration of Ten Dollars and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    In order to induce Wachovia to make the Loan, Wachovia is granted the sole and exclusive right and option (the "Option") to sell to ALH and to require ALH to purchase the Assets for a purchase price calculated as hereinafter provided (the "Purchase Price"). The Option may be exercised by Wachovia at any time after an Event of Default has occurred under any of the Loan Documents. As used herein the term "Assets" shall not include any collateral that has been released by Wachovia in accordance with the terms of the Loan Documents prior to Closing (hereinafter defined).

2.    The Purchase Price for the Assets shall be equal to the aggregate unpaid principal amount of the Notes, all accrued and unpaid interest thereon, together with all other amounts due Wachovia under the Loan Documents on the date of closing on the Option (the "Closing"), which Closing shall occur

ATLANTA #110858 v 2

on the date designated in a written notice of exercise of the Option given by Wachovia to ALH and Swiss Reinsurance America Company (the "Surety") (which date shall be no earlier than 2 business days, and no later than 10 business days, following the date such notice is given). Any notice, request, instruction, demand, consent, or other communication required or permitted to be given under this Agreement shall be in writing and shall be delivered either by hand or by certified mail, posted prepaid and certified return receipt requested, or by Federal Express or similar overnight delivery service, as follows:

ALH Holdings, LLC:      ALH II, Inc.
489 Fifth Avenue, 28th Floor
New York, NY 10017
Attention: Jonathan Zich
          Secretary

SURETY:      Swiss Reinsurance Company of America
c/o Amwest Surety Insurance Company
140 Broadway, 21st Floor
New York, NY 10005
Attention: Edward V. Mahoney

WACHOVIA:      Wachovia Bank, N.A.
400 South Tryon Street
Charlotte, NC 28202
Attention: Kenneth M. Harris
          Senior Vice President

3. The obligations of ALH under this Agreement are unconditional and irrevocable and may not be rescinded for any reason.

4. In the event of any default by ALH under this Agreement, Wachovia may proceed directly against any co-surety under the Surety Bonds without further notice or demand on ALH or any other party. As used herein, "Surety Bonds" means, collectively, the following: (i) Bond No. 125002282, dated January 13, 2000, issued by ALH, as principal, and Swiss Reinsurance America Company and Amwest Surety Insurance Company, as co-sureties, to Wachovia, as obligee, in the penal sum of $13,194,000, and (ii) Bond No. 125002284, dated January 13, 2000, issued by ALH, as principal, and Swiss Reinsurance America Company and Amwest Surety Insurance Company, as co-sureties, to Wachovia, as obligee, in the penal sum of $14,806,000.

5. This Agreement shall be governed by and construed under and in accordance with the laws of the State of North Carolina.

6. Any costs or expenses incurred by Wachovia (including, without limitation, reasonable fees and expenses of counsel to Wachovia) in enforcing its rights under this Agreement shall be paid by ALH upon demand by Wachovia. In connection with any litigation arising out of or in connection with this Agreement, the prevailing party shall be entitled to recover as costs all of such party's expense incurred in connection therewith, including reasonable attorney's fees at the trial and appellate levels.

7. This Agreement shall be binding upon, shall inure to the benefit of, and shall be enforceable by, the parties hereto and their respective heirs, personal representatives, successors and permitted assigns.

8. This Agreement may be executed in one or more counterparts each of which shall be deemed an original but all of which shall constitute one and the same Agreement. Facsimile execution and delivery of this Agreement shall be and constitute an original for all purposes.

9. Payment of the Purchase Price shall be made by wire transfer of immediately available funds to Wachovia by Federal wire transfer to an account designated by Wachovia.

10. ALH's obligations under this Agreement shall continue regardless of Wachovia's efforts to collect the Loan from Borrower or to enforce the Loan Documents against the Borrower and notwithstanding that the Notes may then be in default or Borrower may be or become insolvent or may make an assignment for the benefit of creditors or may file or may have filed against it a petition in bankruptcy or other insolvency or reorganization proceedings. ALH further agrees that to the extent Wachovia shall have received a payment or payments on the Notes prior to ALH's purchase of the Assets pursuant to the provisions hereof, which payment or payments or any part thereof are after the purchase by ALH pursuant to the provisions hereof invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or other party under the United States Bankruptcy Code, or any other federal or state law, then ALH shall immediately pay to Wachovia the amount of such payment or repayment as an additional part of the Purchase Price. The obligation of ALH in this paragraph shall survive the purchase of the Assets.

11. ALH hereby waives any right it may have to compel Wachovia to bring any action against Borrower for collection or enforcement of the Notes or any of the other Loan Documents.

