# EXHIBIT BB

**ALH II, INC.**

**LOAN AGREEMENT**
dated
**May 7, 2002**

1.      Loan Agreement dated May 7, 2002

2.      Promissory Notes dated May 7, 2002

3.      Second Notice of Borrowing dated May 29, 2002

EXHIBIT 1

## LOAN AGREEMENT

This Loan Agreement (the "Agreement") is entered into as of this 7th day of May, 2002, by and among ALH II, Inc., a Delaware corporation (the "Borrower"), and each of the parties listed on Exhibit A hereto (each a "Lender" and collectively, the "Lenders").

### Recitals:

A.      The Borrower has requested a loan or loans in an aggregate principal amount not to exceed Four Million Three Hundred and Seventy-Five Thousand Dollars ($4,375,000) as set forth herein to provide working capital to the Borrower and its subsidiaries.

B.      The Lenders are willing to make the loan upon and subject to the terms and conditions set forth in this Agreement.

### Agreement:

NOW, THEREFORE, in consideration of the covenants and conditions herein contained, and for other good and valuable consideration, the parties agree as follows:

### Article I

### PRINCIPAL; INTEREST; AMOUNT AND TERMS OF LOAN

Section 1.01.  Loan.

(a)      Subject to the terms and conditions set forth herein, each Lender agrees to make available to the Borrower from time to time from the Closing (as defined in Section 1.08) until October 7, 2002 (the "Advance Termination Date"), such Lender's Pro Rata Share (as defined in Section 1.02(a) below) of advances requested by the Borrower in accordance with the terms hereof, which advances, in the aggregate, shall not exceed $4,375,000 (the "Loan").  Subject to the terms hereof, the Loan shall be comprised of (i) an initial advance in the amount of $2,625,000 on the Closing Date (as defined in Section 1.08) (the "Initial Advance") and (ii) such subsequent advances (each, a "Subsequent Advance") as may be requested by the Borrower in accordance with the terms hereof from time to time thereafter until the Advance Termination Date.  Subject to Section 3.02 below, each Subsequent Advance shall be made ten (10) Business Days following receipt by each Lender of a written notice from the chief financial officer of the Borrower in substantially the form of Exhibit B attached hereto (the "Borrower's Notice"), which Borrower's Notice shall:  (i) specify the amount of such requested Subsequent Advance, (ii) certify the Borrower's compliance with the terms of this Agreement and ability to incur such Subsequent Advance and (iii) contain such further information as may be reasonably requested by the Requisite Lenders (as defined in Section 8.01 below).  Each Subsequent Advance requested by the Borrower shall be in an amount of not less than $1,000,000 or multiples of $250,000 in excess thereof, and the Lenders shall have no obligation to fund any requested Subsequent Advance from and after the occurrence and during the continuation of any Event of Default hereunder (unless otherwise expressly

agreed to by the Requisite Lenders). The obligations of each Lender hereunder shall be several and not joint.

(b)     The Borrower shall execute and deliver to each Lender a note to evidence such Lender's Pro Rata Share of the Obligations (as defined in Section 1.01(c) below) outstanding under this Agreement (including, without limitation, any advances of the Loan), which notes shall be in substantially the form of Exhibit C attached hereto (each, a "Note" and, collectively, the "Notes").

(c)     The entire unpaid balance of the Loan, including principal and interest thereon, together with any and all fees, costs, expenses, penalties or other obligations or amounts owing hereunder or under any of the Notes, whether such amounts are contingent or non-contingent (collectively, the "Obligations"), shall be immediately due and payable in full in immediately available funds on the earlier of (i) May 7, 2003 (the "Maturity Date") or (ii) upon the exercise of the Lenders' rights or remedies in accordance with Section 1.04 or Section 5.02 hereof.

Section 1.02.  Funding by the Lenders.

(a)     Subject to the terms and conditions of this Agreement, each Lender shall be responsible for funding a portion of the Initial Advance and each Subsequent Advance requested by the Borrower in accordance with the terms of this Agreement in an amount equal to the product of (x) the percentage commitment (the "Pro Rata Share") of such Lender set forth on Exhibit A attached hereto *multiplied by* (y) the aggregate amount of such advance. Notwithstanding anything to the contrary contained herein, no Lender shall be required to advance any funds in excess of such Lender's aggregate commitment set forth on Exhibit A attached hereto. Each Lender agrees to make available its Pro Rata Share of the Initial Advance (less such Lender's Pro Rata Share of the Closing Fee pursuant to Section 1.06 below) on the Closing Date, by wire transfer of immediately available funds to the account specified by Borrower in Exhibit D attached hereto ("Borrower's Account"). Thereafter, subject to Section 3.02 below, upon receipt of a Borrower's Notice for any Subsequent Advance made in accordance with the terms of this Agreement, each Lender shall pay its Pro Rata Share of such Subsequent Advance by wire transfer of immediately available funds to the Borrower's Account within ten (10) Business Days.

(b)     In the event that any Lender (a "Funding Lender"), in its sole discretion, elects to provide Borrower any or all of any other Lender's Pro Rata Share of the Initial Advance or any Subsequent Advance (an "Overadvance"), the Funding Lenders shall be entitled to recover the amount of such Overadvance immediately upon demand from such other Lender, without set-off, counterclaim or deduction of any kind. In the event that such other Lender fails to repay all or any portion of any Overadvance when and as requested by the Funding Lenders, the Borrower hereby agrees to repay such amount, together with any interest accrued thereon, to the Funding Lenders upon demand. Notwithstanding anything to the contrary contained herein, (i) no Lender shall have an obligation to make any Overadvances hereunder, (ii) no Lender shall be responsible or have any liability or obligation for the failure of any other Lender to fund all or any

2

portion of such other Lender's Pro Rata Share of the Initial Advance or any Subsequent Advance when and as requested hereunder and (iii) the failure of any Lender to fund the entirety of such Lender's Pro Rata Share of any advance requested hereunder shall not relieve the obligation of any other Lender to fund such other Lender's Pro Rata Share of any advance requested hereunder.

Section 1.03.  Interest. The aggregate outstanding principal amount of the Loan at any time shall bear interest from the date of disbursement hereunder on the unpaid principal at the per annum rate of eighteen percent (18%).  At the election of the Requisite Lenders from and after the occurrence of an Event of Default, the aggregate outstanding principal amount of the Loan shall bear interest from the date of such occurrence at the per annum rate of twenty-one percent (21%) (the "Default Rate").  Throughout the term of the Loan, interest shall be calculated on the basis of a 360-day year consisting of 12 calendar months with 30 days each. Any and all interest accrued and outstanding from time to time hereunder (together with any and all fees, costs or expenses owing to the Lenders as of such date) shall be immediately due and payable in full in cash on the earlier of the Maturity Date or the date upon which the Lenders exercise rights or remedies in accordance with Section 1.04 or Section 5.02 hereof.

Section 1.04.  Prepayments.

(a)    Voluntary Prepayments.  Subject to the terms of this Section 1.04(a), the Borrower may voluntarily prepay the Obligations in whole or in part at any time during the term of this Agreement.  Any voluntary prepayment of the Obligations shall be made in immediately available funds in an amount equal to the sum of (w) any and all principal on the Loan outstanding under the Notes as of the date of such prepayment, *plus* (x) an amount equal to $787,500, *less* any and all interest on the Loan (but specifically excluding any interest accruing at the Default Rate) actually paid in cash by the Borrower on or prior to the date of such prepayment (the "Prepayment Fee"), *plus* (y) any and all interest on the Loan accruing at the Default Rate outstanding hereunder as of the date of such prepayment, *plus* (z) without duplication, any and all other Obligations (including without limitation any and all fees, costs, expenses, penalties or other obligations or amounts) owing hereunder or under any of the Notes, regardless of whether such amounts are contingent or non-contingent (such sum, the "Aggregate Prepayment").  In the event of any partial prepayment of the Obligations, such payment shall be made in immediately available funds and applied, first, to the repayment of any fees, costs or expenses owing to the Lenders hereunder; second, to the repayment of any and all interest accrued hereunder as of the date of such repayment (regardless of whether or not such interest would otherwise be due and payable hereunder); third, to pay an amount equal to the product of (x) the Prepayment Fee *multiplied by* (y) a fraction equal to the amount of the principal being prepaid hereunder as a result of such prepayment *divided by* the aggregate principal amount of the Loan outstanding as of such date; and, fourth, to the repayment of the principal amount of the Loan outstanding hereunder.

(b)    Mandatory Prepayments.  Immediately upon the occurrence of any Change of Control (as defined below), the Borrower shall cause the Obligations to be prepaid in their entirety in immediately available funds in an amount equal to the

3

Aggregate Prepayment. For purposes of this Agreement, "Change of Control" shall mean (i) any merger, reorganization or consolidation of the Borrower or ALH Holdings LLC ("Parent"), (ii) any sale or other transfer, whether directly or indirectly, in a single transaction or series of transactions, of a majority or more of the assets of the Borrower and its direct and indirect subsidiaries on a consolidated basis or of the Parent and its direct and indirect subsidiaries on a consolidated basis or (iii) an acquisition, directly or indirectly, by any Person or group (within the meaning of Rules 13d-3 and 13d-5 under the Securities Exchange Act of 1934, as amended (the "Exchange Act")) other than any holder or holders of the Class A Membership Interests or the Class B Membership Interests of the Parent or their respective affiliates, in a single transaction or series of transactions, of beneficial ownership (as determined pursuant to Rule 13d-3 of the Exchange Act) of more than forty percent (40%) of the outstanding equity interests of the Borrower or Parent or of the combined voting power of the then-outstanding voting equity interests in the Borrower or Parent then entitled to vote for or appoint the board of directors of such entity, in each case whether through new issuances or otherwise.

(c)      No Further Advances. In the event that the Obligations are repaid in their entirety at any time hereunder, whether pursuant to a voluntary prepayment or a mandatory prepayment, the Borrower shall not be entitled to borrow any additional amounts hereunder, regardless of whether or not the Borrower would otherwise be entitled to request Subsequent Advances pursuant to Section 1.01(a).

