IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SHAMROCK HOLDINGS OF CALIFORNIA,　)
INC., SHAMROCK CAPITAL ADVISORS, INC.　)
EUGENE I. KRIEGER, GEORGE J. BUCHLER　)
and BRUCE J. STEIN　)
　)
Plaintiffs　)
　)
　) Civil Action No.  04-1339-SLR
v.　)
　)
AVIE ARENSON, SELK, LLC, LAUREL　)
EQUITY GROUP, LLC, J12ALH ASSOCIATES,　)
A. ARENSON HOLDINGS, LTD.  AND D.A.　)
GARDENS, LTD.　)
Defendants　)

## DEFENDANT ABRAHAM ARENSON'S REPLY BRIEF
## IN SUPPORT OF HIS MOTION TO DISMISS THE AMENDED COMPLAINT

SEAN J. BELLEW (#4072)
DAVID A. FELICE (#4090)
Cozen O'Connor
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE  19801
(302) 295-2000
(302) 295-2013 (Fax)

THOMAS M. WOOD, IV
Neuberger, Quinn, Gielen, Rubin
 & Gibber, P.A.
One South Street, 27th Floor
Baltimore, Maryland  21202-3201
(410) 332-8523 (Direct)
(410) 332-8564 (Fax)

Attorneys for Defendant Abraham Arenson

DATED: September 12, 2005

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

PROCEDURAL HISTORY ..................................................................................... 1

ARGUMENT ........................................................................................................... 2

I.    No Controversy Exists Between Arenson and Plaintiffs .................................. 2

    A.    Plaintiffs' Amended Complaint Does Not Contain Factual Allegations to Support Their Contention That A Controversy Exists With Arenson. ....................... 3

    B.    A Violation of Arenson's Rights As Class B Representative Does Not Establish A Case or Controversy Between Arenson and Plaintiffs. ................................. 6

    C.    Plaintiffs Cannot Demonstrate That A Controversy Exists Based On Arenson's Indirect Financial Interest In the Outcome of the Proceedings .................................. 10

    D.    Plaintiffs' Amended Complaint Contains No Allegations That Arenson Individually Threatened Legal Action Against Plaintiffs. ................................ 12

    E.    The North Carolina Action Does Not Demonstrate A Controversy Between Arenson and Plaintiffs. ............................................................................. 13

    G.    Any Controversy Between Plaintiffs and Arenson is Not Imminent ......................... 16

II.    Arenson Did Not Waive His Right To File a Motion to Dismiss for Failure to State a Claim. ............................................................................................... 17

## TABLE OF AUTHORITIES

CASES

Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 411 (3d Cir.1992).................... 3

Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40 (1937)......................................... 3-4

Alexander v. Todman, 361 F.2d 744, 746 (3rd Cir. 1966) ............................................... 7

Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 735 (Fed. Cir. 1988). 3

Bell Atlantic Corp. v. MFS Communications Co., Inc., 901 F. Supp. 835, 846
 (D.Del. 1995)............................................................................................................. 14

Britton v. Cann, 682 F.Supp. 110, 113 (D.N.H. 1988)................................................... 19

Cairns v. Gelmon, 1998 WL 276226 (D.Del. May 21, 1998) ......................................... 7, 8

Cameron & Barkley Co. v. Fabreeka Int'l., Inc., 144 F. Supp. 2d 1382, 1384
 (M.D. Ga. 2001)......................................................................................................... 12, 13

Cohen v. Beneficial Indus. Loan Corp., 93 F. Supp. 418, 420 (D.Del. 1950)................. 19

Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.,
 344 F. Supp. 2d 923, 929 (D.Del. 2004).................................................................. 4

David v. Village of Oak Lawn, 954 F. Supp. 1241, 1244 n. 4 (N.D.Ill.1996)................. 17

Days Inn Worldwide, Inc. v. Sai Baba, Inc., 300 F. Supp .2d 583, 592-93
 (N.D.Ohio 2004)......................................................................................................... 3

Essex Ins. Co. v. Kasten Railcar Servs., Inc., 129 F.3d 947 (7th Cir. 1997) .................. 10, 11

Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir.1993)................. 4

Franklin Life Ins. Co. v. Johnson, 157 F.2d 653 (10th Cir. 1946)................................... 10, 11, 12

Grace Holdings, L.P. v. Sunshine Min. and Refining Co., 901 F. Supp. 853, 858
 (D.Del. 1995)............................................................................................................. 3

Grace Holdings, L.P. v. Sunshine Mining and Refining Co., 901 F. Supp. 853, 857
 (D. Del. 1995)............................................................................................................ 16

Hicks v. Small, 842 F. Supp. 407, 408 (D.Nev. 1993), aff'd, 69 F.3d 967
 (9th Cir. 1995) ........................................................................................................... 17

Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)................................................................. 4

MacNeil v. Whittemore, 254 F.2d 820, 821 (2d Cir. 1958) ............................................ 19

Martin v. Lain Oil & Gas Co., 36 F.Supp. 252, 255 (E.D.Ill.1941) ............................... 19

Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) ....................... 4

Mutual Life Insurance Co. v. Egeline, 30 F.Supp. 738, 740 (N.D.Cal.1939)................. 19

Mylan Laboratories, Inc. v. Akzo, N.V., 770 F. Supp. 1053, 1059 (D.Md.1991).......... 17

Ogden v. Michigan Bell Tel. Co., 595 F. Supp. 961, 965 n. 5 (E.D.Mich. 1984) .......... 17

Pacific Gas & Elec. Co. v. State Energy Resource Conservation & Dev. Comm'n,
 461 U.S. 190, 201 (1983)........................................................................................... 17

Roller Derby Associates v. Seltzer, 54 F.R.D. 556, 557 (N.D.Ill.1972)........................ 19

Sharma v. Skaarup Ship Mgt. Corp., 699 F. Supp. 440, 444 (S.D.N.Y.1988) ............... 17

Solar Cells, Inc. v. True North Partners, LLC, 2002 WL 749163
 (D.Del. April 25, 2002)............................................................................................. 7, 9

