## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SHAMROCK HOLDINGS OF CALIFORNIA,          )
INC., SHAMROCK CAPITAL ADVISORS, INC.     )
EUGENE I. KRIEGER, GEORGE J. BUCHLER      )
and BRUCE J. STEIN                        )
                                          )
          Plaintiffs                  )
                                          )  Civil Action No. 04-1339-SLR
    v.                            )
                                          )
AVIE ARENSON, SELK, LLC, LAUREL           )
EQUITY GROUP, LLC, J12ALH ASSOCIATES,     )
A. ARENSON HOLDINGS, LTD., AND D.A.       )
GARDENS, LTD.                             )
          Defendants                  )

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(B)(2) AND (7)

COZEN O'CONNOR
Sean J. Bellew (#4072)
David A. Felice (#4090)
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
(302) 295-2000
(302) 295-2013 (Fax)

THOMAS M. WOOD, IV
Neuberger, Quinn, Gielen, Rubin
 & Gibber, P.A.
One South Street, 27th Floor
Baltimore, Maryland 21202-3201
(410) 332-8523 (Direct)
(410) 332-8564 (Fax)

Attorneys for Defendants Abraham Arenson, A.
Arenson Holdings, Ltd., D.A. Gardens, Ltd.,
J12ALH Associates, SELK, LLC and Laurel
Equity Group, LLC

DATED: September 12, 2005

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................1

ARGUMENT......................................................................................................2

I. This Court Does Not Have Jurisdiction Over Arenson Under 6 Del. C. § 18-109. ...2

   A. Arenson Does Not Participate Materially in the Management of ALH...............3

   B. Management of ALH ..............................................................................4

   C. Plaintiffs Cite No Cases That Support Their Contention That Arenson
      Participates Materially In the Management of ALH..............................................6

II. This Court Lacks Personal Jurisdiction Over Defendants ......................................10

   A. Defendants Are Not Subject To Personal Jurisdiction Under 10 Del. C. § 3104...
      ......................................................................................................10

   B. Service on Jays LLC Does Not Confer Personal Jurisdiction on J12 ................13

III. SELK and Laurel's Motion to Dismiss For Failure to Join Necessary Parties
     Should  Be Granted...................................................................................14

   A. Arenson Holdings, D.A. Gardens, and J12 are Necessary Parties Under Rule
      19(a)...................................................................................................15

   B. The Absent Parties are Indispensable Parties Under Rule 19(b) ......................16

      1. A Judgment Will Not Be Adequate. ...................................................17

      2. The Plaintiffs Have an Adequate Alternative Remedy. ...................................18

      3. The Absent Parties Will be Adversely Affected by the Outcome....................19

CONCLUSION ...................................................................................................20

## TABLE OF CITATIONS

**CASES**

AeroGlobal Capital Management, LLC v. Cirrus, 871 A.2d 428 (Del. 2005) ............... 11
Angst v. Royal Maccabees Life Ins. Co., 77 F.3d 701, 706 (3d Cir. 1996).................... 16
Assist Stock Mgmt. LLC v. Rosheim, 752 A.2d 974 (Del. Ch. 2000) ........................... 9
Cairns v. Gelmon, 1998 WL 276226 (Del. Ch. May 21, 1998)...................................... 11, 12
Carlton Inv. v. TLC Beatrice Int'l Holdings, Inc., 1995 WL 694397
    (Del. Ch. Nov. 21, 1995) ......................................................................................... 14
Crescent/Mach I Partners, L.P. v. Turner, 846 A.2d 963, 975 (Del.Ch. 2000) .............. 11
Days Inn Worldwide, Inc. v. Sai Baba, Inc., 300 F. Supp. 2d 583, 592-93
    (N.D.Ohio 2004)....................................................................................................... 1
Delpro Co. v. Nat'l Mediation Bd. Of the U.S., 509 F. Supp. 468, 476 (1981) .............. 16, 17
Elf Atochem North America, Inc. v. Jaffari, 727 A.2d 286, 290 (Del. 1999) ................. 7
Friedman v. Alcatel Alsthom, 752 A.2d 544, 550 (Del.Ch. 1999)................................... 12
Glancy v. Taubman Centers, Inc., 373 F.3d 656 (6th Cir. 2004)..................................... 19
HMG/Courtland Properties, Inc. v. Gray, 729 A.2d 300 (Del.Ch. 1999)........................ 14
In re Fleming Companies, Inc., 316 B.R. 809, (D.Del. 2004) ......................................... 4
Johnson & Johnson v. Coopervision, Inc., 720 F. Supp. 1116, 1126
    (D. Del. 1989)................................................................................................ 15, Passim
Little Switzerland, Inc. v. Destination Retail Holdings Corp., 1999 WL 223496
    (D. Del. March 31, 1999)......................................................................................... 12
Mobilificio San Giacomo S.P.A. v. Stoffi, 1996 WL 924508 (D.Del. Oct. 29, 1996).... 12
Murtha v. Continental Opticians, Inc., 729 A.2d 312, 317 (Del. 1997) ......................... 3
Palmer v. Moffat, 2001 WL 1221749 (Del. Oct. 10, 2001)............................................. 8, 9
Papendick v. Bosch, 410 A.2d 148 (Del. 1979)................................................... 11, 12, 13
Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197 (3rd Cir. 1998) ........................ 14
Provident Tradesmen Bank v. Patterson, 390 U.S. 102, 118 (1968) ............................... 16, 17
Reach & Associates, P.C. v. Dencer, 269 F. Supp. 2d 497 (D.Del. 2003) ............... 11, 13, 14
Solar Cells, Inc. v. True North Partners LLC, 2002 WL 749163
    (Del. Ch. April 25, 2002)......................................................................................... 10
Suburban Trust and Sav. Bank v. University of Delaware, 910 F. Supp. 1009,
    1016 (D.Del. 1995).................................................................................................. 4
Werner v. Miller Technology Management, L.P., 831 A.2d 318 (Del. Ch. 2003).......... 6, 7, 8

**STATUTES**

6 Del. C. § 18-101............................................................................................................. passim
6 Del. C. § 18-109............................................................................................................. passim
6 Del. C. § 18-402............................................................................................................. 4
10 Del. C. § 3104(c) ......................................................................................................... passim

**RULES**

Fed. R. Civ. P. 12(b)......................................................................................................... passim
Fed. R. Civ. P. 19.............................................................................................................. passim

