## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SHAMROCK HOLDINGS OF CALIFORNIA,  )
INC., SHAMROCK CAPITAL ADVISORS, INC.  )
EUGENE I. KRIEGER, GEORGE J. BUCHLER  )
and BRUCE J. STEIN  )
                                                                )
               Plaintiffs         )
                                                 )  Civil Action No.  04-1339-SLR
        v.                       )
                                                 )
AVIE ARENSON, SELK, LLC, LAUREL  )
EQUITY GROUP, LLC, J12ALH ASSOCIATES,  )
A. ARENSON HOLDINGS, LTD.,  AND D.A.  )
GARDENS, LTD.  )
               Defendants       )

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR STAY OF PROCEEDINGS

COZEN O'CONNOR
Sean J. Bellew (#4072)
David A. Felice (#4090)
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE  19801
(302) 295-2000
(302) 295-2013 (Fax)

THOMAS M. WOOD, IV
Neuberger, Quinn, Gielen, Rubin
 & Gibber, P.A.
One South Street, 27th Floor
Baltimore, Maryland  21202-3201
(410) 332-8523 (Direct)
(410) 332-8564 (Fax)

Attorneys for Defendants A. Arenson Holdings,
Ltd., D.A. Gardens, Ltd., J12ALH Associates,
SELK, LLC and Laurel Equity Group, LLC

DATED: September 12, 2005

## TABLE OF CONTENTS

**INTRODUCTION** ........................................................................................................... 1

**PROCEDURAL HISTORY** .......................................................................................... 2

**ARGUMENT** ................................................................................................................. 3

**I. This Court Should Grant Defendants' Motion to Dismiss or, in the Alternative, For Stay of Proceedings.** ............................................................................................................... 3

    **A.** **Plaintiffs' Amended Complaint Is Not An Appropriate Action for Declaratory Relief.** ............................................................................................................................ 3

    **B.** **Plaintiffs' Declaratory Action Should Be Dismissed Because Exceptions to the First-Filed Rule Exist.** ....................................................................................................... 6

**II. Defendants SELK and Laurel Have Timely Filed This Motion to Dismiss or, in the Alternative, For Stay of Proceedings.** ........................................................................... 15

    **A.** **This Motion Is An Appropriate 12(b) Motion.** ........................................................ 16

    **B.** **SELK and Laurel Did Not Waive the Right to File This Motion.** .............................. 17

## TABLE OF CITATIONS

<u>CASES</u>

Acands, Inc. v. Aetna Cas. & Sur. Co., 666 F.2d 819, 823 (3d Cir.1981)...................... 4

Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984) ................................................. 20

Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd., 385 F.3d 1291, 1299 (2004)....... 17

Britton v. Cann, 682 F. Supp. 110, 113 (D.N.H. 1988)................................................... 18

Brownell v. La Salle Steel Co., 128 F.Supp. 548, 549 (D.Del. 1955)............................ 13

Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc., 265 F. Supp. 2d 445
     (D.Del. 2003)........................................................................................................ 6, 13, 14

Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 557 (S.D.N.Y. 2000)............... 12, 13

Cohen v. Beneficial Indus. Loan Corp., 93 F. Supp. 418, 420 (D.Del. 1950)................. 19

Columbia Pictures Indus., Inc. v. Schneider, 435 F. Supp. 742, 747-48
     (S.D.N.Y. 1977)........................................................................................................ 10

Corixa Corp. v. IDEC Pharm. Corp., 2002 WL 265094 (D.Del. Feb. 25, 2002) ........... 14

Crown Cork & Seal Co., Inc. v. Borden, Inc., 779 F. Supp. 33, 36 (E.D.Pa.1991)......... 4

Dippold-Harmon Ent. v. Lowe's Cos., 2001 WL 1414868 (D.Del. Nov. 13, 2001)....... 15

EEOC v. Univ. of Pa., 850 F.2d 969, 971-72 (3d Cir. 1988), aff'd,
     493 U.S. 182 (1990)................................................................................................. 6

Envirometrics Software, Inc. v. Georgia-Pacific Corp., 1997 WL 699328,
     *3 (D.Del. Nov. 4, 1997) ....................................................................................... 3, 4, 13

Erbamont, Inc. v. Cetus Corp., 720 F. Supp. 387, 392 (D.Del. 1990)............................ 17

Friedman v. Geller, 925 F. Supp. 611, 613 (E.D.Wis. 1996) ......................................... 3

Friedman v. World Transp., Inc., 636 F. Supp. 685, 688 (N.D.Ill.1986) ....................... 18, 19

Genfoot, Inc. v. Payless ShoeSource, Inc., 2003 WL 22953183 (D.Del. Dec. 3, 2003) . 14

Guccione v. Flynt, 617 F. Supp. 917, 918 (S.D.N.Y. 1985)........................................... 19

Guidant Corp. v. St. Jude Med., Inc., 2004 WL 1925466 (D.Del. Aug. 27, 2004) ......... 14

MacNeil v. Whittemore, 254 F.2d 820, 821 (2d Cir. 1958) ............................................ 18

Martin v. Lain Oil & Gas Co., 36 F.Supp. 252, 255 (D.Ill. 1941)................................... 19

Matsushita Battery Indus. Co. v. Energy Conversion Devices, Inc.,
     1996 WL 328594 (D.Del. April 23, 1996)................................................................. 13

Medtronic Vascular, Inc. v. Boston Scientific Corp., 348 F. Supp. 2d 316, 321
     (D.Del. 2004).......................................................................................................... 17

Miteq, Inc. v. Comtech Telecomms. Corp., 2003 WL 179991 (D.Del. Jan. 23, 2003) ... 15

Moodie v. Fed. Reserve Bank of NY, 58 F.3d 879, 882 (2d Cir. 1995)......................... 17

Moore Corp. Ltd. v. Wallace Computer Services, Inc., 898 F. Supp. 1089, 1095
     (D.Del. 1995).......................................................................................................... 11

National Union Fire Ins. Co. of Pittsburgh, PA. v. Freeport-McMoRan, Inc.,
     767 F. Supp. 568, 573 (D.Del. 1991)...................................................................... 15

Ontel Prod., Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1150
     (S.D.N.Y.1995)....................................................................................................... 12

Optical Recording Corp. v. Capitol-EMI Music, Inc., 803 F. Supp. 971
     (D.Del. 1992).......................................................................................................... 15

Padcom v. Netmotion Wireless, Inc., 2004 WL 1192641 (D.Del. May 24, 2004).......... 14

Pfizer Inc. v. Elan Pharm. Research Corp., 812 F. Supp. 1352, 1357 n. 6
     (D.Del. 1993).......................................................................................................... 16

Procter & Gamble Co. v. Nabisco Brands, Inc., 125 F.R.D. 405, 409 (D.Del. 1987)..... 20

Riviera Trading Corp. v. Oakley, Inc., 944 F. Supp. 1150, 1158-59 (S.D.N.Y.1996) .... 10

Roller Derby Assocs. V. Seltzer, 54 F.R.D. 556 (N.D. Ill. 1972).................................... 18

Salvation Army v. Department of Community Affairs, 919 F.2d 183, 192
     3d Cir. 1990)........................................................................................................... 11

