# GREGORY P. JOSEPH LAW OFFICES LLC

805 THIRD AVENUE
NEW YORK, NEW YORK 10022
(212) 407-1200
WWW.JOSEPHNYC.COM

PAMELA JARVIS
DIRECT DIAL: (212) 407-1250
DIRECT FAX: (212) 407-1278
EMAIL: pjarvis@josephnyc.com

FACSIMILE
(212) 407-1299

July 26, 2004

**By Fax (410-332-8511) and First Class Mail**

Isaac M. Neuberger, Esq.
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street, 27th Floor
Baltimore, Maryland 21202

Re:   **ALH Holdings LLC ("ALH")**

Dear Isaac:

In response to your July 21, 2004 email and other recent communications suggesting a meeting between the parties, I am writing to let you know that my clients and I are willing to meet with you, Avie Arenson and any of your other Class B clients. (Are you now acting for all of the Class B investors, and if not, which ones?) As you know, my firm is new to this matter and still in the process of "getting up to speed." Because of vacation plans and other previously scheduled commitments in August, it appears that the earliest feasible time for a meeting would be in September. I propose that we all meet in my firm's offices on Tuesday, September 14, 2004. Kindly let me know at your earliest convenience whether this is feasible for you and your clients.

In the meantime, however, it is essential for your clients to decide whether they are going to propose an alternative to the existing offer from Levitt Homes to purchase Mulvaney Homes ("MHI"). Paragraph 3 of George Buchler's July 1, 2004 email to Avie Arenson asks for your clients' feedback on the Levitt offer, including whether your clients have an alternative transaction to propose. Your July 12, 2004 letter to Shamrock refers to the July 1 email and expresses general unhappiness with the Levitt offer, but contains no specific response to paragraph 3.

As you and your clients well know, ALH must act immediately with respect to MHI. Taking no action is simply not an option. None of ALH's investors is under any obligation to put any additional capital into the Company. (Regardless of your clients' views — now or at any other time — regarding the desirability of additional capital contributions, Section 3.3 of the Operating Agreement expressly provides that "no Member shall have any personal

GREGORY P. JOSEPH LAW OFFICES LLC

Isaac M. Neuberger, Esq.
July 26, 2004
Page 2

liability to the Company, to any other Member of the Company, or to any other person" for deciding not to make a further investment in the Company.) However, if some or all of the Class B investors would like to contribute additional capital, Shamrock would certainly be willing to discuss possible terms for, *e.g.*, reducing or even eliminating Shamrock's equity interest in the Company.

Indeed, as you know, Shamrock has, over the years, repeatedly and consistently expressed this willingness to you and your clients. The Class B investors may now believe, in hindsight, that they should have handled their investment in ALH differently, *e.g.*, by buying out some or all of the Class A equity, by offering to take on a more active role in the management role of the Company, or by presenting concrete alternative plans for meeting the Company's financial obligations and needs, all as requested or suggested by Shamrock. But such a hindsight belief is hardly sufficient to support a legal claim against Shamrock — let alone the kind of claim for "bad faith" or "gross negligence" contemplated by Section 6.2(f) of the Operating Agreement.

Moreover, the claims threatened in your July 12 letter appear to concern the services rendered by Shamrock Capital Advisors, Inc. ("SCA") under the July 1, 2001 consulting agreement between ALH and SCA. This agreement, which was approved by Avie as Class B representative, expressly provides that SCA "shall have no liability to the Company or any other person in connection with" such services, except to the extent that it is "finally judicially determined" that the alleged harm "result[ed] primarily" from SCA's bad faith, gross negligence or willful misconduct. This agreement also correspondingly indemnifies and holds harmless SCA, its affiliates, and their employees and other representatives.

As the single largest investor in the Company, Shamrock has at all times sought to maximize value for all investors. Your recent communications have suggested that Shamrock somehow benefited at the expense of the Class B investors. This is just not so. Regardless of any differences in business judgment, the economic interests of the Class A and Class B investors have always been fully aligned. Any negative impact on the Class B investors was and is proportionally shared by Shamrock — the only difference is that Shamrock's share of the downside is necessarily larger because its investment is larger. In simplest terms, nothing could hurt the Class B investors without hurting Shamrock more.

For these and other reasons, we are confident that your clients will see that any "investment" in litigation against Shamrock would be wasted. However, the "amicable resolution" referred to in your July 21 email may be achievable on a transactional basis. In

GREGORY P. JOSEPH LAW OFFICES LLC

Isaac M. Neuberger, Esq.
July 26, 2004
Page 3

anticipation of the September meeting, we think it would be worthwhile for both parties to give serious thought to the formulation of one or more specific transactional resolution proposals.

With regard to MHI and the Levitt offer, however, your clients' response is needed right away. If your clients have a concrete alternative proposal, they should make it immediately. If not, ALH will have no choice but to proceed with the Levitt deal, rather than allowing MHI to disintegrate and causing further erosion of ALH's financial position by, among other things, giving up $7 million cash for paying down the Swiss Re debt.

We look forward to hearing from you.

Yours truly,

Pamela Jarvis

PJ/

555716