# EXHIBIT 4

**UNREPORTED CASES**

- Corixa Corp. v. IDEC Pharm. Corp., 2002 WL 265094 (D.Del. Feb. 25, 2002)
- Dippold-Harmon Ent. v. Lowe's Cos., 2001 WL 1414868 (D.Del. Nov. 13, 2001)
- Envirometrics Software, Inc. v. Georgia-Pacific Corp., 1997 WL 699328, (D.Del. Nov. 4, 1997)
- Genfoot, Inc. v. Payless ShoeSource, Inc., 2003 WL 22953183 (D.Del. Dec. 3, 2003)
- Guidant Corp. v. St. Jude Med., Inc., 2004 WL 1925466 (D.Del. Aug. 27, 2004)
- Matsushita Battery Indus. Co. v. Energy Conversion Devices, Inc., 1996 WL 328594 (D.Del. April 23, 1996).
- Miteq, Inc. v. Comtech Telecomms. Corp., 2003 WL 179991 (D.Del. Jan. 23, 2003).
- Padcom v. Netmotion Wireless, Inc., 2004 WL 1192641 (D.Del. May 24, 2004).
- Siemen's Med. Sys. v. Fonar Corp., 1995 U.S. Dist. LEXIS 22334 (D.Del. April 27, 1995).

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 265094 (D.Del.)
(Cite as: 2002 WL 265094 (D.Del.))

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
CORIXA CORPORATION, a Delaware corporation,
et al., Plaintiffs,
v.
IDEC PHARMACEUTICALS CORPORATION, a
Delaware corporation, Defendant.
**No. CIV.A.01-615-GMS.**

Feb. 25, 2002.

MEMORANDUM AND ORDER

SLEET, District J.

I. INTRODUCTION

*1 On September 10, 2001, IDEC Pharmaceutical Corporation ("IDEC") filed a complaint in the Southern District of California against Coulter Pharmaceutical Inc. ("Coulter"), Corixa Corporation ("Corixa"), and the Regents of the University of Michigan ("Michigan"). In its complaint, IDEC seeks a declaratory judgment of non-infringement and/or invalidity of five patents. On September 11, 2001, the Oncologic Drugs Advisory Committee ("ODAC") indicated that it would recommend a limited FDA approval of IDEC's drug Zevalin. On September 12, 2001, at approximately 8:33 A.M. PST, IDEC filed a first amended complaint which included a sixth patent.

On September 12, 2001, at 12:07 P.M. EST, Corixa, Coulter, and GlaxoSmithKline (GSK) (collectively "Corixa") filed the above-captioned action against IDEC. [FN1] Corixa alleges that IDEC is infringing U.S. Patent Nos. 6,015,542, ("the '542 patent"), 6,090,365 ("the '365 patent"), and 5,595,721 ("the '721 patent"). These patents are three of the patents involved in the California declaratory judgment action.

> FN1. On September 28, 2001, Michigan was added as a plaintiff in this action.

Presently before the court is IDEC's motion to stay the proceedings, or alternatively, to dismiss or transfer this action to the Southern District of California. [FN2] For the reasons that follow, the court will grant IDEC's motion to transfer.

> FN2. IDEC sought to stay the proceedings pending a ruling from the California court on a motion to dismiss. On January 30, 2002, the California court denied the motion to dismiss. IDEC's current motion to stay is therefore moot.

II. BACKGROUND

IDEC is a Delaware corporation with its sole place of business in the San Diego area. Coulter is a Delaware corporation with its principle place of business in the San Francisco Bay area. Corixa is a Delaware corporation based in Seattle, Washington. GSK is a Pennsylvania corporation with its principle place of business in Philadelphia, Pennsylvania. The University of Michigan is a constitutional corporation of the State of Michigan, located in Ann Arbor, Michigan.

The patents at issue involve technology for the treatment of lymphoma using targeted radioimmunotherapy. Coulter and Michigan are co-owners of the '542, ' 365, and '721 patents. Corixa and GSK are the licensees of these patents. Both IDEC and Corixa are currently seeking FDA approval for a commercial embodiment of their respective inventions for the treatment of lymphoma using radioimmunotherapy.

With these facts in mind, the court will now turn to the motion presently before it.

III. DISCUSSION

A. The "First-Filed" Rule

Where two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances. *See Genentech v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed.Cir.1993). The first-filed doctrine also serves to prevent a multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 265094 (D.Del.)
**(Cite as: 2002 WL 265094 (D.Del.))**

from common matters. *See id.* at 937. This doctrine applies equally well where the first-filed action is one for a declaratory judgment. *See id.* at 938 (noting that, where the declaratory action can resolve the various issues, a first-filed declaratory action is entitled to precedence as against a later-filed patent infringement action.)

*2 Applying the first-filed rule, IDEC argues that the present case should be transferred to the Southern District of California. Notwithstanding that the cases at issue are "mirror image" cases where the court is asked to construe the same patents, Corixa argues that the first-filed rule is inapplicable to the present situation.

Corixa first argues that GSK has not been joined in the California litigation. The record before the court indicates that GSK is Coulter's licensee. It is unclear whether GSK is an exclusive licensee. However, even were the court to accept Corixa's argument that GSK is an exclusive licensee, that alone does not indicate that GSK is a necessary party to this litigation. Corixa concedes that GSK is a licensee with fewer than all substantial rights. As such, GSK, while likely a proper party to the California lawsuit, is not a necessary party. *See Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.,* 248 F.3d 1333, 1348 (Fed.Cir.2001) (holding that an exclusive licensee possessing fewer than all substantial rights may not sue in its own name without joinder of the patent owner.) Finally, to the extent that the parties believe that GSK is a necessary party, GSK may request permission to join the California litigation. [FN3]

> FN3. Corixa expresses concern over whether the California court has subject-matter jurisdiction over an action between IDEC and GSK. As it is not the court's province to determine another court's subject matter jurisdiction, the court expresses no opinion on this.

Corixa next argues that the first-filed rule is inapplicable to the present situation because IDEC improperly "raced to the courthouse" in order to file its motion in California. In support of this contention, Corixa points out that its right to file an infringement suit against IDEC did not ripen until after ODAC recommended that the FDA approve Zevalin. However, before ODAC publicly recommended approval, but after IDEC had reason to believe they would do so, IDEC "raced" to file its declaratory judgment action.

The court acknowledges that IDEC's filing seems providential since ODAC's recommendation became public the day after IDEC filed its suit. In its November 6, 2001 Order, however, the California court specifically found that IDEC possessed a reasonable apprehension of suit when it filed its declaratory judgment action. The California court continued by stating that, "an actual controversy existed when IDEC filed the complaint under consideration. Consequently the [c]ourt finds that IDEC's filing suit was not motivated by "forum shopping alone," but rather was a legitimate exercise of its opportunity under the Declaratory Judgment Act ...." This court sees no reason to disagree with the California court's findings.

Given the information presently before it, the court concludes that having two separate trials in mirror image cases would defeat the purposes of the first-filed rule, namely, sound judicial administration and comity among federal courts of equal rank. *See EEOC v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir.1988). Accordingly, the court finds that the application of the rule weighs heavily in favor of transferring this case to the Southern District of California.

B. Section 1404(a)

*3 Transfer to the Southern District of California is also mandated under a section 1404(a) analysis. Section 1404(a) provides that "[f]or the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). There is no dispute that this action could have been filed in the Southern District of California. The court will, therefore, move on with inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995).

In *Jumara,* the Third Circuit provided a list of factors to assist the district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors include six private and five public interests which the court may consider. *See id.*

1. The Private Interests

The private interests most relevant to this case include: (1) the convenience of the parties as

Not Reported in F.Supp.2d                                                                      Page 3
Not Reported in F.Supp.2d, 2002 WL 265094 (D.Del.)
**(Cite as: 2002 WL 265094 (D.Del.))**

indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent that these files cannot be produced in the alternate forum. [FN4]

> FN4. For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three *Jumara* factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. *See Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192, 197-201 (D.Del.1998).* In not affording weight to these factors, the court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. *See id.* Instead, the court will consider whether the Southern District of California is a more convenient forum for the parties and the witnesses, while also serving the interests of justice. *See 28 U.S.C. § 1404(a).*

a. The Convenience of the Parties

Geographically, California is not more inconvenient for the parties than Delaware. Michigan must travel whether the suit is in California or Delaware. GSK is one of the world's largest pharmaceutical companies, and cannot complain about location. The remainder of the parties are based on the West Coast. Furthermore, transfer to California would reduce the overall inconvenience to all parties involved. The parties must already be prepared to litigate the related case currently pending in the Southern District of California. Bringing witnesses and relevant documents to only one location, here California, minimizes the level of disruption caused to all parties by the litigation. This is certainly a more economical and efficient result than having each party moving witnesses and documents between two states, depending on which of these related actions is being litigated at that time. Thus, this factor weighs in favor of transfer.

b. The Convenience of Witnesses

Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated, to procure the attendance of its own employees for trial. *See Affymetrix, 28 F.Supp.2d at 203.* Expert

witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any." *See id.* (internal citations omitted). Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis. *See id.*

*4 There is no evidence on the record that would indicate that Delaware would be an inconvenient forum for potential non-party witnesses. However, the court notes that all the material witnesses in this dispute, party or otherwise, will be in California already to litigate the related matter now pending in the Southern District of California. Requiring that they come to Delaware to litigate this action separately cannot be considered convenient and in the interest of justice. However, as there is no clear evidence that a non-party witness will be unable to attend trial in Delaware, this factor must weigh against transfer.

c. The Location of Records and Other Documents

The technological advances of recent years have significantly reduced the weight of this factor in the "balance of convenience" analysis. *See id.* at 205. There is no indication that either party would be unable to produce the relevant records and documents in Delaware. Thus, because this factor is relevant only insofar as the documents would be unavailable in one forum, the court finds that this factor must weigh against transfer.

From a practical standpoint, however, the court notes that any relevant documents will already be in California for the litigation of that case. The court sees no need to require that the parties move the same documents across the country. Rather, it would be much more efficient to litigate these related actions in one location. However, these considerations are more relevant to the first factor discussed *supra.*

2. The Public Factors

As other courts have noted, depending on the circumstances of the case, some of the "public interest" factors listed in *Jumara* may play no role in the "balance of convenience." *See id.* at 205. The court thus elects to discuss only the factors most

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 265094 (D.Del.)
**(Cite as: 2002 WL 265094 (D.Del.))**

relevant to the pending case.

END OF DOCUMENT

a. Practical Considerations Making Trial Easy, Expeditious or Inexpensive

This factor appears to substantially repeat the "first-filed" analysis advanced by IDEC, and accepted by the court, in Section III .A, *supra.* As such, the court declines to further address this issue here, since it has already taken this argument into consideration.

b. Delaware's Interest in this Controversy

Three of the parties in this action are Delaware corporations. However, while the court is mindful of Delaware's interest, that alone will not tip the "balance of convenience" in its favor. This is so because the court can hardly describe the patents as a local controversy unique to Delaware. See *Affymetrix,* 28 F.Supp.2d at 207. Instead, the patents deal with the treatment of lymphoma. This clearly has far-reaching implications. Accordingly, this factor does not weigh against transferring this case to California.

c. Collective Travel Time and Cost

A mirror image action is currently pending in California. Thus, to require the parties to simultaneously litigate virtually the same case on different coasts would certainly increase the collective travel time and cost. Thus, this factor weighs in favor of transfer.

IV. CONCLUSION

*5 The court concludes that the "balance of convenience" tips strongly in favor of transferring this action to the Southern District of California.

For these reasons, IT IS HEREBY ORDERED that:
 1. IDEC's alternative motion to transfer this action to the Southern District of California (D.I.8) is GRANTED.
 2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Southern District of California.

Not Reported in F.Supp.2d, 2002 WL 265094 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

· 1:01CV00615 _____(Docket) (Sep. 12, 2001)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1414868 (D.Del.)
**(Cite as: 2001 WL 1414868 (D.Del.))**

Page 1

## c

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
DIPPOLD-HARMON ENTERPRISES, INC.,
Plaintiff,
v.
LOWE'S COMPANIES, INC., Defendant.
**No. 01-532-GMS.**

Nov. 13, 2001.

MEMORANDUM AND ORDER

SLEET, District J.

I. INTRODUCTION

*1 On May 23, 2001, Lowe's Home Centers, Inc. ("Home Centers"), filed a complaint against the defendant Dippold-Harmon Enterprises, Inc. ("Dippld-Harmon") in the General Court of Justice, Superior Court Division, located in North Carolina. On July 27, 2001, Dippold-Harmon removed that action to the United States District Court for the Western District of North Carolina. On August 8, 2001, Dippold-Harmon filed the above-captioned action against Lowe's Companies, Inc. ("Lowe's"), the parent corporation of Home Centers, in Delaware.

Before the court is Lowe's' motion to dismiss, or alternatively, to transfer this case to the Western District of North Carolina, or to stay this case pending the outcome of that litigation. Lowe's argues that the court should dismiss this action because the court lacks personal jurisdiction over it. It further argues that, should the court not dismiss this action, the case should be transferred to North Carolina pursuant to the "first-filed" rule and 28 U.S.C. § 1404(a). For the reasons that follow, the court will deny Lowe's motion to dismiss for lack of personal jurisdiction, but will grant Lowe's motion to transfer.

II. BACKGROUND

Dippold-Harmon is a Delaware corporation, with its principle place of business in Delaware. Lowe's is a North Carolina corporation with its principal place of business in North Carolina. It is the world's second largest home improvement retailer, serving more than five million customers weekly. Lowe's maintains that it is not, and has never been, registered or qualified to do business in Delaware. It further asserts that it does not have a registered agent for the service of process in Delaware.

Home Centers is a wholly-owned subsidiary corporation of Lowe's. It is a North Carolina corporation registered to conduct business in Delaware, although its principle place of business is in North Carolina. Lowe's maintains significant control over its subsidiary. Lowe's sends its corporate representatives to its retail stores, including Home Centers, and then directs the stores to take certain actions in accordance with Lowe's policies. Other Lowe's high-level executives admit that they "supervise" and "oversee" the retail stores and travel to these stores on almost a daily basis. Furthermore, in Lowe's advertising materials, it proudly announces that *it* has more than six-hundred and fifty store in forty states, including four in Delaware. In actuality, the four stores in Delaware are its subsidiary Home Centers.

On April 3, 1998, Home Centers entered into a written contract with Dippold-Harmon. The contract specified that Dippold-Harmon would install granite countertops for Home Centers' customers. In approximately 1998, Lowe's also hired Dippold-Harmon as a vendor for the sale and installation of granite kitchen countertops. At that time, Dippold-Harmon was one of several vendors that Lowe's utilized for the installation of these countertops. As Lowe's continued to open additional stores, it was faced with the costly proposition of installing countertop displays at each of these new stores. To ensure that the countertop displays were properly installed in a uniform manner, Lowe's representatives sought to hire a single vendor to install these displays. It also sought to hire a single vendor to install countertops for its individual customers.

