# Exhibit A

Fried, Frank, Harris, Shriver & Jacobson
350 South Grand Avenue, 32nd Floor
Los Angeles, CA 90071
Tel: 213.473.2000
Fax: 213.473.2222
www.ffhsj.com

Direct Phone: 213.473.2005
robbida@ffhsj.com

December 17, 2001

ALH Holdings LLC
489 Fifth Avenue
New York, NY 10017
Attention: Shalom E. Lamm

Shamrock Holdings of California, Inc.
4444 Lakeside Drive, 2nd Floor
Burbank, CA 91505
Attention: George J. Buchler



Re:    **ALH Holdings LLC**

Gentlemen:

    This letter will confirm that ALH Holdings LLC ("ALH") has asked Fried, Frank, Harris, Shriver & Jacobson ("Fried Frank") to advise it regarding the possible sale of ALH II, Inc., a Delaware corporation ("ALH II"), or all or substantially all of the assets of ALH II and its subsidiaries (the "ALH Representation").

    As you are aware, Fried Frank (i) has been retained by ALH as previously described in our August 10, 2001 letter and also only for the limited purpose of the ALH Representation, (ii) represented Shamrock Holdings of California, Inc. and its affiliates (collectively, "Shamrock") in connection with Shamrock's investment in the Class A Membership Interests (as defined in the Operating Agreement) of ALH and (iii) may in the future represent Shamrock in various other matters, including, without limitation, in connection with Shamrock's investment in ALH and other matters which may be adverse to ALH.

    You have previously acknowledged and agreed that the interests of ALH with respect to the ALH Representation are consistent with the interests of Shamrock and do not give rise to any conflict of interest. In accordance with California Rules of Professional Conduct Rule 3-310 (copy attached), we are requesting the written consent of ALH and Shamrock in order to act for ALH in this matter.

A Partnership
Including
Professional
Corporations

New York
Washington
Los Angeles
London
Paris

75379

Fried, Frank, Harris, Shriver & Jacobson

ALH Holdings LLC
December 17, 2001
Page 2

It is agreed and understood that Fried Frank can continue to represent and act for Shamrock as set forth above.

If you have any questions concerning this matter please feel free to call me. In deciding whether to consent to the representation and waive any conflict you should not hesitate to consult separate counsel.

If you determine to consent, please confirm your agreement to do so by signing and returning the enclosed copy of this letter.

Very truly yours,

David K. Robbins

Agreed and consented to by:

ALH HOLDINGS LLC

By:     LION ALH CAPITAL, LLC, its Manager

    By: _____
        Shalom E. Lamm, its duly
        authorized signatory

SHAMROCK HOLDINGS OF CALIFORNIA, INC.

By: _____
    George J. Buchler, Vice President and
    Assistant Secretary

73161

# Rule 3-310. Avoiding the Representation of Adverse Interests

(A) For purposes of this rule:

(1) "Disclosure" means informing the client or former client of the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the client or former client;

(2) "Informed written consent" means the client's or former client's written agreement to the representation following written disclosure;

(3) "Written" means any writing as defined in Evidence Code section 250.

(B) A member shall not accept or continue representation of a client without providing written disclosure to the client where:

(1) The member has a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; or

(2) The member knows or reasonably should know that:

(a) the member previously had a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; and

(b) the previous relationship would substantially affect the member's representation; or

(3) The member has or had a legal, business, financial, professional, or personal relationship with another person or entity the member knows or reasonably should know would be affected substantially by resolution of the matter; or

(4) The member has or had a legal, business, financial, or professional interest in the subject matter of the representation.

(C) A member shall not, without the informed written consent of each client:

(1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or

(2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or

(3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

(D) A member who represents two or more clients shall not enter into an aggregate settlement of the claims of or against the clients without the informed written consent of each client.

(E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

(F) A member shall not accept compensation for representing a client from one other than the client unless:

(1) There is no interference with the member's independence of professional judgment or with the client-lawyer relationship; and

(2) Information relating to representation of the client is protected as required by Business and Professions Code section 6068, subdivision (e); and

(3) The member obtains the client's informed written consent, provided that no disclosure or consent is required if:

(a) such nondisclosure is otherwise authorized by law; or

(b) the member is rendering legal services on behalf of any public agency which provides legal services to other public agencies or the public.

