**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

SHAMROCK HOLDINGS OF )
CALIFORNIA, INC., SHAMROCK )
CAPITAL ADVISORS, INC., EUGENE I. )
KRIEGER, GEORGE J. BUCHLER and )
BRUCE J. STEIN, )
)  Civ. No. 04- 1339-SLR
                Plaintiffs, )
)
        v. )
)
AVIE ARENSON, SELK, LLC, LAUREL )
EQUITY GROUP, LLC, J12ALH )
ASSOCIATES, A. ARENSON )
HOLDINGS, LTD. AND D.A. )
GARDENS, LTD., )
)
                Defendants. )

## REPLY TO COUNTERCLAIMS

Plaintiffs and Counterclaim Defendants Shamrock Holdings of California, Inc. ("Shamrock"), its affiliate, Shamrock Capital Advisors, Inc. ("SCA"), Eugene I. Krieger ("Krieger"), George J. Buchler ("Buchler") and Bruce J. Stein ("Stein") (collectively the "Shamrock Parties"), by and through their attorneys, as and for their reply to the Amended Counterclaims (the "Counterclaims") of Defendants and Counterclaim Plaintiffs A. Arenson Holdings, Ltd. ("Arenson Holdings"), D.A. Gardens, Ltd. ("D.A. Gardens"), J12ALH Associates ("J12"), SELK, LLC ("SELK") and Laurel Equity Group, LLC ("Laurel") (collectively the "Counterclaimants"), hereby state as follows:

1.    Deny the allegations in paragraph 1 except admit that Counterclaimants purport to be the Class B members of ALH Holdings, LLC ("ALH"), a Delaware limited liability company,

that Shamrock holds a majority of the Class A membership interest in ALH and that the Class A members have the right to designate three of the five members of ALH's Supervisory Board.

2.      Deny the allegations in paragraph 2.

3.      Deny the allegations in paragraph 3, except admit that Counterclaimants purport to plead direct and derivative claims in the alternative.

4.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4, except admit on information and belief that Arenson Holdings is an Israeli corporation, that Arenson Holdings is a Class B member of ALH, that Arenson Holdings holds approximately 8% of the Class B membership interest in ALH, that the principal place of business of Arenson Holdings is in Israel, and that Arenson Holdings has transacted certain business in Delaware.

5.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5, except admit on information and belief that D.A. Gardens is a Class B member of ALH, that D.A. Gardens holds approximately 8% of the Class B membership interest in ALH, and that D.A. Gardens has transacted certain business in Delaware.

6.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6, except admit on information and belief that J12 is a New York general partnership, the general partners of which are Erica Jesselson and Jays Twelve, LLC, a Delaware limited liability company, that J12 is a Class B member of ALH, that J12 has invested approximately $1.47 million in the equity of ALH, that J12 holds approximately 17% of the Class B membership interest in ALH, and that J12 has transacted certain business in Delaware.

7.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7, except admit on information and belief that SELK is a limited liability

2

company organized under Delaware law, that SELK's members are Shalom Lamm and NACA

Holding Inc. ("NACA"), that Shalom Lamm is a citizen of New York, that NACA was

incorporated in the British Virgin Islands, that SELK was initially a Class B member of ALH

holding approximately 33% of the Class B membership interest in ALH, and that SELK has

transacted certain business in Delaware.

8.    Deny knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 8, except admit on information and belief that Laurel is a limited

liability company organized under the laws of the state of Delaware, that Laurel's members are

Sallervale Company ("Sallervale"), Mark Frankel and Chesky Frankel, that Mark Frankel is a

citizen of New Jersey, that Chesky Frankel is a citizen of New York, that Sallervale is a

Bahamian corporation, that Laurel is a Class B member of ALH holding approximately 33% of

the Class B membership interest in ALH, and that Laurel has transacted certain business in

Delaware.

9.    Deny the allegations in paragraph 9, except admit that ALH is a limited liability

company organized under Delaware law, that ALH is a holding company that did not conduct its

daily business activities in Delaware, and that through certain wholly-owned subsidiaries, ALH

was engaged in the home-building business in Florida, Tennessee and North Carolina.

10.    Deny the allegations in paragraph 10, except admit that Shamrock is a California

corporation, that it is engaged in business as an investor and as a sponsor of certain investment

funds, that it has its principal place of business at 4444 Lakeside Drive, Burbank, California, and

that it is indirectly wholly owned by the Roy E. Disney family.

11.    Deny the allegations in paragraph 11, except admit that SCA is a Delaware

corporation wholly-owned by Shamrock, that it has its principal place of business at 4444

3

Lakeside Drive, Burbank, California, and that engages in merchant banking, investment advisory and related activities.

12.     Deny the allegations in paragraph 12, except admit that Krieger is Vice-Chairman and Chief Operating Officer of Shamrock, that he has performed substantial services for SCA, that he serves as a Class A Representative on ALH's Supervisory Board, that he is a citizen of the state of California, and that he has served as a director of certain of ALH's subsidiaries.

