IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHAMROCK HOLDINGS, SHAMROCK CAPITAL ADVISORS, EUGENE KRIEGER, GEORGE BUCHLER, and BRUCE STEIN, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civ. No. 04-1339-SLR |
| AVIE ARENSON, LAUREL EQUITY GROUP LLC, SELK LLC, A. ARENSON HOLDINGS LTD., D.A. GARDENS LTD., and J12ALH ASSOCIATES, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| | | |
| LAUREL EQUITY GROUP LLC, SELK LLC, A. ARENSON HOLDINGS LTD., D.A. GARDENS LTD., and J12ALH ASSOCIATES, | ) ) ) ) | |
| Counterclaim Plaintiffs and Third Party Plaintiffs, | ) ) ) ) | |
| v. | ) ) | Civ. No. 06-62-SLR |
| SHAMROCK HOLDINGS, SHAMROCK CAPITAL ADVISORS, EUGENE KRIEGER, GEORGE BUCHLER, and BRUCE STEIN, | ) ) ) ) | |
| Counterclaim Defendants, | ) ) | |
| and | ) ) | |
| ALH HOLDINGS LLC, | ) ) | |
| Third Party Defendant. | ) | |

S. Mark Hurd, Esquire, Morris, Nichols, Arsht & Tunnell,
Wilmington, Delaware.  Counsel for Plaintiffs, Counterclaim
Defendants, and Third Party Defendant.

Sean J. Bellew, Esquire, David A. Felice, Esquire, Cozen
O'Connor, Wilmington, Delaware.  Counsel for Defendants,
Counterclaim Plaintiffs, and Third Party Plaintiffs.

**MEMORANDUM OPINION**

Dated: September 29 , 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

The present litigation arises out of the sale of a Delaware

limited liability company known as ALH Holdings ("ALH").

Shamrock Holdings ("Shamrock"), Shamrock Capital Advisors

("SCA"), Eugene Krieger ("Krieger"), George Buchler ("Buchler"),

and Bruce Stein ("Stein") (collectively, "plaintiffs"), filed the

present action, which seeks declaratory judgment on eight

different issues,[1] in Delaware Chancery Court on October 5, 2004.

---

[1]In their complaint, plaintiffs request that the court enter
an order:

  A.    declaring that they have not breached any
        fiduciary duty to defendants [count I];

  B.    declaring that they have not breached any
        obligations to defendants, or violated any rights
        of defendants under [ALH's] Operating Agreement
        [count II];

  C.    declaring that (1) in rendering services pursuant
        to [ALH's] Consulting Agreement [with SCA], they
        did not commit bad faith, gross negligence or
        willful misconduct, and (2) they are protected
        from any liability to defendants by the Consulting
        Agreement [count III];

  D.    declaring that they relied in good faith on
        [consultants] and ALH's outside counsel [count
        IV];

  E.    declaring that they are entitled to
        indemnification, including advancement of legal
        fees and other expenses [count V];

  F.    declaring that SELK's claims against them have
        been released . . ., or, in the alternative, that
        SELK's equity interest is reduced or eliminated .
        . . [counts VI and VII]; [and]

(D.I. 72 at 5)   At the request of defendants Avie Arenson

("Arenson"), Laurel Equity Group LLC ("Laurel"), SELK LLC

("SELK"), A. Arenson Holdings Ltd. ("Arenson Holdings"), D.A.

Gardens Ltd. ("D.A. Gardens"), and J12ALH Associates ("J12")

(collectively, "defendants"), it was removed to the United States

District Court for the District of Delaware on the grounds of

diversity jurisdiction, 28 U.S.C. § 1332.   (Id.)   Plaintiffs'

motion to remand to Chancery Court was denied by this court.

(D.I. 33)   Plaintiffs later amended their complaint.   (D.I. 37)

Meanwhile, defendants, minus Arenson, filed an action

against plaintiffs in a United States District Court in North

Carolina.   (D.I. 72 at 5)   That action was subsequently

transferred to this court, was consolidated with plaintiffs'

action, and became defendants' counterclaim against plaintiffs[2]

and third party complaint against ALH.[3]   (Id. at 6)   Defendants

---

G.    declaring that plaintiffs have not violated [Avie]
      Arenson's rights as Class B Representative [of
      ALH] [count VIII] . . . .

(D.I. 37 at 49-50)

[2]Because defendants' answer and counterclaim complaint are
combined in the same document and contain overlapping paragraph
numbers, "D.I. 67[A]" will be used to refer to defendants' answer
and "D.I. 67[C]" to refer to their counterclaim complaint.

