IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE ALH HOLDINGS, LLC | ) ) ) | Consol. C.A. No. 04-1339 – SLR |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF THEIR MOTION
TO COMPEL THE CLASS B PARTIES TO PRODUCE DOCUMENTS
CLAIMED AS PRIVILEGED OR FOR *IN CAMERA* INSPECTION AND TO
<u>CONTINUE CERTAIN DEPOSITIONS</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
A. Gilchrist Sparks, III (#467)
S. Mark Hurd (#3297)
Samuel T. Hirzel (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
  *Attorneys for Plaintiffs & Counterclaim
Defendants*

February 1, 2007

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS ............................................................................ i

BACKGROUND ........................................................................................ 2

    A.   This Action ................................................................................ 2

    B.   The "Attorneys" Involved In The Class B Parties'
        Communications .......................................................................... 4

    C.   Initial Correspondence Regarding The Inadequacies Of The
        Class B Parties' Privilege Claims .............................................. 6

    D.   The Class B Parties Provide Revised Privileged Logs And
        Produce Documents Improperly Withheld Based On Claim
        Of Privilege. ............................................................................... 8

    E.   The Lamm Deposition ................................................................ 11

    F.   This Motion ................................................................................ 12

ARGUMENT ............................................................................................ 14

    I.   THE CLASS B PARTIES HAVE FAILED TO SUSTAIN THEIR
        BURDEN OF ESTABLISHING A FACTUAL BASIS FOR
        THEIR CLAIMS OF PRIVILEGE. .......................................... 14

    A.   The Class B Parties Have Not Established That The
        Attorneys Identified On Their Logs Were Acting In Their
        Capacity As Legal Counsel. ....................................................... 15

    B.   The Descriptions In the Privilege Logs Are Patently
        Inadequate. .................................................................................. 17

    C.   The Class B Parties May Not Assert Privilege Over
        Communications In Which Lamm Is Not Acting In His
        Capacity As Managing Member Of SELK. ................................ 19

    II.   THE CLASS B PARTIES' ASSERTIONS OF WORK PRODUCT
        PROTECTION PRIOR TO JANUARY 11, 2004 ARE
        IMPROPER. ............................................................................... 22

    III.  THE CLASS B PARTIES HAVE WAIVED ANY CLAIM OF
        PRIVILEGE BY FAILING TO ADDRESS THE DEFICIENCIES
        IN THEIR PRIVILEGE LOGS IN A TIMELY MANNER. ...... 23

TABLE OF CONTENTS (continued)

Page

CONCLUSION ............................................................................................ 24

TABLE OF CITATIONS

Page(s)

**CASES**

*Applied Biosystems, Inc. v. Cruachem, Inc.*,
    1990 WL 495458 (D. Del. Aug. 3, 1990)    22

*Applied Biosystems, Inc. v. Cruachem, Inc.*,
    C.A. No. 89-579 (JJF), slip op. (D. Del. Oct. 16, 1991)    13, 18, 21-22

*Chao v. Koresko*,
    2005 WL 2521886 (3d Cir. Oct. 12, 2005)    13

*Coastal Corp. v. Duncan*,
    86 F.R.D. 514 (D. Del. 1980)    21-22

*Finley Associates, Inc. v. Sea & Pines Consolidated Corp.*,
    714 F.Supp. 110 (D. Del. 1989)    14

*Grimes v. LCC International, Inc.*,
    1999 WL 252381 (Del. Ch. 1999)    18, 21

*Hercules, Inc. v. Exxon Corp.*,
    434 F. Supp. 136 (D. Del. 1977)    15, 21

*High Plains Corp. v. Summit Res. Mgmt., Inc.*,
    1997 WL 109659 (D. Kan. 1997)    18

*In re Bonanno*,
    344 F.2d 830 (2d Cir. 1965)    14

*RCA Corp. v. Data Gen. Corp.*,
    1986 WL 15693 (D. Del. 1986)    14, 21

*Synalloy Corp. v. Gray*,
    142 F.R.D. 266 (D. Del. 1992)    14

*Texaco, Inc. v. Pheonix Steel Corp.*,
    264 A.2d 523 (Del. Ch. 1970)    14

*U.S. Bank Nat'l Ass'n v. U.S. Timberlands Klamath Falls*,
    2005 Del. Ch. LEXIS 95 (Del. Ch. June 9, 2005)    14

*U.S. v. Kossak*,
    275 F. Supp. 2d 525 (D. Del. 2003)    6-8

*U.S. v. Tedder,*
    801 F.2d 1437 (4th Cir. 1986)      20

*Union Pac. Res. Group, Inc. v. Pennzoil Co.,*
    1997 U.S. Dist. LEXIS 24215 (D. Del. Aug. 12, 1997)      14, 18, 21

*United States v. Construction Products Research, Inc.,*
    73 F.3d 464 (2d Cir. 1996)      18

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.,*
    707 F. Supp. 1429 (D. Del. 1989)      13, 22

## STATUTES, RULES & REGULATIONS

Delaware Rule of Evidence 502      14

Federal Rule of Civil Procedure 26(b)(5)      13, 23

Federal Rule of Evidence 501      14

The current versions of the privilege logs of Defendants and Counterclaim Plaintiffs, A. Arenson Holdings, Ltd., D.A. Gardens, Ltd., J12ALH Associates, SELK, LLC and Laurel Equity Group, LLC (collectively the "Class B Members") and of Shalom E. Lamm ("Lamm") reflect 694 documents withheld and 455 documents redacted purportedly on the basis of attorney-client privilege and the work-product doctrine.[1]  Incredibly, this massive number of allegedly privileged documents is significantly reduced from the number of documents originally withheld from production by the Class B Members and Lamm (together, the "Class B Parties"). The Class B Parties have failed to satisfy their burden of establishing privilege because their logs continue to fail to establish that the attorneys identified were acting in their capacity as legal counsel, because the descriptions provided are facially inadequate, and because many of the documents are not subject to a claim of privilege belonging to the Class B Parties.

