TAB 1

Westlaw.

Not Reported in F.Supp.                                                                    Page 1
Not Reported in F.Supp., 1990 WL 495458 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

C

Briefs and Other Related Documents
Applied Biosystems, Inc. v. Cruachem, Inc.D.Del.,1990.Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
APPLIED BIOSYSTEMS, INC., Plaintiff,
v.
CRUACHEM, INC., Defendant.
**Civ.A. No. 89-579-JRR.**

Aug. 3, 1990.

Jeffrey M. Weiner, Wilmington, DE (Arthur M. Lieberman, David A. Kalow and Henry Pitman, of Lieberman, Rudolph & Nowak, New York City, of counsel).
Donald F. Parsons, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, DE (Robert J. Koch and David M. Foster, of Fulbright & Jawroski, Washington, DC, of counsel).

MEMORANDUM OPINION
ROTH, District Judge.
**\*1** Plaintiff Applied Biosystems ("ABIO") commenced this action for patent infringement on October 20, 1989, against defendant Cruachem, Inc. ("Cruachem"). ABIO alleges that Cruachem has infringed U.S. Patent Nos. 4,415,732 and 4,458,066, of which ABIO is the exclusive licensee. The patents-in-suit involve methods and chemistries for constructing DNA fragments in the field of biotechnology and genetic engineering. Cruachem denies infringement and asserts that the patents-in-suit are invalid. Cruachem also counterclaims under section 2 of the Sherman Act, 15 U.S.C. § 2, the Virginia Antitrust Act, Va.Code Ann. § 59.1-9.6, and asserts patent misuse by ABIO. ABIO has moved to sever the patent issues in this case from the antitrust issues and to stay discovery of the antitrust issues. ABIO's motion is presently before the Court.

Also before the Court is Cruachem's motion to compel discovery. Both parties filed motions to compel discovery in December, 1989. The Court denied these motions in open court on January 26, 1990, and strongly encouraged the parties to resolve their discovery disputes on their own. Later, on May 8, 1990, the Court entered a stipulated scheduling order which provided that production in response to

first requests for documents be completed by May 17, 1990. Cruachem moved to compel when ABIO failed to comply with this order. We will deal with each motion in turn.

I. *Cruachem's Motion to Compel*

Discovery in this case is governed by the stipulated scheduling order of May 8, 1990. (D.I. 35) Paragraph 1(a) of that order provides:
Production in response to first requests for documents under Fed.R.Civ.P. 34. This discovery, including identification of documents being withheld from production on grounds of attorney-client privilege or work-product immunity, shall be completed in accordance with the Federal Rules of Civil Procedure by May 17, 1990.

Despite this order, on May 17 ABIO withheld production of documents that it deems related to the antitrust claims, served no objections under Fed.R.Civ.P 34, submitted a "draft" list of privileged documents, and did not produce a "final" list of privileged documents until June 14. ABIO does not interpret the order to require it to conduct discovery on the antitrust issues in this case because of its pending motion to sever the antitrust issues from the patent issues. This amounts to a unilateral stay of discovery on antitrust issues by ABIO.

This Court dealt with a similar situation in *Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.,* 707 F.Supp. 1429 (D.Del.1989). In that case the defendant moved for a separate trial on damages and to stay discovery on damages. The defendant then refused to respond to discovery on damages pending a hearing on its motion to sever. This Court ruled that "unless and until it is granted a stay, defendant should be required to conduct discovery as if no motion had been filed at all." *Willemijn,* 707 F.Supp. at 1441.

**\*2** So here, the fact that ABIO has pending a motion to sever antitrust issues from patent issues does not impact upon its duty under the Federal Rules of Civil Procedure and under the stipulated order to conduct discovery on all issues in this case. In fact, ABIO's motion to sever was not filed until the day after the May 17 discovery deadline. ABIO's motion has no effect on its duty to provide discovery, and, even if it

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 2
Not Reported in F.Supp., 1990 WL 495458 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

did, the deadline had come and gone before it was filed. ABIO will be ordered to respond fully to Cruachem's first request for production of documents within two weeks of this memorandum opinion.

ABIO may assert the attorney-client privilege for those documents listed on ABIO's "draft" privileged document list on May 17. The attorney-client privilege is waived as to all documents not listed as of May 17. *See, e.g., Krewson v. City of Quincy,* 120 F.R.D. 6, 7 (D.Mass.1988) (defendant waived objections to document request by failing to serve timely response); *Perry v. Golub,* 74 F.R.D. 360, 363 (N.D.Ala.1976) (objection on the grounds of privilege waived by failure to file timely objection); *United States v. 58.16 Acres of Land,* 66 F.R.D. 570, 572 (E.D.Ill.1975) ("an objection that the information sought is privileged, is waived by a failure to make it within the proper time limits"). ABIO, as the party asserting the attorney-client privilege, bears the burden of showing it is entitled to the privilege. *Willemijn,* 707 F.Supp. at 1443; *International Paper Co. v. Fiberboard Corp.,* 63 F.R.D. 88, 93 (D.Del.1974). ABIO's service of a "final" list of privileged documents on June 14 does not cure its failure to comply with the May 17 deadline or its failure to assert privilege as to documents left off its "draft" list. ABIO may, however, augment its description of those documents listed as privileged as of May 17 if it deems added description to be necessary. We permit this unorthodox procedure only because ABIO apparently believed in good faith that it was not required to do more than list its privileged documents by the May 17 discovery deadline. We note, however, that the settled law in this District is to the contrary. *See Willemijn,* 707 F.Supp. at 1443 (denying party opportunity to augment its description of privileged documents in its brief).[FN1]

## II. *ABIO's Motion to Sever Trial and to Stay Antitrust Discovery*

Turning to ABIO's motion to sever the antitrust issues from the patent issues, we note that Cruachem does not seriously oppose ABIO's request to sever these issues for trial. Separate trials in this case would be "in furtherance of convenience [and] conducive to expedition and economy." Fed.R.Civ.P. 42(b). Both the patent and antitrust aspects of this case will require extended trials involving complex issues. Accordingly we will sever this case for trial on the merits. *See In re Innotron Diagnostics,* 800 F.2d 1077, 1084 (Fed.Cir.1986).

For the following reasons, however, we will not stay antitrust discovery. It is within this Court's discretion to decide whether to limit discovery on issues that have been separated for trial. This is so even in patent cases where antitrust and patent issues are to be tried separately. *Innotron,* 800 F.2d at 1078; *Alarm Device Mfg. Co. v. Alarm Prod. Int'l, Inc.,* 60 F.R.D. 199 (E.D.N.Y.1973); *Standard Pressed Steel Co. v. Astoria Plating Corp.,* 162 U.S.P.Q. 441, 442 (N.D.Ohio 1969).

*3 A stay of discovery at this stage of the proceedings is inappropriate in light of the extensive antitrust discovery that has already taken place. Cruachem has responded fully to ABIO's first set of interrogatories and first request for the production of documents (totalling nearly 50,000 pages of documents). This discovery included substantial material relevant to Cruachem's antitrust and patent misuse counterclaims. ABIO has yet to respond in kind to Cruachem's requests for antitrust discovery. Therefore there has been roughly nine months of unilateral discovery on antitrust issues by ABIO.

ABIO will not be burdened by going forward with antitrust discovery. It has stated that it is ready, willing and able to produce the antitrust documents it has thus far withheld. Moreover, much of the "antitrust" discovery objected to by ABIO is potentially relevant to patent issues. These include the issues of damages, and secondary indicia of nonobviousness, such as commercial success.

Severance of discovery at this stage of the proceedings would not necessarily save time or expense. It appears that Cruachem will seek trial on the merits of its antitrust counterclaims whether or not ABIO prevails on the merits of the infringement issues. Cruachem's counterclaim allegations include overbroad licensing practices by ABIO and tying the sale of patented products to the sale of unpatented products. Discovery and trial on these issues may have to proceed even if ABIO prevails on its patent claims.

Nor has ABIO shown that the number of depositions will be materially reduced by staying discovery related to the antitrust and patent misuse issues. The vast majority of deposition witnesses will give testimony relevant to both patent and antitrust issues. These witnesses include ABIO, University Patents, Inc., and University of Colorado personnel, as well as ABIO's customers. A stay of antitrust discovery may necessitate multiple depositions of these

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 495458 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

witnesses.

The Court also notes that discovery in this case has been characterized by the parties' mutual inability to agree on anything. If past experience is a harbinger of things to come, a stay of antitrust discovery will merely serve to multiply discovery disputes inordinately. For example, the parties already disagree over what is "antitrust-related" discovery. Such bickering will serve only to waste the Court's and the parties' time. This factor militates against a stay of antitrust discovery. *Willemijn,* 707 F.Supp. at 1435.

Finally, it was not made clear to the Court at the scheduling conference on May 8 that any of the discovery due on May 17 was in the antitrust category. It is unfair for ABIO to have stipulated to a discovery production date without making it perfectly clear that it intended to withhold discovery on "antitrust" issues.

## CONCLUSION

Cruachem's motion to compel will be granted. ABIO's motion to sever will be granted as to trial. The patent issues in this case will be tried separately from the antitrust and patent misuse issues. Discovery of antitrust issues will not be stayed pending trial on the patent issues. An appropriate order will issue.

> FN1. We also deny ABIO's motion for leave to file a rebuttal to Cruachem's reply brief (D.I. 52), and ABIO's request for oral argument on the discovery issue. (D.I. 53)

D.Del.,1990.
Applied Biosystems, Inc. v. Cruachem, Inc.
Not Reported in F.Supp., 1990 WL 495458 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:89CV00579 (Docket) (Oct. 20, 1989)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 2



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

APPLIED BIOSYSTEMS, INC.,  )
          )
   Plaintiff,   )
          )
  v.       ) Civil Action No. 89-579-JJF
          )
CRUACHEM, INC.,    )
          )
   Defendant.   )

Jeffrey M. Weiner, Esquire, Wilmington, Delaware, attorney for plaintiff.  Of counsel: Arthur M. Lieberman, Esquire, David A. Kalow, Esquire, and Henry Pitman, Esquire, of Lieberman, Rudolph & Nowak, New York, New York.

Donald F. Parsons, Jr., Esquire, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, attorney for defendant.  Of counsel: Robert J. Koch, Esquire, and David M. Foster, Esquire, of Fulbright & Jaworski, Washington, D.C.

<u>MEMORANDUM OPINION</u>

Dated: **October 16, 1991**

Wilmington, Delaware

ROBINSON, U.S. Magistrate Judge

## PROCEDURAL BACKGROUND

Before the United States Magistrate Judge are the parties' cross motions to compel and for sanctions filed pursuant to Fed.R.Civ.P. 37. (Docket item, "D.I.", 111, 142) They will be addressed seriatim.

## Motion by Cruachem, Inc.

On October 20, 1989, Applied Biosystems, Inc. ("ABI") initiated this patent infringement action. (D.I. 1) Defendant Cruachem, Inc. ("Cruachem") filed an answer and counterclaim on November 13, 1989 (D.I. 7); on November 14, 1989, Cruachem served its first request for production of documents. (D.I. 8) On May 8, 1990, the Court ordered that production in response to the parties' first requests for documents, "including identification of documents being withheld from production on grounds of attorney-client privilege . . . shall be completed . . . by May 17, 1990." (D.I. 35) In response to this Order, ABI made available what was described as its "draft" privileged document list on or about May 17, 1990. Cruachem filed a motion to compel on or about May 29, 1990. According to Cruachem, by said motion, it "sought production not only of nonprivileged documents being withheld by ABI, but of privileged documents for which ABI failed to assert timely or adequate claims of privilege." (D.I. 120 at 4) ABI produced a "final" list of privileged documents on or about June 14, 1990. On August 3, 1990, the Court granted Cruachem's motion to compel:

2

[ABI] may assert the attorney-client privilege for those documents listed on [ABI's] "draft" privileged document list on May 17.    The attorney-client privilege is waived as to all documents not listed as of May 17. . . . . [ABI's] service of a "final" list of privileged documents on June 14 does not cure its failure to comply with the May 17 deadline or its failure to assert privilege as to documents left off its "draft" list.    [ABI] may, however, augment its description of those documents listed as privileged as of May 17 if it deems added description to be necessary. We permit this unorthodox procedure only because [ABI] apparently believed in good faith that it was not required to do more than list its privileged documents by the May 17 discovery deadline.    We note, however, that the settled law in this District is to the contrary. <u>See Willemijn [Houdstermaatschaapij BV v. Apollo Computer, Inc.</u>, 707 F.Supp. 1429, 1443 (D.Del. 1989)] (denying party opportunity to augment its description of privileged documents in its brief).

(D.I. 61 at 3-4)

     In the months that followed the Court's ruling, ABI produced hundreds of documents to Cruachem, apparently of two categories: 1) those documents deemed not privileged by the Court's ruling (i.e., those not identified as privileged on ABI's "draft" list); and 2) those documents deemed not privileged upon further review (presumably of the "draft" list) by ABI. (<u>See</u> D.I. 124, Exs. B, C, E, F)    To date, however, ABI has not filed a unified, augmented list of privileged documents, i.e., a list that combines the June descriptions with the May documents.    By its motion, Cruachem challenges plaintiff's claims of attorney-client privilege on ten grounds.

3

As recognized by this Court, the attorney-client privilege applies only if:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer; (3) the communication related to fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing some crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc., 707 F.Supp. 1429, 1442 (D.Del. 1989) ("Apollo") (quoting Hercules, Inc. v. Exxon Corp., 434 F.Supp. 136, 144 (D.Del. 1977)). As noted by this Court in Apollo, "the party asserting the attorney-client privilege bears the burden of proof." 707 F.Supp. at 1443. Moreover,

> a proper claim of attorney-client privilege "requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality." International Paper Co. v. Fiberboard Corp., 63 F.R.D. 88, 94 (D.Del. 1974). Similarly, a party asserting work product protection must "identify the withheld documents with sufficient particular[ity] that the opposing counsel can intelligently argue that the privilege ought not to apply." Petz v. Ethan Allen, Inc., 113 F.R.D. 494, 497 (D.Conn. 1985).

4

Id. at 1439.  The proper designation and description of documents helps to ensure not only that attorneys review documents in the first instance so as to claim the privilege sparingly and carefully, but to enable opposing counsel as well to intelligently determine whether to challenge the claim of privilege.  Clearly, the degree of specificity is related to the need for judicial intervention.  At one extreme are "facially inadequate" descriptions which do not inform the Court or opposing counsel of the elemental features of the attorney-client privilege.  Facially inadequate descriptions read, e.g.: "11/20/66 American Chemical Society"; "handwritten note and attachment from chemistry book"; "blank affidavit"; "handwritten notes".  At the other extreme are facially adequate descriptions, i.e., indices which designate the author, recipient and date of the document, what the document is and why it is protected from disclosure by the attorney-client privilege, e.g.: "3/13/87 Kalow-Cullum Pending Motion co-counsel communication".  Between these two extremes is a continuum of specificity, from descriptions which only generally denote a privileged document (e.g., "3/11/87 Yahwak-Kalow co-counsel communication") to descriptions which inform a dispute as to whether the privilege applies (e.g., "3/17/87 Yahwak-Kalow Invention Disclosure co-counsel communication").  The Court's task is to determine when along the continuum a description is so inadequate as to constitute a waiver of the privilege and when in camera review is the appropriate course of action.

## Inadequate Identification (Category 1)

Cruachem asserts that ABI inadequately described on its May 17, 1990 list those documents listed in Category 1 of the stipulated list of disputed documents attached to this Memorandum Opinion. ABI argues that the descriptions given in its June 14, 1990 list are adequate. I conclude, however, that ABI cannot rely on the June 14, 1990 descriptions. After the Court's August 3, 1990 Order allowing ABI to "augment its description of those documents listed as privileged as of May 17", ABI never specifically referenced the June 14 list as "augmenting" the May 17 list, nor did ABI revise either the May or the June lists to incorporate the June descriptions with the May list of documents. Of the May 17, 1990 descriptions (see D.I. 126, Ex. 1), only documents C1302, C1481, and C1818 are described adequately to justify in camera review; the remainder shall be produced.

## Correspondence to or from an Attorney but not within the Scope of the Attorney-Client Privilege (Category 2)

As noted above, the attorney-client privilege applies only if the communication at issue is related to a fact of which the attorney was informed for the purpose of securing primarily either an opinion on law or legal services or assistance in some legal proceeding. Cruachem asserts that the disputed documents listed in category 2, although correspondence to or from an attorney, nonetheless are not privileged because they constitute "transmittal letters" and other communications to or from an attorney that do not "contain legal opinions or requests for legal advice". ABI responds that the privilege requires only that the

6

documents' _primary_ - not its "sole" - purpose be legal, not business. The problem, of course, lies in determining the _primary_ purpose of a communication from its description and the extent to which a party is held to its description. For example, in category 2, ABI describes documents as "cover letter for documents", "two copies of A37363-A7", "draft", "exhibits". Descriptions such as these do not indicate that the purpose, primary or otherwise, of the communication is to secure legal opinions or services. Under the circumstances at bar, I find such descriptions inadequate to warrant further _in camera_ review. The May 17, 1990 descriptions of the following documents do not suggest the rendering of legal services or the identification of a substantive topic which could primarily involve legal issues and, therefore, shall be produced:

        C479, C678, C681, C809, C1460, C1662, C1682,
        C1689, C1690, C1804, C1822, C1824, C2038, D7,
        D37, D55, D64, D68, D69, D70, D80, D83, D84,
        D101, D127, D128,  D130,  D142, D143, D144,
        D162, D174, D175, D209, D213, D222, D223,
        D225, D226, D262, D266, D298, D305, D326,
        D333, D335, D340, D342, D348, D353, D362,
        D364, D366, D369, D373, D378, D381, D384,
        D402, D432, D434, D438, D464, D466, D471,
        D533, D536, D544, D566, D576, D601, D605,
        D608, D619, D637, D645, D679, D742, D752,
        D832, D833.

The remainder of the documents will be produced for _in camera_ review so that I can determine the primary purpose of such.

### Business Communications to or from James Kitch (Category 3)

Only one disputed document in category 3 remains; ABI asserts that Mr. Kitch is neither an author nor a recipient of such. It will be produced for _in camera_ review for determination

7

of whether: 1) the document involves Mr. Kitch; if so, 2) whether its primary purpose is business or legal.

### Business Communications to or from Sydney Alpert (Category 4)

Cruachem contends that communications to or from Sydney Alpert, an attorney who is the President of University Patents, Inc., ABI's licensor, are not entitled to the protection of the attorney-client privilege because said privilege does not apply to business communications.   ABI responds that since University Patents, Inc. provides to its clients a "bundle" of services which are at times primarily legal (i.e., services in connection with patent prosecution, licensing and infringement actions), the disputed documents fall within the scope of the attorney-client privilege.  These documents will be produced for in camera review for determination of whether these communications involve a lawyer-client relationship between plaintiff and Mr. Alpert and whether the communications relate primarily to legal advice or services.

### Communications to and from the Inventors and the Inventors' Notes (Category 5)

This Court has stated that

[t]he attorney-client privilege does not protect technical information such as the results of research, tests and experiments communicated to the attorney, not calling for a legal opinion or interpretation, but meant primarily for aid in completing a patent application.

