IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE ALH HOLDINGS LLC | ) ) ) | Consol. C.A. No. 04-1339-SLR |

## DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THE CLASS B PARTIES TO PRODUCE DOCUMENTS CLAIMED AS PRIVILEGED OR FOR IN CAMERA INSPECTION <u>AND TO CONTINUE CERTAIN DEPOSITIONS</u>

Dated:  March 1, 2007

Sean J. Bellew (#4072)
David A. Felice (#4090)
Cozen O'Connor
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE  19801
(302) 295-2000
(302) 295-2013 (Fax)

Thomas M. Wood, IV
Neuberger, Quinn, Gielen, Rubin
 & Gibber, P.A.
One South Street, 27th Floor
Baltimore, MD  21202-3201
(410) 332-8523 (Direct)
(410) 332-8564 (Fax)

*Attorneys for Defendants Abraham Arenson, A. Arenson Holdings, Ltd., D.A. Gardens, Ltd., J12ALH Associates, SELK, LLC and Laurel Equity Group, LLC*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

RELEVANT FACTS .......................................................................................... 3

    A.    General Background ............................................................... 3

    B.    Disputed Documents ............................................................. 4

    C.    The Parties' Attempts to Resolve This Discovery Dispute
           Without Judicial Intervention ............................................... 6

    D.    The Failure to Reference Specific Documents in The Motion. ............. 7

ARGUMENT ................................................................................................ 8

    I.    The Disputed Documents Are Protected By The
        Attorney-Client Privilege ....................................................... 8

          A.    The Disputed Documents Color Coded Blue Have
               Adequate Descriptions ................................................ 10

          B.    The Disputed Documents Color Coded Yellow Contain
               Legal Advice Not Business Advice ................................. 13

          C.    The Disputed Documents Color Coded Pink Contain
               Privileged Communications with Mr. Lamm ...................... 18

    II.    The Defendants' Assertions of Work Product
        Protection Are Proper ........................................................... 23

    III.    Defendants' Have Not Waived Any Claims of Privilege ..................... 26

    IV.    The Plaintiffs' Motion to Continue Certain Depositions
         Should Be Denied ............................................................... 29

CONCLUSION ............................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Tech. Assocs., Inc. v. Herley Industries, Inc.,*
    1996 WL 711018 (E.D. Pa. Dec. 5, 1996)......................................................22

*American Nat. Bank and Trust Co. of Chicago v.*
    *Equitable Life Assur. Soc. of U.S.,* 406 F.3d 867 (7th Cir. 2005)..................28

*Applied Biosystems, Inc. v. Cruachem, Inc.,*
    No. 89-579-JJF, slip op. (D. Del. Oct. 16, 1991).........................................26, 27

*Applied Biosystems, Inc. v. Cruachem, Inc.,*
    1990 WL 495458 (D. Del. Aug. 3, 1990) ......................................................27

*Ashcraft v. A.C. & S, Inc.,*
    1989 WL 135846 (Del. Super. Ct. 1989).........................................................23

*Carlton Investments v. TLC,*
    1996 WL 535407 (Del. Ch. Sept. 17, 1996) ...................................................24

*Chao v. Koresko,*
    2005 WL 2521886 (3d Cir. Oct. 12, 2005)....................................................7, 27

*Clausen v. National Grange Mut. Ins. Co.,*
    730 A.2d 133 (Del. Super. Ct. 1997) .............................................................9

*Coleman v. American Broadcasting Cos., Inc.,*
    106 F.R.D. 201 (D. D.C.1985).......................................................................16

*EEOC v. Safeway Store, Inc.,*
    2002 WL 31947153 (N.D. Cal. Sept. 16, 2002) ...........................................28

*First Sav. Bank, F.S.B. v. First Bank Sys., Inc.,*
    902 F. Supp. 1356 (D. Kan. 1995)................................................................28

*In re Fuqua Indus. Inc. Shareholders Litig.,*
    1999 WL 959182 (Del. Ch. Sept. 17, 1999) ................................................11, 26

*In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983,*
    731 F.2d 1032 (2d Cir.1984)..................................................................12, 16, 17

*Grimes v. LCC International, Inc.,*
    1999 WL 252381 (Del. Ch. April 23, 1999)................................................20

*Hercules, Inc. v. Exxon Corp.,*
    434 F. Supp. 136 (D. Del. 1977).......................................9, 14, 15, 24, 26

*Hickman v. Taylor,*
    329 U.S. 495 (1947) ...................................................................................23

*Interfaith Housing Del., Inc. v. Town of Georgetown,*
    841 F. Supp. 1393 (D. Del. 1994)..............................................................19, 22

*Martin v. Bally's Park Place Hotel & Casino,*
    983 F.2d 1252 (3d Cir. 1993).........................................................24

*Nielsen Elecs. Inst. v. Student Finance Corp.,*
    2001 WL 34367325 (D. Del. Jan. 18, 2001)................................................24

*Ramada Inns, Inc. v. Dow Jones & Co., Inc.,*
    523 A.2d 968 (Del. Super. Ct. 1986) ........................................9, 22, 29

*Ramada Inns, Inc. v. Drinkhall,*
    490 A.2d 593 (Del. Super. Ct. 1985) ............................................26

*Ritacca v. Abbott Labs.,*
    203 F.R.D. 332 (N.D. Ill. 2001).................................................... 28

*Sealy Mattress Co. of New Jersey v. Sealy Inc.,*
    1987 WL 12500 (Del. Ch. 1987) ...................................................15

*Synalloy Corp. v. Gray,*
    142 F.R.D. 266 (D. Del. 1992) .....................................................16

*Tulip Computers Intern., B.V. v. Dell Computer Corp.,*
    210 F.R.D. 100 (D. Del. 2002) .....................................................10

*United States v. United Shoe Machinery Corp.,*
    89 F. Supp. 357 (D. Mass. 1950).................................................14

*Upjohn Co. v. United States,*
    449 U.S. 383 (1981).......................................................................9

*U.S. v. Phillip Morris Inc.,*
    347 F.3d 951 (D.C. Cir. 2003).....................................................28

*Weeks v. Samsung Heavy Indus. Co.,*
    1996 WL 341537 (N.D. Ill. 1996) ...............................................................11, 14

*Westinghouse Electric Corp. v. Republic of Philippines,*
    951 F.2d 1414 (3d Cir.1991).........................................................................22, 24

*Wolhar v. General Motors Corp.,*
    712 A.2d 457 (Del. Super. Ct. 1997) ...........................................................28

*Zirn v. VLI Corp.,*
    1990 WL 119685 (Del. Ch. Aug. 13, 1990) ................................................9, 29

## Rules

Delaware Rule of Evidence 502 ...............................................................8, 19

Federal Rule of Civil Procedure 26(b)(5) .................................................10

Federal Rule of Civil Procedure 26(b)(5) .................................................23

## PRELIMINARY STATEMENT

Defendants and Counterclaim Plaintiffs, A. Arenson Holdings, Ltd. ("**Arenson Holdings**"), D.A. Gardens, Ltd. ("**D.A. Gardens**"), J12ALH Associates ("**J12ALH**"), Selk, LLC ("**SELK**") and Laurel Equity Group LLC ("**Laurel**") and Defendant Abraham Arenson ("**Arenson**") (collectively "**Defendants**"), by their undersigned counsel, file this Opposition to Plaintiffs' Motion to Compel the Class B Parties to Produce Documents Claimed as Privileged or for *In Camera* Inspection and to Continue Certain Depositions (the "**Motion**"),[1] filed by Plaintiffs and Counterclaim Defendants, Shamrock Holdings of California, Inc. ("**Shamrock**"), Shamrock Capital Advisors, Inc. ("**SCA**"), Eugene I. Krieger ("**Krieger**"), George J. Buchler ("**Buchler**"), and Bruce J. Stein ("**Stein**") (hereinafter collectively "**Plaintiffs**").

