# Exhibit H

Page 130

1 this date.)
2 Q. I show you what has been marked
3 Robbins Exhibit 11. Can you identify this
4 document?
5 A. Yes. The engagement letter with JMP
6 in connection with a possible sale of the
7 company, series of related transactions involving
8 the sale of substantially all of the assets of
9 the company to a third party.
10 Q. Do you recall if the agreement
11 provided for a fee to JMP for a fairness opinion?
12 A. I believe it does not.
13 Q. Directing your attention to 20325,
14 Paragraph 2.5. Does that refresh your
15 recollection as to whether there was such a fee?
16 A. It refreshes my recollection that if
17 ALH requested a fee, JMP would give a written
18 opinion for a fee of $100,000.
19 Q. So I think you misspoke. If requested
20 by ALH?
21 A. If requested by the company, that's

Page 131

1 ALH, then JMP would give a written opinion at a
2 cost of $100,000.
3 Q. Is it your understanding that any oral
4 fairness opinion was free?
5 A. There was no fee to be charged for an
6 oral fairness opinion.
7 Q. Do you specifically remember
8 negotiating that?
9 A. No.
10 (Luncheon recess taken.)
11 (Whereupon, Robbins Exhibit No. 12,
12 E-mail to Mr. Krieger and Mr. Buchler from
13 Lino Lauro, marked for identification, as of
14 this date.)
15 Q. Let me show you what's been marked
16 Robbins Exhibit 12. This is an e-mail from
17 Mr. Lauro to Mr. Krieger and Mr. Buchler, copy to
18 you, and it's a little hard to follow. I think
19 Mr. Krieger sort of answered the e-mail. In
20 particular, I'm going to direct you to
21 Paragraph 4. See that? It talks about interest

Page 132

1 rate.
2 A. I'm trying to read this in context to
3 know what you're asking me, okay?
4 Q. Go ahead.
5 MR. HURD: I want to request the
6 return of the document as a privileged
7 communication. It was inadvertently
8 produced.
9 MR. WOOD: Okay. Just because he is
10 Shamrock, not ALH at this point, that's why
11 it's privileged?
12 MR. HURD: Yes. It's Shamrock,
13 exactly.
14 MR. WOOD: (Handing). I understand
15 your position and we will note for the
16 record that the waiver letter was not done
17 until April 16, 2002. The e-mail is dated
18 April 12th, is it not?
19 MR. HURD: April 13th and 14th.
20 Q. Who drafted the 2002 loan document?
21 A. I believe it was drafted probably by

Page 133

1 my associate and reviewed by me.
2 Q. Do you recall anything about the
3 interest rate?
4 A. Today I have no particular
5 recollection about the interest rate.
6 Q. Do you recall it being high, low,
7 reasonable?
8 A. Do you have a copy of the loan
9 document?
10 Q. Yes, I do, as a matter of fact.
11 (Whereupon, Robbins Exhibit No. 13,
12 Loan Agreement, marked for identification,
13 as of this date.)
14 A. Do you also have a copy of the 2000
15 loan document?
16 Q. No, I don't.
17 A. The interest rate is 18 percent,
18 according to the loan document.
19 Q. Do you recall any concerns about the
20 interest rate?
21 A. Today, no. I do know that I would

34 (Pages 130 to 133)

Towson Reporting Company        GORE BROTHERS              Whitman Reporting - Rockville
410-828-4148                    410-837-3027               301-279-7599
                                                           817abeff-dc5c-43ec-8de1-6b2f738bca86