12. ALH hereby stipulates and agrees with Wachovia that because of the potential for rapidly changing financial conditions involving Borrower and/or ALH, Wachovia's remedy at law for a breach by ALH of this Agreement is inadequate and that Wachovia shall be entitled to the equitable remedy of specific performance without further showing by Wachovia, ALH hereby waiving all procedural defenses otherwise available to ALH.

13. Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but in the event that any provision of this Agreement shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement the 13th day of January, 2000.

Signed, Sealed and Delivered in the
Presence of:                                WACHOVIA BANK, N.A.

_____        BY: _____
Signature                                    Title  Sr. Vice Pres.
Name Printed, Typewritten or stamped


_____        ALH HOLDINGS, LLC
Signature

                                             By its sole Manager,
                                              LION ALH CAPITAL LLC
                                             By its sole Manager,
                                              LION & LAMM CAPITAL LLC
Name Printed, Typewritten or stamped         By _____
                                             Title: Member


[signatures continued on next page]

_Carvin R Osborn_
Signature

Name Printed, Typewritten or stamped

ALH II, INC.

BY: _____
Title  _President_

UNANIMOUS WRITTEN CONSENT
OF THE
CLASS A REPRESENTATIVES
OF THE
SUPERVISORY BOARD
OF ALH HOLDING LLC
(a Delaware Limited Liability Company)

The undersigned being all the Class A Representatives (the "Class A Representatives") of the Supervisory Board of ALH HOLDING LLC, a Delaware limited liability company (the "Company"), do hereby waive any and all requirements for the holding of a meeting of the Class A Representatives of the Company and do hereby take the following actions and adopt the following preambles and resolutions by signing our consent hereto pursuant to the provisions of §18.404(d) of the Delaware Limited Liability Company Act:

I.      Note Purchase Agreement

WHEREAS, ALH II, INC., a Delaware corporation ("ALH II"), desires to issue to Wachovia Bank, N.A. ("Wachovia"), two promissory notes in the principal amounts of $13,000,000 and $14,500,000, respectively (the "Notes");

WHEREAS, in connection with the issuance of the Notes by ALH II, Wachovia desires that the Company, as the parent of ALH II, enter into a Note Purchase Agreement, dated as of January 12, 2000, by and among the Company, ALH II and Wachovia (the "Note Purchase Agreement"), whereby the Company agrees to repurchase the Notes pursuant to the terms and conditions of the Note Purchase Agreement;

WHEREAS, the Company agrees to enter into the Note Purchase Agreement and to repurchase the Notes in accordance with the terms thereof;

WHEREAS, the Company's agreement to enter into the Note Purchase Agreement and to repurchase the Notes in accordance with the terms thereof constitutes a guarantee of ALH II's obligation under the Notes;

WHEREAS, pursuant to Section 6.2 of the Operating Agreement of the Company, certain Major Decisions (as defined in the Operating Agreement) of the Company may be decided and acted upon only by the adoption of a resolution by, or the execution of an unanimous written consent of, the Class A Representatives of the Supervisory Board of the Company; and

WHEREAS, the Operating Agreement specifies that the making of loans to, or guarantees of any obligations of, any Person (as defined in the Operating Agreement), or causing the Company or any subsidiary thereof to become a surety, guarantor, or accommodation party, other than any guarantees required under a credit facility constitutes such a Major Decision.

NOW, THEREFORE, BE IT RESOLVED, that the Manager of the Company (the "Manager") be, and hereby is, authorized, directed and empowered in the name of and on behalf of the Company to do all acts necessary and to execute, perform and deliver to Wachovia the Note Purchase Agreement and all necessary documents related thereto in connection with such Note Purchase Agreement, on such terms and conditions, in such form and as may be deemed necessary, appropriate or advisable by the Manager,

its execution thereof constituting conclusive evidence of such necessity, appropriateness or advisability; and

FURTHER RESOLVED, that the Manager be, and hereby is, authorized and directed to execute such other agreements and documents from time to time and in such form as the Manager deems necessary to carry out the obligations imposed on the Company as contemplated by the Note Purchase Agreement, such agreements, and documents to be in form satisfactory to the Manager, as evidenced by its signature thereon.

II.    **Bonds**

WHEREAS, the Company desires to purchase Bonds No. 125002282 and 125002284 (the "Bonds") issued jointly and severally by Swiss Reinsurance America Company and Amwest Surety Insurance Company in the principal amounts of $13,194,000 and $14,806,000, respectively.