Section 1.05. No Revolver. The Loan is not a revolving credit facility, and amounts borrowed and repaid hereunder may not be re-borrowed.

Section 1.06. Closing Fee. Upon the Closing, the Borrower shall pay the Lenders in immediately available funds a fee in the amount of $131,250 (the "Closing Fee"), which Closing Fee is hereby deemed fully earned and payable. Each Lender shall be entitled to receive an amount equal to such Lender's Pro Rata Share of the Closing Fee. The Borrower hereby directs each Lender to deduct such Lender's Pro Rata share of the Closing Fee from such Lender's Pro Rata Share of the Initial Advance and agrees that the receipt by the Borrower of an amount equal to such Lender's Pro Rata Share of the Initial Advance *less* such Lender's Pro Rata Share of the Closing Fee shall constitute delivery by such Lender of such Lender's Pro Rata Share of the Initial Advance in its entirety.

Section 1.07. Applications of Payments; Late Charges.

(a)      The Borrower shall cause amounts owing hereunder to be paid ratably to the Lenders in proportion to each Lender's Pro Rata Share; provided, however, that in the event that any Lender has failed to fund its Pro Rata Share of any advance(s) made hereunder, the Borrower shall cause the payments owing to the Lenders hereunder to be adjusted in proportion to the ratio of advances made by each Lender hereunder to the aggregate amount of advances made by all Lenders hereunder. Each Lender covenants and agrees that if the Borrower does not disburse payments to the Lender in accordance with this Section 1.07(a), each Lender that receives payments in excess of the amount to which such Lender is entitled shall hold such payments in trust and shall cause such excess payments to be reallocated among the Lenders in accordance herewith at the

4

direction of the Requisite Lenders.  Each Lender agrees that the allocations determined by the Requisite Lenders shall be conclusive.

(b)     Subject to Section 1.04(a) above, payments received by the Lenders from the Borrower shall be applied in the following manner:

(1)     first, to repay any and all costs or expenses incurred by or other Obligations (other than payments of principal or interest) owing hereunder;

(2)     second, to repay all interest accrued hereunder prior to the date of such payment; and

(3)     third, to repay all principal amounts outstanding hereunder.

Section 1.08.  Closing. The closing of the transactions contemplated under this Agreement (the "Closing") shall take place on the first (1st) Business Day after all of the conditions under Section 3.01 of this Agreement shall have been satisfied or waived by the Requisite Lenders (other than those requiring a delivery of a certificate or other document, or the taking of other action, at the Closing), or on such other date as the parties may mutually agree in writing (such date on which the Closing occurs hereinafter is referred to as the "Closing Date"). For purposes of this Agreement, "Business Day" shall mean a day, other than a Saturday or a Sunday, on which banks are not authorized or required by law to close in New York City. Should any payment hereunder by the Borrower become due and payable on a non-Business Day, such payment shall be made on the next succeeding Business Day.  If the Initial Advance contemplated hereby is not consummated on or before May 10, 2002, the Borrower and the Requisite Lenders shall have the right to terminate this Agreement.

## Article II

## REPRESENTATIONS AND WARRANTIES

Section 2.01.  Organization; Authority and Approvals.  The Borrower represents and warrants that (i) the Borrower is validly organized, existing and in good standing under the laws of the state of Delaware; it has all requisite power and authority to own, lease, and operate its assets, property and business and to carry on the operations of its business as they are now being conducted; and it is duly qualified to do business in any jurisdiction in which the nature of its operations so requires; (ii) the persons executing this Agreement and the Notes on behalf of the Borrower are duly authorized by the Borrower and all necessary resolutions or other authorizing acts and documents having been issued to enter into this Agreement, to issue the Notes, to incur the Obligations and to bind the Borrower to perform this Agreement and the Notes in accordance with their respective terms; (iii) the execution, delivery and performance of this Agreement and the Notes and incurring the Obligations are within the duly authorized powers of the Borrower and do not contravene any law, rule, or regulation applicable to the Borrower, the certificate of incorporation, by-laws of the Borrower, or any material contractual obligation binding upon the Borrower (including, without limitation, any agreements with respect to any indebtedness of Borrower in excess of $100,000 or any guarantee obligations of the Borrower for underlying indebtedness in excess of $100,000 outstanding or existing as of the

5

77291

date hereof); and (iv) this Agreement and the Notes are valid, legal and binding obligations of the Borrower, enforceable against the Borrower in accordance with their respective terms.

Section 2.02. <u>No Default; No Material Adverse Effect</u>. The Borrower represents and warrants that, other than as disclosed in the audited financial statements of the Borrower for the fiscal year ended December 31, 2001 (the "<u>Borrower Financial Statements</u>") no event has occurred and no condition exists (i) which, upon the execution of this Agreement, would constitute an Event of Default hereunder, or (ii) which could have a material adverse effect on the ability of the Borrower to perform its obligations under this Agreement or the Notes (a "<u>Material Adverse Effect</u>").

Section 2.03. <u>Solvency</u>. The Borrower is not, and upon giving effect to the Loan and the other Obligations under this Agreement and the Notes and the application of the proceeds therefrom, will not be insolvent within the meaning of Title 11 of the United States Code or any successor law.

Section 2.04. <u>Borrowed Money</u>. Other than as disclosed in the Borrower Financial Statements, the Borrower is not in default under any agreements with respect to any indebtedness for borrowed money or any guarantee obligations of the Borrower existing as of the date of this Agreement.

### Article III

### CONDITIONS PRECEDENT

Section 3.01. <u>Agreement and Initial Advance</u>. This Agreement, and the obligations of the Lenders hereunder (including, without limitation, the obligation to make the Initial Advance) are subject to the fulfillment, to the satisfaction of the Requisite Lenders, of each of the following conditions precedent: (i) the Borrower and each of Lenders shall have duly executed and delivered this Agreement and the Requisite Lenders shall have received a duly executed counterpart to this Agreement from the Borrower and each of the Lenders; (ii) the Borrower shall have duly executed and delivered to each of the Lenders a duly executed copy of each Note evidencing the indebtedness of the Borrower to each such Lender hereunder; (iii) all of the representations and warranties of the Borrower contained herein shall be true and correct; (iv) no event shall have occurred and no condition shall exist which, upon the execution of this Agreement, would constitute an Event of Default hereunder, or which could have a Material Adverse Effect on the Borrower; (v) all proceedings in connection with the transactions contemplated by this Agreement, the Notes and all other documents and instruments incident to such transactions shall be satisfactory to the Requisite Lenders, and the Requisite Lenders shall have received all such counterpart originals or certified or other copies of such documents as the Requisite Lenders may reasonably request; and (vi) the Closing Fee shall have been paid.

Section 3.02. <u>Subsequent Advances</u>. The obligations of the Lenders to make any Subsequent Advances are subject to the following conditions precedent: (i) each of the conditions precedent set forth in Section 3.01 shall have been satisfied upon the Closing; (ii) all of the representations and warranties of the Borrower contained herein shall be true and correct immediately prior to and upon giving effect to such Subsequent Advance; (iii) no event shall

6

have occurred and no condition shall exist which, but for the passage of time or providing notice, constitutes or would constitute an Event of Default hereunder, or which could have a Material Adverse Effect on the Borrower; (iv) each of the Lenders shall have received a Borrower's Notice executed by the Borrower's chief financial officer in accordance with Section 1.01(a); and (v) the Requisite Lenders shall have received such other documents or information as they may reasonably request.

## Article IV

## COVENANTS

Section 4.01. <u>Borrower Covenants</u>. The Borrower covenants and agrees with the Lenders that, while this Agreement is in effect, the Borrower will:

(a)    Use the proceeds of the Loan solely to finance the working capital needs of the Borrower and its subsidiaries.

(b)    Perform and comply with all terms, conditions and provisions set forth in this Agreement and in all other instruments and agreements related hereto, including, without limitation, the Notes.

(c)    Make, execute and deliver to the Lenders such instruments, documents, agreements and any other writings and take and perform any and all other actions as may be reasonably necessary to document the Loan and the transactions contemplated hereby.

(d)    Comply in all material respects, with all applicable laws, rules, regulations and orders of any governmental authority, the noncompliance with which might materially and adversely affect the Borrower.

(e)    Not, other than in the ordinary course of its business, voluntarily purchase, redeem, defease or prepay any principal of, premium, if any, interest or other amount payable in respect of any indebtedness (other than trade payables in an aggregate amount not to exceed $10,000 owing to any single obligor) prior to the stated date of maturity of such indebtedness, except in connection with a Change of Control pursuant to which the Borrower shall prepay the Obligations in their entirety pursuant to Section 1.04.

(f)    Promptly notify the Lenders of a breach of or noncompliance with any term, representation, condition or covenant contained in this Agreement or the Notes.

Section 4.02. <u>Subordination</u>. The Borrower and the Lenders hereby acknowledge and agree that any and all Obligations under this Agreement and the Notes, are hereby deemed to be subordinate in all respects, whether in right of payment, priority or otherwise, to any indebtedness for borrowed money of the Borrower existing as of the date of this Agreement (together with any refinancings or replacements of such existing indebtedness, provided that any refinancings or replacements of such existing indebtedness shall be approved by the board of directors of the Borrower in accordance with applicable law). The Obligations shall not be, and nothing in this Section 4.02 shall be deemed to cause the Obligations to be, subordinate in any

7

respect to the obligations of the Borrower to any of its trade creditors or to any indebtedness of the Borrower not expressly set forth in the immediately preceding sentence.

## Article V

## EVENTS OF DEFAULT

Section 5.01.  Events of Default.  An "Event of Default" shall exist if any of the following conditions or events shall occur:

(a)      The Borrower shall fail to pay any installment of principal or interest on the Loan when due, whether on the Maturity Date, as a result of a mandatory prepayment requirement, upon acceleration or otherwise, or to pay when due any other Obligations owing hereunder or under the Notes.