Steele v. Stephan, 633 F. Supp. 950, 951 (D.C.Kan.1986)............................................. 17

Stone v. Williams, 970 F.2d 1043, 1048 (2d Cir. 1992).................................................. 3

Strandell v. Jackson County, 648 F. Supp. 126, 129 (S.D.Ill.1986)............................... 17

The Continental Insurance Company v. The Law Office of Thomas J. Walker,
 171 F.R.D. 183 (D.Md. 1997).................................................................................... 10, 11

Thorn v. New York City Dep't of Social Servs., 523 F. Supp. 1193, 1196 n. 1
 (S.D.N.Y. 1981) ......................................................................................................... 17

Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1154 (3d Cir. 1995).................................. 3

U. S. ex rel. Gittlemacker v. Philadelphia County, Com. of Pa., 413 F.2d 84, 87
    (3rd Cir. 1969).................................................................................................. 18
World Indus., Inc. by Wolfson v. Adams, 961 F.2d 405 (3d Cir. 1992) ........................ 17

**STATUTES**

8 Del. C. § 242.................................................................................................. 8
6 Del. C. § 145(d) .............................................................................................. 15
6 Del. C. § 18-108.............................................................................................. 15

**Rules**

Fed. R. Civ. Pro. 12(b)....................................................................................... passim
Fed. Rule of Civ. Pro. 23 ................................................................................... 12
Fed. Rule of Civ. Pro. 24(a)(2) .......................................................................... 11

**TREATISES**

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004).
4, 17, 18
5C Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 1389 (3d ed. 2004). 19

## INTRODUCTION

Defendant, Abraham (Avie) Arenson ("**Arenson**"), by his undersigned counsel, submits this Reply Brief In Support of his Motion to Dismiss the Amended Complaint filed by Plaintiffs, Shamrock Holdings of California, Inc. ("**Shamrock**"), Shamrock Capital Advisors, Inc. ("**SCA**"), Eugene I. Krieger ("**Krieger**"), George J. Buchler ("**Buchler**"), and Bruce J. Stein ("**Stein**") (hereinafter collectively "**Plaintiffs**")(D.I. 37, 46)

Plaintiffs' only purpose in suing Arenson is to punish him for complaining about their wrongdoing. The facts alleged in the Amended Complaint do not show substantial controversy between Plaintiffs and Arenson of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Accordingly, Plaintiffs have failed to state a claim against Arenson and all claims should be dismissed against him.

## PROCEDURAL HISTORY

While the parties were in ongoing settlement discussions, Plaintiffs filed a declaratory judgment action against Arenson, SELK, LLC ("**SELK**") and Laurel Equity Group, LLC ("**Laurel**"). Thereafter, Defendants removed the action to this Court. (D.I. 1) On October 14, 2004, Arenson timely filed a motion to dismiss challenging this Court's exercise of personal jurisdiction and SELK and Laurel filed a motion to dismiss for failure to join necessary parties. (D.I. 4) Plaintiffs requested that Defendants agree to stay briefing on both motions until Plaintiffs filed a motion to remand and obtained a ruling on their motion to remand. On October 22, 2004, Defendants agreed and this Court approved a stipulated scheduling order. (D.I. 6) All parties requested and granted liberal extensions to brief the remand issues.

On March 22, 2005, this Court denied Plaintiffs' Motion to Remand. (D.I. 33) In accordance with the October 22, 2004 stipulation and this Court's order, Plaintiffs' answering briefs to the pending motions were due on April 5, 2005. (D.I. 6, 33) Plaintiffs asked Defendants for an extension to respond to the pending motions and Defendants agreed. On April 19, 2005, this Court entered a stipulated scheduling order extending Plaintiffs' deadline to file answering

briefs to the pending motions to April 27, 2005.  (D.I. 36)  On April 22, 2005, instead of responding to the pending motions, Plaintiffs filed an Amended Complaint joining as Defendants A. Arenson Holdings, Ltd. ("**Arenson Holdings**"), D.A. Gardens Ltd. ("**D.A. Gardens**"), and J12ALH Associates ("**J12**").  (D.I. 37)

In a letter attached to the Amended Complaint, Plaintiffs claimed that Arenson's pending motion was "directed to an obsolete and superseded complaint" and SELK and Laurel's pending motion was "mooted by the amended complaint" and thus, asked that the parties enter into a new scheduling order that would not require Plaintiffs to respond "to motions that are now moot."  See Ex. 1.  A new stipulated schedule was agreed to in which Plaintiffs did not respond to the motions and Defendants were granted a three week extension until June 3, 2005, to respond to the Amended Complaint.  (D.I. 39)  On June 2, 2005, Defendants Arenson Holdings, D.A. Gardens, J12, SELK and Laurel filed a complaint in the United States District Court for the Western District of North Carolina seeking affirmative relief for Plaintiffs' tortious conduct (the "**North Carolina Action**").  (D.I. 41, Ex. I)  On June 3, 2005, the following motions and supporting memoranda were filed:

1.  Motion to Dismiss under 12(b)(6) filed by Defendant Arenson (D.I. 46)
2.  Motion to Dismiss for lack of personal jurisdiction filed by Defendants Arenson, Arenson Holdings, D.A. Gardens and J12 and for failure to join necessary parties filed by SELK and Laurel (D.I. 43)
3.  Motion to Dismiss Or In The Alternative For Stay of Proceedings under the Declaratory Judgment Act filed by Defendants Arenson Holdings, D.A. Gardens, J12, SELK and Laurel (D.I. 40)

Plaintiffs were given over two months to respond to Defendants' motions.  On August 9, 2005, Plaintiffs filed opposition briefs to Defendants' motions.  (D.I. 50, 51 and 52)  Arenson now replies to Plaintiffs' Opposition to his Motion to Dismiss.