**OTHER SOURCES**

*The American Heritage Dictionary* at 761, 772 and 905 (2d College Ed. 1991) ............ 4
*Black's Law Dictionary* 991 (7th Ed. 1999) ................................................................... 4
7 Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 1608
    (3d ed. 2001)............................................................................................................. 18

**INTRODUCTION**

Defendants, Abraham Arenson ("**Arenson**"), A. Arenson Holdings, Ltd. ("**Arenson Holdings**"), D.A. Gardens, Ltd. ("**D.A. Gardens**"), J12ALH Associates ("**J12ALH**"), Selk, LLC ("**SELK**") and Laurel Equity Group LLC ("**Laurel**") (collectively the "**Defendants**"), by their undersigned counsel, file this Reply in support of their Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(2) and (7)("**Defendants' Motion**") (D.I. 44), with respect to the Amended Complaint filed by Plaintiffs, Shamrock Holdings of California, Inc. ("**Shamrock**"), Shamrock Capital Advisors, Inc. ("**SCA**"), Eugene I. Krieger ("**Krieger**"), George J. Buchler ("**Buchler**"), and Bruce J. Stein ("**Stein**") (hereinafter collectively "**Plaintiffs**")(D.I. 37).

Plaintiffs filed this declaratory judgment action to obtain a declaration of non-liability in connection with their mismanagement of ALH Holdings, LLC ("**ALH**"), a Delaware limited liability company ("**LLC**"). Defendants Arenson, Arenson Holdings, D.A. Gardens and J12ALH moved to dismiss all claims against them arguing, *inter alia*, that Plaintiffs cannot establish a basis for this Court to exercise personal jurisdiction over them. As to Arenson, Plaintiffs' effort to distort the ALH Operating Agreement (the "**Agreement**") to establish that Arenson participated materially in the management of ALH falls far short.

Moreover, Plaintiffs cannot establish that Delaware's long-arm statute provides a basis for asserting personal jurisdiction over Arenson, Arenson Holdings, D.A. Gardens and J12 based on the sole contact of the formation of ALH and ALH II, Inc. "A request for declaratory judgment must accompany the substantive claim for which declaratory judgment is sought." Days Inn Worldwide, Inc. v. Sai Baba, Inc., 300 F.Supp.2d 583, 593 (N.D.Ohio 2004). Here, as demonstrated in Defendants' complaint filed in the United States District Court for the Western District of North Carolina (the "**North Carolina Action**"), the substantive claims for which Plaintiffs seek declaratory relief in this Court relate to Defendants' claim for redress for Plaintiffs' decision to sell ALH in parts thereby bankrupting ALH in violation of the Agreement, the

business judgment rule and their fiduciary duties to Defendants.[1] (D.I. 41, Ex. I) Therefore, even assuming that the act of forming ALH and ALH II can be attributed to Defendants, Plaintiffs cannot establish a sufficient nexus between the formation of ALH and ALH II and Defendants' substantive claims which are the basis for Plaintiffs' declaratory judgment action. The conundrum Plaintiffs find themselves in is one of their own making—if Plaintiffs had not filed this preemptive declaratory judgment action when the parties were involved in settlement discussions, Defendants would have filed the North Carolina Action if settlement proved unsuccessful thereby eliminating Plaintiffs' need to establish personal jurisdiction.

In the interest of judicial economy, SELK and Laurel filed a contingent motion to dismiss under Federal Rules of Civil Procedure 12(b)(7) and 19 (the "**12(b)(7) Motion**"), asking that the Court dismiss this action for failure to join necessary parties if this Court finds that it lacks personal jurisdiction over Defendants Arenson Holdings, D.A. Gardens and J12. Without supporting authority, Plaintiffs claim that the 12(b)(7) Motion is premature and without merit simply because it is a contingent motion. As for the merits of the 12(b)(7) Motion, it is within the Court's discretion to decline to grant declaratory relief because of the non-joinder of an interested party. Furthermore, weighing the factors under Federal Rules of Civil Procedure 19(b) ("**FRCP**"), "in equity and good conscience," the Amended Complaint should be dismissed.

## ARGUMENT

### I.    This Court Does Not Have Jurisdiction Over Arenson Under 6 Del. C. § 18-109.

Plaintiffs mischaracterize Arenson's argument stating: "Arenson's sole argument against jurisdiction under 6 Del. C. § 18-109 is that, because the Class B Members do not have the right to elect a majority of ALH's Supervisory Board, Arenson is necessarily precluded from participating materially in the management of ALH." (D.I. 52 at 19) Arenson, however, contends that he does not participate materially in the management of ALH because his participation on the Supervisory Board (the "**Board**") is more in the nature of an advisory role since he has no authority or control

---

[1] Defendants, in this context, do not include Arenson because he is not a party to the North Carolina Action and the Amended Complaint fails to state a claim for relief against him. (D.I. 46, 47)

with respect to major decisions. (D.I. 44 at 21-24) Plaintiffs have provided hundreds of pages of

exhibits in an effort to demonstrate that Arenson participates materially in ALH. Plaintiffs,

however, have misconstrued the issue. To determine if Arenson consented to personal jurisdiction

under 6 Del. C. § 18-109, this Court must determine whether Arenson's participation is material to

the management of ALH—**not**, as Plaintiffs suggest, whether by virtue of the volume of

Arenson's participation, it is material.

### A.    Arenson Does Not Participate Materially in the Management of ALH.

Plaintiffs argue that Arenson is a manager as defined in 6 Del. C. § 18-109 because

"Arenson has participated materially in the management of ALH." (D.I. 52 at 19) The statute in

question, 6 Del. C. § 18-109, is a consent statute that provides:

> § 18-109 Service of process on managers and liquidating trustees.
>     (a) A manager or a liquidating trustee of a limited liability company may be
> served with process in the manner prescribed in this section in all civil actions or
> proceedings brought in the State of Delaware involving or relating to the business of the
> limited liability company or a violation by the manager . . . of a duty to the limited
> liability company, or any member of the limited liability company, whether or not the
> manager . . . is a manager . . . at the time suit is commenced. . . . . As used in this
> subsection (a) and in subsections (b), (c) and (d) of this section, the term "manager"
> refers (i) to a person who is a manager as defined in § 18-101(10) [2] of this title and (ii)
> to a person, whether or not a member of a limited liability company, who, although not a
> manager as defined in § 18-101(10) of this title, participates materially in the
> management of the limited liability company; provided however, that the power to elect
> or otherwise select or to participate in the election or selection of a person to be a
> manager as defined in § 18-101(10) of this title shall not, by itself, constitute
> participation in the management of the limited liability company.