Seal v. Riverside Fed. Savings Bank, 825 F. Supp. 686, 693 n. 10 (E.D. Pa. 1993) ........ 19
Siemen's Med. Sys. v. Fonar Corp., 1995 U.S. Dist. LEXIS 22334
    (D.Del. April 27, 1995) ............................................................................................. 13
State Auto Ins. Co. v. Summy, 234 F.3d 131, 133 (3d Cir. 2000) ................................... 16
Sun Oil Co. v. Transcont. Gas Pipe Line Corp., 108 F. Supp. 280
    (E.D. Pa. 1952), *aff'd*, 203 F.2d 957 (3rd Cir. 1953) .............................................. 4, 5
Sunrise Toyota, Ltd. v. Toyota Motor Co., 55 F.R.D. 519, 528 n. 4 (S.D.N.Y. 1972) .... 19
Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc., 887 F.2d 1213, 1222 (3d Cir.1989) ............ 16
Travelers Ins. Co. v. Davis, 490 F.2d 536 (3d Cir. 1974) ............................................... 3
Tuff Torq Corp. v. Hydro-Gear LP, 882 F. Supp. 359 (1994) ........................................ 15
Virgin Wireless, Inc. v. Virgin Enters., 201 F. Supp. 2d 294 (D. Del. 2002) .................. 15

## STATUTES

28 U.S.C. § 1404 ........................................................................................................... passim
28 U.S.C. § 2201 ........................................................................................................... 1,17

## RULES

Fed. R. Civ. P. 12(b) ..................................................................................................... passim

## TREATISES

Borchard, *Declaratory Judgments* (2d ed., 1941) ........................................................... 5
5C Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 1360
    (3d ed. 2004) ............................................................................................................. 16
5C Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 1389
    (3d ed. 2004) ............................................................................................................. 1810B
Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 2761
    (3d ed. 1998) ............................................................................................................. 13

## INTRODUCTION

Defendants, A. Arenson Holdings, Ltd. ("**Arenson Holdings**"), D.A. Gardens, Ltd. ("**D.A. Gardens**"), J12ALH Associates ("**J12ALH**"), Selk, LLC ("**SELK**") and Laurel Equity Group LLC ("**Laurel**") (collectively the "**Defendants**"), by their undersigned counsel, file this Reply in support of their Motion to Dismiss or, in the Alternative, For Stay of Proceedings ("**Defendants' Motion**") (D.I. 40) with respect to the Amended Complaint filed by Plaintiffs, Shamrock Holdings of California, Inc. ("**Shamrock**"), Shamrock Capital Advisors, Inc. ("**SCA**"), Eugene I. Krieger ("**Krieger**"), George J. Buchler ("**Buchler**"), and Bruce J. Stein ("**Stein**") (hereinafter collectively "**Plaintiffs**")(D.I. 37).

In order to deprive Defendants of their choice of forum, Plaintiffs rushed to file this declaratory action as a preemptive measure against the imminent action Defendants informed Plaintiffs they intended to file in North Carolina (the "**North Carolina Action**").[1]  (D.I. 41, Ex. I) Plaintiffs' anticipatory action should be dismissed under Federal Rule of Civil Procedure 12(b) ("FRCP"), and Defendants request that this Court decline to exercise jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

Courts in this District, this State and elsewhere have recognized in similar cases that this kind of declaratory action is nothing more than forum shopping. Any doubt this Court may have regarding Plaintiffs' motives here is resolved by the chronology of events that preceded Plaintiffs' filing of this action. Despite clear evidence that the parties were then still engaged in ongoing settlement discussions, Plaintiffs filed this action in order to prevent Defendants from selecting the forum in which to litigate their breach of fiduciary duty claims against Plaintiffs. Plaintiffs did not file this declaratory judgment action to avoid the accrual of damages or to obtain an early adjudication of their rights since they knew Defendants would file suit if ongoing settlement discussions were unsuccessful. This Court should decline to exercise its jurisdiction to hear this

---

[1] Defendants' North Carolina Action was eventually filed on June 2, 2005 in response to Plaintiffs' Amended Complaint.

declaratory judgment action because it is in contravention of and in no way furthers the policies of the Declaratory Judgment Act.

## PROCEDURAL HISTORY

While the parties were in ongoing settlement discussions, Plaintiffs filed a declaratory judgment action against Abraham (Avie) Arenson ("Arenson"), SELK and Laurel. Thereafter, Defendants removed the action to this Court. (D.I. 1) On October 14, 2004, Arenson filed a motion to dismiss challenging this Court's exercise of personal jurisdiction and SELK and Laurel filed a motion to dismiss for failure to join necessary parties. (D.I. 4) Plaintiffs requested that Defendants agree to stay briefing on both motions until Plaintiffs filed and obtained a ruling on a motion to remand. Defendants agreed and this Court approved a stipulation on October 22, 2004. (D.I. 6)

On March 22, 2005, this Court denied Plaintiffs' Motion to Remand. (D.I. 33)  In accordance with the October 22, 2004 stipulation and this Court's order, Plaintiffs' answering briefs to the pending motions were due on April 5, 2005. (D.I. 6, 33)  Plaintiffs asked Defendants for an extension to respond to the pending motions and Defendants agreed. On April 19, 2005, this Court entered a stipulated scheduling order extending Plaintiffs' deadline to respond to the pending motions to April 27, 2005. (D.I. 36)  On April 22, 2005, instead of responding to the pending motions, Plaintiffs filed an Amended Complaint joining as defendants Arenson Holdings, D.A. Gardens and J12ALH. (D.I. 37)

In a letter attached to the Amended Complaint, Plaintiffs claimed that Arenson's pending motion was "directed to an obsolete and superseded complaint" and that SELK and Laurel's pending motion was "mooted by the amended complaint" and asked that the parties enter into a new scheduling order that would not require Plaintiffs to respond "to motions that are now moot." See Ex. 1. A new stipulated schedule was agreed to in which Plaintiffs were not required to respond to the pending motions and Defendants were given additional time to respond to the Amended Complaint. (D.I. 39)  On June 2, 2005, Defendants, Arenson Holdings, D.A. Gardens, J12ALH, SELK and Laurel filed a complaint in the United States District Court for the Western District of North Carolina seeking affirmative relief for Plaintiffs' wrongful conduct (D.I. 41, Ex. I). On June

2

3, 2005, Defendants filed three motions to dismiss.[2]  Plaintiffs had over two months to respond to Defendants' motions.  On August 9, 2005, Plaintiffs filed opposition briefs to Defendants' motions. (D.I. 50, 51 and 52)  Defendants now reply.

**ARGUMENT**

**I.    This Court Should Grant Defendants' Motion to Dismiss or, in the Alternative, For Stay of Proceedings.**

Plaintiffs mischaracterize Defendants' Motion to Dismiss or, in the Alternative, Stay of Proceedings ("Defendants' Motion") as a "Forum Motion".  Defendants neither moved to transfer the action under 28 U.S.C. § 1404, nor moved to dismiss for lack of venue.[3]  Instead, Defendants challenged the exercise of this Court's subject matter jurisdiction and requested that this Court decline to exercise its jurisdiction under the Declaratory Judgment Act.  In support, Defendants have demonstrated that Plaintiffs filed this action in bad faith to secure the forum of their choosing.

**A.    Plaintiffs' Amended Complaint Is Not An Appropriate Action for Declaratory Relief.**

In determining whether to exercise discretionary jurisdiction to hear Plaintiffs' declaratory judgment action, this Court should determine whether the action furthers the policies of the Declaratory Judgment Act.  See Friedman v. Geller, 925 F. Supp. 611, 613 (E.D.Wis. 1996).  "The objectives of the Federal Declaratory Judgment Act are: '. . . to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued.'"  Travelers Ins. Co. v. Davis, 490 F.2d 536, 543 (3d Cir. 1974)(citation omitted).