*2 Dippold-Harmon maintains that the parties engaged in subsequent telephone negotiations aimed at making Dippold-Harmon the exclusive vendor for the installation of Lowe's countertop displays, as well as for countertops it sold to individual customers. Some of these discussions were initiated by Lowe's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1414868 (D.Del.)
(Cite as: 2001 WL 1414868 (D.Del.))

Page 2

and were directed to Dippold-Harmon in Delaware. At a December 20, 1999 meeting with Dippold-Harmon, Lowe's executives Michael Gettler and Tammy Edson purportedly offered to make Dippold-Harmon its exclusive national vendor for the installation of granite countertops. Dippold-Harmon contends that, during the meeting, it accepted Lowe's' offer and entered into an oral "Exclusivity Agreement." The two companies also exchanged numerous letters and e-mails during this time concerning their vendor agreement.

On May 23, 2001, Home Centers filed the North Carolina complaint against Dippold-Harmon. In its complaint, Home Centers alleges that Dippold-Harmon breached their April 3, 1998 written contract. Specifically, Home Centers contended that Dippold-Harmon failed to comply with their written contract's standards in the installation of countertops in the homes of individual customers.

Dippold-Harmon filed this action against Lowe's on August 8, 2001, alleging that Lowe's breached their Exclusivity Agreement and acted fraudulently and with bad faith.

Because the court concludes that exercising personal jurisdiction over Lowe's in this instance comports with traditional notions of fair play and substantial justice as required by the Due Process Clause, and that Lowe's falls within the reach of Delaware's long-arm statute, the court will deny Lowe's' motion to dismiss. See *International Shoe Co. v. Washington*, 326 U.S. 310 (1945); DEL. CODE. ANN. tit. 10 § 3104(c) (2001). However, because the "balance of convenience" tips in favor of Lowe's, the court will grant its motion to transfer.

## III. DISCUSSION

### A. Jurisdiction

The essence of Lowe's' argument is that, since it has not purposefully directed its activities to Delaware, the assertion of personal jurisdiction by the courts of this forum would violate the Due Process Clause. Lowe's further contends that its activities do not bring it within the reach of Delaware's long-arm statute. While Lowe's correctly frames the inquiry the court must make, the court disagrees with its analysis and reaches a different conclusion.

### 1. Due Process

The Due Process Clause requires that, in order to

subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "ha[s] certain minimum contacts with [the forum] state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe* 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In order to give non-residents "fair warning" that a particular activity may subject them to litigation within the forum, these "minimum contacts" must be purposeful. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). In other words, the defendant's contacts must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. See *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Finally, "even if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed.Cir.1994).

*3 Lowe's argues that its only contacts with Delaware are through Dippold-Harmon, which is a Delaware corporation. Specifically, Lowes' contends that its Home Centers contract with a Delaware corporation is, by itself, an insufficient basis to establish personal jurisdiction. The court agrees. See *Blue Ball Properties, Inc. v. McClain*, 658 F.Supp. 1310, 1316-17 (D.Del.1987). However, the court finds that Lowe's has many more purposeful contacts with Delaware than it details in its brief.

First, with regard to the Exclusivity Agreement in issue, Lowe's communicated regularly with Dippold-Harmon by sending numerous letters and e-mails from North Carolina to Delaware. It also placed telephone calls to Dippold-Harmon in Delaware. These contacts alone would be sufficient to satisfy the minimum contacts analysis. See *Hide Power and Equip. Co. v. Strates Enters., Inc.*, 1993 WL 258701, at *1 (Del.Super. June 15, 1993) (finding jurisdiction over a nonresident defendant based on a single visit to Delaware and two or three letters sent to Delaware.); see also *Mid-Atlantic Mach. & Fabric, Inc. v. Chesapeake Shipbuilding, Inc.*, 492 A.2d 250, 255 (Del.Super.1985) (extending jurisdiction over a nonresident defendant where the negotiation and execution of the contract occurred entirely outside of Delaware, and the defendant's contacts with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1414868 (D.Del.)
**(Cite as: 2001 WL 1414868 (D.Del.))**

Delaware were limited to "an unspecified number of trips.")

However, in addition to these direct contacts with Dippold-Harmon in Delaware, Lowe's is the world's second largest home improvement retailer. This fact alone would provide a sufficient basis for the court to seriously question the legitimacy of Lowe's' position. However, as previously noted, Lowe's has a wholly-owned subsidiary; that subsidiary, Home Centers, is registered to do business in Delaware, and operates four stores in this jurisdiction. Neither in its advertising material, nor in its internal communications, does Lowe's distinguish between its corporate stores and Home Centers stores. In fact, Lowe's announces the opening of new Home Centers stores as new *Lowe's* locations. Lowe's also maintains strict control over its Home Centers operations. It sends its representatives to the Home Centers stores and then directs those stores not in compliance with Lowe's policies to take certain actions to come into compliance. Such representatives have visited the Delaware stores. Lowe's also publically admits to otherwise "supervising and overseeing" its stores, and sending Lowe's personnel to those stores, including Delaware locations.

These facts support the conclusion that Lowe's should reasonably have anticipated being brought into court here. However, due process requires that the court make one more inquiry.

Notwithstanding the existence of Lowe's purposeful minimum contacts with this forum, the court must consider whether the "minimum requirements inherent in the concept of 'fair play and substantial justice...' defeat the reasonableness of [the assertion of] jurisdiction, even [if] the defendant has purposefully engaged in forum activities." *Asahi Metal Indust. Co. v. Superior Court*, 480 U.S. 102, 116 (1987). This question will only be answered affirmatively if the state's and the plaintiff's interest in having the dispute adjudicated in the forum are so minimal as to be outweighed by the burden imposed by subjecting the defendant to litigation within the forum. *See Beverly Hills Fan*, 21 F.3d at 1568.

*4 Here, the answer is plainly, no. Delaware has an interest in this action. Dippold-Harmon is a Delaware corporation. Clearly this forum's interests extend to corporate citizens that have sought the protection of Delaware's laws. Moreover, Delaware has an interest in addressing those purposeful activities conducted within its borders that result in allegations of injury. That interest extends to breaches of contract, such as

that alleged here. Finally, Lowe's clearly has, through its Home Centers subsidiaries, significantly more than minimal contacts with this forum. Accordingly, the court concludes that the burden on Lowe's is not so onerous as to run afoul of traditional notions of fair play and substantial justice.

2. Delaware's Long-Arm Statute

The second step in the court's analysis into the propriety of subjecting Lowe's to personal jurisdiction in this forum is the determination of whether any of the provisions of Delaware's long-arm statute apply. *See* DEL. CODE. ANN. tit. 10 § 3104 (2001). While Lowe's contends that it does not fall within the grasp of any of Section 3104's provisions, Dippold-Harmon contends that at least two of the provisions apply here. For purposes of this order, the court need only discuss one.

Under subsection (c)(4), the court may exercise personal jurisdiction over anyone who causes injury either inside or outside of this State "by an act or omission outside of the State" if that individual "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services or things used or consumed in the State." DEL. CODE. ANN. tit. 10, § 3104(c) (2001). [FN1] The court will interpret this language broadly, as reaching the "maximum parameters of the due process clause." *See Jeffreys v. Exten*, 784 F.Supp. 146, 151 (D.Del.1992).

> FN1. This subsection provides general jurisdiction over the nonresident defendant. *See Mendelson v. Delaware River and Bay Auth.*, 56 F.Supp.2d 436, 439 (D.Del.1999). Accordingly, it is immaterial whether the jurisdictional contact is related to the claim. *See id.*

As discussed above, Lowe's directed telephone calls and numerous items of correspondence to Delaware in relation to the disputed Exclusivity Agreement. Through its wholly-owned subsidiary, Home Centers, Lowe's also operated, maintained, and directly supervised four stores in Delaware. Finally, Lowe's has not in any way publically differentiated itself from the Home Centers locations in Delaware. Consequently, it cannot now complain that it should not be sued here.

Finding sufficient contacts to subject Lowe's to personal jurisdiction under both the State's long-arm

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1414868 (D.Del.)
(Cite as: 2001 WL 1414868 (D.Del.))

statute and the Due Process Clause, the court will now move to a discussion of whether this action should be transferred to the Western District of North Carolina. [FN2]

> FN2. In its motion to dismiss, Lowe's also alleges that this action should be dismissed for lack of venue and insufficient service of process. However, both of these claims are based solely on its argument that the court lacked personal jurisdiction. As the court has found personal jurisdiction, these arguments too must fail.

B. Venue

As previously noted, Lowe's seeks to transfer this action pursuant to the "first-filed" rule and 28 U.S.C. § 1404(a).

1. The "First-Filed" Rule

The "first-filed" rule is a judicially-created doctrine that is designed to avoid concurrent litigation of the same issues, between the same parties, in more than one federal court. *See EEOC v. University of Pennsylvania*, 850 F.2d 969, 971-72 (3d Cir.1988). As its name implies, the rule generally provides that a later-filed action should be stayed pending the resolution of an earlier filed action, or transferred to the court in which the earlier-filed action is pending. *See Peregrine Corp. v. Peregrine Indus., Inc.*, 769 F.Supp. 169, 171 (E.D.Pa.1991).

*5 While Dippold-Harmon does not dispute that the North Carolina action was filed first, it argues that this rule should not apply to the present case because different parties and different issues are presented in the Delaware and North Carolina actions. The court finds this argument unpersuasive. First, Dippold-Harmon itself aggressively argued that Lowe's and Home Centers should be considered one and the same party for purposes of establishing personal jurisdiction. The court will not now find that Lowe's and Home Centers are different parties for the purposes of the "first-filed" rule. For the reasons stated in Section A. 1, *supra*, the court is satisfied that Lowe's and Home Centers are effectively the same party.

Second, with regard to Dippold-Harmon's argument that different issues are presented in the Delaware and North Carolina actions, the court again disagrees. The North Carolina action concerns the breach of a written agreement between Home Centers and Dippold-Harmon. The written agreement provided that Dippold-Harmon would install granite countertops for its customers in a certain fashion. The Delaware action concerns the breach of an alleged oral agreement between Lowe's and Dippold-Harmon. This alleged oral agreement provided that Dippold-Harmon would be the exclusive distributor of those granite countertops. Both actions thus concern different facets of the same business relationship between the parties. Specifically, both actions relate to Dippold-Harmon's status as a fabricator and installer of granite countertops for Lowe's and Home Centers' customers. A decision by the North Carolina court on the validity, or breach, of the written agreement will bear directly on the alleged oral agreement concerning the same type of services. To have two separate trials on these issues would defeat the purposes of the "first-filed" rule, namely sound judicial administration and comity among federal courts of equal rank. *See EEOC, 850 F.2d at 971*. Accordingly, the court finds that the application of this rule weighs heavily in favor of transferring this case to North Carolina.

2. Section 1404(a)

Transfer to North Carolina is also mandated under a section 1404(a) analysis. Section 1404(a) provides that "[f]or the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). The parties agree that this action could have been filed in the Western District of North Carolina as a diversity action. The court will, therefore, move on with the inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995).

In *Jumara*, the Third Circuit provided a list of factors to assist the district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors include six private and five public interests which the court should consider. *See id.*

a. The Private Interests

*6 The private interests most relevant to this case include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1414868 (D.Del.)
**(Cite as: 2001 WL 1414868 (D.Del.))**

trial in one of the fora; and (3) the location of records and other documents; again, only to the extent these files cannot be produced in the alternate forum. [FN3] *See id.*

> FN3. For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three *Jumara* factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. *See Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192, 197-201 (D.Del.1998).* In not affording weight to these factors, the court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. *See id.* Instead, the court will consider whether the Western District of North Carolina is a more convenient forum for the parties and the witnesses, while also serving the interests of justice. *See 28 U.S.C. § 1404(a).*

### 1. The Convenience of the Parties

Physically, North Carolina is moderately inconvenient for Dippold-Harmon, which is headquartered in Delaware. Thus, in order to litigate this matter in North Carolina, it must travel several hours. However, modern communication and transportation capabilities make this moderate journey far less burdensome than it would have been at one time. *See Beverly Hills Fan, 21 F.3d at 1569* (noting that it is not unduly burdensome for a defendant organized under the laws of the People's Republic of China to litigate in Virginia.). Because it is a national distributor of granite and stone kitchen fixtures, Dippold-Harmon is also financially capable of shouldering this burden. As such, it is doubtful that litigating in North Carolina would be an undue financial burden.

Furthermore, transfer to North Carolina would reduce the overall inconvenience to all parties involved. Dippold-Harmon must already travel to North Carolina to defend itself in the first-filed action pending in the Western District of North Carolina. Bringing witnesses and relevant documents to only one location, here North Carolina, minimizes the level of disruption caused to both parties by the litigation. This is certainly a more economical and efficient result than having each party moving witnesses and documents between two states, depending on which of these related actions is being litigated at that time.

### 2. The Convenience of Witnesses

Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated, to procure the attendance of its own employees for trial. *See Affymetrix, 28 F.Supp.2d at 203.* Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any. *See id.* (internal citations omitted). Fact witnesses who posses first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis. *See id.*

Dippold-Harmon argues that Lowe's has failed to demonstrate that transfer to North Carolina would be more convenient for potential non-party fact witnesses. The court agrees, and notes that Lowe's' bare allegations of witness inconvenience, without more, are insufficient to tip the balance in its favor. However, all the material witnesses in this dispute, party or otherwise, will be in North Carolina already to litigate the first-filed action. Requiring that they then come to Delaware to litigate this action separately cannot be considered convenient and in the interest of justice. Accordingly, the court finds that this factor also weighs in favor of transferring the action to North Carolina.

### 3. The Location of Records and Other Documents

*7 The technological advances of recent years have significantly reduced the weight of this factor in the "balance of convenience" analysis. *See id.* at 205. Furthermore, the relevant documents will already be in North Carolina for the litigation of the first-filed action. The court thus sees no need to require that Lowe's, Home Centers, and Dippold-Harmon move the same documents from North Carolina to Delaware. Rather, it would be much more efficient to litigate these related actions in one location.

### b. The Public Factors

As other courts have noted, depending on the circumstances of the case, some of the "public interest" factors listed in *Jumara* may play no role in the "balance of convenience." *See id.* at 205. The

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1414868 (D.Del.)
(Cite as: 2001 WL 1414868 (D.Del.))

Page 6

court thus elects to discuss only the three factors which the parties deem relevant to the pending case.

**1. Practical Considerations Making Trial Easy, Expeditious, or Inexpensive**

This factor appears to substantially repeat the "first-filed" analysis advanced by Lowe's, and accepted by the court, in Section 2 .B, *supra*. As such, the court declines to further address this issue here, since it has already taken this argument into consideration.

**2. Delaware's Interest in Deciding This Action**

Dippold-Harmon claims that Delware has a far stronger interest in resolving this action since Dippold-Harmon is a Delaware corporation. While the court is mindful of Delaware's interest, that alone will not tip the "balance of convenience" in its favor. This is so because the court can hardly describe the alleged Exclusivity Agreement as a local controversy unique to Delaware. See *Affymetrix*, 28 F.Supp.2d at 207. Instead, this alleged agreement concerns Dippold-Harmon's status as Lowe's' exclusive, national distributor. By its very nature then, the agreement is not local and unique to only Delaware, but rather, affects every state included in the alleged Exclusivity Agreement. Furthermore, the court notes that Dippold-Harmon appears to concede that the alleged Exclusivity Agreement was not formed in Delware and would not be governed by Delaware law. Accordingly, this factor does not weigh in favor of denying Lowe's motion to transfer.