73136

# Exhibit B

From:    George Buchler
Sent:    Tuesday, April 15, 2003 10:49 AM
To:      Avie Arenson (E-mail); Shalom Lamm (E-mail)
Cc:      Gene Krieger; Bruce Stein
Subject: Atlantic Builders Sale

Dear Avie and Shalom,

After several weeks of intensive negotiations and consideration of all proposals to acquire ABI, Mattamy's bid proved to be the strongest. A non-binding term sheet has been executed. They offered the most money $17MM (possibly $17.5MM if some tax issues can be resolved), all cash at closing instead of an earnout, and both Gene and I believe that they are a "real" buyer. They will commence due diligence almost immediately and the closing should occur by June 30. We should try to keep this arrangement as confidential as possible. We do not want the losing bidders (MDC and Toll) to be aware of who the winner is and at what price.

As you know, Mattamy very much wants to employ both Bill Holt and Bill Lanius. While we're sorry to lose Bill Lanius, this is an excellent opportunity for his career and will allow him to stay in Jacksonville, which both he and his wife very much want to do. We are therefore willing to release Bill from his contract to pursue this opportunity. Mattamy has agreed to cooperate with us in assuring that Bill's departure causes a minimum of disruption.

The funds received from this sale are sorely needed by ALH. The transaction will allow repayment of shareholder loans, give us the ability to resolve the Bowden litigation and have some additional capital to help us either improve the profitability of Mulvaney and Bowden or be held in reserve for the Swiss Re obligation.

Please let me know if I can answer any questions regarding the deal..

B00102

# Exhibit C

## Gene Krieger

**From:**  Gene Krieger

**Sent:**  Thursday, May 08, 2003 3:28 PM

**To:**  'Isaac M. Neuberger'

**Cc:**  'Michael G. Jesselson (E-mail)'; 'Michel Konig (E-mail)'; 'Arenson Avie'; George Buchler

**Subject:** RE: ALHII-

Dear Isaac:

This is in response to your May 5th email, below.  I do not believe it productive for me to respond on a point by point basis, but I do want to let you know that I disagree with a number of the items in your message.  The issues raised in your email, as well as the reasons and terms for any potential sale, will be discussed at the next meeting of the Supervisory Board to be held next week.  To the extent your clients have any questions, suggestions or concerns, I encourage them to have Avie raise them at that meeting.

Sincerely,

Gene

-----Original Message-----
**From:** Isaac M. Neuberger [mailto:IMN@NQGRG.com]
**Sent:** Monday, May 05, 2003 12:54 PM
**To:** Gene Krieger; George Buchler
**Cc:** Michael G. Jesselson (E-mail); Michel Konig (E-mail); Arenson Avie
**Subject:** RE: ALHII-

I write to you again on behalf of the Class B Investors. They feel very strongly that the proposed sale of Jacksonville is NOT in the best interests of ALH for a number of reasons. They fear that the remaining divisions in N.C. and Memphis do not generate sufficient cash flow to support the ALH operations and that as a consequence, a forced sale of NC and/or Memphis today will result is a complete write-off of the equity in ALH. This is all the more troubling, since it appears that the motivation, in seeking a sale NOW is being driven solely by Shamrock's stated intention to exit this investment and to be able to be repaid the advances that it ( and we) have made, regardless of the long term impact that this strategy may have on ALH.

We also understand that the auditors are considering a "going concern" caveat to their opinion, which will cast a further cloud on ALH's continued viability. The Jacksonville operation is such a key contributor to ALH's bottom line that we urge you to carefully consider this approach.

We all understand that Shamrock controls. With this control goes certain fiduciary obligations. We appreciate the desire and interest to "salvage" your loans, but we also feel that by doing what we understand you propose to do NOW, that while your loans (and ours) may be repaid, that it will threaten ALH's continued survival and will jeopardize our investment.

We think that recommendation that we hear from Messrs. LaGuardia and Lanius that "stay the course" is imperative and that Shamrock's desire to exit notwithstanding, that we do what Management has advised.

As we have repeated many times, we think that we need to continue the operations as is and that we need to withdraw ALH and its component entities from the "block", as a continuation of what is clearly a "busted auction" is only hurting the Company.