13.     Deny the allegations in paragraph 13, except admit that Buchler is President and Chief Executive of Shamrock's Real Estate Division, that he is a Vice President and the Chief Financial Officer of Shamrock, that he has performed substantial services for SCA, that he serves as a Class A Representative on ALH's Supervisory Board, that he is a citizen of the state of California, and that he has served as a director of certain of ALH's subsidiaries.

14.     Deny the allegations in paragraph 14, except admit that Stein is Director of Real Estate for Shamrock, that he has performed substantial services for SCA, that he serves as one of the Class Representatives on ALH's Supervisory Board, and that he is a citizen of the state of California.

15.     Deny the allegations in paragraph 15, except admit that the Counterclaims are part of the same case or controversy as the Shamrock Parties' Complaint herein and further state that paragraph 15 asserts legal conclusions to which no answer is required.

16.     Deny the allegations in paragraph 16, except admit that ALH was formed in June 1998 to engage in the home-building business, that ALH II, Inc. ("ALH II") was formed to be the parent company of all of ALH's operating subsidiaries, and that ALH II was used as the vehicle for obtaining debt financing for ALH's operations and acquisitions.

17.    Deny the allegations in paragraph 17, except admit that as a result of the closing of the transaction that formed and funded ALH, ALH became the sole indirect stockholder of Atlantic Builders, Inc. ("ABI"), which operated in the Jacksonville, Florida area.

18.    Admit the allegations in paragraph 18.

19.    Admit the allegations in paragraph 19.

20.    Deny the allegations in paragraph 20.

21.    Deny the allegations in paragraph 21, except admit that Lion ALH Capital LLC ("Lion LLC") was the Initial Manager of ALH pursuant to § 6.1(a) of ALH's Operating Agreement.

22.    Admit the allegations in paragraph 22.

23.    Admit the allegations in paragraph 23.

24.    Admit the allegations in paragraph 24.

25.    Deny the allegations in paragraph 25, except admit that in the summer of 2001, in connection with the settlement between ALH and Lamm and certain of Lamm's affiliates and their employees (the "Lion LLC Settlement"), which was unanimously approved by ALH's Supervisory Board, including Class B Representative Avie Arenson ("Arenson"), Stein, an employee of Shamrock, was designated by the Class A members of ALH to fill the seat on the Board from which Jonathan Zich had resigned.

26.    Deny the allegations in paragraph 26, except admit that the Operating Agreement contains the language quoted in paragraph 26 and refer to the Operating Agreement for its complete terms.

27.     Deny the allegations in paragraph 27, except admit that the Operating Agreement contains the language quoted in paragraph 27 and refer to the Operating Agreement for its complete terms.

28.     Deny the allegations in paragraph 28.

29.     Admit the allegations in paragraph 29.

30.     Deny the allegations in paragraph 30, except admit that certain members of ALH entered into a loan agreement with ALH II dated April 6, 2000 (the "2000 Loan Agreement") and refer to the 2000 Loan Agreement for its complete terms, and further admit that Shamrock loaned $1,633,334 pursuant to the 2000 Loan Agreement, and that according to the 2000 Loan Agreement, A. Arenson Holdings, Inc. loaned $166,666 and Lion & Lamm Capital, LLC loaned $200,000.

31.     Deny the allegations in paragraph 31, except admit that ALH II's obligations under the 2000 Loan Agreement were guaranteed by various ALH II subsidiaries, including ABI, Bowden Building Corporation ("BBC") and Mulvaney Homes, Inc. ("MHI").

32.     Admit the allegations in paragraph 32.

33.     Deny the allegations in paragraph 33, except admit that certain Class A and Class B members of ALH entered into a loan agreement with ALH II dated May 7, 2002 (the "2002 Loan Agreement") for a maximum loan of $4,375,000 and refer to the 2002 Loan Agreement for its complete terms, and further admit that Shamrock loaned $1,964,800 and that according to the promissory notes issued in connection with the 2002 Loan Agreement, D.A. Gardens loaned $312,500, The Erica Jesselson CLAT loaned $312,500 and SELK loaned $625,000.

34.     Deny the allegations in paragraph 34.

35.    Deny the allegations in paragraph 35 except admit that in the summer of 2001, in connection with the Lion LLC Settlement, which was unanimously approved by ALH's Supervisory Board, including Arenson as Class B Representative, the Class A members of ALH were given the right to fill the seat on the Board from which Jonathan Zich had resigned.

36.    Deny the allegations in paragraph 36, except admit that in the summer of 2001, in connection with the Lion LLC Settlement, which was unanimously approved by ALH's Supervisory Board, including Arenson as Class B Representative, Stein was designated by the Class A members of ALH to fill the seat on the Board from which Jonathan Zich had resigned.