[3]Defendants allege:

I.    that Shamrock, as majority shareholder of ALH, breached
      its fiduciary duties to ALH's minority members;

II.   that Krieger, Buchler, and Stein, as Shamrock employees

2

made several motions to dismiss (D.I. 40, 43, 46), all of which the court denied (D.I. 78). Presently before the court are plaintiffs' motion for judgment on the pleadings as to counts I, II, III, and VIII of their complaint,[4] as well as their motion to dismiss defendants' counterclaims and third party complaint; ALH has joined plaintiffs in their motion to dismiss.[5] (D.I. 71)

---

who were also the Class A and D representatives on ALH's Supervisory Board, breached their fiduciary duties to ALH's minority shareholders;

III. that Shamrock, Krieger, Buchler, and Stein (collectively, "the fiduciaries") violated ALH's Operating Agreement when they breached their fiduciary duties;

IV. that SCA, a consultant of ALH, aided and abetted the fiduciaries in their breaches of duty;

V. that, in doing so, SCA breached its Consulting Agreement with ALH;

VI. that the fiduciaries breached their fiduciary duties through gross negligence; and

VII. that the fiduciaries breached their fiduciary duties with acts of self-dealing.

(D.I. 67[C] at ¶¶ 126-76) Defendants have framed these seven counts as a direct action against plaintiffs; counts VIII through XIV of their counterclaim complaint allege the same series of violations as counts I to VII but couch them as derivative claims. (Id. at ¶¶ 177-233)

[4]Plaintiffs contend that a judgment in their favor on these counts "would moot Counts VI and VII and render Count V (indemnification) ready for summary disposition." (D.I. 72 at 6)

[5]For simplicity's sake, the term "plaintiffs" will hereinafter include the original plaintiffs (who are also the counterclaim defendants) and the third party defendant, ALH;

3

## II. BACKGROUND

Shamrock, a California corporation, is the majority member of ALH, holding a Class A interest in the company. (D.I. 37 at ¶¶ 2, 7) SCA is a Delaware corporation that provided consulting services to ALH. (D.I. 20 at ¶ 13) Krieger is an employee of Shamrock, as well as a Class A representative on ALH's Supervisory Board. (D.I. 37 at ¶ 8) Buchler, another Shamrock employee, served as the second Class A representative on ALH's board. (Id.) Stein is also a Shamrock employee, and was one of the Class D representatives on ALH's board. (Id.) Krieger, Buchler, and Stein have also performed substantial services for SCA. (Id.) ALH is a Delaware LLC that suffered financial troubles and was subsequently sold in pieces over the objections of its Class B members, leading to the instant litigation.

Defendant Arenson served as the Class B representative on ALH's Supervisory Board but did not personally hold equity in ALH. (Id. at ¶ 10) Arenson, however, does own, control, and act as an agent for two companies, Arenson Holdings and D.A. Gardens, which are Class B equity holders in ALH. (Id. at ¶ 11; D.I. 67[A] at ¶ 11) He is not a party to the counterclaim, nor to the third party complaint. SELK is a Delaware limited liability company which holds Class B membership in ALH. (D.I. 37 at ¶ 52;

---

"defendants" will refer to the defendants in the original action, the counterclaim plaintiffs, and the third party plaintiffs.

D.I. 67[A] at ¶ 52)  J12 is a New York general partnership and is
also a Class B member of ALH.  (D.I. 37 at ¶¶ 58-60; D.I. 67[A]
at ¶¶ 58-60)  Arenson Holdings, a Class B member of ALH, is owned
by defendant Arenson.  (D.I. 37 at ¶ 11; D.I. 67[A] at ¶ 11)
D.A. Gardens, another Class B equity holder in ALH, is likewise
owned by Arenson.  (Id.)  Laurel, the final Class B member of
ALH, is a Delaware LLC.  (D.I. 37 at ¶ 57; D.I. 67[A] at ¶ 57)

ALH was created on June 3, 1998.  (D.I. 37 at ¶ 19)  On or
about June 12, 1998, the Class B members funded their investments
in the company.  (Id. at ¶ 20)  ALH became the sole shareholder
of American Landmark Homes Corporation ("ALH Corp.") and Atlantic
Builders, Inc. ("ABI"), Delaware corporations with home-building
operations in Florida.  (Id. at ¶ 21)  ALH's Operating Agreement
was initially signed by ALH's members as of June 12, 1998 and was
amended as of March 15, 1999.  (Id. at ¶ 22)  On or around
December 9, 1998, the members of ALH's Supervisory Board decided
to form a subsidiary to act as the parent company of all of ALH's
operating subsidiaries.  That corporate subsidiary, ALH II, Inc.
("ALH II"), was organized on December 9, 1998 under the laws of
Delaware.  (Id. at ¶ 25)