Counsel for Plaintiffs and Counterclaim Defendants, Shamrock Holdings of California, Inc., Shamrock Capital Advisors, Inc., Eugene I. Krieger, George J. Buchler and Bruce J. Stein (collectively, "Shamrock") has repeatedly brought these inadequacies to the Class B Parties' attention without adequate resolution.  What has become clear from these efforts is that the Class B Parties have asserted privilege without any legitimate basis for such a claim, as evidenced by the subsequent production of documents from the logs which clearly were not privileged communications and positions taken by the Class B Parties at recent depositions. Further, in light of the Class B Parties' repeated failure to correct the deficiencies in their logs, the Class B Parties have now waived any claim of privilege.  Shamrock respectfully requests an Order compelling the Class B Parties to produce the documents highlighted on the Class B

---

[1]     In stark contrast, Plaintiffs and Counterclaim Defendants assert privilege over only 30 documents.

Parties' privilege logs,[2] or requiring that such documents be submitted for *in camera* review by the Court or a discovery master at. Shamrock also requests that the Court order that certain depositions be resumed and the witnesses ordered to respond to questions as to which privilege was wrongfully asserted.

## BACKGROUND

A.    This Action

This action is the fallout of the parties' failed investment in ALH Holdings, LLC and its affiliated entities ("ALH" or the "Company"). Lamm presented ALH to the parties as a two-year investment opportunity which would acquire home building operations in a roll-up strategy, and then provide the investors with a liquidity event. An entity controlled by Lamm, Lion LLC, was the manager of ALH. Both Shamrock (the largest investor in ALH) and the Class B Members (who participated *pari passu* with Shamrock) lost substantially all of the equity they invested in ALH.

In early 2001, senior management of ALH discovered evidence of misappropriation, misuse of funds and unauthorized expenditures by Lamm and his colleagues.

---

[2]    Filed with this brief is an Appendix of Discovery Material Cited in Plaintiffs' Opening Brief in Support of their Motion to Compel the Class B Parties to Produce Documents Claimed as Privileged or for *In Camera* Inspection and to Continue Certain Depositions. (the "Appendix"). Documents attached to the Appendix are cited and referred to herein as "Exhibit __." Attached as Exhibit A to the Appendix are copies of the current versions of the privilege logs provided by the Class B Parties, modified to include an index number for each entry and color-coded to demonstrate the deficiencies in the logs. Entries colored yellow lack a sufficient basis to ascertain whether the attorney is acting in his capacity as counsel. Entries colored blue lack an adequate description to support a claim of privilege under the circumstances. Entries colored pink reflect communications over which it appears from the logs that ALH and Shamrock would share in any privilege or for which no privilege would attach because persons outside the scope of the privilege are involved in the communication.

Following an investigation, ALH entered into a settlement with Lamm and certain of his associates that resulted in a change in the composition of the Company's Supervisory Board and other changes in the ability of Lamm to influence ALH, as well as obligating Lamm and his associates to make payments of approximately $2 million to ALH. Shortly after the settlement was concluded, the Company's Supervisory Board unanimously determined to sell ALH.

Following substantial but unsuccessful efforts to sell ALH as a whole, ALH's Supervisory Board determined to sell ALH's three operating companies individually. After this sales effort had begun, the Class B Members began to voice opposition to the sale process – notwithstanding the acknowledged need of the Company for additional capital. The Class B Members simultaneously discussed the possibility of buying Shamrock's Class A Membership Interest in ALH, although they never came forward with a term sheet or otherwise proposed concrete terms for such a buyout.

Lamm, who continued to have limited management responsibilities with the Company, has an interest as a Class E Member of the Company which would only be paid after a 27% return to the Class A and B Members. In addition, Lamm owed millions of dollars to the Company and had a minority interest in SELK, which in turn had a Class B membership interest. Through discovery, Shamrock has learned that Lamm recognized that he was in a "conflict" position with respect to his management responsibilities and his creditor status, and determined that he should not be involved in the Class B buyout efforts. Exhibit B ("Lamm Dep.") at 639-40. Nonetheless, it appears that Lamm was in active discussions with Isaac M. Neuberger ("Neuberger") regarding the B buyout efforts – and the actions that the Class B Members might take to forgive his personal debt and renegotiate the terms of his Class E Membership position

upon a liquidity event – and was blind copied on many of Neuberger's emails to the Class B Members.

After Neuberger relayed threats that the Class B Members would sue Shamrock for the Supervisory Board's decision to sell ALH's three operating companies, Shamrock brought an action for, *inter alia*, a declaration that Shamrock did not breach its fiduciary duties. After months of procedural wrangling, including an attempt by the Class B Members to file a mirror-image action in North Carolina eight months after this action was originally filed, the Class B Members asserted counterclaims against Shamrock in this action. Discovery is proceeding and the matter is set for trial in May 2007.