Apollo, 707 F.Supp. at 1448-49.  Cruachem contends that the documents listed in category 5 are not entitled to the protection of the attorney-client privilege as "mere communications to or from an

8

inventor, which do not include counsel or reflect the advice of counsel". (D.I. 111 at 13)  ABI responds that "in a particular situation both attorney-client and work product immunity may be available to the solicitation of a party's own patent." Hercules, Inc. v. Exxon Corp., 434 F.Supp. at 143. ABI, citing SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 514 (D.Conn. 1976), also argues that parties having substantially the same interest in a patent or patent litigation and, in particular, in a patent licensing pro-gram, have been recognized as having a joint privilege. ABI will produce the documents listed in category 5 for in camera inspection to determine whether the attorney-client privilege has been properly claimed.

### Publicly Available Documents (Category 6)

Neither party disputes the well-settled proposition that publicly available documents should be produced. ABI argues, however, that none of the disputed documents are publicly available; rather, these documents are correspondence, internal memoranda or draft patent applications with the inventors' comments. The documents as described indicate otherwise.[1] They shall be produced.

---

1.  Although most of the documents listed in category 6 are described by date, author and recipient, and as attorney-client or co-counsel communications, the documents themselves are described as follows: C263 "1977 Article In Tetrahedron Letters"; C624 "AD of American Bionuclear"; C674 "Ad from Nature Magazine by American Bionuclear"; C681 "2 copies of U.S. patent #4415732"; C870 "Article in ABL"; C871 "Ms. Wu's paper"; C1264 "European Application #81101445.5"; C1423 "News Release"; C1424 "News Release"; C1797 "European patent"; C1810 "Published paper"; and C1936 "Matteucci Ph.D. thesis".

**Pleadings and Similar Documents
from Prior Litigations (Category 7)**

Again, while ABI does not dispute the proposition that publicly available documents from prior litigations should be produced, it contends that the disputed documents in category 7 are not publicly available. The documents as described indicate otherwise.[2] They shall be produced.

**Correspondence Between Opposing Counsel
in Prior Litigations (Category 8)**

The attorney-client privilege does not protect communications between opposing counsel. The documents listed in category 8 shall be produced.

**Documents Involving Patent Prosecutions, Including
Disclosures and Technical Information (Category 9)**

This Court has embraced the following standard in determining when documents involving patent prosecutions, including disclosures and technical information, are entitled to the protection of the attorney-client privilege:

> Generally, when factual information [is] communicated so that the attorney [can] disclose it in a patent or trademark application, the communication [is] viewed as non-privileged. On the other hand, documents containing considerable technical factual information but which [are] nonetheless primarily concerned with giving legal guidance

---

2.  Although most of the documents listed in category 7 are described by date, author and recipient, and as attorney-client or co-counsel communications, their subject matter is described as follows: C99 "Consent Judgment"; C676 "Appendices relative to ABI lawsuit"; C1696 "Deposition"; C2049 "Appendices to ABN lawsuit"; D49 "Stay of Discovery"; D100 "Document Subpoena"; and D806 "Quality Control Assay Report (notes) (Efcavitch Exh. #92)".

to the client [should be] classified as
privileged.

_Hercules, Inc. v. Exxon Corp._, 434 F.Supp. at 148.  The May 17,
1990 descriptions of the following documents are not facially
adequate to warrant _in camera_ review:

```
C213,  C214,  C345,  C374,  C381,  C479,  C548,
C552,  C577,  C616,  C784,  C791,  C834,  C857,
C930, C932, C1078, C1091, C1163, C1168, C1194,
C1263,  C1274,  C1340,  C1473,  C1482,  C1494,
C1500,  C1512,  C1514,  C1518,  C1521,  C1548,
C1564,  C1583,  C1584,  C1635,  C1640,  C1665,
C1666,  C1667,  C1668,  C1669,  C1670,  C1719,
C1739,  C1768,  C1783,  C1784,  C1786,  C1791,
C1795,  C1804,  C1812,  C1857,  C1858,  C1859,
C1861,  C1876,  C1886,  C1907,  C1925,  C1932,
C1933, C1953, C2030, C2031, C2033, C2034.
```

The remaining documents in category 9 shall be produced for _in
camera_ review so that I can determine whether these communications
involve primarily legal guidance versus technical factual
information.

### Documents Relating to Interference Proceedings Filed with the Patent and Trademark Office (Category 10)

ABI does not dispute that publicly available documents
prepared in connection with "interference proceedings" in the U.S.
Patent and Trademark Office are not protected by the attorney-
client privilege, but does dispute that the documents in category
10 are publicly available.  The May 17, 1990 descriptions of the
following documents are not facially adequate to warrant _in camera_
review: C260, C275, C285, C294, C303, C307, C312, C479.  The
remaining documents in category 10 shall be produced for _in camera_
review so that I can determine whether the protection of the
attorney-client privilege is properly claimed.

**Crime-Fraud Exception**

Cruachem contends that even if ABI has properly invoked the attorney-client privilege, the privilege has been vitiated under the crime-fraud exception to the attorney-client privilege. As explained by the Supreme Court in <u>United States v. Zolin</u>, 491 U.S. 554 (1989):

> The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection - the centrality of open client and attorney communication to the proper functioning of our adversary system of justice - "ceas[es] to operate at a certain point, namely, where the desired advice refers <u>not to prior wrongdoing</u>, but to <u>future wrong-doing</u>.". . . It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the "seal of secrecy,". . . between lawyer and client does not extend to communications "made for the purpose of getting advice for the commission of a fraud" or crime.

<u>Id</u>. at 562-63 (emphasis in original) (citations omitted). When evaluating a claim that the protective shield of the attorney-client privilege should be stripped away in patent cases due to allegations of crime or fraud, this Court measures the patentee's conduct against the traditional standard for fraud.

> In a patent action, that equates to a <u>prima facie</u> showing of (1) a knowing, willful, and intentional act of misrepresentation or omission before the patent office; (2) that is material; and (3) that the patent office relied upon in deciding to issue the patent.

<u>General Electric Co. v. Hoechst Celanese Corp.</u>, 15 U.S.P.Q.2d 1673, 1676-77 (D.Del. 1990). The question arises as to how the party

opposing the privilege establishes the <u>prima facie</u> showing of fraudulent intent, materiality and reliance. The Supreme Court in <u>Zolin</u> has answered this question as follows:

> We hold that <u>in camera</u> review may be used to determine whether allegedly privileged attorney-client communications fall within the crime-fraud exception. We further hold, however, that before a district court may engage in <u>in camera</u> review at the request of the party opposing the privilege, that party must present evidence sufficient to support a reasonable belief that <u>in camera</u> review may yield evidence that establishes the exception's applicability. Finally, we hold that the threshold showing to obtain <u>in camera</u> review may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged.

491 U.S. at 574-75.

Instantly, Cruachem contends that the "inventors or their counsel made two material misrepresentations or omissions to the Patent Office: (1) they failed to disclose to the Patent Office a publication one of the inventors authored which disclosed most of their claims more than one year before they filed their application; and (2) they failed to disclose the best mode contemplated for carrying out their invention." (D.I. 111 at 19) While ABI disputes these allegations, it apparently does not oppose Cruachem's request for <u>in camera</u> review of the documents. (D.I. 144 at 29) I, therefore, will review the documents <u>in camera</u> to determine whether said documents fall within the crime-fraud exception.

13

**ABI's Motion**

By letter dated June 10, 1985, ABI's predecessor threatened to sue Cruachem on the basis of the patents in suit. ABI commenced this patent infringement action in October 1989. In response to ABI's discovery requests, on or about January 17, 1990 Cruachem served two indices of documents withheld on the ground of attorney-client privilege and the work product doctrine. Cruachem's indices provided the addressee, recipient, date and preparer of each document, and described the contents of virtually all of the documents as "patents in suit". All of the documents are dated after June 10, 1985. (See D.I. 151, Exs. B, C)

In January 1991, ABI filed a motion to compel the production of a November 1, 1985 letter from Jay Cantor to Hugh Mackie (the "Cantor letter"). By decision issued April 12, 1991, the Court found that the document was privileged, but that Cruachem had waived the privilege through disclosure to an investor. (D.I. 161, Ex. 2) Cruachem filed its motion to compel discussed supra in May 1991; ABI filed the instant cross motion to compel in July 1991 (D.I. 142), arguing that Cruachem has waived any claim of attorney-client privilege based on the inadequate descriptions ("patents in suit") contained in its indices. ABI also contends that Cruachem must produce all documents which reflect or discuss the contents of the Cantor letter and which "are not otherwise privileged". (D.I. 150 at 5)

Cruachem responds that its descriptions are adequate, that the attorney-client privilege appropriately protects confiden-

14

tial communications between a client and its counsel about a patent, and that the disclosure of the Cantor letter did not effect a subject matter waiver. In addition, Cruachem urges the Court to reject ABI's cross motion as untimely. More specifically, in the eighteen months between Cruachem's filing its indices and ABI's filing the instant motion, the only formal objection made by ABI has been for production of the Cantor letter; in that proceeding, ABI did not assert the subject matter waiver it asserts currently.

Under the circumstances at bar and consistent with the caselaw discussed above, I conclude that Cruachem's descriptions are facially adequate and that the attorney-client privilege does appropriately protect confidential communications between a client and its counsel about a patent. Finding, however, that the description "patents in suit" is not so self-explanatory as to preclude review of the appropriateness of the privilege claim, I will order production for <u>in camera</u> review of those documents for which protection is claimed only under the attorney-client privilege.[3] I further conclude that Cruachem has not effectuated a subject matter waiver in connection with the Cantor letter. <u>See</u> <u>General Electric Co. v. Hoechst Celanese Corp.</u>, 15 U.S.P.Q.2d at 1679; <u>In Re Von Bulow</u>, 828 F.2d 94, 103 (2d Cir. 1987).

**Sanctions**

Both parties have applied for sanctions in connection with their respective motions pursuant to Fed.R.Civ.P. 37(a)(4):

---

3. CP1, CP5, CP7, CP8, CP11, CP16, CP17, CP18, CP19, CP20, CP21, CP25, CP26, CP28, CP31, CP34, CP38, CP43, CP46, CP49, CP58, CP77, CP78, CP81.

If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

If the motion is denied, the court shall, after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who oppose the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

If the motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

In determining the propriety of awarding sanctions, I have reviewed the history of these discovery disputes; the most enlightening record of such is the exchange of correspondence found as exhibit A to Cruachem's October 1990 opening brief in support of its motion for sanctions and the exchange of correspondence found as exhibit 1 to Cruachem's opposition to ABI's cross motion at bar. (D.I. 70, 161)  Based on this history and on the fact that in presenting its arguments at bar, ABI has yet to present to the Court an index of privileged documents which combines the May and June lists, I conclude that sanctions are appropriately awarded to Cruachem for the reasonable expenses and attorney's fees incurred in pursuing

16

its motion <u>sub</u> <u>judice</u>.   Rule 37 sanctions are not justified in connection with ABI's cross motion.

An Order consistent with this Memorandum Opinion shall be issued.

## 1. <u>INADEQUATE IDENTIFICATION OF ATTORNEY-CLIENT PRIVILEGE</u>

| | | | | | |
|---|---|---|---|---|---|
| C | 24 | C | 1590 | D | 177 |
| C | 186 | C | 1598 | D | 186 |
| C | 192 | C | 1604 | D | 233 |
| C | 195 | C | 1605 | D | 286 |
| C | 199 | C | 1671 | D | 287 |
| C | 506 | C | 1677 | D | 291 |
| C | 577 | C | 1678 | D | 338 |
| C | 653* | C | 1688 | D | 368 |
| C | 678 | C | 1704 | D | 379 |
| C | 692 | C | 1705 | D | 380 |
| C | 783 | C | 1706 | D | 399 |
| C | 785 | C | 1707 | D | 467 |
| C | 790 | C | 1720 | D | 488 |
| C | 802 | C | 1724 | D | 489 |
| C | 834 | C | 1735 | D | 500 |
| C | 857 | C | 1736 | D | 505 |
| C | 1163 | C | 1815 | D | 519 |
| C | 1268 | C | 1818 | D | 520 |
| C | 1269 | C | 1886 | D | 529 |
| C | 1270 | C | 1949 | D | 559 |
| C | 1271 | C | 1950 | D | 612 |
| C | 1273 | C | 1954 | D | 651 |
| C | 1275 | C | 2028 | D | 669 |
| C | 1291 | C | 2032* | D | 670 |
| C | 1298 | C | 2036 | D | 673 |
| C | 1302 | C | 2042 | D | 685 |
| C | 1405 | C | 2043 | D | 686 |
| C | 1406 | C | 2044 | D | 706 |
| C | 1480 | C | 2046 | D | 720 |
| C | 1481 | C | 2047* | D | 722 |
| C | 1482 | C | 2048 | D | 725 |
| C | 1486 | C | 2052 | D | 745 |
| C | 1488 | C | 2053 | D | 798 |
| C | 1501 | C | 2056 | D | 813 |
| C | 1510 | C | 2058 | | |
| C | 1511 | C | 2059 | | |
| C | 1525 | C | 2060 | | |
| C | 1526 | C | 2062 | | |
| C | 1549 | C | 2065 | | |
| C | 1561 | C | 2067 | | |
| C | 1572 | C | 2070 | | |
| C | 1573 | C | 2073 | | |
| C | 1574 | D | 125 | | |
| C | 1576 | D | 132 | | |
| C | 1579 | D | 166 | | |

* Although ABI listed this document on Exhibit I, ABI withdrew its offer to
produce the document on September 19, 1991.

2.  CORRESPONDENCE TO OR FROM AN ATTORNEY BUT NOT WITHIN
    THE SCOPE OF THE ATTORNEY-CLIENT PRIVILEGE

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| C | 454 | C | 1497 | D | 68 | D | 298 |
| C | 463 | C | 1662 | D | 69 | D | 299 |
| C | 479 | C | 1679 | D | 70 | D | 305 |
| C | 619 | C | 1682 | D | 74 | D | 310 |
| C | 621 | C | 1686 | D | 80 | D | 311 |
| C | 627 | C | 1689 | D | 83 | D | 325 |
| C | 628 | C | 1690 | D | 84 | D | 326 |
| C | 629 | C | 1691 | D | 87 | D | 328 |
| C | 648 | C | 1692 | D | 91 | D | 329 |
| C | 654 | C | 1693 | D | 92 | D | 330 |
| C | 671 | C | 1703 | D | 99 | D | 331 |
| C | 672 | C | 1765 | D | 101 | D | 332 |
| C | 675 | C | 1779 | D | 112 | D | 333 |
| C | 677 | C | 1780 | D | 127 | D | 334 |
| C | 678 | C | 1804 | D | 128 | D | 335 |
| C | 680 | C | 1808 | D | 130 | D | 339 |
| C | 681 | C | 1813 | D | 142 | D | 340 |
| C | 756 | C | 1814 | D | 143 | D | 341 |
| C | 780 | C | 1816 | D | 144 | D | 342 |
| C | 789 | C | 1817 | D | 148 | D | 343 |
| C | 809 | C | 1818 | D | 157 | D | 347 |
| C | 813 | C | 1819 | D | 159 | D | 348 |
| C | 1323 | C | 1820 | D | 162 | D | 353 |
| C | 1342 | C | 1821 | D | 167 | D | 357 |
| C | 1347 | C | 1822 | D | 174 | D | 362 |
| C | 1348 | C | 1823 | D | 175 | D | 364 |
| C | 1349 | C | 1824 | D | 208 | D | 365 |
| C | 1379 | C | 1825 | D | 209 | D | 366 |
| C | 1380 | C | 1826 | D | 210 | D | 369 |
| C | 1405 | C | 1827 | D | 211 | D | 373 |
| C | 1412 | C | 2037 | D | 212 | D | 375 |
| C | 1413 | C | 2038 | D | 213 | D | 378 |
| C | 1439 | C | 2040 | D | 214 | D | 381 |
| C | 1440 | C | 2041 | D | 218 | D | 384 |
| C | 1441 | C | 2068 | D | 221 | D | 385 |
| C | 1442 | C | 2069 | D | 222 | D | 397 |
| C | 1443 | C | 2072 | D | 223 | D | 400 |
| C | 1444 | C | 2084 | D | 225 | D | 402 |
| C | 1459 | C | 2097* | D | 226 | D | 406 |
| C | 1460 | D | 7 | D | 231 | D | 423 |
| C | 1461 | D | 9 | D | 232 | D | 430 |
| C | 1462 | D | 31 | D | 237 | D | 431 |
| C | 1463 | D | 37 | D | 238 | D | 432 |
| C | 1464 | D | 38 | D | 244 | D | 434 |
| C | 1465 | D | 51 | D | 262 | D | 438 |
| C | 1466 | D | 55 | D | 265 | D | 455 |
| C | 1467 | D | 64 | D | 266 | D | 460 |
| C | 1468 | D | 65 | D | 278 | D | 461 |

* Although ABI listed this document on Exhibit I, ABI withdrew its offer to
  produce the document on September 19, 1991.