Plaintiffs' Motion asks this Court to order Defendants to produce numerous documents withheld on attorney-client/work-product privilege grounds, or, alternatively for an *in camera* inspection by the Court or a discovery master appointed at the Defendants' expense. In addition, Plaintiffs ask that certain depositions be reconvened although Plaintiffs offer no argument in support of this request. Plaintiffs' Motion is drastic, misstates the facts and should be denied.

If Plaintiffs are to be believed, Defendants have been purposefully evasive and have refused to produce "massive" numbers of documents, withheld non-privileged information and hindered the discovery process. Defendants have done no such thing. To the contrary, Defendants have acted in good faith to provide additional information as requested and have extended every courtesy possible to facilitate the discovery process. Moreover, to provide some

---

[1] Plaintiffs' Opening Brief in Support of Motion to Compel the Class B Parties to Produce Documents Claimed as Privileged or for *In Camera* Inspection and to Continue Certain Depositions is docket item 117 and hereinafter shall be cited as "D.I. 117."

perspective, Defendants produced approximately 17,000 of the 18,125 pages of documents in their possession.[2]

After dredging through Plaintiffs' rhetoric, their arguments are quite basic: (1) Defendants' privilege logs lack adequate descriptions; (2) communications with Defendants' attorney, Isaac Neuberger ("**Mr. Neuberger**"), are business advice not legal advice; (3) communications involving Shalom Lamm ("**Mr. Lamm**") are not privileged; (4) Defendants do not have a work product privilege before January 11, 2004; and (5) Defendants have waived claims of privilege as a result of deficiencies in the privilege logs. This discovery dispute is nothing more than a difference of legal opinion which, unfortunately, requires court intervention.

Nearly all of the disputed documents are electronic mail communications that are protected by the attorney-client privilege. The disputed documents do not contain business advice as Plaintiffs contend; they contain legal advice. An *in camera* review of the documents is not required because Defendants can easily substantiate in this opposition that the disputed documents are protected by the attorney-client and work product privileges and therefore have been properly withheld. Defendants are not asking the Court to accept a far-reaching application of the attorney-client and work product privileges as the Motion suggests. Instead, the disputed documents are classic examples of documents protected by the privileges. Thus, the Motion should be denied and the Court should not order Defendants to produce documents that have properly been withheld.

---

[2] The fact that Plaintiffs have withheld only 30 privileged documents is not surprising since any attorney-client privilege resulting from communications with ALH's counsel, Fried, Frank, Harris, Shriver & Jacobson, LLP ("Fried Frank"), is shared by Defendants as members of ALH. Plaintiffs' 30 privileged documents, however, involve Fried Frank's conflicted representation of Shamrock not ALH.

# RELEVANT FACTS

## A.    General Background.

Defendants are the Class B members of ALH Holdings, LLC ("**ALH**") and Defendant Arenson is the Class B representative on ALH's Supervisory Board (the "**Board**") and has controlling interests in Arenson Holdings and D.A. Gardens.  Plaintiffs control ALH through Shamrock's majority control of the Class A members, their majority representation on the Board through Krieger, Buchler and Stein and their control of ALH's consultant, SCA.

This dispute concerns Plaintiffs' liquidation of ALH by the piecemeal sale of ALH's subsidiaries: Atlantic Builders, Inc. ("**ABI**"), Bowden Building Corporation ("**BBC**") and Mulvaney Homes, Inc. ("**MHI**") (hereinafter collective the "**operating units**"), at fire sale prices that resulted in a total loss of equity to ALH's members.  Shamrock's purpose in dismantling ALH was solely to benefit itself by eliminating its costly, time-consuming management responsibilities, obtaining repayment of its loans to ALH, ensuring that ALH avoided bankruptcy during the preference period so that the loan repayments would not be disgorged as preferences and preserving its relationships with ALH's lenders by securing their loan repayments.

In an effort to save their equity interests in ALH, Defendants offered to purchase the Class A's interests in ALH but Plaintiffs demanded an unreasonable price and, rather than hand over control to Defendants and allow them to strengthen ALH, Plaintiffs chose to further Shamrock's own self interest at the expense of the remaining members of ALH.  As a result, Defendants have lost their entire investment in ALH.

Plaintiffs filed a declaratory judgment action against Defendants seeking the following declarations: Count I--No Breach of Fiduciary Duty, Count II--No Breach of Operating Agreement, Count III--No Liability Under Consulting Agreement, Count IV--Good Faith

Reliance on Professionals and Experts, Count V--Indemnification, Count VI--Release of SELK

Claims Under SAMR, Count VII--Class E Shortfall and SELK Equity Interest and Count VIII--

Arenson as Class B Representative. Defendants filed an answer, counterclaims and third-party

complaint alleging direct and derivative claims against Plaintiffs and third-party defendant,

ALH, for breach of fiduciary duties, breach of the operating agreement, breach of the consulting

agreement and aiding and abetting in breach of fiduciary duties. The Court denied Plaintiffs'

Motion for Judgment on the Pleadings and Dismissal of the Counterclaims as to all claims except

breach of the operating agreement and breach of the consulting agreement. Discovery is in

process and ends on April 6, 2007. Trial is scheduled for May 7, 2007.

## B.    Disputed Documents.

Defendants have done nothing but zealously protect documents believed, in good faith, to

be within the scope of the attorney-client and work product privileges.[3]    After reviewing

thousands of documents, many of which were email communications involving trails of emails

between multiple parties and, at times, multiple attorneys, Defendants produced most of the

documents. The "massive number of allegedly privileged documents" that Defendants have

purportedly incorrectly refused to produce is less then six percent of all the documents in the

possession of Defendants and Mr. Lamm.[4]    When requested, Defendants re-examined the

privileged documents, revised the privilege logs and produced documents previously withheld as

privileged.

---

[3] Defendants have acted in good faith throughout the process. For example, when reviewing the documents produced by Plaintiffs, Defendants came across a copy of a pleading containing notes from Plaintiffs' attorney as well as other documents that were clearly privileged. Defendants immediately notified Plaintiffs' attorney and agreed to return all copies of the documents. Plaintiffs, however, reference a document in the Motion that was expressly recalled by Defendants' attorney. (D.I. 117 at 8, n. 7).