NOW, THEREFORE, BE IT RESOLVED, that the Manager be, and hereby is, authorized, directed and empowered to purchase the Bonds, on such terms and conditions, in such form and as may be deemed necessary, appropriate or advisable by the Manager, its purchase thereof constituting conclusive evidence of such necessity, appropriateness or advisability; and

FURTHER RESOLVED, that the Manager be, and hereby is, authorized and directed to execute such other agreements and documents from time to time and in such form as the Manager deems necessary to carry out the obligations imposed on the Company as contemplated by the Bonds, such agreements, and documents to be in form satisfactory to the Manager, as evidenced by its signature thereon.

We hereby consent that this document be filed with the minutes of the Company and that the actions set forth in the foregoing preambles and resolutions shall have the same force and effect as if taken at a duly constituted meeting of the Class A Representatives of the Supervisory Board of the Company.

1769423.01
LIB:

01/13/00   16:31   FAX 818 845 4675          SBDC              TO:818 845 4675          ☒002/003
1-13 00 15:08   FROM:

WITNESS our hands and seals as of this __ day of January, 2000.

_(signature)_  [SEAL]
Name: George Buehler

_(signature)_  [SEAL]
Name:  Eugene I. Krieger

**2**

FORM **W-9**

(Rev. March 1994)

Department of the Treasury
Internal Revenue Service

**Request for Taxpayer
Identification Number and Certification**

Give This Form
to the requestor. Do NOT
send to the IRS.

Name (if joint names, list first and circle the name of the person or entity whose number you entered in Part I below. See instructions on page 2 if your name has changed.)

Business Name (Sole proprietors see instructions on page 2.)

**ALH Holdings, LLC**

Please check appropriate box:  ☐ Individual/Sole Proprietor  ☐ Corporation  ☐ Partnership  ☐ Other

Address (number, street, and apt. or suite no.)

**489 Fifth Avenue, 28th Floor**

City, state and ZIP code

**New York, NY  10017**

Requestor's name and address (optional)

**Amwest Surety Insurance
Company**

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). For sole proprietors, see the instructions on page 2. For other entities, it is your employer identification number (EIN). If you do not have a number, see How To Get a TIN below.

Note: *If the account is in more than one name, see the chart on page 2 for guidelines on whose number to enter.*

Social Security Number

**OR**

Employer Identification number

**51-0836365**

List account number(s) here (optional)

## Part II    For Payees Exempt From Backup Withholding (See Part II Instructions on page 2)

## Part III    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding either because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding.

Certification Instructions. – You must cross out Item 2 above if you have been notified by IRS that you are currently subject to backup withholding because of underreporting interest or dividends on your tax return. For real estate transactions, Item 2 does not apply. For mortgage interest paid , the acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally payments other than interest and dividends, you are not required to sign the Certification. (Also see the Part III instructions on page 2.)

**Sign
Here**    Signature >    Date > 3-9-00

Section references are to the Internal Revenue Code.

**Purpose of Form.** – A person who is required to file an information return with the IRS must get your correct TIN to report income paid to you, real estate transactions, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA. Use Form W-9 to give your correct TIN to the requester (the person requesting your TIN) and, when applicable, (1) to certify the TIN you are giving is correct (or you are waiting for a number to be issued), (2) to certify you are not subject to backup withholding, or (3) to claim exemption from backup withholding if you are an exempt payee. Giving your correct TIN and making the appropriate certifications will prevent certain payments from being subject to backup withholding.

Note: *If a requester gives you a form other than a W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.*

**What is Backup Withholding?** – Persons making certain payments to you must withhold and pay to the IRS 31% of such

payments under certain conditions. This is called "backup withholding." Payments that could be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operator. Real estate transactions are not subject to backup withholding.

If you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return, your payments will not be subject to backup withholding. Payments you receive will be subject to backup withholding if:

1. You do not furnish your TIN to the requester, or

2. The IRS tells the requester that you furnished an incorrect TIN, or

3. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

4. You do not certify to the requester that you are not subject to backup withholding under 3 above (for reportable

interest and dividend accounts opened after 1983 only), or

5. You do not certify your TIN. See the Part III instructions for exceptions.

Certain payees and payments are exempt from backup withholding and information reporting. See the Part II instructions and the separate instructions for the Requester of Form W-9.

**How To Get a TIN.**-If you do not have a TIN, apply for one immediately. To apply, get Form SS-5, Application for a Social Security Number Card (for individuals), from your local office of the Social Security Administration, or Form SS-4, Application for Employer Identification Number (for businesses and all other entities), from your local IRS office.

If you do not have a TIN, write "Applied For" in the space for the TIN in Part I, sign and date the form, and give it to the requester. Generally, you will then have 60 days to get a TIN and give it to the requester. If the requester does not receive your TIN within 60 days, backup withholding, if applicable, will begin and continue until you furnish your TIN.

Cat. No. 10231X

Form **W-9** (Rev 3-94)