(b)      The Borrower (i) is generally not paying, or admits in writing its inability to pay, its debts as they become due, (ii) files, or consents by answer or otherwise to the filing against it of, a petition for relief or reorganization or arrangement or any other petition in bankruptcy, for liquidation or to take advantage of any bankruptcy, insolvency, reorganization, moratorium or other similar law of any jurisdiction, (iii) makes an assignment for the benefit of its creditors, (iv) consents to the appointment of a custodian, receiver, trustee or other officer with similar powers with respect to it or with respect to any substantial part of its property, (v) is adjudicated as insolvent or to be liquidated, or (vi) takes corporate action for the purpose of any of the foregoing.

(c)      A court or other governmental authority of competent jurisdiction enters an order appointing, without the consent of the Borrower, a custodian, receiver, trustee or other officer with similar powers with respect to the Borrower or with respect to any substantial part of the Borrower's property, or constituting an order for relief or approving a petition for relief or reorganization or any other petition in bankruptcy or for liquidation or to take advantage of any bankruptcy or insolvency law of any jurisdiction, or ordering the dissolution, winding-up or liquidation of the Borrower, or any such petition shall be filed against the Borrower and such petition shall not be dismissed within sixty (60) days.

(d)      Failure by the Borrower to comply with or to perform any other material term, obligation, covenant, condition or agreement which it is obligated to perform hereunder or under any agreement related to this Agreement, the Notes or any other agreement with respect to the Loan.

(e)      The payment of any obligations or other amounts owing pursuant to any other loan, extension of credit, security agreement, purchase agreement or any other agreement for borrowed money is accelerated or otherwise required to be paid prior to its stated date of maturity for any reason whatsoever.

8

(f)    Any representation or statement made or furnished to the Lenders by the Borrower is false or misleading in any material respect either now or at the time made or furnished.

(g)    A Material Adverse Effect shall have occurred, or the Requisite Lenders reasonably believe the prospect of payment or performance of the Obligations is impaired.

(h)    A Change of Control occurs.

Section 5.02. Remedies on Default. From and after the occurrence of any Event of Default, the Requisite Lenders may elect in their sole discretion at any time, without notice, to (i) terminate the Loan, (ii) declare all or any portion of the Obligations hereunder immediately due and payable, all without presentment, demand, protest or further notice of any kind, all of which are expressly waived by Borrower to the extent permitted by law, (iii) charge interest at the Default Rate and/or (iv) exercise all of the remedial rights of a creditor under this Agreement, the Notes, the Uniform Commercial Code as enacted in the applicable jurisdiction governing this Agreement, and under other applicable law, including, without limitation, (a) the right to apply to a court of equity for injunctive relief; and (b) the right, without notice to the Borrower (any such notice being expressly waived hereby) to set off and apply any or all money, instruments, credits or other assets of the Borrower (including, without limitation obligations owed by the Lenders to the Borrower) against any obligations of the Borrower to the Lenders; provided, however that upon the occurrence of an Event of Default pursuant to Sections 5.01(b) or 5.01(c), the Loan shall be immediately terminated and all of the Obligations shall become immediately due and payable without declaration, notice or demand by any Person; provided further, however that if the Borrower breaches or fails to comply with any of its representations or warranties contained in Section 2 or the covenants contained in Sections 4.01(a)-(e), such breach or failure to comply shall not constitute an Event of Default if such breach or failure is capable of being promptly cured, and the Borrower does not cure such default (as determined by the Requisite Lenders in their sole judgment) within ten (10) days after receipt of notice from the Requisite Lenders declaring a default.

Section 5.03. Exercise of Remedies. No right, remedy or power conferred upon or reserved to the Lenders under this Agreement or the Notes or arising out of this Agreement or the Notes is intended to be exclusive of any other available right, remedy or power, but each and every such right, remedy or power will be cumulative and will be in addition to any other right, remedy or power given under this Agreement or the Notes or now or hereafter existing at law or in equity or by statute. No course of dealing and no delay or omission by any Lender to exercise any right, remedy or power accruing upon any Event of Default will impair any such right, remedy or power or be construed to be a waiver thereof, unless such waiver is in writing, signed by the Lender, and then only to the extent set forth therein. Any right, remedy or power of the Lenders hereunder may be exercised from time to time and as often as may be deemed expedient by the Requisite Lenders, and a waiver by the Requisite Lenders on one occasion shall not be construed as a bar to, or waiver of, any such exercise on any other occasion. No Lender shall take any course of action or exercise any right, remedy or power unless expressly approved by the Requisite Lenders. Subject to the foregoing sentence, in order to entitle the Lenders to

9

exercise any right, remedy or power reserved under this Agreement or the Notes, it shall not be necessary to give any notice, other than such notice as may be herein expressly required.

      Section 5.04. <u>Fees and Expenses; Indemnification</u>. In the event that any Lenders, with the consent of Requisite Lenders, should engage attorneys or incur other expenses for the enforcement of performance or observance of any obligation or agreement on the part of the Borrower contained herein or in the Notes, the Borrower agrees that it will, on demand, pay to such Lenders the reasonable fees of such attorneys and such other expenses so incurred, whether or not suit is brought. Without limiting the foregoing, all of the costs and expenses of Shamrock Holdings of California, Inc. ("SHOC") incurred in connection with the preparation, documentation or execution of this Agreement and the Notes and any and all actions taken in connection therewith shall be paid by the Borrower at Closing (it being understood and agreed by the Borrower that at SHOC's election, in its sole discretion, such amounts may be deducted from SHOC's Pro Rata Share of the Initial Advance). The Borrower also agrees to indemnify and hold harmless the Lenders against any and all costs, expenses, fees, liabilities, damages, claims, obligations or penalties incurred by the Lenders relating in any way to or arising in connection with the Obligations or this Agreement, or the Notes, the Obligations and the transactions contemplated in connection herewith; <u>provided</u>, <u>however</u>, that only the fees and expenses of one counsel approved by the Requisite Lenders shall be reimbursed by the Borrower pursuant to this Section 5.04.

## Article VI

## PAYMENTS ON NOTES

      Section 6.01. <u>Place of Payment</u>. The Borrower will pay all sums becoming due to any Lender with respect to the Obligations, including any prepayment penalties, to such Lender at the address set forth on <u>Exhibit A</u> attached hereto, or by such method or at such other address as such Lender shall from time to time specify to the Borrower in writing for such purpose. The Borrower shall not be entitled to require the presentation or surrender of the Notes or the making of any notation thereon by any Lender, except that upon the written request of the Borrower made concurrently with or reasonably promptly after payment or prepayment in full in cash of all of the Obligations outstanding hereunder, the Lenders shall surrender the Notes for cancellation, reasonably promptly after any such request, to the Borrower at its principal executive office.

      Section 6.02. <u>Usury Savings Clause</u>. Notwithstanding any provision to the contrary in this Agreement or in the Notes, in no event shall this Agreement, the Notes or any other document related hereto or thereto require the payment or permit the collection of interest in excess of the maximum amount permitted by applicable usury laws (now or hereafter enacted). If from any circumstances whatsoever, fulfillment of any provision of this Agreement, the Notes or any other document related hereto or thereto shall involve transcending the limit prescribed by applicable law for the collection or charging of interest, then, the obligation to be fulfilled shall be reduced to such limit, and if from any such circumstances the Lenders shall ever receive anything of value as interest or deemed interest by applicable law under this Agreement, the Notes or any other document related hereto or thereto, an amount that would exceed the

highest lawful rate, such amount that would be excessive interest shall be applied to the reduction of the principal amount owing under the Loan or on account of any other indebtedness of the Borrower, and not to the prepayment of interest, or if such excessive interest exceeds the unpaid balance of such indebtedness, such excess shall be refunded to the Borrower. In determining whether or not the interest paid or payable with respect to any indebtedness of the Borrower to the Lenders, under any specified contingency, exceeds the Highest Lawful Rate (as defined below), the Borrower and the Lenders shall to the maximum extent permitted by applicable law, (a) characterize any non-principal payment as an expense, fee or premium rather than as interest, (b) exclude voluntary prepayments and the effects thereof, (c) amortize, prorate, allocate and spread the total amount of interest throughout the full term of such indebtedness so that interest thereon does not exceed the maximum amount permitted by applicable law, and/or (d) allocate interest between portions of such indebtedness, to the end that no such portion shall bear interest at a rate greater than that permitted by applicable law. For purposes of this Section 6.02, "Highest Lawful Rate" shall mean the maximum rate of nonusurious interest that may be contracted for, taken, reserved or received on the Loan under laws applicable to the Lenders.

## Article VII

## MISCELLANEOUS

Section 7.01. Interpretation. Article and Section headings used herein are for convenience only and shall not affect the construction or interpretation of this Agreement. Use of the singular shall include the plural, and vice versa, the conjunctive shall include the disjunctive, and vice versa, whenever so appropriate, and masculine, feminine, and neuter pronouns shall be considered interchangeable. Specification of any section or subsection herein shall be deemed to include specification of any exhibit referred to therein. Each party to this Agreement has participated in its drafting, and this Agreement shall be interpreted without reference to any rule of construction providing for interpretation of documents against the Persons drafting them. As used herein, "Person" includes any individual, corporation, trust, partnership, limited liability company, association, or other legal entity, and any government or agency or department or division thereof. For purposes of this Agreement, time is of the essence.

Section 7.02. Notices. All notices, certificates or other communications hereunder will be sufficiently given and will be deemed given, unless otherwise provided herein, (a) on the third day following the day on which the same are mailed by certified or registered mail, postage prepaid, bearing the address of the Lenders as stated in Exhibit A hereto or the Borrower at the address stated below, or (b) upon delivery when delivered by hand delivery to any officer of the Borrower or (c) upon receipt when sent to the Lenders or the Borrower by facsimile, with receipt confirmed. The Lenders and the Borrower may, by notice given hereunder, designate any future or different address to which subsequent notices, certificates or other communications shall be sent.