## ARGUMENT

### I.   No Controversy Exists Between Arenson and Plaintiffs.

Arenson's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) ("FRCP") should be granted because Plaintiffs have failed to allege that a case or controversy of sufficient

immediacy exists between Arenson and Plaintiffs.[1]  In deciding whether a plaintiff has stated a claim for declaratory relief, the court must determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 411 (3d Cir.1992); see also Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1154 (3d Cir. 1995); Grace Holdings, L.P. v. Sunshine Min. and Refining Co., 901 F. Supp. 853, 858 (D.Del. 1995). "The sole requirement for jurisdiction under the Act is that the conflict be real and immediate, i.e., that there be a true, actual 'controversy' required by the Act." Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 735 (Fed. Cir. 1988).  The "actual controversy" requirement, in turn, mirrors the "case or controversy" requirement of Article III of the United States Constitution. See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40 (1937).

Plaintiffs cannot establish that a case or controversy of sufficient immediacy exists with Arenson.  First, Plaintiffs have failed to allege any controversy between Plaintiffs and Arenson in his individual capacity.  Second, even if Plaintiffs could show that a controversy exists—which they cannot—any such controversy is not of "sufficient immediacy" to warrant a declaratory judgment.

### A.    Plaintiffs' Amended Complaint Does Not Contain Factual Allegations to Support Their Contention That A Controversy Exists With Arenson.

To establish a case or controversy, "[a] request for declaratory judgment must accompany the substantive claim for which declaratory judgment is sought." Days Inn Worldwide, Inc. v. Sai Baba, Inc., 300 F. Supp .2d 583, 592-93 (N.D.Ohio 2004); see also Stone v. Williams, 970 F.2d 1043, 1048 (2d Cir. 1992)("[A] declaratory judgment action is a procedural device used to vindicate substantive rights[.]").  Here, Plaintiffs have failed to state a claim upon which relief

---

[1] In section I of this brief, Arenson's Motion to Dismiss under Rule 12(b)(6) filed on June 3, 2005, (D.I.46-47), will be referred to as **"Arenson's Motion"** and Plaintiffs' Memorandum in Opposition to Arenson's Motion to Dismiss, (D.I. 50), will be referred to as **"Plaintiffs' Opposition"**.

can be granted because they have failed to link their request for declaratory judgment with respect to Arenson with an underlying substantive claim for relief for or against him.

The only allegation in the Amended Complaint that could remotely be construed as alleging a controversy is the following conclusory allegation: "A controversy has arisen between plaintiffs and defendants with respect to whether plaintiffs have violated Arenson's rights as Class B Representative." (D.I. 37 ¶ 182). In deciding a Rule 12(b)(6) motion, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)(citation omitted).[2] Plaintiffs suggest that this conclusory assertion is sufficient under the notice pleading requirements of Federal Rule of Civil Procedure 8. (D.I. 50 at 6) "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). This meritless allegation against Arenson reveals Plaintiffs' desire to sue Arenson even if no viable claim exists against him in order to punish him for complaining about Plaintiffs' wrongdoing.

Plaintiffs attempt to bolster this single conclusory allegation by citing to the following allegations in the Amended Complaint:

> 68.    . . . Among other things, [Arenson Holdings and D.A. Gardens] and Arenson himself (as Class B Representative and as agent for [Arenson Holdings and D.A. Gardens]):
>
> *       *       *
>
> (b)       Entered into the Operating Agreement, which created the ALH governance structure that they now attach as the vehicle for plaintiffs alleged breaches of fiduciary duty.
>
> *       *       *

---

[2] See also Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc., 344 F. Supp. 2d 923, 929 (D.Del. 2004)(stating that court will not "consider or regard as true conclusory allegations of law, unsubstantiated conclusions, or unwarranted factual inferences."); Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir.1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."); 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)(hereinafter "FPP")(noting that courts, when examining 12(b)(6) motions, have rejected "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations").

(g)    Supported the Lion Settlement, which resulted in the Class A Members having the right to designate three out of five Representatives on ALH's Supervisory Board, but claim now that this wrongfully deprived them of a meaningful role in the Board's decision-making process.

\*    \*    \*

(l)    Seek to interfere with the indemnification rights of officers and directors of Delaware corporations (SCA and ALH) under the SCA Consulting Agreement and the By-Laws of ALH II, including the right to advancement of legal expenses.

\*    \*    \*

71.    ALH's Supervisory Board has always had five members. The Class B Members have never had more than one Representative on the Supervisory Board. Nothing in the Operating Agreement requires the consent of the Class B Representative for any action or decision by the Supervisory Board. Nothing in the Operating Agreement requires the consent of the Class B Members for actions or decisions by ALH (except that Members must unanimously consent to amendments of the Operating Agreement that modify their limited liability, alter their interest in the profits, losses or distributions of ALH, or alter the number or voting rights of Representatives). Actions and decisions by ALH are generally effective by majority vote of the five Representatives on the Supervisory Board. All Major Decisions require the consent of the Class A Representatives on the Supervisory Board. However, the Operating Agreement does not authorize the two Class A Representatives, acting alone, to make Major Decisions or other decisions requiring Supervisory Board approval.

\*    \*    \*

127.    The Supervisory Board meeting to consider the proposed MHI transaction was held on December 15, 2004. Arenson initially confirmed that he would be attending the meeting. However, the night before the meeting, Arenson advised Shamrock that he would not attend, stating that "[b]arring some unforeseen discussion during the meeting, I would probably vote against anyway." Arenson later added that "any future participation would be a waste of my time." Thus, Arenson had a voice on the Supervisory Board that he chose not to use. For this he has no one but himself to blame, and the Class B Members have no one but Arenson to blame.

\*    \*    \*

140.    Defendants have also accused plaintiffs of wrongfully causing ALH to make certain decisions—especially in connection with the sale of ALH—without defendants' consent. As set forth above, the Operating Agreement never gave the Class B Members more than one Representative on the five-member Supervisory Board. Decisions by the Supervisory Board have never required unanimous vote. The defendants knowingly chose to invest in ALH on these terms, i.e., on terms that expressly gave ALH the right to act without the Class B Members consent. Much of what defendants complain of was in fact consented to by Arenson as Class B Representative, but even if that were not so, defendants would not have a legal claim against plaintiffs based on the absence of defendants' consent.