(6 Del. C. § 18-101, et seq. hereinafter "§ 18-101")

The meaning of "materially participates in the management of a [LLC]" appears to be a

novel issue not addressed by this Court or the Delaware state courts. "When confronted with a

novel question of statutory construction, this Court 'must seek to ascertain and give effect to the

intention of the Legislature as expressed in the Statute itself.'" Murtha v. Continental Opticians,

Inc., 729 A.2d 312, 317 (Del. 1997)(citation omitted). Further, this Court has stated, "'In the

---

[2] § 18-101(10) provides "'Manager' means a person who is named as a manager of a limited liability
company in, or designated as a manager of a limited liability company pursuant to, a limited liability
company agreement or similar instrument under which the limited liability company is formed."

absence of any ambiguity, the language of the statute must be regarded as conclusive of the General Assembly's intent. The judicial role is then limited to an application of the literal meaning of the words.'" Suburban Trust and Sav. Bank v. University of Delaware, 910 F. Supp. 1009, 1016 (D.Del. 1995) (citations omitted).

To determine the meaning of the phrase "participates materially in the management of the limited liability company", it is necessary to define the plain meaning of the words. Participates means "To take part; join or share with other[.]" *The American Heritage Dictionary* 905 (2d College Ed. 1991). Materially means "To a significant extent or degree; importantly[.]"[3] *The American Heritage Dictionary* 772. Material is defined as "Of such a nature that knowledge of the item would affect a person's decision-making; significant; essential [.]" *Black's Law Dictionary* 991 (7th Ed. 1999). Management is defined as "[t]he act, manner, or practice of managing, supervising or controlling[.]" *American Heritage Dictionary* 761. Manage is defined as "[t]o direct or control the use of. . . To exert control over . . To make submissive to one's authority, discipline or persuasion . . To direct or administer (a business, for example)." Id. Therefore, the literal meaning of the words of the statute—"to participate materially in the management"—means taking part, joining or sharing with others to a significant extent or degree, importantly, in the act, manner, or practice of directing, controlling, exerting control over, or administering a limited liability company. Accordingly, Plaintiffs' contention—"[t]he phrase 'participates materially' is, on its face, far broader than 'controls'"—is contrary to the literal meaning of the words of the statute, which by definition mean control. (D.I. 52 at 19)

### B.    Management of ALH

As permitted in §18-402, the Agreement designates the management structure of ALH and the relevant terms demonstrate that Plaintiffs, and only Plaintiffs, manage ALH.[4] (D.I. 20 Ex. B at

---

[3] In determining the meaning of a statute, this Court has looked to the plain meaning as defined in the dictionary. In re Fleming Companies, Inc., 316 B.R. 809, (D.Del.2004)("Congress used "fresh" to describe a "perishable agricultural commodity," the common definition of which explicitly excludes canned goods." Id. (citing *The American Heritage Dictionary* 534 (2d ed.1984))).

[4] With 62.75% of the Class A Membership, Plaintiff Shamrock controls the actions of the Class A members. (D.I. 20 Ex. B at Ex. A) Plaintiffs Krieger and Buchler are the Class A Representatives. On August 16,

22) Article VI governs the management of ALH and expressly designates a manager—Lion LLC ("**Lion**")—to control the overall business, operations and affairs of ALH.[5] (Id.) In July 2001, as a result of a dispute regarding Lion's performance, ALH entered into a settlement with Lion (the "**Lion Settlement**"), wherein the authority of Lion was limited by, *inter alia,* requiring the consent of the Board—then controlled by Plaintiffs—before Lion could make certain decisions and Lamm's consulting agreement with ALH was terminated. (D.I. 37, ¶ 37-39; D.I. 54, Ex. S at 1-2) Moreover, the Class A Members obtained control of the Supervisory Board by virtue of their authority to designate one of the two Class D Representatives. (Id.) Further entrenching Plaintiffs' control, Plaintiff SCA entered into an agreement with ALH to take over the consulting services for ALH formerly performed by Lamm. (D.I. 54, Ex. V) In short, as of July 2001, ALH was effectively managed solely by Plaintiffs because they controlled three of the five representatives on the Board; they controlled SCA and thus, the consulting services provided to ALH; they had the power to remove and replace the nominal manager—Lion—in the event of an operational default; they had the sole power to make all major decisions by the Board.

Contrary to Plaintiffs' distortions, the Agreement demonstrates that Plaintiffs unilaterally make major decisions concerning the management of ALH. In the Amended Complaint, Plaintiffs allege that "the Operating Agreement does not authorize the two Class A Representatives, acting alone, to make Major Decisions or other decisions requiring Supervisory Board approval." (D.I. 37 ¶ 71) Plaintiffs are wrong. The Agreement expressly provides:

> [§ 6.2](c) The following matters (each, a "Major Decision") may be decided **only upon** (and the Company or any Subsidiary, and the Manager and the officers of the Company or such Subsidiary on its behalf **shall not take any action relating to such matters without**) the adoption of a resolution by (y) the Class A Representatives or their Deputy Representatives present in person or by proxy at a meeting of the Supervisory Board **or** (z) the unanimous written consent of the Class A Representatives or their Deputy Representatives for action taken without a meeting:
>
> \* \* \*

---

2001, Plaintiff Stein was elected as the Class D Representative and can only be removed upon the express written consent of the Class A Members. (D.I. 54 at Ex. U)

[5] Lion LLC was controlled by Shalom E. Lamm ("**Lamm**"), who is also the Class D Representative and a member of SELK. (D.I. 37 ¶ 36, 54)

> (e) . . . **Subject to Section 6.2(c)**, the presence at a meeting of at least four Representatives. . . shall constitute a quorum for the transaction of all business of the Supervisory Board. . . . A Representative . . . may vote either in person or by written proxy signed by the Representative. . . . Each Representative. . . shall have one vote on all matters presented to the Supervisory Board for approval, **and except with respect to a Major Decision**, the vote of a majority of the Representatives at a meeting which is properly called and at which a quorum is present shall be binding on the Supervisory Board.

(D.I. 20 Ex. B at 23, 26)(emphasis added) Since major decisions are only made by the adoption of a resolution by the Class A Representatives and by unanimous written consent of the Class A Representatives, they can adopt a resolution without a meeting, Plaintiffs' assertions that the Board must approve major decisions by a majority vote is wrong. In short, the Class A Representatives are vested with the control of the management of ALH by virtue of their sole authority to make all major decisions.