However, a declaratory judgment suit filed preemptively to foreclose a defendant's choice of forum is inappropriate.  In Envirometrics Software, Inc. v. Georgia-Pacific Corp., 1997 WL 699328, *3 (D.Del. Nov. 4, 1997), the court explained:

---

[2] Defendants filed the following motions and supporting memoranda in this Court: (1) Motion to Dismiss or in the alternative For Stay of Proceedings under the Declaratory Judgment Act filed by Defendants, Arenson Holdings, D.A. Gardens, J12ALH, SELK and Laurel (D.I. 40), (2) Motion to Dismiss for lack of personal jurisdiction filed by Defendants, Arenson, Arenson Holdings, D.A. Gardens and J12ALH and for failure to join necessary parties filed by SELK and Laurel (D.I. 43); and (3) Motion to Dismiss under 12(b)(6) filed by Defendant, Arenson (D.I. 46).

[3] Defendants decision not to raise improper venue should not be misconstrued by Plaintiffs as an admission that venue here is proper.  Defendants simply chose not to challenge venue.

3

> The Third Circuit has instructed courts to look critically at 'any attempt to circumvent the laudable purposes of the Act, and [to] seek to prevent the use of the declaratory action as a method of procedural fencing, or as a means to provide another forum in a race for *res judicata*.' Venerable Third Circuit precedent specifically has directed that 'it is not one of the purposes of the declaratory judgment acts to enable a prospective. . . defendant to obtain a declaration of non-liability[.]' The "'race to the courthouse' is particularly inappropriate under circumstances where " 'the party entitled to bring a coercive action [has not] fail[ed] or delay[ed] in bringing it'", and where (aside from potential litigation costs) there is no "accruing damage," <u>Crown Cork & Seal Co., Inc. v. Borden, Inc.</u>, 779 F. Supp. 33, 36 (E.D.Pa.1991); <u>see also</u>, <u>Acands, Inc. v. Aetna Cas. & Sur. Co.</u>, 666 F.2d 819, 823 (3d Cir.1981) (because "declaratory judgment relief was intended to avoid ⋯ the 'accrual of avoidable damages to one not certain of his rights," ' it is proper to exercise jurisdiction where judgment would "affect present behavior, have present consequences and resolve a present dispute.").

<u>Envirometrics</u>, 1997 WL 699328, *3 (citations omitted).  Here, Plaintiffs' declaratory judgment action is contrary to the policies of the Declaratory Judgment Act because it was filed to guarantee their choice of forum and to obtain a declaration of non-liability.

Plaintiffs have not shown how their declaratory judgment action achieves the purposes of the Declaratory Judgment Act since there are no allegations that this action would enable them to change their conduct to avoid damages or that Plaintiffs were forced to bring this action because Defendants, the parties entitled to bring the coercive action, delayed in bringing it after the accrual of damages.  In fact, Plaintiffs, who were unavailable for settlement discussions for almost six weeks, caused any delay.  Defendants suggested that the parties meet to discuss a possible resolution and Plaintiffs agreed to a meeting but indicated that "[b]ecause of vacation plans and other previously scheduled commitments in August, it appears that the earliest feasible time for a meeting would be in September." (Ex. 3)  On August 26, 2004, a conference call was finally held and, when no resolution was reached, the parties began discussing mediation.  <u>See</u> *infra* § I.B. While the parties were in the process of discussing the potential discovery that would be provided if Defendants agreed to mediation, Plaintiffs filed the present action.  <u>Id.</u>  Accordingly, Plaintiffs cannot establish that this action will further the policies of the Declaratory Judgment Act.

This action also contravenes the purposes of the Declaratory Judgment Act because Plaintiffs filed it seeking a declaration of non-liability.  <u>See</u> <u>Sun Oil Co. v. Transcon. Gas Pipe Line Corp.</u>, 108 F. Supp. 280 (E.D. Pa. 1952), <u>aff'd</u>, 203 F.2d 957 (3rd Cir. 1953); <u>Envirometrics</u>, 1997

WL 699328, *3. In <u>Sun Oil</u>, the Third Circuit affirmed the dismissal of a declaratory judgment action where a prospective defendant, knowing he would soon be sued in Texas, commenced a declaratory judgment proceeding in Pennsylvania. <u>Id.</u> In that case, the plaintiff commenced the declaratory judgment proceeding in Pennsylvania to have the question of liability tried in Pennsylvania, rather than Texas, where the negligence action would have been filed. <u>Sun Oil</u>, 108 F. Supp. at 281. The defendants filed a motion to dismiss and the court was faced with the following issues: "In a negligence action may a declaratory judgment proceeding be used by a prospective defendant to forestall an imminent suit by a prospective plaintiff and to choose the forum in which the action shall be tried? May a tortfeasor change his role from defendant to plaintiff in order to select the court in which to have his liability determined?" <u>Sun Oil</u>, 108 F. Supp. at 282. The court reasoned that "[a] careful reading of the sections on the jurisdiction of courts in declaratory judgment cases and on the history and purpose of the declaratory judgment act in Borchard, *Declaratory Judgments* (2d ed., 1941) indicates that it is not one of the purposes of the declaratory judgment acts to enable a prospective negligence action defendant to obtain a declaration of non-liability." <u>Id.</u> While it could not find a case directly on point, the court stated:

> [I]t would seem that the rule is that a declaratory judgment action should not be entertained when it is initiated by a prospective or actual defendant in a tort action. However, since the problem is largely one of discretion of a court, it seems that conceivably there might be an exception to the rule, the exception being that the declaratory judgment proceeding should be permitted in this type of case when it would be in the interest of justice or for the convenience of the parties to permit it.

<u>Id.</u> at 282-83. The court observed that although it was more convenient for the parties to try the case in Pennsylvania, a prospective defendant in a negligence action should not be permitted to use a declaratory judgment proceeding "merely because it insures for him a convenient forum in which to try the question of liability." <u>Id.</u> at 283. The court held that "[i]f a Court should accept declaratory judgment cases merely because it would further the convenience of the parties, a declaratory judgment proceeding could be used almost as a substitute for the Transfer Statute," 28 U.S.C.A § 1404(a). <u>Id.</u> at 283. The court declined to exercise jurisdiction and dismissed the plaintiff's declaratory judgment action.

Similarly, in this case, the Amended Complaint is a declaratory judgment action initiated by prospective defendants thereby using the declaratory judgment procedure to obtain declarations of non-liability for, *inter alia*, breach of fiduciary duty and breach of contract. (D.I. 51 at 3)    If Plaintiffs had not filed the present action and settlement discussions proved unsuccessful, Defendants would have filed their complaint for affirmative relief in North Carolina, thereby forcing Plaintiffs to either litigate in North Carolina or file a motion to transfer under 28 U.S.C. § 1404.[4]    There can be no doubt that Plaintiffs filed this action to obtain a declaration of non-liability and to preemptively foreclose Defendants' choice of forum.    Accordingly, this Court should decline to exercise its jurisdiction because this action does not further the policies of the Declaratory Judgment Act.