**3. Collective Travel Time and Cost**

The final public interest factor identified by Lowe's concerns the time and cost allegedly associated with the potential witnesses' travel time to Delaware. This factor, however, duplicates other factors necessary to the court's transfer analysis, namely the private factors considering the convenience and availability of witnesses and the location of documents. The court has already rejected these arguments in its earlier discussion of the "private" factors in the "balance of convenience" analysis.

**IV. CONCLUSION**

For the foregoing reasons, the court concludes that Lowe's is subject to personal jurisdiction in Delaware, however, the "balance of convenience" tips strongly in favor of transferring this action to the Western District of North Carolina.

*8 For these reasons, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that:

1. Lowe's motion to dismiss for lack of personal jurisdiction (D .I. 8) is DENIED, and Lowe's alternative motion to transfer this action to the Western District of North Carolina (D.I.8) is GRANTED; and

2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Western District of North Carolina.

Not Reported in F.Supp.2d, 2001 WL 1414868 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• _____1:01CV00532_____(Docket) (Aug. 07, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 699328 (D.Del.)
(Cite as: 1997 WL 699328 (D.Del.))

Page 1

### Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
ENVIROMETRICS SOFTWARE, INC., Plaintiff,
v.
GEORGIA-PACIFIC CORPORATION, Defendant.
No. CIV. A. 97-243-SLR.

Nov. 4, 1997.

M. Duncan Grant, Esquire, Daniel V. Folt, Esquire, and Tara L. Lattomus, Esquire, of Pepper, Hamilton & Scheetz LLP, Wilmington, Delaware, for plaintiff.

Thomas C. Grimm, Esquire, and Karen L. Pascale, Esquire, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, for defendant.

### MEMORANDUM OPINION

ROBINSON, District J.

### INTRODUCTION

*1 Pending before the court is a motion filed by plaintiff EnviroMetrics Software, Inc. ("ESI") to enjoin a related case pending in the United States District Court for the Northern District of Georgia. Also pending is a motion to dismiss the instant litigation filed by defendant Georgia-Pacific Corporation ("G-P"). The underlying facts to the parties' dispute are relatively straightforward.

ESI is a Delaware corporation with its principal place of business in New Castle, Delaware. (D.I. 10, Ex. B at ¶ 3) ESI is in the business of writing computer software that may be used by companies with industrial operations to monitor and to provide reporting on air, water, and solid waste emissions that are being generated by their industrial processes. (D.I. 10, Ex. B at ¶ 2) G-P is a Georgia corporation which manufactures paper and paper products in numerous plants located throughout the United States.

As of May 30, 1995, ESI and G-P entered into a contract, entitled Computer Software License and Services Agreement (the "License Agreement"),

whereby ESI licensed use of its "PlantWare" software to G-P. The License Agreement expressly set forth numerous warranties respecting PlantWare (including performance and documentation warranties), as well as functional enhancements. (D.I.7, ¶ 3). G-P paid $1,000,000 to ESI for PlantWare and over $400,000 for "consulting" services in connection with PlantWare. (D.I.7, ¶ 4)

ESI and G-P also entered into a separate agreement entitled Program and Documentation Maintenance Agreement (the "Maintenance Agreement") as of May 30, 1995, in which ESI agreed to provide G-P with certain specified maintenance services for the PlantWare software. (D.I. 10, Ex. B at ¶ 7) Pursuant to the terms of the Maintenance Agreement, G-P owed ESI $20,000 as of July 15, 1996, and an additional $20,000 as of December 15, 1996, for services provided between June 15, 1996 and June 15, 1997. (D.I. 10, Ex. B at ¶ 8)

G-P asserts that during the two years following execution of the License Agreement, it reported to ESI "more than 100 deficiencies, defects and bugs with PlantWare..., many of which were fundamental, and irremedial, flaws in the software, and many others of which were not corrected within the time period specified by the License Agreement." (D.I.7, ¶ 5) ESI relatedly asserts that when G-P completed payment of the $1,000,000 under the License Agreement on August 14, 1996, G-P expressly "confirm[ed to ESI] that it accepted the PlantWare software as satisfactory at the conclusion of the acceptance period provided for in the Licensing Agreement." (D.I. 10, Ex. B at ¶ 10)

The parties are in agreement that, at a meeting held on April 22, 1997, G-P demanded reimbursement of the entire $1,000,000 it had already paid under the Licensing Agreement, contending that the PlantWare software failed to meet warranty specifications. (D.I. 7, ¶ 7; D.I. 10, Ex. B at ¶ ¶ 11-13) This meeting was followed by a letter to Mr. James E. Bostic, Jr., a Senior Vice President at G-P, dated April 28, 1997 from David N. Hommrich, President of ESI, whereby ESI offered a " 'no-risk' set of services" by which ESI was to help G-P successfully implement PlantWare at two appropriate facilities. Mr. Hommrich concluded his letter with the following: "I look forward to hearing from you, and am hopeful that we can work with you in the near future." (D.I.15, Ex. A)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 699328 (D.Del.)
(Cite as: 1997 WL 699328 (D.Del.))

Page 2

**\*2** Mr. Bostic received Mr. Hommrich's letter on May 2, 1997. Mr. Bostic and Mr. Hommrich had a follow-up conversation on May 12, 1997, as confirmed by a letter dated May 14, 1997 from Mr. Hommrich. Mr. Hommrich ended this letter as follows: "I'll be calling you today to discuss this matter. There are people here, Jim, who are prepared for this challenge and want to work very hard for you. I hope you'll take us up on this offer." (D.I.15, ¶¶ 7-10, Ex. B) During the course of these discussions and without advance warning to G-P, on May 7, 1997, ESI filed a complaint in this court against G-P. [FN1] Count I of the complaint seeks a declaration under 28 U.S.C. § 2201 *et seq.* that ESI has not breached the License Agreement. Count II of the complaint is a $40,000 breach of contract claim under the Maintenance Agreement. [FN2] Count III is a claim for attorneys' fees. [FN3] (D.I.1) Not until May 16, 1997, when the complaint was served on G-P's registered agent in Georgia, did G-P understand that the parties' negotiations had been terminated. (D.I. 7, ¶¶ 9-10; D.I. 15, Exs. C, D)

> FN1. Mr. Hommrich averred in this litigation that, "[a]t the time [ [ESI] filed suit, there were no ongoing settlement negotiations." (D.I. 10, Ex. B at ¶ 15) The record indicates otherwise.

> FN2. G-P has refused to pay the $40,000 due and owing under the Maintenance Agreement.

> FN3. Both the License Agreement and the Maintenance Agreement provide that if either G-P or ESI commences litigation to enforce its rights under the agreements, "the successful party in any such suit or action shall be entitled to recover from the other such sum as the court may adjudge reasonable as an attorney's fee in such suit or action and in any appeals therefrom." (D.I. 7, Ex. A at ¶ 13.10)

On June 25, 1997, G-P filed an action in Georgia state court against both ESI and ESI's President, David M. Hommrich, alleging breach of the License Agreement as well as fraud and negligent misrepresentations in connection with G-P's purchase of PlantWare. (D.I.10, Ex. A) Defendants ESI and Hommrich have removed the state court action to the United States District Court for the Northern District of Georgia.

This court has jurisdiction pursuant to 28 U.S.C. § 1332. The question at issue is whether the court should exercise such jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

DISCUSSION

Plaintiff ESI contends that the court must exercise its jurisdiction under the "first-filed" rule. As explained by the Third Circuit in *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 976-77 (3d Cir.1988),

> [a]lthough exceptions to the [first-filed] rule are rare, courts have consistently recognized that the first-filed rule "is not a rigid or inflexible rule to be mechanically applied...." ... Bad faith ... and forum shopping have always been regarded as proper bases for departing from the rule.... Similarly, courts have rejected the rule when the second-filed action had developed further than the initial suit... and when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum....
> The letter and spirit of the first-filed rule, therefore, are grounded on equitable principles. *See Columbia Plaza Corp. v. Security Nat. Bank*, 525 F.2d 620, 621 (D.C.Cir.1975); cf. *Kerotest Mfg. Co. v. C-O-Two Co.*, 342 U.S. 180, 183-84, 72 S.Ct. 219, 221-22, 96 L.Ed. 200 (1952) (under Federal Declaratory Judgment Act, factors relevant to wise judicial administration between coordinate federal courts "are equitable in nature"). To be sure, the rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments.... Yet, fundamental fairness dictates the need for "fashioning a flexible response to the issue of concurrent jurisdiction." ...
> **\*3** (citations omitted) (emphasis added).

Defendant G-P maintains that plaintiff at bar instituted suit first in Delaware "in anticipation of the opposing party's [i.e., G-P's] imminent suit in another, less favorable, forum," *id.* at 976, in this case Georgia state court. Not only do these circumstances constitute a recognized exception to the first-filed rule, but constitute as well a framework for analyzing the exercise of the court's discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), which provides:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought....

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 699328 (D.Del.)
(Cite as: 1997 WL 699328 (D.Del.))

Page 3

Declaratory relief is appropriately awarded when it will " 'serve a useful purpose in clarifying the legal relations in issue or terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." ' *Gribin v. Hammer Galleries,* 793 F.Supp. 233, 234 (C.D.Cal.1992) (quoting *Tierney v. Schweiker,* 718 F.2d 449, 457 (D.C.Cir.1983)).   It is generally recognized, however, that

"[t]he Declaratory Judgment Act was not intended to enable a party to obtain a change of tribunal from a state to federal court, and it is not the function of the federal declaratory action merely to anticipate a defense that otherwise could be presented in a state action." *Wright & Miller, § 2758, at 631- 632.*
*Gribin,* 793 F.Supp. at 235.   Indeed, the Third Circuit has instructed courts to look critically at

"any attempt to circumvent the laudable purposes of the Act, and [to] seek to prevent the use of the declaratory action as a method of procedural fencing, or as a means to provide another forum in a race for res judicata." 6A J. Moore, J. Lucas & G. Girtheer, Jr., *Moore's Federal Practice* ¶ 57.08[5], at 57-50 (2d ed.1987) (footnote omitted). *Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc.,* 887 F.2d 1213, 1225 (3d Cir.1989);   *see also Nat'l Union Fire Ins. Co. of Pittsburgh v. Freeport-McMoRan Inc.,* 767 F.Supp. 568, 573 (D.Del.1991).   Venerable Third Circuit precedent specifically has directed that "it is not one of the purposes of the declaratory judgment acts to enable a prospective ... defendant to obtain a declaration of non-liability...." *Sun Oil Co. v. Transcontinental Gas Pipe Line Corp.,* 108 F.Supp. 280, 282 (E.D.Pa.1953).   The "race to the courthouse" is particularly inappropriate under circumstances where " 'the party entitled to bring a coercive action [has not] fail[ed] or delay[ed] in bringing it." ' *Gribin,* 793 F.Supp. at 236 (quoting *State Farm Fire & Cas. Co. v. Taylor,* 118 F.R.D. 426, 429 (M.D.N.C.1988) (emphasis in original)), and where (aside from potential litigation costs) there is no "accruing damage," *Crown Cork & Seal Co., Inc. v. Borden, Inc.,* 779 F.Supp. 33, 36 (E.D.Pa.1991);   *see also, ACandS, Inc. v. Aetna Cas. & Sur. Co.,* 666 F.2d 819, 823 (3d Cir.1981) (because "declaratory judgment relief was intended to avoid ... the 'accrual of avoidable damages to one not certain of his rights," ' it is proper to exercise jurisdiction where judgment would "affect present behavior, have present consequences and resolve a present dispute.").

*4 The record at bar demonstrates that defendant G-P was dissatisfied with the performance of plaintiff

ESI's PlantWare software and initiated discussions with ESI to resolve outstanding problems and complaints.   It is apparent under the circumstances presented that defendant G-P is "the party entitled to bring a coercive action."   The parties had been discussing G-P's complaints for only a matter of days (and were still discussing possible resolutions) when plaintiff ESI filed this lawsuit.   Such a time frame from notice of breach to lawsuit surely is insufficient to generate the magnitude of uncertainty and insecurity typically associated with declaratory judgment actions, especially where (as here) the conduct at issue was already complete and the damages record thus established.   Plaintiff ESI's declaratory judgment action clearly was filed in anticipation of a coercive action by G-P and, as such, constitutes an inappropriate use of the declaratory judgment remedy and an exception to the first-filed rule.   The court declines to exercise its discretionary jurisdiction over Count I under these circumstances. [FN4]

> FN4. These circumstances include as well the fact that the Georgia action is directed at the President of ESI, David M. Hommrich, an individual who is not a party to the instant lawsuit.

With respect to Counts II and III, plaintiff has carried its burden of persuading the court that the remaining amounts in controversy are sufficient to satisfy the $75,000 jurisdictional prerequisites of 28 U.S.C. § 1332. The question rests on Count III, which seeks attorneys' fees under the License and Maintenance Agreements.   Although the court is speculating to some extent in finding jurisdiction, it cannot say to a "legal certainty that the plaintiff cannot recover more than [$75,000]" under the circumstances presented. *Suber v. Chrysler Corp.,* 104 F.3d 578, 583 (3d Cir.1997) (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938)).

Having so concluded, the court recognizes that it is inefficient to have both this court and the Georgia court handling different pieces of the same dispute. Therefore, the court will order the parties to submit their respective positions on transferring this action to the Northern District of Georgia pursuant to 28 U.S.C. § 1404.

CONCLUSION

For the reasons stated, plaintiff's motion to enjoin is denied and defendant's motion to dismiss is granted

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                     Page 4
Not Reported in F.Supp., 1997 WL 699328 (D.Del.)
**(Cite as: 1997 WL 699328 (D.Del.))**

in part and denied in part.

An order shall issue.

Not Reported in F.Supp., 1997 WL 699328 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

•               1:97cv00243               (Docket)
(May. 07, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22953183 (D.Del.)
(Cite as: 2003 WL 22953183 (D.Del.))

Page 1

**C**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
GENFOOT, INC., Plaintiff,
v.
PAYLESS SHOESOURCE, INC. Defendant.
No. Civ. 03-398-SLR.

Dec. 3, 2003.
Warren Thomas Pratt, Drinker, Biddle & Reath,
LLP, Wilmington, DE, for Plaintiff.

Tanya E. Pino, Prickett, Jones & Elliott,
Wilmington, DE, for Defendant.

MEMORANDUM ORDER

ROBINSON, J.

I. INTRODUCTION

*1 Plaintiff filed suit against defendant on April 17,
2003 alleging infringement of U.S. Patent No.
6,237,252 ("the '252 patent") pursuant to 35 U.S.C. §
§ 271, 281, 283, 284 and 285. (D.I.1) On July 9,
2003, defendant moved, pursuant to 28 U.S.C. §
1404(a), [FN1] to transfer venue to the District of
Kansas, and to consolidate the case with *Payless
Shoesource, Inc. v. Genfoot,* Civil Action No. 02-
4160-SAR. (D.I.6) The matter is fully briefed. (D.I.7,
8) For the reasons that follow the motion to transfer
will be granted.