Very truly yours.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIALITY NOTICE: This e-mail message from Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. contains CONFIDENTIAL INFORMATION for the use ONLY of the intended recipient and may constitute a communication protected by the attorney-client privilege. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that any use, distribution, or copying of this communication or its contents is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (410) 332-8550.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

11/1/2004

# Exhibit D

**From:**    George Buchler
**Sent:**    Friday, August 02, 2002 6:43 PM
**To:**    'Arenson Avie'
**Cc:**    Gene Krieger
**Subject:** RE: Bowden

Thank you for your note and also the thoughts you conveyed to us on our recent phone call. Let me try to clarify the direction in which we're going and some of the assumptions we're making --

　1. Gene and I met today with Tony Avila. The Bowden transaction, if it were to go forward as presently contemplated, would generate a minimum of $6MM of cash, after payment of the debt and the Bowden costs. There is a possibility that this amount could be higher - perhaps as much as $8MM. Obviously, this is a substantial sum of money and would relieve some of the ongoing liquidity issues at ALH, and also dispose of the ugly Bowden litigation.

　2. We are executing the Exclusivity Letter with Walter Industries. The agreement only gives them a period of exclusivity in which to do their due diligence. By no means, have we entered into an agreement or made a commitment to sell Bowden. Indeed, they are not obligated to provide even an initial draft of the Purchase Contract for 45 days.

　3. Gene and I would very much like to see you and the other "B" investors proceed with the process of purchasing the interests of the "A" investors. The Walter Exclusivity Letter does not prevent you from proceeding. If the time frame for your group moving is indeed "weeks" as you suggested in your earlier e-mail, we can certainly accommodate you. Your group may even want us to proceed with a sale of Bowden which would provide substantial cash to ALH, as this would lessen your capital needs.

Gene and I appreciate your input and value your opinion on ALH. We have enjoyed our association as investors and directors. We hope that you can indeed purchase our interests in the very near term and that you then enjoy much success at ALH.

Gene and I are both available next week to discuss this further, if you wish. Sorry for catching you last week at home after you had had a rough business and travel schedule.

Sincerely,


George


-----Original Message-----
**From:** Arenson Avie [mailto:avie@arenson.co.il]
**Sent:** Thursday, August 01, 2002 2:14 AM
**To:** George Buchler; Gene Krieger
**Cc:** Shalom Lamm; isaac m. neuberger
**Subject:** bowden

　Hello George and Gene:

　These are the estimates of the incremental sale of the divisions. I think it decisively, shows that we would be in a lose-lose situation if we went this path. Please get back to me.

B00029

| | | |
|---|---|---|
| Bowden Sale: | $ | 19,000,000 |
| 1.50% costs of trans: | $ | 285,000 |
| Net Sale: | $ | 18,715,000 |
| | | |
| Inventory Loans: | $ | 9,452,800 |
| Bowden Litigation: | $ | 4,000,000 |
| | | |
| Total Net Proceeds: | $ | 5,262,200 |
| | | |
| ABI Sale: | $ | 30,000,000 |
| 1.50% costs of trans: | $ | 450,000 |
| Net Sale: | $ | 29,550,000 |
| | | |
| Inventory Loans: | $ | 12,295,244 |
| | | |
| Total Net Proceeds: | $ | 17,254,756 |
| | | |
| From 2 Sales: | | |
| Pay Down of Debt/Obligations: | $ | 25,748,044 |
| Net Cash from Sales: | $ | 22,516,956 |
| | | |
| Pay Down Swiss Re: | $ | 20,000,000 |
| Balance for MHI ops/LGA: | $ | 2,516,956 |
| | | |
| Obligations Remaining: | | |
| Swiss Re: Deb | $ | 7,500,000 |

B00030

MHI Inventory Debt:           $        27,210,000

DA Gardens/Shamrock Loan:           $      1,187,499

Investor Loan:                $        4,354,200

        Total Debt Load:      $        40,251,699

best regards

Avie

B00031

# Exhibit E

## George Buchler

| | |
|---|---|
| From: | George Buchler |
| Sent: | Wednesday, April 09, 2003 8:13 AM |
| To: | 'Arenson Avie' |
| Cc: | Gene Krieger |
| Subject: | RE: Summary of Proposals for ABI |

Let me try to respond to your concerns --

  1. The Bill Lanius requirement is contained in one of the three offers that we are currently negotiating. At this point, since we don't even know which offer will be accepted, it is premature to debate this issue.