37.    Deny the allegation in paragraph 37.

38.    Deny the allegations in paragraph 38.

39.    Deny the allegations in paragraph 39, except admit that, in connection with the Lion LLC Settlement, and with the unanimous approval Supervisory Board, including Arenson as Class B Representative, ALH entered into a consulting agreement with SCA dated July 1, 2001 (the "Consulting Agreement"), and further admit that pursuant to an engagement letter dated March 20, 2002 (the "JMP Engagement Letter"), which was unanimously approved by the Supervisory Board, including Arenson as Class B Representative, ALH and ALH II (collectively the "Company") engaged Jolson Merchant Partners ("JMP") to provide financial advisory and investment banking services in connection with the possible sale of the Company, and further admit that Shamrock had previous business dealings with certain persons at JMP,  and further admit that the law firm of Fried, Frank, Harris, Shriver & Jacobson, LLP ("Fried Frank") has from time to time represented Shamrock and SCA and that, pursuant to certain conflict waivers, Fried Frank has represented ALH in certain matters including the sale of ABI and BBC.

40.    Deny the allegations in paragraph 40, except admit that ALH and SCA are parties to the Consulting Agreement and that the Consulting Agreement was unanimously approved by the Supervisory Board, including Arenson as Class B Representative, and refer to the Consulting Agreement for its complete terms.

41.    Deny the allegations in paragraph 41.

42.    Deny the allegations in paragraph 42.

43.    Deny the allegations in paragraph 43, except admit that Krieger, Buchler, and Stein have all done substantial work for SCA, that they are highly placed officers in Shamrock, and that in various capacities and circumstances they have had various fiduciary duties to certain persons and entities.

44.    Deny the allegations in paragraph 44, except admit that JMP and the Company are parties to the JMP Engagement Letter, which was unanimously approved by the Supervisory Board, including Arenson as Class B Representative, and refer to the JMP Engagement Letter for its complete terms.

45.    Deny the allegations in paragraph 45, except admit that except admit that Fried Frank has from time to time represented Shamrock and SCA and that, pursuant to certain conflict waivers, Fried Frank has represented ALH in certain matters, including the sale of ABI and BBC.

46.    Deny the allegations in paragraph 46, except admit that, at the March 24, 2004 meeting of ALH's Supervisory Board, Arenson expressed a concern that there might be a conflict of interest on the part of Fried Frank because Fried Frank also represented Shamrock, that Fried Frank explained that it was representing ALH and the Supervisory Board in connection with the possible sale of BBC and not ALH's members separately, that Fried Frank

noted that ALH had waived any potential conflict of interest and that the waiver had been approved by the Supervisory Board prior to Fried Frank's representation of ALH, and that Fried Frank invited the Supervisory Board Representatives to contact Fried Frank or its Tennessee co-counsel with any concerns or questions.

47.    Deny the allegations in paragraph 47.

48.    Deny the allegations in paragraph 48, except admit that Fried Frank represented ALH in connection with the sale of ABI and BBC.

49.    Deny the allegations in paragraph 49, except admit that in connection with the sale of MHI, ALH was represented by outside counsel other than Fried Frank.

50.    Deny the allegations in paragraph 50, except admit that in 2001, because of, *inter alia*, ALH's ongoing financial problems and disappointing performance, ALH's Class Representatives, including Arenson, decided that it would be in ALH's best interests to consider selling ALH's operations.

51.    Deny the allegations in paragraph 51, except admit that the Company retained JMP pursuant to the JMP Engagement Letter and refer to the JMP Engagement Letter for its complete terms.

52.    Deny the allegations in paragraph 52.

53.    Deny the allegations in paragraph 53.

54.    Deny the allegations in paragraph 54.

55.    Deny the allegations in paragraph 55.

56.    Deny the allegations in paragraph 56.

57.    Deny the allegations in paragraph 57, except admit that certain of the Shamrock Parties were involved in discussions with a possible buyer of BBC during the summer of 2002.

58.     Deny the allegations in paragraph 58 and refer Arenson's July 30, 2002 email to Buchler and Krieger for its complete contents.

59.     Deny the allegations in paragraph 59, except admit that Arenson's July 30, 2002 email to Buchler and Krieger states that ALH's Class B members "would like to continue the ALH operation with Shamrock" and "if Shamrock is unwilling to continue, we are prepared to explore in a very serious and expedited fashion a buy-out of Shamrock's position," and refer to the email for its complete contents.

60.     Deny the allegations in paragraph 60, except admit that Shamrock expressed an interest in selling its interests in ALH to ALH's Class B members, and that certain of the Shamrock Parties were involved in a possible sale of BBC.

61.     Deny the allegations in paragraph 61, except admit there were communications between Shamrock and representatives of ALH's Class B members concerning the possibility of the Class B members acquiring the Class A interests in ALH, including Shamrock's interests, that an agreement was not reached, and that an email from the Class B members' legal counsel, Isaac M. Neuberger, Esq. ("Neuberger"), mentioned a possible price for the entire Class A interest in ALH, including the outstanding loans owed by ALH II to the Class A members, that valued the equity in ALH at a negative number.

62.     Deny the allegations in paragraph 62, except admit that Arenson sent Buchler and Krieger an email dated December 18, 2002 containing the language quoted in paragraph 62, and refer to the email for its complete contents.

63.     Deny the allegations in paragraph 63.

64.     Deny the allegations in paragraph 64, except admit that in February 2003, Arenson and Neuberger met with Krieger and Buchler in Charlotte, North Carolina, and further

admit that, at this February 2003 meeting, Arenson and Neuberger discussed the possibility of

ALH's Class B members acquiring the Class A members' interests in ALH.