In January 2000, ALH II took out a loan of $27.5 million
which was used to fund the acquisition of a North Carolina home-
building operation called Mulvaney Homes, Inc. ("MHI").  (Id. at
¶ 27)  ALH became the guarantor of ALH II's obligation to

5

Wachovia Bank, the lender. ALH's Supervisory Board unanimously approved all of the steps related to the purchase of MHI. (Id. at ¶ 28)

On March 15, 1999, ALH amended its Operating Agreement, with Arenson signing the amendment on behalf of Arenson Holdings and D.A. Gardens and committing the two companies to contribute approximately $469,000 in capital to ALH. (Id. at ¶ 29) This infusion of capital allowed ALH Tennessee Acquisition, Inc. ("ALH Tennessee"), a wholly-owned subsidiary of ALH II, to purchase Bowden Building Corporation ("BBC") in Tennessee. (Id. at ¶ 30)

On April 6, 2000, some of the ALH investors, including Shamrock and Arenson Holdings, loaned ALH $2 million with which to "finance certain operations" of ALH II. (Id. at ¶ 32) Among the ALH II subsidiaries guaranteeing this loan were ABI, ALH Acquisition Corp. (ABI's parent company), and ALH Tennessee (the parent company of BBC). (Id. at ¶ 33) The members of ALH's Supervisory Board unanimously approved these loans to ALH II. (Id. at ¶ 34) By the end of that year, ALH II was in default on several loans and was undergoing serious financial difficulties. (Id. at ¶ 35)

Pursuant to ALH's Operating Agreement, Lion LLC ("Lion") had been appointed as ALH's Initial Manager. (Id. at 36) In July 2001, after disputes over Lion's performance, Lion settled with ALH (again, with the unanimous approval of the Supervisory

6

Board).  (Id. at ¶¶ 38, 41)  The terms of the settlement
permitted the Class A members to appoint three of the five
members of ALH's Supervisory Board and hire SCA to provide
consulting services for ALH, simultaneously weakening Lion's
influence over the company and increasing Shamrock's.  (Id. at ¶
39)  SCA's Consulting Agreement with ALH indemnified it from all
liability except that resulting primarily from actions or
omissions done in bad faith or due to gross negligence or willful
misconduct.  (Id. at ¶ 77)

In March of 2002, all five board members of ALH agreed to
hire Jolson Merchant Partners ("JMP") to provide "financial
advisory and investment banking services" in connection with the
possible sale of ALH.  (Id. at ¶ 44)  On May 7, 2002, with the
Supervisory Board's unanimous approval, some of the ALH investors
(including Shamrock and D.A. Gardens) loaned another $4.4 million
to ALH II.  (Id. at ¶ 46)  That July, the Class B members began
expressing an interest in buying all of ALH's Class A shares,
though an agreement to do so was never finalized.  (Id. at ¶ 49)

At a June 26, 2003 meeting of the Supervisory Board, a
majority of representatives (with Arenson opposing and the fifth
representative, Shalom Lamm, abstaining) voted to sell ABI.  (Id.
at ¶ 105)  All five class representatives subsequently gave their
consent for ALH members' 2000 and 2002 loans to ALH II to be
repaid from proceeds realized by the sale of ABI.  (Id. at ¶ 48)

7

On March 24, 2004, over the objections of Arenson and Lamm, a
majority of the board also decided to sell BBC. (Id. at ¶ 122)
Finally, on December 15, 2004, the same majority voted to sell
the last of ALH's home-building operations, MHI.⁶ (Id. at ¶ 129)
After repeated threats by defendants to sue them for selling ALH
in pieces against the Class B members' wishes, plaintiffs filed
the present action for declaratory judgment. (Id. at ¶ 6)

## III.   STANDARD OF REVIEW

### A. Motion for Judgment on the Pleadings

When deciding a Rule 12(c) motion for judgment on the
pleadings, a district court must view the facts and inferences to
be drawn from the pleadings in the light most favorable to the
non-moving party. Green v. Fund Asset Mgmt., L.P., 245 F.3d 214,
220 (3d Cir. 2001); Janney Montgomery Scott, Inc. v. Shepard
Niles, Inc., 11 F.3d 399, 406 (3d Cir. 1993). The motion can be
granted only if no relief could be afforded under any set of
facts that could be provided. Turbe v. Gov't of the Virgin
Islands, 938 F.2d 427, 428 (3d Cir. 1991); see also Southmark
Prime Plus, L.P. v. Falzone, 776 F. Supp. 888, 891 (D. Del.
1991); Cardio-Medical Associates, Ltd. v. Crozer-Chester Medical
Ctr., 536 F. Supp. 1065, 1072 (E.D. Pa. 1982) ("If a complaint