> B.    The "Attorneys" Involved In The Class B Parties'
> Communications

Two individuals with legal degrees, Jonathan Zich ("Zich") and Neuberger were involved substantially in the facts giving rise to this action.[3] In addition to prior service on ALH's Supervisory Board, Zich (like Lamm) holds an equity interest in ALH and provided services to and through Lion LLC, the managing member of ALH.

Neuberger is a named partner in a law firm representing all of the Class B Parties in this action. Long before this action was filed, however, Neuberger was substantially involved in the underlying facts. Among other things, Neuberger:

---

[3]    This involvement included the promotion of ALH to the parties; acting as legal counsel to ALH; ALH's financial difficulties since its inception; Lion LLC's (i.e., Lamm, Zich and John Hourihan ("Hourihan")) mismanagement of ALH; the reconfiguration of the Supervisory Board and the Shamrock Consulting Agreement; the Supervisory Board's efforts to find a buyer for ALH as a whole; the Class B Members' (collective) determination to voice their opposition to the sale of the three operating companies; ALH's negotiations with critical lenders; and the Class B Members' "buyout" out discussions.

- was involved in identifying a possible buyer for ALH;

- conveyed to Shamrock the Class B Members' opposition to the sale of ALH's operations;

- sought to attend meetings of ALH's Supervisory Board;

- acted as a confidant to Lamm regarding his personal debts to ALH and participated in discussions between Lamm and Lamm's personal attorney regarding the Company's efforts to collect on Lamm's debts to the Company;

- participated in the Class B Members' "buyout" strategy sessions – including suggesting actions that Lamm could take in his management role to assist the Class B Members' buyout efforts; and

- made threats that led to the filing of this declaratory judgment action.

Neuberger's role was not limited to the role of a legal advisor. Rather, he was actively involved in the business aspects of the Class B Members' investment in ALH and their negotiations with Shamrock regarding a potential buyout of Shamrock's interests. He also acted as a finder in seeking to acquire ALH. Lamm Dep. at 412. Avie Arenson ("Arenson"), the Class B Representative on ALH's Supervisory Board, testified that although Neuberger did *not* represent him in his capacity as the Class B Representative of ALH's Supervisory Board, by July 2002, he was copying Neuberger on *all* of his ALH related emails. Exhibit C ("Arenson Dep.) at 18-19 & 241. Lamm testified that Neuberger "considered himself a part of the company in a real way." Lamm Dep. at 501.

The Class B Parties' counsel has represented that Neuberger and his firm have represented Class B Member SELK (of which Lamm has attested he is the managing member and holds a 30% membership interest) since 1997 and produced a client matter form reflecting

that representation.[4]  Exhibit D.  Counsel also represented that their "communications with Shalom Lamm were in his capacity as managing member of SELK and are therefore privileged."[5] *Id.* The Class B Parties' counsel also indicated that Neuberger came to represent the other Class B Members in February 2002, although neither the Class B Members, nor Neuberger's firm, were able to produce any retention letters reflecting when the Class B Members retained Neuberger or his law firm, other than for the SELK/Konig representation begun in 1997.[6]

####     C.    Initial Correspondence Regarding The Inadequacies Of The Class B Parties' Privilege Claims

The Class B Parties produced documents designated from two separate sources: the Class B Members, which bear the bates designation "B" or "CLASSB"; and Lamm, which bear the designation "L."

The Class B Parties' initial document production included a substantial number of emails with block redactions.  The redactions were not limited to specific lines in the email, but included large chunks of text, including what appeared to be the identity of the senders,

---

[4]    That client matter form actually indicates that the client is Michel Konig and identifies American Landmark Homes Corporation, John D. Hourihan and Lion & Lamm Development, Inc. as "Adverse Interests."  *See* Exhibit D.

[5]    Lamm testified that Neuberger and his firm represented him only as managing member of SELK, in connection with his deposition in this action and in connection with an unrelated business opportunity in Dublin, Ohio.  Lamm Dep. at 17-20, 22-23.

[6]    It is well settled that "in the absence of unusual circumstances, the [attorney-client] privilege does not shield the fact of retention, the identity of clients, and fee arrangements." *U.S. v. Kossak*, 275 F. Supp. 2d 525, 533 (D. Del. 2003) (quoting *In re Grand Jury Investigation (Tinari)*, 631 F.2d 17, 19 (3d Cir. 1980) & *In re Grand Jury*, 789 F.Supp. 693, 695 (D. Md. 1992) (noting that case law overwhelmingly supports the proposition that the privilege does not cover disclosure of fee payments)).

recipients, copies, dates, and subject lines of emails together with the entire text of emails in email chains.

Upon receiving the privilege logs for the "Class B" production, Shamrock's counsel requested a teleconference. *See* Exhibit E. Shamrock conveyed, *inter alia*, that: (1) the descriptions contained in the Class B Members' privilege log were grossly inadequate; (2) in many instances it appeared that attorneys were providing business and not legal advice; and (3) the redaction of names, dates, and generalized descriptions from electronic documents was not proper because that is the type of non-privileged material that is required to be provided in a privilege log. The Class B Parties' counsel represented that he would evaluate the descriptions and provide a revised "Class B" privilege log. Exhibit F.

On October 3, 2006, the Class B Parties produced revised privilege logs for the "Class B" portion of their document production and indicated that they would be producing their privilege log for the "Lamm" document production in the near future. Exhibit D. The Class B Parties' counsel further indicated that the communications between Neuberger and Lamm were in Lamm's "capacity as managing member of SELK and [] therefore privileged." *Id.* The Class B Members' October 3 letter also indicated that the Class B Parties would not correct the improper redactions because they subsequently included the (improperly) redacted material in their privilege logs. *See id.* On October 10, 2006, they produced the "Lamm" privilege logs.