2.  CORRESPONDENCE TO OR FROM AN ATTORNEY BUT NOT WITHIN
    THE SCOPE OF THE ATTORNEY-CLIENT PRIVILEGE

(continued)

| D | 464 | D | 635 |
|---|-----|---|-----|
| D | 466 | D | 637 |
| D | 468 | D | 642 |
| D | 471 | – D | 643 |
| D | 472 | D | 645 |
| D | 474 | D | 646 |
| D | 478 | D | 647 |
| D | 479 | D | 650 |
| D | 484 | D | 665 |
| D | 485 | D | 667 |
| D | 493 | D | 676 |
| D | 494 | D | 679 |
| D | 495 | D | 682 |
| D | 497 | D | 683 |
| D | 498 | D | 687 |
| D | 506 | D | 690 |
| D | 508 | D | 691 |
| D | 509 | D | 692 |
| D | 512 | D | 699 |
| D | 514 | D | 702 |
| D | 518 | D | 705 |
| D | 523 | D | 708 |
| D | 533 | D | 709 |
| D | 535 | D | 712 |
| D | 536 | D | 726 |
| D | 541 | D | 727 |
| D | 542 | D | 734 |
| D | 544 | D | 742 |
| D | 546 | D | 743 |
| D | 551 | D | 747 |
| D | 564 | D | 752 |
| D | 566 | D | 802 |
| D | 569 | D | 827 |
| D | 570 | D | 832 |
| D | 573 | D | 833 |
| D | 576 | | |
| D | 579 | | |
| D | 588 | | |
| D | 589 | | |
| D | 591 | | |
| D | 597 | | |
| D | 599 | | |
| D | 601 | | |
| D | 604 | | |
| D | 605 | | |
| D | 608 | | |
| D | 613 | | |
| D | 618 | | |
| D | 619 | | |
| D | 625 | | |
| D | 633 | | |

### 3. BUSINESS COMMUNICATION TO OR FROM JAMES KITCH

C  727

4.  <u>BUSINESS COMMUNICATION TO OR FROM SIDNEY ALPERT</u>

```
C   455
C   651
C   694
C   805
C   808
C   809
C  1291
C  1322
C  1347
C  1348
C  1687
C  1741
D   678
```

5. COMMUNICATIONS TO OR FROM THE INVENTORS
OR THE INVENTORS NOTES

C 1478
C 1685
C 1809
D  170

6.   <u>PUBLICLY AVAILABLE DOCUMENTS</u>

C   263
C   624
C   674
C   681
C   870
C   871
C  1264
C  1423
C  1424
C  1797
C  1810
C  1936

## 7.  PLEADINGS AND SIMILAR DOCUMENTS FROM PRIOR LITIGATIONS

```
C    99
C   676
C  1696
C  2049
D    49
D   100
D   806
```

8. <u>CORRESPONDENCE BETWEEN OPPOSING COUNSEL IN PRIOR LITIGATIONS</u>

C 1741
C 1977
C 1978

9.     DOCUMENTS INVOLVING PATENT PROSECUTIONS,
       INCLUDING DISCLOSURES AND TECHNICAL INFORMATION

A.     Documents Relating to Patent Prosecution

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| C | 206 | C | 364 | C | 541 | C | 615 |
| C | 207 | C | 365 | C | 546 | C | 616 |
| C | 208 | C | 367 | C | 548 | C | 617 |
| C | 211 | C | 368 | C | 551 | C | 618 |
| C | 213 | C | 371 | C | 552 | C | 619 |
| C | 214 | C | 373 | C | 554 | C | 620 |
| C | 215 | C | 374 | C | 555 | C | 655 |
| C | 216 | C | 375 | C | 556 | C | 669 |
| C | 217 | C | 376 | C | 557 | C | 685 |
| C | 218 | C | 378 | C | 559 | C | 695 |
| C | 219 | C | 379 | C | 564 | C | 701 |
| C | 220 | C | 381 | C | 565 | C | 721 |
| C | 221 | C | 387 | C | 566 | C | 758 |
| C | 222 | C | 397 | C | 567 | C | 762 |
| C | 223 | C | 398 | C | 568 | C | 763 |
| C | 228 | C | 400 | C | 569 | C | 770 |
| C | 232 | C | 411 | C | 570 | C | 780 |
| C | 235 | C | 420 | C | 571 | C | 781 |
| C | 240 | C | 421 | C | 572 | C | 782 |
| C | 242 | C | 423 | C | 574 | C | 786 |
| C | 326 | C | 424 | C | 575 | C | 788 |
| C | 327 | C | 425 | C | 576 | C | 789 |
| C | 329 | C | 428 | C | 577 | C | 797 |
| C | 331 | C | 429 | C | 578 | C | 806 |
| C | 334 | C | 433 | C | 579 | C | 812 |
| C | 335 | C | 454 | C | 581 | C | 817 |
| C | 336 | C | 455 | C | 582 | C | 818 |
| C | 337 | C | 459 | C | 583 | C | 819 |
| C | 339 | C | 460 | C | 584 | C | 821 |
| C | 340 | C | 462 | C | 585 | C | 822 |
| C | 343 | C | 463 | C | 586 | C | 823 |
| C | 344 | C | 464 | C | 587 | C | 834 |
| C | 345 | C | 465 | C | 588 | C | 848 |
| C | 346 | C | 466 | C | 590 | C | 849 |
| C | 348 | C | 467 | C | 591 | C | 850 |
| C | 349 | C | 469 | C | 593 | C | 853 |
| C | 350 | C | 472 | C | 594 | C | 854 |
| C | 351 | C | 476 | C | 596 | C | 855 |
| C | 352 | C | 479 | C | 597 | C | 857 |
| C | 353 | C | 497 | C | 598 | C | 858 |
| C | 356 | C | 498 | C | 599 | C | 860 |
| C | 357 | C | 519 | C | 600 | C | 861 |
| C | 358 | C | 520 | C | 601 | C | 874 |
| C | 359 | C | 524 | C | 602 | C | 878 |
| C | 361 | C | 526 | C | 603 | C | 879 |
| C | 362 | C | 530 | C | 607 | C | 898 |
| C | 363 | C | 538 | C | 610 | C | 904 |

9.    DOCUMENTS INVOLVING PATENT PROSECUTIONS,
      INCLUDING DISCLOSURES AND TECHNICAL INFORMATION

(continued)

| | | | |
|---|---|---|---|
| C 906 | C 1153 | C 1302 | C 1457 |
| C 909 | C 1155 | C 1310 | C 1472 |
| C 920 | C 1156 | C 1315 | C 1473 |
| C 921 | C 1157 | C 1318 | C 1475 |
| C 922 | C 1160 | C 1324 | C 1476 |
| C 923 | C 1163 | C 1326 | C 1477 |
| C 927 | C 1167 | C 1330 | C 1478 |
| C 930 | C 1168 | C 1331 | C 1479 |
| C 932 | C 1169 | C 1332 | C 1481 |
| C 933 | C 1170 | C 1333 | C 1482 |
| C 946 | C 1171 | C 1334 | C 1483 |
| C 953 | C 1172 | C 1335 | C 1487 |
| C 966 | C 1173 | C 1336 | C 1490 |
| C 969 | C 1178 | C 1337 | C 1493 |
| C 972 | C 1179 | C 1339 | C 1494 |
| C 976 | C 1183 | C 1340 | C 1495 |
| C 978 | C 1185 | C 1341 | C 1498 |
| C 981 | C 1190 | C 1342 | C 1500 |
| C 987 | C 1191 | C 1344 | C 1502 |
| C 988 | C 1192 | C 1345 | C 1503 |
| C 1025 | C 1193 | C 1346 | C 1509 |
| C 1026 | C 1194 | C 1350 | C 1523 |
| C 1055 | C 1195 | C 1353 | C 1524 |
| C 1056 | C 1199 | C 1354 | C 1536 |
| C 1061 | C 1203 | C 1357 | C 1545 |
| C 1062 | C 1204 | C 1358 | C 1546 |
| C 1070 | C 1208 | C 1359 | C 1548 |
| C 1075 | C 1210 | C 1360 | C 1551 |
| C 1076 | C 1211 | C 1365 | C 1555 |
| C 1078 | C 1212 | C 1367 | C 1565 |
| C 1084 | C 1215 | C 1368 | C 1570 |
| C 1090 | C 1216 | C 1380 | C 1571 |
| C 1091 | C 1219 | C 1386 | C 1580 |
| C 1093 | C 1221 | C 1392 | C 1589 |
| C 1100 | C 1227 | C 1394 | C 1595 |
| C 1101 | C 1229 | C 1402 | C 1596 |
| C 1112 | C 1230 | C 1403 | C 1599 |
| C 1113 | C 1231 | C 1404 | C 1601 |
| C 1117 | C 1234 | C 1409 | C 1602 |
| C 1132 | C 1235 | C 1418 | C 1606 |
| C 1133 | C 1237 | C 1447 | C 1608 |
| C 1137 | C 1244 | C 1448 | C 1609 |
| C 1140 | C 1249 | C 1449 | C 1610 |
| C 1146 | C 1274 | C 1450 | C 1611 |
| C 1148 | C 1276 | C 1454 | C 1612 |
| C 1149 | C 1278 | C 1455 | C 1613 |
| C 1151 | C 1293 | C 1456 | C 1614 |

9.    DOCUMENTS INVOLVING PATENT PROSECUTIONS,
         INCLUDING DISCLOSURES AND TECHNICAL INFORMATION

(continued)

| | | | |
|---|---|---|---|
| C 1614 | C 1791 | C 1863 | C 1962 |
| C 1616 | C 1792 | C 1864 | C 1964 |
| C 1617 | C 1793 | C 1865 | C 2024 |
| C 1618 | C 1794 | C 1866 | C 2026 |
| C 1620 | C 1796 | C 1867 | C 2027 |
| C 1621 | C 1797 | C 1868 | C 2037 |
| C 1623 | C 1798 | C 1869 | |
| C 1627 | C 1799 | C 1870 | |
| C 1630 | C 1800 | C 1871 | |
| C 1631 | C 1801 | C 1872 | |
| C 1633 | C 1802 | C 1873 | |
| C 1634 | C 1803 | C 1874 | |
| C 1635 | C 1804 | C 1875 | |
| C 1636 | C 1805 | C 1876 | |
| C 1637 | C 1811 | C 1877 | |
| C 1638 | C 1830 | C 1878 | |
| C 1640 | C 1831 | C 1879 | |
| C 1641 | C 1832 | C 1880 | |
| C 1642 | C 1833 | C 1881 | |
| C 1643 | C 1834 | C 1882 | |
| C 1644 | C 1835 | C 1883 | |
| C 1645 | C 1836 | C 1884 | |
| C 1654 | C 1837 | C 1885 | |
| C 1655 | C 1838 | C 1886 | |
| C 1656 | C 1839 | C 1887 | |
| C 1657 | C 1840 | C 1888 | |
| C 1683 | C 1841 | C 1889 | |
| C 1710 | C 1842 | C 1904 | |
| C 1718 | C 1843 | C 1905 | |
| C 1719 | C 1844 | C 1907 | |
| C 1726 | C 1845 | C 1908 | |
| C 1739 | C 1846 | C 1912 | |
| C 1743 | C 1847 | C 1914 | |
| C 1752 | C 1848 | C 1916 | |
| C 1753 | C 1849 | C 1918 | |
| C 1760 | C 1850 | C 1920 | |
| C 1765 | C 1851 | C 1933 | |
| C 1770 | C 1853 | C 1936 | |
| C 1773 | C 1854 | C 1939 | |
| C 1781 | C 1855 | C 1940 | |
| C 1782 | C 1856 | C 1942 | |
| C 1785 | C 1857 | C 1943 | |
| C 1786 | C 1858 | C 1944 | |
| C 1787 | C 1859 | C 1945 | |
| C 1788 | C 1860 | C 1946 | |
| C 1789 | C 1861 | C 1947 | |
| C 1790 | C 1862 | C 1948 | |

## 9.  DOCUMENTS INVOLVING PATENT PROSECUTIONS, INCLUDING DISCLOSURES AND TECHNICAL INFORMATION

### B.  Invention Disclosures and Technical Information

| | |
|---|---|
| C  374 | C 1669 |
| C  459 | C 1670 |
| C  460 | C 1701 |
| C  467 | C 1714 |
| C  469 | C 1753 |
| C  481 | C 1768 |
| C  497 | C 1769 |
| C  555 | C 1770 |
| C  557 | C 1783 |
| C  590 | C 1784 |
| C  610 | C 1795 |
| C  616 | C 1806 |
| C  655 | C 1807 |
| C  671 | C 1812 |
| C  677 | C 1830 |
| C  694 | C 1831 |
| C  784 | C 1832 |
| C  791 | C 1836 |
| C  921 | C 1837 |
| C 1195 | C 1838 |
| C 1221 | C 1840 |
| C 1263 | C 1842 |
| C 1341 | C 1848 |
| C 1345 | C 1857 |
| C 1380 | C 1864 |
| C 1394 | C 1871 |
| C 1441 | C 1877 |
| C 1442 | C 1881 |
| C 1443 | C 1882 |
| C 1444 | C 1884 |
| C 1509 | C 1885 |
| C 1512 | C 1916 |
| C 1514 | C 1925 |
| C 1518 | C 1926 |
| C 1521 | C 1932 |
| C 1560 | C 1939 |
| C 1564 | C 1945 |
| C 1583 | C 1953 |
| C 1584 | C 2030 |
| C 1589 | C 2031 |
| C 1614 | C 2033 |
| C 1627 | C 2034 |
| C 1642 | D   47 |
| C 1656 | D  726 |
| C 1665 | D  727 |
| C 1666 | D  800 |
| C 1667 | D  801 |
| C 1668 | |

10.  DOCUMENTS RELATING TO INTERFERENCE PROCEEDINGS
     FILED WITH THE PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| C  205 | C   493 |
| C  248 | C   631 |
| C  251 | C   633 |
| C  253 | C   634 |
| C  255 | C   638 |
| C  258 | C   640 |
| C  259 | C   642 |
| C  260 | C   645 |
| C  262 | C   646 |
| C  263 | C   648 |
| C  266 | C   649 |
| C  267 | C   650 |
| C  271 | C  1722 |
| C  273 | C  1728 |
| C  274 | C  1730 |
| C  275 | C  1733 |
| C  276 | C  1928 |
| C  277 | C  1930 |
| C  283 | |
| C  285 | |
| C  286 | |
| C  288 | |
| C  289 | |
| C  293 | |
| C  294 | |
| C  295 | |
| C  296 | |
| C  297 | |
| C  298 | |
| C  300 | |
| C  301 | |
| C  303 | |
| C  304 | |
| C  305 | |
| C  306 | |
| C  307 | |
| C  310 | |
| C  311 | |
| C  312 | |
| C  315 | |
| C  318 | |
| C  319 | |
| C  472 | |
| C  476 | |
| C  479 | |
| C  480 | |
| C  481 | |
| C  484 | |
| C  485 | |
| C  491 | |

TAB 3

Westlaw.

Slip Copy                                                                                                    Page 1
Slip Copy, 2005 WL 2521886 (C.A.3 (Pa.))
**(Cite as: Slip Copy)**

**H**
Briefs and Other Related Documents
Chao v. KoreskoC.A.3 (Pa.),2005.Only the Westlaw
citation is currently available.This case was not
selected for publication in the Federal Reporter.NOT
PRECEDENTIAL Please use FIND to look at the
applicable circuit court rule before citing this
opinion. Third Circuit Local Appellate Rule 28.3(a)
and Internal Operating Procedure 5.3. (FIND CTA3
Rule 28.0 and CTA3 IOP APP I 5.3.)
United States Court of Appeals,Third Circuit.
Elaine L. CHAO, Secretary of Labor, United States
Department of Labor
v.
John J. KORESKO; Regional Employers' Assurance
Leagues; Delaware Valley League; Penn-Mont
Benefit Services, Inc.; Koresko & Associates,
Appellants.
**Nos. 04-3614, 05-1440, 05-1946, 05-2673.**

Argued Sept. 29, 2005.
Decided Oct. 12, 2005.

Appeals from the United States District Court for the
Eastern District of Pennsylvania. (D.C.Misc. No. 04-
mc-00074). District Judge: Honorable Mary A.
McLaughlin.

Virginia L. Miller [Argued], Anderson, Kill & Olick,
Philadelphia, PA, for Appellants.
Gail Perry [Argued], Eleanor L. Beard, U.S.
Department of Labor, Plan Benefits Security
Division, Washington, DC, for Appellee.

Before RENDELL, FUENTES and WEIS, Circuit
Judges.

OPINION OF THE COURT
RENDELL, Circuit Judge.
*1  John J. Koresko, V ("Koresko"), Regional
Employers' Assurance Leagues, Delaware Valley
League, Penn-Mont Benefit Services, Inc. ("Penn
Mont"), and Koresko & Associates (together,
"Respondents"), appeal two sets of orders issued by
the District Court. In the first set of orders, the
"enforcement orders," the District Court granted the
Department of Labor ("DOL")'s Petition to Enforce
Administrative Subpoenas ("May 11 Order"),
rejected Respondents' privilege claims and ordered
Respondents to comply with the subpoenas ("August

23 Order"). The second set of orders, the "contempt
orders," denied DOL's Renewed Motion for
Adjudication of Contempt ("January 10 Order"),
adjudged Respondents Koresko, Penn-Mont and
Koresko & Associates (the "Contempt Respondents")
in contempt, ordered them to pay compensatory costs
and coercive fines ("March 17 Orders"), and directed
the Contempt Respondents to pay $5,312.50 to DOL
in compensation for fees and costs associated with
the contempt proceedings ("April 25 Order").

Respondents raise myriad issues on appeal. We
address their arguments with respect to the
enforcement orders and the contempt orders
separately below. Because we conclude that none of
Respondents' contentions rises to the level of legal
error or abuse of the District Court's discretion, we
will affirm all of the District Court's orders.

As we write solely for the parties, who are familiar
with the facts and the procedural history of this case,
we will discuss only the legal issues presented and
related material facts.

*I. The Enforcement Orders*

The District Court had jurisdiction over the subpoena
enforcement proceedings under section 9 of the
Federal Trade Commission Act, 15 U.S.C. § 49, as
made applicable by section 504(c) of the Employee
Retirement Income Security Act ("ERISA"), 29
U.S.C. § 1134(c), and section 502(e)(1) of ERISA,
29 U.S.C. § 1132(e)(1). District court orders
enforcing administrative subpoenas are final and
appealable under 28 U.S.C. § 1291 because " 'there
is no ongoing judicial proceeding that would be
delayed by an appeal." ' *Univ. of Med. & Dentistry of
N.J. v. Corigan,* 347 F.3d 57, 63 (3d Cir.2003)
(quoting *In re Subpoena Duces Tecum,* 228 F.3d 341,
346 (4th Cir.2000)).

Respondents challenge both of the District Court's
enforcement orders. First, they argue that District
Court's grant of DOL's Petition to Enforce
Administrative Subpoenas in its May 11 Order was
improper. Second, they dispute the District Court's
rejection of their privilege claims in its August 23
Order. We address each of these issues in turn.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 2
Slip Copy, 2005 WL 2521886 (C.A.3 (Pa.))
**(Cite as: Slip Copy)**

A. The District Court's Order Enforcing the
Administrative Subpoenas

We review a district court's order enforcing administrative subpoenas for abuse of discretion. *FDIC v. Wentz*, 55 F.3d 905, 908 (3d Cir.1995). The procedure for enforcing administrative subpoenas is well established. First, the agency must demonstrate, through affidavits of its agents, that its subpoena meets the threshold requirements for enforcement, *SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 128 (3d Cir.1981) (en banc): "(1) the inquiry must be within the authority of the agency, (2) the demand for production must not be too indefinite, and (3) the information sought must be reasonably relevant to the authorized inquiry." *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 574 (3d Cir.1980). "If the government makes this preliminary showing, the burden then shifts to the respondent to prove that enforcement of the subpoena would be improper...." *Wheeling-Pittsburgh*, 648 F .2d at 128. Enforcement of a subpoena is improper where it would amount to an abuse of the court's process. *Powell v. United States*, 379 U.S. 49, 58 (1964). "Such an abuse would take place if the [subpoena] had been issued for an improper purpose, such as to harass the [respondent] or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Id.* After each party has had an opportunity to argue its position, the District Judge may direct further proceedings, including discovery, if she concludes that the record is inadequate to make a final decision. On the other hand, if the judge finds that the record is sufficient, she may grant or deny the petition for enforcement. At all times during this procedure, the respondent "bear[s] the initial burden of convincing the trial judge that the claimed abuse of process is not frivolous." *Wheeling-Pittsburgh*, 648 F.2d at 128.

**\*2** Respondents raise three main objections to the District Court's enforcement of DOL's subpoenas. First, they argue that the District Court improperly relied on "conclusory" statements to find that the subpoenas satisfied the threshold enforcement criteria. Second, they contend that the District Court applied the wrong standard in evaluating their claim that DOL's investigation was improperly motivated. Third, they assert that the District Court erred in refusing to inquire into DOL's statutory authority to issue the subpoenas. As we explain below, we conclude that the District Court's grant of DOL's petition to enforce its subpoenas was proper in all respects.