[4] There were 12958 pages of Lamm documents and 5167 pages of Class B documents. Assuming the accuracy of Plaintiffs' representation--694 privileged documents and 455 redacted documents--Defendants produced almost seventeen thousand pages of documents

Defendants produced over four thousand pages of the Class B members non-privileged documents (the "**Class B production**").[5] In connection with the Class B production, Defendants prepared two privilege logs: a privilege log for the documents that are protected by the attorney-client or work product privileges (the "**Class B privilege log**"), and a privilege log for documents containing redacted information that is protected by the attorney-client or work product privileges (the "**Class B redacted log**") (hereinafter collectively the "**Class B logs**").[6]

Defendants produced over eleven thousand pages of non-privileged documents of Mr. Lamm (the "**Lamm production**"), who is not a party to the lawsuit but is the managing member of Defendant SELK.[7] In connection with the Lamm production, Defendants prepared two privilege logs: a privilege log for the documents that are protected by the attorney-client or work product privileges (the "**Lamm privilege log**"), and a privilege log for documents containing redacted information that is protected by the attorney-client or work product privileges (the "**Lamm redacted log**") (hereinafter collectively the "**Lamm logs**").[8]

Plaintiffs summarily object to the Class B and Lamm logs by attaching a color coded version of the logs, highlighting in yellow, pink and blue the documents they maintain are not privileged (hereinafter the "**disputed documents**"). The Class B and Lamm logs attached to Plaintiffs' Motion as Exhibit A are out of order, unnumbered and contain errors not contained in the original logs.[9] For the Court's convenience, Defendants attach as Exhibit A, the Class B and Lamm logs modified to include only the disputed documents and the color coding imposed by Plaintiffs. In addition, Defendants removed all entries that are duplicative and noted all documents that have been produced.

---

[5] Those documents were Bates stamped ClassB 001-ClassB5167.
[6] References to the Class B logs refer to the revised logs produced to Plaintiffs on November 22, 2006.
[7] Those documents were Bates stamped L001-L12958.
[8] References to the Lamm logs refer to the revised logs produced to Plaintiffs on December 11, 2006.
[9] It appears that Plaintiffs scanned the logs, which may have caused the errors.

The following summarizes the disputed documents:

- Class B redacted log: 43 email trails, 1 fax cover letter and 1 internal chart. [10]
- Class B privilege log: 42 email trails.
- Lamm privilege log:  127 email trails, 2 fax correspondences, 1 draft narrative and 4 memos[11]
- Lamm redacted log:  42 email trails, 2 memos, 1 fax correspondence and 1 fax with handwritten notes[12]

*See* Exhibit A.

## C.    The Parties' Attempts to Resolve this Discovery Dispute without Judicial Intervention.

On September 25, 2006, Plaintiffs' counsel objected to the descriptions in the Class B logs and asked for clarification regarding when the Class B members became clients of Mr. Neuberger and Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.  (D.I. 117, Exhibit E).  On October 3, 2006, Defendants' counsel responded with revised Class B logs, additional documents previously withheld as privileged and a letter explaining that Mr. Neuberger's representation of SELK began in December 1997 and his representation of the remaining Class B members began in February 2002.  (Exhibit B).  On October 10, 2006, Defendants produced the Lamm logs.

Thereafter, on November 10, 2006, Plaintiffs' counsel raised objections about the revised Class B and Lamm logs relating to the detail in the logs the identity of certain persons referenced in the logs and the extent of the privilege, i.e. business versus legal advice.  (D.I. 117, Exhibit G). After considering Plaintiffs' counsel's objections, Defendants' counsel again reviewed the documents, revised the Class B logs and the Lamm logs, produced additional documents previously withheld as privileged and provided a privilege log key identifying the persons

---

[10] Fax cover letter (ClassB 794) and internal chart (ClassB 4502).
[11] Two fax correspondences ( L13027, L13028), one draft narrative (L13026) and four memos (L13041, L13042-43, L13044-47 and L13671).
[12] Memos (L4042-4043, L13999-14003), fax correspondence (L12959) and fax with handwritten notes (L12969).

WILMINGTON\50249\1 157347.000

referenced on the privilege logs. In addition, Defendants' counsel gave the following detailed explanation of the basis for the privileges:

- Any communications on the logs that do not involve an attorney are communications made regarding advice from a lawyer or information to be forwarded to a lawyer. . . These communications are described as such on the updated logs.

- We continue to maintain that the privileges claimed on the logs belong to the Class B members or Mr. Lamm individually, not to ALH. The communications with Mr. Neuberger and other attorneys were for purposes of obtaining legal advice from an investor's perspective, not on behalf of ALH.

- The descriptions on the privilege logs are sufficient because the logs "describe the nature of the documents . . . in a manner that . . . will enable other parties to assess the applicability of the privilege or protection." *Chao v. Koresko*, 2005 WL 2521886, at \*4 (3d Cir. Oct. 12, 2005). In fact, the descriptions on Plaintiffs' privilege log are very similar to Defendants' except that Plaintiffs add catch phrases such as "confidential" and "legal advice." We do not feel that such language is necessary in each description. . . it is implicit in each description where Defendants are claiming the attorney client privilege on the logs that communications from a client to his lawyer were for purposes of obtaining legal advice and each communication from a lawyer to a client was the rendition of legal advice. It is not necessary to repeat these words on each description.

(Exhibit C). In addition, Defendants' counsel expressed a willingness to resolve any additional objections but asked that Plaintiffs' counsel please reference specific documents by Bates number if they had any further objections. Plaintiffs' counsel never raised any additional written objections until this Motion was filed and even raised new issues in the Motion without making any attempt to resolve them.

**D.      The Failure to Reference Specific Documents in The Motion.**

Plaintiffs failed to specifically reference the disputed documents by Bates number in the argument portion of the Motion making it extremely difficult for Defendants and this Court to ascertain exactly what is at issue. Plaintiffs' summary reference to a color coded copy of the Class B and Lamm logs provides little guidance. Defendants, however, will attempt to respond to

7

the Motion by reference to the categories of documents represented by the following colors imposed by Plaintiffs on the color coded logs, attached hereto as Exhibit A:

> ▪ Entries colored blue purportedly lack an adequate description to support a claim of privilege under the circumstances.
>
> ▪ Entries colored yellow purportedly lack a sufficient basis to ascertain whether the attorney is acting in his capacity as counsel.
>
> ▪ Entries colored pink purportedly reflect communications over which it appears from the logs that ALH and Shamrock would share in any privilege or for which no privilege would attach because persons outside the scope of the privilege are involved in the communications.

(D.I. 117 at 2, n.2).

## ARGUMENT

**I.      The Disputed Documents Are Protected By the Attorney-Client Privilege**.

Plaintiffs' bald assertion that Defendants "have made extensive claims of privilege without adequate basis or support in their logs" is without merit. (D.I. 117 at 14). The Class B and Lamm logs support Defendants' assertions that the disputed documents are confidential communications concerning the facilitation or rendition of legal services between their attorneys and themselves and therefore, are protected by the attorney-client privilege.

The scope of the attorney-client privilege in Delaware is defined by Rule 502 of the Delaware Uniform Rules of Evidence which states in pertinent part:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between the client or the client's representative and the client's lawyer or the lawyer's representative, (2) between the lawyer and the lawyer's representative, (3) by the client or the client's representative or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest, (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

"This Rule of Evidence goes beyond any narrow view of the common law rule, by affirming the view espoused by Wigmore and covering all communications between attorney and client that are intended to be confidential and are made for the purposes of facilitating the rendering of legal services." *Clausen v. Nat'l Grange Mut. Ins. Co.*, 730 A.2d 133, 138 (Del. Super. 1997) (citing *Ramada Inns, Inc. v. Dow Jones & Co., Inc.*, 523 A.2d 968, 971-72 (Del. Super. 1986)).

The fundamental purpose of the attorney-client privilege "is to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), *quoted in Zirn v. VLI Corp.*, C.A. No. 9488, 1990 WL 119685, *3 (Del.Ch. Aug. 13, 1990). The attorney-client privilege "'rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out.'" *Upjohn*, 449 U.S. at 389 (internal citation omitted).