11

The address for notices to Borrower is as follows:

To the Borrower:    ALH II, Inc.
489 Fifth Avenue
New York, NY  10017
Attention:  Chairman
Telephone No.: (917) 282-7375
Telecopier No.: (212) 867-6303

ALH II, Inc.
7800 Belfort Parkway
Suite 200
Jacksonville, Florida  32256
Attention:  Chief Financial Officer
Telephone No.: (904) 279-9506
Telecopier No.: (904) 279-9556

Section 7.03.  Survival.  This Agreement shall survive and continue until the Obligations have been indefeasibly paid in full in cash.  Notwithstanding the termination of this Agreement, Sections 5.04, 7.02, 7.06 and 7.07 shall survive indefinitely.

Section 7.04.  Severability.  In the event that any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.

Section 7.05.  Counterparts.  Duplicate originals of this Agreement may be signed by the parties, each of which will be an original but all of which together shall constitute one and the same agreement.

Section 7.06.  Binding Effect; Modification.  This Agreement shall bind and inure to the benefit of the parties, their legal representatives, successors and assigns, except that (a) the Borrower may not assign or transfer its rights or obligations hereunder or under the Notes or any interests herein or therein without the prior written consent of the Requisite Lenders; and (b) no Lender may assign or transfer its rights or obligations hereunder or under the Notes or any interests herein or therein, other than to the holders of the then-outstanding Class A Membership Interests and Class B Membership Interests of Parent and Affiliates of such holders, without the prior written consent of the Requisite Lenders.  This Agreement and its Exhibits, together with the provisions of the Notes and other documents specifically identified herein, constitute the final, complete and exclusive agreement between the parties hereto relating to the subject matter hereof superseding all prior or contemporaneous oral or written understandings with respect to such subject matter, and no amendment or waiver of any provision of this Agreement or the Notes nor consent to any departure by the Borrower therefrom shall in any event be effective unless the same shall be in writing and signed by the Requisite Lenders and the Borrower, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

12

77291

Section 7.07. <u>GOVERNING LAW</u>. THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT AND THE NOTES SHALL BE GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REFERENCE TO THE CONFLICT OF LAW RULES THEREOF WHICH COULD CAUSE THE LAW OF ANY OTHER STATE TO APPLY).

Section 7.08. <u>Submission to Jurisdiction; Waiver</u>. For the benefit of the other parties, each party to this Agreement irrevocably agrees that any suit, action or proceeding which may arise out of or in connection with the Obligations, this Agreement and/or the Notes may be brought in the courts of the State of New York in New York County or the courts of the United States District Court of the Southern District of New York, which shall have jurisdiction to settle any disputes arising out of or in connection with the Obligations this Agreement and/or the Notes and for such purpose each party hereby irrevocably and unconditionally submits to the jurisdiction of such courts. Each party to this Agreement irrevocably waives any objection it may now or hereafter have to the courts referred to in this Section 7.08 being nominated as the forum to hear and determine any suit, action or proceeding and to settle any disputes which may arise out of or in connection with the Obligations, this Agreement and/or the Notes and agrees not to claim that any such court is not a convenient or appropriate forum. EACH PARTY HERETO HEREBY EXPRESSLY WAIVES ANY AND ALL OF ITS RIGHTS TO HOLD A TRIAL BY JURY WITH RESPECT TO ANY SUIT, ACTION OR PROCEEDING WHICH ARISES OUT OF OR IN CONNECTION WITH THE OBLIGATIONS, THIS AGREEMENT AND/OR THE NOTES AND THE TRANSACTIONS CONTEMPLATED HEREIN AND THEREIN AND EACH PARTY HERETO HEREBY AGREES THAT ANY SUCH SUIT, ACTION OR PROCEEDING SHALL BE CONDUCTED AS A BENCH TRIAL IN WHICH A JUDGE SHALL SOLELY ACT AS TRIER OF LAW AND FACT.

## Article VIII

## REQUISITE LENDERS

Section 8.01. <u>Requisite Lenders</u>. For purposes of this Agreement, "<u>Requisite Lenders</u>" shall mean Lenders holding at least fifty-one percent (51%) of the aggregate principal amount of the Loan outstanding as of such date of determination. In the event that any term or provision of this Agreement is subject to the discretion or determination of the Requisite Lenders, no Lender shall take any action that is contrary to or otherwise inhibits the discretion or determination of the Requisite Lenders. In dealing with this Agreement, the Notes, the Obligations and any instruments, agreements or documents in connection with this Agreement and the Notes, and in exercising or failing to exercise all or any of the powers conferred upon the Requisite Lenders hereunder or thereunder, the Requisite Lenders shall not assume any, and shall incur no, responsibility whatsoever to any Lender by reason of any error in judgment or other act or omission performed or omitted hereunder or in connection with this Agreement, the Notes or the Obligations. The provisions of this Article VIII are solely for the benefit of the Requisite Lenders and the Lenders, and neither the Borrower nor any other Person shall have any rights as a third party beneficiary with respect to such provision.

13

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

BORROWER:

ALH II, INC.

By _____
    Name:
    Title:

LENDERS:

**CLASS A MEMBERS**    SHAMROCK HOLDINGS OF CALIFORNIA, INC.

By: _____
    Name:
    Title:

_____
Richard Dean Anderson

The Richard Clayton Trust of 1992

By: _____
    Name:
    Title:

_____
Clint Eastwood

_____
James Foley

77291

**The Fogelson Trust of 1992**


**By:** _____
     Name:
     Title:


**Ganz Family Trust of 1993**


**By:** _____
     Name:
     Title:


_____
Bruce M. Ramer


**The Perry Family Trust**


**By:** _____
     Name:
     Title:


**Penn Trust of 1992**


**By:** _____
     Name:
     Title:


_____
Ann Ramer

77291

The Shall Chemel Trust of 1994

By: _____
     Name:
     Title:


_____
Christopher Thompson


_____
Gy Waldron


Yorkin Family Limited Partnership

By: _____
     Name:
     Title:


The Roy and Judy Kaufman Living Trust

By: _____
     Name:
     Title:


Bernstein Trust of 1989

By: _____
     Name:
     Title:

77291

_____

**David Bernstein**

_____

**Lori Bernstein**

_____

**Bunny Wasser**

_____

**Andrew Wasser**

_____

**Noah Fogelson**

_____

**Adam Fogelson**

**Harold and Ruth Borden Trust**

**By:**    _____
                Name:
                Title:

_____

**Harold Brown**

77291

_____
Ms. Hermione Brown


_____
Tom R. Camp, Esq.


Hirshan Family Trust


By: _____
     Name:
     Title:


Katz Family Trust


By: _____
     Name:
     Title:


_____
Stephen M. Miller, M.D.


_____
Mr. Alfred Stern


_____
Dennis M. Wasser, Esq.


77291

**CLASS B MEMBERS**                    D.A. Gardens, Ltd.


By: _____
               Name:
               Title:


The Erica Jesselson 1994 CLAT


By: _____
               Name:
               Title:


SELK, LLC


By: _____
               Name:
               Title:


77291

# EXHIBIT A

# LENDERS

| Name<br>Class A Members | Pro Rata Share | Aggregate Commitment Amount | Address |
|---|---|---|---|
| Shamrock Holdings of California, Inc. | 44.910% | $1,964,800 | 4444 Lakeside Drive<br>Burbank, CA 91505 |
| Richard Dean Anderson | 0.800% | 35,000 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| The Richard Clayton Trust of 1992 | 0.594% | 26,000 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| Clint Eastwood | 5.943% | 260,000 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| James Foley | 0.389% | 17,000 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| The Fogelson Trust of 1992 | 0.800% | 35,000 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| Ganz Family Trust of 1993 | 0.594% | 26,000 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| Bruce M. Ramer | 0.389% | 17,000 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| The Perry Family Trust | 0.594% | 26,000 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| Penn Trust of 1992 | 0.389% | 17,000 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| Ann Ramer | 0.594% | 26,000 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| The Shall Chemel Trust of 1994 | 0.594% | 26,000 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| Christopher Thompson | 0.594% | 26,000 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| Gy Waldron | 0.594% | 26,000 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| Yorkin Family Limited Parnership | 5.943% | 260,000 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| The Roy and Judy Kaufman Living Trust | 0.800% | 35,000 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| Bernstein Trust of 1989 | 0.800% | 35,000 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| David Bernstein | 0.197% | 8,600 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| Lori Bernstein | 0.197% | 8,600 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| Bunny Wasser | 0.197% | 8,600 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| Andrew Wasser | 0.197% | 8,600 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| Noah Fogelson | 0.197% | 8,600 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| Adam Fogelson | 0.197% | 8,600 | 2049 Century Park East, Suite 2500<br>Los Angeles, CA 90087 |
| Harold and Ruth Borden Trust | 0.594% | 26,000 | 10580 Wilshire Blvd., Unit 73<br>Los Angeles, CA 90024 |

77291

| Name<br>Class A Members | Pro Rata Share | Aggregate Commitment Amount | Address |
|---|---|---|---|
| Harold Brown | 1.189% | 52,000 | Gang, Tyre, Ramer & Brown, Inc.<br>132 S. Rodeo Drive<br>Beverly Hills, CA 90212 |
| Ms. Hermione Brown | 0.389% | 17,000 | Gang, Tyre, Ramer & Brown, Inc.<br>132 S. Rodeo Drive<br>Beverly Hills, CA 90212 |
| Tom R. Camp, Esq. | 0.389% | 17,000 | Gang, Tyre, Ramer & Brown, Inc.<br>132 S. Rodeo Drive<br>Beverly Hills, CA 90212 |
| Hirshan Family Trust | 0.594% | 26,000 | William Morris Agency<br>151 El Camino Drive<br>Beverly Hills, CA 90212 |
| Katz Family Trust | 0.389% | 17,000 | 9607 Wendover Drive<br>Beverly Hills, CA 90210 |
| Stephen M. Miller, M.D. | 0.389% | 17,000 | 10594 N. 65th Street<br>Longmont, CO 80503 |
| Mr. Alfred Stern | 0.197% | 8,600 | Schroders<br>10877 Wilshire Blvd., Suite 500<br>Los Angeles, CA 90024 |
| Dennis M. Wasser, Esq. | 0.800% | 35,000 | Wasser, Rosenson & Carter<br>2029 Century Park East, Suite 1200<br>Los Angeles, CA 90067 |
| Class B Members | | | |
| D.A. Gardens, Ltd. | 7.143% | 312,500 | 5 Hashita Street<br>P.O. Box 3566<br>Caesera, Israel |
| The Erica Jesselson 1994 CLAT | 7.143% | 312,500 | 450 Park Avenue<br>Suite 2603<br>New York, New York 10022 |
| SELK, LLC | 14.286% | 625,000 | c/o Shalom E. Lamm<br>489 Fifth Avenue<br>New York, New York 10017 |
| TOTAL | 100% | $4,375,000.00 | |

77291

## EXHIBIT B

### FORM OF BORROWER'S NOTICE

[Letterhead of ALH II, Inc.]