182.    A controversy has arisen between plaintiffs and defendants with respect to whether plaintiffs have violated Arenson's rights as Class B representative.

(D.I. 37 ¶¶ 68, 71, 127, 140, 182)

These allegations do not demonstrate that a controversy exists between Plaintiffs and Arenson, but rather that a controversy may exist between the Class B Members and Plaintiffs. Moreover, a review of the Amended Complaint does not demonstrate that Plaintiffs' request for declaratory judgment against Arenson is associated with any underlying substantive claim for relief that Arenson could assert against Plaintiffs. In fact, Arenson is not a plaintiff in the North Carolina Action. Accordingly, Plaintiffs failed to state a claim for declaratory relief against Arenson in the Amended Complaint.

**B.    A Violation of Arenson's Rights As Class B Representative Does Not Establish A Case or Controversy Between Arenson and Plaintiffs.**

In their Opposition, Plaintiffs attempt to fashion an underlying cause of action between Arenson and Plaintiffs based on Arenson's rights and obligations as the Class B Representative. Plaintiffs argue that Arenson's underlying cause of action is that he was wrongfully deprived of a meaningful role in the ALH Supervisory Board's decision-making process, that he was wrongfully deprived of information[3] and that Plaintiffs wrongfully caused ALH to make sale decisions without Arenson's consent. (D.I. 50 at 5, 7-9) Even assuming the Amended Complaint contains allegations to support such claims, they are claims that the Class B Members have standing to assert, not Arenson.

To state a claim against Arenson as an individual, Plaintiffs must establish that Arenson as an individual has a direct cause of action against Plaintiffs, and that Plaintiffs have standing to bring a declaratory judgment action against Arenson as an individual. "A person who sues or is sued in his official or representative capacity is, in contemplation of law, regarded as a person distinct from the same person in his individual capacity and is a stranger to his rights or liabilities

---

[3] This contention, however, is not before the Court since it is not alleged in the Amended Complaint. (D.I. 50 at 8, n.6)

as an individual. **It is equally true that a person in his individual capacity is a stranger to his rights and liabilities as a fiduciary or in a representative capacity.**" Alexander v. Todman, 361 F.2d 744, 746 (3rd Cir. 1966) cited in D.I. 29 at 8 (emphasis added). The Amended Complaint contains no allegations that Arenson as an individual either has a cause of action against Plaintiffs or that Plaintiffs have a cause of action against Arenson. Plaintiffs rely on alleged violations of Arenson's rights as a Class B Representative but Arenson as an individual cannot bring any such claim since he is not a member of ALH. Therefore, Plaintiffs have not stated a cognizable case or controversy against Arenson as an individual based on alleged violations of Arenson's rights as a Class B Representative.

Plaintiffs cite Cairns v. Gelmon, 1998 WL 276226 (D.Del. May 21, 1998) and Solar Cells, Inc. v. True North Partners, LLC, 2002 WL 749163 (D.Del. April 25, 2002), in support of their contention that the Amended Complaint states a claim for relief against Arenson based on his rights and obligations as the Class B Representative. Neither case supports that proposition.

Plaintiffs rely on Cairns for the proposition that "[a] violation of someone's right to participate in the deliberations of an entity's governing body is actionable under Delaware law." (D.I. 50 at 5) Cairns, however, does not stand for such a broad proposition and, in fact, provides support for Arenson's contention that any right Arenson may have as a Class B Representative supports a claim by the Class B Members to redress their injury.

In Cairns, the director was also a shareholder and the relief being sought for violation of the director's rights was for the benefit of the shareholders not for the benefit of the director in his capacity as a director. Cairns, 1998 WL 276226. The plaintiffs—three individuals—and the defendants—four individuals—entered into an agreement, which provided that the parties would form a corporation to purchase certain licensing rights from a third party, that the parties would share equally in the equity of the corporation and that each group would have one director on the corporation's board. Thereafter, the defendants formed the corporation, issued shares only to themselves and placed four of their members and only one of the plaintiffs' members, Mr. Cairns,

as directors on the corporation's board. The defendants caused the corporation to amend its certificate of incorporation to increase its authorized common stock but never informed Mr. Cairns of the charter amendment in advance of the board's approval.

The plaintiffs, including Mr. Cairns who was both a director and equitable shareholder, filed an action against the defendants and the corporation alleging claims for, *inter alia*, violation of 8 Del. C. § 242—a statute that governs amendment to a certificate of incorporation. Cairns, 1998 WL 276226, *1. The defendants filed a motion to dismiss for failure to state a claim for violation of 8 Del. C. § 242 and claimed that the plaintiffs lacked standing to bring the action because they were not record shareholders, that even if the plaintiffs were equitable shareholders, their claim was derivative, and that Mr. Cairns lacked standing even as a director because he was not harmed. Cairns, 1998 WL 276226, *5-6. The court rejected the first two contentions holding that the plaintiffs were equitable shareholders and that their claim was direct and not derivative. Cairns, 1998 WL 276226, *6. In determining whether the plaintiffs had failed to state a claim because Mr. Cairns would suffer no harm, the court explained that Mr. Cairns, as a director, had "a right of access to whatever corporate information was given to its directors during the director's tenure" and that the defendants' alleged violation of that right by not giving Mr. Cairns notice of the meeting to amend the charter, could be "viewed as a claim to enforce the right, by invalidating a charter amendment that was the result of a defective process." Id. The court denied the motion to dismiss, holding that plaintiffs, as beneficial shareholders, would have a basis for relief if successful in establishing that the charter amendment was invalid because the defendants' violated Mr. Cairns' right to notice.

In this case, as in Cairns, any claim for violation of Arenson's rights as a Class B Representative must be brought by the Class B Members who suffered an injury as a result of the violations. The allegations Plaintiffs cite to in the Amended Complaint contain allegations to support underlying claims by the Class B Members, not Arenson. Cairns therefore provides no support for Plaintiffs' argument that the Amended Complaint alleges that an actual case or

controversy exists between Plaintiffs and Arenson based on a violation of Arenson's rights as Class B Representative.