Nevertheless, even assuming Plaintiffs' erroneous interpretation of the Agreement is correct—that major decisions require a majority vote—Arenson still could not participate materially in the management of ALH. Plaintiffs still have the power to make all major decisions because not only do they control three of the five representatives on the Board but also they have the power to veto any major decision made by a majority vote of the Board. Such control by Plaintiffs precludes Arenson's participation from being material to the management of ALH. The plethora of information provided by Plaintiffs demonstrates an undisputed fact—Arenson participated in the management of ALH. Arenson's participation in ALH's management, however, was is in the nature of an advisor to the Plaintiffs, and thus was not material to the management of ALH.

### C.   Plaintiffs Cite No Cases That Support Their Contention That Arenson Participates Materially In the Management of ALH.

Plaintiffs contend that Werner v. Miller Technology Management, L.P., 831 A.2d 318 (Del. Ch. 2003), "sheds no light on the meaning of 'participates materially[,]'" in part, because it involves jurisdiction over members of the advisory board of a limited partnership under 10 Del. C. § 3104(c) and not § 18-109. (D.I. 52 at 22-23) Werner, is instructive because LLC's are similar

to limited partnerships and there is no caselaw interpreting § 18-109(a)(ii) and the meaning of "participates materially in the management".[6]  In Werner, the plaintiff alleged that "by actively participating in the management of Interprise (a Delaware limited partnership) the Advisory Board Defendants have transacted business in Delaware[.]" Werner, 831 A.2d at 328.  The Court held that the Advisory Board Defendants were not subject to personal jurisdiction in Delaware because, *inter alia*, the Advisory Board did not exert control over the limited partnership. Id. at 329.

Plaintiffs try to distinguish Werner claiming that "the advisory board members were expressly prohibited by the limited partnership's governing document from taking any part in the 'control, management, direction or operation of the affairs'" of the partnership." (D.I. 52 at 22 (quoting Werner, 831 A.2d at 328)).  The court, however, did not rest its decision on that provision and its reasoning is instructive to this Court's determination of the meaning of "participates materially in the management of an [LLC]":

> The duties of the Advisory Board as prescribed by the Partnership Agreement and the PPM are not managerial in nature. On the contrary, that Agreement provides that the Advisory Board members are limited partners in Interprise and as such can "take no part in the control, management, direction or operation of the affairs of [Interprise]." Indeed, even the sections of the Partnership Agreement and the PPM upon which Werner relies indicate that the Advisory Board's role is to advise and assist the general partner as needed, not to manage the partnership. Nothing that Werner refers to shows that the Advisory Board managed Interprise.  For example, as Werner noted, the Partnership Agreement states that "[t]he Advisory Board is also expected to advise the General Partner on, and to assist the Partnership's Portfolio Companies with, a variety of other matters." The PPM provides that "[t]he Principals will be assisted… by an experienced Advisory Board," "[t]he Advisory Board members will bring their industry and investment expertise to bear to assist the Principals."  The Advisory Board's role in Interprise's management structure is to offer opinions regarding decisions that the general partner, as manager, will ultimately make. Nowhere in the Partnership Agreement or the PPM is there language that gives the Advisory Board the power to direct the actions of the general partner. **The ability to offer ideas cannot be construed as an ability to manage the affairs of Interprise. The suggestion that the Advisory Board participates in management simply because it contributes information to the decision-making process is untenable.**

Id. at 328 (emphasis added).

---

[6] See Elf Atochem North America, Inc. v. Jaffari, 727 A.2d 286, 290 (Del.Supr. 1999)("The Delaware Act has been modeled on the popular Delaware LP Act. In fact, its architecture and much of its wording is almost identical to that of the Delaware LP Act.").

Arenson's role in ALH is similar to the Advisory Board defendants in <u>Werner</u>. Plaintiffs concede as much: "Because of Arenson's substantial expertise in the real estate, contracting and construction businesses, from time to time he visited ALH's regional home-building operations, talked to local management and made suggestions for improving the operations." (D.I. 52 at 5) Further, as demonstrated by the terms of the Agreement as set forth above, Arenson's role as the Class B Representative on the Board was illusory since his participation was limited to attending meetings, expressing an opinion and casting votes that had little meaning other than to express an opinion since major decisions required only the vote of the Class A Members and for non-major decisions, the Class A Members control three of the five representatives. As in <u>Werner</u>, Plaintiffs suggest that Arenson participates materially in the management of ALH simply because he contributes information to the decision-making process—a suggestion the <u>Werner</u> court found untenable. <u>Werner</u>, 831 A.2d at 328.

Plaintiffs' reliance on <u>Palmer v. Moffat</u>, 2001 WL 1221749 (Del. Oct. 10, 2001), is misplaced. In <u>Palmer</u>, the plaintiff claimed that under § 18-109(a), the defendants had consented to personal jurisdiction. Three of the defendants ("Spencer Defendants") were members of the LLC and one of the defendants, Kranjac, was not a member of LLC but was a member on the board of managers created by the operating agreement. The plaintiff claimed that the Spencer Defendants were named managers as defined in § 18-101(10) because the operating agreement provided "The Members shall have full, exclusive and complete discretion, power and authority, subject in all cases to the provisions of this Agreement and the requirement of applicable law, to manage, control, administer and operate the business . .. ."[7] <u>Palmer</u>, 2001 WL 1221749, * 2. The court reviewed the other provisions in the operating agreement and concluded that "[d]espite this broad grant of potential operating authority to members, the Operating Agreement vests actual authority in the Management Committee." <u>Id.</u> The court held that § 18-109(a) did not provide jurisdiction

---

[7] The court's decision was limited to whether the Spencer Defendants were managers as defined in § 18-101(10) because the plaintiff conceded that the Spencer Defendants did not participate materially in the management of the limited liability company. <u>Palmer</u>, 2001 WL 1221749, *2.

over the Spencer Defendants because they were not members of the management committee. As for Kranjac, the court held that he was a manager as defined in § 18-101(10) because the operating agreement designated members of the management committee as the company's actual managers and Kranjac was a member of the management committee. Palmer, 2001 WL 1221749, *3.

Palmer is not persuasive in the present case because Plaintiffs do not contend nor could they that the Agreement designates Arenson as a manager as defined in § 18-101(10). To the extent Palmer provides any guidance in this case, it supports Arenson's contention that he does not participate materially in the management of ALH. Similar to Palmer, the Agreement grants potential operating authority to the Board but it vests the actual authority in Plaintiffs, because not only do Plaintiffs have majority control of the Board but also they have the sole discretion to make major decisions.[8] Therefore, in addition to naming an actual manager—Lion—the Agreement vests control of ALH in Plaintiffs thereby rendering Arenson's advisory participation immaterial to the management of ALH.