> **B.    Plaintiffs' Declaratory Action Should Be Dismissed Because Exceptions to the First-Filed Rule Exist.**

Unable to establish that this action furthers the policies of the Declaratory Judgment Act, Plaintiffs claim that because their action was first-filed, this Court should ignore the overriding considerations that weigh in favor of dismissal.    While it is true that the Third Circuit Court of Appeals has adopted the first-filed'rule, whereby "'in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it[,]'" that authority "is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." EEOC v. Univ. of Pa., 850 F.2d 969, 971-72 (3d Cir. 1988), aff'd, 493 U.S. 182 (1990)(internal citation omitted).    In Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc., 265 F. Supp. 2d 445 (D.Del. 2003), this court stated that "only in 'rare or extraordinary circumstances' should the first-filed action give way to one filed later. Such circumstances include 'inequitable conduct, bad faith, or forum shopping.'"    Id. at 448 (citation omitted).    This action should be dismissed because such circumstances—bad faith and forum shopping—exist. (D.I. 41 at 7-12)

---

[4] Correspondence between counsel for the parties demonstrates that Plaintiffs' preferred forum was Delaware. (D.I. 41 Ex. D)

Plaintiffs claim that the kind of exceptional circumstances that warrant departure from the first-filed rule are not present because: "(1) there were no ongoing settlement negotiations between the parties when the DE Action was filed, and (2) the Plaintiffs were not informed of an imminent lawsuit in North Carolina before the DE Action was filed." (D.I. 51 at 7 (emphasis in original)) Plaintiffs' spurious claims that there were no ongoing settlement negotiations between the parties when this action was filed and that they were not informed of an imminent lawsuit is refuted by conversations and correspondence between counsel for the parties. In support of their baseless claims, Plaintiffs have mischaracterized the facts and thus, a review of the events in chronological order demonstrates how disingenuous Plaintiffs' claims are:

> On Thursday, August 26, 2004, a conference call was held between the parties and their counsel. (D.I. 51, Buchler Dec. ¶ 23) During this call the parties and counsel raised settlement, mediation and litigation against Plaintiffs.

> On Friday, August 27, 2004, counsel for Plaintiffs, Pamela Jarvis ("Jarvis") responded via email[5] to counsel for Defendants, Isaac Neuberger's ("Neuberger") threat of litigation in the previous days conference call:: "It occurred to me that you might not be aware that Section 10.2 of the ALH Holdings LLC Operating Agreement provides that "All questions concerning the construction, validity and interpretation of this Agreement and the performance of the obligations imposed by this Agreement shall be governed by the internal law, not the law of conflicts, of the State of Delaware." (Ex. 2, at p. 1).

> On August 27, 2004, in an email to Jarvis, Neuberger responds "We are aware of this provision. . . it does NOT prevent the filing of a suit in North Carolina, does it? . . . Since it appears that Shamrock is unwilling to see its way clear towards an acceptable resolution, I suspect that much of this will be the subject of discovery. As we consider the alternatives, if we were to agree to the Delaware Mediation that you proposed, would we be afforded the same discovery if we proceed in a different forum. (Ex. 2, at p. 2).

> On Monday, August 30, 2004, in an email to Neuberger, Jarvis responds "In addition to confirming that Delaware law governs, Section 10.2 would weigh in favor of Delaware as the appropriate forum. . . . The Delaware Mediation process (like all other mediation processes I am aware of) does not provide for formal discovery, but the parties could of course agree to exchange whatever information they want to. Also, participation in the mediation would not affect the parties' ability to obtain discovery in future litigation, if any. (Ex. 2, at p. 3).

> On Monday, August 30, 2004, in an email to Jarvis, Neuberger responds "I fully appreciate Shamrock's desire to use a Delaware Mediation process. Please consider it from the B's perspective. . . . Hence, the issue for a trier of fact, to determine, is whether what happened here was a breach of the fiduciary duty that the individual directors and Shamrock owed to the B's or not. Discovery is critical to this type of factual based determination, hence, we need to know the extent of discovery that Shamrock and the individual directors will agree to." (Ex. 2, at p. 4).

---

[5] All email exhibits are a true and correct copy of the original.

On Thursday, September 2, 2004, in an email to Neuberger, Jarvis responds "As you know, Shamrock totally disagrees with your assertions regarding self-interest and the circumstances leading to the sale of ALH's operations, but that is what we would hope to resolve in mediation. Shamrock is certainly open to the idea of discovery in connection with the mediation. As you may know, Delaware Chancery Court Rule 94(d) provides that "The Mediator may request parties to exchange or provide to the Mediator documents or other material necessary to understand the dispute or facilitate settlement. The parties may agree to exchange any document or other materials in the possession of the other that may facilitate a settlement." What specifically did you have in mind? I look forward to hearing from you. (Ex. 2, at p. 5).

On Friday, September 3, 2004, in an email to Jarvis, Neuberger responded: "This is progress . . . . I will be back to you next week. ." (Ex. 2, at p. 8).

On Sunday, September 5, 2004, in an email to Jarvis, Neuberger states: "In considering your suggestion that we agree to a Delaware mediation process, as you know, we will require that Shamrock, in advance of the Mediation, agree to the same level of discovery that we think we could achieve if we were to file a lawsuit. I have asked Sam Wood[6] to scope that out and to provide you with the outline [sic] a lawsuit that would be the basis of the mediation. In the meantime, we would like to know ASAP how Shamrock valued ALH on its books, from time to time, and how it described this investment in its reports to its investors. When did Shamrock write off its investment (if it did)? We believe that these reports would be discoverable. The answer to this inquiry will reflect how sincere Shamrock is in seeking a resolution through mediation and is willing to provide relevant discovery. (Ex. 2, at p. 9).

On Wednesday, September 8, 2004, in an email to Neuberger, Jarvis responds "Shamrock is checking for the financial information you have requested. I look forward to receiving Sam's outline." (Ex. 2, at p. 10).

On Wednesday, September 8, 2004, in an email to Jarvis, Neuberger asks "Has Shamrock decided on the extent of the discovery that it would consider if we were to agree to the Mediation?" (Ex. 2, at p. 11).

On Thursday, September 9, 2004, in an email to Neuberger, Jarvis responds "As I indicated in my September 2 email to you, Shamrock will consider whatever discovery would be likely to facilitate the mediation and make it more productive. Once we have received from Sam the specifics of what you have in mind, we will be able to respond specifically. I would not expect there to be a disagreement about the relevant areas." (Ex. 2, at p. 11).

On Monday, September 13, 2004, in a letter to Neuberger and Wood, S. Mark Hurd, Plaintiffs' counsel, states "Enclosed please find a copy of the complaint in the above-referenced action, which was filed today . . . Because Ms. Jarvis is at present out of the country, she asked that I convey the following to you. []The commencement of this action reflects no diminution in plaintiffs' desire to engage in the previously discussed mediation with your clients. However, it has been more than two weeks since plaintiffs first proposed the mediation, and you have yet to agree to it. Consequently, plaintiffs thought it prudent to pursue the mediation in the context of a pending action." (Ex. 2, at p. 12 ).

Regardless of how Plaintiffs' spin the events that occurred prior to the filing of their

preemptive declaratory judgment action, the chronology of events demonstrates that in fact there

---

[6] Thomas "Sam" M. Wood, IV ("Wood"), is a principal at Neuberger, Quinn, Gielen, Rubin & Gibber, attorneys for Defendants, and counsel in this matter.

were ongoing settlement discussions and Defendants' lawsuit was imminent.  Plaintiffs offer the

following justification for filing suit:

> On September 8, 2004, Defendants sent one more email asking about 'the extent of
> the discovery that [Shamrock] would consider if we were to agree to the
> Mediation." That same day,[7] Plaintiffs responded by asking for the information
> from Mr. Wood that was promised on September 5. Defendants provided nothing.
> By this point, it appeared to Plaintiffs that Defendants might merely be toying with
> the idea of mediation, in the hope of getting extra-judicial discovery to use as the
> basis for a lawsuit.

(D.I. 51 at 12 (internal citations omitted))  This justification is based upon factual inaccuracies.