> FN1. Title 28, Section § 1404(a) provides:
> For the convenience of parties and
> witnesses, in the interest of justice, a district
> court may transfer any civil action to any
> other district or division where it might have
> been brought.

II. BACKGROUND

Plaintiff is Canadian corporation with its principal
place of business in Montreal, Quebec, Canada.
(D.I.1) Plaintiff is the owner of the '252 patent which,

essentially, protects technology related to a draw cord
closure on the upper part of a shoe boot. Plaintiff
alleges defendant has sold and continues to sell a
boot that includes technology protected by the '252
patent. In the complaint, plaintiff describes defendant
as the operator of retail stores selling footwear in all
fifty states. In the motion to transfer, however,
defendant explains that there are two distinct entities
denominated "Payless ShoeSource, Inc." (D.I.7, Ex.
B) Defendant, a Delaware corporation, "functions
solely as a holding company" and "conducts no
activities relating to creating, manufacturing, buying
of selling footwear or other merchandise of any
type." (D.I.7, Ex. B) The second entity, Payless
ShoeSource, Inc., is a Missouri corporation and "an
indirect, wholly-owned subsidiary of the Delaware
holding company whose sole function is to conduct
retail sales of Payless merchandise in the United
States, the Virgin Islands and Puerto Rico." (*Id.*) A
third entity, Payless ShoeSource Worldwide, is a
Kansas corporation and is an "indirect, wholly-owned
subsidiary of Delaware Holding Company." (*Id.*)

On October 18, 2002, the second entity, Payless
ShoeSource, Inc., filed a complaint for declaratory
judgment against Genfoot, Inc. in the United States
District Court for the District of Kansas. (D.I.7, Ex.
A) Payless seeks judgment of patent invalidity,
unenforceability and noninfringement on the '252
patent. (*Id.*) On April 16, 2003, Genfoot moved to
dismiss based on lack of personal jurisdiction. (D.I.8)
Genfoot's motion remains pending.

III. DISCUSSION

More than fifty years ago, the Third Circuit Court of
Appeals adopted the "first-filed rule" where "[i]n all
cases of federal concurrent jurisdiction the court
which first had possession of the subject must decide
it." *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925,
929 (3d Cir.1941) (quoting *Smith v. McIver,* 22 U.S.
(9 Wheat.) 532, 6 L.Ed. 152 (1824)). Consequently,
the second filed action should be stayed or
transferred to the court where the first filed action is
pending. *Peregrine Corp. v. Peregrine Indus., Inc.,*
769 F.Supp. 169, 171 (E.D.Pa.1991); *Dippold-
Harmon Enterprises, Inc. v. Lowe's Companies, Inc.,*
Civil Action No. 01-532-GMS, 2001 WL 1414868
(D.Del.2001). The rule "encourages sound judicial
administration and promotes comity among federal
courts of equal rank." *E.E.O.C. v. University of*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22953183 (D.Del.)
**(Cite as: 2003 WL 22953183 (D.Del.))**

Page 2

*Pennsylvania*, 850 F.2d 969, 971 (3d Cir.1988). The decision to transfer or stay the second action is within the discretion of the trial court. *Id.*, at 972, 977. However,

> **\*2** invocation of the rule will usually be the norm, not the exception. Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule.
> *Id.* at 979.

The court finds this case involves the same parties, the same patent and same legal theories as the first filed action in the District of Kansas. A transfer of the subsequently filed Delaware action will promote judicial administration and consistency of results.

IV. CONCLUSION

For the reasons stated, at Wilmington, this 2d day of December, 2003,

IT IS ORDERED that:

1. The motion to transfer is granted. (D.I.6)

2. The above-captioned action shall be transferred to the United States District Court for the District of Kansas.

Not Reported in F.Supp.2d, 2003 WL 22953183 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

•          1:03CV00398_____ (Docket)
(Apr. 17, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1925466 (D.Del.)
(Cite as: 2004 WL 1925466 (D.Del.))

# H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
GUIDANT CORPORATION, Cardiac Pacemakers,
Inc., Guidant Sales Corporation and
Mirowski Family Ventures, L.L.C., Plaintiffs,
v.
ST. JUDE MEDICAL, INC. and Pacesetter, Inc.,
Defendants.
No. Civ. 04-067-SLR.

Aug. 27, 2004.

Frederick L. Cottrell, III, Richards, Layton & Finger,
Wilmington, DE, for Plaintiffs and Counter-
Defendants.

John W. Shaw, Young, Conaway, Stargatt & Taylor,
Wilmington, DE, for Defendants and Counter-
Claimants.

MEMORANDUM ORDER

ROBINSON, J.

*1 At Wilmington this 27th day of August, 2004,
having reviewed defendants' motion to transfer and
the papers submitted in connection therewith;

IT IS ORDERED that said motion to transfer
(D.I.27) is denied, for the reasons that follow:

1. Introduction. On February 2, 2004, Guidant
Corporation, Cardiac Pacemakers, Inc., Guidant Sales
Corporation and Mirowski Family Ventures, L.L.C.
(collectively, "plaintiffs"), filed this action for
declaratory judgment of patent infringement against
St. Jude Medical, Inc. and Pacesetter, Inc.
(collectively, "defendants"). (D.I.1) The patent-in-suit
is United States Patent Number RE38,119 ("the '119
patent"). [FN1] This patent is "directed to a new way
to treat congestive heart failure ("CHF"), which
occurs when the heart muscle is too weak to pump
blood effectively through the body." (D.I. 34 at p. 3)
Plaintiffs allege that defendants infringe the '119
patent by making and selling congestive therapy

products that provide cardiac resynchronization
therapy ("CRT") to treat CHF. [FN2] (D.I.28)

> FN1. The '119 patent is the subject of
> litigation presently before the court in
> *Medtronic v. Guidant,* Civ. No. 03-848-SLR
> (D.Del.). Although both sides expend much
> energy arguing the relevance of the
> *Medtronic* case to the issue of transfer at
> bar, the court is unimpressed by these
> considerations.

> FN2. The accused devices are St. Jude's
> Epic0  HF  implantable  cardioverter
> defibrillator,  Atlas0  HF  implantable
> cardioverter defibrillator, and Frontier0
> pacemaker device. (D.I.28)

On February 24, 2004, Cardiac Pacemakers, Inc.
filed a second patent infringement action in the
District of Minnesota against defendants St. Jude
Medical, Inc. and Pacesetter, Inc. ("the Minnesota
Action"). (D.I. 29, Ex. 5, *Cardiac Pacemakers, Inc. v.
St. Jude Medical, Inc.,* C.A. No. 04-1016 JMR/FLN)
The patent-in-suit is United States Patent No.
5,755,766 ("the '766 patent"). [FN3] The '766 patent
is directed to cardiac leads that travel though veins to
the heart. (D.I.34)

> FN3. The accused products are St. Jude's
> QUICKSITE0 1056 K pacing lead used with
> St. Jude's Epic HF, Atlas HF and Frontier
> devices. (D .I. 28)

Defendants moved to transfer this case to the United
States District Court for the Southern District of
Indiana on March 9, 2004. (D.I.11) Defendants
argued that the interests of justice strongly favored
having all cases relating to the accused products
heard before the United States District Judge David
F. Hamilton. Defendants argued that Judge Hamilton
was "particularly well-suited to fill that role because
he had recently presided over the lengthy trial of a
prior suit brought by plaintiff Guidant involving four
other patents issued to Dr. Morton Mower, the
alleged inventor of the '119 patent in suit." [FN4]
(D.I. 28 at 8)

> FN4. According to defendants:
> The judgment of invalidity as to one of the
> four patents is the subject of an appeal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1925466 (D.Del.)
(Cite as: 2004 WL 1925466 (D.Del.))

Page 2

currently pending before the Federal Circuit. With respect to the other three patents, one was voluntarily dismissed before trial, Judge Hamilton's finding as to the invalidity of one has been conceded, and Judge Hamilton's summary judgment holding of invalidity of the third was affirmed by the Federal Circuit.
(D.I.28, fn.2)

On April 7, 2004, plaintiffs filed their first amended complaint. (D.I.22) Defendants' withdrew their motion to transfer to the Southern District of Indiana on April 13, 2004. [FN5] (D.I.23) Defendants filed their answer to the amended complaint along with counterclaims on April 21, 2004. (D.I.25) Defendants filed a second motion to transfer this case to the District of Minnesota on May 6, 2004. (D.I.27, 28, 29) The matter is fully briefed. (D.I.34, 35, 36, 38, 39)

>     FN5. Apparently, under the Southern
>     District of Indiana local rules, defendants'
>     case was not considered a related case,
>     thereby assignment to Judge Hamilton was
>     not possible.

2. Background. Plaintiff Guidant Corporation ("GC") is an Indiana corporation having its principal place of business in Indianapolis, Indiana. GC has an exclusive license to the '119 patent. Plaintiff Cardiac Pacemakers, Inc. ("CPI") is organized under the laws of Minnesota and has a principal place of business in St. Paul, Minnesota. Guidant Sales Corporation ("GSC") is an Indiana corporation with its principal place of business in Indianapolis, Indiana. GS and its subsidiaries CPI and GSC make and sell cardiac rhythm management devices. (D.I.22) Mirowski Family Ventures, L.L.C. is a Maryland limited liability corporation that has been assigned title to the '119 patent. (*Id.*)

*2 3. Defendant St. Jude Medical, Inc. ("SJM") is a Minnesota corporation with its principal place of business in St. Paul, Minnesota. Defendant Pacesetter, Inc. ("Pacesetter") is a Delaware corporation with its principal place of business in Sylmar, California. (*Id.*) Pacesetter is a subsidiary of SJM.

4. Standard of Review. Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended

through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 208 (D.Del.1998).

The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin,* 512 F.Supp. 972, 973 (D.Del.1981) (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp.,* 138 F.Supp.2d 565, 567 (D.Del.2001); *Shutte,* 431 F.2d at 25.

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.,* 997 F.Supp. 556, 562 (D.Del.1998); *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.,* 2001 WL 1617186 (D.Del. Nov.28, 2001); *Continental Cas. Co. v. American Home Assurance Co.,* 61 F.Supp.2d 128, 131 (D.Del.1999). Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its " 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P.,* 816 F.Supp. 973, 976 (D.Del.1993).

The Third Circuit Court of Appeals has indicated the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). Although emphasizing that "there is no definitive formula or list of factors to consider," *id.,* the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1925466 (D.Del.)
(Cite as: 2004 WL 1925466 (D.Del.))

(citations omitted).

**\*3** The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

5. Discussion. Defendants assert that this case and the Minnesota Action belong together. Both actions involve cardiac rhythm management (CRM) products used to provide cardiac resynchronization therapy (CRT). According to defendants, judicial resources would be conserved by adjudicating the cases in the same forum. Since both sides have corporate headquarters in Minnesota, it would be convenient to litigate there. Defendants, also, advise that the District of Minnesota is considered to have special expertise in the technology at issue. [FN6]

> FN6. In support, defendants reference this court's 1996 memorandum order in *Pacesetter, Inc. v. Cardiac Pacemakers, Inc.,* Civ. No. 96-232-SLR (D.Del.1996). In addressing a motion to transfer in the case between some of the same litigants at bar, the court granted the motion:
> The court, however is persuaded that transfer of this case to the District of Minnesota is warranted because of Minnesota's familiarity with the technology at issue through past and pending litigation. It is the court's understanding that the District of Minnesota is in a posture to accept such a complex case without prejudice to plaintiffs' interest in a prompt resolution of the matter. Under these unusual circumstances, the court finds that transfer will conserve judicial resources and, therefore, further the interest of justice.
> (*Id.,* emphasis added)

6. Plaintiffs argue that defendants are forum shopping and clearly do not wish to be before this court. (D.I.34) Its first motion was to move this case before a particular judge and, when that was not possible, they withdrew the motion. Plaintiffs assert that defendants have failed to present legitimate reasons to transfer from its choice of forum. Plaintiffs also request that fees and costs associated with the

preparation of its response to the motions be awarded.

7. Weighing the arguments against the *Jumara* balancing test, the court finds that the asserted public and public advantages of moving the case to the District of Minnesota are insufficient. Although two of the parties are headquartered in Minnesota, there is also evidence that all parties conduct business on a nationwide basis and are not restricted in any way from traveling to Delaware. Defendants argue that the public and private factors favor transfer yet offer nothing particularly burdensome or fact specific. Instead, they contend that their concern for conserving judicial resources is the most compelling factor. In the absence of any particular or unusual circumstances, the concern for judicial economy does not warrant a transfer of the case.

Moreover, defendants' concern for judicial economy actually operates against a transfer. Assuming, *arguendo,* that the technology at issue in the Minnesota and the Delaware actions involve essentially the same parties and patents and involve the same legal theories, under the "first filed rule", this court, where the first case was filed, would not be compelled to transfer the case. Instead, the second filed Minnesota Action would be ripe for transfer to this court.

More than fifty years ago, the Third Circuit adopted the "first-filed rule" where "[i]n all cases of federal concurrent jurisdiction the court which first had possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir.1941) (quoting *Smith v. McIver,* 22 U.S. (9 Wheat.) 532, 6 L.Ed. 152 (1824)). Consequently, the second filed action should be stayed or transferred to the court where the first filed action is pending. *Peregrine Corp. Peregrine Indus., Inc.,* 769 F.Supp. 169, 171 (E.D.Pa.1991); *Genfoot, Inc. v. Payless Shoesource, Inc.,* Civ. No. 03-398-SLR, 2003 WL 22953183 (D.Del.2003). The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir.1988). The decision to transfer or stay the second action is within the discretion of the trial court. *Id.* at 972, 977. While the issue of transfer of the Minnesota Action is obviously not before the court, the caselaw reflects the overwhelming preference toward the first-filed case.

**\*4** Plaintiffs, however, have not succeeded on all issues. Specifically, plaintiffs have failed to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1925466 (D.Del.)
**(Cite as: 2004 WL 1925466 (D.Del.))**

demonstrate to the court's satisfaction that an award of attorney's fees and costs is warranted at this time. Although defendants' strategic filing of motions is suspect, it does not rise to the conduct necessitating a fee award, especially when plaintiffs' own conduct, wherein the Minnesota Action was filed within weeks of this filing, suggests similar posturing.

8. Conclusion. For the reasons stated, defendants' motion to transfer (D.I.27) is denied.

Not Reported in F.Supp.2d, 2004 WL 1925466 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:04CV00067 _____ _____ (Docket) (Feb. 02, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 328594 (D.Del.)
(Cite as: 1996 WL 328594 (D.Del.))

# H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
MATSUSHITA BATTERY INDUSTRIAL CO.,
LTD., Toyota Motor Corporation, and Toyota
Motor Sales, U.S.A., Inc., Plaintiffs,
v.
ENERGY CONVERSION DEVICES, INC. and
Ovonic Battery Company, Inc. Defendants.
No. CIV. A. 96-101-SLR.

April 23, 1996.