  2. As you know, ALH has a severe liquidity crisis - pending litigation, inability to take down huge land positions in Florida, Swiss Re/Wachovia debt, etc. To provide some liquidity, ABI is being sold. If you or any of the other "B" investors can propose an alternative solution, as always, we're ready to listen. As we were unsuccessful in selling the company intact, selling it piecemeal appears to be the only other alternative to meet ALH's obligations.

As we get closer to accepting one of the offers, we'll keep you informed.

-----Original Message-----
From: Arenson Avie [mailto:avie@arenson.co.il]
Sent: Tuesday, April 08, 2003 1:50 AM
To: George J. Buchler (George Buchler)
Subject: Fw: Summary of Proposals for ABI


----- Original Message -----
From: "Arenson Avie" <avie@arenson.co.il>
To: "Shalom Lamm" <slamm@lionlamm.com>

Sent: Tuesday, April 08, 2003 10:48 AM
Subject: Re: Summary of Proposals for ABI


> Hello Shalom:
>
> Any deal which involves losing  Bill Lanius is  absolutely
> unacceptable.
An
> improved Toll is probably the best offer of the three bad offers.. If
> the majority of the Board decides so,  Personally  I  think that it is
> not in the best interests of ALHII to  sell itself piecemeal.
>
> Avie
> ----- Original Message -----
> From: "Shalom Lamm" <slamm@lionlamm.com>
> To: "Arenson Avie" <avie@arenson.co.il>
> Sent: Monday, April 07, 2003 6:19 PM
> Subject: FW: Summary of Proposals for ABI
>
>
> > Please read below. Any thoughts?
> >
> > --
> > Shalom Lamm
> > Phone: 516-565-0868
> > fax: 516-565-1819
> > cell: 917-282-7375

1

```
> >
> > ----------
> > From: "Anthony Avila" <tavila@jmpsecurities.com>
> > Reply-To: "Anthony Avila" <tavila@jmpsecurities.com>
> > Date: Mon, 7 Apr 2003 11:33:00 -0400
> > To: slamm@lionlamm.com
> > Cc: shaynes@jmpsecurities.com
> > Subject: Summary of Proposals for ABI
> >
> > Gentlemen,
> >
> > Here is the summary of proposals from 3 interested parties:
> >
> > Mattamy: $16mm at closing, 50pct of premium allocated to goodwill,
> retention
> > of Holt and Lanius by Mattamy (Lanius retention is unusual). We have
> > not
> yet
> > countered. Initially, Mattamy verbally told me $20mm for the equity.
Also,
> > we must confirm that they are stopping negotiations with another
> > Jacksonville builder.
> >
> > MDC: $13.5mm at closing plus the after tax profits from Jan 1 to
closing.
> > Should be around $1.5mm additional. Plus they are offering $3000 per
home
> > for 1000 homes starting with closings in 2006. A very delayed
> > earnout.
> >
> > Toll: $14mm at closing plus 50pct of EBITDA above $6.5mm in year 1,
$7.5mm
> > in year 2 and $8.5mm in year 3 capped at $2mm per year.
> >
> > MDC appears firm on price. Toll could move up by $500k on the up
> > front
and
> a
> > slight lowering of ebitda hurdles. This should garner us another
> > $1mm
> total
> > consideration. Mattamy has not been countered yet and I assume they
> > will
> pay
> > $18 or $19mm up front.
> >
> > Of course, any one person could walk on the deal after detail due
> diligence.
> > The challenge is to pick the most likely closer. Mdc is offering to
> > move
> the
> > fastest but has the likely lowest consideration.
> >
> > Let's discuss today.
> > Tony Avila
> > Managing Director
> > JMP Securities
> > One Embarcadero, Suite 2100
> > San Francisco, CA 94111
> > Phone: 415.835.8924
> > Mobile: 415.720.8503
> >
> >
```

2

## George Buchler

| | |
|---|---|
| **From:** | George Buchler |
| **Sent:** | Wednesday, April 09, 2003 8:13 AM |
| **To:** | 'Arenson Avie' |
| **Cc:** | Gene Krieger |
| **Subject:** | RE: Summary of Proposals for ABI |

Let me try to respond to your concerns --

   1. The Bill Lanius requirement is contained in one of the three offers that we are currently negotiating.  At this point, since we don't even know which offer will be accepted, it is premature to debate this issue.