65.    Deny the allegations in paragraph 65.

66.    Deny the allegations in paragraph 66.

67.    Deny the allegations in paragraph 67.

68.    Deny the allegations in paragraph 68, except admit that Fried Frank has from time

to time represented Shamrock and SCA and that, pursuant to certain conflict waivers, Fried

Frank has represented ALH in certain matters, including the sale of ABI and BBC, and further

admit that, at the March 24, 2004 meeting of ALH's Supervisory Board, Arenson expressed a

concern that there might be a conflict of interest on the part of Fried Frank because Fried Frank

also represented Shamrock, that Fried Frank explained that it was representing ALH and the

Supervisory Board in connection with the possible sale of BBC and not ALH's members

separately, that Fried Frank noted that ALH had waived any potential conflict of interest and that

the waiver had been approved by the Supervisory Board prior to Fried Frank's representation of

ALH, and that Fried Frank invited the Supervisory Board Representatives to contact Fried Frank

or its Tennessee co-counsel with any concerns or questions.

69.    Deny the allegations in paragraph 69, except admit that, after many months of

effort, no buyer was for ALH as a whole was found, that ALH had pressing liquidity and capital

needs, and that efforts to find suitable buyers for ALH's operations were made.

70.    Deny the allegations in paragraph 70, except admit that in an email dated August

1. 2002, Arenson purported to estimate certain effects of selling certain of ALH's operations, and

refer to the email for its complete contents.

71.     Deny the allegations in paragraph 71, except admit that certain of the Shamrock Parties disagreed with certain aspects of Arenson's August 1, 2002 email, and further admit that ALH entered into an exclusivity letter that gave a possible buyer of BBC a period in which to do due diligence, but did not commit to a sale of BBC or prevent ALH's Class B members from proceeding with a proposal to acquire ALH's Class A interests.

72.     Deny the allegations in paragraph 72, except admit that certain pending litigation involving BBC (the "Bowden Litigation") was an impediment to the possible sale of BBC

73.     Deny the allegations in paragraph 73.

74.     Deny the allegations in paragraph 74.

75.     Deny the allegations in paragraph 75, except admit that ALH was experiencing a severe liquidity crisis and that selling ABI would provide some needed liquidity, and refer to Buchler's April 9, 2002 email to Arenson for its complete contents.

76.     Deny the allegations in paragraph 76, except admit that in April 2003, ALH executed a non-binding term sheet with Mattamy Homes, Ltd., including its affiliates ("Mattamy"), which had made the strongest bid for ABI, that the sale of ABI would allow repayment of the member loans, give ALH the ability to resolve the Bowden Litigation, and provide some additional capital to help improve the profitability of MHI and BBC or be held in reserve for ALH's obligations to Swiss Reinsurance America Corporation ("Swiss Re"), and that Mattamy wanted to employ two ALH executives, William B. Holt and William R. Lanius ("Lanius"), and refer to Buchler's April 15, 2003 email to Arenson for its complete contents.

77.     Deny the allegations in paragraph 77, except admit that Neuberger, purporting to act on behalf of ALH's Class B members, sent Krieger and Buchler an email dated May 5, 2003 containing the language quoted in paragraph 77, and refer to the email for its complete contents.

78.     Deny the allegations in paragraph 78, except admit that there was a meeting of ALH's Supervisory Board on May 14, 2003 and that at that meeting, the possible sale of ABI and the possible settlement of the Bowden Litigation were discussed.

79.     Deny the allegations in paragraph 79, except admit that, at the meeting of ALH's Supervisory Board on May 14, 2003, the need for funds for a possible settlement of the Bowden litigation was discussed.

80.     Deny the allegations in paragraph 80, except admit that, at the meeting of ALH's Supervisory Board on May 14, 2003, Buchler discussed the application of the estimated net proceeds from the possible sale of ABI, which were approximately $16 million subject to escrow amounts, that the estimated cost of settling the Bowden Litigation was approximately $5 million, and that the remaining $11 million would be applied to repay the loans made by certain of ALH's members under the 2000 and 2002 Loan Agreements, to the extent permitted under ALH's other credit agreements, to pay down ALH's bank debt and to support operations at ALH's other subsidiaries.

81.     Deny the allegations in paragraph 81, except admit that Shamrock sent the members of the Supervisory Board a notice of special meeting, dated June 23, 2003, pursuant to § 6.2(d) of ALH's Operating Agreement, concerning a meeting to discuss, *inter alia*, the proposed sale of ABI, and that the members of the Board waived any notice requirement in connection with the June 26, 2003 meeting of ALH's Supervisory Board.

82.     Deny the allegations in paragraph 82, except admit that at the June 26, 2003 meeting of ALH's Supervisory Board, JMP gave an overview of its efforts to find purchasers for ALH's various subsidiaries and assets and that Fried Frank, as counsel to ALH, made a presentation concerning the terms of the proposed purchase agreement in connection with the

sale of ABI, and further admit that, during the meeting, Arenson questioned whether it would be better for ALH to raise additional equity rather than sell the assets of ABI, and suggested that ALH's existing members might consider investing more capital in ABI.