---

⁶According to defendants, "[a]lthough it still exists, ALH
no longer has any operations and is winding up its affairs.
ALH's business is completed, [and] the liquidation sale is over .
. . ." (D.I. 67[C] at ¶ 117 (citing D.I. 51 at 34))

8

contains even the most basic of allegations that, when read with great liberality, could justify plaintiff's claim for relief, motions for judgment on the pleadings should be denied."). However, the court need not adopt conclusory allegations or statements of law. In re General Motors Class E Stock Buyout Sec. Litig., 694 F. Supp. 1119, 1125 (D. Del. 1988). Judgment on the pleadings will only be granted if it is clearly established that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988).

**B. Motion to Dismiss - Lack of Subject Matter Jurisdiction**

Once subject matter jurisdiction is challenged, the party asserting subject matter jurisdiction has the burden of proving its existence. See Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000). Under Fed. R. Civ. P. 12(b)(1), the court's jurisdiction may be challenged either facially (based on the legal sufficiency of the claim) or factually (based on the sufficiency of jurisdictional fact). See 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE § 12.30[4] (3d ed. 1997). In the case at bar, where the sufficiency of counts I-VII of the counterclaim turns on whether defendants' claims are truly direct or derivative, plaintiffs' challenge to subject matter jurisdiction is facial. See, e.g., In re Franklin Mut. Funds Fee Litigation, 388 F. Supp. 2d 451, 462 (D. N.J. 2005) ("Because the

9

Court finds that plaintiffs' alleged injuries are derivative, these Counts are dismissed as improperly pleaded.").

Under a facial challenge to jurisdiction, the court must accept as true the allegations contained in the complaint. See 2 MOORE § 12.30[4]. Dismissal for a facial challenge to jurisdiction is "proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'" Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1408-09 (3d Cir. 1991) (quoting Bell v. Hood, 327 U.S. 678, 682 (1946)).

**C. Motion to Dismiss - Failure to State a Claim**

"The standards for determining a motion to dismiss a counter-claim are the same as for determining a motion to dismiss a complaint." Milton Roy Co. v. Bausch & Lomb, Inc., 418 F. Supp. 975, 978 (D. Del. 1976). In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. Claims may be dismissed

10

pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot
demonstrate any set of facts that would entitle him to relief.
See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The moving
party has the burden of persuasion. See Kehr Packages, Inc. v.
Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

## IV. DISCUSSION

### A. Motion for Judgment on the Pleadings

Plaintiffs have moved for judgment on the pleadings with
respect to counts I, II, III, and VIII of their complaint, which
request a declaratory judgment that, respectively, plaintiffs did
not violate their fiduciary duties; they violated neither ALH's
Operating Agreement nor Consulting Agreement; and they did not
violate defendant Arenson's rights as the Class B representative
on ALH's Supervisory Board. (D.I. 71, 72) For the following
reasons, plaintiffs' motion for judgment on the pleadings is
granted in part and denied in part.

### 1. Count I - Breach of Fiduciary Duties

Plaintiffs aver that various "admissions" of facts made by
defendants in their answer contradict the allegations in
defendants' counterclaim complaint to such an extent that they
preclude a finding on any of the counterclaim charges of breach
of fiduciary duty. (D.I. 72 at 2-3) Defendants contend that
these "admissions" are either irrelevant to the matters at bar,
mischaracterizations by plaintiffs, or material facts that are

11

still in dispute (D.I. 82 at 12-13), such as whether Shamrock
received a disproportionate benefit from the sale of ALH's
operations (id. at 23-24) and whether or not it was actually
**necessary** to liquidate ALH in order to pay off lenders, or if
Shamrock merely supported it for self-interested reasons (id. at
32).

At this early stage of the proceedings, the court cannot
conclude that defendants' pleadings do not "contain[] even the
most basic of allegations that, when read with great liberality,
could justify [their] claim for relief," Cardio-Medical
Associates, Ltd. v. Crozer-Chester Medical Ctr., 536 F. Supp.
1065, 1072 (E.D. Pa. 1982), nor that there are no material facts
left in dispute. Therefore, plaintiffs' motion for judgment on
the pleadings is denied as to count I of their complaint.