On November 10, 2006, Shamrock again wrote to address the deficiencies in the Class B Parties' privilege logs. Exhibit G. Counsel for the Class B Parties indicated that they would like to discuss the matter and subsequently indicated that the Class B Parties would again revise their privilege logs.

On November 16 & 17, 2006, Shamrock took the deposition of Arenson, the Class B Members' representative on ALH's Supervisory Board. During the deposition, the Class B Members' counsel instructed Arenson not to discuss the substance of meetings between the Class B Members when Neuberger was present,[7] not withstanding that non-legal discussions regarding, *inter alia*, the Class B Members' investment and buyout plans, plans for ALH in the event of buyout, renegotiation of Lamm's debt obligations and interests in the event of a liquidity event (*i.e.,* business information), would not be privileged simply because Neuberger was in attendance at a meeting where these matters were discussed.  *See* Arenson Dep. at 76-77 (asserting that "*all*" discussions with Neuberger were "in his legal capacity")

      D.    The Class B Parties Provide Revised Privileged Logs And Produce Documents Improperly Withheld Based On Claim Of Privilege.

On November 22, 2006, after Arenson's deposition, the Class B Members produced a second set of revised privilege logs for the "Class B" production, supplemented the "Class B" production with documents previously withheld as privileged and indicated that revised privilege logs for the "Lamm" production would follow shortly. Many of the documents previously withheld as privileged and belatedly produced were *clearly* not privileged. For example:

---

[7]    During the Arenson Deposition, the Class B Members also recalled a document (Class B4483) as an "inadvertently produced" privileged document. Arenson Dep. at 256-57. Class B 4483 was an email chain in which Neuberger and Arenson communicated regarding the Class B Members' interest in pursuing a buyout of the Class A Membership interests. Although portions of that communication may be subject to a legitimate claim of privilege, other portions – such as conditions the B Members' required in the event of a possible acquisition of the A interests – reflect neither a request for, nor the rendition of, legal advice.

- CLASSB001421 is simply a forward from Mr. Neuberger of a link to www.ohiosavings.com;

- CLASSB01507, 1634, 1769, & 1454-56 are forwards of magazine or newspaper articles;

- CLASSB01674, 1486, 1662, 1781-82, 1783, 1575 & 1755 are communications setting up meetings or summarizing meetings that do not convey legal advice;

- CLASSB01488, 01489, 01660 merely relay statements allegedly made by Shamrock;

- CLASSB01666-70, 1652 & 1474 are forwards of non-privileged documents; and

- CLASSB01702, 1703, 1651, 1493, 1494, 1496, 1646, 1501, 1640, 1502, 1504, 1601, 1569, 1553, 1784, 1552, 1457, 1772, 1449, 1641, 1637, 1627, 1579, 1726, 1766, 1458, are communications about business related topics such as developments with ALH's lenders, business results, and communications with ALH management that do not concern legal advice and which, in any event, Shamrock would share in any privilege that would attach.

Examples of these documents are attached hereto as Exhibit H. Incredibly, the Class B Parties had not once, but twice, provided logs falsely representing that the documents were privileged.

On December 12, 2006, the Class B Parties produced revised "Lamm" privilege logs and supplemented their production with documents previously withheld as privileged. Again, many of the documents produced were clearly not privileged, notwithstanding the Class B Parties' prior representation that they were.[8] Some of the more egregious examples include documents previously withheld as privileged not because they included communications regarding legal advice, but rather because they included inflammatory language. For example,

---

[8] The Lamm privilege logs continue to reflect a small number of communications between Lamm and Zich, and the Class B Members have now produced most of the documents for which no attorney was identified at all, but the privilege logs still reflect a few such documents, one of which is now withheld on the basis of a "relevance" objection. Exhibit A.

the Class B Parties previously redacted L3610U in which Lamm forwards George Buchler's request that Lamm arrange the facilities for a board meeting in New York City to Zich stating:

> "Do you believe the Chutzpah of this f[]ing guy. He treats me like his f[]ing secretary. I am going to respond that he has a phone just as well as I do."

Exhibit I. The Class B Members also withheld the follow-up correspondence between Lamm and Zich in its entirety in which Zich states:

> "He is unbelievable. They have a staff at SCA – they can do it. The telephone is no harder to use 3000 miles away." [Lamm then responded] "This flaming a[]hole sent me a curt follow up email directing me to follow up with Kerry Heapes at ALH."

Exhibit J. Lamm's inflammatory language is conspicuously missing from the follow up email that was ultimately produced, but that document is not designated as "Redacted" on the face of the document, nor is this document identified on the "L" redaction log. Even assuming (wrongly) that Zich was acting in his capacity as an attorney, there was clearly no legal advice in any of these communications. That counsel for the Class B Parties would represent that they were privileged by placing them on a privilege log is troubling and calls into question the *bona fides* of the Class B Parties' other claims of privilege.[9]

Additional examples of documents clearly not privileged that were initially withheld by the Class B Parties in the Lamm production include the following:

- L13012 is a fax cover sheet from Neuberger to Lamm indicating that a Unanimous Written Consent is attached;

- L13048 is an email from Lamm to the Class B Members voicing his dissent to the sale of operations and updating them on ALH's operations;

---

[9]    Based on information available to plaintiffs, we have no reason to believe that the Class B Parties' Delaware counsel was involved in these preposterous assertions of privilege.