In this case, DOL supported its Petition for Enforcement with a declaration from Investigator Bindu A. George, and the District Court found that the declaration satisfied DOL's obligation to establish that its subpoenas met the threshold requirements for enforcement. *Chao v. Koresko*, No. 04-MC-74, slip op. at 3 (E.D.Pa. May 11, 2004). Respondents argue that the District Court improperly relied on the "conclusory" statements in Investigator George's declaration. As described above, however, our standard administrative subpoena enforcement procedure specifically contemplates that an agency will use affidavits or sworn declarations to satisfy its initial burden. *See Wheeling-Pittsburgh*, 648 F.2d at 128. Moreover, weighing the sufficiency of the parties' submissions is precisely the type of decision that is committed to the District Court's discretion. Although we wonder how DOL could possibly need all of the documents it has listed in its subpoenas, we find no basis for concluding that the District Court abused its discretion in this first phase of the enforcement analysis.[FN1]

> [FN1]. Judge Weis considers the request for production of thousands of employee applications for insurance which include medical and personal information to be unduly burdensome and would deny DOL's requests as to those documents.

In the second phase of its enforcement analysis, the District Court evaluated Respondents claims that DOL was improperly motivated and concluded that, even assuming the facts that Respondents alleged were true, Respondents had failed to meet their burden of establishing that DOL was acting in bad faith or for an improper purpose. *Koresko*, No. 04-MC-74, slip op. at 4-5. Respondents contend that the District Court erred by applying the standard from *United States v. Aero Mayflower Transit Co.*, 831 F.2d 1142, 1145-47 (D.C.Cir.1987), which held that a respondent had to show that the agency was acting in bad faith or for an improper purpose to overcome the agency's *prima facie* enforcement showing, *id. at* 1145, rather than analyzing their claims under the framework that we laid out in *Wheeling-Pittsburgh*, which allows that a respondent might be able to establish that enforcement of a subpoena would abuse the court's process even where the respondent fails to demonstrate bad faith. 648 F.2d at 125. Respondents' contention lacks merit. Even if we were to find that *Wheeling-Pittsburgh* articulates a broader standard than *Aero Mayflower*, the outcome of the case would

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                           Page 3
Slip Copy, 2005 WL 2521886 (C.A.3 (Pa.))
(Cite as: Slip Copy)

not change-the District Court has already determined that the facts alleged by Respondents do not meet the *Wheeling-Pittsburgh* standard. Although the District Court's analysis was framed in terms of "bad faith" and "improper purpose," the District Court compared the facts alleged by Respondents to those alleged in *Wheeling-Pittsburgh* on its way to finding that Respondents' claims were insufficiently troubling to warrant further investigation. *See Koresko,* No. 04-MC-74, slip op. at 5 ("Even assuming that the investigation was prompted by a complaint by SCM, that fact does not rise to the level of bad faith or improper purpose by the agency. *See Securities and Exchange Commission v. Wheeling-Pittsburgh Steel Corp.,* 648 F.2d 118, 127 (3d Cir.1981)."). Under these circumstances, we cannot find that the District Court abused its discretion in the second phase of the enforcement analysis.

**\*3** Respondents' argument that the District Court erred by failing to inquire into DOL's jurisdiction to investigate Respondents is similarly unfounded. As the District Court properly pointed out, the agency is not required to establish jurisdiction as an element of its *prima facie* case. *Koresko,* No. 04-MC-74, slip op. at 3 (quoting *Donovan v. Shaw,* 668 F.3d 985, 989 (8th Cir.1982)). The case that Respondents cite to support their position, *EEOC v. Shell Oil Co.,* 466 U.S. 54 (1984), is inapposite here because it is based on Title VII. Title VII, unlike ERISA, requires a valid charge of discrimination as a prerequisite to an EEOC investigation. A case decided by the Court of Appeals for the Eighth Circuit considering a subpoena issued by DOL pursuant to ERISA provides a better comparison. The court there noted that "[i]t is well-settled that a subpoena enforcement proceeding is not the proper forum in which to litigate the question of coverage under a particular federal statute," *Donovan,* 668 F.2d at 989 (citations omitted), and concluded that the district court's refusal to entertain the respondent's defense of lack of coverage under the statute was proper. *Id.* Similarly, here, the District Court found that DOL had established a *prima facie* case for enforcement. Because coverage by the statute is not an element of DOL's *prima facie* case, and lack of coverage is not a defense to enforcement, the District Court's failure to inquire into DOL's jurisdiction to investigate Respondents was proper.

In sum, none of the issues that Respondents raise regarding the District Court's enforcement of DOL's subpoenas amounts to an abuse of discretion. We will accordingly affirm the District Court's May 11 Order.

B. Respondents' Privilege Claims

Respondents assert that many of the documents requested by DOL in its subpoenas are covered by various privileges. After reviewing Respondents' privilege log and various "samples" of the allegedly privileged documents, the District Court rejected Respondents' privilege claims.[FN2] The Court expressed frustration with Respondents' submissions and concluded that they should not be allowed more time to support their claims. *Chao v. Koresko,* No. 04-MC-74, slip op. at 4 (E.D.Pa. Aug. 2, 2004). On appeal, Respondents contest the District Court's legal finding that the statutory tax preparer privilege does not apply to this dispute, the Court's factual findings as to the applicability of the attorney-client and other privileges to the requested documents, and the District Court's refusal to allow Respondents to supplement their initial privilege submission. We reject all of Respondents' arguments and conclude that the District Court's privilege decisions were proper.

> FN2. The Court allowed limited redaction of law firm bills to delete attorney-client privileged or work product-protected information and insurance forms to protect personal health and medical information. *Chao v. Koresko,* No. 04-MC-74 (E.D.Pa. Aug. 23, 2004).

Our review of the District Court's determinations as to the scope of asserted privileges is plenary. *United States v. Liebman,* 742 F.2d 807, 809 (3d Cir.1984). We agree with the District Court's that the tax preparer privilege does not apply here. The language of the statute is clear-the "privilege" "*may only be asserted* in-(A) any noncriminal tax matter before the Internal Revenue Service; and (B) any noncriminal tax proceeding in Federal court brought by or against the United States." 26 U.S.C. § 7525(a)(2) (emphasis added). This case, a civil proceeding by DOL to enforce an administrative subpoena, is neither. Respondents' primary concern seems to be that DOL will share information it receives with the IRS, but they have not cited any authority that expands the tax preparer privilege beyond its express statutory limits. Because this proceeding is clearly outside of the statutory bounds of the tax preparer privilege, we conclude that the privilege is inapplicable here.

**\*4** Determinations of the applicability of privileges to particular documents are committed to the District

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 2521886 (C.A.3 (Pa.))
(Cite as: Slip Copy)

Page 4

Judge's discretion. *Rossi v. Standard Roofing, Inc.,* 156 F.3d 452, 477 n. 16 (3d Cir.1998). The burden rests upon the party who claims that requested documents are privileged to "describe the nature of the documents ... in a manner that ... will enable other parties to assess the applicability of the privilege or protection." Fed.R.Civ.P. 26(b)(5). In this case, the District Court specifically found that Respondents had failed to carry that burden:

[T]he respondents have not supported their claims with the kind of specific information that is required. The Court cannot tell what documents the respondents claim are protected by what privilege[s], by whom the document was prepared, from whom and to whom it was sent, and why it is a privileged communication.

*Koresko,* No. 04-MC-74, slip op. at 4 (E.D.Pa. Aug. 2, 2004). Respondents have attempted to relitigate the privilege issues before us, explaining why they think that various privileges apply to various documents. Their arguments establish only that they disagree with the District Court's decision; they do not establish that the District Court's ruling was incorrect or that the Court abused its discretion in any way. We will not disturb that ruling.

Finally, Respondents argue that the District Court "should have" allowed them more time to clarify their privilege submissions and provide additional information. Like determinations of whether the privilege applies, decisions as to the amount of information that the District Court needs in order to make such determinations are committed to the District Judge's discretion. *Cf. Schwimmer v. United States,* 232 F.3d 855, 863-64 (8th Cir.1956) (finding that district court has "discretion or latitude in the receiving of proof" on questions of waiver of attorney-client privilege). The District Court in this case "spent hours" evaluating Respondents' privilege claims, *Koresko,* No. 04-MC-74, slip op. at 5 (Aug. 2, 2004), and allowed Respondents the opportunity to present their privilege claims both orally and in writing. *Id.* at 4. The Court concluded that Respondents were "unable ... to state with any precision why any of the documents are privileged." *Id.* Given the circumstances, we find that the District Court acted well within its discretion when it declined to give Respondents a third opportunity to advance their privilege claims.

Because Respondents have failed to show that the District Court committed a legal error or abused its discretion with respect to the applicability of privilege to the subpoenaed documents, we will

affirm the District Court's August 23 Order.

### II. The Contempt Orders

Respondents challenge the District Court's March 17 contempt orders by arguing (1) that the Court lacked jurisdiction to enter the orders; (2) that the District Court violated Respondents' procedural due process rights in the contempt proceedings; (3) that the District Court erred in ignoring Respondents' defenses to the contempt charges; and (4) that the relief awarded by the District Court, in the form of compensatory costs and coercive fines, was improper. We address each argument in turn.

### A. Jurisdiction

*5 Respondents argue that the appeals that they filed from the District Court's May 11, August 23 and January 10 Orders divested the District Court of jurisdiction over further contempt proceedings. But the general rule on which Respondents rely, that filing a notice of appeal immediately transfers jurisdiction from a district court to a court of appeals, is subject to a number of exceptions that apply in this case. *See generally* 20 James Wm. Moore et al., *Moore's Federal Practice* § 303.32[1] (3d ed.1999). For example, the district court retains authority to enforce a judgment that has not been stayed. *Id.* § 303.32[2][c][vi]. The District Court thus properly denied DOL's Motion for Adjudication of Civil Contempt on January 10, deferring enforcement of its May 11 and August 23 Orders until Respondents' Petitions for Rehearing and Rehearing En Banc of its stay application were denied. *Chao v. Koresko,* No. 04-MC-74 (E.D.Pa. Jan. 10, 2005). Once the stay was finally denied, the District Court retained jurisdiction to enforce its May 11 and August 23 orders.

Respondents' appeal of the District Court's January 10 Order did not divest the District Court of that jurisdiction. A district court may proceed with a case if an appeal is filed from a non-appealable order. 20 *Moore's Federal Practice* § 303.32[2][b][iv][B]. "Civil contempt becomes appealable only when the contemnor has refused to comply with the remedial order and the court has exercised its authority either to punish or to coerce compliance." *U.S. Steel Corp. v. Fraternal Ass'n of Steel Haulers,* 601 F.2d 1269, 1273 (3d Cir.1979). The District Court's January 10 Order was not appealable-it simply denied DOL's contempt motion and outlined the penalties for any future failures to comply with the Court's August 23

Slip Copy
Slip Copy, 2005 WL 2521886 (C.A.3 (Pa.))
(Cite as: Slip Copy)

Order. As of January 10, then, the Court had not "exercised its authority either to punish or to coerce compliance." Thus, Respondents' appeal of the January 10 Order could not disturb the District Court's jurisdiction to enforce its May 11 and August 23 Orders. The District Court therefore retained jurisdiction to enter the March 17 Orders adjudging Respondents Koresko, Koresko & Associates and Penn-Mont in contempt.

B. Respondents' Procedural Due Process Arguments

Respondents contend that the District Court deprived them of their due process rights when it "prospectively" adjudged them in contempt in its January 10 Order and failed to give them adequate opportunity to explain in the hearings that led up to its March 17 Orders. Respondents rely on *Newton v. A.C. & S., Inc.,* 918 F.2d 1121 (3d Cir.1990), to support their due process theory. In that case, the district court issued an order providing for the imposition of fines if the parties failed to settle by a court-imposed deadline. *Id.* at 1124. When the parties failed to meet the deadline, the court "summarily" and without a hearing imposed fines on defendants and defendants' counsel. *Id.* We reversed and instructed the district court to vacate the fines because the district court had failed to provide the parties with "customary procedural safeguards [to] ensure that the parties or their attorneys have an opportunity to explain the conduct deemed deficient before the fine is imposed and that a record will be available to facilitate appellate review." *Id.* at 1127.

*6 The comparison of this case to *Newton* is inept. Whereas the district court in *Newton* imposed fines before any hearing, the District Court here provided Respondents with two opportunities to explain themselves, at hearings on January 7 and March 16, before it imposed any sanctions. Transcripts were made of those hearings and included in the record for appellate review. The due process standard that we articulated for contempt proceedings in *Newton* requires no more.

C. Respondents' Contempt Defenses

We review a district court's contempt findings for abuse of discretion. *United States v. Sarbello,* 985 F.2d 716, 725 (3d Cir.1993). Abuse of discretion "may be established by showing an error of law or a clearly erroneous judgment or finding of fact." *Id.* Respondents have not challenged the merits of the

District Court's contempt findings, so we will not review them here. Instead, Respondents argue that the District Court committed errors of law when it declined to consider Respondents' "substantial compliance" defense and rejected Respondents' offer to produce privileged documents with various protections. We disagree.

The District Court was under no obligation to consider Respondents' substantial compliance defense. As Respondents themselves acknowledge, we have never recognized substantial compliance as a defense to civil contempt. *See Robin Woods, Inc. v. Woods,* 28 F.3d 396, 399 (3d Cir.1994). Courts that have recognized this defense define it as follows:
[S]ubstantial compliance with a court order is a defense to an action for civil contempt. If a violating party has taken "all reasonable steps" to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt.

*General Signal Corp. v. Donallco, Inc.,* 787 F.2d 1376, 1379 (9th Cir.1986) (emphasis added) (citations omitted). We need not consider here whether we should recognize the substantial compliance defense in the future, because even if we were to recognize substantial compliance as a defense to contempt, it would not apply to Respondents. *See Robin Woods,* 28 F.3d at 399. Respondents' failure to disclose the documents in this case is neither "technical" nor "inadvertent." Respondents have acknowledged that they have documents responsive to the subpoena, but have repeatedly declined to produce them. Although they sincerely believe that some of the documents covered by the subpoenas are protected by privilege, that belief does not excuse their failure to comply with the District Court's order. "[G]ood faith is not a defense to civil contempt." *Id.*

Nor was the District Court required to accept Respondents' offer to produce purportedly privileged documents with "protections." The District Court had already ruled on the merits of Respondents' privilege claims, and Respondents' applications to stay the District Court's order to produce the documents had been denied both by the District Court and by us. The District Court was therefore free to enforce its order. Respondents' attempts to produce the documents in redacted or "protected" form amounts to nothing more than an attempt to relitigate the privilege issue and was therefore properly disregarded by the District Court. *See United States v. Rylander,* 460 U.S. 752, 756 (1983) (" '[A] contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

thus become a retrial of the original controversy." '
(quoting *Maggio v. Zeitz,* 333 U.S. 56, 69 (1948))).

D. The Relief Awarded

*7 The District Court ordered Respondents to pay
$5,312.50 in compensation for attorneys' fees
(calculated at a rate of $250 per hour) and costs
associated with filing DOL's contempt motion, *Chao
v. Koresko,* No. 04-MC-74 (E.D.Pa. Apr. 25, 2005),
and a coercive fine of $250 per day beginning
January 26, 2005. *Chao v. Koresko,* No. 04-MC-74
(E.D.Pa. Mar. 17, 2005). Respondents argue that the
District Court erred as a matter of law in both awards.
First, they assert that the Court erroneously awarded
DOL costs for motions that it lost and improperly
assessed attorneys' fees for DOL's attorneys at a rate
comparable to that billed by attorneys in private
practice. Second, they argue that the coercive fine is
"preempted" by ERISA. We review a district court's
civil contempt sanctions for abuse of the court's
"wide discretion in fashioning a remedy." *Del. Valley
Citizens' Council for Clean Air v. Pennsylvania,* 678
F.2d 470, 478 (3d Cir.1982).

The District Court's award of compensatory costs was
proper. The final amount awarded included fees and
costs associated with both the January 7 and March
16 hearings. Although it is true that the Court denied
DOL's contempt motion after the January 7 hearing,
it did so for a purely technical reason-because we had
not yet denied Respondents' Petitions for Rehearing
and Rehearing En Banc of its stay applications. When
the District Court ultimately granted DOL's motion in
its March 17 Orders, it relied on evidence adduced at
both the January 7 and the March 16 hearings. In
addition, the District Court's April 25 Order indicates
that Respondents failed to object to DOL's
submissions supporting its request for attorneys' fees
when they had the opportunity. *Koresko,* No. 04-MC-
74 (E.D.Pa. Apr. 25, 2005). Respondents have thus
failed to advance any basis for finding that the
District Court abused its discretion in awarding fees
and costs associated with both hearings. Nor have
they established that the District Court's award of
fees at the rate of $250 per hour was excessive. We
have expressly authorized district courts to value
government attorneys' time at market rates for the
purpose of awarding sanctions. *See Napier v. Thirty
or More Unidentified Fed. Agents, Employees, or
Officers,* 855 F.2d 1080, 1092-93 (3d Cir.1988). We
will accordingly affirm the District Court's April 25
Order.

Respondents' argument that the District Court erred
in ordering them to pay coercive fines is similarly
unavailing. According to Respondents, the provision
of ERISA that sets statutory penalties for the failure
of "plan administrators" to produce information to
DOL at $100 per day limited the District Court's
authority to order coercive fines in its contempt
proceedings. *See* 29 U.S.C. § 1132(c)(6). But the
provision that Respondents cite speaks only to the
authority of the Secretary of DOL to assess civil
penalties against ERISA plan administrators;
nowhere does it evince an intent to limit a district
court's discretion to fashion appropriate remedies in
contempt proceedings. We conclude that the $250 per
day fine imposed by the District Court in this case
was well within the District Court's discretion.

*8 Because none of the arguments that Respondents
raise on appeal demonstrates that the District Court
abused its discretion or committed legal error during
the enforcement or contempt proceedings, we will
affirm the District Court's May 11 and August 23
Orders enforcing DOL's subpoenas and the District
Court's March 17 and April 25 Orders adjudging
Respondents Koresko, Koresko & Associates and
Penn-Mont in contempt and ordering them to pay
coercive fines and compensatory costs.

C.A.3 (Pa.),2005.
Chao v. Koresko
Slip Copy, 2005 WL 2521886 (C.A.3 (Pa.))

Briefs and Other Related Documents (Back to top)

• 05-2673 (Docket) (Jun. 01, 2005)
• 05-1946 (Docket) (Mar. 29, 2005)
• 2005 WL 4829201 (Appellate Brief) Reply Brief of
Respondents/Appellants (Mar. 10, 2005)
• 05-1440 (Docket) (Feb. 15, 2005)
• 2005 WL 4829200 (Appellate Brief) Brief of the
Secretary of Labor as Appellee (Feb. 7, 2005)
• 2004 WL 5000986 (Appellate Brief) Brief of
Respondents / Appellants (Dec. 20, 2004)
• 04-3614 (Docket) (Sep. 13, 2004)
• 2004 WL 5000985 (Appellate Brief) Amicus Curiae
Brief of Community Trust Company in Support of
Respondents/Appellants' (Jan. 6, 2004)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 4

Westlaw.