"The Delaware courts recognize the importance of the lawyer-client privilege and 'the need to carefully limit any invasion of it.'" *Zirn,* 1990 WL 119685 at *3 (internal citation omitted). The attorney-client protection applies to communications between a corporate party and its in-house attorney as well as to communications with its outside attorney. *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 147 (D. Del. 1977); s*ee also Upjohn*, 449 U.S. at 389-90. Moreover, "[i]t is well established that the attorney-client privilege extends not only to documents authored by an attorney but also to information and queries submitted to him by his client." *Zirn*, 621 A.2d 773 at 781; *see also Upjohn*, 449 U.S. at 390 (explaining that the attorney-client privilege "exists to protect not only the giving of professional advice to those who

can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice").

A.    **The Disputed Documents Color Coded Blue Have Adequate Descriptions.**

Plaintiffs contend that the disputed documents color coded blue lack an adequate description to support a claim of privilege. (D.I. 117, at 2, n.2). Defendants have, in good faith, gone through voluminous documents and provided privilege logs that set forth sufficient information to allow Plaintiffs to assess the applicability of the attorney-client privilege.

When a party withholds information based upon the attorney-client privilege, "the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5)(A). Rule 26(b)(5) "does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection. Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories." Fed. R. Civ. P. 26 advisory committee's note (1993); *see also Tulip Computers Int'l, B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 106, n.8 (D. Del. 2002) (noting "Rule 26(b)(5) apparently recognizes that details concerning time, persons, general subject matter and the like may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed as privileged").

Moreover, under Delaware law, "[i]f the privilege log lists either the sender or the recipient as [the plaintiff's] counsel and the other side as [the plaintiff's] director or other

10

privileged party or parties and no other recipients or senders are listed, then the document is subject to the attorney client privilege." *In re Fuqua Indus. Inc. S'holders Litig.*, C.A. No. 11974, 1999 WL 959182, *2 (Del. Ch. Sept. 17, 1999); *see also Weeks v. Samsung Heavy Indus. Co.*, No. 93-C-4899, 1996 WL 341537, *3 (N.D. Ill. 1996) (holding log provided sufficient information where log stated document was sent between employee of defendants during the relevant times and the document was a summary of legal advice received from counsel for defendants). In addition, "[w]here the privilege log does not indicate the document contains legal advice, but it was written between [the corporation's] counsel and a privileged party. . . I find as a matter of law that the document is subject to the [attorney-client] privilege." *In re Fuqua Indus. Inc. S'holders Litig.*, C.A. No. 11974, 1999 WL 959182, *2 (Del. Ch. Sept. 17, 1999). In reaching its decision, the Delaware Court of Chancery reasoned "[i]f it were otherwise, then either privilege logs would have to go into far greater detail (and therefore risk waiving the attorney-client privilege) or parties would have to disclose the documents to show they were on a legal topic in order to obtain the privilege-which they would then have waived by showing the document." *Id.*

Similarly, in the present case, the Class B logs list either the sender or the recipient as Mr. Neuberger and on the other side as Defendants, including Mr. Lamm as the managing member of SELK,[13] and the Lamm logs list either the sender or the recipient as Mr. Lamm and on the other side Mr. Neuberger and/or Jay Lobell ("**Mr. Lobell**"), Mr. Lamm's personal attorney. Thus, as provided in *In re Fuqua*, the information in the privilege logs demonstrates that the disputed documents are subject to the attorney-client privilege. *See In re Fuqua Indus. Inc. S'holders Litig.*, 1999 WL 959182, at *2.

---

[13] All but the following two documents on the Class B logs are email communications between Defendants and their counsel, Mr. Neuberger: (1) ClassB1736-1739 is a document prepared by Mr. Zich for Mr. Lamm in anticipation of litigation; and (2) Class B4502 is an internal document prepared by Arenson that contains irrelevant information.

11

In addition, the Class B and Lamm logs provide the date, author, recipients, subject matter and type of privilege for all documents. As to the author and recipient, Defendants name the person and provided a privilege log key identifying the persons referenced on the privilege logs. Exhibit D. As to the subject matter, Defendants, mindful of the risk of waiving the privilege by disclosing too much information, provided as much detail as possible and explained to Plaintiffs that "it is implicit in each description where Defendants are claiming the attorney client privilege on the logs that communications from a client to his lawyer were for purposes of obtaining legal advice and each communication from a lawyer to a client was the rendition of legal advice. It is not necessary to repeat these words on each description." (Exhibit C). Thus, the Class B and Lamm logs provide sufficient specificity to enable Plaintiffs to determine whether to challenge the claims of privilege.

Plaintiffs list several descriptions and contend that "[t]hese descriptions regarding valuation, conversations with third parties and the like are facially inadequate to support any claim of privilege." (D.I. 117 at 19). For example, Plaintiffs incorrectly contend that "Email re: Potential "B" Buyout" is a facially insufficient description. *Id.* First, Defendants informed Plaintiffs that it is implicit in each description that the communication is for the purpose of obtaining legal advice. Second, the communication with Mr. Neuberger regarding Class B members' potential buyout of the Class A's membership interest is a sufficient description to establish that the communication was for the purpose of obtaining legal advice. *See In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037-38 (2d Cir. 1984) (holding documents concerning the legality of the sale of a subsidiary and an attorney's opinion regarding the lawfulness of the transaction are "certainly" legal advice). Therefore, contrary to Plaintiffs'

contention, the description provides sufficient information to determine whether the attorney-client privilege applies.

In addition, Plaintiffs' reliance on *Union Pac. Res. Group, Inc. v. Pennzoil, Inc.*, 1997 U.S. Dist. Lexis 24215, *4 (D. Del. Aug. 12, 1997) is misguided because the present case is distinguishable. The *Union Pacific* court held that the "privilege log [was] deficient in the categories headed 'Author,' 'Recipient,' 'General Subject Matter,' and 'Type of Privilege.'" *Id.* at *4. Unlike in *Union Pacific* where the plaintiff failed to provide a description of the author's position, here Defendants provided a privilege log key (Exhibit D) which describes each person's role, including the identification of all attorneys. In addition, in *Union Pacific*, the plaintiff failed to state that the communication related to legal advice or that other grounds existed to assert a privilege. *Id.* Here, in contrast, Defendants explained to Plaintiffs in writing that each claim of attorney-client privilege is a communication made for "purposes of obtaining legal advise" or the "rendition of legal advice." Exhibit C. Moreover, Defendants' descriptions are as detailed as those produced by Plaintiffs in their privilege log.[14] *See* Exhibit E. Accordingly, the disputed documents colored blue have adequate descriptions and *in camera* review is not warranted.

## B.  The Disputed Documents Color Coded Yellow Contain Legal Advice Not Business Advice.

Plaintiffs next argue that Defendants cannot establish that the disputed documents color coded yellow on the Class B and Lamm logs identify an attorney that was acting in his capacity as legal counsel because he was providing business advice not legal advice.[15] Defendants are not

---

[14] The only difference is that Plaintiffs include catch phrases such as "confidential" and "legal advice" on their log and Defendants, in the interest of controlling the length of the log made these assertions in a supplemental letter.
[15] Plaintiffs' argument initially addresses the "Class B Parties' privilege logs" but then asks that "all the documents highlighted in yellow on Exhibit A" be produced. (D.I. 117, at 16-17). Plaintiffs do not challenge the advice provided by Mr. Lobell, so Defendants' response therefore is limited to communications with Mr. Neuberger.

required to produce the disputed yellow documents because the primary purpose of Defendants' communications with Mr. Neuberger was to obtain legal advice, and to the extent that the communications contain business considerations, those considerations were inextricably intertwined with the legal issues presented to Mr. Neuberger.