[Date]

I, William R. Lanius, the chief financial officer of ALH II, Inc., a Delaware corporation ("Borrower"), am delivering this Borrower's Notice to [_____] ("Addressee Lender") pursuant to the Loan Agreement, dated May 7, 2002 (the "Loan Agreement"), by and among Borrower and each of the Lenders from time to time signatory thereto. Capitalized terms used in this Borrower's Notice but not defined herein shall have the meanings ascribed to them in the Loan Agreement.

Borrower hereby gives irrevocable notice, pursuant to Section 1.01(a) of the Loan Agreement, of its request for a Subsequent Advance in the amount of $_____ to be made on _____, 2002. The Pro Rata Share of Addressee Lender for such Subsequent Advance is $_____.

On behalf of Borrower, I hereby certify that each of the following are true and correct as of the date hereof:

(1) All of the conditions set forth in Section 3.02 of the Loan Agreement have been satisfied as of the date hereof.

(2) All of the representations and warranties of the Borrower set forth in the Loan Agreement are true and correct as of the date hereof and shall be true and correct immediately prior to and upon giving effect to the Subsequent Advance requested hereunder.

(3) No event has occurred and no condition exists which, but for the passage of time or providing notice, constitutes or would constitute an Event of Default under the Loan Agreement, or which could have a Material Adverse Effect on the Borrower.

ALH II, INC.

By: _____
    William R. Lanius
    Chief Financial Officer

77291

## EXHIBIT C

## **PROMISSORY NOTE**

$_____

New, York, New York
May, 7, 2002

FOR VALUE RECEIVED, the undersigned, ALH II, Inc., a Delaware corporation ("Borrower"), HEREBY PROMISES TO PAY to _____, [a _____ corporation] ("Lender"), at its address at [_____], or at such other place as Lender may designate from time to time in writing, in lawful money of the United States of America and in immediately available funds, the principal amount of _____ ($_____ ) or, if less, the aggregate principal amount of such Lender's advances made to Borrower under the Loan Agreement (as defined below), together with all interest thereon at the rate of 18% (or, as applicable, the default rate of interest set forth therein), and other amounts owing in connection therewith in accordance with the terms of the "Loan Agreement" (as hereinafter defined). All capitalized terms used but not otherwise defined herein have the meanings given to them in the Loan Agreement.

This Promissory Note is one of the Notes issued pursuant to that certain Loan Agreement, dated as of May 7, 2002, by and among Borrower and each of the Lenders from time to time party thereto (the "Loan Agreement") and is entitled to all of the benefits of the Loan Agreement. Reference is hereby made to the Loan Agreement for a statement of all of the terms and conditions under which the loans evidenced hereby are made and are to be repaid. The date and amount of each advance made by Lender to Borrower, the rates of interest applicable thereto and each payment made on account of the principal thereof, shall be recorded by Lender on its books; provided that the failure of Lender to make any such recordation shall not affect the obligations of Borrower to make a payment when due of any amount owing under the Loan Agreement or this Promissory Note in respect of advances made by Lender to Borrower.

The principal amount of the indebtedness evidenced hereby shall be payable in the amounts and on the dates specified in the Loan Agreement, the terms of which are hereby incorporated herein by reference. Interest thereon shall be paid until such principal amount is paid in full at such interest rates and at such times, and pursuant to such calculations, as are specified in the Loan Agreement.

If any payment on this Promissory Note becomes due and payable on a day other than a Business Day, the maturity thereof shall be extended to the next succeeding Business Day and, with respect to payments of principal, interest hereon shall be payable at the then applicable rate during such extension.

77291

# EXHIBIT D

## BORROWER'S ACCOUNT INFORMATION

Wire funds to:
    AmSouth Bank
    9421 Baymeadows Road
    Jacksonville, Florida, USA 32256
    (904) 281-2720
    to account of ALH II, Inc.
    Account# 3283372148
    ABA# 062000019

77291

EXHIBIT 2

# PROMISSORY NOTE

$1,964,800.00

New, York, New York
May, 7, 2002

FOR VALUE RECEIVED, the undersigned, ALH II, Inc., a Delaware corporation ("Borrower"), HEREBY PROMISES TO PAY to Shamrock Holdings of California, Inc., a California corporation ("Lender"), at Lender's address at 4444 Lakeside Drive, Burbank, California 91505, or at such other place as Lender may designate from time to time in writing, in lawful money of the United States of America and in immediately available funds, the principal amount of One Million Nine Hundred Sixty-Four Thousand Eight Hundred Dollars ($1,964,800.00) or, if less, the aggregate principal amount of such Lender's advances made to Borrower under the Loan Agreement (as defined below), together with all interest thereon at the rate of 18% (or, as applicable, the default rate of interest set forth therein), and other amounts owing in connection therewith in accordance with the terms of the "Loan Agreement" (as hereinafter defined). All capitalized terms used but not otherwise defined herein have the meanings given to them in the Loan Agreement.

This Promissory Note is one of the Notes issued pursuant to that certain Loan Agreement, dated as of May 7, 2002, by and among Borrower and each of the Lenders from time to time party thereto (the "Loan Agreement") and is entitled to all of the benefits of the Loan Agreement. Reference is hereby made to the Loan Agreement for a statement of all of the terms and conditions under which the loans evidenced hereby are made and are to be repaid. The date and amount of each advance made by Lender to Borrower, the rates of interest applicable thereto and each payment made on account of the principal thereof, shall be recorded by Lender on its books; provided that the failure of Lender to make any such recordation shall not affect the obligations of Borrower to make a payment when due of any amount owing under the Loan Agreement or this Promissory Note in respect of advances made by Lender to Borrower.

The principal amount of the indebtedness evidenced hereby shall be payable in the amounts and on the dates specified in the Loan Agreement, the terms of which are hereby incorporated herein by reference. Interest thereon shall be paid until such principal amount is paid in full at such interest rates and at such times, and pursuant to such calculations, as are specified in the Loan Agreement.

If any payment on this Promissory Note becomes due and payable on a day other than a Business Day, the maturity thereof shall be extended to the next succeeding Business Day and, with respect to payments of principal, interest hereon shall be payable at the then applicable rate during such extension.

Upon and after the occurrence of any Event of Default, this Promissory Note may, as provided in the Loan Agreement, and without demand, notice or legal process of any kind, be declared, and immediately shall become, due and payable.

Time is of the essence of this Promissory Note. Demand, presentment, protest and notice of nonpayment and protest are hereby waived by Borrower. Except as expressly provided in the Loan Agreement, this Note may not be assigned by Lender to any Person.

This Promissory Note is deemed to be subordinate in all respects, whether in right of payment, priority or otherwise, to any indebtedness for borrowed money of Borrower existing as of the date of the Loan Agreement (together with any refinancings or replacements of such existing indebtedness, provided that any refinancings or replacements of such existing indebtedness shall be approved by the board of directors of Borrower in accordance with applicable law).

**THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS NOTE SHALL BE GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REFERENCE TO THE CONFLICT OF LAW RULES THEREOF WHICH COULD CAUSE THE LAW OF ANY OTHER STATE TO APPLY).**

ALH II, INC.

By:   William R. Lanius
Title: Chief Financial Officer

# PROMISSORY NOTE

$35,000.00

New, York, New York
May, 7, 2002

FOR VALUE RECEIVED, the undersigned, ALH II, Inc., a Delaware corporation ("Borrower"), HEREBY PROMISES TO PAY to Richard Dean Anderson ("Lender"), at Lender's address at 2049 Century Park East, Suite 2500, Los Angeles, California 90087, or at such other place as Lender may designate from time to time in writing, in lawful money of the United States of America and in immediately available funds, the principal amount of Thirty-Five Thousand Dollars ($35,000.00) or, if less, the aggregate principal amount of such Lender's advances made to Borrower under the Loan Agreement (as defined below), together with all interest thereon at the rate of 18% (or, as applicable, the default rate of interest set forth therein), and other amounts owing in connection therewith in accordance with the terms of the "Loan Agreement" (as hereinafter defined). All capitalized terms used but not otherwise defined herein have the meanings given to them in the Loan Agreement.

This Promissory Note is one of the Notes issued pursuant to that certain Loan Agreement, dated as of May 7, 2002, by and among Borrower and each of the Lenders from time to time party thereto (the "Loan Agreement") and is entitled to all of the benefits of the Loan Agreement. Reference is hereby made to the Loan Agreement for a statement of all of the terms and conditions under which the loans evidenced hereby are made and are to be repaid. The date and amount of each advance made by Lender to Borrower, the rates of interest applicable thereto and each payment made on account of the principal thereof, shall be recorded by Lender on its books; provided that the failure of Lender to make any such recordation shall not affect the obligations of Borrower to make a payment when due of any amount owing under the Loan Agreement or this Promissory Note in respect of advances made by Lender to Borrower.

The principal amount of the indebtedness evidenced hereby shall be payable in the amounts and on the dates specified in the Loan Agreement, the terms of which are hereby incorporated herein by reference. Interest thereon shall be paid until such principal amount is paid in full at such interest rates and at such times, and pursuant to such calculations, as are specified in the Loan Agreement.

If any payment on this Promissory Note becomes due and payable on a day other than a Business Day, the maturity thereof shall be extended to the next succeeding Business Day and, with respect to payments of principal, interest hereon shall be payable at the then applicable rate during such extension.