Similarly unpersuasive is Plaintiffs' reliance on <u>Solar</u>. In <u>Solar</u>, the plaintiff filed a motion for a temporary restraining order against First Solar LLC ("FS"), True North Partners, LLC ("True North") and three of the managers of FS who were appointed by True North. The plaintiff and True North were the only members of FS, each had equal ownership and True North had authority to appoint three managers on the board and the plaintiff had authority to appoint two managers on the board. <u>Solar</u>, 2002 WL 749163, *1. At issue was a proposed merger by FS with and into a new entity which would result in the plaintiff's ownership interest diminishing from 50% in FS to 5% in the new entity. <u>Solar</u>, 2002 WL 749163, *2. The plaintiff argued that it would suffer irreparable harm "by the dilution of its equity position and voting powers as unit-holders . . . [and] that the loss of its bargained-for participation in company management is an irreparable harm." <u>Solar</u>, 2002 WL 749163, *7. The defendants responded that since True North had the right to nominate a majority of the managers of FS and thereby controlled the business and affairs of the company, the plaintiff would suffer no harm by losing its right to appoint managers. <u>Id.</u> The court rejected that contention and responded:

> That argument carries no weight whatsoever. To accept that assertion would be to believe that every time the ability to elect a manager or director of a corporation is negotiated, there is no benefit derived therefrom if there is not a right to elect a majority of the managers or directors. Such a notion would certainly come as a surprise to all those who have given valuable consideration in negotiating such valueless rights. The right to participate in a management group is a valuable right whether or not that participation includes control of the group.

<u>Solar</u>, 2002 WL 749163, *7.

<u>Solar</u> supports Arenson's contention that any claim based on a violation of his rights as the Class B Representative is a claim of the Class B Members. The <u>Solar</u> court held that harm caused by being deprived of the right to elect a manager and thereby participate in the management of the limited liability company would be suffered by the plaintiff, who was a member of the company **not** a manager on the board. Similarly, in the present case, any harm

9

caused by depriving the Class B Representative of his rights to participate in the Supervisory Board will be suffered by the Class B Members **not** by Arenson as the Class B Representative. Accordingly, Solar provides support for Arenson's position that the Amended Complaint contains no allegations that support a claim by Arenson against Plaintiffs based on a violation of his rights as the Class B Representative.

### C.   Plaintiffs Cannot Demonstrate That A Controversy Exists Based On Arenson's Indirect Financial Interest In the Outcome of the Proceedings.

Plaintiffs next contend that an actual controversy exists because "Plaintiffs and Arenson clearly have adverse interests with respect to Arenson's rights . . . as an indirect holder of Class B equity interests." (D.I. 50 at 4-5) Specifically, Plaintiffs argue that "[t]he relief accorded by the Declaratory Judgment Act, however, is not limited to those with a 'direct' interest in the controversy so long as their interests might be affected by the declaration that is sought." (D.I. 50 at 12) Further, Plaintiffs claim that "Arenson has a direct interest in the parties' disagreement about Arenson's rights and obligations as a member of ALH's Supervisory Board, as well as a financial interest through his ownership and control of two Class B Members[.]" (D.I. 50 at 14) In support, Plaintiffs rely on the following cases which are inapposite to the present case: Essex Ins. Co. v. Kasten Railcar Servs., Inc., 129 F.3d 947 (7th Cir. 1997), The Continental Insurance Company v. The Law Office of Thomas J. Walker, 171 F.R.D. 183 (D.Md. 1997), and Franklin Life Ins. Co. v. Johnson, 157 F.2d 653 (10th Cir. 1946). These cases are distinguishable in that they are declaratory judgment actions brought by insurance companies to determine liability under a policy to an insured to cover a claim by a third party injured by the insured.[4]

Specifically, Plaintiffs' reliance on Essex is misguided because the defendant in that case was a third party beneficiary to the insurance policy. In Essex, the court held that the defendant,

---

[4] Declaratory judgment actions by insurance companies are special cases that are readily distinguishable from the present case. The unique character of those type of cases was recognized by the Tenth Circuit in Franklin Life, where the court explained "[i]n declaratory judgment actions brought to determine coverage under insurance policies issued to protect the insured against liability to third persons, third persons asserting such liability have been held to be proper parties to a declaratory judgment proceeding." Franklin Life, 157 F.2d at 658.

a dog bite victim, was a proper party to an insurance company's suit for declaratory judgment of no coverage. <u>Essex</u>, 129 F.3d at 948. As the injured party, the dog bite victim was deemed to be a proper party because he had "already obtained a substantial judgment" against the insured, the dog owner, and was attempting to collect this judgment. <u>Id.</u> Moreover, the insured was in bankruptcy and the injured party's only chance of collecting his judgment was through the insurance company. <u>Id.</u> The court held that the injured party was a third party beneficiary and was therefore a proper party. Here, Plaintiffs do not assert that Arenson is in any way a third party beneficiary to the ALH Operating Agreement.

Plaintiffs' reliance on <u>Continental</u> is likewise unpersuasive. In <u>Continental</u>, in addition to the parties being third party beneficiaries, the defendants intervened under FRCP 24(a)(2), and the court did not address whether these parties would have been proper defendants in the original declaratory judgment action, but instead ruled that they met the standards for intervention. <u>Continental</u>, 171 F.R.D. at 185. In this case, however, the issue before the Court is not whether Arenson could intervene in the matter if he so chose, but whether the Amended Complaint alleges the existence of an imminent controversy that makes Arenson an appropriate defendant in this declaratory judgment action. Because the standards are not the same, <u>Continental</u> provides no guidance to the Court as to whether Arenson is a proper party in this case.