Plaintiffs' rely on Assist Stock Mgmt. LLC v. Rosheim, 752 A.2d 974 (Del. Ch. 2000) and claim "If as Arenson contends, participating materially in the management of an LLC requires unilateral control, Rosheim would not seem to fall within 6 Del. C. § 18-109. However, without discussing this aspect of § 18-109, the court decided that it did have jurisdiction over Rosheim." (D.I. 52 at 21). Plaintiffs misconstrue the court's holding in Rosheim. In Rosheim, there was no dispute that the defendant was a manager because the operating agreement expressly designated him as a manager and therefore, the defendant was a manager as defined in § 18-101(10). The issue before the court was the extent to which the manager had consented to jurisdiction under § 18-109(a). The Rosheim court held that by consenting to act as a manager of a Delaware LLC, the nonresident manager impliedly consented to being sued in Delaware not only to adjudicate claims for breach of fiduciary duty but also "to adjudicate disputes so inherently intertwined with that fiduciary position." Rosheim, 752 A.2d at 981. In this case, unlike Rosheim, Arenson was not

---

[8] Similar to Palmer, the Agreement in this case vests actual authority to manage the overall business, operations and affairs of ALH in the manager, Lion. (D.I. 20 Ex. B at 23)

designated as a manager in the Agreement and the issue before this Court is whether Arenson's advisory participation in ALH is material to its management thereby rendering him a manager.

Finally, Plaintiffs claim that <u>Solar Cells, Inc. v. True North Partners LLC</u>, 2002 WL 749163 (Del. Ch. April 25, 2002), "debunks Arenson's claim that material participation in management is only possible in the context of majority control." (D.I. 52 at 23) To say <u>Solar Cells</u> has any relevance to the meaning of participates materially on the management of an LLC for purpose of personal jurisdiction is nonsensical. In <u>Solar Cells</u>, the court held that the plaintiff may suffer irreparable harm by being denied the right to elect managers to a managing board. The defendants argued that since they controlled the business by virtue of their right to elect a majority of the board, the plaintiff suffered no harm by losing the right to elect a manager because either way, the plaintiff had no control over the company. <u>Solar Cells</u>, 2002 WL 749163 *4. The court rejected that argument stating "[t]he right to participate in a management group is a valuable right whether or not that participation includes control of the group." <u>Solar Cells</u>, 2002 WL 749163 *8. This holding has no relevance in this case because the standard under § 18-109(a)(ii) is not whether Arenson's participation was valuable but whether it was material to the management of ALH. Without question the ability to advise and give input to Plaintiffs was a valuable right but that does not make it material to the management of ALH.

## II. This Court Lacks Personal Jurisdiction Over Defendants

### A. Defendants Are Not Subject To Personal Jurisdiction Under 10 <u>Del</u>. <u>C</u>. § 3104.

Defendants are not subject to personal jurisdiction under Delaware's long arm statute, 10 <u>Del</u>. <u>C</u>. § 3104 (hereinafter § 3104), because their only contact with Delaware is their minority ownership interest in ALH, a Delaware LLC, which does not conduct business in Delaware. Plaintiffs assert that formation of a Delaware LLC is sufficient to subject Defendants to personal jurisdiction if the cause of action arises out of the formation of the LLC. Unlike the cases cited by Plaintiffs, the formation of ALH is not at issue here and therefore there is no nexus between the formation of ALH and the present action.

224945.3-1060.3                    10

Plaintiffs contend that "[i]t is well established that personal jurisdiction can properly be exercised over a defendant who has not set foot within the borders of the state." (D.I. 52 at 23) Plaintiffs cite to cases where the formation of the Delaware entity is without question directly related to the cause of action. (Id. citing Papendick v. Bosch, 410 A.2d 148 (Del. 1979); Cairns v. Gelmon, 1998 WL 276226 (Del. Ch. May 21, 1998)). ·

In Papendick, the plaintiff brought an action against RBNA, a Delaware corporation, and its corporate parent, RB, a West German LLC, seeking to recover a finder's fee allegedly owed to the plaintiff in connection with RBNA's purchase of certain stock from Borg-Worner Corporation ("BW"), an unrelated party. Papendick, 410 A.2d at 148. The court held that "RB's ownership of RBNA stock was the result of RB's purposeful activity in Delaware as an integral component of its transaction with B-W to which the plaintiff's instant cause of action related." Id. at 152. In reaching its decision, the court explained

> There is a controlling distinction, for present purposes, between the ownership of shares of stock acquired by purchase or grant as in Shaffer, on the one hand, and ownership arising from the purposeful utilization of the benefits and protections of the Delaware Corporation Law in activities related to the underlying cause of action, on the other hand. **RB purposefully availed itself of the benefits and protections of the laws of the State of Delaware for financial gain in activities related to the cause of action.** Therein lies the "minimum contact" sufficient to sustain the jurisdiction of Delaware's courts over RB.

Id. at 152. The present case is distinguishable from Papendick because Plaintiffs have not and could not allege that Defendants formed and operated a subsidiary to act as their agent in Delaware and that the cause of action arises from the acts for which the subsidiary was created. In contrast, Defendants only contact with Delaware is the "mere" ownership of a minority interest in ALH, which it has no control over.[9]

---

[9] See also AeroGlobal Capital Management, LLC v. Cirrus, 871 A.2d 428 (Del. 2005)(holding totality of circumstances established parent corporation is deemed to have transacted business in Delaware by forming and operating a Delaware subsidiary to make private equity investments in the United States, including Delaware, and the cause of action against the parent corporation by an unrelated party arises from the operation of the Delaware subsidiary); Crescent/Mach I Partners, L.P. v. Turner, 846 A.2d 963, 975 (Del.Ch. 2000)(holding that foreign corporate defendant conducted business in Delaware because it was directly involved in the alleged wrongful conduct that resulted in the merger of its Delaware subsidiary into a Delaware corporation by negotiating the merger price and providing financing for the combined entity); Reach & Associates, P.C. v. Dencer, 269 F. Supp. 2d 497 (D.Del. 2003)(holding that Plaintiffs did not

In Cairns, the parties entered into an agreement, which provided, *inter alia*, that the parties would form a corporation to purchase certain licensing rights from a third party and that the parties would share equally in the equity of the corporation. Thereafter, the defendants formed the corporation—Instant Vision—and issued shares only to themselves. The court held that "because the incorporation of Instant Vision in Delaware is central to their claims of wrongdoing, I conclude that **in these specific circumstances that single act suffices** to constitute the 'transaction of business' in Delaware under 10 Del C. § 3104(c)(1) and to satisfy the requirements of Due Process." Id. (emphasis added).