First, Ms. Jarvis did not ask for Mr. Wood's information, the information was not promised on

September 5 and the information was not provided because there was no time to do so considering

that the last email with Ms. Jarvis was on a Thursday and the present action was filed on Monday.

Plaintiffs can hardly argue that such a delay is unreasonable especially since Plaintiffs delayed the

initial conference call to discuss settlement for nearly six weeks.

Second, to say that it was filed because Plaintiffs thought Defendants were merely "toying"

with the idea of mediation is fallacious since Ms. Jarvis' last communication gave no such

indication but, to the contrary, showed a willingness to work out the details of discovery.

Specifically, Ms. Jarvis noted that after she received the information from Defendants' counsel she

would respond specifically as to what Shamrock would agree to produce but she did "not expect

there to be a disagreement about the relevant areas" of discovery for mediation—the only potential

issue Defendants raised before agreeing to mediation. (Ex. 2 at p.11)

Even assuming *arguendo*, that Plaintiffs had requested the discovery information and

Defendants had not provided it—which did not occur—a delay of four days over a weekend in

providing information to facilitate mediation is not sufficient to warrant an inference that settlement

discussions had terminated.  It is, however, sufficient to support an inference that Defendants were

lulled into believing that Plaintiffs were negotiating in good faith a possible method of settlement—

mediation—when in fact, Plaintiffs were drafting a lawsuit to ensure they secured the forum of their

---

[7] Ms. Jarvis' response was not on the same day but was actually the next day, Friday, September 9, 2004.
(Ex. 4 at p.1)

9

choosing.

As set forth in more detail in Defendants' motion to dismiss, (D.I. 51 at 8-9), if the party that ordinarily would be the plaintiff is prepared to sue but delays filing in an effort to achieve a settlement, a preemptive filing of a mirror image claim is treated as an improper anticipatory suit. (D.I. 8-9) See Columbia Pictures Indus., Inc. v. Schneider, 435 F. Supp. 742, 747-48 (S.D.N.Y. 1977). This result facilitates the settlement process, by assuring parties that a good faith attempt to settle will not compromise the opportunity to select the forum. See Riviera Trading Corp. v. Oakley, Inc., 944 F. Supp. 1150, 1158-59 (S.D.N.Y. 1996) (transferring first-filed action to district of second-filed action, where plaintiff in second-filed action had been engaged in good faith settlement effort and first-filed action was motivated in part by forum shopping). In keeping with precedent, this Court should refuse to apply the "first to file" rule because the chronology of events demonstrates that Plaintiffs filed this action when Defendants were engaged in good faith settlement efforts.

Plaintiffs' claim that they were not informed of an imminent lawsuit in North Carolina is likewise without merit. Plaintiffs statement that "Defendants did not 'inform' Plaintiffs of anything concerning the litigation, let alone that they were about to file suit in North Carolina or elsewhere", (D.I. at 10), conflicts with the chronology wherein Mr. Neuberger informed Ms. Jarvis that Mr. Wood would prepare an "outline [of] a lawsuit that would be the basis of the mediation." (Ex. 2 at p.9) Moreover, "Plaintiffs do no deny that, by the time they filed the DE Action, Defendants had intermittently been threatening litigation for months." (D.I. at 12) Further, that the North Carolina Action was not filed until June provides little support for Plaintiffs as to Defendants Arenson Holdings, D.A. Gardens and J12ALH, who had only been joined as defendants six weeks earlier when the Amended Complaint was filed. As for any delay by SELK and Laurel, Defendants counsel had agreed to a stay of all issues while the parties addressed the remand issues.

Moreover, Plaintiffs' argument that they were not informed of an imminent lawsuit is contrary to the allegations in the Amended Complaint and undermines their very right to maintain a declaratory judgment action. Plaintiffs are not entitled to declaratory relief unless they can allege

that the probability that defendants would sue them was "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Moore Corp. Ltd. v. Wallace Computer Services, Inc., 898 F. Supp. 1089, 1095 (D.Del. 1995). In order for a case or controversy to exist for the purposes of a declaratory judgment, a plaintiff must demonstrate that the claim is ripe. Id. In this case, Plaintiffs allege:

> This action presents a case or controversy suitable for declaratory judgment because, among other things, defendants persist in asserting that plaintiffs breached their fiduciary duties, acted in self-interests and engaged in other wrongful conduct. Defendants have repeatedly stated their intention to sue plaintiffs for millions of dollars insisting that plaintiffs must 'make them whole' by paying them the entire amount they claim to have invested in ALH, plus additional damages. Thus, plaintiffs face a real and substantial probability of being sued by defendants, and are entitled to judicial relief from injury caused by these spurious accusations.

(D.I. 37 ¶ 6) Plaintiffs have not alleged a present injury but claim that present harms will flow from the threat of future actions. In some cases, however, "where a plaintiff can demonstrate that present harm will flow from the threat of future actions, plaintiff has met his burden of establishing adversity. Plaintiff must, in those cases, demonstrate that the probability of that future event occurring is 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Moore, 898 F. Supp. at 1095(quoting Salvation Army v. Department of Community Affairs, 919 F.2d 183, 192 (3d Cir. 1990))(internal citations omitted). Therefore, to overcome any challenge to ripeness, Plaintiffs' have to allege that the threat that defendants would sue them is "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[8] In short, Plaintiffs cannot have it both ways—they cannot allege in the Amended Complaint that a ripe controversy exists because the threat was imminent and simultaneously argue that the present action is not an anticipatory filing because they did not know that a lawsuit was imminent. Plaintiffs knew Defendants intended to file a lawsuit and had only delayed in doing so as a result of ongoing settlement negotiations.

This action should be dismissed as it is in contravention of the policies of the Declaratory Judgment Act because there are no allegations that this action would enable Plaintiffs to change

[8] Such an analysis does not make all declaratory judgments preemptive filings because plaintiffs could demonstrate a legitimate basis—i.e. prevent additional damages, to refute the claim of forum shopping.

11

their conduct to avoid damages or that there was any imminent reason to file suit. Further, Plaintiffs' reliance on the first-filed rule is misplaced in light of the exceptions that exist—namely bad faith and forum shopping. Accordingly, this Court should decline to exercise jurisdiction over this action.

Plaintiffs fail to overcome the generally recognized rule that where an action constitutes an improper anticipatory filing, the first filed rule is inapplicable. "An improper anticipatory filing is 'one made under the apparent threat of a presumed adversary filing the mirror image of that suit' in another court." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 557 (S.D.N.Y. 2000) (quoting Ontel Prod., Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1150 (S.D.N.Y.1995)). "It is improper for a party to launch a preemptive strike by racing to the courthouse in his preferred forum before his adversary has a chance to file their action in the forum of their choice, and such a party should not benefit from the first-filed rule." Citigroup, 97 F. Supp. 2d at 557. "Courts have focused in particular on situations where there is a threat of litigation followed by settlement talks, since such talks would reasonably lull the party who would otherwise have pursued legal action into not doing so." Id. As demonstrated by the chronology of events, that is exactly what occurred in this case. As Plaintiffs concede, Defendants had threatened litigation for months. (D.I. at 12) In July 2004, Plaintiffs agreed to meet with Defendants to discuss a possible resolution but indicated that "[b]ecause of vacation plans and other previously scheduled commitments in August, it appears that the earliest feasible time for a meeting would be in September." (Ex. 3) After much discussion between the parties regarding the time and place for the meeting, it was eventually decided that the meeting would occur via conference call on August 26, 2004. Immediately after the conference call, Plaintiffs suggested that the parties attend mediation in the Delaware Court of Chancery. Before agreeing to the mediation, Defendants wanted to know what kind of discovery Plaintiffs would agree to provide. Plaintiffs asked for a list of discovery items and Defendants agreed to prepare an "outline [of] a lawsuit that would be the basis of the mediation." (Ex. 2 at p.9) Before Defendants were able to complete the outline, Plaintiffs filed the present action. These facts not only suggest that Plaintiffs suit is an anticipatory filing, but also that it was filed at a time when

12

Plaintiffs had "reasonably lull[ed] [Defendants,] the party who would otherwise have pursued legal action into not doing so." Citigroup, 97 F. Supp. 2d at 557. Accordingly, this Court should dismiss Plaintiffs' suit because it was filed in bad faith while the parties were in ongoing settlement discussions for the sole purpose of securing the forum of their choosing.