Kent A. Jordan, of Morris, James, Hitchens &
Williams, Wilmington, Delaware, for plaintiff. Of
Counsel for plaintiff Matsushita Battery Industrial
Co.: Morton Amster, Michael J. Berger, and
Abraham Kasdan, of Amster, Rothstein & Ebenstein,
New York, New York; Of Counsel for plaintiffs
Toyota Motor Corporation and Toyota Motor Sales,
U.S.A., Inc.: Edward W. Greason, and Arthur D.
Gray, of Kenyon & Kenyon, New York, New York.

Bruce M. Stargatt, Josy W. Ingersoll, and John W.
Shaw, of Young, Conaway, Stargatt & Taylor,
Wilmington, Delaware, for defendants. Of Counsel:
Chester T. Kamin, David J. Bradford, and Jeffrey A.
Koppy, of Jenner & Block, Chicago, Illinois;
Lawrence G. Norris, of Rothwell,Figg, Ernst & Kurz,
Washington, D.C.; and Marvin S. Siskind, Vice
President/Patent Counsel, Energy Conversion
Devices, Inc., Troy, Michigan.

MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

I. INTRODUCTION

*1 Plaintiff Matsushita Battery Industrial Co. Ltd.
("MBI") filed this declaratory judgment action on
February 28, 1996. [FN1] Plaintiffs seek a
declaration of invalidity and non-infringement of
Ovonic's United States Patent Number 5,348,822
("'822 patent"). On February 29, 1996, defendants
Energy Conversion Devices, Inc. ("ECD") and
Ovonic Battery Company Inc. ("Ovonic") filed suit

against plaintiffs in the United States District Court
for the Eastern District of Michigan, claiming
infringement of the same patent. Currently before the
court are defendants' motion to stay or dismiss the
declaratory judgment action or, in the alternative, to
transfer the case to the Eastern District of Michigan
(D.I. 6) and plaintiffs' motion to enjoin defendants'
infringement suit in the Eastern District of Michigan.
(D.I. 19) The motions have been fully briefed, and
the court heard oral arguments on April 10, 1996. For
the reasons set forth below, defendants' motion will
be denied and plaintiffs' motion to enjoin will be
granted.

II. BACKGROUND

Defendant ECD and its subsidiary Ovonic are
Delaware corporations whose principal place of
business is Troy, Michigan. (D.I. 8 at Ex. B) Over the
past fifteen years, Ovonic has developed new
technology in the field of rechargeable nickel metal
hydride ("NiMH") batteries, and holds numerous
patents in this area. (D.I. 8 at Ex. B) Batteries made
with this new technology have the advantages of long
life, no memory effect, and no environmentally
hazardous materials. Ovonic has found particular
success in marketing its technology for use in
"consumer batteries" (e.g., batteries for camcorders,
laptop computers, and cellular telephones) and in the
development of a commercially viable electric
vehicle ("EV") battery. (D.I. 8 at Ex. B) In June
1994, Ovonic formed a joint venture with General
Motors Corporation ("GM") to produce and market
batteries for EVs on a worldwide basis. (D.I. 8 at Ex.
B) Ovonic has also been awarded several contracts
by the United States Advanced Battery Consortium
("USABC"), which is composed of Ford Motor
Company, GM, and Chrysler Corporation, to further
develop EV battery technology. (D.I. 8 at Ex. B)

Plaintiff MBI, a Japanese corporation with its
headquarters in Osaka, operates worldwide as one of
the largest producers of batteries. (D.I. 11 at ¶ 3)
MBI has also conducted extensive research and
development in the area of NiMH batteries. Toyota, a
Japanese corporation, and Toyota Sales, which is
incorporated and based in California, have joined
MBI in testing programs for MBI's EV batteries. (D.I.
11 at ¶¶ 4, 5, 16, 17)

In 1992, defendants and MBI negotiated a series of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 2
Not Reported in F.Supp., 1996 WL 328594 (D.Del.)
**(Cite as: 1996 WL 328594 (D.Del.))**

licensing agreements concerning NiMH technology for use in consumer batteries. During those negotiations, the parties apparently discussed licensing EV battery technology as well, but were unable to reach agreement. They did, however, execute a side letter in which they agreed "if necessary and appropriate, to explore the possibility of arriving at mutually acceptable terms for the grant to MBI of patent licenses under ECD/OBC's Hydride Battery Patents for large hydride battery applications such as electric vehicle propulsion." (D.I. 8 at Ex. 1)

**\*2** Between 1992 and 1995, ECD/Ovonic and MBI continued to communicate while working independently to develop NiMH batteries for EV application. The record indicates that fairly frequent correspondence, meetings between engineers from both companies, and an exchange of sample batteries took place during this period. (D.I. 8 at Ex. 1-K)

In May 1995, Stanford Ovshinsky, President and CEO of ECD, contacted Steve Kawauchi, Executive Vice President of MBI, and requested a meeting to discuss ECD's proposal for the licensing of EV battery technology. (D.I. 21 at B109) Two months later, MBI broke off negotiations, indicating through its attorney that it had "no interest in pursuing the ECD/OBC Proposal given to Mr. Kawauchi by Mr. Ovshinsky and also does not have any counterproposal to make to ECD/OBC." (D.I. 21 at B111) In response to this communication, ECD notified MBI that it was prepared to take legal action, ostensibly for patent infringement. (D.I. 8 at Ex. B-2) After a conciliatory reply from MBI and a letter from GM to MBI's parent company urging that negotiations resume, ECD decided not to file suit, and negotiations of some sort apparently continued. (D.I. 8 at Ex. B-4, B-5, B-6, B-7; D.I. 21 at B113-B129)

The final breakdown in negotiations, which led to this suit, occurred after ECD learned that Toyota planned a program for testing EVs in the United States using NiMH batteries manufactured by MBI. On February 5, 1996 ECD sent letters protesting this action to Toyota Sales, Southern California Edison Company (which was involved in the planned project), and MBI. (D.I. 21 at B89-92; D.I. 8 at Ex. B-8) In its letter to MBI, ECD stated, "ECD would urge Matsushita to accelerate its discussions about the possibilities for the GM Ovonic J[oint] V [[[enture]. If a definite plan is developed for GM participation and investment in GM Ovonic, ECD is prepared to resume discussions with MBI to resolve our outstanding issues in a satisfactory manner." (D.I.

8 at Ex. B-8) In response to this communication, ECD received a letter dated February 15 which stated, in its entirety, "Your letter to Steve Kawauchi was received while he is on a business trip out of the country. He will respond to you on his return." (D.I. 8 at Ex. B-9) On February 26, 1996 Ovonic, through its attorney, notified MBI of its belief that MBI was infringing Ovonic's '822 patent by supplying Toyota with EV batteries for testing in the United States. Ovonic demanded that MBI cease and desist or Ovonic would take legal action. (D.I. 8 at Ex. B-10) Two days later, without responding further to either of ECD/Ovonic's letters, MBI filed the instant declaratory judgment action.

## III. DISCUSSION

### A. Dismissal under the Declaratory Judgment Act

Plaintiffs filed this suit pursuant to the Declaratory Judgment Act, 28 U.S.C. § § 2201-02. The Act gives the court before which a declaratory judgment action is brought discretion to hear, or refuse to hear, the suit. *Wilton v. Seven Falls Co.,* 115 S. Ct. 2137 (1995); *Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 936 (Fed. Cir. 1993), *cert. denied,* 114 S. Ct. 1126 (1994); *Samuel Goldwyn, Inc. v. United Artists Corp.,* 113 F.2d 703, 709 (3d Cir. 1940). In general, a court may not dismiss a suit for a declaration of noninfringement on the ground that an infringement suit was subsequently filed. *Genentech,* 998 F.2d at 937; *see generally Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir. 1941), *cert. denied,* 315 U.S. 813 (1942) ("In all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it."). This "first filed rule" gives the district court hearing the first filed case the power to enjoin later filed cases involving the same parties and the same issues. *EEOC v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir. 1988), *aff'd,* 493 U.S. 182 (1990).

**\*3** There are, however, certain recognized exceptions to the first filed rule, and other exceptions may be made "when justice or expediency requires, as in any issue of choice of forum." *Genentech,* 998 F.2d at 937, *citing Kahn v. General Motors Corp.,* 889 F.2d 1078, 1081-83 (Fed. Cir. 1989). Defendants urge the court to find an exception to the first filed rule in this case because plaintiffs engaged in an improper "race to the courthouse" in order to avoid litigating in the Eastern District of Michigan. Defendants maintain that plaintiffs filed this action in bad faith, knowing that defendants were awaiting a response to their request for further negotiations. To

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 328594 (D.Del.)
(Cite as: 1996 WL 328594 (D.Del.))

Page 3

allow this action to proceed, they argue, would penalize good faith efforts to negotiate and reward precipitous litigation. In addition, defendants argue that the comparative convenience of each forum to the parties and nonparty witnesses weighs in favor of dismissing this action in favor of the later filed suit.

Whether a party has filed a declaratory judgment action anticipatorily or in bad faith is a proper factor for the court to consider in deciding whether to dismiss a first filed action. *Serco Services Co., L.P. v. Kelley Co., Inc.,* 51 F.3d 1037, 1039-40 (Fed. Cir. 1995); *Davox Corp. v. Digital Systems Int'l, Inc.,* 846 F. Supp. 144, 148 (D. Mass. 1993); *Bausch & Lomb Inc. v. Alcide Corp.,* 684 F. Supp. 1155, 1158-60 (W.D.N.Y. 1987). In *Serco Services,* the Federal Circuit held that "we cannot say that it was an abuse of discretion to consider that [plaintiff] intended to preempt [defendant's] infringement suit, as the district court found, as one factor in the decision whether to dismiss the declaratory suit in favor of [the] subsequent infringement action." *Serco Services,* 51 F.3d at 1040 (emphasis added).

In the case at bar, the parties have offered conflicting versions of the tenor of their negotiations. Defendants maintain that they had a long and fruitful history of negotiations with plaintiffs, that they were patiently and in good faith awaiting a reply from Mr. Kawauchi, and that they were shocked to discover that plaintiffs had filed suit without having responded to defendants' offer to negotiate. Plaintiffs, on the other hand, characterize their decision to file suit as a reasonable response to defendants' repeated demands that MBI enter into a joint venture, despite MBI's emphatic rejection of previous such demands. Having received a letter from defendants explicitly threatening imminent legal action, plaintiffs argue that they reasonably and in good faith made the decision to file for declaratory judgment.

After reviewing the numerous affidavits and items of correspondence submitted by the parties, the court finds that the record is unclear as to the precise tone of the negotiations between the parties. Although MBI may have acted hastily in filing suit without responding to ECD/Ovonic's February 1996 letters, despite its indications that Mr. Kawauchi would respond, the court cannot conclude from the record before it that an improper race to the courthouse took place. Furthermore, even if plaintiffs' actions could be considered anticipatory, absent any other factors weighing toward dismissal or transfer, the court declines to grant defendants' motion on this ground alone. *See Id.* [FN2]

**B. Transfer of Venue**

**\*4** Title 28, Section 1404(a) provides:

For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Congress intended through Section 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). "The standard under which transfer applications are considered requires district courts to consider the convenience of parties and witnesses, the interest of justice, and whether the action could have been brought in the transferee court." *SportsMEDIA Technology Corp. v. Upchurch,* 839 F. Supp. 8, 9 (D. Del. 1993). The parties do not dispute that the Eastern District of Michigan is a proper venue for this action.

A plaintiff's choice of forum should not be lightly disturbed. As a general rule, "[b]ecause plaintiffs' choice of forum is accorded substantial weight, the burden is on the defendants to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin,* 512 F. Supp. 972, 973 (D. Del. 1981) (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22,25 (3d Cir. 1970), *cert denied,* 401 U.S. 910 (1971) (emphasis added). Plaintiffs' choice of forum is "paramount." *E.g., Wesley-Jessen Corp. v. Pilkington Visioncare,* 157 F.R.D. 215, 216 (D. Del 1993).

1. Convenience of Parties and Witnesses

Defendants contend that "the Eastern District of Michigan is an unusually appropriate and convenient forum for all concerned." They assert that defendants and all of their likely fact witnesses reside in Michigan, that plaintiffs regularly conduct business there, and that third party witnesses, "all relevant files and corporate records," and Ovonic's testing facilities are located in Michigan.

Even if the Eastern District of Michigan were the more convenient trial forum for both the parties and the non-party witnesses, this factor would not be sufficient to compel a transfer. This case is analogous to *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.,* 157 F.R.D. 215 (D. Del. 1993). In that case, a defendant made a similar showing regarding the locations of parties, documents, and nonparty witnesses. The court concluded that transfer was

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 328594 (D.Del.)
**(Cite as: 1996 WL 328594 (D.Del.))**

Page 4

inappropriate for three reasons. First, the court noted that, for a company engaged in business throughout the United States, the claim that litigation away from the most convenient forum is burdensome is somewhat suspect. *Wesley-Jessen,* 157 F.R.D. at 218. Defendants in this case have argued that they do not operate nationally, and that their small size would result in a disproportionate burden on them if they were forced to litigate in Delaware. The record indicates, however, that defendants have attended meetings and negotiations throughout the world. The second factor noted by the court in *Wesley-Jessen* is the incorporation of defendant in Delaware. Here again, the court outlined the heightened burden on such a business. "Absent some showing of a unique or unexpected burden, these corporations should not be successful in arguing that litigation in their state of incorporation is inconvenient." *Id.* Finally, the court noted the somewhat archaic nature of the "convenience of the parties" factor in determining a motion to transfer:

> *5 A third reason for denying the motion to transfer is that technological advances have substantially reduced the burden of having to litigate in a distant forum .... These technologies have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded and can be transferred and have lowered the cost of moving that information from one place to another.

*Id.* The court also notes that discovery in this case will take place throughout the United States and in Japan. The overall burden of litigating this case, therefore, will likely be the same regardless of where the trial itself is to be held. In light of these factors, the court finds that defendants have not demonstrated that litigation in Delaware imposes on them a unique or unexpected burden.

### 2. Interests of Justice

Defendants argue that a transfer is warranted in the interests of justice. In analyzing this claim, the court must consider judicial resources, cost to the parties, access to proof, and the availability of compulsory process. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 821 F. Supp. 962, 966 (D. Del. 1993). No party contends that a transfer would have any impact on judicial resources or cost to the parties. Addressing compulsory process, defendants maintain that several important witnesses, who according to defendants are likely to be reluctant to testify, reside outside the reach of the court's subpoena power. The court addressed an analogous contention in *Critikon,* 821 F. Supp. at 967. In that case, defendant

ha[d] not represented to the [c]ourt that [the third

party witness] would be unwilling to testify at trial voluntarily. Because [the witness] is a former employee of [defendant], ... the [c]ourt must assume that he would be willing to testify absent a subpoena.

In this case, defendants have offered the affidavit of David J. Bradford, who represented defendants in another patent infringement case in this district. Based on his experience in that case, Mr. Bradford asserts that GM, GM-Ovonic, Ford Motor Company, and USABC "will not voluntarily testify or produce documents in this case." (D.I. 29 at Ex. 3) Defendants have not specifically identified any witnesses who have refused to testify; despite Mr. Bradford's opinion, the court does not find defendants' showing of the necessity of compulsory process sufficient to warrant transfer.