   2. As you know, ALH has a severe liquidity crisis - pending litigation, inability to take down huge land positions in Florida, Swiss Re/Wachovia debt, etc.  To provide some liquidity, ABI is being sold.  If you or any of the other "B" investors can propose an alternative solution, as always, we're ready to listen.  As we were unsuccessful in selling the company intact, selling it piecemeal appears to be the only other alternative to meet ALH's obligations.

As we get closer to accepting one of the offers, we'll keep you informed.

-----Original Message-----
From: Arenson Avie [mailto:avie@arenson.co.il]
Sent: Tuesday, April 08, 2003 1:50 AM
To: George J. Buchler (George Buchler)
Subject: Fw: Summary of Proposals for ABI


----- Original Message -----
From: "Arenson Avie" <avie@arenson.co.il>
To: "Shalom Lamm" <slamm@lionlamm.com>

Sent: Tuesday, April 08, 2003 10:48 AM
Subject: Re: Summary of Proposals for ABI


> Hello Shalom:
>
> Any deal which involves losing  Bill Lanius is  absolutely
> unacceptable.
An
> improved Toll is probably the best offer of the three bad offers.. If
> the majority of the Board decides so.  Personally  I  think that it is
> not in the best interests of ALHII to sell itself piecemeal.
>
> Avie
> ----- Original Message -----
> From: "Shalom Lamm" <slamm@lionlamm.com>
> To: "Arenson Avie" <avie@arenson.co.il>
> Sent: Monday, April 07, 2003 6:19 PM
> Subject: FW: Summary of Proposals for ABI
>
>
> > Please read below. Any thoughts?
> >
> > --
> > Shalom Lamm
> > Phone: 516-565-0868
> > fax: 516-565-1819
> > cell: 917-282-7375

1

```
> >
> > ----------
> > From: "Anthony Avila" <tavila@jmpsecurities.com>
> > Reply-To: "Anthony Avila" <tavila@jmpsecurities.com>
> > Date: Mon, 7 Apr 2003 11:33:00 -0400
> > To: slamm@lionlamm.com
> > Cc: shaynes@jmpsecurities.com
> > Subject: Summary of Proposals for ABI
> >
> > Gentlemen,
> >
> > Here is the summary of proposals from 3 interested parties:
> >
> > Mattamy: $16mm at closing, 50pct of premium allocated to goodwill,
> retention
> > of Holt and Lanius by Mattamy (Lanius retention is unusual). We have
> not
> yet
> > countered. Initially, Mattamy verbally told me $20mm for the equity.
Also,
> > we must confirm that they are stopping negotiations with another
> > Jacksonville builder.
> >
> > MDC: $13.5mm at closing plus the after tax profits from Jan 1 to
closing.
> > Should be around $1.5mm additional. Plus they are offering $3000 per
home
> > for 1000 homes starting with closings in 2006. A very delayed
> > earnout.
> >
> > Toll: $14mm at closing plus 50pct of EBITDA above $6.5mm in year 1,
$7.5mm
> > in year 2 and $8.5mm in year 3 capped at $2mm per year.
> >
> > MDC appears firm on price. Toll could move up by $500k on the up
> > front
and
> a
> > slight lowering of ebitda hurdles. This should garner us another
> > $1mm
> total
> > consideration. Mattamy has not been countered yet and I assume they
> > will
> pay
> > $18 or $19mm up front.
> >
> > Of course, any one person could walk on the deal after detail due
> diligence.
> > The challenge is to pick the most likely closer. Mdc is offering to
> > move
> the
> > fastest but has the likely lowest consideration.
> >
> > Let's discuss today.
> > Tony Avila
> > Managing Director
> > JMP Securities
> > One Embarcadero, Suite 2100
> > San Francisco, CA 94111
> > Phone: 415.835.8924
> > Mobile: 415.720.8503
> >
> >
```

2

# Exhibit F

Subject: FW: ALHII

Somehow, the first transmission was returned - let's see if this works.

-----Original Message-----
From: George Buchler
Sent: Monday, September 15, 2003 11:34 AM
To: 'Arenson Avie'; Gene Krieger; Bruce Stein
Cc: Shalom Lamm
Subject: RE: ALHII

Dear Avie,

To answer your concerns, I believe we need a meeting - either telephonic or in person. We would be happy to discuss your and the other "B" investors' concerns. Let us know your preference for a time and place for a meeting, and we will try to accommodate.