83. Deny the allegations in paragraph 83, except admit that, in response to Arenson's statements referred to in ¶ 82 above, Buchler pointed out that (1) ABI had pressing liquidity needs it would be unable to meet in the near future, (2) the consummation of the sale of ABI would permit the conclusion of the settlement of certain pending litigation that had arisen in connection with the purchase of BBC, and (3) no other proposals for funding or acquiring ABI, including proposals from the Class B Members or Arenson himself, had been made.

84. Deny the allegations in paragraph 84.

85. Deny the allegations in paragraph 85, except admit that ALH's Supervisory Board voted in favor of the sale of ABI, with Arenson voting against the sale and Lamm abstaining, and further admit that Lamm requested that the Board reconsider the proposed sale later in the day, asserting that he had not had sufficient time to review the text of the proposed resolutions, whereupon ALH's counsel discussed with the Board in greater detail the substance of the proposed resolutions and the Board further reviewed and considered such resolutions.

86. Deny the allegations in paragraph 86, except admit that, in connection with the sale of ABI, JMP received a fee of $300,000, and further admit that Shamrock received a bonus of $200,000 which was approved by Arenson and Lamm acting as a separate special committee and which Arenson characterized as an expression of thanks on behalf of all of ALH's Class B members.

87. Deny the allegations in paragraph 87, except admit that some of the proceeds of the sale of ABI were used to repay the loans made pursuant to the 2000 and 2002 Loan

Agreements, that such repayment was unanimously approved by ALH's Supervisory Board,

including Arenson as Class B Representative, that Buchler discussed such use of the proceeds of

the possible sale of ABI at the May 14, 2003 Board meeting, and refer to Buchler's April 9, 2003

and April 15, 2003 emails for their complete contents.

88.     Deny the allegations in paragraph 88.

89.     Admit the allegations in paragraph 89.

90.     Deny the allegations in paragraph 90, except admit that the exploration of

possible sale transactions involving BBC continued after the closing of the sale of ABI, and that

John Laguardia ("Laguardia"), who was president and chief operating officer of ALH II, and Jeff

Sweeney ("Sweeney"), who was president of BBC, broached several possibilities for such a

transaction.

91.     Deny the allegations in paragraph 91, except deny knowledge or information

sufficient to form a belief as to all actions of Laguardia and Sweeney.

92.     Deny the allegations in paragraph 92, except admit that Buchler sent Arenson and

Lamm an email dated July 29, 2003 concerning (a) Laguardia's request to the members of

ALH's Supevisory Board for permission for Laguardia and Sweeney to assist Levitt Corporation,

including its affiliates ("Levitt"), in evaluating BBC, which request stated that that Laguardia

and Sweeney would not undertake such activities without express permission, and (b) a draft

response to Laguardia that had been prepared with the assistance of ALH's counsel, Fried Frank,

containing certain conditions for such permission; and further admit that Buchler's email asked

the Board to approve the draft letter so as to give ALH the benefit of another viable purchaser of

BBC.

93.     Deny the allegations in paragraph 93, except deny knowledge or information sufficient to form a belief as to the alleged conversation between Lamm and the unnamed lender referred to in paragraph 93.

94.     Deny the allegations in paragraph 94, except admit that Arenson sent an email dated September 12, 2003 to Buchler and Krieger containing the language quoted in paragraph 94 and refer to the email for its complete contents.

95.     Deny the allegations in paragraph 95, except admit that the Shamrock Parties endeavored to promote the viability of ALH, and further state that the averment in paragraph 95 with respect to insolvency asserts a legal conclusion to which no answer is required.

96.     Deny the allegations in paragraph 96, except admit that Shamrock sent the members of the Supervisory Board a notice of special meeting, dated March 16, 2004, pursuant to § 6.2(d) of ALH's Operating Agreement, concerning a meeting to discuss, *inter alia*, the proposed sale of 100% of the stock of BBC, that the Supervisory Board met on March 24, 2004 and that, at that meeting, Buchler gave an overview of the economic terms of the transaction and Fried Frank, as counsel to ALH, made a presentation regarding the terms of the proposed purchase agreement.

97.     Deny the allegations in paragraph 97, except admit that, after an extensive presentation by JMP, the Supervisory Board discussed the merits of the proposed sale of BBC, and that during the course of this discussion, Arenson stated that he opposed the sale of BBC for the same reasons he had opposed the sale of ABI, and expressed a concern that the sale was not in the best interest of all of ALH's members and that better value might be obtained by continuing to operate BBC.

98.    Deny the allegations in paragraph 98, except admit that Arenson expressed a concern that there might be a conflict of interest on the part of Fried Frank because Fried Frank also represented Shamrock, that Fried Frank explained that it was representing ALH and the Supervisory Board in connection with the possible sale of BBC and not ALH's members separately, that Fried Frank noted that ALH had waived any potential conflict of interest and that the waiver had been approved by the Supervisory Board prior to Fried Frank's representation of ALH, and that Fried Frank invited the Supervisory Board Representatives to contact Fried Frank or its Tennessee co-counsel with any concerns or questions.