### 2. Counts II and III - Breach of ALH's Operating and Consulting Agreements

Plaintiffs likewise seek judgment on the pleadings regarding
their alleged breach of ALH's Operating Agreement, ALH's
Consulting Agreement with SCA, and any implied contractual
covenant of good faith and fair dealing, on the grounds that
defendants have not identified any specific provisions of these
contracts that plaintiffs have violated. (D.I. 72 at 37)
Defendants claim that they **have** pointed to specific provisions in
these contracts, namely § 6.2(f) of the Operating Agreement and
Schedule A of the Consulting Agreement. (D.I. 82 at 35)

12

Section 6.2(f) states that fiduciaries are not protected from liability for acts or omissions that are done in bad faith or with gross negligence (see D.I. 67[C] at ¶ 142), while defendants' counterclaim is premised on allegations that Shamrock, Krieger, Buchler, and Stein acted in bad faith and with gross negligence (D.I. 82 at 35). Schedule A similarly states that ALH will not be liable for actions or omissions of SCA which were done in bad faith or through gross negligence or willful misconduct. (See D.I. 67[C] at ¶ 155) These two provisions merely discuss under what circumstances SCA and the other fiduciaries will be protected from liability; defendants appear to assert that they constitute contractual obligations in and of themselves, which can be violated by any action done in bad faith or with gross negligence.

Plaintiffs' entitlement to judgment on the pleadings for counts II and III rests on whether § 6.2(f) and Schedule A are actionable contractual obligations or whether defendants are required to identify other, independent parts of the agreements that the fiduciaries have allegedly breached. The court agrees with the latter proposition. Defendants quote a Delaware Chancery Court decision for the statement that "LLC members' rights begin with and typically end with the Operating Agreement" (D.I. 82 at 35, quoting Walker v. Resource Dev., LLC, 791 A.2d 799, 813 (Del. Ch. 2000)), but they cite no case law supporting

13

their claim that the exculpation provisions of § 6.2(f) and Schedule A give rise to independent grounds for contractual liability should SCA or ALH's fiduciaries act with bad faith or in a grossly negligent manner.

Defendants cannot allege any set of facts which would entitle them to relief under § 6.2(f) and Schedule A of the Operating and Consulting Agreements, respectively. Consequently, the court grants plaintiffs' motion for judgment on the pleadings with respect to counts II and III of their complaint.

### 3. Count VIII - Violation of Arenson's Rights

Plaintiffs seek a declaratory judgment that they did not violate defendant Arenson's rights as a Class B representative by preventing him from having meaningful participation in the Supervisory Board's decision-making process. (D.I. 37) This court recently denied defendant Arenson's motion to dismiss (D.I. 46) solely because "[his] role in the Supervisory Board decision-making process is a factual issue currently being addressed in discovery." (D.I. 77 at 10) With regard to plaintiffs' request for declaratory judgment in count VIII of the complaint, the court opined:

> The amended complaint contains no allegations that defendant Arenson as an individual either has a cause of action against plaintiffs or that plaintiffs have a cause of action against defendant Arenson. Defendant Arenson was not a member of ALH. Defendant Arenson served only on the Supervisory Board as the class B representative. Any harm caused by depriving the class B representative of his rights to participate in the

14

Supervisory Board will be suffered by the class B
members, not by defendant Arenson as the class B
representative.
. . . . Plaintiffs present no law to support the
position that a financial interest in a company is
enough to require a party to defend a declaratory
judgment action.

(Id. at 9) Plaintiffs have failed to meet their burden for a

judgment on the pleadings as to count VIII of their complaint;

it, therefore, is denied.

## B. Motion to Dismiss - Lack of Subject Matter Jurisdiction

Plaintiffs have moved to dismiss counts I-VII of defendants'

counterclaim (the "direct claims") because, they argue,

defendants may only bring such claims derivatively, on behalf of

ALH.[7] (D.I. 72 at 39-40) The Delaware Supreme Court has stated

that, in determining whether a shareholder suit is direct or

derivative,

a court should look to the nature of the wrong and to
whom the relief should go. The stockholder's claimed
direct injury must be independent of any alleged injury
to the corporation. The stockholder must demonstrate
that the duty breached was owed to the stockholder and
that he or she can prevail without showing an injury to
the corporation.

Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1039

(Del. 2004). Plaintiffs claim that defendants cannot show that

any of their alleged injuries arise independently from injuries

to ALH. (D.I. 72 at 39-40)

_____

[7]Plaintiffs do not challenge defendants' standing to assert
counts VIII-XIV (the "derivative claims").