- L13133-92 & L13193-259 are emails from Lamm to Zich attaching a redlined settlement agreement between ALH and one of its lenders and proposed resolutions to be adopted at the meeting of the Supervisory Board approving the settlement agreement between ALH and the lender;

- L13349-52 is an email from Lamm to Arenson and Neuberger forwarding the notes of ALH's CFO of a mediation that he attended on behalf of ALH;

- L13353 is an email from Lamm to Neuberger attaching a spreadsheet reflecting Lamm's financial analysis of a sale of ALH at $105 Million;

- L14046 is an email chain between Lamm & Zich regarding the amount of the capital contributions of the Class B Members;

- L14052-53 is an email from Lamm to Arenson and Neuberger updating them on Shamrock's response to Neuberger's letter to Shamrock regarding a Class B Buyout;

- L14054-55 is an email from Lamm to Neuberger seeking to set up a conference call;

- L14113-14 is an email from Lamm to Neuberger indicating that he had a call with Shamrock where Shamrock sought to elicit from him what the B's would pay for ALH;

- L14148 is an email from Lamm to the Class B Members and Neuberger updating them on a conversation that he had with ALH's CFO regarding one of ALH's lenders not renewing a construction line;

- L3131U reflects Arenson's email to Shamrock indicating that some of the B investors were interested in making a buyout offer to Shamrock. The Class B Parties had previously redacted Lamm's forward of this email to Zich stating in its entirety "Interesting!?!? – Shalom."

Examples of these documents are attached hereto as Exhibit K. The fact that these documents were withheld in the first instance heightens Shamrock's concerns regarding the impropriety of the Class B Parties' continuing privilege assertions.

### E.    The Lamm Deposition

At Lamm's deposition, the Class B Parties' counsel instructed Lamm not to answer questions regarding Lamm's discussions with Neuberger regarding the Company's

efforts to collect Lamm's *personal* debts to the Company and Lamm's efforts to renegotiate the 27% return to the Class A and B member's prior to payment of Lamm's Class E membership interest. Lamm Dep. at 293-94. Lamm and the Class B Parties took the position that Lamm was seeking Neuberger's advice in his capacity as managing member of SELK because the Company's efforts to collect on Lamm's personal debts and Shamrock's unwillingness to renegotiate agreed to contractual terms risked the stability of the Company because it could have caused Lamm to quit as manager of ALH. Lamm Dep. at 294. This make-weight argument seeking to cloak in privilege Neuberger's communications with Lamm in Lamm's personal capacity does not pass the red-face test.

In addition, the Class B Parties' counsel instructed Lamm not to answer questions regarding Neuberger's advice to Lamm *regarding Lamm's decisions as a member of the Company's Supervisory Board* to award Shamrock a fee for its efforts in connection with the sale of ABI. Lamm Dep. at 606-11. The Class B Parties' also claim that these communications were in Lamm's capacity as the managing member of SELK. SELK, however, was not a member of the Supervisory Board and had no decision making authority on the Supervisory Board. Again, the Class B Parties are improperly attempting to cloak Neuberger's communications with Lamm in capacities other than as a managing member of SELK in attorney-client privilege.

F.    This Motion

As outlined above, Shamrock has repeatedly raised is concerns regarding the Class B Parties' improperly broad view of privilege, and failure to provide an adequate basis for such claims in their privilege logs. In light of Neuberger's active role in the facts giving rise to this action, the Class B Parties' prior claims of privilege with respect to documents that clearly were not privileged and repeated failure to provide adequate privilege logs, it appears that the

Class B Parties are using the guise of privilege to withhold documents which are damaging to their case.  Shamrock accordingly requests an order requiring the Class B Parties to produce all documents highlighted on Exhibit A or, alternatively, an *in camera* inspection by the Court or a discovery master appointed at the Class B Members' expense.

ARGUMENT

I.    THE CLASS B PARTIES HAVE FAILED TO SUSTAIN THEIR
      BURDEN OF ESTABLISHING A FACTUAL BASIS FOR
      THEIR CLAIMS OF PRIVILEGE.

      The Class B Parties have made extensive claims of privilege without adequate

basis or support in their logs, and have failed to meet their burden of establishing the factual

basis for their assertions of privilege.  The attorney-client privilege applies only when:

> (1) the asserted holder of the privilege is or sought to become a
> client; (2) the person to whom the communication was made (a) is
> a member of the bar of a court, or his subordinate and (b) in
> connection with the communication is acting as a lawyer; (3) the
> communication related to facts of which the attorney was informed
> (a) by his client (b) without the presence of strangers (c) for the
> purpose of securing primarily either (i) an opinion of law or (ii)
> legal services or (iii) assistance in some legal proceeding, and not
> (d) for the purpose of committing some crime or tort; and (4) the
> privilege has been (a) claimed and (b) not waived by the client.

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1442-43 (D.

Del. 1989).  *See also Applied Biosystems, Inc. v. Cruachem, Inc.*, C.A. No. 89-579 (JJF), slip op.

at 4 (D. Del. Oct. 16, 1991); DRE 502.  Because the Class B Parties withheld documents on the

basis of the attorney-client privilege, they must comply with Fed. R. Civ. P. 26(b)(5):

> [t]he party shall make the claim [of privilege] expressly and shall
> describe the nature of the documents, communications, or things
> not produced or disclosed in a manner that, without revealing
> information itself privileged or protected, will enable other parties
> to assess the applicability of the privilege or protection.