Not Reported in A.2d                                                            Page 1
Not Reported in A.2d, 1999 WL 252381 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

**C**

Grimes v. LCC International, Inc.Del.Ch.,1999.Only
the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Court of Chancery of Delaware.
Re: GRIMES, et al.
v.
LCC INTERNATIONAL, INC., et al, Civil Action
No., 16957
**No. CIV.A.16957.**

April 23, 1999.

Henry E. Gallagher, Esquire, Connolly, Bove, Lodge
& Hutz, Wilmington.
Peter B. Ladig, Esquire, Richards, Layton & Finger,
Wilmington.
JACOBS, Vice-Chancellor.
**\*1 Counsel:**

On April 22, 1999, I appointed a Special Master to
recommend the disposition of the plaintiffs' motion to
compel the production of approximately 140
documents being withheld by defendants on the
grounds of attorney-client privilege and/or work
product immunity. To afford guidance to the Special
Master, the parties have asked the Court to resolve
certain threshold privilege-related issues. This is the
decision of the Court on those issues. Because of the
shortness of time to complete discovery before the
May 6, 1999 hearing on plaintiffs' motion to appoint
a receiver, the Court's treatment of these issues is
necessarily summary and abbreviated.

*I. Universe of Documents Subject to Attorney-Client
Privilege*

The plaintiffs contend that many of the documents
described on the defendants' privilege log cannot be
subject to a claim of attorney-client privilege,
because on their face those documents do not satisfy
the criteria for a privileged communication. To be
protected under the attorney-client privilege, a
document must be or contain a confidential
communication made between a client and his lawyer
(or the representatives of the client and the lawyer, or
among the lawyers and their representatives
representing the same clients) for the purpose of

facilitating the rendition of legal services to the
client. Del. Unif. R. Evid. 502(b); *Deutsch v. Cogan,
Del. Ch., 580 A.2d 100, 105-6 (1990)*.

This Court has not independently reviewed the
privilege log or the disputed documents; that
unenviable task will be for the Master to perform.
Nonetheless, some guidelines (although abstract)
may be derived from basic principles. Thus, to the
extent the defendants are claiming attorney-client
privilege with respect to (1) correspondence or other
communications between lawyers for Microcell
and/or LCC (Microcell's controlling stockholder) and
non-client persons or entities (e.g., Chase Manhattan
Bank); or (2) correspondence or other
communications between or among non-lawyers
(and/or their representatives), these communications
are discoverable because they fall outside the
definition of a privileged communication.

*II. Communications To and From Peter DeLiso*

According to the plaintiffs, the great bulk of the
disputed documents are communications by or to
Peter DeLiso, who is the general counsel for both
LCC and Microcell, and is also the Chairman of
Microcell's Board of Directors. The plaintiffs contend
that Mr. DeLiso represented both LCC and Microcell
during the events that give rise to their claims,
namely (1) when those companies negotiated the
revolving credit agreement that is the subject of
several breach of fiduciary duty claims, (2) when
Microcell negotiated, with companies in several
foreign countries, transactions that are the subject of
claims that LCC usurped corporate opportunities of
Microcell; (3) when Microcell's LCC-controlled
board of directors improperly withheld funding from
Microcell; (4) when Mirocell agreed to guarantee
LCC's credit facility with Chase Manhattan Bank,
allegedly for no consideration; and (5) when LCC
entered into credit agreements with Chase that
prohibited LCC from funding Microcell, even though
LCC was legally obligated to provide such funding.

**\*2** It appears that Mr. DeLiso generated and received
many documents in connection with these events.
Those documents, plaintiffs contend, are not
privileged as a matter of law. Lamentably, any
analysis of these claims is made difficult because of
the multiple roles that Mr. DeLiso occupied. Whether

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 1999 WL 252381 (Del.Ch.)
(Cite as: Not Reported in A.2d)

or not a given communication to or from Mr. DeLiso is privileged will necessarily depend upon his capacity at the time he generated or received the communication. To resolve the privilege issue created by Mr. DeLiso's several and simultaneous fiduciary roles, those capacities must first be sorted out.

That proposition, applied to the present facts, results in the following analysis:

1. Any confidential communication [FN1] to or from Mr. DeLiso *solely* in his capacity as Chairman of Microcell's Board of Directors (which communication does not contain any legal advice to Mr. DeLiso *qua* client), would not be subject to claims of attorney-client privilege, since Mr. DeLiso would not have been acting in his lawyer capacity.

>    FN1. It is assumed that all communications referred to in this analysis pertain to matters that are relevant to the claims asserted in this lawsuit.

2. Any confidential communication made by Mr. DeLiso-acting *solely* in his capacity as counsel for LCC-to LCC or its directors and/or officers; and any confidential communication made by those clients to Mr. DeLiso, again acting *solely* in that capacity, should be subject to the attorney-client privilege. Those communications would, therefore, be protected from disclosure to the plaintiffs, who are stockholders of Microcell, not LCC.

3. What remains are the confidential communications made by Mr. DeLiso acting *solely* in his third capacity-as counsel for Microcell-to Microcell and/or its directors or officers; and also confidential communications from those clients to Mr. DeLiso, again in that capacity. This category of documents is the apparent focus of much of the parties' legal dispute. The plaintiffs contend that because they are stockholders of Microcell who are suing derivatively on its behalf, Microcell and its directors may not invoke the attorney-client privilege against them. The defendants dispute that. They argue that the fact that plaintiffs are suing derivatively does not render the privilege inapplicable. They contend that the privilege does attach and that to defeat it, the plaintiffs must show good cause why the privilege should not apply. That issue is addressed in Part III, below. For the reasons set forth therein, I conclude that the defendants may claim privilege with respect to this category of documents, subject to the

plaintiffs' right to defeat the privilege by showing good cause, as that concept was explicated by the Fifth Circuit in *Garner v. Wolfinbarger,* 430 F.2d 1093 (Th Cir.1970), and by this Court in *Deutsch v. Cogan, supra,* 580 A.2d at 105-6, and cases cited therein.

4. Although the disputed documents relating to Mr. DeLiso may be divided into the above three categories, in some cases the reality (as opposed to the theory) may not be so simple. Conceivably there may be documents that do not disclose in any clear-cut way which of Mr. DeLiso's three hats he was wearing at the time he generated or received the communication in question. Where Mr. DeLiso's capacity is not readily ascertainable from the document, it will be difficult to determine whether the document is subject to the privilege. To the extent the Special Master encounters such documents, the question becomes how they should be treated. In my view, any doubt about the status of this "indeterminate" category of documents should be resolved against the claim of privilege. I so conclude because it was the defendants who would have created the problem, by placing Mr. DeLiso in multiple-and potentially conflicting-fiduciary roles. Having created that conflict and its resulting ambiguity, and having been in a position to prevent the conflict from arising in the first place, the defendants, as fiduciaries for Microcell's minority stockholders, cannot be allowed to benefit from the ambiguity by asserting a privilege that might not otherwise have been available. *See Valente v. Pepsico, Inc.,* 68 F.R.D. 361, 368 (1975).

### III. The *Garner vs. Valente* Debate

*3 The final issue concerns the plaintiffs' argument that the defendants may not assert the attorney-client privilege as to *any* communication to or from Mr. DeLiso while he served simultaneously as general counsel for LCC and Microcell. They contend that in such circumstances, *Valente v. Pepsico* precludes the conflicted fiduciary altogether from asserting, in a derivative action brought against the fiduciary, the privilege against either of the clients to whom he owed (conflicting) fiduciary duties. The defendants argue that *Valente* does not represent the law of Delaware. Rather, they contend, Delaware has rejected *Valente* in favor of the approach adopted in *Garner v. Wolfinbarger,* which allows the fiduciary to assert the privilege but permits the minority shareholder plaintiff to defeat the privilege by showing good cause.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                    Page 3
Not Reported in A.2d, 1999 WL 252381 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

On this issue the defendants are correct. In *Deutsch v. Cogan, supra,* this Court, citing earlier Chancery decisions, held that *Garner v. Wolfinbarger,* not *Valente v. Pepsico,* represents the law of Delaware on this question. Accordingly, shareholder plaintiffs must show good cause to defeat the defendants' claim of attorney-client privilege. The Court in *Deutsch* did, however, make it clear that the fiduciary's conflicting roles are a factor that may be taken into account in determining whether there is good cause. Moreover, although this Court rejected the rationale of *Valente,* it did endorse the result reached on the facts before the court in that case.

Accordingly, in reviewing the disputed documents, the Master shall determine whether the plaintiffs have shown good cause why the attorney-client privilege should not attach to those documents that fall into the third category described in Part II, *supra,* of this Opinion. In so doing, the Master shall be guided by the good cause analysis employed in *Garner, Deutsch,* and subsequent Delaware authorities.[FN2]

> FN2. *See, e.g., AOC Limited Partnership v. The Horsham Corporation,* Del. Ch., C.A. No. 12480, Chandler, V.C. (May 4, 1992); *Cole v. Wilmington Materials, Inc.,* Del. Ch., C.A. No. 12649, Allen, C. (July 1, 1993); *Lee v. Engle,* Del. Ch., C.A. No. 13223, 13284, Steele, V.C. (Dec. 15, 1995). The defendants have also claimed worked product immunity with respect to some of the disputed documents. The work product issue is not addressed here, because it was not addressed in the parties' briefs. Work product claims will be resolved *in camera* on a document-by-document basis.

Del.Ch.,1999.
Grimes v. LCC International, Inc.
Not Reported in A.2d, 1999 WL 252381 (Del.Ch.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 5

Westlaw.

Not Reported in F.Supp.                                                                              Page 1
Not Reported in F.Supp., 1997 WL 109659 (D.Kan.)
**(Cite as: Not Reported in F.Supp.)**


**H**
Briefs and Other Related Documents
High Plains Corp. v. Summit Resource Management,
Inc.D.Kan.,1997.Only the Westlaw citation is
currently available.
United States District Court,D. Kansas.
HIGH PLAINS CORPORATION, Plaintiff,
v.
SUMMIT RESOURCE MANAGEMENT, INC., et
al., Defendants.
No. 96-1105-FGT.

Feb. 12, 1997.


MEMORANDUM AND ORDER
REID, United States Magistrate Judge.
**\*1** On January 21, 1997, defendant Abbott
Laboratories filed a motion to compel (Doc. 60-61).
A response was filed on February 5, 1997 (Doc. 69).
Abbott has informed the court that they will not file a
reply brief.

Plaintiff has asserted the attorney-client privilege
and/or the work product rule in regards to a number
of documents being sought by Abbott. They have
also provided a privilege log. The privilege log
provides the date of the document, who it is from and
to, who else received a copy of the document, the
reason withheld, and a description of the document.
However, the reason withheld simply cites the
privilege. The description of the document simply
states it is a letter, a billing statement, a
memorandum, etc. Such information is not
sufficient to allow this court to determine whether or
not the documents are privileged.

For example, the first document identified in the
privilege log is a letter dated April 21, 1994 from R.
Friend (CFO of High Plains Corp.) to J. Woolf
(attorney). Plaintiff claims it is protected by the
attorney-client privilege. However, all that the court
knows is that it is a letter from the CFO of plaintiff to
an attorney. This information fails to meet the
plaintiff's burden of proving to the court that the letter
is protected by the attorney-client privilege. Nothing
in the log informs the court whether the document
contains legal advice or was prepared to elicit legal
advice from the recipient. The log is also silent as to
whether the document was intended to be kept
confidential and whether it was in fact so held.

*Bowne of New York City, Inc. v. AmBase Corp.,* 150
F.R.D. 465, 474-75 (S.D.N.Y.1993). The log is
completely silent as to the subject matter of the
document. This court, in the case of *Jones v. Boeing
Co.,* 163 F.R.D. 15, 17 (D. Jan. 1995), has made it
clear that the plaintiff, as the party claiming the
privilege, has the burden of proof. The plaintiff
must provide the court with sufficient information to
enable the court to determine that each element of the
privilege is satisfied as to each document for which a
privilege is claimed. Plaintiff has done little more
than to make a blanket claim of privilege.[FN1] The
mere fact that it is a letter from an officer of a
corporation to an attorney does not satisfy any of the
elements of the attorney-client privilege or the work
product rule. As the court in *Bowne* pointed out:


> FN1. In this court's order of December 31,
> 1996, the court directed plaintiff to provide
> "a complete privilege log that meets the
> requirements set forth in *Jones* and
> Fed.R.Civ.P. 26(b)(5)."


[t]he standard for testing the adequacy of the
privilege log is whether, as to each document, it sets
forth specific facts that, if credited, would suffice to
establish each element of the privilege or immunity
that is claimed. The focus is on the specific
descriptive portion of the log, and not on the
conclusory invocations of the privilege or the work-
product rule, since the burden of the party
withholding documents cannot be "discharged by
mere conclusory or ipse dixit assertions." [citations
omitted]
150 F.R.D. at 474. When a party invoking the
privilege does not provide sufficient detail to
demonstrate fulfillment of all the legal requirements
for application of the privilege, their claim of
privilege will be rejected. *United States v.
Construction Products Research, Inc.,* 73 F.3d 464,
473 (2d Cir.), *cert. denied,* 519 U.S. 927, 117 S.Ct.
294, 136 L.Ed.2d 213 (1996). The entire log
submitted by the plaintiff fails to provide sufficient
information to allow the opposing parties and the
court to determine that the elements of the privilege
are satisfied for each document withheld.

**\*2** Abbott does concede that it is not entitled to
information that is opinion work product (Doc. 13-
14). Therefore, the court will leave it to counsel to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 2
Not Reported in F.Supp., 1997 WL 109659 (D.Kan.)
**(Cite as: Not Reported in F.Supp.)**

work out an acceptable formula for withholding opinion work product from the documents sought by Abbott.    The court does agree with plaintiff's position that the opinion work product protection is not limited to opinion work product generated specifically for this lawsuit.   The work product rule protects materials prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation.   *Federal Trade Commission v. Grolier Inc.,* 462 U.S. 19, 25, 103 S.Ct. 2209, 2213, 76 L.Ed.2d 387 (1983).

IT IS THEREFORE ORDERED that the motion to compel is granted except for materials that are determined to be opinion work product.

Copies of this order shall be mailed to counsel of record for the parties.

D.Kan.,1997.
High Plains Corp. v. Summit Resource Management, Inc.
Not Reported in F.Supp., 1997 WL 109659 (D.Kan.)

Briefs and Other Related Documents (Back to top)

• 6:96cv01105 (Docket) (Mar. 22, 1996)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 6

Westlaw.

Not Reported in F.Supp.                                                                                     Page 1
Not Reported in F.Supp., 1986 WL 15693 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

**H**
RCA Corp. v. Data General Corp.D.Del.,1986.Only
the Westlaw citation is currently available.
United States District Court, D. Delaware.
RCA CORPORATION, Plaintiff,
v.
DATA GENERAL CORPORATION, Defendant.
**Cir. A. No. 84-270-JJF.**

July 2, 1986.

William J. Gilbreth, Norman H. Beamer, and Robert
Morgan, of Fish & Neave, New York City, William
J. Wade, of Richards, Layton & Finger, Wilmington,
Delaware, for Plaintiff.
Douglas E. Whitney, Jack B. Blumenfeld, and Mary
B. Graham, of Morris, Nichols, Arsht & Tunnell,
Wilmington, Delaware, for Defendant.

MEMORANDUM OPINION
FARNAN, District Judge.
**\*1** Currently before the Court are three motions:
RCA's Motion to Compel Data General to Produce
Documents, RCA's Motion to Compel Price
Waterhouse to Produce Documents, and Data
General's Motion to Compel Production of RCA's
Withheld Documents. The Court will deal first with
RCA's two Motions to Compel, then with Data
General's Motion.

RCA's MOTIONS TO COMPEL.

I. Motion to Compel Data General.

RCA has requested Data General to produce all
documents relating in any way to opinions on the
validity or infringement of the Cole patent. RCA has
stated that this request 'encompasses all documents
referring or relating to opinions on validity or
infringement, in addition to the opinions themselves.'
RCA's Brief in Support of its Motion to Compel Data
General, D.I. 290, at 3. Data General has asserted the
attorney-client privilege with respect to all such
documents, including counsel's opinions. On April 4,
1985, the Court ordered Data General to produce pre-
litigation opinions of counsel concerning the validity
or infringement of the Cole patent. D.I. 112. Data
General produced pre-litigation opinions of counsel,

as well as various documents 'directly related' to
those opinions. Data General's Answering Brief to
RCA's Motions to Compel, D.I. 295, at 4. Data
General continues to assert the attorney-client
privilege with respect to all documents referring or
relating to validity or infringement, but not directly
related to pre-litigation opinions of counsel.

Communications between a client and his attorney
for the purpose of seeking professional advice are
generally privileged, and not subject to disclosure.
See Colton v. United States, 306 F.2d 633, 639 (2nd
Cir. 1962), cert. denied, 371 U.S. 951 (1963); Smith
v. Alyeska Pipeline Service Co., 538 F.Supp. 977,
979 (D. Del. 1982). The purpose of the privilege is
to promote 'full and complete freedom of
consultation between clients and their legal advisers
without any fear of compelled disclosure except with
the client's consent.' Lee National Corp. v. Deraums,
313 F.Supp. 224, 226 (D.Del. 1970). However, it is
also well-established that a client may intentionally
or unintentionally waive his privilege. For instance,
a client may waive the privilege by disclosure of
some privileged communication, see Haymes v.
Smith, 73 F.R.D. 572, 577 (W.D.N.Y. 1976), or by
asserting reliance upon the advice of counsel as an
essential element of his defense. See, e.g., TWA v.
Hughes, 332 F.2d 602, 615 (2nd Cir. 1964), cert.
denied, 380 U.S. 248 (1965); Donovan v.
Fitzsimmons, 90 F.R.D. 583 (N.D.Ill. 1981); Panter
v. Marshall Field Co., 80 F.R.D. 718 (N.D.Ill. 1978).
In such situations, the client waives the privilege with
respect to the subject matter of the advice disclosed
or asserted as a defense.[FN1] Smith, 538 F.Supp. at
979; Panter, 80 F.R.D. at 721.

Here, it is undisputed that Data General relies upon
advice of counsel as a defense to the charge of willful
infringement. As noted above, it has already
produced prelitigation opinions of counsel
concerning validity or infringement, as well as
documents directly related to these opinions. Data
General thus argues that it has already produced all
documents which it is required to produce, and that it
is entitled to withhold documents which refer or
relate to validity or infringement of the Cole patent,
but which are not directly related to the opinions of
counsel. Data General's Answering Brief, D.I. 295,
at 11. However, this distinction is not supported by
the authorities cited, supra. The correct rule is that a
party who relies upon advice of counsel as an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

essential element of its defense waives the attorney-client privilege with respect to the subject matter of that advice. See In Re Cole Patent Litigation, C.A. 78-198, Slip Op. at 2 (D.Del., Nov. 25, 1981); Smith, 538 F.Supp. at 979; Haymes, 73 F.R.D. at 577; Panter, 80 F.R.D. at 721. Therefore, Data General must produce all documents which directly or indirectly relate to opinions of counsel on validity or infringement.