It is essential that the communications between client and attorney concern legal assistance and advice in order to be privileged. *Hercules v. Exxon Corp.*, 434 F. Supp. 136, 144 (D. Del. 1977). It is not essential, however, that the request for advice be express; client "communications intended to keep the attorney apprised of continuing business developments, with an implied request for legal advice based thereon, or self-initiated attorney communications intended to keep the client posted on legal developments and implications" are also protected. *Id.*

The modern lawyer invariably advises his client upon not only what is permissible, but also what is desirable. *United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 359 (D. Mass. 1950). "It is in the... public interest that the lawyer should regard himself as more than predictor of legal consequences. His duty to society as well as to his client involves many relevant social, economic, political and philosophical considerations." *Id.* Thus, "the privilege of nondisclosure is not lost merely because relevant nonlegal considerations are expressly stated in a communication which also includes legal advice." *Id.* Accordingly, documents containing business or economic data fall within the scope of the privilege if such data is included merely for the purpose of giving or receiving legal advice. *See Hercules*, 434 F. Supp. at 147-48 ("The fact that a communication contains technical information . . . does not automatically preclude application of the privilege."); *Weeks v. Samsung Heavy Indus. Co.*, 1996 WL 341537, *3 (N.D. Ill. 1996) (holding that "documents setting forth business and economic data fall within the

scope of the privilege if such data is included merely for the purpose of giving or receiving legal advice.").

In *Hercules*, the United States District Court for the District of Delaware used the "primary purpose" test in determining whether communications containing both business and legal advice are privileged. *Hercules,* 434 F. Supp. at 147. The court stated:

> If the primary purpose of a communication is to solicit or render advice on non-legal matters, the communication is not within the scope of the attorney-client privilege. Only if the attorney is "acting as a lawyer" giving advice with respect to the legal implications of a proposed course of conduct may the privilege be properly invoked. **In addition, if a communication is made primarily for the purpose of soliciting legal advice, an incidental request for business advice does not vitiate the attorney-client privilege**.... If the primary purpose of the document is to solicit legal advice based on that information, the privilege applies.

*Id.* at 147-48 (emphasis added).  In reaching its decision, the court explained: "[t]he determinations have been particularly difficult in instances of communications primarily factual in nature. Generally, when factual information was communicated so that the attorney could disclose it in a patent or trademark application, the communication was viewed as non-privileged. On the other hand, documents containing considerable technical factual information but which were nonetheless primarily concerned with giving legal guidance to the client were classified as privileged. **In other words, doubts have been resolved in favor of the privilege**." *Id.* at 148 (emphasis added).

Even communications seeking primarily both legal and nonlegal advice are privileged where the legal and nonlegal advice are inextricably interwoven. In *Sealy Mattress Co. of New Jersey v. Sealy Inc.*, 1987 WL 12500, *3 (Del. Ch. 1987), the court held that a letter containing a mixture of business and legal advice that was not readily divisible into separate categories was privileged in its entirety. The court explained that "any effort to parse the advice which is 'legal' from that which is 'business' would be

hazardous at best. Accordingly, the letter must be treated as one to which the privilege would attach...." *Id.*

Plaintiffs' reliance on *Synalloy Corp. v. Gray*, 142 F.R.D. 266 (D. Del. 1992), *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1037 (2d Cir.1984) and *Coleman v. American Broad. Cos., Inc.*, 106 F.R.D. 201 (D. D.C. 1985), is misplaced. *Synalloy* provides no support for Plaintiffs. In that case, the court held that the counterclaim plaintiff waived the attorney-client privilege as to certain documents by voluntarily injecting new issues into the case, the resolution of which required an examination of the confidential communications between attorney and client. *Synalloy Corp.*, 142 F.R.D. at 270. The court did not address the issue of whether business advice and underlying facts are privileged.

*Coleman* and *In re Grand Jury Subpoena Subpoena Duces Tecum* also do not provide support for Plaintiffs. To the contrary, both cases support Defendants' claim that the disputed documents contain communications relating to primarily legal, not business, advice. In *Coleman*, the court held that "[t]he mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client privilege." *Coleman*, 106 F.R.D. at 206. In reaching its decision, the *Coleman* court reasoned that "legal and business considerations may frequently be inextricably intertwined. This is inevitable when legal advice is rendered in the context of commercial transactions or in the operation of a business in a corporate setting." *Id.* The court concluded that the communications between corporate management and in-house counsel were related to the giving of legal advice and were not disclosable as communications involving business discussions and the exercise of business judgment. *Id.*

In *In re Grand Jury Subpoena Duces Tecum*, the Second Circuit held that although the attorney-client privilege is limited to "the client's request for legal, as contrasted with business,

advice," the district court improperly applied the limitation to documents involving, *inter alia*, a proposed reorganization of a business and the sale of a business. *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1037-38 (2d Cir. 1984). The court explained that documents discussing a proposed restructuring of a corporation for various business purposes were privileged because the attorneys were not consulted for advice on whether the reorganization would in fact secure those business objectives; rather they were consulted as to the mechanics and consequences of alternative business strategies." *Id.* at 1038. Moreover, the court held that documents concerning the legality of the sale of a subsidiary and an attorney's opinion regarding the lawfulness of the transaction are "certainly" legal advice. *Id.*

In the present case, as in *Coleman* and *In re Grand Jury Subpoena Subpoena Duces Tecum,* the communications with Mr. Neuberger were for the purpose of obtaining legal advice and any business discussions and considerations were in connection with the rendering of legal advice. Plaintiffs' argument consists of a list of email descriptions and the claim that they describe business advice, communications of underlying facts or demonstrate that Mr. Neuberger was acting as a conduit. (D.I. 117 at 16). These unfounded characterizations are little more than an attempt to mischaracterize Mr. Neuberger's representation in an effort to sidestep the well established law that "[t]he mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client privilege." *Coleman*, 106 F.R.D. at 206. Defendants retained Mr. Neuberger to provide legal advice regarding the sale of ALH and their investment in ALH. As a result of Plaintiffs' actions, Defendants became concerned that their investment in ALH was in jeopardy and they retained Mr. Neuberger to assist them in protecting their interests. The representation was broad and involved legal advice regarding, among other things, various strategies to protect their interests including a potential buyout of the Class A

17

interest, challenges to self-interested decisions by Shamrock and the impact of Board decisions on Class B interests.  All of the disputed communications were for the primary purpose of securing legal advice from Mr. Neuberger, which necessarily required the discussion of business considerations.

Accordingly, the disputed documents colored yellow contain communications with Mr. Neuberger for the purpose of rendering legal advice and are therefore, protected by the attorney-client privilege.

## C.    The    Disputed    Documents    Color    Coded    Pink    Contain    Privileged Communications With Mr. Lamm.

Plaintiffs next argue that the disputed documents color coded pink on the Class B and Lamm logs are not protected by the attorney-client privilege because Mr. Lamm was not a client of Mr. Neuberger during those communications.  Plaintiffs suggest that Mr. Lamm, who is not an attorney, had multiple roles in the events leading up to the litigation and whether his communications were made as a client, depend on his role at any particular moment.