Upon and after the occurrence of any Event of Default, this Promissory Note may, as provided in the Loan Agreement, and without demand, notice or legal process of any kind, be declared, and immediately shall become, due and payable.

Time is of the essence of this Promissory Note. Demand, presentment, protest and notice of nonpayment and protest are hereby waived by Borrower. Except as expressly provided in the Loan Agreement, this Note may not be assigned by Lender to any Person.

This Promissory Note is deemed to be subordinate in all respects, whether in right of payment, priority or otherwise, to any indebtedness for borrowed money of Borrower existing as of the date of the Loan Agreement (together with any refinancings or replacements of such existing indebtedness, provided that any refinancings or replacements of such existing indebtedness shall be approved by the board of directors of Borrower in accordance with applicable law).

THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS NOTE SHALL BE GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REFERENCE TO THE CONFLICT OF LAW RULES THEREOF WHICH COULD CAUSE THE LAW OF ANY OTHER STATE TO APPLY).

ALH II, INC.

By:    William R. Lanius
Title: Chief Financial Officer

# PROMISSORY NOTE

$26,000.00

New, York, New York
May, 7, 2002

FOR VALUE RECEIVED, the undersigned, ALH II, Inc., a Delaware corporation ("Borrower"), HEREBY PROMISES TO PAY to The Richard Clayton Trust of 1992 ("Lender"), at Lender's address at 2049 Century Park East, Suite 2500, Los Angeles, California 90087, or at such other place as Lender may designate from time to time in writing, in lawful money of the United States of America and in immediately available funds, the principal amount of Twenty-six Thousand Dollars ($26,000.00) or, if less, the aggregate principal amount of such Lender's advances made to Borrower under the Loan Agreement (as defined below), together with all interest thereon at the rate of 18% (or, as applicable, the default rate of interest set forth therein), and other amounts owing in connection therewith in accordance with the terms of the "Loan Agreement" (as hereinafter defined). All capitalized terms used but not otherwise defined herein have the meanings given to them in the Loan Agreement.

This Promissory Note is one of the Notes issued pursuant to that certain Loan Agreement, dated as of May 7, 2002, by and among Borrower and each of the Lenders from time to time party thereto (the "Loan Agreement") and is entitled to all of the benefits of the Loan Agreement. Reference is hereby made to the Loan Agreement for a statement of all of the terms and conditions under which the loans evidenced hereby are made and are to be repaid. The date and amount of each advance made by Lender to Borrower, the rates of interest applicable thereto and each payment made on account of the principal thereof, shall be recorded by Lender on its books; provided that the failure of Lender to make any such recordation shall not affect the obligations of Borrower to make a payment when due of any amount owing under the Loan Agreement or this Promissory Note in respect of advances made by Lender to Borrower.

The principal amount of the indebtedness evidenced hereby shall be payable in the amounts and on the dates specified in the Loan Agreement, the terms of which are hereby incorporated herein by reference. Interest thereon shall be paid until such principal amount is paid in full at such interest rates and at such times, and pursuant to such calculations, as are specified in the Loan Agreement.

If any payment on this Promissory Note becomes due and payable on a day other than a Business Day, the maturity thereof shall be extended to the next succeeding Business Day and, with respect to payments of principal, interest hereon shall be payable at the then applicable rate during such extension.

Upon and after the occurrence of any Event of Default, this Promissory Note may, as provided in the Loan Agreement, and without demand, notice or legal process of any kind, be declared, and immediately shall become, due and payable.

Time is of the essence of this Promissory Note. Demand, presentment, protest and notice of nonpayment and protest are hereby waived by Borrower. Except as expressly provided in the Loan Agreement, this Note may not be assigned by Lender to any Person.

This Promissory Note is deemed to be subordinate in all respects, whether in right of payment, priority or otherwise, to any indebtedness for borrowed money of Borrower existing as of the date of the Loan Agreement (together with any refinancings or replacements of such existing indebtedness, provided that any refinancings or replacements of such existing indebtedness shall be approved by the board of directors of Borrower in accordance with applicable law).

**THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS NOTE SHALL BE GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REFERENCE TO THE CONFLICT OF LAW RULES THEREOF WHICH COULD CAUSE THE LAW OF ANY OTHER STATE TO APPLY).**

ALH II, INC.


By:    William R. Lanius
Title: Chief Financial Officer

# PROMISSORY NOTE

$260,000.00

New, York, New York
May, 7, 2002

FOR VALUE RECEIVED, the undersigned, ALH II, Inc., a Delaware corporation ("Borrower"), HEREBY PROMISES TO PAY to Clint Eastwood ("Lender"), at Lender's address at 2049 Century Park East, Suite 2500, Los Angeles, California 90087, or at such other place as Lender may designate from time to time in writing, in lawful money of the United States of America and in immediately available funds, the principal amount of Two Hundred Sixty Thousand Dollars ($260,000.00) or, if less, the aggregate principal amount of such Lender's advances made to Borrower under the Loan Agreement (as defined below), together with all interest thereon at the rate of 18% (or, as applicable, the default rate of interest set forth therein), and other amounts owing in connection therewith in accordance with the terms of the "Loan Agreement" (as hereinafter defined).  All capitalized terms used but not otherwise defined herein have the meanings given to them in the Loan Agreement.

This Promissory Note is one of the Notes issued pursuant to that certain Loan Agreement, dated as of May 7, 2002, by and among Borrower and each of the Lenders from time to time party thereto (the "Loan Agreement") and is entitled to all of the benefits of the Loan Agreement.  Reference is hereby made to the Loan Agreement for a statement of all of the terms and conditions under which the loans evidenced hereby are made and are to be repaid.  The date and amount of each advance made by Lender to Borrower, the rates of interest applicable thereto and each payment made on account of the principal thereof, shall be recorded by Lender on its books; provided that the failure of Lender to make any such recordation shall not affect the obligations of Borrower to make a payment when due of any amount owing under the Loan Agreement or this Promissory Note in respect of advances made by Lender to Borrower.

The principal amount of the indebtedness evidenced hereby shall be payable in the amounts and on the dates specified in the Loan Agreement, the terms of which are hereby incorporated herein by reference.  Interest thereon shall be paid until such principal amount is paid in full at such interest rates and at such times, and pursuant to such calculations, as are specified in the Loan Agreement.

If any payment on this Promissory Note becomes due and payable on a day other than a Business Day, the maturity thereof shall be extended to the next succeeding Business Day and, with respect to payments of principal, interest hereon shall be payable at the then applicable rate during such extension.

Upon and after the occurrence of any Event of Default, this Promissory Note may, as provided in the Loan Agreement, and without demand, notice or legal process of any kind, be declared, and immediately shall become, due and payable.

Time is of the essence of this Promissory Note. Demand, presentment, protest and notice of nonpayment and protest are hereby waived by Borrower. Except as expressly provided in the Loan Agreement, this Note may not be assigned by Lender to any Person.

This Promissory Note is deemed to be subordinate in all respects, whether in right of payment, priority or otherwise, to any indebtedness for borrowed money of Borrower existing as of the date of the Loan Agreement (together with any refinancings or replacements of such existing indebtedness, provided that any refinancings or replacements of such existing indebtedness shall be approved by the board of directors of Borrower in accordance with applicable law).

**THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS NOTE SHALL BE GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REFERENCE TO THE CONFLICT OF LAW RULES THEREOF WHICH COULD CAUSE THE LAW OF ANY OTHER STATE TO APPLY).**

ALH II, INC.

By:    William R. Lanius
Title: Chief Financial Officer

# PROMISSORY NOTE

$17,000.00

New, York, New York
May, 7, 2002

FOR VALUE RECEIVED, the undersigned, ALH II, Inc., a Delaware corporation ("Borrower"), HEREBY PROMISES TO PAY to James Foley ("Lender"), at Lender's address at 2049 Century Park East, Suite 2500, Los Angeles, California 90087, or at such other place as Lender may designate from time to time in writing, in lawful money of the United States of America and in immediately available funds, the principal amount of Seventeen Thousand Dollars ($17,000.00) or, if less, the aggregate principal amount of such Lender's advances made to Borrower under the Loan Agreement (as defined below), together with all interest thereon at the rate of 18% (or, as applicable, the default rate of interest set forth therein), and other amounts owing in connection therewith in accordance with the terms of the "Loan Agreement" (as hereinafter defined). All capitalized terms used but not otherwise defined herein have the meanings given to them in the Loan Agreement.

This Promissory Note is one of the Notes issued pursuant to that certain Loan Agreement, dated as of May 7, 2002, by and among Borrower and each of the Lenders from time to time party thereto (the "Loan Agreement") and is entitled to all of the benefits of the Loan Agreement. Reference is hereby made to the Loan Agreement for a statement of all of the terms and conditions under which the loans evidenced hereby are made and are to be repaid. The date and amount of each advance made by Lender to Borrower, the rates of interest applicable thereto and each payment made on account of the principal thereof, shall be recorded by Lender on its books; provided that the failure of Lender to make any such recordation shall not affect the obligations of Borrower to make a payment when due of any amount owing under the Loan Agreement or this Promissory Note in respect of advances made by Lender to Borrower.

The principal amount of the indebtedness evidenced hereby shall be payable in the amounts and on the dates specified in the Loan Agreement, the terms of which are hereby incorporated herein by reference. Interest thereon shall be paid until such principal amount is paid in full at such interest rates and at such times, and pursuant to such calculations, as are specified in the Loan Agreement.

If any payment on this Promissory Note becomes due and payable on a day other than a Business Day, the maturity thereof shall be extended to the next succeeding Business Day and, with respect to payments of principal, interest hereon shall be payable at the then applicable rate during such extension.

Upon and after the occurrence of any Event of Default, this Promissory Note may, as provided in the Loan Agreement, and without demand, notice or legal process of any kind, be declared, and immediately shall become, due and payable.

Time is of the essence of this Promissory Note. Demand, presentment, protest and notice of nonpayment and protest are hereby waived by Borrower. Except as expressly provided in the Loan Agreement, this Note may not be assigned by Lender to any Person.