Plaintiffs' reliance on <u>Franklin</u> is also without merit. In <u>Franklin</u>, the insurance company filed suit against the primary beneficiary and the contingent beneficiary of an insurance policy. The contingent beneficiary moved to dismiss the action against her claiming that no actual controversy existed between her and the insurance company. <u>Franklin</u>,157 F.2d at 658. The court denied her motion reasoning that "[a]s contingent beneficiary, she has a vested interest in the insurance contract, contingent only that she survive the first named beneficiary, who will be eighty years of age in 1950 when the benefits are first due and payable." <u>Id.</u>

The present case is factually distinguishable from <u>Franklin</u> in that there are no allegations, nor could there be any, in the Amended Complaint to support an assertion that

11

Arenson is a contingent beneficiary. Based on Plaintiffs' citation to FRCP 23.1, which deals with derivative actions by shareholders, Plaintiffs appear to suggest that Arenson may have a contingent claim based on his position as a shareholder of Arenson Holdings and D.A. Gardens because if Arenson Holdings and D.A. Gardens refused Arenson's demand to bring an action against Plaintiffs then Arenson would have the right to bring a derivative action on behalf of Arenson Holdings and D.A. Gardens against Plaintiffs. Such a claim, however, is without merit since Arenson Holdings and D.A. Gardens have in fact filed claims against Plaintiffs in the North Carolina Action thereby eliminating any possible contingency that Arenson could bring a derivative action on their behalf against Plaintiffs.

If financial interest in a company were enough to require a party to defend a declaratory judgment action, every stockholder and equity owner of a company would be required to defend a declaratory judgment action against a company in which they own an interest. This is not the rule and should not be the rule for obvious reasons. Plaintiffs' failure to offer any contrary case law confirms Arenson's position. Accordingly, Arenson's alleged financial interests are insufficient to create an actual controversy.

**D.    Plaintiffs' Amended Complaint Contains No Allegations That Arenson Individually Threatened Legal Action Against Plaintiffs.**

Unable to demonstrate that the Amended Complaint contains an actual underlying cause of action by Arenson, Plaintiffs argue that "declaratory judgments are routinely used by potential litigants to anticipate each other's claims and that the filing of a complaint for declaratory relief before the other party can file its own complaint is not inappropriate and may even be a 'wise strategy.'" (D.I. 50 at 14 quoting Cameron & Barkley Co. v. Fabreeka Int'l., Inc., 144 F. Supp. 2d. 1382, 1384 (M.D. Ga. 2001)) Plaintiffs rely on Cameron in support of their contention that "there is an actual *controversy* between Arenson, Plaintiffs and the other Defendants involving their legal rights and interests that can be effectively resolved through declaratory judgment." (D.I. 50, at 14)(emphasis in original)

12

Cameron, however, is inapposite to the present case. Cameron involved a dispute between a supplier and a manufacturer over an alleged breach of contract. The plaintiff-supplier filed a declaratory judgment action against the defendant-manufacturer seeking, *inter alia*, declarations that no contractual relationship currently existed between the parties, that the supplier had satisfied its obligations to the manufacturer for past purchases, that the supplier was never contractually bound to maintain any level of inventory and that the supplier never agreed to be responsible for any inventory maintained by the manufacturer. The manufacturer moved to dismiss claiming that the supplier had not filed a proper complaint for declaratory relief because it deprived the manufacturer of its right to choose the forum and the time to bring its action. The court disagreed and held that "because **there existed a threat of legal action**, it was proper for the supplier to file its complaint for declaratory relief." Cameron, 144 F. Supp. 2d. at 1384 (emphasis added).

Plaintiffs contend that "[b]ecause Defendants were content to accuse Plaintiffs of wrongdoing without subjecting their claims to adjudication, Plaintiffs decision to seek a declaratory judgment was, like the one in *Cameron*, a 'wise strategy.'" (D.I. 50 at 15 (citing Cameron, 144 F. Supp. 2d at 1384). Plaintiffs' reliance on Cameron is misplaced because in Cameron the defendant-manufacturer had actually threatened litigation against the plaintiff-supplier whereas here, the Amended Complaint contains no allegations that Arenson individually ever threatened legal action against Plaintiffs. Not only does the Amended Complaint fail to allege that Arenson threatened to sue on his own behalf, but in fact, Arenson did not sue and is not a party to the North Carolina Action. (D.I. 41, Ex. I) Accordingly, Cameron provides no support for Plaintiffs' contention that a controversy exists with Arenson.

### E.     The North Carolina Action Does Not Demonstrate A Controversy Between Arenson and Plaintiffs.

Plaintiffs argue that "an actual controversy between Plaintiffs and Arenson that is appropriate for declaratory relief is further confirmed by Defendants' recently-filed complaint in

[North Carolina]." (D.I. 50 at 9)  Plaintiffs' reliance on the North Carolina Action to show a controversy between Arenson and Plaintiffs is unpersuasive because this Court's ruling on Arenson's Motion is limited to the allegations in the Amended Complaint and Arenson is not a party in the North Carolina Action.

Plaintiffs attempt to use the North Carolina action to show that Arenson and Plaintiffs are in disagreement on legal issues pertaining to the management of ALH.  However, "the simple assertion that the parties disagree on a legal issue does not create adversity of interest or a justiciable controversy[.]"  Bell Atlantic Corp. v. MFS Communications Co., Inc., 901 F. Supp. 835, 846 (D.Del. 1995).  The North Carolina Action only shows that entities which Arenson has an interest in are in disagreement with Plaintiffs and in no way demonstrates an actual controversy between Plaintiffs and Arenson.

In fact, the filing of the North Carolina action shows a lack of controversy between Arenson and Plaintiffs.  First, Arenson is not a party to the North Carolina Action.  (D.I. 41, Ex. I)  While the Class B Members brought suit in North Carolina, Arenson individually did not join the case.  Second, any reference to Arenson in the North Carolina Action is related to his actions as the Class B Representative and only asserts injuries to the Class B Members and not to Arenson individually.