Papendick and Cairns do not support a basis for exercising personal jurisdiction over Defendants because the acts giving rise to the underlying cause of action have no relationship to the formation of ALH. In Little Switzerland, Inc. v. Destination Retail Holdings Corp., 1999 WL 223496 (D. Del. March 31, 1999), the court limited the holding of Papendick and Cairns to cases where "a single act of incorporation in Delaware will suffice to confer personal jurisdiction over a nonresident defendant responsible for the transaction, if such purposeful activity in Delaware is an integral component of the total transaction to which plaintiff's cause of action relates." Id. at *6 (citing Papendick, 410 A.2d 148; Cairns, 1998 WL 276226 at *3).

Finally, in Mobilificio San Giacomo S.P.A. v. Stoffi, 1996 WL 924508 (D.Del. Oct. 29, 1996), this Court held that there was not a sufficient nexus between the formation of the corporation and the alleged breach of a joint venture agreement and limited Papendick to cases where the incorporation or formation of a subsidiary was **directly related** to the cause of action. Specifically, the court held "Where the act of incorporation neither in and of itself wrongfully harms the plaintiff nor comprises part of a continuing stream of contacts within the State that proximately injures the plaintiff, it is unlikely that a sufficient nexus can be found between this act

---

satisfy the second prong of the alter ego theory inquiry because they admitted that none of the conduct complained of took place in Delaware); Friedman v. Alcatel Alsthom, 752 A.2d 544, 550 (Del.Ch. 1999)( (holding "[b]y creating a Delaware subsidiary to effect the merger at issue, [the French Corporation's] 'single act' in Delaware is sufficiently linked to the source of this claim to permit this Court to exercise jurisdiction over [it] for the purposes of this action. . . . All the claims in this action . . . spring from the merger effected by that Delaware subsidiary.").

and the claims at issue to support the exercise of specific jurisdiction." <u>Mobilificio</u>, 1996 WL 924508, *9.

Applying the <u>Papendick</u> line of cases to the present action, Plaintiffs do not seek declarations that are related directly to the formation of ALH, but instead seek declarations related to their management and control of ALH that occurred years after the formation of ALH. [10] Plaintiffs have failed to assert that Defendants have any contacts with Delaware other than the formation of ALH. The formation of an entity in Delaware is not enough to satisfy the "transacts business" requirement of 10 Del. C. § 3104 unless there is a nexus between the formation and the cause of action. <u>See Mobilificio</u>, 1996 WL 924508, *3-9.

In fact, in <u>Reach & Associates</u>, the court held that the defendants' filing of the incorporation papers in Delaware was insufficient to establish personal jurisdiction where there were no other allegations that the defendant performed any other activity in Delaware. <u>Reach & Associates</u>, 269 F.Supp.2d at 504. In the present case, Defendants' contacts with Delaware are even more attenuated because they did not form ALH, but instead were merely owners at the time of formation. Therefore, the formation of ALH is not a sufficient contact to subject Defendants to the jurisdiction of this Court for actions relating to Plaintiffs mismanagement of ALH.

**B.     Service on Jays LLC Does Not Confer Personal Jurisdiction on J12**

Plaintiffs' assertion that based on New York law, J12 is subject to personal jurisdiction through service on Jays LLC is incorrect. Plaintiffs have only addressed half of the personal jurisdiction analysis in that they fail to address what statute gives Delaware jurisdiction over J12 based on service upon one of its partners. [11]

---

[10] Plaintiffs cite no supporting authority for their argument that this case "springs from" (D.I. 52 at 28) the formation of ALH because it involves the business of ALH. Under Plaintiffs' theory any cause of action involving an entity would "spring from" the formation of that entity and subject all owners to personal jurisdiction.

[11] Even if there were a statutory basis for personal jurisdiction, which there is not, Plaintiffs cannot establish that jurisdiction over J12 meets the requirements of due process. Plaintiffs argue that J12 could reasonably expect to be haled into Delaware because "it is subject to suit wherever one of its partners may be served." (D.I. 52 at 32). Plaintiffs essentially argue that J12 should reasonably expect to be haled into Delaware because it is a New York general partnership and under New York law, a New York court obtains personal jurisdiction over a partnership when personal service is made on any partner. This does not support due

New York's personal jurisdiction law is not binding or persuasive here because Federal Rule of Civil Procedure 4(e) "'authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits.'" Pennzoil Prods. Co. v. Colelli & Assocs., 149 F.3d 197, 200 (3d Cir. 1998)(citation omitted). In this case, personal jurisdiction is authorized to the extent permitted under Delaware, **not** New York, law. Plaintiffs have failed to allege under which Delaware statute this court can obtain personal jurisdiction over J12 by service on Jays LLC because Delaware does not mirror the New York law relied upon by Plaintiffs and Delaware courts have rejected its reasoning. In HMG/Courtland Properties, Inc. v. Gray, 729 A.2d 300 (Del.Ch. 1999), the court stated that "[t]he mere fact that a general partner of [the defendant] had as its general partner a Delaware corporation does not come close to meeting the requirements of § 3104(c)(4)." Id. at 311. Moreover, in Carlton Inv. v. TLC Beatrice Int'l Holdings, Inc., 1995 WL 694397 (Del. Ch. 1995), the court found that the presence of a general partner of a New York limited partnership in Delaware was not sufficient to subject the limited partnership to personal jurisdiction in Delaware. Id. at *11. Therefore, Plaintiffs cannot establish that under Delaware law, jurisdiction over J12 is based upon service on one of its partners. Accordingly, Plaintiffs cannot satisfy the statutory and constitutional requirements for personal jurisdiction. Reach & Assoc., 269 F.Supp.2d at 502.

III.    **SELK and Laurel's Motion to Dismiss For Failure to Join Necessary Parties Should Be Granted.**

Plaintiffs' unsupported claim that the 12(b)(7) Motion "is not a valid motion in lieu of answer, and SELK and Laurel must forthwith answer the Amended Complaint" is without merit. (D.I. 52 at 34) In the interest of judicial economy, Defendants SELK and Laurel's 12(b)(7) Motion asks that if this Court grants Defendants' Motion to Dismiss under Rule 12(b)(2), that the Court dismiss the action for failure to join necessary parties. See Johnson & Johnson v.