Plaintiffs cite to numerous unpublished opinions of this Court in support of their contention that "this Court has consistently applied the first-filed rule and rejected putative claims of bad faith and forum-shopping[.]" (D.I. at 22) Those cases discussed and, to some extent, misconstrued by Plaintiffs are not persuasive in the present case.

- Matsushita Battery Indus. Co. v. Energy Conversion Devices, Inc., 1996 WL 328594 (D.Del. April 23, 1996), and Siemens Med. Sys. v. Fonar Corp., 1995 U.S. Dist. LEXIS 22334 (D.Del. April 27, 1995), are distinguishable from the present case because in both cases the plaintiffs' first-filed declaratory actions were for a declaration of non-infringement of patents, a type of action the United States Supreme court has held is an appropriate form of declaratory relief. Walker Process Equipment, Inc. v. Food Mach. & Chem. Corp., 86 S.Ct. 347, 350 (1965)(holding "one need not await the filing of a threatened suit by the patentee; the validity of the patent may be tested under the Declaratory Judgment Act[.]"); see also FPP § 2761 (3d ed. 1998)("Easily the most common kind of [declaratory judgment]action, however, is a suit by one thought to be an infringer for a declaration that he is not infringing the patent or that the patent is invalid."). In contrast, Plaintiffs are seeking a declaration of non-liability, which this Court and the Third Circuit have held is not appropriate. Envirometrics Software, 1997 WL 699328, *3 (quoting Sun Oil, 108 F. Supp. at 282). Moreover, in Matsushita, the court specifically found "that the record is unclear as to the precise tone of the negotiations between the parties" and that no other factors weighed in favor of dismissal, Matsushita, 1996 WL 328594, *3, and in Siemen's, the court found that the plaintiffs had not engaged in forum shopping in contravention of the purposes behind the Declaratory Judgment Act. Siemen's,1995 U.S. Dist. LEXIS 22334, * 8. Here, as demonstrated by the chronology of events, the precise tone of the negotiations is clear—the parties were involved in ongoing settlement discussions—and Plaintiffs have engaged in forum shopping. Accordingly, Matsushita and Siemen's are not persuasive.

- In Chase, the court denied a motion to transfer under 28 U.S.C. § 1404(a) a first-filed declaratory judgment action in which the factors under a § 1404 analysis weighed in favor of Delaware maintaining the action. Chase, 265 F. Supp. 2d at 445. Specifically, the parties were incorporated in Delaware, the plaintiff had its headquarters and credit card business, which was at issue in the case, in Delaware and the parties had entered into a confidentiality agreement that contained a forum selection clause that "Delaware is the exclusive venue for all disputes arising out of or relating to the Confidentiality Agreement." Id. at 448-49. Chase is of little value in the present case since its analysis focused on the relevant factors in a § 1404(a) motion whereas Defendants have not moved to transfer the present action and even if they had, the facts in the present case are distinguishable. Here, most of the parties are not Delaware entities and those parties that are Delaware entities, SCA, SELK and Laurel, do not conduct business in Delaware. "The situs of the corporation or the home state of incorporation, however, is not entitled to any overwhelming consideration or weight where, as here, it is shown that in this State, there is maintained only such business

13

records and representation as will satisfy statutory requirements, but that all of its business is transacted elsewhere[.]" Brownell v. La Salle Steel Co., 128 F.Supp. 548, 549 (D.Del. 1955). Moreover, the ALH Operating Agreement does not contain a forum selection clause and the activities giving rise to the dispute did not occur in Delaware. Accordingly, Chase is both legally and factually distinguishable from the present case.

- In Genfoot, Inc. v. Payless ShoeSource, Inc., 2003 WL 22953183 (D.Del. Dec. 3, 2003), and Corixa Corp. v. IDEC Pharm. Corp., 2002 WL 265094 (D.Del. Feb. 25, 2002), the court granted a motion to transfer a second-filed suit for patent infringement to other jurisdictions where defendants had first-filed declaratory judgment actions seeking a declaration of non-infringement. The Genfoot court noted that "Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule" but did not discuss or mention any exceptional circumstances raised by the parties. Genfoot, 2003 WL 22953183, *2. The Corixa specifically found that the first-filed action "'was not motivated by 'forum shopping alone' but rather was a legitimate exercise of its opportunity under the Declaratory Judgment Act....'" Corixa, 2002 WL 265094, *2. In contrast, in this case, Defendants have demonstrated that this action is an anticipatory declaratory judgment action filed in bad faith while the parties were involved in settlement negotiations to obtain a declaration of non-liability, whereas in Genfoot and Corixa, the first-filed declaratory action was seeking a declaration of non-infringement, an acceptable form of declaratory relief.

- In Guidant Corp. v. St. Jude Med., Inc., 2004 WL 1925466 (D.Del. Aug. 27, 2004), the court denied a motion to transfer a first-filed declaratory judgment action for non-infringement of patents to Minnesota where the declaratory plaintiffs had filed an action against defendants for infringement of a different patent. In that case, the defendants filed a motion to transfer to Indiana to be heard by a judge they claimed was familiar with the patents at issue but after learning that the judge would not hear the case because it was not sufficiently related, the defendants withdrew the motion to transfer and then filed a second motion to transfer to Minnesota. Unlike the present case, in Guidant, the second-filed action was not a mirror image although it involved the same parties and the defendants did not argue that exceptions to the first-filed rule existed but focused their argument on the convenience of the parties. Moreover, the plaintiffs in Guidant claimed that it was the defendants that were forum shopping. Accordingly, Guidant is distinguishable from the present case where Plaintiffs are charged with bad faith and forum shopping and where the declaratory relief is not within the context of a patent case, which is a generally acceptable form of declaratory relief.

- In Padcom v. Netmotion Wireless, Inc., 2004 WL 1192641 (D.Del. May 24, 2004), the court denied a motion to transfer a first-filed patent infringement action to California where a second-filed declaratory judgment action for non-infringement was pending. The court determined that the defendant did not satisfy its burden under 28 U.S.C. § 1404 to warrant a transfer and there was no discussion or mention of any circumstances warranting departure from the first-filed rule. In contrast, Defendants in this case have demonstrated that this action is an anticipatory declaratory judgment action filed in bad faith while the parties were involved in settlement negotiations to obtain a declaration of non-liability, an improper form of declaratory relief under the facts of this case.

- In Miteq, Inc. v. Comtech Telecomms. Corp., 2003 WL 179991 (D.Del. Jan. 23, 2003), the court granted a motion to transfer a second-filed declaratory judgment action for non-infringement to Arizona where the defendant's first-filed action for patent infringement was pending. The court held that there were no exceptional circumstances requiring the court to depart from the first-filed rule and the defendant did not satisfy its burden under 28 U.S.C. § 1404 to warrant a transfer. Miteq, 2003 WL 179991, *2. In

contrast, Defendants in this case have demonstrated that this action is an anticipatory declaratory judgment action filed in bad faith while the parties were involved in settlement negotiations to obtain a declaration of non-liability, an improper form of declaratory relief under the facts of this case.