With respect to the availability of records, this court held in *Critikon:*

> The location of documents, in the context of access to proof, in a document-intensive case such as this can be misleading. No matter where the trial is held, [defendant's] ... counsel and [plaintiff's] ... counsel will be required to travel to [various places] to select and produce the requested discovery. Regardless of where trial is held, the documents will be copied and mailed to the offices of counsel and subsequently transported to trial.

> *6 821 F. Supp. at 966-67. In light of the wide geographical scope of discovery in this case, the possibility that the nonparties mentioned in Mr. Bradford's affidavit will have relevant evidence and will request protective orders in the Eastern District of Michigan is likewise unpersuasive. For these reasons, the court finds that defendants have not established that this factor compels the transfer of this action.

Based on the record as it presently stands, defendants have failed to demonstrate that the interests of justice dictate transferring this action.

### IV. CONCLUSION

For the forgoing reasons, defendants' motion to stay or dismiss the declaratory judgment action or, in the alternative, to transfer the case to the Eastern District of Michigan will be denied. Plaintiffs' motion to enjoin defendants' infringement suit in the Eastern District of Michigan will be granted. An order consistent with this opinion shall issue.

> FN1. Toyota Motor Corporation ("Toyota") and Toyota Motor Sales, U.S.A., Inc.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 328594 (D.Del.)
(Cite as: 1996 WL 328594 (D.Del.))

("Toyota Sales") were added as plaintiffs in
an amended complaint dated March 7, 1996.
(D.I. 11)

FN2. Defendants also argue that Michigan
is a more convenient forum for the parties
and nonparty witnesses. As discussed fully
in the following section, the court finds this
argument unpersuasive. Thus, the court will
not consider convenience a factor in
deciding whether to make an exception to
the first filed rule.

Not Reported in F.Supp., 1996 WL 328594 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

•           1:96CV00101 _____ _____ (Docket)
(Feb. 28, 1996)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 179991 (D.Del.)
(Cite as: 2003 WL 179991 (D.Del.))

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
MITEQ, INC., Plaintiff,
v.
COMTECH TELECOMMUNICATIONS CORP.,
Defendant.
No. Civ.A. 02-1336-SLR.

Jan. 23, 2003.

MEMORANDUM ORDER

ROBINSON, J.

I. INTRODUCTION

*1 On July 29, 2002, plaintiff Miteq, Inc. filed this action against defendant Comtech Telecommunications, Corp. seeking a declaratory judgment that it does not infringe U.S. Patent No. 5,666,646 ("the '646 patent") owned by a subsidiary of defendant, or that the '646 patent is invalid. (D.I.1) Presently before the court is defendant's motion to dismiss, stay, or transfer this action. (D.I.6) This court has jurisdiction pursuant to 28 U.S.C. § § 1331 and 1338. For the reasons that follow, the motion shall be granted.

II. BACKGROUND

Plaintiff is a Delaware corporation with its principal place of business in Hauppauge, New York. (D.I. 14 at 5) Plaintiff designs and manufactures satellite communications equipment, including the accused infringing products. (Id. at 7) Defendant is a Delaware corporation with its principal place of business in Melville, New York. (D.I.8) Comtech EF Data ("EF Data") is a wholly owned subsidiary of defendant with its principal place of business in Tempe, Arizona. (Id.) EF Data is the assignee of the '646 patent entitled "Radio Frequency (RF) Converter System with Distributed Protection Switching and Method Transfer." (Id.) Defendant and EF Data design and manufacture satellite communications equipment utilizing the technology of the '646 patent.

On April 10, 2002, defendant filed a complaint against plaintiff in the United States District Court for the District of Arizona alleging infringement of the '646 patent. (D.I. 7 at 3) However, defendant asserts that it did not serve plaintiff in the Arizona case until August 1, 2002, in order to "permit a dialogue between the parties." (Id.) Prior to being served in the Arizona case, plaintiff filed this action and served defendant on July 29, 2002, seeking declaratory judgment of non-infringement and invalidity of the '646 patent. (D.I.1) Defendant now seeks to either dismiss this action, stay this case until resolution of the Arizona litigation, or transfer this case to the District of Arizona. (D.I.7)

III. DISCUSSION

More than fifty years ago, the Third Circuit Court of Appeals adopted the "first-filed rule" where "in all cases of federal concurrent jurisdiction the court which first had possession of the subject must decide it." Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir.1941) (quoting Smith v. M'Iver, 22 U.S. (9 Wheat.) 532, 6 L.Ed. 152 (1824)). Consequently, the second filed action should be stayed or transferred to the court where the first filed action is pending. Peregrine Corp. v. Peregrine Indus., Inc., 769 F.Supp. 169, 171 (E.D.Pa.1991); Dippold-Harmon Enterprises, Inc. v. Lowe's Companies, Inc., 2001 U.S. Dist. LEXIS 18547, Civil Action No. 01-532-GMS, 2001 WL 1414868 (D.Del.2001). The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." E.E.O.C. v. University of Pennsylvania, 850 F.2d 969, 971 (3d Cir.1988). The decision to transfer or stay the second action is within the discretion of the trial court. Id. at 972, 977. However, invocation of the rule will usually be the norm, not the exception. Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule. Id. at 979.

*2 In this case, it is undisputed that the first-filed case in Arizona and the present case involve the same patent and the same issues. Therefore, the burden is on plaintiff to present some exceptional circumstances why the court should depart from the first-filed rule. In support of its argument opposing transfer, plaintiff states that all of its relevant witnesses reside in New York, all the documents and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 179991 (D.Del.)
(Cite as: 2003 WL 179991 (D.Del.))

records related to the accused product are in New York, and the "center of gravity" of the case is New York. (D.I. 14 at 6-7) None of these arguments show that there are any exceptional circumstances requiring the court to depart from the first-filed rule.

Furthermore, defendant makes the same arguments in favor of transferring the case to Arizona. It argues that all of its relevant witness, documents, and products are either in or near Arizona. Therefore, by not allowing a transfer, the court would simply be transferring the inconvenience of traveling from plaintiff to defendant. Mere inconvenience to one party does not rise to the level of exceptional circumstances that would require the court to depart from the well-established principles of the first-filed rule. Since the patent litigation action in Arizona was filed first, transfer of the subsequently filed Delaware action will promote judicial administration and consistency of results.

IV. CONCLUSION

For the reasons stated, at Wilmington, this 23rd day of January, 2003, IT IS ORDERED that:

1. Defendant's motion to transfer (D.I.6) is granted.

2. Defendant's motions to dismiss and stay (D.I.6) are denied as moot.

3. The above-captioned action shall be transferred to the United States District Court for the District of Arizona.

Not Reported in F.Supp.2d, 2003 WL 179991 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

•        1:02CV01336 _____ (Docket)
(Jul. 29, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1192641 (D.Del.)
(Cite as: 2004 WL 1192641 (D.Del.))

Page 1

**C**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
PADCOM, INC., Plaintiff,
v.
NETMOTION WIRELESS, INC. and Database
Solutions, Inc., Defendants.
No. Civ. 03-983-SLR.

May 24, 2004.

Josy W. Ingersoll, John W. Shaw, and Adam W.
Poff, of Young Conaway Stargatt & Taylor, LLP,
Wilmington, Delaware, Neil F. Greenblum, Van C.
Ernest, and Jill M. Browning, of Greenblum &
Bernstein, P.L.C., Reston, Virginia, of counsel.

Mary B. Graham, and James W. Parrett, Jr. of
Morris, Nichols, Arsht & Tunnell, Wilmington,
Delaware, John Allcock, M. Elizabeth Day, William
G. Goldman, and Michael G. Schwartz, of Gray,
Cary Ware & Freidenrich, LLP, Palo Alto,
California, of counsel.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 On October 26, 2003, plaintiff Padcom Inc.
("Padcom") filed this patent action alleging
infringement of its United States Patent Nos.
6,418,324 ("the '324 patent") and 6,198,920 ("the
'920 patent") by defendants NetMotion Wireless, Inc.
("NetMotion") and Database Solutions, Inc. ("DSI").
(D.I.1) Padcom also contends that NetMotion
intentionally and wrongfully interfered with
contractual and business relations with potential
customers.

NetMotion has moved to dismiss based on lack of
personal jurisdiction pursuant to Fed.R.Civ.P.
12(b)(2) and improper venue under Fed. R. 12(b)(3).
(D.I.9) DSI has moved to transfer the remaining
portion of the litigation to the Northern District of

California pursuant to 28 U.S.C. § 1404(a). [FN1]
Alternatively, if the court dismisses NetMotion and
declines to transfer the case against DSI, defendants
move to stay this action pending resolution of the
California case. Padcom opposes the motion (D.I.23,
24) and defendants' have filed their reply. (D.I.27,
28)

> FN1. On November 7, 2003, NetMotion and
> DSI filed a declaratory action in the
> Northern District of California mirroring the
> issues raised in this action. By order and
> stipulation dated December 10, 2003, the
> California action was stayed pending
> resolution of this first-filed action.
> NetMotion Wireless, Inc. v. Padcom, Inc.,
> 03-cv-04963-MMC,       (N.D.Ca.2003)
> (D.I.12). A case management conference is
> scheduled for June 18, 2004. (Id., D.I. 19)

II. BACKGROUND

A. The parties

Padcom is a Pennsylvania corporation with its
principal place of business in Bethlehem,
Pennsylvania. Founded in 1989, Padcom is in the
business of developing, making, licensing, selling
and servicing software and hardware products that
enhance connectivity for wireless network uses.
(D.I.1) The patent-in-suit relate to wireless
communications and data transfers between remote
devises and host systems. (D.I.10)

NetMotion is a corporation organized under the laws
of Washington with a principal place of business in
Seattle, Washington. (D.I.11) NetMotion is in the
business of designing, developing and selling
mobility software. Mobility software is client/server
based software that extends the enterprise network to
the mobile environment and allows mobile users on
both wide area and local area networks secure access
to the enterprise application and information. (D.I.10)
NetMotion's corporate office, research and
development facility, and engineering, sales,
marketing and manufacturing facilities are all located
in Seattle. Of NetMotion's 53 employees, 46 reside in
Washington. The other seven employees reside in
Ohio, Pennsylvania, Florida, Georgia, Texas,
California and Illinois. (D.I.11) NetMotion maintains
and supports a web site in Washington. The web site

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1192641 (D.Del.)
**(Cite as: 2004 WL 1192641 (D.Del.))**

Page 2

provides: 1) company and product information; 2) partner information; and 3) download information. None of NetMotion's products are available for purchase through its website; however, free trial versions of NetMotion's software are available for download from the web site. (D.I.12)

On February 2, 2001, a predecessor of NetMotion, WRQ, Inc., entered into a Value Added Reseller ("VAR") agreement with DSI. (D .I. 11, Ex. A) DSI is a Delaware corporation with its principal place of business in Cherry Hill, New Jersey. (D.I.13) DSI does not have an office in Delaware. DSI is in the business of providing integrated enterprise applications, databases and network solutions. DSI is a reseller of NetMotion products, however, DSI has never used, manufactured, sold or offered for sale any NetMotion product in Delaware or elsewhere. D.I. 13 ¶ 6) Pursuant to the VAR agreement, NetMotion has agreed to indemnify DSI.

### III. STANDARD OF REVIEW

*2 Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court may dismiss a suit for lack of jurisdiction over the person. According to the United States Supreme Court,

before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capital Intern. Ltd. v. Rudolph Wolff & Co.,* 484 U.S. 97, 104 (1987). The principle pronounced above is traditionally described as a two-step analysis: First, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendant's right to due process.

Rule 4(e)(1) of the Federal Rules of Civil Procedure states that service of a summons may be effected "pursuant to the law of the state in which the district court is located." The Delaware long-arm statute, 10 Del. C. § 3104(c), has been construed broadly to confer jurisdiction to the maximum extent possible under the due process clause. [FN2] *LaNuova D & B S.p.A. v. Bowe Co. Inc.,* 513 A.2d 764, 768 (Del.1986).

FN2. According to the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out-of-state

accused infringer, the law of the Federal Circuit, "rather than that of the regional circuit in which the case arose," is applicable. *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed.Cir.1995). The Court has instructed that, "in interpreting the meaning of state long-arm statutes, we defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process." *Graphic Controls Corp. v. Utah Med. Prods., Inc.,* 149 F.3d 1382, 1386 (Fed.Cir.1998). The court acknowledges that the Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process analysis, as some courts have done.

However, since the Delaware Supreme Court has not determined that § 3104(c) is coextensive with federal due process, the court must determine whether the exercise of personal jurisdiction is compatible with both the specific requirements of the Delaware long-arm statute and with defendant's constitutional rights to due process. *Intel Corp. v. Silicon Storage Tech., Inc.,* 20 F.Supp.2d 690, 694 (D.Del.1998); *see generally, Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945).

Once a jurisdictional defense is raised, the burden is on the plaintiff to demonstrate with reasonable particularity that sufficient minimum contacts have occurred with between the forum state and defendant to support jurisdiction. [FN3] *Provident National Bank v. California Federal Savings & Loan Assoc.,* 819 F.2d 434, 437 (3d Cir.1987). To meet this burden, the plaintiff must demonstrate either specific or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities within the forum state. In contrast, general jurisdiction does not require that the defendant's connections be related to the particular cause of action, but that the defendant has continuous or systematic contacts with the forum state. *American Bio Medica Corp. v. Penisula Drug Analysis Co, Inc* ., Civ. No. 99-218-SLR, 1999 WL 615175 (D.Del.1999).

FN3. The record reflects that the parties have engaged in limited jurisdictional discovery. (D.I.24, Ex. A, Ex. B)

The Delaware long-arm statute provides that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1192641 (D.Del.)
(Cite as: 2004 WL 1192641 (D.Del.))

Page 3

personal jurisdiction is proper over any nonresident who, in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

*3 (3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c). The above provisions have been construed "liberally so as to provide jurisdiction to the maximum extent possible" in order "to provide residents a means of redress against those not subject to personal service within the State." *Boone v. Oy Partek Ab,* 724 A.2d 1150, 1156-57 (Del.Super.1997).

## IV. DISCUSSION

NetMotion argues that its contacts with Delaware are too attenuated to establish either specific or general jurisdiction under Delaware's long-arm statute. (D.I.10)

Padcom asserts that NetMotion is subject to jurisdiction under three sections of the Delaware long-arm statute: § 3104(c)(1), (c)(4) and (c)(3). Padcom argues that § 3104(c)(1) and (c)(4), confer jurisdiction because NetMotion has repeatedly transacted and solicited business in Delaware. Specifically: (1) NetMotion shipped an infringing product to the Wilmington Police Department to enable them to evaluate the product in anticipation of a sale; (2) NetMotion has contacted Delaware residents by mail, email and telemarketing, either cold calling or in response to inquiries about the product; and (3) NetMotion operates a national interactive web site.

In opposition, NetMotion presents the affidavit of its CFO, Bob Colliton. (D.I.12, 28) Colliton avers:

NetMotion maintains and supports a web site in the state of Washington, but none of NetMotion's

products are available for purchase through NetMotion's web site. NetMotion's web site offers free trial downloads of its software, as well as white papers that outline the capabilities of NetMotion's software products.