When we meet, propose a plan to solve the issues you and your colleagues perceive. The plan must be concrete and include a program for implementation - who, how, when, etc. The Board will of course give it serious consideration.

ALH continues to experience significant operating and financial issues. Shamrock - Bruce, Gene and I - literally spend time every single day dealing with these issues on behalf of all the investors. This week Bruce is travelling to Memphis and Charlotte to attend to their operating issues, while Gene and I work on the Bowden sale and finalizing the ABI closing. It's disturbing and frustrating that there appears to be no understanding or recognition of the Shamrock efforts to try and keep ALH moving in the right direction for everyone's benefit.

We look forward to our meeting.

George

-----Original Message-----
From: Arenson Avie [mailto:avie@arenson.co.il]
Sent: Friday, September 12, 2003 2:13 AM
To: George Buchler; Eugene I. Krieger (Gene Krieger)
Cc: Shalom Lamm
Subject: ALHII

I have followed with great interest the recent exchange between Shalom and George on the pressing issues facing us.
There are a number of issues that are of grave concern to me and the other B investors.
* Swiss Re- We fear that contacting Swiss Re without Jon Zich, who clearly has the relationship that has proven productive, is a serious misstep ....Moreover, to do so without a comprehensive plan that makes sense is fraught with risk. Both John and Bill are fine people, but in light of their individual circumstances neither can represent ALH with Swiss Re, Wachovia or Ohio, in a meaningful way. We need a management plan that is

credible, before we approach any lender.

* Ohio Savings Bank- We discussed this potential issue, when we met in Charlotte. You discounted our concern. We fear that LaGuardia's current efforts to buy Memphis, hardly makes him the appropriate person to gain Ohio's confidence for North Carolina. We suspect that Ohio might know about LaGuardia's efforts, as they are very connected to the home building industry, where this is not a secret.

* Memphis - The fall off in July and August results is very troubling, especially since the results of other homebuilders has been so robust. The pale of a potential sale seems to be affecting us severely.

We have limited input and no actual control over your decisions on how ALH is to be run. We think that the piecemeal sale approach was inappropriate and appears to be leading to ominous results. We again ask you to reconsider what you are doing and to take steps to remedy the matters referred to above

Avie Arenson

# Exhibit G

From:        Arenson Avie
Sent:        Wednesday, December 18, 2002 3:08 AM
To:          Gene Krieger; George Buchler
Cc:          Michael G. Jesselson (E-mail); Michel Konig (E-mail); Isaac M. Neuberger
Subject:     ALHII

Dear George and Gene:
Since our last conference call, (Gene, George, Isaac and me) the meeting with Swiss Re
occurred and I know that you were gratified (as were we) to hear of the extension.
Obviously, we now need to get Wachovia to accept the Swiss Re "bond" or find a different
bank that will. There is real doubt on our part that Wachovia will not see this as an
opportunity to force us out of the Bank. Wachovia is in fact First Union (in the merger,
First Union bought Wachovia and changed their name) and they have shown NO interest in
continuing their relationship with ALH.

In that connection and in connection with expanding the Ohio Savings Bank facilities, we
remain gravely concerned that the sale of Bowden will seriously impair the viability of
ALH, as while it might serve some short term end and may fund the Bowden litigation
settlement, which we feel is not a "priority", it will hinder and cripple ALH going
forward. The "auction"
process is busted and it has made  ALH look even weaker.

The Bs are prepared to fund needed working capital. We appreciate that the As have made a
decision to exit and are NOT prepared to invest additional amounts. Since we fear that we
have been placed in a liquidation mode,  the Bs, in an effort to save their investment and
seize an opportunity (that the As either do not believe is there or that they choose not
to pursue) have been willing to offer the As a limited sum to exit and it is that amount
that we need to agree upon.

What the Bs simply can not accept is to allow the As to liquidate ALH in a piecemeal
fashion.

That said, we need to conclude a buy-out of the As on mutually acceptable terms or
recommit ourselves to running ALH in a positive and forward looking manner and abandon,
for the time being, the notion of a sale.

I look forward to hearing from you.

Avie

1

B00042