99.    Deny the allegations in paragraph 99, except admit that, after further discussion, a majority of the Supervisory Board voted in favor of the proposed sale of BBC to Levitt, and that Arenson and Lamm both voted against the sale.

100.    Admit the allegations in paragraph 100.

101.    Deny the allegations in paragraph 101.

102.    Deny the allegations in paragraph 102, except admit that at the time of the sale of ABI in 2003, Lanius was the chief financial officer of ALH II, that after the sale of ABI, Lanius became the President of ABI's acquiror, Mattamy, and that the Supervisory Board, including Arenson as Class B Representative, unanimously supported retaining Lanius as a consultant to advise ALH on various management and financial matters and assist as appropriate in any further sales of ALH's assets.

103.    Deny the allegations in paragraph 103, except admit that in his capacity as consultant for ALH, Lanius participated in negotiations with potential buyers of ALH's operations and ALH's lenders, including Wachovia N.A. and Ohio Savings Bank, and with Swiss Re as surety on the Wachovia loan.

104.     Deny the allegations in paragraph 104, except admit that in the summer of 2004, ALH and Levitt entered into a letter of intent for the sale of MHI, and that, at that time, Laguardia, former president of ALH II, was president of one of the Levitt companies.

105.     Deny the allegations in paragraph 105, except admit that Lanius participated in the negotiations with Levitt and ALH's lenders relating to the possible sale of MHI to Levitt, including negations with respect to Swiss Re's agreement that $1 million of the proceeds of the sale of MHI to Levitt would be received by ALH.

106.     Deny the allegations in paragraph 106

107.     Deny the allegations in paragraph 106, except admit that, on or around October 6, 2004, Levitt informed ALH that it would not proceed with the purchase of MHI, and refer to Buchler's October 6, 2004 email to ALH's Supervisory Board for its complete contents.

108.     Deny the allegations in paragraph 108, and refer to Buchler's October 6, 2004 email to ALH's Supervisory Board for its complete contents.

109.     Deny the allegations in paragraph 109, and refer to the October 22, 2004 letter from Mattamy to ALH II, signed by Lanius, for its complete contents.

110.     Deny the allegations in paragraph 110, except admit that between October 6 and 22, 2004, other buyers for MHI were not solicited because, among other things, all possible buyers had already been explored, and that Lanius participated in discussions between ALH and Mattamy.

111.     Deny the allegations in paragraph 111.

112.     Deny the allegations in paragraph 111, except deny knowledge or information sufficient to form a belief as to the identity of everyone who had input into Mattamy's proposal to acquire MHI.

113.    Deny the allegations in paragraph 111, except admit in December 2004, Mattamy ALH II entered into a stock purchase agreement under which Mattamy would acquire the stock of MHI and $1 million of the proceeds of the sale of MHI would be received by ALH, as had been the case under Levitt's proposal to acquire MHI.

114.    Deny the allegations in paragraph 114.

115.    Deny the allegations in paragraph 115.

116.    Deny the allegations in paragraph 116.

117.    Deny the allegations in paragraph 117, except admit that ALH no longer has any operations and that there is an adversarial relationship between Counterclaimants the Shamrock Parties.

118.    Deny the allegations in paragraph 118.

119.    Deny the allegations in paragraph 119.

120.    Deny the allegations in paragraph 120, except admit that Counterclaimants purport to bring Counts 8 through 14 of their Counterclaims pursuant to Fed. R. Civ. P. 23.1.

121.    Deny the allegations in paragraph 121.

122.    Deny the knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 122, except admit that Counterclaimants claim to have owned interests in ALH from June 1998 to the present.

123.    Admit the allegations in paragraph 123.

124.    Deny the allegations in paragraph 124, except admit that Counterclaimants have not made any demand on the Supervisory Board and that there is no member of ALH's Supervisory Board who is not affiliated in some way with either the Shamrock Parties or the Counterclaimants.

125.    Deny the allegations in paragraph 125, except admit that there is no member of ALH's Supervisory Board who is not affiliated in some way with either the Shamrock Parties or the Counterclaimants.

## COUNT ONE - BREACH OF FIDUCIARY DUTY

126.    Repeat each of the responses to the previous paragraphs.

127.    Deny the allegations in paragraph 127.

128.    Deny the allegations in paragraph 128.

129.    Deny the allegations in paragraph 129.

130.    Deny the allegations in paragraph 130.

131.    Deny the allegations in paragraph 131.

132.    Deny the allegations in paragraph 132.

133.    Deny the allegations in paragraph 133.

## COUNT TWO - BREACH OF FIDUCIARY DUTY

134.    Repeat each of the responses to the previous paragraphs.

135.    Deny the allegations in paragraph 135, except admit that the members of ALH's Supervisory Board, including but not limited to Krieger, Buchler and Stein, owe certain fiduciary duties to ALH and its members subject to, *inter alia*, ALH's Operating Agreement.