15

Defendants concur that <u>Tooley</u> is normally the proper test to use for such an analysis, but argue that it is not applicable to the case at bar. According to defendants, the unjust enrichment exception[8] survives the Court's holding in <u>Tooley</u>. (D.I. 82 at 39) Therefore, they aver, their claims should be treated as direct because Shamrock, the majority member of ALH and one of the counterclaim defendants, will unjustly benefit from any derivative action recovery. (<u>Id.</u> at 40) Likewise, defendants contend, a derivative action is neither necessary nor practical because "'superimposing derivative pleading requirements upon [the] claims [will] needlessly delay[] ultimate substantive resolution and serve[] no useful or meaningful public policy purpose.'" (<u>Id.</u> at 40-41, quoting <u>Cencom</u>, 2000 WL 130629, at *3)

Much like the partnership in <u>Cencom</u>, ALH has effectively been dissolved. In a recent decision, the Delaware Supreme Court held that allegations that a majority shareholder supported a transaction which "wrongfully reduced the cash-value and the voting power of the . . . minority interest, and increased correspondingly the value and voting power of the controller's majority interest" was "not exclusively derivative and [could] be brought by the (former) minority shareholders directly." <u>Gentile</u>

---

[8]The Court of Chancery has held that "'the potential inclusion of culpable parties in the class due relief may affect the distinction between the derivative and direct claims.'" <u>In re Cencom Cable Income Partners</u>, C.A. No. 14634, 2000 WL 130629, at *5 (Del. Ch. Jan. 27, 2000).

16

v. Rossette, 2006 WL 2388934, at *1 (Del. Aug. 17, 2006).

According to the Court,

> [t]he harm to the minority shareholder plaintiffs
> resulted from a breach of a fiduciary duty owed to them
> by the controlling shareholder, namely, not to cause
> the corporation to effect a transaction that would
> benefit the fiduciary at the expense of the minority
> stockholders. . . . Because SinglePoint no longer
> exists, . . . there is no corporate entity to which a
> recovery . . . could be paid. . . . The only parties to
> whom that recovery could be paid are the plaintiffs.
> Hence, although under Tooley the claim could be brought
> derivatively or directly, as a practical matter, the
> only claim available after [the company] was liquidated
> is a direct action by the plaintiffs.

Id. (footnote omitted).

The reasoning employed in Gentile is applicable to the facts

at bar and, under Delaware law, defendants may bring a direct

action against plaintiffs for their participation in the sale of

ALH's operating units; consequently, plaintiffs' motion to

dismiss counts I-VII of the counterclaim as improperly pleaded is

denied.[9]

**C. Motion to Dismiss - Failure to State a Claim**

**1. Breach of Fiduciary Duties (Counts I, II, VI, VII, VIII, IX, XIII, and XIV of the Counterclaim)**

Defendants allege that Shamrock, as the majority member of

ALH (and the employer of three of the five Supervisory Board

representatives), exercised dominion and control over ALH and,

---

[9]The court, therefore, will include defendants' direct
claims, counts I-VII of the counterclaim, in its Rule 12(b)(6)
analysis.

17

consequently, owed fiduciary duties to ALH and the minority members, including defendants. (D.I. 67[C] at ¶¶ 178-79) According to defendants, Shamrock subsequently breached these duties and injured both defendants and ALH by mishandling the sale of ALH and failing to maximize the sale's value; stifling competitive bids for the company by selling its operating units "piecemeal at 'fire sale' prices"; pursuing the sale of said operating units against ALH's best interests; and "continually failing and refusing" to act in the best interests of ALH's minority members. (Id. at ¶ 181) Counts I and VIII of defendants' counterclaim maintain that Shamrock's conduct was in bad faith, grossly negligent, self-dealing, and constituted a conscious indifference to the consequences defendants would suffer, as well as reckless indifference to and wanton disregard of defendants' rights. (Id. at ¶ 182)

Defendants likewise claim, in counts II and IX, that Krieger, Buchler, and Stein owed fiduciary duties to ALH and its minority members and that they breached those duties by mishandling the sale of ALH; selling the operations piecemeal at fire sale prices; "failing to actively solicit offers for ALH and failing to work with Class B members"; hiring professionals to work for ALH who also had loyalty to Shamrock; and "continually failing and refusing" to act in ALH's best interest. (Id. at ¶ 187) Defendants believe that these actions were grossly

18

negligent and in bad faith and that, as a result, defendants lost the value of their investment in ALH.  (Id. at ¶¶ 188-89)  Counts VI, VII, XIII, and XIV make similar claims of gross negligence and self-dealing resulting from these breaches of fiduciary duties and plaintiffs' alleged breaches of the Operating and Consulting Agreements.  (Id. at ¶¶ 216-23, 225-33)

Accepting the material allegations of the counterclaim as true and viewing all facts and inferences in a light most favorable to defendants, the court finds that defendants have pled sufficient information to support their breach of duty claims.  In spite of this, plaintiffs aver that the allegations in counts I, II, VI, VII, VIII, IX, XIII, and XIV of the counterclaim reflect nothing more than a difference in business judgment and that plaintiffs, therefore, are protected from liability by the business judgment rule.[10]  (D.I. 72 at 30)

According to the Third Circuit, "Generally speaking, we will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6).  A complaint may be dismissed under Rule 12(b)(6) where an affirmative defense appears **on its face**, however."  Stanziale v.