A privilege log must "describe the nature of the documents . . . in a manner that . . . will enable

other parties to assess the applicability of the privilege or protection."  *Chao v. Koresko*, 2005

WL 2521886, at *4 (3d Cir. Oct. 12, 2005); FED. R. CIV. P. 26(b)(5).  *See also Applied*

*Biosystems*, slip op. at 5 (stating that one purpose of a proper designation is to "enable opposing

counsel…to intelligently determine whether to challenge the claim of privilege.").  Privilege logs

must contain specific facts that, if true, would establish each element of the privilege. *RCA Corp. v. Data Gen. Corp.*, 1986 WL 15693, at *4 (D. Del. 1986) (Exhibit L). A privilege log that recites mere conclusory or *ipse dixit* assertions is not sufficient. *Union Pac. Res. Group, Inc. v. Pennzoil Co.*, 1997 U.S. Dist. LEXIS 24215 (D. Del. Aug. 12, 1997) (Exhibit M); *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965) ("That burden is not, of course, discharged by mere conclusory or *ipse dixit* assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed."). The Class B Parties' privilege logs fall far short of the standards required to sustain their claims of privilege.

> A.   The Class B Parties Have Not Established That The Attorneys Identified On Their Logs Were Acting In Their Capacity As Legal Counsel.

Under Delaware law, the attorney-client privilege protects communications between a client and his attorney only when the attorney is acting in his professional capacity for the purpose of facilitating the rendition of legal advice.[10] DRE 502; *Texaco, Inc. v. Pheonix Steel Corp.*, 264 A.2d 523 (Del. Ch. 1970); *U.S. Bank Nat'l Ass'n v. U.S. Timberlands Klamath Falls*, 2005 Del. Ch. LEXIS 95, at *5 (Del. Ch. June 9, 2005). Business advice and underlying facts are not protected by the attorney-client privilege. *See, e.g., Synalloy Corp. v. Gray*, 142 F.R.D. 266, 269 (D. Del. 1992) (citing *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1037 (2d Cir. 1984) ("[T]he privilege is triggered only by a clients request for legal, as contrasted with business, advice."); *Coleman v. American Broadcasting Cos., Inc.*, 106 F.R.D. 201, 205-06 (D.D.C. 1985) ("Business and personal advice

---

[10]   Federal Rule of Evidence 501 provides that state law governs the scope of the attorney-client privilege in this diversity action. *E.g., Finley Associates, Inc. v. Sea & Pines Consolidated Corp.*, 714 F.Supp. 110, *116 (D. Del. 1989).

are not covered by the privilege.")).  "Only if the attorney is 'acting as a lawyer' giving advice with respect to the legal implications of a proposed course of conduct may the privilege be properly invoked." *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 147 (D. Del. 1977).

The Class B Parties' privilege logs include many instances in which it appears from the descriptions that Neuberger was providing business advice, communicating underlying facts or acting as a conduit for information -- *not* rendering legal advice.  For example, Neuberger is the sender or recipient of many emails over which the Class B Parties are claiming privilege described in the privilege logs as follows:

- "Email re: Valuation of ALH;"

- "Email re: Walter Industries;"

- "Email re: Lamm conversation with Buchler re: potential B buyout;"

- "Email re: Walter deal and mediation in Bowden litigation;"

- "Email re: Impact of Bowden litigation on B-buyout and Konig's loan;"

- "Email re: conversation with Buchler;"

- "Email re: Future of ALH;"

- "Email re: Execution of JMP Engagement Letter Extension;"

- "Email re: Swiss Re extension and sale of Bowden;"

- "Email re: Strategy for negotiations with Shamrock;"

- "Email re: Update on status of ALH;"

- "Email re: Options for ALH Investment;"

- "Email re: Walter Industries deal and conversation with Buchler and Kreiger re: Sale of Bowden;"

- "Email re: Conversation with Lanius [ALH's CFO] re: Swiss Re;"

- "Email re: Conversation with Lanius and Class B strategy;"

- "Potential 'B' Buyout;" and

- "Summary of conference with Shamrock re: sale of BBC."

These descriptions do not support a claim of privilege because they do not indicate that Neuberger was rendering legal advice. To the contrary, these cryptic descriptions – considered in the light of Neuberger's substantial role in the business aspects of the Class B Parties' investment, the sale process, and the potential "buyout" of Shamrock's interests by the Class B Members, as well as in the context of the completely unsupported assertions of privilege made by the Class B Parties – strongly suggest that the communications are *not* privileged. Accordingly, the Class B Parties should be ordered to produce all the documents highlighted in yellow on Exhibit A or, alternatively, Shamrock requests an Order compelling the Class B Parties to submit these documents for *in camera* inspection.

> B.    The Descriptions In the Privilege Logs Are Patently Inadequate.

The Class B Parties' descriptions of the documents that they are claiming as privileged are patently inadequate to sustain their burden with respect to their privilege claim – especially in light of the extensive non-legal activities of Neuberger and Zich. Examples of facially insufficient descriptions include:

- "Email re: Valuation of ALH;"

- "Email re: Future of ALH;"

- "Email re: Update on the status of ALH;"

- "Email re: Potential "B" Buyout;"

- "Email re: Execution of proposed resolutions;"

- "Conversation with Lanius and Class B strategy;" and

- "Email re: Effect of Wachovia forbearance agreement on Class B interest."