## II. Motion to Compel Price Waterhouse.

**\*2** RCA has also sought production of documents in the possession of Price Waterhouse, Data General's auditor, that Price Waterhouse has withheld at the request of Data General. These documents were requested pursuant to RCA's Notice of Deposition of Price Waterhouse. Data General has requested Price Waterhouse to withhold these documents on the ground that the documents are protected by work product immunity. It asserts that each document in question was prepared by an agent of Data General, each reflects the mental impressions of a Data General attorney, and that each concerns pending or anticipated litigation. RCA argues that, even if these documents are in fact attorney work product, they must be produced because of Data General's reliance upon advice of counsel as a defense.

Attorney work product immunity is conceptually distinct from the attorney-client privilege. Like attorney-client privilege, work product immunity serves to protect the confidentiality in the attorney-client relationship. However, work product immunity also protects the attorney's privacy in performing the various duties involved in the representation of his client. See Hickman v. Taylor, 329 U.S. 495, 510-511 (1947). Thus, while the attorney-client privilege, work product immunity is said to belong in large part to the attorney and not to the client. In Re Grand Jury Proceedings, 604 F.2d 798, 801 n.4 (3rd Cir. 1979). These concerns for attorney privacy have been incorporated into F.R.C.P. 26(b)(3), which provides for discovery only upon a showing of 'substantial need' and 'undue hardship' in obtaining the substantial equivalent of the information by other means.

However, the 'waiver' principle discussed supra, applies to work product immunity as well as to the attorney-client privilege. Thus, where a party asserts the advice of counsel as an essential element of its defense, work product immunity, like attorney-client privilege, is waived with respect to the subject of that advice. See, e.g., Donovan, 90 F.R.D. at 588; Panter, 80 F.R.D. at 725. See also, 4 J. Moore, Federal Practice, § 26.64[4] at 26-477 (2nd Ed. 1984). Therefore, to the extent that the withheld Price Waterhouse documents in any way relate to the opinions of counsel on infringement or validity of the Cole patent, any work product immunity of those documents has been waived.

## DATA GENERAL'S MOTION TO COMPEL.

RCA has enumerated 973 separate documents which it is withholding from production on the grounds of attorney-client privilege and/or work product. Affidavit of George J. Seligsohn, D.I. 317, at Ex. A-F. Data General has moved to compel production of these documents, arguing that the documents are not privileged, and that, in any event, RCA has waived the attorney-client privilege or work product immunity by the disclosure of certain privileged documents.

### I. Attorney-Client Privilege.

As discussed previously, the purpose of the attorney-client privilege is 'to promote full and complete freedom of consultation between clients and their legal advisers without any fear of compelled disclosure except with the client's consent.' Lee National Corp., 313 F.Supp. at 226. Protection of this confidentiality is needed to insure that the client is free to disclose to the attorney all relevant information required to prepare the client's case, without fear that the information will be disclosed. However, 'because the privilege obstructs the search for the truth and because its benefits are, at best, 'indirect and speculative', it must be 'strictly confined within the narrowest possible limits consistent with the logic of its principle''. In Re Grand Jury Investigation, 599 F.2d 1224, 1235 (3rd Cir. 1979). Therefore, the burden is on the party asserting the privilege to demonstrate that all required elements are present. Coastal Corp. v. Duncan, 86 F.R.D. 514, 520 (D.Del. 1980).

**\*3** One who asserts the privilege must show each of the following criteria, outlined in United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358-59 (D.Mass. 1950):
The privilege applies only if (1) the asserted holder of the privilege is or sought to be come a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                          Page 3
Not Reported in F.Supp., 1986 WL 15693 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

(b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Accord Hercules, Inc. v. Exxon Corp., 434 F.Supp. 136, 144 (D.Del. 1977).

In support of its assertion of attorney-client privilege and work product immunity, RCA filed affidavits by Norman E. Rosen, senior attorney in RCA's Licensing Department, and George J. Seligsohn, the RCA patent attorney who completed prosecution of the Cole patent application. D.I. 317; D.I. 318. These affidavits identify seven separate categories of withheld documents, and describe the characteristics of the documents in each category. The documents in each category are identified by their respective document numbers. D.I. 317 at Ex. A-F. The categories, with their respective descriptions, are as follows:

Category 1. Communications among RCA patent attorneys, or between RCA patent attorneys and outside patent attorneys and agents retained by RCA regarding legal issues that arose in connection with the prosecution of RCA patent applications. Seligsohn Affidavit, D.I. 317, at ¶ 6.

Category 2. Communications between RCA patent attorneys and non-legal personnel in RCA's Licensing Department which convey, refer, or relate to legal advice. Id. at ¶ 7.

Category 3. Communications among non-legal personnel in RCA's Licensing Department which refer or relate to legal advice received or to be received from attorneys in RCA's Patent Department. Rosen Affidavit, D.I. 318, ¶ 7.

Category 4. Communications which refer or relate to legal advice received or to be received by persons at RCA from RCA's outside counsel at the law firms of Fish & Neave or Schnader, Harrison, Segal & Lewis. Id. at ¶ 8.

Category 5. Communications which refer or relate to legal advice sought by non-legal personnel in RCA's Licensing Department, from attorneys in that department. Id. at ¶ 9.

Category 6. Communications among RCA attorneys which refer or relate to legal issues concerning licensing of the Cole patent. Seligsohn Affidavit, D.I. 317, ¶ 8.

Category 7. Attorney work product documents generated in anticipation of litigation. Rosen Affidavit, D.I. 318, ¶¶ 10-21.

In each instance, the affiants state that the documents in question were maintained as confidential by RCA.

*4 The party asserting the attorney-client privilege must provide a sufficient description of the relevant documents, as well as the reasons supporting its assertion of the privilege, in order to satisfy the standards of United Shoe. See International Paper Co. v. Fibreboard Corp., 63 F.R.D. 88, 93-94 (D.Del. 1974). Except as noted below, the descriptions of the various categories of documents provided in RCA's affidavits, as well as the descriptions of each individual document provided in the withheld document lists, are sufficient to support RCA's assertion of privilege with respect to the documents listed in each category.

The documents in Category 1 are described as confidential communications among RCA's attorneys or their agents regarding prosecution of patent applications. To the extent that such documents contain or reflect confidential communications between attorney and client for the purpose of securing legal advice concerning preparation or prosecution of the patent applications, they are protected. See Sperry v. State of Florida, 373 U.S. 379 (1963); Hercules, Inc., 434 F.Supp. at 146-47. The protection applies to in-house patent counsel, as well as outside counsel. Hercules, 434 F.Supp. at 147.

With respect to Category 2, these documents are described as confidential communications between attorneys in RCA's patent department and non-lawyers in RCA's licensing department, which refer or relate to legal advice to be used by the licensing department in negotiating licensing agreements. Such documents are privileged. Although this situation presents the problem of 'separating out business from legal advice', the privilege continues to apply if the attorney is 'acting as a lawyer', that is, 'giving advice with respect to the legal implications of a proposed course of conduct . . .'. Id.

Category 3 documents present problems, however.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                              Page 4
Not Reported in F.Supp., 1986 WL 15693 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

These documents are described as 'communications among non-legal personnel in RCA's Licensing Department which refer or relate to legal advice received or to be received from attorneys in RCA's Patent Department.' Rosen Affidavit, D.I. 318, ¶ 7. Since these communications are among non-legal personnel, the requirement that the communications be between lawyer and client is not satisfied. See 4 J.Moore, Federal Practice ¶ 26.60[2], at 26-194. Therefore, the documents described in Category 3 are not privileged. However, RCA asserts that these documents 'convey and/or evaluate legal advice from the patent attorneys to those in the licensing department who requested it and who must act on that advice.' RCA's Brief in Opposition to Data General's Motion to Compel, D.I. 319, at 10. Although the documents in Category 3 are not privileged themselves, such portions of these documents that specifically convey or substantially describe confidential communications between RCA's attorneys and non-legal licensing personnel made primarily for the purpose of soliciting legal advice or assistance, may be withheld. Cf. Hercules, 434 F.Supp. at 146-47; Union Carbide Corp. v. Dow Chemical Co., 619 F.Supp. 1036, 1047 (D.Del. 1985).

*5 With respect to Category 4, these documents are described as 'communications which refer or relate to legal advice received or to be received by persons at RCA from either the law firm of Fish & Neave or Schnader, Harrison, Segal & Lewis'. Rosen Affidavit, D.I. 318, ¶ 8. As noted above, confidential communications between attorneys and their clients, made primarily for the purpose of soliciting or rendering legal advice, are cleary privileged. See, e.g., Hercules, 434 F.Supp. at 147. However, in its opposing brief, RCA states that '[i]naddition, this category contains documents from one RCA employee to another discussing legal advice received from outside counsel.' D.I. 319, at 11. As noted above with respect to Category 3, documents between non-legal employees are not privileged, except to the extent that they specifically convey or substantially relate privileged communications.

With respect to Category 5, these documents 'reflect communications which refer or relate to legal advice sought by non-legal personnel in RCA's licensing department from attorneys in that department.' Rosen Affidavit, D.I. 318, ¶ 9. RCA states that these documents 'are confidential for the same reasons that Category 2 documents are confidential. These are documents which refer or relate to legal advice sought by businessmen in RCA's licensing

department from attorneys in that department.' D.I. 319, at 11. However, based upon RCA's description of these documents, this category presents the same problems as did Category 3. The description would appear to include non-privileged communications among non-legal personnel, as well as privileged communications between non-legal personnel and RCA's attorneys. Although this description is not so imprecise as to render this Court unable to weigh the applicability of RCA's claim of privilege, Cf. International Paper Co., 63 F.R.D. at 94, the documents listed by RCA in this category would only be privileged to the extent that they consist of confidential communications between attorney and client for the primary purpose of soliciting or rendering legal advice, or to the extent that they specifically convey or substantially describe such communications.

With respect to Category 6, these documents 'reflect communications among RCA attorneys which refer or relate to legal issues concerning licensing of the Cole patent.' Seligsohn Affidavit, D.I. 317, ¶ 8. To the extent that these documents are based upon confidential communications to RCA's attorney from RCA's non-legal personnel for the primary purpose of soliciting legal advice, they are clearly privilege. See, e.g., Hercules, 434 F.Supp. at 147; Union Carbide, 619 F.Supp. at 1046-47.

## II. Work Product Immunity.

With respect to Category 7, RCA asserts that these documents are protected by attorney work product immunity. The work product doctrine protects an attorney's statements, memoranda, correspondence, briefs, and mental impressions, obtained or prepared by the attorney with an eye toward identifiable litigation. Hickman v. Taylor, 329 U.S. 495, 511 (1947); Union Carbide Corp., 619 F.Supp. at 1050. In the Rosen Affidavit, RCA has identified specific documents reflecting its attorneys' mental impressions and conclusions, and the specific litigation for which these documents were prepared. Rosen Affidavit, D.I. 318, ¶ ¶ 10-21. This showing is sufficient to invoke work product protection. Also, Data General has not asserted that it has 'substantial need of the materials in the preparation of [its] case and that [it] is unable without undue hardship to obtain the substantial equivalent of the materials by other means.' F.R.C.P. 26(b)(3).

## III. Waiver.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*6** Data General contends that RCA has waived whatever privilege it may have had with respect to communications relating to validity and infringement of the Cole patent, by its disclosure of documents dealing with those subjects.

From Data General's briefs, it appears that Data General bases its claims of waiver upon RCA's production of the following documents, as reprinted in Data General's Appendix to its Opening Brief in Support of its Motion to Compel, D.I. 301A:

A125-29, A139, A141-52, A175-88.

These documents are memoranda prepared by RCA to address arguments made by potential licensees as to the validity or infringement of the Cole patent. Data General argues that RCA has waived the right to assert the privilege with respect to any document concerning validity or infringement by disclosing these memoranda. However, as is clear from the transmittal letters, as well as the memoranda themselves, these documents are not privileged because they were prepared for the express purpose of being presented to third parties with whom RCA was negotiating licenses. As such, these memoranda were originally intended to be disclosed, and were thus never confidential. See, United States v. (Under Seal), 748 F.2d 871, 875 (4th Cir. 1984).

Also, these documents are specifically identified on their face as being prepared for the consideration of the third party addressees. As stated in Smith v. Alyeska Pipeline Service Co., 538 F.Supp. 977, 980 (D.Del. 1982):
There is a fundamental difference between a letter written to the client giving a balanced and objective presentation of the factual and legal issues and a letter written to the opposing party presenting the factual and legal position in an adversarial posture. If an adversary receives a letter from the opposing attorney which purports to be an opinion letter to an attorney's client, the adversary is more likely to give it greater weight and not discount the factual and legal propositions as being merely adversarial, as one may do when he receives a letter written for his adversary.

Because the document in Smith was apparently an objective opinion letter from lawyer to client, the document was privileged and disclosure to a third party waived the attorney-client privilege. Id. Here, however, the documents at issue were prepared with

an eye towards disclosure during licensing negotiations, and are clearly adversarial in nature, and thus are not privileged. Therefore, no waiver has occurred. See, Id.; American Optical Corp. v. Medtronic, Inc., 56 F.R.D. 926, 431 (D.Mass. 1972).

RCA continues to assert the privilege with respect to 'drafts' of these memoranda. It argues that the drafts, unlike the final versions, were not prepared with an eye towards disclosure. However, a draft of a document, like the final version of the document, is not privileged to the extent that it contains information included with an eye towards disclosure in the final document. Therefore, any drafts of the above listed documents which RCA continues to withhold are not privileged, and must be produced.


A156.


**\*7** This document is a letter, dated January 8, 1976, from Robert E. Peterson, RCA's former Licensing Director, to counsel for Jacquard Systems, a company engaged in licensing negotiations with RCA. In responding to Jacquard's assertions that RCA was 'attempting to license an invalid patent', Peterson stated:
. . . We had our patent department carefully examine all aspects of the Cole patent. In addition, we asked outside counsel to review the patent thoroughly. . . . As a result, we have full confidence in the Cole patent . . .

D.I. 301A, at A156. Data General argues that this letter disclosed the opinion of counsel as to the validity of the Cole patent, thus waiving the attorney-client privilege with respect to this subject.

Although an obvious inference from this letter is that RCA's counsel believed the Cole patent to be valid, the letter does not actually disclose counsel's opinion. Rather, the letter discloses that RCA's counsel had examined the patent, and that RCA had full confidence in it. In this context, the Court is not prepared to find that these statements constitute waiver. There is a judicial policy in favor of negotiated settlements, and parties should be allowed room to bargain in order to reach such settlements. Cf. International Business Machines Corp. v. Sperry Rand Corp., 44 F.R.D. 10, 13 n.2 (D.Del. 1968). In such a situation, a party should be allowed to argue his position with some fervor. The Court believes that is the situation presented with regard to this document and, therefore, the Court will not base a finding of waiver on such an instance.

Not Reported in F.Supp.                                          Page 6
Not Reported in F.Supp., 1986 WL 15693 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

A159.

Data General also argues waiver based upon RCA's
production of a 1976 memoranda from E.J. Norton,
an RCA patent attorney, to Harold Christoffersen,
another RCA patent attorney, directing Christoffersen
to prepare a response to objections to the Cole patent
raised by a potential licensee. In the memo, Norton
describes the issue presented by the licensee as
whether it is 'obvious to employ Cole once it is
required to form T.V. raster scan signals direct from
the       dig.-to-vid.     [digital-to-video]    character
converter'. He states that, 'we convinced Hazeltine
that it was not obvious. In fact, no one had done it
before Code.' D.I. 301-A at A159. Data General
argues that this last statement, that 'no one had done
it before Cole', constitutes a privileged opinion of
RCA's counsel as to the validty of Cole, and that
RCA has waived the privilege by producing this
opinion.

As noted above, this memo directs Christoffersen to
prepare a response to a potential licensee, and
instructs him as to the points that he should cover in
that response. In this context, it is not clear whether
the sentence focused upon by Data General reveals
an objective opinion of counsel, or is merely an
instruction as to the contents of the response
Christoffersen is to prepare. In any event, even if this
is an objective opinion, there is no indication that this
isolated sentence reveals an opinion formulated by
RCA's attorneys on the basis of confidential client
communications, and rendered to RCA as legal
advice. Cf. Smith, 538 F.Supp. at 980. As such, it is
not privileged, and its production does not constitute
waiver.

A104-107.

**\*8** Data General appears to allege waiver based upon
RCA's production of this document. D.I. 301, at 27.
However, this document contains no confidential
information communicated for the purpose of
obtaining legal advice, nor does it contain advice
based upon that information. Therefore, its
production does not waive the attorney-client
privilege.

A103.

This document is a 1962 memorandum from A.C.

Stocker, an RCA engineer, to O.V. Mitchell, an RCA
attorney, requesting an evaluation of desirable patent
coverage with respect to previously communicated
disclosures concerning digital generation of video
signals. Data General alleges that this document
waives the privilege with respect to the validity of
Cole because it discloses the confidential information
that a 1962 proposal to the FAA used the Cole
techniques. However, the document reveals that
Stocker merely stated that this FAA proposal used
the techniques of digital generation of video signals
in general, not the specific techniques of the Cole
patent. Although the memorandum is a request for
legal advice, it refers only to previously
communicated confidential information, and
discloses no confidential information or advice itself.
Therefore, it is not privileged and its disclosure does
not constitute waiver.

A110-115.

These documents all concern patent approval for the
DIVCON system manufactured by RCA Victor
Canada. A111-112 is a request to Norton for legal
advice on the scope of patent coverage needed for
this system, and A113 is Norton's response reflecting
his opinion on the scope of certain relevant prior art.
Similarly, A110 and A114-115 are documents
reflecting the opinion of RCA patent attorneys as to
the scope of RCA's patent coverage for the DIVCON
system. Such documents are clearly privileged, and
RCA's production of them waives the privilege with
respect to all documents on the same subject matter,
i.e., patent approval for the DIVCON equipment, and
potential infringement of other patents by DIVCON.

A207.

This is a letter from Dean W. Chace of RCA's
Licensing Department to D.A. Iijima, RCA's foreign
licensing liaison in Tokyo, stating that '. . . it is the
opinion of Patent Operations and counsel that Dirks
does not in any way anticipate the invention claimed
by Cole.' D.I. 301A, at A207. This letter clearly
reflects the advice of RCA's counsel, based on
information communicated to counsel for that
purpose. RCA claims that the document is not
privileged because it contains information
specifically prepared for responding to objections by
a licensee during licensing negotiations, citing
American Optical Corp. v. Medtronic, Inc., 56 F.R.D.
426, 431-32 (D.Mass. 1972). Although disclosure of
such information does not waive the privilege, the

Not Reported in F.Supp.
Not Reported in F.Supp., 1986 WL 15693 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 7

information in this document does not meet this criterion. This document is internal RCA correspondence, sent from one RCA business person to another. It is clearly not a position paper prepared for presentation to an adversary during licensing negotiations. In fact, if this document were to be disclosed during such negotiations, it would present precisely the problem addressed by the Court in Smith, in which an apparently objective opinion letter from attorney to client was presented to an adversary in licensing negotiations. 538 F.Supp. at 980. The apparently balanced, objective nature of such an internal letter would induce greater reliance by the potential licensee than would a clearly adversarial position letter. Id. Therefore, through production of this letter, RCA has waived the attorney-client privilege with respect to any communications on the subject matter of possible anticipation of the Cole patent by Dirks. See Hercules, Inc. v. Exxon Corp., 434 F.Supp. 136, 156 (D.Del. 1977).