Mr. Lamm had many roles: an investor in ALH (Class E member), the Class D representative on the Supervisory Board of ALH, the managing member of a Class B investor in ALH (SELK), a member in the entity that managed ALH (Lion & Lamm, LLC) and an officer of ALH.  Mr. Lamm had different attorneys representing him in those different roles.  For example, Mr. Lamm conferred with Fried Frank regarding ALH matters; Mr. Lamm conferred with Mr. Lobell on personal and corporate matters relating to Lion & Lamm; Mr. Lamm conferred with Clifford Brandeis in connection with the July 1, 2001 Management Agreement and Mr. Lamm conferred with Mr. Neuberger regarding matters relating to SELK and the Class B members.  The disputed documents contain communications by Mr. Lamm in his role as the managing member of SELK, and thus, he was a client of Mr. Neuberger.

18

Rule 502(a)(1) of the Delaware Uniform Rules of Evidence defines a client as "a person, public officer or corporation, association or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer." It is fundamental that an entity may be a client for purposes of the attorney-client privilege and that it can only act through natural persons. *See Interfaith Housing Del., Inc. v. Town of Georgetown*, 841 F. Supp. 1393, 1397 (D. Del. 1994). The tension between the entity as a client and its actions through natural persons "can make determining the precise identity of a client difficult when the client is an entity." *Id.*

Mr. Neuberger rendered and continues to render legal services to SELK. SELK is an entity, and as such it must act through a natural person, which in this case was Mr. Lamm, its managing member. The disputed documents contain communications between Mr. Lamm and Mr. Neuberger covering a broad range of subjects, all of which directly or indirectly impact the Class B members' equity interest in ALH. For example, Plaintiffs challenge topics such as "Email re: Execution of Engagement Letter Extension." (D.I. 117 at 20). Mr. Lamm acted in his role as managing member of SELK when he communicated with Mr. Neuberger regarding the impact on SELK and the other Class B members if JMP's engagement was extended, since JMP, at Shamrock's direction, was moving forward with the piecemeal sale of ALH. Simply because Mr. Lamm may have had other roles, such as an officer of ALH or a representative on the Board, does not mean he could not communicate in confidence with Mr. Neuberger and Defendants with respect to matters that affected SELK and the Class B members. Plaintiffs offer no authority supporting their contention.

Likewise, Plaintiffs reliance on *Grimes v. LCC Int'l, Inc.*, C.A. No. 16957, 1999 WL 252381 (Del. Ch. April 23, 1999), is misplaced. In *Grimes*, the court addressed whether the

19

general counsel was acting as an attorney or as chairman of the board at the time of the challenged communications. The court determined that whether communications made to or from the general counsel were privileged depended on his capacity at the time the communications were made or received. *Id.* at *2. Moreover, the court admonished the general counsel, stating that any doubt about his status should be resolved against the claim of privilege because the defendants could have prevented the problem by not placing the general counsel in multiple and potentially conflicting fiduciary roles. *Id.*

In *Grimes*, the court had to determine what "hat" in-house counsel was wearing when he acted in various capacities including in-house counsel and chairman of the board of directors. If he did not act as an attorney the court held that there was no protection because the communication was not with a lawyer for the purpose of obtaining legal advice. Here, the issue is **not** whether Mr. Lamm communicated with an attorney, because the disputed documents are clearly communications with an attorney, but the issue is whether Mr. Lamm communicated as the managing member of SELK or in one of his various other roles. *Grimes* provides no guidance here where a non-attorney has multiple roles and communicates with an attorney. Moreover, the court's decision in *Grimes* to resolve ambiguities against the in-house counsel is totally inappropriate in this case where Mr. Lamm is not an attorney and could not have avoided the potential ambiguities.

Defendants have only claimed privilege as to communications between Mr. Lamm and Mr. Neuberger on matters relating to SELK and the Class B members. Similarly, Plaintiffs maintain that communications between Krieger and Buchler and Fried Frank are privileged because they were wearing their "Shamrock hats," whereas communications with Fried Frank

20

when they were wearing their "ALH hats" are not privileged and were produced.[16]  Likewise,

Defendants produced documents where Mr. Lamm communicated in a role other than as

managing member of SELK.  For example, in an email dated December 24, 2002, and produced

by Defendants at ClassB01501, Mr. Lamm provided Defendants with an update of his meeting,

on behalf of ALH, with Wachovia.  *See* Exhibit F.

However, to the extent that communications regarding Mr. Lamm's personal matters, i.e.

financial incentive to continue working for ALH, impacted the Class B members' interest, those

communications are privileged.  Defendants maintained that Mr. Lamm's continued participation

at ALH was necessary to preserve their investment and therefore, communications with Mr.

Neuberger on issues such as Mr. Lamm's compensation when ALH was sold, Shamrock's

representation that Mr. Lamm's debt under the July 1, 2001 agreement would be resolved and

other issues impacting Mr. Lamm's continued involvement at ALH, were communications in his

capacity as managing member of SELK.  This is demonstrated by the fact that Mr. Lamm

consulted with his personal attorney on the same issues to obtain legal advice regarding how the

Class B members' decisions and actions would personally impact him.

Accordingly, Defendants have established that the disputed documents, color coded pink

on the Class B and Lamm logs, are protected by the attorney-client privilege because Mr. Lamm

made these communications in his capacity as managing member of SELK.

Plaintiffs further suggest that Mr. Lamm waived his attorney-client privilege in

communications involving both Mr. Neuberger and Mr. Lobell.  This assertion is unfounded.

The general rule provides that communications between an attorney and client are not privileged

where there is a nonessential third party present.  *Westinghouse Elec. Corp. v. Republic of*

---

[16] An email from Lino Lauro, an attorney at Fried Frank, to Krieger and Buchler regarding interest rates was recalled by Plaintiffs' counsel as inadvertently produced because at the time, Fried Frank represented Shamrock not ALH. See Exhibit H, Robbins Deposition at 131-32.

*Philippines*, 951 F.2d 1414, 1424 (3d Cir.1991).   An exception, however, exists "[w]hen a disclosure of confidential information is made to a third-party because competent and accurate legal advice could not otherwise be obtained, such disclosure does not signify that the client would have shared the information absent the attorney-client privilege, and, therefore, does not abrogate the privilege." *Advanced Tech. Assocs., Inc. v. Herley Industries, Inc.*, 1996 WL 711018, *5 (E.D. Pa. Dec. 5, 1996); *Westinghouse Electric Corp. v. Republic of Phillipines*, 951 F.2d 1414, 1424 (3d Cir. 1991); *Interfaith Housing Del. Inc. v. The Town of Georgetown*, 841 F. Supp. 1393, 1397 (D. Del. 1994).

Here, although Mr. Lamm wore multiple "hats," his roles were not mutually exclusive, i.e. many issues affected Mr. Lamm's personal interests as well as the interests of SELK.   In order for Mr. Lamm to obtain competent and accurate legal advice, it was necessary for him to communicate with both Mr. Lobell and Mr. Neuberger.   Mr. Lamm shared this information with his attorneys only and thus, the purpose of the privilege is not abrogated by the disclosure to both attorneys. Accordingly, the disputed documents fall within the exception to the general rule.