This Promissory Note is deemed to be subordinate in all respects, whether in right of payment, priority or otherwise, to any indebtedness for borrowed money of Borrower existing as of the date of the Loan Agreement (together with any refinancings or replacements of such existing indebtedness, provided that any refinancings or replacements of such existing indebtedness shall be approved by the board of directors of Borrower in accordance with applicable law).

**THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS NOTE SHALL BE GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REFERENCE TO THE CONFLICT OF LAW RULES THEREOF WHICH COULD CAUSE THE LAW OF ANY OTHER STATE TO APPLY).**

**ALH II, INC.**

By: William R. Lanius
Title: Chief Financial Officer

# PROMISSORY NOTE

$35,000.00

New, York, New York
May, 7, 2002

FOR VALUE RECEIVED, the undersigned, ALH II, Inc., a Delaware corporation ("Borrower"), HEREBY PROMISES TO PAY to The Fogelson Trust of 1992 ("Lender"), at Lender's address at 2049 Century Park East, Suite 2500, Los Angeles, California 90087, or at such other place as Lender may designate from time to time in writing, in lawful money of the United States of America and in immediately available funds, the principal amount of Thirty-Five Thousand Dollars ($35,000.00) or, if less, the aggregate principal amount of such Lender's advances made to Borrower under the Loan Agreement (as defined below), together with all interest thereon at the rate of 18% (or, as applicable, the default rate of interest set forth therein), and other amounts owing in connection therewith in accordance with the terms of the "Loan Agreement" (as hereinafter defined). All capitalized terms used but not otherwise defined herein have the meanings given to them in the Loan Agreement.

This Promissory Note is one of the Notes issued pursuant to that certain Loan Agreement, dated as of May 7, 2002, by and among Borrower and each of the Lenders from time to time party thereto (the "Loan Agreement") and is entitled to all of the benefits of the Loan Agreement. Reference is hereby made to the Loan Agreement for a statement of all of the terms and conditions under which the loans evidenced hereby are made and are to be repaid. The date and amount of each advance made by Lender to Borrower, the rates of interest applicable thereto and each payment made on account of the principal thereof, shall be recorded by Lender on its books; provided that the failure of Lender to make any such recordation shall not affect the obligations of Borrower to make a payment when due of any amount owing under the Loan Agreement or this Promissory Note in respect of advances made by Lender to Borrower.

The principal amount of the indebtedness evidenced hereby shall be payable in the amounts and on the dates specified in the Loan Agreement, the terms of which are hereby incorporated herein by reference. Interest thereon shall be paid until such principal amount is paid in full at such interest rates and at such times, and pursuant to such calculations, as are specified in the Loan Agreement.

If any payment on this Promissory Note becomes due and payable on a day other than a Business Day, the maturity thereof shall be extended to the next succeeding Business Day and, with respect to payments of principal, interest hereon shall be payable at the then applicable rate during such extension.

Upon and after the occurrence of any Event of Default, this Promissory Note may, as provided in the Loan Agreement, and without demand, notice or legal process of any kind, be declared, and immediately shall become, due and payable.

Time is of the essence of this Promissory Note. Demand, presentment, protest and notice of nonpayment and protest are hereby waived by Borrower. Except as expressly provided in the Loan Agreement, this Note may not be assigned by Lender to any Person.

This Promissory Note is deemed to be subordinate in all respects, whether in right of payment, priority or otherwise, to any indebtedness for borrowed money of Borrower existing as of the date of the Loan Agreement (together with any refinancings or replacements of such existing indebtedness, provided that any refinancings or replacements of such existing indebtedness shall be approved by the board of directors of Borrower in accordance with applicable law).

**THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS NOTE SHALL BE GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REFERENCE TO THE CONFLICT OF LAW RULES THEREOF WHICH COULD CAUSE THE LAW OF ANY OTHER STATE TO APPLY).**

ALH II, INC.

By:   William R. Lanius
Title: Chief Financial Officer

# PROMISSORY NOTE

$26,000.00

New, York, New York
May, 7, 2002

FOR VALUE RECEIVED, the undersigned, ALH II, Inc., a Delaware corporation ("Borrower"), HEREBY PROMISES TO PAY to Ganz Family Trust of 1993 ("Lender"), at Lender's address at 2049 Century Park East, Suite 2500, Los Angeles, California 90087, or at such other place as Lender may designate from time to time in writing, in lawful money of the United States of America and in immediately available funds, the principal amount of Twenty-Six Thousand Dollars ($26,000.00) or, if less, the aggregate principal amount of such Lender's advances made to Borrower under the Loan Agreement (as defined below), together with all interest thereon at the rate of 18% (or, as applicable, the default rate of interest set forth therein), and other amounts owing in connection therewith in accordance with the terms of the "Loan Agreement" (as hereinafter defined). All capitalized terms used but not otherwise defined herein have the meanings given to them in the Loan Agreement.

This Promissory Note is one of the Notes issued pursuant to that certain Loan Agreement, dated as of May 7, 2002, by and among Borrower and each of the Lenders from time to time party thereto (the "Loan Agreement") and is entitled to all of the benefits of the Loan Agreement. Reference is hereby made to the Loan Agreement for a statement of all of the terms and conditions under which the loans evidenced hereby are made and are to be repaid. The date and amount of each advance made by Lender to Borrower, the rates of interest applicable thereto and each payment made on account of the principal thereof, shall be recorded by Lender on its books; provided that the failure of Lender to make any such recordation shall not affect the obligations of Borrower to make a payment when due of any amount owing under the Loan Agreement or this Promissory Note in respect of advances made by Lender to Borrower.

The principal amount of the indebtedness evidenced hereby shall be payable in the amounts and on the dates specified in the Loan Agreement, the terms of which are hereby incorporated herein by reference. Interest thereon shall be paid until such principal amount is paid in full at such interest rates and at such times, and pursuant to such calculations, as are specified in the Loan Agreement.

If any payment on this Promissory Note becomes due and payable on a day other than a Business Day, the maturity thereof shall be extended to the next succeeding Business Day and, with respect to payments of principal, interest hereon shall be payable at the then applicable rate during such extension.

Upon and after the occurrence of any Event of Default, this Promissory Note may, as provided in the Loan Agreement, and without demand, notice or legal process of any kind, be declared, and immediately shall become, due and payable.

Time is of the essence of this Promissory Note. Demand, presentment, protest and notice of nonpayment and protest are hereby waived by Borrower. Except as expressly provided in the Loan Agreement, this Note may not be assigned by Lender to any Person.

This Promissory Note is deemed to be subordinate in all respects, whether in right of payment, priority or otherwise, to any indebtedness for borrowed money of Borrower existing as of the date of the Loan Agreement (together with any refinancings or replacements of such existing indebtedness, provided that any refinancings or replacements of such existing indebtedness shall be approved by the board of directors of Borrower in accordance with applicable law).

**THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS NOTE SHALL BE GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REFERENCE TO THE CONFLICT OF LAW RULES THEREOF WHICH COULD CAUSE THE LAW OF ANY OTHER STATE TO APPLY).**

ALH II, INC.

By:    William R. Lanius
Title: Chief Financial Officer

# PROMISSORY NOTE

$17,000.00

New, York, New York
May, 7, 2002

FOR VALUE RECEIVED, the undersigned, ALH II, Inc., a Delaware corporation ("Borrower"), HEREBY PROMISES TO PAY to Bruce M. Ramer ("Lender"), at Lender's address at 2049 Century Park East, Suite 2500, Los Angeles, California 90087, or at such other place as Lender may designate from time to time in writing, in lawful money of the United States of America and in immediately available funds, the principal amount of Seventeen Thousand Dollars ($17,000.00) or, if less, the aggregate principal amount of such Lender's advances made to Borrower under the Loan Agreement (as defined below), together with all interest thereon at the rate of 18% (or, as applicable, the default rate of interest set forth therein), and other amounts owing in connection therewith in accordance with the terms of the "Loan Agreement" (as hereinafter defined). All capitalized terms used but not otherwise defined herein have the meanings given to them in the Loan Agreement.

This Promissory Note is one of the Notes issued pursuant to that certain Loan Agreement, dated as of May 7, 2002, by and among Borrower and each of the Lenders from time to time party thereto (the "Loan Agreement") and is entitled to all of the benefits of the Loan Agreement. Reference is hereby made to the Loan Agreement for a statement of all of the terms and conditions under which the loans evidenced hereby are made and are to be repaid. The date and amount of each advance made by Lender to Borrower, the rates of interest applicable thereto and each payment made on account of the principal thereof, shall be recorded by Lender on its books; provided that the failure of Lender to make any such recordation shall not affect the obligations of Borrower to make a payment when due of any amount owing under the Loan Agreement or this Promissory Note in respect of advances made by Lender to Borrower.

The principal amount of the indebtedness evidenced hereby shall be payable in the amounts and on the dates specified in the Loan Agreement, the terms of which are hereby incorporated herein by reference. Interest thereon shall be paid until such principal amount is paid in full at such interest rates and at such times, and pursuant to such calculations, as are specified in the Loan Agreement.

If any payment on this Promissory Note becomes due and payable on a day other than a Business Day, the maturity thereof shall be extended to the next succeeding Business Day and, with respect to payments of principal, interest hereon shall be payable at the then applicable rate during such extension.

Upon and after the occurrence of any Event of Default, this Promissory Note may, as provided in the Loan Agreement, and without demand, notice or legal process of any kind, be declared, and immediately shall become, due and payable.

Time is of the essence of this Promissory Note. Demand, presentment, protest and notice of nonpayment and protest are hereby waived by Borrower. Except as expressly provided in the Loan Agreement, this Note may not be assigned by Lender to any Person.

This Promissory Note is deemed to be subordinate in all respects, whether in right of payment, priority or otherwise, to any indebtedness for borrowed money of Borrower existing as of the date of the Loan Agreement (together with any refinancings or replacements of such existing indebtedness, provided that any refinancings or replacements of such existing indebtedness shall be approved by the board of directors of Borrower in accordance with applicable law).

THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS NOTE SHALL BE GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REFERENCE TO THE CONFLICT OF LAW RULES THEREOF WHICH COULD CAUSE THE LAW OF ANY OTHER STATE TO APPLY).

ALH II, INC.

_____

By:    William R. Lanius
Title: Chief Financial Officer

# PROMISSORY NOTE

$26,000.00

New, York, New York
May, 7, 2002

FOR VALUE RECEIVED, the undersigned, ALH II, Inc., a Delaware corporation ("Borrower"), HEREBY PROMISES TO PAY to The Perry Family Trust ("Lender"), at Lender's address at 2049 Century Park East, Suite 2500, Los Angeles, California 90087, or at such other place as Lender may designate from time to time in writing, in lawful money of the United States of America and in immediately available funds, the principal amount of Twenty-Six Thousand Dollars ($26,000.00) or, if less, the aggregate principal amount of such Lender's advances made to Borrower under the Loan Agreement (as defined below), together with all interest thereon at the rate of 18% (or, as applicable, the default rate of interest set forth therein), and other amounts owing in connection therewith in accordance with the terms of the "Loan Agreement" (as hereinafter defined). All capitalized terms used but not otherwise defined herein have the meanings given to them in the Loan Agreement.

This Promissory Note is one of the Notes issued pursuant to that certain Loan Agreement, dated as of May 7, 2002, by and among Borrower and each of the Lenders from time to time party thereto (the "Loan Agreement") and is entitled to all of the benefits of the Loan Agreement. Reference is hereby made to the Loan Agreement for a statement of all of the terms and conditions under which the loans evidenced hereby are made and are to be repaid. The date and amount of each advance made by Lender to Borrower, the rates of interest applicable thereto and each payment made on account of the principal thereof, shall be recorded by Lender on its books; provided that the failure of Lender to make any such recordation shall not affect the obligations of Borrower to make a payment when due of any amount owing under the Loan Agreement or this Promissory Note in respect of advances made by Lender to Borrower.

The principal amount of the indebtedness evidenced hereby shall be payable in the amounts and on the dates specified in the Loan Agreement, the terms of which are hereby incorporated herein by reference. Interest thereon shall be paid until such principal amount is paid in full at such interest rates and at such times, and pursuant to such calculations, as are specified in the Loan Agreement.

If any payment on this Promissory Note becomes due and payable on a day other than a Business Day, the maturity thereof shall be extended to the next succeeding Business Day and, with respect to payments of principal, interest hereon shall be payable at the then applicable rate during such extension.

Upon and after the occurrence of any Event of Default, this Promissory Note may, as provided in the Loan Agreement, and without demand, notice or legal process of any kind, be declared, and immediately shall become, due and payable.

Time is of the essence of this Promissory Note. Demand, presentment, protest and notice of nonpayment and protest are hereby waived by Borrower. Except as expressly provided in the Loan Agreement, this Note may not be assigned by Lender to any Person.

This Promissory Note is deemed to be subordinate in all respects, whether in right of payment, priority or otherwise, to any indebtedness for borrowed money of Borrower existing as of the date of the Loan Agreement (together with any refinancings or replacements of such existing indebtedness, provided that any refinancings or replacements of such existing indebtedness shall be approved by the board of directors of Borrower in accordance with applicable law).

**THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS NOTE SHALL BE GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REFERENCE TO THE CONFLICT OF LAW RULES THEREOF WHICH COULD CAUSE THE LAW OF ANY OTHER STATE TO APPLY).**

ALH II, INC.

By:   William R. Lanius
Title: Chief Financial Officer

# PROMISSORY NOTE

$17,000.00                                          New, York, New York
                                                   May, 7, 2002

FOR VALUE RECEIVED, the undersigned, ALH II, Inc., a Delaware corporation ("Borrower"), HEREBY PROMISES TO PAY to Penn Trust of 1992 ("Lender"), at Lender's address at 2049 Century Park East, Suite 2500, Los Angeles, California 90087, or at such other place as Lender may designate from time to time in writing, in lawful money of the United States of America and in immediately available funds, the principal amount of Seventeen Thousand Dollars ($17,000.00) or, if less, the aggregate principal amount of such Lender's advances made to Borrower under the Loan Agreement (as defined below), together with all interest thereon at the rate of 18% (or, as applicable, the default rate of interest set forth therein), and other amounts owing in connection therewith in accordance with the terms of the "Loan Agreement" (as hereinafter defined). All capitalized terms used but not otherwise defined herein have the meanings given to them in the Loan Agreement.

This Promissory Note is one of the Notes issued pursuant to that certain Loan Agreement, dated as of May 7, 2002, by and among Borrower and each of the Lenders from time to time party thereto (the "Loan Agreement") and is entitled to all of the benefits of the Loan Agreement. Reference is hereby made to the Loan Agreement for a statement of all of the terms and conditions under which the loans evidenced hereby are made and are to be repaid. The date and amount of each advance made by Lender to Borrower, the rates of interest applicable thereto and each payment made on account of the principal thereof, shall be recorded by Lender on its books; provided that the failure of Lender to make any such recordation shall not affect the obligations of Borrower to make a payment when due of any amount owing under the Loan Agreement or this Promissory Note in respect of advances made by Lender to Borrower.

The principal amount of the indebtedness evidenced hereby shall be payable in the amounts and on the dates specified in the Loan Agreement, the terms of which are hereby incorporated herein by reference. Interest thereon shall be paid until such principal amount is paid in full at such interest rates and at such times, and pursuant to such calculations, as are specified in the Loan Agreement.

If any payment on this Promissory Note becomes due and payable on a day other than a Business Day, the maturity thereof shall be extended to the next succeeding Business Day and, with respect to payments of principal, interest hereon shall be payable at the then applicable rate during such extension.

Upon and after the occurrence of any Event of Default, this Promissory Note may, as provided in the Loan Agreement, and without demand, notice or legal process of any kind, be declared, and immediately shall become, due and payable.

Time is of the essence of this Promissory Note.  Demand, presentment, protest and notice of nonpayment and protest are hereby waived by Borrower.  Except as expressly provided in the Loan Agreement, this Note may not be assigned by Lender to any Person.

This Promissory Note is deemed to be subordinate in all respects, whether in right of payment, priority or otherwise, to any indebtedness for borrowed money of Borrower existing as of the date of the Loan Agreement (together with any refinancings or replacements of such existing indebtedness, provided that any refinancings or replacements of such existing indebtedness shall be approved by the board of directors of Borrower in accordance with applicable law).

**THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS NOTE SHALL BE GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REFERENCE TO THE CONFLICT OF LAW RULES THEREOF WHICH COULD CAUSE THE LAW OF ANY OTHER STATE TO APPLY).**

ALH II, INC.

By:    William R. Lanius
Title:  Chief Financial Officer

# PROMISSORY NOTE

$26,000.00

New, York, New York
May, 7, 2002

FOR VALUE RECEIVED, the undersigned, ALH II, Inc., a Delaware corporation ("Borrower"), HEREBY PROMISES TO PAY to Ann Ramer ("Lender"), at Lender's address at 2049 Century Park East, Suite 2500, Los Angeles, California 90087, or at such other place as Lender may designate from time to time in writing, in lawful money of the United States of America and in immediately available funds, the principal amount of Twenty-Six Thousand Dollars ($26,000.00) or, if less, the aggregate principal amount of such Lender's advances made to Borrower under the Loan Agreement (as defined below), together with all interest thereon at the rate of 18% (or, as applicable, the default rate of interest set forth therein), and other amounts owing in connection therewith in accordance with the terms of the "Loan Agreement" (as hereinafter defined). All capitalized terms used but not otherwise defined herein have the meanings given to them in the Loan Agreement.

This Promissory Note is one of the Notes issued pursuant to that certain Loan Agreement, dated as of May 7, 2002, by and among Borrower and each of the Lenders from time to time party thereto (the "Loan Agreement") and is entitled to all of the benefits of the Loan Agreement. Reference is hereby made to the Loan Agreement for a statement of all of the terms and conditions under which the loans evidenced hereby are made and are to be repaid. The date and amount of each advance made by Lender to Borrower, the rates of interest applicable thereto and each payment made on account of the principal thereof, shall be recorded by Lender on its books; provided that the failure of Lender to make any such recordation shall not affect the obligations of Borrower to make a payment when due of any amount owing under the Loan Agreement or this Promissory Note in respect of advances made by Lender to Borrower.

The principal amount of the indebtedness evidenced hereby shall be payable in the amounts and on the dates specified in the Loan Agreement, the terms of which are hereby incorporated herein by reference. Interest thereon shall be paid until such principal amount is paid in full at such interest rates and at such times, and pursuant to such calculations, as are specified in the Loan Agreement.

If any payment on this Promissory Note becomes due and payable on a day other than a Business Day, the maturity thereof shall be extended to the next succeeding Business Day and, with respect to payments of principal, interest hereon shall be payable at the then applicable rate during such extension.

Upon and after the occurrence of any Event of Default, this Promissory Note may, as provided in the Loan Agreement, and without demand, notice or legal process of any kind, be declared, and immediately shall become, due and payable.

Time is of the essence of this Promissory Note. Demand, presentment, protest and notice of nonpayment and protest are hereby waived by Borrower. Except as expressly provided in the Loan Agreement, this Note may not be assigned by Lender to any Person.

This Promissory Note is deemed to be subordinate in all respects, whether in right of payment, priority or otherwise, to any indebtedness for borrowed money of Borrower existing as of the date of the Loan Agreement (together with any refinancings or replacements of such existing indebtedness, provided that any refinancings or replacements of such existing indebtedness shall be approved by the board of directors of Borrower in accordance with applicable law).

**THIS NOTE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS NOTE SHALL BE GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REFERENCE TO THE CONFLICT OF LAW RULES THEREOF WHICH COULD CAUSE THE LAW OF ANY OTHER STATE TO APPLY).**

ALH II, INC.

By: William R. Lanius
Title: Chief Financial Officer