### F.      Plaintiffs' Amended Complaint Fails to State A Claim Against Arenson for Indemnification.

Plaintiffs claim a case or controversy as to Arenson exists because a dispute has purportedly arisen among Plaintiffs and Arenson regarding Plaintiffs' demand for indemnification "including reimbursement and advancement of legal fees and other expenses, pursuant to the Consulting Agreement between SCA and ALH and under Section 7.4 of the By-Laws of ALH

14

II." (D.I. 50 at 11 citing D.I. 37 ¶¶ 149-50)  Plaintiffs' claim is baseless and wholly without merit.[5]

Plaintiffs allege a right to indemnification from ALH under the Consulting Agreement between SCA and ALH.[6] Plaintiffs argue that "Arenson, in his role as Class B Representative on ALH's Supervisory Board, is in a position to authorize ALH to advance to Plaintiffs their legal fees and other expenses, but such authorization has been refused." (D.I. 50 at 11 citing D.I. 37 ¶ 152)  Plaintiffs once again have misconstrued the facts as alleged.  The Amended Complaint alleges "Defendants have adamantly and wrongly opposed any indemnification of plaintiffs unless ordered by a court." (D.I. 37 ¶ 46)  The only way Plaintiffs' right to indemnification under the Consulting Agreement could by violated is if ALH refused indemnification.  ALH, acting through the Supervisory Board, would have to meet and vote on the issue of indemnification.[7] The Amended Complaint contains **no** allegation that ALH's Supervisory Board held a meeting to address Plaintiffs' demand for indemnification and that Arenson voted against indemnification. No such allegation exists because no such meeting occurred.

Further, even if such a meeting had occurred, Arenson, as Class B Representative, could not stop ALH from indemnifying Plaintiffs.  Plaintiffs' own allegations expressly refute that Arenson could stop ALH from doing anything:  "Nothing in the Operating Agreement requires the consent of the Class B Representative for any action or decision by the Supervisory Board. Nothing in the Operating Agreement requires the consent of the Class B Members for action or

---

[5] Plaintiffs chose to file this preemptive complaint for declaratory relief thereby creating the confusing role reversal that now makes them plaintiffs in the present action.  Plaintiffs are not entitled to indemnification for a lawsuit that they initiated.  No such right exists.

[6] Plaintiffs' claim that Arenson is responsible for actions by ALH II is unfounded since Arenson is not a director on ALH II's Board of Directors and even if he were a director, he would not be permitted to vote on indemnification since he is now a party in this case.  6 Del. C. § 145(d) provides that a determination of indemnification by a corporation's board of directors "shall be made . . . by a majority vote of the directors who are not parties to such action, suit or proceedings, even though less than a quorum …[.]"

[7] There are no provisions in the ALH Operating Agreement that provide for indemnification or that set forth the procedure for granting indemnification.  6 Del. C. § 18-108 provides "Subject to such standards and restrictions, if any, as are set forth in its limited liability company agreement, a limited liability company may, and shall have the power to, indemnify and hold harmless any member or manager or other person from against any and all clams and demands whatsoever."

15

decision by ALH . . . Actions and Decision by ALH are generally effective by majority vote of the five Representatives on the Supervisory Board." (D.I. 37 ¶ 71) It is undisputed that Plaintiffs have control of a majority of the Supervisory Board since "three of the five members of the Supervisory Board have been Shamrock employees." (D.I. 37 ¶ 72) Having repeatedly asserted that Arenson as Class B Representative has no control, Plaintiffs now cannot argue that a claim exists against Arenson because he refused to authorize indemnification. There are no factual allegations in the Amended Complaint to support such a claim and no basis in the law to assert such a claim.

In short, Plaintiffs cannot establish that the Amended Complaint states a claim for relief against Arenson based on Plaintiffs' alleged inability to obtain indemnification from ALH or ALH II.

### G.    Any Controversy Between Plaintiffs and Arenson is Not Imminent.

For the reasons discussed *supra*, Plaintiffs cannot establish that a case or controversy exists between Plaintiffs and Arenson. However, assuming *arguendo*, that Plaintiffs could show an actual controversy between Arenson and Plaintiffs—which they cannot—the Amended Complaint does not contain allegations to support that the purported case or controversy is imminent. Plaintiffs recognize that in order to demonstrate that a cause of action for declaratory relief is appropriate there must be "sufficient immediacy." (D.I. 50 at 4 (citing, Grace Holdings, L.P. v. Sunshine Mining and Refining Co., 901 F. Supp. 853, 857 (D. Del. 1995)). However, they fail to address this element in their Opposition because no such immediacy exists.

In Plaintiffs' Opposition, they do not cite to allegations in the Amended Complaint that demonstrate that they filed the present action based on Arenson's threat that he was going to file an action against Plaintiffs. While it is true that "[i]n some situations, present harms will flow from the threat of future actions . . . '[t]o protect against a feared future event, the plaintiff must demonstrate that the probability of that future event occurring is real and substantial, 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Armstrong

16

World Indus., Inc. by Wolfson v. Adams, 961 F.2d 405, 412 (3d Cir. 1992)(citation omitted). "'One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.'" Pacific Gas & Elec. Co. v. State Energy Resource Conservation & Dev. Comm'n, 461 U.S. 190, 201 (1983)(internal citation omitted).

The Amended Complaint does not contain allegations either that a case or controversy exists between Arenson and Plaintiffs or that the likelihood of Arenson's claim is sufficiently immediate and real to warrant the issuance of declaratory relief. Accordingly, Arenson's Motion should be granted.