---

process since all states have different laws and while J12 may expect to be subject to personal jurisdiction in a New York court if personal service is made on its partners, Plaintiffs have failed to establish either that there is a similar statutory provision in Delaware or that J12 had any reasonable basis to believe that it may expect to be subject to personal jurisdiction in a Delaware court if personal service is made on its Delaware partner.

Coopervision, Inc., 720 F. Supp. 1116, 1126 (D. Del. 1989)(noting that it is in the public interest to raise and decide at the beginning of the lawsuit whether a necessary party is indispensable). Plaintiffs' assertion that Defendants must file an answer is also unfounded because Defendants SELK and Laurel have a pending 12(b) motion. (D.I. 40)  D.A. Gardens, Arenson Holdings and J12 (hereinafter the "Absent Parties") are necessary parties under Rule 19(a) and weighing the factors under Rule 19(b), "in equity and good conscience," the Amended Complaint should be dismissed.

### A. Arenson Holdings, D.A. Gardens, and J12 are Necessary Parties Under Rule 19(a).

The Absent Parties are necessary parties under Rule 19(a).[12]  The first step in the Court's analysis is to decide whether, pursuant to Rule 19(a), the Absent Parties are persons to be joined if feasible. Johnson, 720 F. Supp. at 1121.  The label of "necessary party" fits the Absent Parties if, in their absence, "(1) complete relief cannot be accorded the present parties, **or** (2) the disposition of the action would prejudice, as a practical matter, [the Absent Parties'] ability to protect [their] own interest, **or** (3) any of the present parties would be subject to a substantial risk of multiple or inconsistent obligations." Id. at 1121-22 (citing Rule 19(a)).

"The first category of necessary parties includes those persons, the absence of whom would prevent relief from being accorded among the present parties." Johnson, 720 F. Supp. at 1122.  Plaintiffs assert that "[a] declaratory judgment would have significant utility to the parties with respect to their rights and obligations and permit the Plaintiffs to wind down ALH without the specter of future liability after ALH has distributed its remaining assets." (D.I. 50 at 15)  If successful, Plaintiffs will only obtain a declaration of non-liability as to SELK and Laurel, which will not resolve the dispute over Plaintiffs' rights and obligations as to the remaining Class B Members and will not permit Plaintiffs to wind down ALH.  Therefore, any relief afforded Plaintiffs herein cannot be regarded as "complete". See Johnson, 720 F. Supp. at 1122.

---

[12] Plaintiffs' assertion that the Absent Parties are "already before the Court" misses the point. (D.I. 52 at 38) This motion is contingent upon the granting of the Absent Parties' motion to dismiss for lack of personal jurisdiction, therefore when the Court considers this motion to dismiss these parties will not be before the court.

Next, all of the Class B Members are necessary parties under Rule 19(a) because they have an interest in the action and the outcome may impede their ability to protect that interest. Although, the Absent Parties "will not be precluded from subsequently raising any claims and issues similar or identical to those litigated in this action, an unfavorable ruling here would nonetheless constitute adverse persuasive precedent, thereby harming [their] interest." Id. at 1125.

Finally, Plaintiffs will be subject to substantial risk of multiple obligations if the Absent Parties are not joined and this action is permitting to continue against SELK and Laurel. See Johnson &, 720 F. Supp. at 1121. Plaintiffs concede that "'there is no risk that a judgment for [Plaintiffs] in this action would preclude the investors from suing [Plaintiffs] for their respective interests." (D.I. 52 at 39 (alteration in original)). Since the Absent Parties will not be bound by a declaration in this action, and are free to pursue their claims in the North Carolina Action, Plaintiffs will be forced to simultaneously litigate the same issues in separate forums.

Under Rule 19(a), the Court "need only find that the party's absence results in any of the problems identified in the rule." Angst v. Royal Maccabees Life Ins. Co., 77 F.3d 701, 706 (3d Cir. 1996). Accordingly, the Absent Parties are parties which must be joined in the action under Rule 19(a).

**B. The Absent Parties are Indispensable Parties Under Rule 19(b).**

This case should be dismissed "in equity and good conscience" because the factors under Rule 19(b) weigh in favor of this Court concluding that the Absent Parties are indispensable parties. "Determining whether or not [a party] is indispensable to this litigation requires a fact-specific, flexible analysis" because "Rule 19 contains no prescribed formula, and cannot be applied in a mechanical way." Johnson, 720 F. Supp. at 1121 (citing Provident Tradesmen Bank v. Patterson, 390 U.S. 102, 118 (1968)). Therefore, the "Court is vested with substantial discretion in making the determination." Id. This discretion is even greater here because the action is for declaratory relief. See Delpro Co. v. Nat'l Mediation Bd. Of the U.S., 509 F. Supp.

224945.3-1060.3                    16

468, 476 (1981). A weighing of these factors confirms that equity requires this Court to exercise its broad discretion and dismiss this action because a remedy here will not be adequate, another forum exists in which to settle the dispute, and the Absent Parties will be adversely affected by the outcome of this action.

### 1. A Judgment Will Not Be Adequate.

Courts have interpreted the adequacy of judgment factor in 19(b) to include the interests of the courts and the public in insuring judicial economy. See Johnson, 720 F. Supp. at 1121 (citing Provident, 390 U.S. at 118 (1968)). The Supreme Court in Provident stated, "[w]e read the Rule's third criterion, whether the judgment issued in the absence of the nonjoined person will be 'adequate,' to refer to this public stake in settling disputes by wholes, whenever possible." Provident, 390 U.S. at 111. In interpreting Provident, this court specifically recognized "the courts and the public" are "constituencies whose interests are balanced by the rule." Johnson, 720 F. Supp. At 1123. Further, the court explained that "[t]he most palpable interest of [the courts and the public] is in having disputes resolved in the most efficient manner possible." Id. at 1126. The court dismissed the action based on the absence of the indispensable party and found that judicial economy was a factor in favor of dismissal where another action was pending in another jurisdiction where all the parties were present. In reaching its decision, the court explained:

> Litigating the merits of the present controversy in the California state courts—
> with all three of the principal actors present—will advance the public's interest in
> the efficient administration of justice. Surging forward in this forum—with one
> of the three key players missing—would not promote such an interest. On the
> contrary, it would spawn repetitious litigation because this Court cannot resolve
> the entire dispute.

Id. at 1126.