▪ In <u>Dippold-Harmon Ent. v. Lowe's Cos.</u>, 2001 WL 1414868 (D.Del. Nov. 13, 2001), the court granted a motion to transfer a second-filed action for breach of contract to North Carolina where a first-file action for breach of contract was pending. The plaintiffs in the second-filed action claimed that the first-filed rule did not apply because it involved different issues and different parties. The court disagreed and held that the defendants' had established under 28 U.S.C. § 1404(a) that the balance of convenience weighed in favor of transferring the action to North Carolina. <u>Dippold-Harmon</u>, 2001 WL 1414868, *7. <u>Dippold-Harmon</u> is inapposite to the present case and provides no guidance in the present case since it does not involve a declaratory judgment action or the recognized exceptions present in this case.

Moreover, contrary to Plaintiffs' assertion that "this Court has consistently applied the first-filed rule," this Court has recognized and applied exceptions to the first-filed rule. See <u>Virgin Wireless, Inc. v. Virgin Enters.</u>, 201 F. Supp. 2d 294 (D. Del. 2002)(transferring first-filed declaratory judgment action to New York where a second-filed suit was pending); <u>Tuff Torq Corp. v. Hydro-Gear LP</u>, 882 F. Supp. 359 (1994)(departing from the first-filed rule where the second-filed action had proceeded further than the first-filed action in another district); <u>Optical Recording Corp. v. Capitol-EMI Music, Inc.</u>, 803 F. Supp. 971 (D.Del. 1992)(retaining jurisdiction over a second-filed infringement action despite first-filed declaratory action in another district); <u>National Union Fire Ins. Co. of Pittsburgh, PA. v. Freeport-McMoRan, Inc.</u>, 767 F. Supp. 568, 573 (D.Del. 1991)(departing from the first filed rule and stating, "When a federal declaratory judgment action has been filed in apparent anticipation of the other pending proceeding, equitable considerations militate toward 'allowing the later filed action to proceed to judgment in the plaintiff's chosen forum.'" (citations omitted)).

In short, this action should be dismissed because its filing violates the policies of the Declaratory Judgment Act—it will not enable Plaintiffs to change their conduct to avoid damages and it is classic forum shopping. Accordingly, this Court should decline to exercise jurisdiction over this action.

**II.    Defendants SELK and Laurel Have Timely Filed This Motion to Dismiss or, in the Alternative, For Stay of Proceedings.**

15

Plaintiffs contend that Defendants' Motion on behalf of SELK and Laurel is either not a proper motion in lieu of an answer under FRCP 12(b) or was waived because it should have been raised as part of SELK and Laurel's motion to dismiss filed on October 14, 2004.[9] (D.I. 51 at 16-17) For the following reasons, this Motion is a proper motion in lieu of an answer under 12(b) and it was not waived.

### A.    This Motion Is An Appropriate FRCP 12(b) Motion.

This Motion is an appropriate motion under FRCP12(b).  See FPP § 1360 (3d ed. 2004 & Supp. 2005)(hereinafter "FPP")(noting that a motion to dismiss might be appropriate on the grounds that the federal court should decline to hear a declaratory judgment action and that although a motion to stay "is also not within the ambit of the defenses enumerated in Rule 12(b)[,] [n]onetheless, . . . federal courts often consider these motions in an effort to maximize the effective utilization of judicial resources[.]").  This Court has noted that  "[s]ome motions to dismiss, while not falling within the seven enumerated defenses allowed by motion under Rule 12(b), nonetheless are presented to and determined by the federal courts as a matter of course." Pfizer Inc. v. Elan Pharm. Research Corp., 812 F. Supp. 1352, 1357 n. 6 (D.Del. 1993) (citing FPP § 1360, at 430-31 (1990)).  In Pfizer, the court treated a motion to dismiss for lack of standing as a motion to dismiss for failure to state a claim under Rule 12(b)(6).  In reaching its decision, the court reasoned that since the defendant was essentially arguing that because Pfizer lacked standing, it failed to state a claim for relief, the defendant's motion to dismiss for lack of standing was grounded upon Rule 12(b)(6) and thus would be treated as a motion under Rule 12(b)(6).[10] Id.

Similarly, in the present case, this Motion is most analogous to a motion to dismiss under 12(b)(1) because it pertains to the Court's exercise of subject matter jurisdiction.  Defendants argue that since Plaintiffs filed the present action in bad faith, for forum shopping purposes only, this Court should decline to exercise its discretionary subject matter jurisdiction.

The Declaratory Judgment Act empowers federal courts to grant declaratory relief and the exercise of this declaratory relief power is discretionary. State Auto Ins. Co. v. Summy, 234 F.3d 131, 133 (3d Cir. 2000); Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc., 887 F.2d 1213, 1222 (3d

---

[9] In section II of this brief, Defendants' Motion to Dismiss or, in the Alternative, For Stay of Proceedings, (D.I. 40), filed on June 3, 2005, will be referred as "this Motion", and SELK and Laurel's Motion to dismiss filed on October 14, 2004 (D.I. 3), will be referred to as "the original motion".

[10] See F.P.P. § 1360 ("When the court treats the motion as having been brought under Rule 12(b), then it is subject to the rules and practices applicable to the most analogous Rule 12(b) motion.").

Cir.1989). The Act itself does not require a district court to declare the rights and legal relations of the parties. Rather, it explicitly notes that the Court *may* take such action. 28 U.S.C. § 2201(a). The Act therefore is an "authorization for jurisdiction, not a command." <u>Erbamont, Inc. v. Cetus Corp.</u>, 720 F. Supp. 387, 392 (D.Del. 1990). In requesting that this Court decline to exercise its discretionary jurisdiction over the present declaratory action, SELK and Laurel ask this Court to decline subject matter jurisdiction. Therefore, this Motion should be treated as a motion to dismiss under 12(b)(1). <u>See Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.</u>, 385 F.3d 1291, 1299 (2004)(treating motion to dismiss declaratory judgment action under 12(b)(1) as a request to decline jurisdiction over declaratory judgment action). Accordingly, Plaintiffs' assertion that this Motion is not a 12(b) motion is without merit.

**B.    SELK and Laurel Did Not Waive the Right to File This Motion.**

Plaintiffs next contend that even if this Motion is a 12(b) motion, SELK and Laurel waived the right to raise the defense by failing to include it in the original motion. (D.I. 51 at 17)  SELK and Laurel did not waive the right to file this Motion because a motion to dismiss for lack of subject matter jurisdiction is not waivable, Plaintiffs consented to this Motion and it is within this Court's discretion to permit SELK and Laurel to amend the original motion and add new grounds to the original motion since it was never ruled upon.

A motion to dismiss for lack of subject matter jurisdiction is not waivable. FRCP 12(h)(3) states, "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Moreover, this court has held that "subject matter jurisdiction may be raised at any time; it cannot be waived and the court is obliged to address the issue on its own motion." <u>Medtronic Vascular, Inc. v. Boston Scientific Corp.</u>, 348 F.Supp.2d 316, 321 (D.Del. 2004) (citing <u>Moodie v. Fed. Reserve Bank of NY</u>, 58 F.3d 879, 882 (2d Cir. 1995)). In requesting that this Court decline to exercise its discretionary jurisdiction over the present declaratory action, SELK and Laurel are asking the court to decline subject matter jurisdiction. By not raising the issue in their original motion, SELK and Laurel did not waive the right to challenge the court's discretion to exercise subject matter jurisdiction.