NetMotion has not contacted or otherwise engaged any company in Delaware to download a free trial version of NetMotion's software. NetMotion is aware of one trial download of its software from an entity in Delaware--the Wilmington Police Department. This download was not the result of any targeted or direct marketing on the part of NetMotion. Instead, the Wilmington Police Department was directed to NetMotion's web site through an offer that Hewlett-Packard included in the purchase of certain models of their iPAQ products. In particular, Hewlett-Packard included marketing information on a number of third party products on the installation CD for the iPAC. NetMotion was one of the wireless companies that Hewlett-Packard chose to include product information about, with a link to NetMotion's web site for a free trial version of the software. At no time prior to or after this download has any employee contacted the Wilmington Police Department. NetMotion's advertising strategy is national in nature. It is not directed to any particular region, state or company. On occasion, NetMotion has utilized the services of a third party tele-marketing organization to obtain information regarding potential customers. Prospective customers in Delaware may have been contacted by this third party organization.

*4 (D.I.12) He states further that NetMotion has never used, sold, manufactured or offered for sale an accused product in Delaware. In his reply declaration, however, Colliton does acknowledge that in January 2004, NetMotion electronically transmitted its Mobility Connection Newsletter nationwide. Over 12,000 received this material, including 23 entities in Delaware. Nonetheless, Colliton indicates that no revenue was received from the 23 emails. Padcom responds that it is unnecessary to consummate a sale for jurisdictional purposes. *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.,* Civ. No. 99-218-SLR, 1999 WL 615175 (D.Del.1999). Padcom maintains that NetMotion's activities are part of a general business plan to solicit business in Delaware.

The Delaware Supreme Court has interpreted § 3104(c)(1) as a specific jurisdiction provision that requires a nexus between the cause of action and the conduct used as a basis for jurisdiction. *LaNuova D & B S.p.A. v. Bowe Co.,* 513 A.2d at 768. Section

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1192641 (D.Del.)
(Cite as: 2004 WL 1192641 (D.Del.))

Page 4

3104(c)(4) is a general jurisdiction provision that allows the defendants contacts with the forum state to be unrelated to the cause of action. The Federal Circuit has found that when a defendant has "purposefully shipped the accused [product] into [the forum state] through an established distribution channel [n]o more is usually required to establish specific jurisdiction." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed.Cir.1994).

The record reflects that NetMotion made trial versions of products available on its web site for downloading by consumers located anywhere. There is no evidence of any restrictions on location of the download. NetMotion likewise placed its products into the stream of commerce by allowing Hewlett-Packard to include marketing information about NetMotion with a link to a free trial version of its software and a link NetMotion couches the relationship with Hewlett-Packward as one-sided, i.e., "Hewlett-Packward chose to include product information", the court interprets this as a mutually beneficial agreement.

The Third Circuit Court of Appeals recently explored the contacts necessary for a court to have specific jurisdiction over a defendant based on the operation of a web site. *Toys "R" Us, Inc., v. Step Two, S.A.*, 318 F.3d 446 (3d Cir.2003). In so doing, the Court acknowledged the traditional jurisdictional rules have to be adjusted to account for new factual scenarios created by the Internet.

Under traditional jurisdictional analysis, the exercise of specific personal jurisdiction requires that the "plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum." Beyond this basic nexus, for a finding of specific personal jurisdiction, the Due Process Clause of the Fifth Amendment requires (1) that the "defendant ha[ve] constitutionally sufficient minimum contacts with the forum," and (2) that "subjecting the defendant to the court's jurisdiction comports with traditional notions of fair play and substantial justice,"

**\*5** *Id.* at 451 (citations omitted); *see also, Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997) (sliding scale analysis for personal jurisdictional issues in web site cases).

The Third Circuit's test is whether the defendant "intentionally and knowingly transacted business with residents of the forum state, and had significant other contacts with the forum besides those generated by its web site." *Toys "R" Us*, 318 F.3d at 453. There, the Court considered a trademark infringement and

unfair competition action filed pursuant to the Lanham Act, 15 U.S.C. § 1501 *et seq.*, and New Jersey state law. The defendant was a Spanish corporation that owns or franchises toy stores in Spain and nine other countries but none in the United States. The defendant lacked any offices, bank accounts or employees in the United States. Further, the defendant did not direct any advertising or marketing efforts in the United States. The record did reflect that some merchandise for defendant's stores was purchased in the United States. From defendant's Internet web site, consumers could make online purchases; however, the site clearly was intended for users outside of the United States. For example, the price of items was noted in Spanish pesetas and Euros and goods ordered from the site could only be shipped within Spain. The electronic newsletter could be received by anyone with the only requirement being name and email address. In reversing and remanding to the district court on the issue of jurisdictional discovery, [FN4] the Third Circuit recognized that the record was too limited to provide an "occasion to spell out the exact mix of Internet and non-Internet contacts required to support an exercise of personal jurisdiction [,instead,] [t]hat determination should be made on a case-by-case basis by assessing the 'nature and quality of the contacts." *Id.* at 453; (quoting *Zippo*, 952 F.Supp. at 1127). Non-Internet factors that a district court should consider are: business trips to the forum state; telephone and fax communications directed to the forum state; purchase contracts with forum state residents; contracts that apply the law of the forum state; and advertisements in local newspapers. *Toys "R" Us*, 318 F.3d at 453- 454. Other relevant evidence that might support the exercise of personal jurisdiction is that the defendant purposely and knowingly conducted business in the forum state by directly targeting its web site to the state. *Id.* at 454.

> FN4. The district court denied plaintiff the opportunity to conduct jurisdictional discovery to address the defendant's motion attacking jurisdiction.

In light of this authority, the court finds that NetMotion knowingly conducted business with Delaware residents. Discovery has revealed that the Wilmington Police Department at least tried to use the free trial download of NetMotion's mobility software. (D.I.24, Ex. G) The emails between the Wilmington Police Department reflect correspondence directed to correct problems associated with the use of the trial program in order to persuade the user to purchase the alleged

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1192641 (D.Del.)
(Cite as: 2004 WL 1192641 (D.Del.))

Page 5

infringing product. (*Id.*)

*6 Using a third party telemarketer, NetMotion contacted Delaware businesses to solicit business and purchases. NetMotion selected seven Delaware entities [FN5] for contact by a third party telemarketer in the summer of 2003. (D.I.24, Ex. A, pgs.61-64) Additionally, NetMotion specifically targeted Delaware health care facilities. [FN6] NetMotion also mailed promotional materials to a targeted market of public safety organizations. [FN7] The documents were mailed to provide information about the products to encourage purchase. (D.I.24, Ex. A, pgs.44-45) If NetMotion did not intend to have Delaware residents as clients, it could have specifically excluded them from tele-marketers and their direct calling list. The fact that the marketing program did not generate sales belie the fact that attempts were made in Delaware, with knowledge and purpose, to do business.

FN5. The entities were: Dover Police Department, Industrial Affairs Division, Laurel Volunteer Fire Department, New Castle County Police Department, Newark Police-Traffic Division, Delaware State Police, Wilmington Police Department. (D.I. 24, Ex. A p. 61, Ex. K)

FN6. Alfred I. Dupont Hospital, Bayhealth Medical Center at Kent, Beebe Medical Center, Christiana Hospital, Delaware Hospital-Chronically Ill, Delaware Psychiatric Center, Milford Memorial Hospital, Nanticoke Memorial Hospital, Riverside Health Care Center, Saint Francis Hospital, Stockley Center, and the Wilmington VA Medical Center. (D.I.24, Ex. A, p. 89, Ex. M)

FN7. These agencies were identified as: Delaware State Police (Dover), Kent County Emergency Communications, Sussex County Emergency Medical Services, New Castle County Police Department, Wilmington Public Safety, Wilmington Police Department, Delaware State Police (Odessa), Delaware State Police (Wilmington), Newark Police Department. (D.I.24, Ex. A)

Having found jurisdiction proper under the Delaware long-arm statute, the analysis becomes whether the exercise of jurisdiction comports with the Due Process Clause of the United States Constitution. *See*

*Int'l Shoe Co. v. Washington,* 326 U.S. at 310. Due process mandates that the defendant have certain minimum contacts with the forum state to ensure that the lawsuit does not offend "traditional notions of fair play and substantial justice." *Id.* at 316. In *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985), the Supreme Court added the further requirement that the minimum contacts be "purposeful" contacts, noting that "even a single act can support jurisdiction" so long as it creates a "substantial connection" with the forum, in contrast to an "attenuated affiliation." *Id.* at 475 n. 18. Further, the Court has directed that courts consider: 1) whether the defendant reasonably could have anticipated being haled into the forum state's court, *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291-293 (1980); 2) the burden imposed on the defendant by litigating in that forum, *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102 (1987); and 3) plaintiff's interest in the forum state, *id.; see also, Provident National Bank v. California Federal Savings & Loan Assoc.,* 819 F.2d at 437 (Third Circuit held that plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction).

As discussed above, the record reflects NetMotion's web site and the marketing promotion by Hewlett-Packard enabled users to download the accused products anywhere, but importantly in Delaware. By targeting businesses in the state, NetMotion knew that its conduct and connections with Delaware were such that they reasonably should have anticipated being brought to this forum.

## V. MOTION TO TRANSFER

DSI has moved to transfer venue from this district to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a), [FN8] arguing that the declaratory judgment action there provides a more convenient forum for the litigation. Padcom counters that a plaintiff's choice of forum is the paramount consideration in determining a transfer request. *Wesley-Jessen Corp. v. Pilkington Visioncare Inc.,* 157 F.R.D. 215 (D.Del.1993). NetMotion [FN9] argues that the court should transfer the case to the United States District Court for the District of Washington.

FN8. Title 28, Section 8. 1404(a) provides: For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1192641 (D.Del.)
(Cite as: 2004 WL 1192641 (D.Del.))

Page 6

FN9. NetMotion filed a third action in the Superior Court of the State of Washington, King County, alleging that Padcom has tortiously interfered with NetMotion's contracts and business expectancies. *NetMotion Wireless Inc. v. Padcom, Inc.,* 04-cv-622-JCC (W.D. Wa 2004). Padcom removed the matter to the United States District Court for the Western District of Washington on March 24, 2004. *(Id.,* D.I. 1) On April 27, 2004, Padcom moved to transfer to the case to the United States District Court for the District of Delaware or to stay pending resolution of the instant case. *(Id.,* D.I. 8) NetMotion has filed opposition to the transfer motion, to which Padcom has filed a reply. *(Id.,* D.I. 11, 12) On May 4, 2004, Padcom, in the instant action, moved to enjoin prosecution of the subsequently filed action in the Western District of Washington and has requested that the court schedule a Rule 16 Conference. (D.I.33)

*7 Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988); *Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 208 (D.Del.1998). The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin,* 512 F.Supp. 972, 973 (D.Del.1981) (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970), *cert. denied,* 401 U.S. 910 (1971)). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp.,* 138 F.Supp.2d 565, 567 (D.Del.2001); *Shutte,* 431 F.2d at 25.

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.,* 997 F.Supp. 556, 562 (D.Del.1998); *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.,* Civ. No. 01-199-SLR, 2001 WL 1617186 (D.Del.2001). Although transfer of an action is usually considered as less convenient to a plaintiff if the plaintiff has not chosen its " 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of

paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re ML-Lee Acquisition Fund II, L.P.,* 816 F.Supp. 973, 976 (D.Del.1993).

The Third Circuit Court of Appeals has indicated the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). Although emphasizing that "there is no definitive formula or list of factors to consider," *id.,* the court has identified potential factors it characterized as either private or public interest. The private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted).

The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

*8 The court is unpersuaded that the private or public interests warrant a transfer. Both plaintiff and defendant DSI are located within close proximity to this court, in Pennsylvania and New Jersey, respectively. Although defendant NetMotion is located in Seattle, Washington, it is a company trying to conduct business on a nationwide basis, including Delaware. Therefore, consistent with the deference afforded a plaintiff's choice of forum as well as the record established on the jurisdictional discovery issue, the court is satisfied that this litigation can be maintained without undue burden to the parties.

VI. CONCLUSION

For the reasons stated, defendants' motion to dismiss and to transfer (D.I.9) is denied. An order consistent with this memorandum opinion shall issue.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1192641 (D.Del.)
**(Cite as: 2004 WL 1192641 (D.Del.))**

Page 7

Not Reported in F.Supp.2d, 2004 WL 1192641
(D.Del.)

**Motions, Pleadings and Filings (Back to top)**

•       1:03CV00983       (Docket)
(Oct. 27, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 1995 U.S. DIST. LEXIS 22334

**SIEMENS MEDICAL SYSTEMS, INC., a Delaware corporation, and SIEMENS AG, a German corporation, Plaintiffs, v. FONAR CORPORATION, a Delaware corporation, and RAYMOND V. DAMADIAN, M.D. MRI SCANNING CENTERS MANAGEMENT CO., INC., a Delaware corporation, Defendants.**

Civil Action No. 95-261-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*1995 U.S. Dist. LEXIS 22334*

**April 27, 1995, Filed**

**DISPOSITION:** d [*1] Defendants' motion to dismiss, stay or transfer action denied.

**COUNSEL:** For SIEMENS MEDICAL SYSTEMS, INC., plaintiff: Frederick L. Cottrell, III, Robert W. Whetzel, Richards, Layton & Finger, Wilmington, DE.

For FONAR CORPORATION, RAYMOND V. DAMADIAN, defendants: Thomas P. Preston, Duane, Morris & Heckscher, Wilmington, DE.

For SIEMENS MEDICAL SYSTEMS, INC., counter-defendant: Frederick L. Cottrell, III.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM ORDER**

**I. INTRODUCTION**

On April 27, 1995, Siemens Medical Systems, Inc. brought this action in the United States District Court for the District of Delaware against Fonar Corporation ("Fonar") for a declaratory judgment that Siemens had not infringed certain Fonar patents and that Fonar was guilty of certain "inequitable conduct" in securing the patents. On June 15, 1995, Siemens served Fonar and Raymond V. Damadian, M.D. MRI Scanning Centers Management Co. ("RVDC") an amended complaint adding a patent infringement claim against both defendants. In its amended complaint, Siemens seeks a declaratory judgment that U.S. Letters patent *5,061,897* (the " '897 patent"), [*2] *4,675,609* (the " '609 patent"), *4,871,966* (the " '966 patent"), *3,789,832* (the " '832 patent"), and

*4,616,180* (the " '180 patent") are invalid and not infringed.

Presently before the court is defendants' motion to dismiss, stay or transfer the case from this District to the United States District Court for the Eastern District of New York pursuant to *28 U.S.C. § 1404.* (D.I. 13) For the reasons discussed below, the motion will be denied.

**II. BACKGROUND**

Plaintiff Siemens Medical Systems, Inc. ("Siemens") is a Delaware corporation with its principal place of business in Iselin, New Jersey. Siemens is a wholly-owned subsidiary of plaintiff Siemens AG, a German corporation. Defendants Fonar and RVDC are Delaware corporations. Fonar is headquartered in Melville, New York, in the Eastern District of New York.