136.    Deny the allegations in paragraph 136.

137.    Deny the allegations in paragraph 137.

138.    Deny the allegations in paragraph 138.

139.    Deny the allegations in paragraph 139.

## COUNT THREE - BREACH OF OPERATING AGREEMENT

140.    Repeat each of the responses to the previous paragraphs.

141.    Deny the allegations in paragraph 141.

142.    Admit that the Operating Agreement contains the language quoted in paragraph 142 and refer to the Operating Agreement for its complete terms.

143.    Deny the allegations in paragraph 143.

144.    Deny the allegations in paragraph 144.

145.    Deny the allegations in paragraph 145.

146.    Deny the allegations in paragraph 146.

**COUNT FOUR - AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

147.    Repeat each of the responses to the previous paragraphs.

148.    Deny the allegations in paragraph 148, except admit that the members of ALH's Supervisory Board, including but not limited to Krieger, Buchler and Stein, owe certain fiduciary duties to ALH and its member subject to, *inter alia*, ALH's Operating Agreement.

149.    Deny the allegations in paragraph 149.

150.    Deny the allegations in paragraph 150.

151.    Deny the allegations in paragraph 151.

152.    Deny the allegations in paragraph 152.

**COUNT FIVE - BREACH OF CONSULTING AGREEMENT**

153.    Repeat each of the responses to the previous paragraphs.

154.    Admit that the Operating Agreement contains the language quoted in paragraph 154 and refer to the Operating Agreement for its complete terms.

155.    Deny the allegations in paragraph 155.

156.    Deny the allegations in paragraph 156.

157.    Deny the allegations in paragraph 157.

158.    Deny the allegations in paragraph 158.

159.    Deny the allegations in paragraph 159.

## COUNT SIX - BREACH OF FIDUCIARY DUTY – GROSS NEGLIGENCE

160.    Repeat each of the responses to the previous paragraphs.

161.    Deny the allegations in paragraph 161.

162.    Deny the allegations in paragraph 162.

163.    Deny the allegations in paragraph 163.

164.    Deny the allegations in paragraph 164, except admit that Shamrock, Krieger, Buchler and Stein owe certain fiduciary duties to ALH and its members subject to, *inter alia*, ALH's Operating Agreement.

165.    Deny the allegations in paragraph 165.

166.    Deny the allegations in paragraph 166.

167.    Deny the allegations in paragraph 167.

## COUNT SIX-BREACH OF FIDUCIARY DUTY – SELF-DEALING

168.    Repeat each of the responses to the previous paragraph.

169.    Deny the allegations in paragraph 169, except admit that the members of ALH's Supervisory Board, including Krieger, Buchler and Stein, owe certain fiduciary duties to ALH and its members, subject to, *inter alia*, ALH's Operating Agreement.

170.    Deny the allegations in paragraph 170.

171.    Deny the allegation in paragraph 171.

172.    Deny the allegation in paragraph 172, except admit that the sales of ABI and BBC were duly approved by ALH's Supervisory Board, with Krieger, Buchler and Stein voting in

favor, and that the sale of MHI was duly approved by ALH's Supervisory Board, with Lamm, Krieger, Buchler and Stein voting in favor.

173.    Deny the allegation in paragraph 173.

174.    Deny the allegation in paragraph 174.

175.    Deny the allegation in paragraph 175.

176.    Deny the allegation in paragraph 176.

## COUNT EIGHT - BREACH OF FIDUCIARY DUTY

177.    Repeat each of the responses to the previous paragraphs.

178.    Deny the allegations in paragraph 178.

179.    Deny the allegations in paragraph 179.

180.    Deny the allegations in paragraph 180.

181.    Deny the allegations in paragraph 181.

182.    Deny the allegations in paragraph 182.

183.    Deny the allegations in paragraph 183.

184.    Deny the allegations in paragraph 184.

## COUNT NINE - BREACH OF FIDUCIARY DUTY

185.    Repeat each of the responses to the previous paragraphs.

186.    Deny the allegations in paragraph 186, except admit that the members of ALH's Supervisory Board, including Krieger, Buchler and Stein, owe certain fiduciary duties to ALH and its members subject to, *inter alia*, ALH's Operating Agreement.

187.    Deny the allegations in paragraph 187.

188.    Deny the allegations in paragraph 188.

189.    Deny the allegations in paragraph 189.

190.    Deny the allegations in paragraph 190.

### COUNT TEN - BREACH OF OPERATING AGREEMENT

191.    Repeat each of the responses to the previous paragraphs.

192.    Deny the allegations in paragraph 192.

193.    Deny the allegations in paragraph 193.

194.    Admit that the Operating Agreement contains the language quoted in paragraph 194 and refer to the Operating Agreement for its complete terms.

195.    Deny the allegations in paragraph 195.

196.    Deny the allegations in paragraph 196.

197.    Deny the allegations in paragraph 197.

198.    Deny the allegations in paragraph 198

199.    Deny the allegations in paragraph 199.

### COUNT ELEVEN - AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

200.    Repeat each of the responses to the previous paragraphs.

201.    Deny the allegations in paragraph 148, except admit that the members of ALH's Supervisory Board, including but not limited to Krieger, Buchler and Stein, owe certain fiduciary duties to ALH and its members subject to, *inter alia*, ALH's Operating Agreement.