---

[10]"In Delaware, the business judgment rule is a presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company."  Stanziale v. Nachtomi (In re Tower Air, Inc.), 416 F.3d 229, 238 (3d Cir. 2005) (citing Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984)).

19

Nachtomi (In re Tower Air), 416 F.3d 229, 238 (3d Cir. 2005)
(emphasis added). Defendants argue that they are not required to
plead around the business judgment rule in response to a motion
to dismiss because they did not "make any allegations about the
business judgment rule" in their complaint. (D.I. 82 at 15)
Plaintiffs contend that defendants have implicitly raised the
business judgment rule by repeatedly describing the minority
shareholders' behavior with terms such as "well-reasoned" in a
preemptive attempt to combat a possible affirmative defense.[11]
(See, e.g., D.I. 67[C] at ¶¶ 2, 56)

The cases plaintiffs cite in support of their argument[12] are
fact-intensive and fail to state a bright line rule permitting
courts to dismiss claims under Rule 12(b)(6) based on unanswered
affirmative defenses which are raised only implicitly on the face

---

[11]The court will not explore plaintiffs' meritless claim
that defendants' denial (D.I. 67[A] at ¶ 3) of plaintiffs'
assertion that "[a]ll of plaintiffs' actions in connection with
ALH were taken in good faith, in the reasonable exercise of
plaintiffs' business judgment" (D.I. 37 at ¶ 3) was enough to
require defendants to plead around the business judgment rule.
(See D.I. 84 at 5)

[12]ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859-61 (3d Cir.
1994) (including a letter attached to the complaint in the
court's analysis of whether an affirmative defense was raised on
the face of the complaint); Davis v. Grusemeyer, 996 F.2d 617,
624-25 (3d Cir. 1993) (finding that a letter predating many of
plaintiff's claims for fraudulent concealment in a RICO
prosecution against him served to notify him of operative facts
on the face of the criminal complaint), abrogated on other
grounds, Rolo v. City Investing Co. Liquidating Trust, 155 F.3d
644 (3d Cir. 1998).

20

of the complaint.  The court declines to infer such an ability
and holds that defendants are not required to plead around the
business judgment rule at this stage in the proceedings.
Plaintiffs' Rule 12(b)(6) motion to dismiss is denied with
respect to counts I, II, VI, VII, VIII, IX, XIII, and XIV of the
counterclaim.

### 2. Breach of the Operating and Consulting Agreements (Counts III, V, X, and XII)

Having already granted plaintiffs' motion for judgment on
the pleadings regarding their alleged breaches of the Operating
and Consulting Agreements, see supra § IV.A.2, plaintiffs' motion
to dismiss counts III, V, X, and XII of the counterclaim is moot.

### 3. Aiding and Abetting (Counts IV and XI)

Counts IV and XI of the counterclaim allege that SCA, a
consultant for ALH with ties to Shamrock, Krieger, Buchler, and
Stein, knowingly aided the four of them in breaching their
fiduciary duties.  (D.I. 67[C] at ¶ 204)  In Delaware,

> [a] third party may be liable for aiding and
> abetting a breach of a corporate fiduciary's duty to
> the stockholders if the third party "knowingly
> participates" in the breach.  To survive a motion to
> dismiss, the complaint must allege facts that satisfy
> the four elements of an aiding and abetting claim:
> "(1) the existence of a fiduciary relationship, (2) a
> breach of the fiduciary's duty, . . . (3) knowing
> participation in that breach by the defendants," and
> (4) damages proximately caused by the breach.

Malpiede v. Townson, 780 A.2d 1075, 1096 (Del. 2001) (omission in
original) (citations omitted).  Plaintiffs aver that, because

defendants can show neither that the fiduciaries breached any
duties nor that SCA knowingly participated in any such breaches,
counts IV and XI fail to state a claim upon which relief can be
granted.[13]  (D.I. 72 at 37-38)  The court has already held that
defendants' breach of duty claims are sufficiently well-pled to
survive a motion to dismiss; therefore, the viability of
defendants' aiding and abetting claims rests on whether
defendants have made a sufficient showing of knowing
participation by SCA.