The Lamm logs suffer from similar deficiencies. Examples of facially insufficient descriptions include:

- "Email re: Status of potential B buyout;"

- "Email re: Strategy for dealing with Shamrock;"

- "Email re: Strategy for dealing with ALH;"

- "Email re: Meeting with Arenson;"

- "Email re: Strategy for class B future of ALH;"

- "Email re: Execution of Walter Industries Purchase of Bowden;"

- "Email re: Agenda for meeting with Goldberg", a banker;

- "Email re: Execution of letter of intent;"

- "Email re: Estimate of proceeds of a sale of ALH;"

- "Email re: Opposition to sale of BBC;"

- "Email re: Lamm Phone call [with Neuberger] re: SwissRe Meeting;"

- "Email re: Execution of [J]MP Engagement Extension;"

- "Email re: Modified Draft of document to exclude litigation strategy;"

- "Email re: J. Zich's Conversation with Counsel for Swiss Re;"

- "Email re: Correspondence with ALH Board;"

- "Email re: Response to fax from Elovic;"

- "Email re: Communication with LaGuardia, Lanius and Buchler;"

- "Email re: Execution of proposed resolutions;" and

- "Email re: Lamm confession of Judgment."

These descriptions of communications regarding valuation, conversations with third parties and the like are facially inadequate to support any claim of privilege. *See United States v. Construction Products Research, Inc.,* 73 F.3d 464, 473 (2d Cir. 1996); *High Plains Corp. v. Summit Res. Mgmt., Inc.,* 1997 WL 109659, at * 1 (D. Kan. Feb. 12, 1997) ; *Union Pac.,* 1997 U.S. Dist. LEXIS 24215, at *4 (holding that descriptions such as "Resources Spinoff" and "Potential Transaction" are "facially inadequate"); *Applied Biosystems,* slip. op. at 6. Shamrock requests an Order compelling the Class B Members to produce the documents highlighted in Blue on Exhibit A or requiring that all such documents be submitted for *in camera* inspection.

> C.   The Class B Parties May Not Assert Privilege Over Communications In Which Lamm Is Not Acting In His Capacity As Managing Member Of SELK.

"To be protected under the attorney-client privilege, a document must be or contain a confidential communication made between a client and his lawyer (or the representatives of the client and the lawyer, or among the lawyers and their representatives representing the same clients) for the purpose of facilitating the rendition of legal services to the client." *Grimes v. LCC International, Inc.,* 1999 WL 252381, at *1 (Del. Ch. 1999); DRE 502(b). No privilege attaches when an attorney communicates with a non-client. *Id.* The Class B Parties' privilege logs reflect numerous communications between Lamm and Neuberger that appear, contrary to the representation that privileged "communications with Lamm were in his capacity as managing member of SELK," to be in Lamm's personal capacity or in his capacity as Lion LLC, the managing member of ALH. For example, the Class B Parties have claimed privilege over communications between Lamm and Neuberger regarding:

- "Execution of Unanimous Written Consent and Contribution Agreement;"
- "Execution of proposed resolutions;" and

- "Lion & Lamm Confession of Judgment."

The Lamm privilege logs reflect many communications in which Neuberger is also the sender or recipient of emails with Lamm (which the Class B Parties' counsel represented were in Lamm's capacity as the managing member of SELK and therefore privileged) regarding topics described as:

- "Email re: Draft of Letter to Board Members re: Audit Rep Letter;"

- "Email re: Response to Kreiger Memo," "Email re: Response to e-mail from Buchler," and "Email re: Strategy for dealing with Shamrock" at a time that appears to coincide with Kreiger's questions regarding Lamm's personal finances and ability to honor his financial commitments to ALH;

- "Email re: JMP Engagement Letter Extension and Elovic correspondence;"

- "Email re: Execution of Engagement Letter Extension;"

- "Email re: Lamm confession of judgment;"

- "Email re: J. Zich's Conversation with Counsel for Swiss Re;"

- "Correspondence re: Strategy for meeting with JMP, meeting of division presidents;"

- "Email re: Execution of Unanimous Written Consent and Contribution Agreement;" and

- "Email re: Execution of proposed resolutions."

From these descriptions, it seems doubtful that each of these communications was for the purpose of rendering legal advice to Lamm in his capacity as managing member of SELK. To the contrary, the descriptions provided do not suggest that legal advice is being sought or provided, and are inconsistent with the representation that the communications were in Lamm's capacity as managing member of SELK. Rather, they appear to be communications in Lamm's personal capacity or capacity as the manager of ALH or a member of the ALH's Supervisory

Board.[11]   In such circumstances, Lamm does not have an attorney-client relationship with Neuberger.  Therefore no privilege attaches to such communications.  Moreover, to the extent that Lamm was seeking legal advice in his capacity as the manager of ALH, ALH would share in any privilege that attaches.

Finally, the Class B Parties have claimed privilege over communications between Lamm, Lamm's personal attorney Jay Lobell ("Lobell") and Neuberger regarding:

- "Email re: Lamm confession of Judgment;"

- "Email re: Status of dispute with Shamrock;"

- "Email re: Strategy for potential buyout of Shamrock and resolution of Lamm dispute with Shamrock/ALH."