A160, A195, A208-215, A217-232, A174, A216, A129, A153, A162-163, A194, A196, A122-123, A233-235.

*9 These documents were originally listed on RCA's withheld document lists, but were subsequently produced. RCA claims that these documents are not privileged, but were inadvertently listed on its lists. Data General asserts that, if these documents are not privileged, then other similarly described documents on RCA's withheld list cannot be privileged. However, the Court's determination of privilege is not based solely upon the document descriptions in RCA's withheld lists, but also upon the categorized descriptions provided in the affidavits filed by RCA. D.I. 317, D.I. 318. Produced documents that appear to be similar in description to withheld documents presumably do not contain the information described in RCA's affidavits which confers privilege upon the withheld documents, as discussed supra. The Court has no reason to believe that RCA has falsified its affidavits describing the contents of the withheld documents. Also, the inadvertently listed documents do not themselves disclose privileged material.[FN2]

The Christoffersen Deposition.

Data General argues that Christoffersen, an RCA attorney, at his recent deposition orally disclosed an opinion he reached in 1971 as to the validity of Cole. At his deposition, Christoffersen testified that he made a study of the file histories of the Cole application, including the prior art, and determined that, '. . . the patent was valid, clearly valid, in view of the art that I knew.' D.I. 301A, at A322-24.

This statement does not waive the attorney-client privilege. In order to constitute waiver, the specific content of a privileged communication must be disclosed. 4 J.Moore, Federal Practice, ¶ 26.60[2] (2nd Ed. 1984); American Optical Corp., 56 F.R.D. at 432. Christoffersen's statement reveals only that he held an opinion as to the validity of the Cole patent. Unlike document A207, supra, this statement does not indicate that the opinion was communicated to Christoffersen's clients, or to other RCA attorneys. Also, it does not indicate that the opinion was formulated for the purpose of rendering legal advice to RCA. Therefore, this opinion is not privileged, and its disclosure does not waive the privilege.

The Stocker Documents.

Data General seeks production of two documents withheld by RCA on the ground of work product immunity. These documents, Nos. 281 and 504 on RCA's withheld lists, are communications from Arthur Stocker, one of the inventors of the Cole patent, to John Farley, RCA's trial counsel, in In Re Cole Patent Litigation, C.A. 78-198, in this district. In his affidavit, Rosen states that these documents were prepared by or at the request of RCA's attorneys in anticipation of or during the course of In Re Cole Patent Litigation, and that they reflect 'one or more of the following: the mental impressions, conclusions, opinions and legal theories of RCA attorneys, outside counsel, and/or a representative of RCA regarding those litigations.' D.I. 318, ¶ 13. In its brief in response to Data General's Motion to Compel, RCA alleges that these documents were generated after Stocker had been retained as a consultant by RCA to assist counsel in trial preparation, and that the documents contained Stocker's suggestions to Farley concerning legal issues in the litigation, and recommendations to Farley concerning trial strategy. D.I. 319 at 29.

*10 RCA argues that these documents are 'opinion work product', produced by Stocker as an agent or consultant of RCA, at the direction of RCA's attorneys, and thus are absolutely protected from discovery. Data General argues that opinion work product protection is limited to the opinions, mental impressions, and legal theories of an attorney, and that Stocker is merely a 'third party fact witness' to whom such special protection does not apply.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1986 WL 15693 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Page 8

As noted above, the work product rule is a limited exception to the broad scope of discovery under the Federal Rules, carved out to protect the written statements, private memoranda, and mental impressions of an attorney in preparation for trial. Hickman v. Taylor, 329 U.S. 495, 510 (1947). Today, the doctrine has been substantially codified in F.R.C.P. 26(b)(3):
Subject to the provisons of subdivision (d)(4) of this Rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this Rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The rule in effect creates two categories of work product: 'ordinary' work product, and 'opinion' work product. See Upjohn Co. v. United States, 449 U.S. 383, 400 (1981); Sporck v. Peil, 759 F.2d 312, 316 (3rd Cir. 1985); 4 J.Moore, Federal Practice, ¶ 26.64[3.-1]-[3.-2] (2d Ed. 1984). Ordinary work product includes relevant and non-privileged factual information, whereas opinion work product includes the attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of the case, and inferences he draws from interviews of witnesses. See Hickman, 329 U.S. at 510; Sporck, 759 U.S. at 316.

Contrary to Data General's assertion, opinion work product protection does extend to agents of a party other than his attorney. In United States v. Nobles, 422 U.S. 225 (1975), the Supreme Court stated:
At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is

therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*11 422 U.S. at 238.

Here, RCA has asserted that at the time the documents in question were created, Stocker was retained by RCA as a consultant to assist counsel in trial preparation. D.I. 319 at 29. Thus, as an agent for RCA's attorneys, the mental impressions, conclusions, opinions, and legal theories of Stocker are entitled to the same protection as those of RCA's attorneys.

Despite RCA's assertions that such work product is absolutely immune, such opinion work product is not so immune. Rule 26(b)(3) does accord special protection to such information, stating that the attorney's or agent's mental impressions, conclusions, opinions, or legal theories shall be protected against disclosure, even where the required showing of 'substantial need' and 'undue hardship' in order to obtain ordinary work product has been made. Based on this strong language, some courts have concluded that opinion work product is in fact absolutely immune from discovery, under any circumstances. See, e.g., Duplan Corp. v. Moulinage et Retorderie de Chavanoz, 509 F.2d 730, 732 (4th Cir. 1974), cert. denied, 420 U.S. 997 (1975); In Re Grand Jury Proceedings, 473 F.2d 840, 848 (8th Cir. 1973). However, other circuits, including the Third Circuit, have declined to afford absolute protection. See, e.g., In Re Grand Jury Invesitgation, 599 F.2d 1224, 1231 (3rd Cir. 1979); Harper & Row Publishers, Inc. v. Decker, 423 F.2d 487 (7th Cir. 1970), aff'd by equally divided court, 400 U.S. 348 (1971). In Upjohn, the Supreme Court noted this division, but declined to decide the issue, stating:
While we are not prepared at this juncture to say that such material is always protected by the work product rule, we think a far stronger showing of necessity and unavailability by other means than was made by the government or applied by the magistrate in this case would be necessary to compel disclosure.

449 U.S. at 401-02. See also, Sporck v. Peil, 759 F.2d at 316 (3rd Cir. 1985) (opinion work product accorded an 'almost absolute' protection).

Therefore, in this circuit, opinion work product is not afforded absolute immunity from discovery. However, production of such information may be ordered only upon a showing of extraordinary circumstances. See In Re Grand Jury Investigation,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.　　　　　　　　　　　　　　　　　Page 9
Not Reported in F.Supp., 1986 WL 15693 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

599 F.2d at 1231; Bogosian v. Gulf Oil Corp., 738 F.2d 587, 593 (3rd Cir. 1984); Sporck, 759 F.2d at 316. Here, Data General has stated that the facts related to work done by Stocker and other RCA engineers on character generation, their knowledge of the work of others, and their communications with the RCA Patent Department are critically important to the question of validity. Also, Stocker's memory as to relevant events is apparently fading. D.I. 301 at 31. This is a sufficient showing under Rule 26(b)(3) for Data General to obtain such portions of these documents as do not reflect opinion work product of Stocker or RCA's attorneys. However, Data General has not shown that such extraordinary circumstances exist as would require production of any opinion work product that these documents contain. [FN3]

**\*12** Data General also seeks production of another Stocker memorandum, listed as Document No. 28 on RCA's withheld lists, which RCA claims is privileged. This document is within the groups of documents for which RCA has made a sufficient showing of attorney-client privilege. Data General alleges waiver of the privilege based upon RCA's disclosure of documents A103, A111-112, and A114. RCA's production of documents A111-112, and A114 has waived the attorney-client privilege with respect to the DIVCON patent as discussed, supra. Therefore, to the extent that this withheld document contains information for which the privilege has been waived, it must be produced.

Subsequently Produced Documents.

Data General also alleges waiver based upon certain documents produced by RCA subsequent to Data General's Motion to Compel. Data General alleges that production of notes of a 1979 meeting involving Stocker has waived RCA's attorney-client privilege with respect to validity and infringement of the Cole patent. Defendant's Supplemental Appendix, D.I. 323A, at B2-B7. However, this document does not appear to contain information communicated in confidence for the purpose of obtaining legal advice, nor does it contain such advice. Therefore, its production does not waive the attorney-client privilege.

Data General also argues waiver based upon RCA's recent production of withheld Document No. 109, which RCA alleges is privileged. D.I. 323A, at B1; D.I. 318, ¶ 7. The subject matter of this document is DIVCON, as to which RCA has already waived the attorney-client privilege.

By letters to the Court dated May 16, 1986, Data General alleges waiver based upon RCA's production of Documents Number 18, 66, 78, 79, 257, 266, and 516, which RCA has claimed in its affidavits as privileged. These documents consist of claim-by-claim comparative readings of Cole and several other patents. As such, these documents appear to consist of information contained in patent disclosures, which is of public record. Therefore, the documents do not contain any confidential communications, and no privilege can attach.

If these are in fact documents described in RCA's affidavits upon which the Court has based its determinations of privilege, then serious questions are raised concerning the accuracy of RCA's affidavits. In a case such as this, in which upwards of one thousand documents have been withheld on the basis of privilege and or work product, an accurate and good faith analysis of those documents by RCA is crucial. Otherwise, an in camera inspection of the documents would always be required, thus placing an unreasonable burden upon the court system. Therefore, the Court must be dependent upon the parties to make a diligent, careful determination of the contents of withheld documents upon which the Court can determine claims of privilege. In doing so, the parties are of course bound by ethical obligations not to mischaracterize the contents of these documents, or to otherwise mislead the Court. Any indication of bad faith in this endeavor will result in the severest sanctions.

FN1 Citing footnote reference contained in In re Cole Patent Litigation, C.A. 78-198, Slip Op. at 2 (D.Del., November 25, 1981), RCA argues that Data General is 'estopped' from asserting the attorney-client privilege. However, the weight of authority treats reliance upon advice of counsel as one form of waiver of the privilege. See TWA, 322 F.2d at 615; Panter, 80 F.R.D. at 721; Haymes, 73 F.R.D. at 577.

FN2 Document A-208, an internal RCA memo from D.W. Chace to S. Cohen, contains a statement that 'we have informed our Tokyo Liaison Office that Cole's contribution represents a patentable invention over the disclosure of Dirks.' D.I. 301A at A-208. To the extent that this discloses privileged advice of counsel, the Court has already determined, supra, that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                     Page 10
Not Reported in F.Supp., 1986 WL 15693 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

RCA has waived the privilege with respect to this particular subject matter.

FN3   At this stage of the litigation, Data General has made no showing that Stocker's communications to Farley during the In Re Cole Patent Litigation trial are directly at issue in this action.  If the substance of those communications were at issue, Data General would be entitled to production even though the communications were work product. See 4 J.Moore, Federal Practice, ¶ 26.64[3.-2], at 26-385 (2d Ed. 1984).   See also, Handgards, Inc. v. Johnson & Johnson, 413 F.Supp. 926, 930-32 (N.D.Cal. 1976).

D.Del., 1986.
RCA Corp. v. Data General Corp.
Not Reported in F.Supp., 1986 WL 15693 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 7

LEXSEE 2005 DEL. CH. LEXIS 95



Analysis
As of: Jan 20, 2007

**U.S. BANK NATIONAL ASSOCIATION, in its capacity as Indenture Trustee and
not in its individual capacity, Plaintiff, v. U.S. TIMBERLANDS KLAMATH
FALLS, L.L.C., n/k/a INLAND FIBER GROUP, L.L.C.; U.S. TIMBERLANDS FI-
NANCE CORP. n/k/a FIBER FINANCE CORP., U.S. TIMBERLANDS YAKIMA,
L.L.C., n/k/a AMERICAN FOREST RESOURCES, L.L.C.; U.S. TIMBERLANDS
HOLDINGS GROUP, L.L.C. n/k/a CASCADES RESOURCE HOLDINGS GROUP,
L.L.C.; U.S. TIMBERLANDS SERVICES COMPANY, L.L.C., n/k/a TIMBER RE-
SOURCES SERVICES, L.L.C.; JOHN M. RUDEY; ALAN B. ABRAMSON; AU-
BREY L. COLE; GEORGE R. HORNIG; ROBERT F. WRIGHT; and WILLIAM
A. WYMAN, Defendants.**

**C.A.No. 112-N**

**COURT OF CHANCERY OF DELAWARE, NEW CASTLE**

*2005 Del. Ch. LEXIS 95*

**June 2, 2005, Submitted
June 9, 2005, Decided
June 9, 2005, Filed**

**NOTICE:** [*1] THIS OPINION HAS NOT BEEN
RELEASED FOR PUBLICATION. UNTIL RE-
LEASED, IT IS SUBJECT TO REVISION OR WITH-
DRAWAL.

**SUBSEQUENT HISTORY:** Revised August 16, 2005.

**PRIOR HISTORY:** *U.S. Bank N.A. v. U.S. Timberlands
Klamath Falls, L.L.C., 2005 Del. Ch. LEXIS 49 (Del.
Ch., Mar. 30, 2005)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff trustee moved to
dismiss defendant issuer's motion to compel discovery;
the trustee claimed that the documents sought were pro-
tected by the attorney-client privilege and the work-
product privilege.

**OVERVIEW:** The trustee sought a declaration that the
issuer of certain notes violated several provisions of the
notes' indenture by entering into transactions with a re-
lated third party. After the court granted the trustee's mo-
tion for partial summary judgment, the issuer and other
defendants moved to compel discovery of communica-
tions between the trustee and the noteholders. The court
held, inter alia, that where the trustee's and the notehold-
ers' interests diverged, they were actually antagonistic.
Any documents containing communications relating to
indemnification of the trustee were not privileged under
Del. R. Evid. 502. However, after the trustee brought the
suit, the trustee's and the noteholders' interests were
clearly aligned. Therefore, the otherwise privileged
communications between the trustee, its counsel, and the
noteholders after that time were not discoverable.

**OUTCOME:** The motion to compel was granted as to
communications made before the suit was filed and de-
nied as to communications made after the suit was filed.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Privileged Matters >
General Overview*

2005 Del. Ch. LEXIS 95, *

*Evidence > Privileges > Attorney-Client Privilege > Waiver*
*Legal Ethics > Client Relations > Confidentiality of Information*
[HN1] The attorney-client privilege protects the communications between a client and an attorney acting in his professional capacity where the communications are intended to be confidential and the confidentiality is not waived.

*Civil Procedure > Discovery > Privileged Matters > General Overview*
*Evidence > Privileges > General Overview*
*Legal Ethics > Client Relations > Confidentiality of Information*
[HN2] The attorney-client privilege serves to foster the confidence of the client and enables him to communicate without fear in order to seek legal advice.

*Civil Procedure > Discovery > Privileged Matters > General Overview*
*Legal Ethics > Client Relations > Confidentiality of Information*
[HN3] The attorney-client privilege extends to the protection of confidential communications involving counsel for separate clients so long as the clients share a "common interest" sufficient to justify invocation of the privilege.

*Civil Procedure > Parties > Self-Representation > General Overview*
*Civil Procedure > Discovery > Privileged Matters > General Overview*
*Legal Ethics > Client Relations > Confidentiality of Information*
[HN4] See Del. R. Evid. 502(b).

*Civil Procedure > Discovery > Methods > Oral Depositions*
*Civil Procedure > Discovery > Privileged Matters > General Overview*
*Evidence > Privileges > Attorney-Client Privilege > Elements*
[HN5] It is improper for an attorney to instruct a deposition witness not to answer a question based on the attorney-client privilege, when the question relates to information that is partially privileged, but partially not. The proper procedure is to instruct the witness not to disclose privileged information while answering the question.

*Civil Procedure > Discovery > Privileged Matters > Work Product > General Overview*
[HN6] The work-product privilege can apply to documents prepared by non-attorneys, if those documents were prepared in anticipation of litigation.

*Civil Procedure > Discovery > Privileged Matters > General Overview*
*Legal Ethics > Client Relations > Confidentiality of Information*
[HN7] Communications originating from non-attorneys can be protected by the attorney-client privilege, if those communications relay legal advice from counsel to a party with a common interest. Del. R. Evid. 502(b).

*Civil Procedure > Discovery > Privileged Matters > Work Product > General Overview*
[HN8] The qualified work product immunity extends not only to non-attorneys, but also to material prepared before litigation commences.

*Civil Procedure > Discovery > Privileged Matters > General Overview*
*Legal Ethics > Client Relations > Confidentiality of Information*
[HN9] The attorney-client privilege protects communications by a client or the client's representative or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest.

**COUNSEL:** Attorneys for the Plaintiff: Daniel B. Rath, Esquire, Rebecca L. Butcher, Esquire, LANDIS RATH & COBB LLP, Wilmington, Delaware; Jerome A. Miranowski, Esquire, Kerry L. Bundy, Esquire, Nathaniel Zylstra, Esquire, FAEGRE & BENSON LLP, Minneapolis, Minnesota.

Attorneys for Defendants U.S. Timberlands Klamath Falls, L.L.C., n/k/a Inland Fiber Group, L.L.C., and U.S. Timberlands Finance Corp., n/k/a Fiber Finance Corp: Bruce L. Silverstein, Esquire, C. Barr Flinn, Esquire, Karen E. Keller, Esquire, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; David M. Friedman, Esquire, Mark P. Ressler, Esquire, R. Tali Epstein, Esquire, KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP, New York, New York.

Attorneys for Defendants U.S. Timberlands Yakima, L.L.C., n/k/a American Forest Resources, L.L.C., U.S. Timberlands Holdings Group, L.L.C., n/k/a Cascades Resource Holding, L.L.C., U.S. Timberlands Services

2005 Del. Ch. LEXIS 95, *

Company, L.L.C., n/k/a Timber Resources Services, L.L.C., John M. Rudey, and George R. Hornig: Bruce L. Silverstein, Esquire, C. Barr Flinn, Esquire, Karen E. Keller, Esquire, [*2] YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.

Attorneys for Defendants Alan B. Abramson, Aubrey L. Cole, Robert F. Wright, and William A. Wyman: Jesse A. Finkelstein, Esquire, Srinivas M. Raju, Esquire, RICHARDS, LAYTON & FINGER, Wilmington, Delaware.

OPINION:

*MEMORANDUM OPINION*

LAMB, Vice Chancellor.

I. n1

n1 The court recites only the facts essential to the disposition of this Motion. For a thorough recitation of the facts, please see *U.S. Bank N. A. v. U.S. Timberlands Klamath Falls, L.L.C., 864 A.2d 930, 935-37 (Del. Ch. 2004), vacated and remanded, 2005 Del. LEXIS 215, No. 36, 2005, Jacobs, J. (Del. June 6, 2005)* (ORDER).