Moreover, "[a] communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of legal services to the client or those reasonably necessary for the transmission of the communication." *Ramada Inns, Inc. v. Dow Jones & Co.*, 523 A.2d 968, 972 (Del. Super. Ct. 1986).   Further, "a communication made in furtherance of the rendition of professional services to the client is a confidential communication unless the client intends the information to be disclosed to persons outside the circle of confidentiality." *Id.*  In *Ramada Inns,* the court held that materials remained confidential despite their delivery to an editor and member of management in a setting of confidentiality, "namely, that [they] would not be divulged outside the management-editorial

22

circle." *Id.; see also Ashcraft v. A.C. & S, Inc.*, 1989 WL 135846, *2-3 (Del. Super. Ct. 1989) (finding that a memorandum from defendant's litigation attorney to defendant's assistant general counsel was privileged).

Similarly, in the present case, communications between Mr. Lamm, Mr. Lobell and Mr. Neuberger maintained their confidential nature because they were made in furtherance of the rendition of legal services to Mr. Lamm in his personal capacity and in his capacity as managing member of SELK. Both attorneys, therefore, were within the "circle of confidentiality." At the time of these communications, Mr. Lobell represented Mr. Lamm with respect to his personal disputes with Plaintiffs and Mr. Neuberger represented Mr. Lamm in his capacity as the managing member of SELK. The fact that two different attorneys representing Mr. Lamm on two different matters were involved in the communication does not destroy the attorney-client privilege.

Accordingly, Defendants have established that the disputed documents, color coded pink on the Class B and Lamm logs, are protected by the attorney-client privilege because Mr. Lamm made these communications in his capacity as managing member of SELK and his communications with Mr. Lamm and Mr. Lobell were not divulged outside the "circle of confidentiality" and were necessary for him to obtain informed legal advice.

## II.    The Defendants' Assertions of Work Product Protection Are Proper.

Contrary to Plaintiffs' assertions, the disputed documents prepared before January 11, 2004, are entitled to work product protection. The "work product" of an attorney enjoys a qualified privilege from discovery. *Hickman v. Taylor*, 329 U.S. 495 (1947). Federal Rule of Civil Procedure 26(b)(3) provides, in relevant part:

> a party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other

> party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The purpose of the work product doctrine is to "'promote the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients.'" *Nielsen Elecs. Inst. v. Student Finance Corp.*, C.A. No. 99-285-JJF, 2001 WL 34367325 (D. Del. Jan. 18, 2001) (quoting *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 141, 1428 (3d Cir. 1991). Because of this interest in protecting the adversary process, the work-product privilege is limited to those documents prepared "in anticipation of litigation." *Hercules Inc.*, 434 F. Supp. at 150-51.

In determining when litigation is anticipated, the Third Circuit explained that "[t]he test should be whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993) (internal citations omitted); *see Carlton Investments v. TLC*, C.A. No. 13950, 1996 WL 535407 (Del. Ch. Sept. 17, 1996) (stating the same rule). Accordingly, to determine whether the privilege applies, the court must look "to the state of mind of the party preparing the document" and then decide whether the preparer's anticipation of litigation is "objectively reasonable." *Martin*, 983 F.2d at 1260; *Carlton Investments*, 1996 WL 535408, at *2.

Here, Plaintiffs improperly identified January 11, 2004 as the specific date when the protection was triggered. (D.I. 117 at 22-23). Instead, the proper focus is not on a specific date, but on the disputed documents and whether in light of the nature of the disputed documents and

24

the surrounding circumstances, they can fairly be said to have been prepared or obtained because of the prospect of litigation.    Although Plaintiffs have not referenced specific documents, Defendants will attempt to generally address their claims.

With respect to documents prepared by or for Mr. Neuberger, a claim of work product protection is justified as early as the summer of 2002 because the present litigation was anticipated at that time.    In the summer of 2002, Plaintiffs decided to sell the operating units piecemeal in violation of their fiduciary duties.    At that time, Mr. Neuberger anticipated litigation and prepared emails and other documents with an eye toward litigation.    This is evidenced by an email sent on August 6, 2002, from Mr. Neuberger to Buchler and Krieger in which he expressed Defendants' objection to the piecemeal sale of ALH.    Exhibit G. Specifically, Mr. Neuberger wrote, "in large part your desire to exit this investment is driven by the management demands" and "the Bs feel that the 'control' of ALH owes them a duty to try and maximize their return." Exhibit G.    Moreover, Mr. Neuberger's belief that litigation was anticipated was objectively reasonable because Plaintiffs solicited bids for the sale of the operating units without regard for the consequences to ALH and its members.    Therefore, documents prepared by or for Mr. Neuberger after the summer of 2002 are protected by the work product doctrine.

With respect to documents prepared by or for Mr. Lobell, a claim of work product protection is justified from the inception of his representation of Mr. Lamm.[17]    Mr. Lamm hired Mr. Lobell in June 2002 to personally represent him in connection with his disputes with

---

[17] Plaintiffs' statement that documents protected by the work product doctrine exist on the Lamm privilege log as early as September 25, 2001 is misleading. There are two entries on the Lamm privilege log (two copies of the same document) with a date in 2001. As indicated on the log, this document is a narrative prepared by Mr. Lamm and Mr. Zich in September 2001 regarding their disputes with Shamrock. At the time this document was prepared, Mr. Zich represented Mr. Lamm in connection with their dispute with Plaintiffs. In September 2001, Mr. Zich clearly anticipated litigation with Plaintiffs based on the dispute between Plaintiffs and Lion & Lamm regarding management issues. This document was later forwarded to Mr. Lobell during his representation of Mr. Lamm. There are no other documents on either log prior to 2002.

25

Plaintiffs. For example, Plaintiffs threatened to sue Mr. Lamm with respect to his obligations under the July 1, 2001 Agreement. Litigation, therefore, was clearly anticipated from the beginning of Mr. Lobell's representation of Mr. Lamm and documents prepared by him are protected by the work product doctrine.[18]

Accordingly, the documents sought by Plaintiffs' Motion to Compel are protected by the work product doctrine and their Motion should be denied.

**III.    Defendants Have Not Waived Any Claims of Privilege.**

Plaintiffs contend that Defendants waived the attorney-client and work product privileges by providing facially inadequate privilege logs and by their conduct in failing to timely revise the logs. (D.I. 117 at 23). Defendants acted in good faith to provide sufficient information in the Class B and Lamm logs and to timely respond to Plaintiffs' requests for additional information to the extent possible while still protecting the privilege.[19] Defendants' conduct does not warrant a waiver.

In the present case, the descriptions on the Class B and Lamm logs are "facially adequate." In *Applied Biosystems, Inc. v. Cruachem, Inc.*, No. 89-579-JJF, slip op. at 5 (D. Del. Oct. 16, 1991), this Court recognized that the adequacy of descriptions on a privilege log fall on a "continuum of specificity" between "facially adequate" descriptions and "facially inadequate" descriptions. *Id.* Further, the court explained that its "task is to determine when along the continuum a description is so inadequate as to constitute a waiver of privilege." *Id.*

---

[18] "The work product privilege is not limited to materials prepared in anticipation of the litigation for which the materials are sought. It will apply where the previous and pending litigations are closely related in parties or subject matter." *Matter of Sutton*, C.A. No. 96M-08-024, 1996 WL 659002, *14 (Del. Super. Ct. Aug. 30, 1996) (citing *Hercules Inc. v. Exxon Corp.*, 434 F. Supp. 136, 151 (D. Del. 1977)); *Ramada Inns, Inc. v. Drinkhall*, 490 A.2d 593, 596 (Del. Super. Ct. 1985).