## II.    Arenson Did Not Waive His Right To File a Motion to Dismiss for Failure to State a Claim.

Plaintiffs contend that Arenson waived his right to file a motion to dismiss under FRCP 12(b)(6) because he did not raise it on October 14, 2004, when he filed his original motion to dismiss Plaintiffs' first complaint.[8] (D.I. 50 at 4). The defense of failure to state a claim upon which relief may be granted is an exception to the consolidation of defenses required by Rule 12(g) and does not need to be set forth in the first pre-answer motion. See David v. Village of Oak Lawn, 954 F. Supp. 1241, 1244 n. 4 (N.D.Ill. 1996); Steele v. Stephan, 633 F. Supp. 950, 951 (D.C.Kan. 1986); Hicks v. Small, 842 F. Supp. 407, 408 (D.Nev. 1993), aff'd, 69 F.3d 967 (9th Cir. 1995); Mylan Laboratories, Inc. v. Akzo, N.V., 770 F. Supp. 1053, 1059 (D.Md. 1991); Sharma v. Skaarup Ship Mgt. Corp., 699 F. Supp. 440, 444 (S.D.N.Y. 1988); Strandell v. Jackson County, 648 F. Supp. 126, 129 (S.D.Ill.1986); Ogden v. Michigan Bell Tel. Co., 595 F. Supp. 961, 965 n. 5 (E.D.Mich. 1984); Thorn v. New York City Dep't of Social Servs., 523 F. Supp. 1193, 1196 n. 1 (S.D.N.Y. 1981); see also FPP § 1357 (stating, "A motion made under Rule 12(b)(6) that raises the defense of failure to state a claim upon which relief may be granted must

---

[8] In section II of this brief, Arenson's Motion to Dismiss under Rule 12(b) (6) filed on June 3, 2005, (D.I. 46-47) will be referred to as **"this Motion"**, and Arenson's Motion to Dismiss under Rule 12(b)(6) filed on October 14, 2004 (D.I. 3), will be referred to as **"the original motion"**.

be made before the service of a responsive pleading, but according to Rule 12(h)(2) the defense is preserved and may be raised as late as trial").

Plaintiffs' reliance on the plain terms of Rule 12(g) in arguing that Arenson waived the right to file this Motion is misplaced because Plaintiffs fail to recognize the clear exception to waiver in Rule 12(g) which states "except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated." Rule 12(h)(2) provides the "defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." Therefore, read in conjunction with one another, Rule 12(g) and Rule 12(h)(2) provide that a defense of failure to state a claim upon which relief can be granted is not waived by failing to raise this defense in an earlier motion. See U. S. ex rel. Gittlemacker v. Philadelphia County, Com. of Pa., 413 F.2d 84, 87 (3rd Cir. 1969)(citing Rule 12(h)(2)) (stating, "The failure to file an appropriate motion to dismiss did not operate as a waiver of the defense of failure to state a claim upon which relief can be granted, which defense is expressly excepted from the waiver of defense rule.").

Nevertheless, assuming *arguendo*, that a party who raises a defense by motion prior to an answer must raise all such possible defenses in a single motion, Plaintiffs have consented to this Motion or, in the alternative, this Court has the discretion to treat this Motion as amending the original motion. In a letter attached to the Amended Complaint and dated April 22, 2005, Plaintiffs expressly consented to this motion:

> The pending Rule 19 motion filed by defendants SELK, LLC and Laurel Equity Group, LLC, is mooted by the amended complaint, and Mr. Arenson's pending motion to dismiss is directed to an obsolete and superseded complaint. We assume that, if Mr. Arenson decides to move against the amended complaint, you will want to submit new opening papers on his behalf that address, *inter alia*, his material participation in the management of ALH, LLC.

Ex. 1. Plaintiffs proposed an amended scheduling order that eliminated their responsibility to respond "to motions that are now moot." Id. Defendants agreed to Plaintiffs' request and filed a stipulation and order stating, *inter alia*, that Plaintiffs did not need to respond to the earlier

motions. The Court entered the following: "ORDER, Motions terminated: [3]Motion to Dismiss filed by Laurel Equity Group LLC,, Selk LLC,, [4]Motion to Dismiss filed by Avie Arenson[.]" (D.I. 39) Accordingly, Plaintiffs have no basis to challenge this Motion since the original motion was terminated at their request.

In the alternative, this Court has the discretion to treat subsequently filed motions as amendments to previous motions where appropriate. See MacNeil v. Whittemore, 254 F.2d 820, 821 (2d Cir. 1958)(upholding a district court's granting of a motion for leave to amend a motion to dismiss); Cohen v. Beneficial Indus. Loan Corp., 93 F. Supp. 418, 420 (D.Del. 1950)(holding that "defendant does not lose his defense of improper venue on the technical basis as to the time sequence on which different motion papers are served or filed" where there was a delay of four months between initial 12(b) motions and subsequent 12(b) motion).[9]

In this case, the Court should exercise its discretion and treat the new grounds raised in this Motion as part of the original motion because there is no concern of piecemeal motions practice, this Court has not ruled on the original motion and Plaintiffs will not be prejudiced. In response to the Amended Complaint, Arenson timely filed, *inter alia*, this Motion. (D.I. 46). Plaintiffs were given over two months to respond to this Motion and therefore are not prejudiced by the Court exercising its discretion to permit Arenson to add new grounds for dismissal. (D.I. 49). Accordingly, the Court should exercise its discretion and treat this Motion as amending the original motion.

---

[9] See also Britton v. Cann, 682 F.Supp. 110, 113 (D.N.H. 1988) (allowing a motion to dismiss to be amended where amendment was sought in good faith, plaintiff would not be unduly prejudiced, and case would not be unduly delayed); Roller Derby Associates v. Seltzer, 54 F.R.D. 556, 557 (N.D.Ill.1972); Martin v. Lain Oil & Gas Co., 36 F.Supp. 252, 255 (E.D.Ill.1941); Mutual Life Insurance Co. v. Egeline, 30 F.Supp. 738, 740 (N.D.Cal.1939); FPP § 1389.

19

DATED:  September 12, 2005                Respectfully submitted,


                                          _David A. Felice_____
                                          Sean J. Bellew (#4072)
                                          David A. Felice (#4090)
                                          Cozen O'Connor
                                          Chase Manhattan Centre
                                          1201 N. Market Street, Suite 1400
                                          Wilmington, DE  19801
                                          (302) 295-2026 (Direct)
                                          (302) 295-2013 (Fax)


Of Counsel:
Thomas M. Wood, IV
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street, 27th Floor
Baltimore, Maryland  21202-3201
(410) 332-8523 (Direct)
(410) 332-8564 (Fax)

Attorneys for Defendants Abraham Arenson