Similarly, in this case, litigating the merits of the present controversy in North Carolina where all the necessary parties are present will advance the public's interest in the efficient administration of justice. In contrast, the public's interest in the efficient administration of justice will not be promoted by moving forward in this forum without all the Class B Members. A declaration against SELK and Laurel will fail to resolve this dispute because the Absent Parties

224945.3-1060.3                                   17

could still bring, and have brought, a cause of action against Plaintiffs on the same issues. Plaintiffs admit and emphasize that a judgment against SELK and Laurel will not prevent the other Class B members from bringing a similar cause of action against Plaintiffs by stating: "'there is <u>no risk that a judgment for [Plaintiffs] in this action would preclude investors from suing [Plaintiffs] for their respective interests.</u>'" D.I. 52 at 39 (emphasis in original) (internal citations omitted). Similar to the situation in <u>Johnson</u>, "[r]egardless of whether or not the instant lawsuit in this Court is dismissed, the [North Carolina] litigation in which all . . . of the players in the dispute are joined is likely to continue." <u>Johnson</u>, 720 F. Supp. at 1127. Therefore, a judgment will be inadequate and this factor weighs heavily in favor of dismissal.[13]

### 2. The Plaintiffs Have an Adequate Alternative Remedy.

The fourth factor under Rule 19(b)—"whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder"—also weighs in favor of dismissal. Courts have given the adequacy of an alternative forum great weight in determining whether to dismiss under Rule 19(b). <u>See</u> <u>Johnson</u>, 720 F. Supp. at 1127. In <u>Johnson</u>, the court stated that the Supreme Court recognized that a decision whether a party is indispensable "must be based on factors varying with the different cases, some such factors being substantive, some procedural, *some compelling by themselves*, and some subject to balancing against opposing interests." <u>Id.</u> at 1127 (emphasis in original) (quoting <u>Provident</u>, 390 U.S. at 118-19). The court further stated that "[t]he availability of [another jurisdiction] to resolve the dispute is certainly persuasive, and approaches classification as a factor which is 'compelling by itself.'" <u>Johnson</u>, 720 F. Supp. at 1127. The <u>Johnson & Johnson</u> court found that the availability of an alternative forum weighed strongly in favor of dismissal notwithstanding that the plaintiff had "made plain its preference for the action to proceed." <u>Id.</u> In the present case, this compelling factor weighs strongly in favor of dismissal.

---

[13] <u>See</u> <u>generally</u> 7 Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 1608 (3d ed. 2001) at 115-18 (2001)(stating, "Rule 19(b) instructs the court to determine whether the relief it ultimately might grant will be an adequate remedy for the alleged wrong to plaintiff or whether it will leave plaintiff only partially compensated, which may lead to further litigation. The conclusion that additional litigation may result or be required in order to provide complete relief suggests that proceeding without the absent party may be inappropriate.").

Defendants have filed suit in North Carolina, therefore, Plaintiffs have an adequate remedy if this cause of action is dismissed because they can defend the North Carolina action and receive the same relief as if this action were fully litigated.[14]  Because an alternate forum exists, this factor weighs in favor of dismissal.

### 3. The Absent Parties Will be Adversely Affected by the Outcome.

The Absent Parties will be adversely affected by the outcome even if they are not precluded from proceeding forward in a separate action against Plaintiffs.  Even though, the Absent Parties "will not be precluded from subsequently raising any claims and issues similar or identical to those litigated in this action, an unfavorable ruling here would nonetheless constitute adverse persuasive precedent, thereby harming [their] interest." Johnson, Inc., 720 F. Supp. at 1125. "Of course if, on the other hand, [the Absent Parties] ultimately [are] held bound by claim or issue preclusion, then the prejudice to [them] of allowing this action to proceed in [their] absence is even more clear-cut." Id.

Furthermore, contrary to the assertions of Plaintiffs, SELK and Laurel cannot adequately represent the interests of the other Class B members because they do not share identical interests in the action. Plaintiffs' allegations against SELK with respect to the Lamm settlement agreement make it impossible for SELK to adequately represent the interests of the Absent Parties because it may not be in the same position as the other Class B Members. (D.I. 37 ¶ 176) SELK's motive and strategy in defending against the present action may be influenced by the Lamm settlement agreement. Since the Absent Parties are not parties to the Lamm settlement agreement, Selk can not adequately represent their interests in this action.

Similarly, Laurel does not adequately represent the interests of the Absent Parties because they do not share identical interests in the litigation. The financial position of the Absent Parties and Laurel are not the same, therefore the "intensity" of the interest may not be the same. See Glancy v. Taubman Centers, Inc., 373 F.3d 656 (6th Cir. 2004)(stating, "Courts have held that

---

[14] Plaintiffs have moved to dismiss the North Carolina Action on, *inter alia*, venue and jurisdictional grounds, all of which Defendants challenge.

asymmetry in the intensity of the interest can prevent a named party from representing the interests of the absentee."). Even if the Court does find that SELK or Laurel can adequately represent the interests of the other Class B members, "[a] more prudent solution, however, would be for the dispute to proceed in a forum where [the Absent Parties are] present, and capable of safeguarding [their] own interests." See Johnson, 720 F. Supp. at 1126.

In short, D.A. Gardens, Arenson Holdings and J12 are necessary parties under Rule 19(a) and weighing the factors under Rule 19(b), "in equity and good conscience," the Amended Complaint should be dismissed.

## CONCLUSION

For the reasons set forth in detail in Defendants' Motion to Dismiss under FRCP 12(b)(2) and (7) (D.I. 44), and the Reply above, this Court should dismiss all claims against Defendants Arenson, Arenson Holdings, D.A. Gardens and J12 for lack of personal jurisdiction and then dismiss the remaining claims for failure to join necessary and indispensable parties.

DATED:  September 12, 2005                    Respectfully submitted,

                                    _David A. Felice_____
                                    Sean J. Bellew (#4072)
                                    David A. Felice (#4090)
                                    Cozen O'Connor
                                    Chase Manhattan Centre
                                    1201 N. Market Street, Suite 1400
                                    Wilmington, DE  19801
                                    (302) 295-2026 (Direct)
                                    (302) 295-2013 (Fax)

Of Counsel:
Thomas M. Wood, IV
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street, 27th Floor
Baltimore, Maryland  21202-3201
(410) 332-8523 (Direct)
(410) 332-8564 (Fax)

Attorneys for Defendants Abraham Arenson, A. Arenson
Holdings, Ltd., D.A. Gardens, Ltd., J12ALH Associates,
SELK, LLC and Laurel Equity Group, LLC