17

Nevertheless, assuming *arguendo*, Plaintiffs have consented to this Motion or, in the alternative, this Court has the discretion to treat this Motion as amending the original motion. In a letter attached to the Amended Complaint and dated April 22, 2005, Plaintiffs expressly consented to this motion:

> The pending Rule 19 motion filed by defendants SELK, LLC and Laurel Equity Group, LLC, is mooted by the amended complaint, and Mr. Arenson's pending motion to dismiss is directed to an obsolete and superseded complaint. We assume that, if Mr. Arenson decides to move against the amended complaint, you will want to submit new opening papers on his behalf that address, inter alia, his material participation in the management of ALH, LLC.

(Ex. 1) Plaintiffs proposed an amended scheduling order that eliminated their responsibility to respond "to motions that are now moot". Id. Defendants agreed to Plaintiffs' request and filed a stipulation and order stating, *inter alia*, that Plaintiffs did not need to respond to the earlier motions. The Court entered the following: "ORDER, Motions terminated: [3]Motion to Dismiss filed by Laurel Equity Group LLC,, Selk LLC,, [4]Motion to Dismiss filed by Avie Arenson[.]" (D.I. 39) Accordingly, Plaintiffs have no basis to challenge this Motion since the original motion was terminated at their request.

In the alternative, this Court has the discretion to treat this subsequently filed motion as an amendment to the original motion. See MacNeil v. Whittemore, 254 F.2d 820, 821 (2d Cir. 1958) (upholding a district court's granting of a motion for leave to amend a motion to dismiss); Friedman v. World Transp., Inc., 636 F.Supp. 685, 688 (N.D.Ill.1986)("A party can amend a motion to dismiss to raise an omitted ground if he or she acts promptly and before the court rules on the original motion."); FPP § 1389 (3d ed. 2004). In MacNeil, the court explained:

> "[t]he waiver provided in Fed.Rules Civ.Proc., rule 12(h), applies only where a waivable defense is not presented either by motion or by answer; it does not in any way prevent a judge in his discretion from permitting a party to expand the grounds of motion well in advance of a hearing."

MacNeil, 254 F.2d at 821.[11]

---

[11] See also Britton v. Cann, 682 F. Supp. 110, 113 (D.N.H. 1988) (allowing amended motion to dismiss where amendment was sought in good faith, plaintiff would not be unduly prejudiced, and case would not be unduly delayed); Roller Derby Assocs. V. Seltzer, 54 F.R.D. 556, 557 (N.D. Ill. 1972)(treating second motion as an amendment to an earlier motion and stating, "Rule 12(e) forbids successive motions, but the court may allow

Additionally, SELK and Laurel did not waive this ground for dismissal by failing to raise it earlier. "[T]he waiver rules of Rule 12(h) do not preclude a defendant from adding new grounds to a previously-filed motion to dismiss before that motion is ruled upon." Seal v. Riverside Fed. Savings Bank, 825 F. Supp. 686, 693 n. 10 (E.D. Pa. 1993). The Seal court treated the later filed motion to dismiss as part of the original motion and stated, "where defendant raised the new ground for dismissal in due time for the court to consider both motions simultaneously, and plaintiff has had adequate opportunity to respond to the new ground, there is no concern of piecemeal motions practice, and no rights of plaintiff are threatened."[12]   Id.   Therefore, allowing this Motion is in accordance with the spirit of Rule 12, which "is opposed to the technical waiver of claimed jurisdictional and procedural rights, including venue, by omission from the motion as originally filed so long as they are thereafter made part of the motion by leave of court and the entire motion is presented to the court in due time under said Rule 12(b)." Martin v. Lain Oil & Gas Co., 36 F.Supp. 252, 255 (D.Ill. 1941).

In this case, the Court should exercise its discretion and regard the new grounds raised in this Motion as part of the original motion because there is no concern of piecemeal motions practice and no rights of Plaintiffs are threatened.   The Court has not ruled on the original motion and Plaintiffs did not file an opposition brief because Defendants, at Plaintiffs' request, agreed to stay briefing until the court resolved the remand issue. (D.I. 6)  After the court denied Plaintiffs' Motion to Remand, Plaintiffs did not respond to the original motion but instead filed an Amended Complaint to which Defendants, including SELK and Laurel, timely filed, *inter alia*, this Motion. (D.I. 37, 41)  Plaintiffs were given over two months to respond to, *inter alia*, this Motion and

---

the original motion to be amended before it is ruled upon, and we therefore consider the second motion on its merits."); Cohen v. Beneficial Indus. Loan Corp., 93 F. Supp. 418, 420 (D.Del. 1950)(holding that "defendant does not lose his defense of improper venue on the technical basis as to the time sequence on which different motion papers are served or filed" where there was a delay of four months between initial 12(b) motion and subsequent 12(b) motion).

[12] See also Guccione v. Flynt, 617 F. Supp. 917, 918 (S.D.N.Y. 1985) (ruling there was no waiver where the defendant filed the second motion before the court had ruled on the first); Sunrise Toyota, Ltd. v. Toyota Motor Co., 55 F.R.D. 519, 528 n. 4 (S.D.N.Y. 1972) (holding there is no waiver where both motions were before the court well before the hearing); MacNeil, 254 F.2d at 821 (stating, "Rule 12(h) does not in any way prevent a judge in his discretion from permitting a party to expand the grounds of motion well in advance of a hearing."). "A party can amend a motion to dismiss to raise an omitted ground if he or she acts promptly and before the court rules on the original motion." Friedman, 636 F. Supp. at 688.

therefore are not prejudiced by the Court exercising its discretion to permit SELK and Laurel to add new grounds for dismissal. (D.I. 49)

Plaintiffs' argument that SELK and Laurel waited "eight months" to file this Motion misrepresents the true sequence of events considering it was Plaintiffs that requested a stay of all issues pending a determination of their motion to remand. (D.I. 51 at 18); See *infra* Procedural History. "The passage of time, without more, does not require that a motion to amend . . . be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984); see also Procter & Gamble Co. v. Nabisco Brands, Inc., 125 F.R.D. 405, 409 (D.Del. 1987) ("a showing of undue prejudice or unfair disadvantage to the nonmovant is required before delay provides an adequate basis for denial"). Plaintiffs cannot establish that the delay is undue, will burden the court or is prejudicial to Plaintiffs. See Procter, 125 F.R.D. at 409. Therefore, Plaintiffs' contention that this Motion should be denied because of a delay on the part of SELK and Laurel is without merit.

Therefore, given the procedural posture of the case, in the interests of justice and judicial economy, the Court should rule on all grounds for dismissal raised in this Motion. Plaintiffs consented to the filing of this Motion and even if they had not, it is within this Court's discretion to consider this Motion as amending the original motion since it was filed before the original motion was ruled upon and without any prejudice to Plaintiffs.

DATED:  September 12, 2005             Respectfully submitted,

_David A. Felice_

Sean J. Bellew (#4072)
David A. Felice (#4090)
Cozen O'Connor
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE  19801
(302) 295-2026 (Direct)
(302) 295-2013 (Fax)

Of Counsel:
Thomas M. Wood, IV
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street, 27th Floor
Baltimore, Maryland  21202-3201
(410) 332-8523 (Direct)
(410) 332-8564 (Fax)

Attorneys for Defendants A. Arenson Holdings, Ltd.,
D.A. Gardens, Ltd., J12ALH Associates, SELK, LLC
and Laurel Equity Group, LLC