On September 2, 1992, Fonar filed a patent infringement suit in the United States District Court for the Eastern District of New York against, inter alia, General Electric Company ("the GE litigation"), alleging, inter alia, infringement of the '966 patent and the '832 patent. By letter dated October 7, 1992, Fonar charged Siemens with infringement [*3] of these same patents and stated its intent to file suit for infringement upon the completion of the GE litigation.

In April of this year, prior to the jury verdict on liability in the GE litigation, Siemens instituted the present action. On June 14, 1995, plaintiffs' amended complaint was filed. Two days later, on June 16, 1995, Fonar filed an action in the Eastern District of New York charging Siemens with infringement of the '897 patent and the '609 patent, which Fonar had asserted against defendant Hitachi in the GE litigation. n1 On June 19, 1995, Fonar filed the pending motion.

1995 U.S. Dist. LEXIS 22334, *

n1 Hitachi settled at the outset of trial. (D.I. 13 at 7 n.2)

## III. DISCUSSION

### A. Motion to Dismiss

Title 28, Section 2201 provides, in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights or other legal relations of any interested party seeking such declaration, whether or not further [*4] relief is or could be sought.

*28 U.S.C. § 2201*(a). Ordinarily, where an action has been filed in two district courts, the court in which the action was first filed will preside over the litigation. *Optical Recording Corp. v. Capitol EMI Music, Inc., 803 F. Supp. 971 (D.Del. 1992)*. Defendants contend, however, that "where a party purposefully misuses [Section 2201] to engage in forum shopping, dismissal is the rule." (D.I. 13 at 9, citing *Pacific Employers Ins. Co. v. M/V Captain W.D. Cargill, 751 F.2d 801, 804 (5th Cir.)*, cert. denied, *474 U.S. 909, 88 L. Ed. 2d 244, 106 S. Ct. 279 (1985)* and *Ven-Fuel, Inc. v. Dep't of the Treasury, 673 F.2d 1194, 1195 (11th Cir. 1982)*). Here, defendants argue,

> Siemens' misuse of the Declaratory Judgment Act is obvious . . . . It clearly did not file this suit to avoid accrual of avoidable damages. Those damages have already multiplied unchecked over the three years of willful infringement that have elapsed since Siemens was offered license terms in October 1992. Nor did Siemens sue here to obtain an early adjudication of its rights. It knew [*5] Fonar was prepared to file suit immediately after the GE Litigation concluded if Siemens failed to negotiate a license in good faith. . . . Siemens' earnest race to the courthouse began only when the GE Litigation drew to its inevitable close.

(Id. at 10-11) (citation omitted).

Moreover, defendants argue, the first filed rule may be abandoned where inconsistent with judicial and litigant economy and the just and effective disposition of disputes. (Id. at 13, citing *Serco Services Co., L.P. v. Kelly Co., Inc., 51 F.3d 1037, 34 U.S.P.Q.2d 1217 (Fed.Cir. 1995)*). In the present case, defendants aver, "the inventions at issue are exceedingly complex," and "the technology of the patents in suit is the same as the technology and patents involved in the later-filed action in the Eastern District of New York[,]" and "the same technology involved in the GE Litigation recently concluded before Judge Waxler in that District." (D.I. 13 at 12-13) According to defendants, the Eastern District's "familiarity with the subject matter of the litigation will reduce the expenditure of judicial resources in the handling of this case, a consideration which 'alone is sufficient [*6] . . . to justify departure from the first filed rule.'" (Id. at 13, quoting *Optical Recording, 803 F. Supp. at 974*). Defendants contend that Siemens' amendment of its complaint to add a claim for infringement of the '180 patent does not change the analysis, primarily because the '180 patent is "self-evidently similar to those involved in the GE Litigation." (D.I. 13 at 15)

Lastly, defendants argue that a declaratory judgment action can be dismissed "in the interests of judicial economy and for the convenience of the parties and the witnesses." (D.I. 13 at 17) (citations omitted). According to defendants, "the convenience of the litigants virtually compels dismissal here," in that (1) Siemens is headquartered in Iselin, New Jersey; (2) Fonar has no offices in Delaware; and (3) documents and witnesses relating to the patents at issue, their prosecution, and Fonar's enforcement of them, are all located in New York. n2 Should any witness be unwilling, defendants contend, their attendance at trial could be compelled only in New York. (D.I. 13 at 18)

> n2 According to defendants, all four of the named inventors on the '966 patent, all three of the named inventors on the '609 patent, and the "lead" inventor on the '897 patent reside in the Eastern District of New York, the named inventor on the '832 patent resides in Woodbury, New York, and the inventor on the '180 patent "apparently lived in Ohio at the time the patent was issued." (D.I. 13 at 7-9)

[*7]

Plaintiffs respond that they chose the Delaware forum not for reasons of forum shopping, but because it was more convenient than the New York forum, and that dismissal is therefore unwarranted. (D.I. 14 at 11-12)

(citations omitted) Moreover, plaintiffs argue, the prose-cution of this action in Delaware is not inconsistent with judicial and litigant economy and the just and effective disposition of disputes. According to plaintiffs,

> because many of the patents and issues involved in the prior GE cases are differ-ent from those here, little if any judicial economy would be achieved by having this case tried in the Eastern District of New York. Of the four Fonar patents in-volved here, only two were tried in the prior GE case, and they were tried to a jury rather than the judge. The Siemens' patent was not before that court at all.

(Id. at 18) (emphasis in original). As for effective dispo-sition, plaintiffs contend, the Delaware court "moves faster [than the New York court], as reflected in the An-nual Report of the Administrative Office of the United States Courts (the "AO Report"), and is recognized as having a commendable familiarity with complex litiga-tion in general, [*8] and with patent litigation in par-ticular." (D.I. 14 at 12) Nor, plaintiffs argue, does the convenience of the parties or witnesses warrant dis-missal. According to plaintiffs, (1) Melville, New York is only 147 miles from Wilmington; (2) Wilmington is "more centrally located, which makes it more accessible to Siemens' New Jersey and North Carolina locations, and avoids the judicially-recognized and infamous traffic congestion in New York City and Long Island;" and (3) the location of documents is irrelevant. (D.I. 14 at 7, 12)

Based on the record before it, the court concludes that defendants have failed to meet their burden of dem-onstrating that the relevant factors warrant dismissal. Plaintiffs have not clearly engaged in forum shopping in contravention of the purpose behind the Declaratory Judgment Act. Nor is the court persuaded that reasons of judicial and litigant economy, the just and effective dis-position of disputes or the convenience of the parties or witnesses justify dismissal. Therefore, defendants' mo-tion to dismiss will be denied.

**B. Motion to Transfer**

Title 28, Section 1404(a) provides:

> For the convenience of the parties and the witnesses in the interests [*9] of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer accord-ing to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988). "The standard under which transfer ap-plications are considered requires district courts to con-sider the convenience of parties and witnesses, the inter-est of justice, and whether the action could have been brought in the transferee court." *SportsMEDIA Technol-ogy Corp. v. Upchurch*, 839 F. Supp. 8, 9 (D.Del. 1993). The parties do not dispute that this action could have been brought in the Eastern District of New York.

As a general rule, "because plaintiffs' choice of fo-rum is accorded substantial weight, the burden is on the defendants to establish that the balance of convenience of the parties and witnesses strongly favors the defen-dants." *Bergman v. Brainin*, 512 F. Supp. 972, 973 (D.Del. 1981) (citing [*10] *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), cert denied, 401 U.S. 910, 27 L. Ed. 2d 808, 91 S. Ct. 871 (1971)) (emphasis added). Plaintiffs' choice of forum is "paramount." See, e.g., *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 216 (D.Del 1993). Indeed, the deference to the plaintiffs' choice of forum will apply so long as the plaintiffs have chosen the forum for some legitimate rea-son. See, *Tuff-Torg. Corp v. Hydro-Gear Ltd. Partner-ship*, 882 F. Supp. 359, 362 (D.Del. 1994). n3 In the pre-sent case, plaintiffs have a legitimate reason for their forum choice: the fact that defendants are incorporated in Delaware. n4 Therefore, even if Delaware is not plain-tiffs' "home turf" for purposes of this action, deference to plaintiffs' choice will still apply.

> n3 See also *In re M.L.-Lee Acquisition Fund II, L.P.*, 816 F.Supp 973, 976 (D.Del. 1993) (em-phasis added) ("While transfer of a case will gen-erally be regarded as less inconvenient to a plain-tiff if the plaintiff has not chosen its "home turf" or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of jus-tice weigh strongly in favor of transfer.").

[*11]

> n4 As this court has previously held:

> At the outset, the fact that [defendant] incorporated in Delaware should not be disregarded lightly. By incorporating in Delaware, it can be assumed that [defendant] desired the benefits that it believed Delaware provides to chartered corporations. [Defendant] chose Delaware as its legal home and should not now complain that another [party] has decided to sue [defendant] in Delaware.

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 821 F. Supp. 962, 965 (D.Del 1993).*

With respect to convenience of the parties and witnesses, defendants contend that (1) Siemens' headquarters in Iselin, New Jersey is "a comparatively short distance from the Eastern District of New York courthouse in Hauppauge[;]" and (2) "documents and witnesses relating to the patents, their prosecution, and Fonar's enforcement of them, are all located in New York. (D.I. 13 at 18) As noted above, plaintiffs counter that (1) Melville, New York is only 147 miles from Wilmington; (2) Wilmington is "more centrally located, which makes it more [*12] accessible to Siemens' New Jersey and North Carolina locations, and avoids the judicially-recognized and infamous traffic congestion in New York City and Long Island;" and (3) the location of documents is irrelevant. (D.I. 14 at 7, 12)

Even if the Eastern District of New York were the more convenient trial forum for both the parties and the non-party witnesses, this would not be sufficient to compel a transfer. This court in Wesley-Jessen analyzed an analogous situation in which a defendant made a similar showing, and concluded that transfer was inappropriate for three reasons. First, the court noted that, being a company engaged in business throughout the United States, the claim that litigation away from the most convenient forum is burdensome is somewhat suspect. *157 F.R.D. at 218.* Defendant Fonar is similarly situated with business operations throughout the United States. (D.I. 14 at 6) The second factor noted by the court in Wesley-Jessen is the incorporation of defendant in Delaware. Here again, the court outlined the heightened burden on such a business. "Absent some showing of a unique or unexpected burden, these corporations should not be successful in [*13] arguing that litigation in their state of incorporation is inconvenient." Id. Finally, the court noted the somewhat archaic nature of the "convenience of the parties" factor in determining a motion to transfer.

A third reason for denying the motion to transfer is that technological advances have substantially reduced the burden of having to litigate in a distant forum . . .. These technologies have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded and can be transferred and have lowered the cost of moving that information from one place to another.

Id. The court finds that defendants have not demonstrated that litigation in Delaware imposes on them a unique or unexpected burden.

The final factor to be addressed by the court is the interest of justice. In analyzing this factor the court looks to judicial resources, cost to the parties, access to proof, and the availability of compulsory process. *Critikon, 821 F. Supp. at 966.* With respect to judicial resources, defendants argue that the New York court's "familiarity with the subject matter of this litigation [*14] will reduce the expenditure of judicial resources in the handling of this case . . .." (D.I. 13 at 13) As noted above, plaintiffs respond that the Delaware court "moves faster, as reflected in the . . . AO Report . . ., and is recognized as having a commendable familiarity with complex litigation in general, and with patent litigation in particular." (D.I. 14 at 12) Specifically, plaintiffs contend,

> the AO Report for the 12-month period ending in September 1994 reported that each judge in the Eastern District of New York had 663 pending cases. That case load is more than four times the 155 pending cases per judge in the District of Delaware. The AO Report also indicated that the median time from filing to trial in civil cases is 26 months in the Eastern District of New York, compared with 16 months in the District Court of Delaware.

(Id. at 18) (emphasis in original). Moreover, plaintiffs argue,

> because many of the patents and issues involved in the prior GE cases are different from those here, little if any judicial economy would be achieved by having this case tried in the Eastern District of

New York. Of the four Fonar patents involved here, only two [*15] were tried in the prior GE case, and they were tried to a jury rather than the judge. The Siemens' patent was not before that court at all.

(Id.) (emphasis in original).

Based on these arguments, the court is not persuaded that this case would be resolved in the Eastern District of New York more efficiently or expeditiously than in the District of Delaware. The efficient use of judicial resources does not require the transfer of this case.

Addressing compulsory process, defendants argue that "should any [of the New York] witnesses prove to be unwilling, their attendance at trial can be compelled only if the trial proceeds in New York." (D.I. 13 at 18) These witnesses include "most of the named inventors of the patents in issue . . .." (D.I. 19 at 5) Plaintiffs respond that "Fonar has not provided a single example of a witness who is unwilling to attend trial in Delaware." According to plaintiffs, the patent inventors specifically identified by defendants are all employed by Fonar, and their attendance can be compelled regardless of the reach of this court's subpoena power. (Id. at 20)

The court agrees with plaintiffs that here, as in *Critikon, 821 F. Supp. at 967*, [*16] defendants

> ha[ve] not represented to the court that [the witnesses] would be unwilling to testify at trial voluntarily. [To the extent these witnesses are] ... employee[s] of [Fonar], ... the court must assume that [they] would be willing to testify absent a subpoena.

Accordingly, the court finds that this factor does not weigh strongly in defendants' favor.

Defendants make no specific argument concerning the cost to the parties, and the court is not persuaded that the net cost of litigating in Delaware will be significantly greater than that of litigating in the Eastern District of New York.

With respect to access to proof, defendants contend that transfer is appropriate because "documents and witnesses relating to the patents at issue, their prosecution, and Fonar's enforcement of them, are all located in New York." (D.I. 13 at 18) Plaintiffs respond that

discovery by document production and deposition normally proceeds in patent cases without regard to the location of the forum, in that documents are either made available for inspection where they are kept by the producing party, or copies are simply provided to the requesting party's counsel. [*17] Depositions normally proceed where the witness is located or at counsel's office. . . . Fonar's counsel is located in Minnesota . . ..

(D.I. 14 at 19-20)

As this court held in Critikon:

> The location of documents, in the context of access to proof, in a document-intensive case such as this can be misleading. No matter where the trial is held, [defendants'] ... counsel and [plaintiffs'] ... counsel will be required to travel to [various places] to select and produce the requested discovery. Regardless of where trial is held, the documents will be copied and mailed to the offices of counsel and subsequently transported to trial.

*821 F. Supp. at 966-67*. For this reason, the court finds that defendants have not established that this factor compels the transfer of this action.

Based on the record as it presently stands, defendants have failed to demonstrate that the interests of justice dictate transferring this action.

**C. Motion to stay**

Lastly, defendants urge this court to stay these proceedings pending resolution of the action Fonar filed against Siemens in the Eastern District of New York after plaintiffs filed the present action. [*18] (D.I. 13 at 19). The court finds no basis in this record for granting this relief and, therefore, the motion to stay will be denied.

**IV. CONCLUSION**

Therefore, at Wilmington, this 1st day of November, 1995, IT IS ORDERED that defendants' motion to dismiss, stay or transfer this action (D.I. 13) is denied.

Sue L. Robinson

United States District Judge