202.    Deny the allegations in paragraph 202.

203.    Deny the allegations in paragraph 203.

204.    Deny the allegations in paragraph 204.

205.    Deny the allegations in paragraph 205.

206.    Deny the allegations in paragraph 206.

### COUNT TWELVE - BREACH OF CONSULTING AGREEMENT

207.    Repeat each of the responses to the previous paragraphs.

208.    Deny the allegations in paragraph 208.

209.    Admit that the Consulting Agreement contains the language quoted in paragraph 209 and refer to the Consulting Agreement for its complete terms.

210.    Deny the allegations in paragraph 210.

211.    Deny the allegations in paragraph 211.

212.    Deny the allegations in paragraph 212.

213.    Deny the allegations in paragraph 213.

214.    Deny the allegations in paragraph 214.

**COUNT THIRTEEN - BREACH OF FIDUCIARY DUTY – GROSS NEGLIGENCE**

215.    Repeat each of the responses to the previous paragraphs.

216.    Deny the allegations in paragraph 216.

217.    Deny the allegations in paragraph 217.

218.    Deny the allegations in paragraph 218.

219.    Deny the allegations in paragraph 164, except admit that Shamrock, Krieger, Buchler and Stein owe certain fiduciary duties to the members of ALH subject to, *inter alia*, ALH's Operating Agreement.

220.    Deny the allegations in paragraph 220.

221.    Deny the allegations in paragraph 221.

222.    Deny the allegations in paragraph 222.

223.    Deny the allegations in paragraph 223.

**COUNT FOURTEEN - BREACH OF FIDUCIARY DUTY – SELF-DEALING**

224.    Repeat each of the responses to the previous paragraph.

225.    Deny the allegations in paragraph 225, except admit that Shamrock, Krieger, Buchler and Stein owe certain fiduciary duties to ALH and its members ALH subject to, *inter alia*, ALH's Operating Agreement.

226.    Deny the allegations in paragraph 226.

227.    Deny the allegation in paragraph 227.

228.    Deny the allegation in paragraph 228, except admit that the sales of ABI and BBC were duly approved by ALH's Supervisory Board, with Krieger, Buchler and Stein voting in favor, and that the sale of MHI was duly approved by ALH's Supervisory Board, with Lamm, Krieger, Buchler and Stein voting in favor.

229.    Deny the allegation in paragraph 229.

230.    Deny the allegation in paragraph 230.

231.    Deny the allegation in paragraph 231.

232.    Deny the allegation in paragraph 232.

233.    Deny the allegation in paragraph 233.

## AS AND FOR A FIRST
## AFFIRMATIVE DEFENSE

234.    The Counterclaims should be dismissed, in whole or in part, for lack of subject matter jurisdiction.

## AS AND FOR A SECOND
## AFFIRMATIVE DEFENSE

235.    The Counterclaims should be dismissed, in whole or in part, due to Counterclaimants' lack of standing.

## AS AND FOR A THIRD
## AFFIRMATIVE DEFENSE

236.    The Counterclaims fail to state a claim against on which relief can be granted.

**AS AND FOR A FOURTH
AFFIRMATIVE DEFENSE**

237.    The Counterclaims are barred, in whole or in part, by statutes of limitations and/or by the doctrine of laches.

**AS AND FOR A FIFTH
AFFIRMATIVE DEFENSE**

238.    The Counterclaims are barred by the doctrines of waiver, estoppel, collateral estoppel, judicial estoppel and/or ratification.

**AS AND FOR A SIXTH
AFFIRMATIVE DEFENSE**

239.    The Counterclaims are barred by the doctrine of unclean hands.

**AS AND FOR A SEVENTH
AFFIRMATIVE DEFENSE**

240.    The Counterclaims are barred by the business judgment rule.

**AS AND FOR AN EIGHTH
AFFIRMATIVE DEFENSE**

241.    Counterclaimants' damages, if any, were not proximately caused by any conduct of the Shamrock Parties.


WHEREFORE, the Shamrock Parties respectfully request:

A.    That this Court dismiss the Counterclaims with prejudice and with costs, including reasonable attorneys fees; and

B.    Such other and further relief as this Court deems just and proper.

27

MORRIS NICHOLS ARSHT & TUNNELL LLP

/s/*Samuel T. Hirzel*
A. Gilchrist Sparks, III (#467)
S. Mark Hurd (#3297)
Samuel T. Hirzel (#4415)
1201 N. Market Street
Wilmington, DE 19899
302-658-9200

*Attorneys for Plaintiffs and Counterclaim Defendants Shamrock Holdings of California, Inc., Shamrock Capital Advisors, Inc., Eugene I. Krieger, George J. Buchler and Bruce J. Stein, and Third-Party Defendant ALH Holdings, LLC*

GREGORY P. JOSEPH LAW OFFICES LLC
Gregory P. Joseph
Pamela Jarvis
805 Third Avenue, 31st Floor
(212) 407-1200
New York, NY 10022

DATED: March 1, 2006

/580333
509202

28