Defendants quote In re General Motors (Hughes) Shareholder
Litigation, No. Civ. A. 20269, 2005 WL 1089021 (Del. Ch. May 4,
2005), for the proposition that "'[a] claim of knowing
participation need not be pled with particularity.  However,
there must be factual allegations in the complaint from which
knowing participation can be reasonably inferred.'" (D.I. 82 at
36, quoting General Motors, 2005 WL 1089021, at *24 (internal
citations omitted))  Although defendants fail to quote it, the
General Motors court continued:

> If such facts are not pled, then in order to infer
> knowing participation, the plaintiff must have alleged
> that the fiduciary breached its duty in an "inherently
> wrongful manner."  This has also been stated as
> requiring the plaintiff to allege that the act taken by
> the fiduciary was per se illegal.  Conclusory
> statements of knowing participation will not suffice.

---

[13]plaintiffs do not challenge the existence of a fiduciary
relationship or damages proximately caused by a breach of such
relationship.

22

General Motors, 2005 WL 1089021, at *24 (footnotes omitted).
Defendants have not alleged that plaintiffs' conduct was
"inherently wrongful" or "per se illegal." As a result,
defendants' aiding and abetting claims turns on whether knowing
participation by SCA can reasonably be inferred from the facts
alleged in the counterclaim.

Plaintiffs argue that defendants have not "identif[ied] any
participatory act by SCA." (D.I. 72 at 38) According to
defendants, the fact that "Krieger, Buchler, and Stein performed
substantial services for SCA" and that the counterclaim
repeatedly alleges "that Krieger, Buchler, and Stein committed
wrongful acts that facilitated their liquidation of ALH" makes it
"reasonable to infer that these actions were taken, in part, in
their capacity as agents for SCA." (D.I. 82 at 36) Moreover,
defendants contend that, "at this pre-discovery point in the
litigation," federal notice pleading standards do not require
them to "allege[] precisely what actions were taken by Krieger,
Buchler and Stein in their capacity as agents for SCA." (Id. at
36-37)

When a claim is challenged under Rule 12(b)(6), the court
may grant the motion to dismiss only if the non-moving party
"cannot demonstrate any set of facts that would entitle him to
relief." See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).
Viewing the facts and inferences in a light most favorable to

23

defendants, the court finds that plaintiffs, who have the burden
of persuasion, see Kehr Packages, Inc. v. Fidelcor, Inc., 926
F.2d 1406, 1409 (3d Cir. 1991), are unable to establish that none
of the facts alleged in the counterclaim would entitle defendants
to a judgment in their favor. Consequently, plaintiffs' motion
for failure to state a claim of aiding and abetting is denied.

### 4. Speculative Damages

In addition to challenging the individual counts of
defendants' counterclaim, plaintiffs move for dismissal because
defendants have pled damages that are totally speculative;
consequently, they argue, there is no reason to continue
litigating the counterclaim without a viable claim for damages.
(D.I. 72 at 38-39) Defendants maintain that they have suffered
actual damages due to the near-total devaluation of their equity
interests in ALH. (D.I. 82 at 37-38) Plaintiffs disagree,
stating that, "according to [defendants'] own allegations, their
investment had lost its value long before any of the acts on
which they purport to sue." (D.I. 84 at 17) Plaintiffs fail to
see the causal link between the allegations made in the
counterclaim and the amount of damages defendants are seeking,
and question why defendants chose not to request the difference
between ALH's value immediately before and immediately after
plaintiffs' alleged breaches of duty. (D.I. 72 at 38)   In
addition, plaintiffs believe that defendants' allegations are

24

based on assumptions that "are not susceptible to proof," which would require the court to make similar speculative assumptions in order to award damages.  (Id.)

The events on which defendants' claims are based occurred over a long period of time, during which numerous financial transactions took place.  Because it is not clear that ALH had lost all of its value "long before" plaintiffs' alleged breaches of duty and defendants are not yet required to plead damages with particularity,[14] plaintiffs have not adequately supported their motion for dismissal on the grounds of speculative damages; such motion, therefore, is denied.

## V. CONCLUSION

For the reasons stated above, plaintiffs' motion for judgment on the pleadings is granted in part (as to counts II and III of the complaint) and denied in part (with respect to counts I and VIII of the complaint).  Plaintiffs' motion to dismiss defendants' counterclaim and third party complaint is denied.  An appropriate order shall issue.

---

[14]With regard to damages, Fed. R. Civ. P. 8 requires only that pleadings contain "a demand for judgment for the relief the pleader seeks."  Fed. R. Civ. P. 8(a)(3).

25