Neuberger represented Lamm only in his capacity as managing member of SELK.  Neuberger did not represent him in his personal financial disputes with the Company (and/or Shamrock). Thus, Lamm was not a client of Neuberger's for purposes of the attorney-client privilege.  Nor would the Class B Parties have a common interest with Lamm in such disputes.  Indeed, the Class B Members, like Shamrock, would have benefited from ALH's recovery of the millions of dollars that Lamm owed to the ALH.  The presence of third parties during an attorney-client communication destroys the privilege.  3 Weinstein's Federal Evidence § 503.15[3].  While Lamm may have a privilege with his personal attorney, Lobell, when Neuberger is copied on those communications no privilege attaches.  Because the Class B Members may not assert privilege over such communications, Shamrock requests an Order compelling the Class B Parties

---

[11]     Lamm testified that he sought Neuberger's assistance with the Company's efforts to collect his debts because he was a trusted friend.  Lamm Dep. at 279.  Communications with a friend or confidant who is an attorney are but was not representing the person asserting privilege are not privileged communications.  *See U.S. v. Tedder*, 801 F.2d 1437, 1441-42 (4th Cir. 1986).

to produce the documents highlighted in Pink on Exhibit A or that these documents be submitted for *in camera* inspection by the Court or a discovery master.

Finally, it is possible that many of the disputed documents do not disclose in any clear-cut way which hat Neuberger (or Lamm) was wearing with respect to the communications. The burden is on the party asserting privilege to describe the communication in sufficient detail to show specific facts that, if true, would establish each element of the privilege. *See, e.g.*, *RCA*, 1986 WL 15693, at *4; *Applied Biosystems*, slip op. at 5 *Union Pac. Res. Group*, 1997 U.S. Dist. LEXIS 24215. To the extent that the existence of an attorney-client relationship is not clear, the assertion of privilege must be resolved against the Class B Parties. *Grimes,* 1999 WL 252381, at *2. Lamm and Neuberger created this privilege quagmire and should not benefit from it. *See id.*

II.    THE CLASS B PARTIES' ASSERTIONS OF WORK PRODUCT PROTECTION PRIOR TO JANUARY 11, 2004 ARE IMPROPER.

Work-product protection is limited to those documents "prepared in anticipation of litigation." FRCP 23(b)(3); *Coastal Corp. v. Duncan*, 86 F.R.D. 514, 522 (D. Del. 1980); *Hercules Inc. v. Exxon Corp.*, 434 F.Supp. 136, 150-51 (D. Del. 1977). This is because "the policy behind this rule is not to protect all recorded opinions, observations and impressions of an attorney made in connection with any legal problem, but to protect the integrity of the adversary process." *Id.* An assertion of work-product protection is proper only when a party can point "with specificity to the litigation anticipated." *Coastal Corp.*, 86 F.R.D. at 522.

The Class B Parties have asserted work-product protection over communications on the Lamm privilege logs as early as September 25, 2001 and on the Class B privilege logs as early as November 11, 2002. The first indication that the Class B Members intended to pursue litigation, however, is on or about January 11, 2004 when Lamm writes to Zich:

> "[t]he B's are, indeed, going to sue Shamrock. They are retaining
> a super-powerful lawyer in DC by the name of Dale Kooter.
> Apparently, he is a paid assassin. . . . Isaac's only concern is that
> the SCA may try to turn this whole thing back on us. . . ."

Exhibit L.   Then there is a flurry of emails, over which the Class B Parties have asserted

privilege, on January 22, 2004, described as "Email re: Retaining North Carolina lawyer for

litigation." Prior to January 11, 2004, there was no litigation to be anticipated and the assertions

of work-product protection are therefore improper.


III.   THE CLASS B PARTIES HAVE WAIVED ANY CLAIM OF
       PRIVILEGE BY FAILING TO ADDRESS THE DEFICIENCIES
       IN THEIR PRIVILEGE LOGS IN A TIMELY MANNER.

Notwithstanding the repeated requests from Shamrock that the many inadequacies

in the privilege log be corrected, the Class B Parties have not done so in a timely manner.

Shamrock raised its concerns, the Class B Parties then produced numerous documents which had

been included on their logs but for which no good faith claim of privilege could exist, and

provided revised and twice revised logs that still failed to comply with their obligations. As

Judge Roth made clear in *Applied Biosystems*, the failure to timely correct deficiencies regarding

privilege assertions justifies a finding of waiver. *See Applied Biosystems, Inc. v. Cruachem, Inc.*,

1990 WL 495458, at *2 (D. Del. Aug. 3, 1990); *see also Apollo Computer*, 707 F. Supp. at 1443-

44 (disallowing plaintiff to modify its privilege log and stating "Plaintiff will not be permitted at

this time to embellish insufficient descriptions to avoid complying with defendant's legitimate

discovery requests."); *Coastal Corp.*, 86 F.R.D. at 523 (noting that "[p]erhaps the DOE

anticipated receiving from this Court yet another opportunity to properly support its claims of

privilege, . . . reason and experience, dictate that this procedure no longer be followed.").

The Class B Parties have repeatedly produced facially inadequate privilege logs,

failed to revise them to conform with Rule 26 in a timely manner, and when pressed to provide

revised and twice revised logs, subsequently produced documents which demonstrate that prior assertions of privilege were not made in good faith.  Under these circumstances, a finding of waiver is appropriate.

CONCLUSION

For the foregoing reasons, Shamrock requests that the Court Order the Class B Parties to produce all documents that Plaintiffs have highlighted on Exhibit A, conduct an *in camera inspection* of those documents or appoint a Discovery Master at the Class B Parties' expense.  Shamrock also requests an Order requiring Avie Arenson and Shalom Lamm to appear for a continuation of their depositions and Order them to answer all questions as to which an in improper claim of privilege was asserted and regarding documents improperly withheld as privileged.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

A. Gilchrist Sparks, III (#467)
S. Mark Hurd (#3297)
Samuel T. Hirzel (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
  *Attorneys for Plaintiffs & Counterclaim
  Defendants*

February 1, 2007
676930.6