This is an action by U.S. Bank National Association, an indenture trustee (the "Trustee"), seeking a declaration that the issuer of certain notes, Defendant U.S. Timberlands Klamath Falls, L.L.C. ("Klamath" or the "Issuer") violated several provisions of the notes' indenture (the "Indenture") by entering into transactions with a related third-party. [*3] The Trustee alleges that these transactions were completed to the detriment of the Issuer, and for the benefit and personal gain of other defendants. n2 The Trustee further alleges breach of fiduciary duty, actual and constructive fraud, and seeks the avoidance of certain transactions between the Issuer and the related entity and the imposition of a constructive trust on the property that was the subject of those transactions.

n2 These other defendants are U.S. Timberlands Services Company, L.L.C. ("Services"), U.S. Timberlands Finance Corp., U.S. Timberlands Holdings Group, L.L.C., and U.S. Timberlands Yakima L.L.C. All of these entities have since changed their names. Additionally, the five members of the board of directors of Services are named as individual defendants: John M. Rudey,

Alan B. Abramson, Aubrey L. Cole, George R. Hornig, Robert F. Wright, and William A. Wyman. Rudey is also the chairman, CEO, and president of Services. Rudey formed Klamath in 1996.

On December 22, 2004, this court denied [*4] the defendants' motion to dismiss, and granted the Trustee's motion for partial summary judgment. n3 On May 3, 2005, the defendants moved to compel discovery, from the Trustee, of communications between the Trustee and QVT Financial LP and GoldenTree Asset Management, L.P., two holders of the notes (collectively, the "Noteholders"). In particular, the defendants requested an order:

compelling the plaintiff to produce all documents withheld pursuant to the common interest doctrine for which no other privilege has been properly asserted; [] compelling the plaintiff to produce all other withheld documents for which it had not properly asserted an applicable privilege; [] compelling the plaintiff to produce Messrs. [Lawrence] Bell and [Scott] Strodthoff in the State of Delaware for additional questioning related to those subjects on which they previously refused to testify based on the plaintiff's improper assertions of the common interest doctrine. . . .

The Trustee and the Noteholders countered that these disclosures were protected by the attorney-client privilege and the work-product privilege. On June 2, 2005, the court heard oral arguments on this issue. n4 This is the court's [*5] disposition of that motion.

n3 *U.S. Bank, 864 A.2d at 934.*

n4 The court also heard oral arguments on a motion to dismiss certain counterclaims brought by the defendants and a motion to compel discovery from the Noteholders. The court disposed of both of these issues at the hearing.

II.

A. Attorney-Client Privilege And Common Interest

2005 Del. Ch. LEXIS 95, *

[HN1] The attorney-client privilege protects the communications between a client and an attorney acting in his professional capacity where the communications are intended to be confidential and the confidentiality is not waived. n5 [HN2] The privilege serves "to foster the confidence of the client and enables him to communicate without fear in order to seek legal advice." n6 In Delaware, the scope of the attorney-client privilege is set out in Rule 502 of the Delaware Rules of Evidence. n7 [HN3] The rule also extends to the protection of confidential communications involving counsel for separate clients so long as the clients share a "common interest" [*6] sufficient to justify invocation of the privilege. n8

n5 *Moyer v. Moyer, 602 A.2d 68, 72 (Del. 1992).*

n6 *Riggs Nat'l Bank v. Zimmer, 355 A.2d 709, 713 (Del. Ch. 1976).*

n7 DEL. R. EVID. 502(b) states that a communication is privileged if made in confidence:

> [HN4] for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

n8 *See Metro. Bank & Trust Co. v. Dovenmuehle Mortgage, Inc., 2001 Del. Ch. LEXIS 153, at *22 (Del. Ch. Dec. 20, 2001)* (quotations omitted); *see also Reese v. Klair, 1985 Del. Ch. LEXIS 403, at *15-*16 (Del. Ch. Feb. 20, 1985)* ("The letters between attorneys, copies of which were sent to the appraiser, also remain confidential as communication between the attorneys of clients with common interests and the attorneys' representative.").

[*7]

In this case, all the communications that the defendants seek to discover were between or among the Trustee and its counsel, and certain noteholders. In order to participate in these communications, the noteholders were required to agree that they would maintain the confidentiality of those communications, and were required to state that they did not have any connections to the defendants. Therefore, the court must decide whether there was a sufficient community of interest between the noteholders and the Trustee such that confidential communications between them and the Trustee's counsel in the course of, or for the purpose of, facilitating the rendition of professional legal services are protected by the attorney-client privilege.

It is clear that the Trustee and the Noteholders share a common interest. Due to the "no-action" clause contained in the Indenture, the individual noteholders cannot sue to enforce the notes. Instead, they must first give written notice to the Trustee of a continuing Event of Default and afford the Trustee a reasonable opportunity to exercise its powers under the Indenture, or to sue for the enforcement of the Indenture. n9 In addition, the no-action [*8] clause bars noteholders from bringing non-contractual claims on the notes. Instead, they must "be prosecuted by the trustees *representing* the bondholders as a group." n10 Furthermore, the Indenture requires that the Trustee, in the event of a default, prosecute such claims, if such action would be reasonable. n11 Therefore, the noteholders are required by the Indenture to rely upon the Trustee to bring suit, and the Trustee is contractually obligated to do so. It is difficult to see how the Noteholders' and the Trustees interest in prosecuting claims of this nature could be more closely aligned.

n9 For a thorough discussion of the no-action clause contained in the indenture, please see *U.S. Bank., 864 A.2d at 939-43.*

n10 *U.S. Bank., 864 A.2d at 941* (quoting *Feldbaum v. McCrory Corp., 1992 Del. Ch. LEXIS 113, at *27-*28 (Del. Ch. June 1, 1992)* (emphasis added).

n11 *See* Indenture § § 6.3 & 7.1.

That being said, there are situations [*9] where their interests diverge, for example, where the Trustee seeks indemnification from the noteholders for bringing suit. In this situation, the parties' interests are actually antagonis-

tic. Any documents containing communications relating to indemnification of the Trustee are, therefore, discoverable. However, after the Trustee made the decision to bring this suit, sometime in 2003, the Trustee's and the Noteholders' interests were clearly aligned. Therefore, otherwise privileged communications between the Trustee, its counsel, and the Noteholders after this time are not discoverable.

B. Application Of Attorney-Client Privilege And Common Interest Doctrines To The Depositions

The defendants have also asserted that, during the deposition of certain witnesses, counsel for the plaintiff instructed the deponents not to respond to certain questions based on the attorney-client privilege. This included, the defendants allege, questions regarding conversations between the Trustee and the Noteholders with respect to issues where their interests were not in common, for instance questions relating to the Trustee withholding interest payments on the debentures to fund its lawsuit. [*10] [HN5] It is improper for an attorney to instruct a deposition witness not to answer a question based on the attorney-client privilege, when the question relates to information that is partially privileged, but partially not. The proper procedure is to instruct the witness not to disclose privileged information while answering the question. After reviewing the transcript of the deposition about which the defendants complain, the court is convinced that counsel for the plaintiff did not overly invoke the attorney-client privilege and that the defendants received answers to their questions, to the extent the common interest doctrine was not implicated.

When counsel for the defendants questioned the deponent as to issues where the Trustees and Noteholders had divergent interests, counsel for the plaintiff did not instruct the deponent to refuse to answer entirely, as the defendants contend. Instead, counsel for the plaintiff simply instructed the deponent to not reveal privileged communications while answering. The following exchange is typical of what occurred.

> Q (By Mr. Flinn) Did any note holder at any time ever voice to the Trustee any concern about the possibility of or [sic] Trustees [*11] having withheld interest?
>
> MR. MIRANOWSKI: I'm going to instruct you not to answer to the extent it discloses communications in the presence of Counsel.
>
> A I talked to note holders who had questions about the withholding of the interest payments.

> Q (By Mr. Flinn) What note holders were those?
>
> A Some of them were the note holders we've already referred to such as Oppenheimer and Golden Tree [sic] and
>
> QVT. As a result of the withholding the interest, there were a number of individual holders who identified themselves to us at that time.
>
> Q Who were the individual holders?
>
> A I'm sorry, I can't remember their names. n12

n12 Bell Dep. of Mar. 31, 1995 at 209-10.

The court finds that counsel for the plaintiff did not act improperly in instructing the deponent. The court further finds that the defendants were able to receive responsive answers to their questions, when the attorney-client privilege was not implicated. Therefore, they are not entitled to depose Messrs. Bell and Strodthoff again.

[*12] III.

Defendants also complain that the Trustee's privilege log does not adequately disclose the factual basis for the assertion of the attorney-client privilege or the work-product privilege. The defendants argue that, as a matter of law, many of these documents cannot be protected by the attorney-client privilege or the work-product privilege, because the authors of the documents are not attorneys and the log does not reveal that these documents were sent to, or copied to, attorneys. The Trustee did not respond in writing to these contentions, undoubtedly because the defendants made these arguments in their reply brief.

[HN6] The work-product privilege can apply to documents prepared by non-attorneys, if those documents were prepared in anticipation of litigation. n13 Furthermore, [HN7] communications originating from non-attorneys can be protected by the attorney-client privilege, if those communications relay legal advice from counsel to a party with a common interest. n14

2005 Del. Ch. LEXIS 95, *

n13 *See, e.g., Mullins v. Vakili, 506 A.2d 192, 196 (Del. Super. Ct. 1986)* [HN8] "The qualified work product immunity . . . extends not only to non-attorneys, but also to material prepared before litigation commences."

[*13]

n14 *See* DEL. R. EVID. 502(b); *see also Am. Legacy Found. v. Lorillard Tobacco Co., 2004 Del. Ch. LEXIS 157, at *10 n.14 (Del. Ch. Nov. 3, 2004)* (stating that [HN9] the attorney-client privilege protects communications "by the client or the client's representative or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest.").

However, after reviewing the Trustee's privilege log, the court finds that, while the basis for asserting the work-product privilege to many of these documents is obvious from the log, the basis for asserting the attorney-client privilege is not. The court concludes that the proper procedure is to allow the Trustee to amend its log to state more clearly the basis for its claim of the attorney-client privilege with respect to the challenged documents. After such an amendment, the court will be in a better position to judge whether the Trustee's assertion that these documents are privileged is tenable.

**CONCLUSION**

For the above reasons, defendants' motion [*14] to compel is GRANTED in part and DENIED in part. IT IS SO ORDERED.

109JSB

********** Print Completed **********

Time of Request: Saturday, January 20, 2007  14:29:29 EST

Print Number:    1821:7617566
Number of Lines: 257
Number of Pages:

Send To:  HIRZEL, SAM
          MORRIS NICHOLS ARSHT & TUNNELL
          1201 N. Market Street
          WILMINGTON, DE 19801-1147

TAB 8

LEXSEE 1997 US DIST LEXIS 24215


Caution
As of: Jan 20, 2007

**UNION PACIFIC RESOURCES GROUP, INC., and RESOURCES NEWCO, INC.,
Plaintiffs, v. PENNZOIL COMPANY, Defendant.**

**Misc. No. 97-64 JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*1997 U.S. Dist. LEXIS 24215*

**August 12, 1997, Decided**

**SUBSEQUENT HISTORY:** Motion granted by *Union Pac. Res. Group, Inc. v. Pennzoil Co., 1997 U.S. Dist. LEXIS 24216 (D. Del., Sept. 2, 1997)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant corporation moved to compel the production of documents from a third party in an action regarding the attempted hostile takeover of the corporation. The proceeding was governed by the provisions of *Fed. R. Civ. P. 45(d)(2)*.

**OVERVIEW:** The corporation was sued by plaintiff companies as a result of efforts to complete a hostile takeover of the corporation. The corporation served a subpoena on the third party, which produced some documents and a privilege log. Upon review, the court granted the motion to compel because pursuant to the requirements of *Fed. R. Civ. P. 45(d)*, the privilege log did not provide sufficient information to enable the corporation to contest the claim. Specifically, regarding the "Author" heading of the privilege log, the third party was required to provide a description of the author's position in the company, and where appropriate, a recitation of any specialized training or licensing that could be relevant. The "Recipient" category was also deficient because it did not describe the recipient's position in the company. Regarding the "General Subject Matter" category, such phrases as "Resources Spinoff" and "Potential Transaction" were facially inadequate. The description or narrative of subject matter must establish that the document was relevant and material to the factors the court

considered when determining whether a claim of privilege should be upheld.

**OUTCOME:** The court granted the motion to compel, and the third party was required to file a revised privilege log.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Privileged Matters > General Overview*
[HN1] See *Fed. R. Civ. P. 45(d)(2)*.

**COUNSEL:** [*1] Charles F. Richards, Jr., Esquire, Thomas A. Beck, Esquire, Daniel A. Dreisbach, Esquire, Robert J. Stearn, Jr., Esquire, Todd C. Schlitz, Esquire, and J. Travis Laster, Esquire of RICHARDS, LAYTON & FINGER, Wilmington, Delaware. Of Counsel: Charles Alan Wright, Esquire, Austin, Texas. Attorneys for Defendant.

Stuart M. Grant, Esquire of GRANT & EISENHOFER, P.A., Wilmington, Delaware. Attorney for Non-Party Union Pacific Corporation.

**JUDGES:** Joseph J. Farnan Jr., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Joseph J. Farnan Jr.

**OPINION:**

**MEMORANDUM OPINION**

**Farnan, Chief Judge.**

Presently before the Court is a Motion to Compel Production Of Documents (D.I. 2) filed by Pennzoil Company ("Pennzoil"), the defendant in litigation pending in the United States District Court for the Northern District of Texas, Fort Worth Division, against Union Pacific Corporation ("Union Pacific"), a non-party to the Texas lawsuit. In the Texas case, Pennzoil is being sued by Union Pacific Resources Group, Inc. and Resources Newco, Inc., as a result of their effort to complete a hostile takeover of Pennzoil. There is some history as to how the instant miscellaneous action came to be filed in Delaware, [*2] which is recounted in the papers that have been filed; however, the Court does not believe the procedural history is relevant to the present dispute, and therefore, the Court will proceed to the issues raised by the instant motion.

**BACKGROUND**

In late June, Pennzoil served a subpoena on Union Pacific seeking the production of documents. In response, Union Pacific eventually produced some documents and a ninety-four page privilege log containing seven hundred fifty-four entries. It is this privilege log that is at the center of the instant dispute.

Pennzoil argues that the Union Pacific privilege log does not meet the standards imposed by *Federal Rule of Civil Procedure 45(d)(2)*. Pennzoil further contends that Union Pacific's failure to adequately comply with *Rule 45* constitutes a waiver of any available privilege, and therefore, Union Pacific should be ordered to produce all of the 754 documents listed on its privilege log. Alternatively, Pennzoil argues that Union Pacific should be ordered to produce, on an expedited basis, an adequate privilege log.

In response, Union Pacific contends that its privilege log contains all the information [*3] *Rule 45(d)(2)* requires and that Pennzoil is not entitled to any additional information. Accordingly, Union Pacific argues that the Court should deny Pennzoil's motion and order Pennzoil to pay Union Pacific's costs in defending the present motion and the full costs of requiring Union Pacific to respond to the original subpoena in an expedited time frame.

**DISCUSSION**

In relevant part, *Federal Rule of Civil Procedure 45(d)(2)* provides:

> [HN1] When information subject to a subpoena is witheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced *that is sufficient to enable the demanding party to contest the claim.*

*Fed. R. Civ. P. 45(d)(2)* (emphasis added).

In reviewing the Union Pacific privilege log under the standard set forth in *Rule 45(d)*, the Court finds that the privilege log does not provide sufficient information to allow Pennzoil to determine whether it can or should resist the claims of Union Pacific. [*4] Specifically, the Court finds the Union Pacific privilege log deficient in the categories headed "Author," "Recipient," "General Subject Matter," and "Type of Privilege."

Regarding the "Author" heading, the Court finds this category to be deficient, because it only indicates the name of the author. In addition to naming the author, Union Pacific must provide a description of the author's position in the company, and where appropriate, a recitation of any specialized training or licensing that may be relevant to the assertion of privilege. For example, Union Pacific should indicate whether the author is an attorney or an agent for an attorney, so that Pennzoil can properly determine whether to attack the claim of privilege associated with the document.

Like the "Author" category, the Court finds the "Recipient" category to be deficient, because it merely lists the name of the recipient. In addition to naming the recipient, Union Pacific must describe the recipient's position in the company, and where appropriate, must provide a statement of the duties of the recipient that may be relevant to the question of why the transmission and receipt of the subject document to this person is [*5] privileged.

Regarding the category entitled "General Subject Matter," Union Pacific utilizes such phrases as "Resources Spinoff" and "Potential Transaction." The Court finds that such phrases are facially inadequate. The description or narrative of subject matter must, at a minimum, establish that the document is relevant and material to the factors a court must consider when determining whether a claim of privilege should be upheld. For example, the person or entity claiming an attorney-client privilege might state that the document "is a legal opinion of in-house counsel concerning the Jones and Smith transaction."

Regarding the category entitled "Type of Privilege," Union Pacific indicates "AC" and/or "WP" for each document on the log. Assuming the person or entity claiming the privilege has adequately responded to the

1997 U.S. Dist. LEXIS 24215, *

other categories required, a listing of whether attorney-client or work product privilege is asserted should be sufficient for compliance with *Rule 45(d)*. However, in the context of the inadequacies indicated above, the Court finds this category to also be deficient. Moreover, under other circumstances not present in this case, the Court notes that the ministerial [*6] listing of AC/WP for each document may raise questions as to the seriousness of the asserted claims.

In sum, the Court finds that the Union Pacific privilege log at issue in this Motion does not comply with *Federal Rule of Civil Procedure 45(d)(2)*, and therefore, the Court will order Union Pacific to submit a revised privilege log.

## CONCLUSION

For the reasons discussed, the Court will grant Pennzoil's Motion To Compel Production Of Documents From Union Pacific Corporation (D.I. 2).

An appropriate Order will be entered.

## ORDER

WHEREAS, the Court having considered the arguments of the parties on the Motion To Compel Production Of Documents (D.I. 2) filed by Pennzoil Company and determined, for the reasons stated in the Memorandum Opinion filed simultaneously with this Order, that the privilege log offered by Union Pacific Corporation does not comply with the requirements of *Federal Rule of Civil Procedure 45(d)(2)*;

NOW THEREFORE, IT IS HEREBY ORDERED this 12 day of August 1997, that:

1. Pennzoil Company's Motion To Compel Production Of Documents From Union Pacific Corporation (D.I. 2) [*7] is GRANTED.

2. Union Pacific Corporation shall file a revised privilege log no later than August 15, 1997.

Joseph J. Farnan Jr.

UNITED STATES DISTRICT JUDGE

109JSB

********** Print Completed **********

Time of Request: Saturday, January 20, 2007  14:28:28 EST

Print Number:    2822:7617493
Number of Lines: 127
Number of Pages:

Send To:  HIRZEL, SAM
          MORRIS NICHOLS ARSHT & TUNNELL
          1201 N. Market Street
          WILMINGTON, DE 19801-1147