[19] In creating the logs, Defendants were careful to give enough information, but not such a detailed description that confidential information would be disclosed and the privilege waived. *See In re Fuqua Indus. Inc. S'holders Litig.*, C.A. No. 11974, 1999 WL 959182, *2 (Del. Ch. Sept. 17, 1999).

The Class B and Lamm logs "designate the author, recipient and date of the document, what the document is and why it is protected from disclosure by the attorney client privilege." *Id.* Moreover, in response to Plaintiffs' request for more detailed descriptions, Defendants explained that "it is implicit in each description where Defendants are claiming the attorney-client privilege on the logs that communications from a client to his lawyer were for purposes of obtaining legal advice and each communication from a lawyer to a client was the rendition of legal advice."[20] Exhibit C. The detailed logs, coupled with the assertion that Defendants only claimed privilege for legal advice (and not business advice), is sufficient to "enable [Plaintiffs] to assess the applicability of the privilege or protection," and are thus adequate descriptions. *Chao v. Koresko*, 2005 WL 2521886, at *4 (3d. Cir. Oct. 12, 2005).

If, however, the Court finds that the descriptions are not "facially adequate," the Class B and Lamm logs certainly fall on the adequate end of the "continuum" and therefore waiver is not appropriate. The appropriate resolution is for Defendants to augment the descriptions on the logs as this Court allowed in *Applied Biosystems, Inc. v. Cruachem, Inc.*, C.A. 89-579-JRR, 1990 WL 495458, *2 (D. Del. Aug. 3, 1990).

The harsh sanction of waiver is inappropriate here where Defendants acted in good faith and fully complied with all of Plaintiffs' discovery requests. As stated by the Superior Court of Delaware, "the weight of authority in this and other jurisdictions holds that waiver of privilege should be granted only in cases of the most egregious conduct by the party claiming the privilege." *Wolhar v. General Motors Corp.*, 712 A.2d 457, 463 (Del. Super. Ct. 1997); *see U.S.*

---

[20] Plaintiffs assert that Defendants' descriptions are facially inadequate but, interestingly Defendants' descriptions are quite similar to Plaintiffs' descriptions in their privilege log. *See* Exhibit D. The only difference is that Plaintiffs add language such as "confidential" and "legal advice". Defendants explained that such language was not necessary because it is implied in the definition of the attorney-client privilege. If the communication is privileged, it must be kept confidential and received for the purpose of rendering legal advice and such language would simply make the already lengthy logs even lengthier. *See* Exhibit B.

*v. Phillip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003) (quoting *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F. Supp. 1356, 1361 (D. Kan. 1995) ("As the federal rules, case law and commentators suggest, waiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith."); *EEOC v. Safeway Store, Inc.*, 2002 WL 31947153, \*3 (N.D. Cal. Sept. 16, 2002) (recognizing the "harshness" of waiver and denying waiver where a privilege log was six months tardy and only produced in response to a motion to compel); *compare Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 335 (N.D. Ill. 2001) (recognizing the harshness of waiver and finding waiver due to "inexcusable and unjustified delay in asserting the attorney-client privilege" because defendant failed to assert the privilege for four months and falsely claimed that gaps in bates numbers were duplicates for over three months).   Such egregious conduct is not present here where Defendants cooperated with Plaintiffs' discovery requests and continually supplemented their document production by revising the logs and producing additional documents as necessary.

In *American Nat. Bank and Trust Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867 (7th Cir. 2005), the Seventh Circuit overturned a district court's finding of waiver in a similar situation:

> [Defendant] sought to protect documents for which a good-faith argument in support of privilege could be made, and it did so while treading in an area of privilege law that is generally recognized to be "especially difficult," namely, distinguishing in-house counsels' legal advice from their business advice. Furthermore, [defendant] exhibited good faith throughout the privilege log proceedings: among other acts, [defendant] conceded the need to revise its initial log; it volunteered a second-amended log; it cooperated with [plaintiff] to resolve outstanding disputes, as [plaintiff] acknowledged in January 2002; it waived the privilege for two documents in May 2002 to help close the matter; and, it promptly complied with the magistrate judge's orders for the disclosure of documents and for amended logs. Accordingly, given the absence of bad faith, wilfulness [sic], or fault, [defendant] should not have been sanctioned. The sanction must be reversed. The magistrate judge's fundamental error was estimating bad faith from good-faith assertions of the privilege.

28

*Id.* at 879.

Plaintiffs attempt to show bad faith by misconstruing Defendants' actions throughout the discovery process. Incredibly, Plaintiffs assert that by subsequently producing documents originally withheld as privileged, Defendants acted in bad faith. The reality is quite contrary.[21] Defendants vigorously protected what they, in good faith, felt to be privileged material because they "recognize the importance of the lawyer-client privilege and the need to carefully limit any invasion of it." *Zirn v. VLI Corp.*, C.A. No. 9488, 1990 WL 119685, *4 (Del.Ch. Aug. 13, 1990) (internal quotations omitted). Upon further review of the documents, Defendants concluded that some of the documents were not privileged and those documents were produced to Plaintiffs and eliminated from the logs. All of Defendants' actions were taken in good faith and each document was withheld on a good faith basis, therefore subsequent disclosure does not evidence bad faith, to the contrary, this establishes good faith.

Accordingly, Defendants have not waived the attorney-client and work product privileges.

**IV.    The Plaintiffs' Motion to Continue Certain Depositions Should Be Denied.**

Plaintiffs provide no argument in support of their request that certain depositions be resumed and the witnesses ordered to respond to questions as to which privilege was purportedly wrongfully asserted. Defendants object to resuming the deposition of Mr. Arenson as he resides in Israel and it would be an undue hardship for him to again travel to Delaware. Defendants

---

[21] Plaintiffs claim that "documents previously withheld as privileged and belatedly produced were *clearly* not privileged[.]" (D.I. 117 at 8). Defendants, however, had a good faith basis for asserting privilege as to all emails initially withheld. Under Delaware law, "the act of sending or handing written material to another person constitutes a statement or communication" for purposes of the attorney-client privilege. *Ramada Inns, Inc. v. Dow Jones & Co.*, 523 A.2d 968, 972 (Del. Super. Ct. 1986). Accordingly, the forwarding of information to a lawyer from his client or vice versa can be privileged. The fact that Defendants later determined that their initial position was incorrect does not show that the emails were "clearly" not privileged and certainly does not demonstrate bad faith.

WILMINGTON\50249\1 157347.000

object to resuming Mr. Lamm's deposition since Plaintiffs already spent three days deposing Mr.

Lamm.

## CONCLUSION

Plaintiffs' Motion to Compel the Class B Parties to Produce Documents Claimed as

Privileged or for *In Camera* Inspection and to Continue Certain Depositions should be denied.


Dated: March 1, 2007

_David A. Felice_
Sean J. Bellew (#4072)
David A. Felice (#4090)
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE  19801
(302) 295-2000
(302) 295-2013 (Fax)

Thomas M. Wood, IV
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street, 27th Floor
Baltimore, MD 21202-3201
(410) 332-8523 (Direct)
(410) 332-8564 (Fax)

*Attorneys for Defendants Abraham Arenson, A. Arenson Holdings, Ltd., D.A. Gardens, Ltd., J12ALH Associates, SELK, LLC and Laurel Equity Group, LLC*

30