IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE ALH HOLDINGS, LLC | ) |
| | )   Consol. C.A. No. 04-1339 – SLR |
| | ) |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO COMPEL THE CLASS B PARTIES TO PRODUCE DOCUMENTS CLAIMED AS PRIVILEGED OR FOR *IN CAMERA* INSPECTION AND TO <u>CONTINUE CERTAIN DEPOSITIONS</u>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
A. Gilchrist Sparks, III (#467)
Alan J. Stone (#2677)
S. Mark Hurd (#3297)
Samuel T. Hirzel (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
 *Attorneys for Plaintiffs & Counterclaim Defendants*

March 12, 2007

761623.2

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF CITATIONS | ii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 3 |
| I. THE CLASS B PARTIES HAVE NOT ADEQUATELY DEMONSTRATED THE EXISTENCE OF AN ATTORNEY-CLIENT RELATIONSHIP WITH RESPECT TO THE COMMUNICATIONS ON THE PRIVILEGE LOG. | 3 |
| A. Defendants Have Not Demonstrated That Neuberger Was Acting In His Professional Capacity Or Rendering Legal Advice. | 4 |
| B. Lamm Was Not A Client For Purposes Of The Communications Described On Defendants' Privilege Log. | 8 |
| II. THE DESCRIPTIONS IN THE PRIVILEGE LOGS ARE PATENTLY INADEQUATE TO SUSTAIN DEFENDANTS' BURDEN AS PROPONENT OF ATTORNEY-CLIENT PRIVILEGE. | 12 |
| III. DEFENDANTS CANNOT ASSERT "WORK PRODUCT" FOR DOCUMENTS CREATED TWO YEARS PRIOR TO THE COMMENCEMENT OF THIS LITIGATION. | 14 |
| IV. THE CLASS B PARTIES HAVE WAIVED ANY CLAIM OF PRIVILEGE BY FAILING TO ADDRESS THE DEFICIENCIES IN THEIR PRIVILEGE LOGS IN A TIMELY MANNER. | 17 |
| V. PLAINTIFFS MUST BE AFFORDED THE RIGHT TO EXAMINE THE WITNESSES ON ANY DOCUMENTS THAT ARE ORDERED TO BE PRODUCED. | 20 |
| CONCLUSION | 20 |

<u>TABLE OF CITATIONS</u>

<u>Page(s)</u>

### CASES

*Applied Biosystems, Inc. v. Cruachem, Inc.*,
     1990 WL 495458 (D. Del. Aug. 3, 1990)                                    19

*Applied Biosystems, Inc. v. Cruachem, Inc.*,
     C.A. No. 89-579 (JJF), slip op. (D. Del. Oct. 16, 1991)           4, 6, 12, 13

*Berg Electronics, Inc. v. Molex, Inc.*,
     875 F.Supp. 261 (D. Del. 1995)                                          18

*Carlton Investments v. TLC Beatrice Intern. Holdings, Inc.*,
     1996 WL 535407 (Del. Ch., Sept. 17, 1996)                              15

*Chao v. Koresko*,
     2005 WL 2521886 (3d Cir. Oct. 12, 2005)                              4, 13

*Coastal Corp. v. Duncan*,
     86 F.R.D. 514 (D. Del. 1980)                                      14, 15, 19

*Coleman v. American Broadcasting Cos., Inc.*,
     106 F.R.D. 201 (D.D.C. 1985)                                            6

*Grimes v. LCC International, Inc.*,
     1999 WL 252381 (Del. Ch. 1999)                                      3, 4, 11

*Hercules, Inc. v. Exxon Corp.*,
     434 F. Supp. 136 (D. Del. 1977)                                     6, 7, 14

*High Plains Corp. v. Summit Res. Mgmt., Inc.*,
     1997 WL 109659 (D. Kan. 1997)                                          12

*In re Bonanno*,
     344 F.2d 830 (2d Cir. 1965)                                             1

*In re Fuqua Indus. Inc. S'holders Litig.*,
     1999 WL 959182 (Del. Ch. Sept. 17, 1999)                             4, 12

*In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*,
     731 F.2d 1032 (2d Cir. 1984)                                         6, 7, 14

*RCA Corp. v. Data Gen. Corp.*,
     1986 WL 15693 (D. Del. 1986)                                          4, 11

*Riggs National Bank of Washington, D.C. v. Zimmer*,
    355 A.2d 709 (Del. Ch. 1976)                                                      15

*Synalloy Corp. v. Gray*,
    142 F.R.D. 266 (D. Del. 1992)                                                      6

*Texaco, Inc. v. Pheonix Steel Corp.*,
    264 A.2d 523 (Del. Ch. 1970)                                                       3

*Tulip Computers Intern., B.V. v. Dell Computer Corp.*,
    210 F.R.D. 100 (D. Del.  2002)                                                    13

*U.S. Bank Nat'l Ass'n v. U.S. Timberlands Klamath Falls*,
    2005 Del. Ch. LEXIS 95 (Del. Ch. June 9, 2005)                                     3

*Union Pac. Res. Group, Inc. v. Pennzoil Co.*,
    1997 U.S. Dist. LEXIS 24251 (D. Del. Aug. 12, 1997)                             1, 12

*United States v. Construction Products Research, Inc.*,
    73 F.3d 464 (2d Cir. 1996)                                                        12

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*,
    707 F. Supp. 1429 (D. Del. 1989)                                                   4

## PRELIMINARY STATEMENT

Defendants' Answering Brief in Opposition to Plaintiffs' Motion to Compel the Class B Parties to Produce Documents Claimed as Privileged or for In Camera Inspection and to Continue Certain Depositions (D.I. 132) (the "Answering Brief" or "Ans. Br.") is a remarkable exercise in the "because I say so" approach to legal argument.

Most notably, completely ignoring their burden of proof when asserting privilege, Defendants rely extensively on a discovery letter to Plaintiffs' counsel stating, in the most conclusory fashion imaginable, that "it is implicit in each description where Defendants are claiming privilege on the logs that communications from a client to his lawyer were for the purposes of obtaining legal advice and each communication from a lawyer to a client was the rendition of legal advice."[1] Ans. Br. at 12 & Ex. C. This is precisely the *ipse dixit* approach to privilege that was rejected by this Court in *Union Pac. Res. Group, Inc. v. Pennzoil Co.*, 1997 U.S. Dist. LEXIS 24251 (D. Del. Aug. 12, 1997). Defendants' "burden is not, of course, discharged by mere conclusory or *ipse dixit* assertions, for any such rule would foreclose meaningful inquiry into the existence of the [attorney-client] relationship, and any spurious claims could never be exposed." *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965).[2]

Fundamentally, Defendants fail to explain how Lamm was seeking or receiving legal advice in his capacity as managing member of SELK, the only capacity in which Neuberger

---

[1] This "just trust us" argument is also difficult to accept given the Class B Parties' prior assertions of privilege with respect to documents that clearly are not privileged but that revealed, among other things, Mr. Lamm's penchant for profanity.

[2] Moreover, Defendants' Answering Brief is rife with internal inconsistencies and incorrect or misleading statements of law, downplays significantly Neuberger's non-legal role (including as the trustee of the trust owning 70% of Class B Member SELK) and provides no valid explanation for withholding documents that were clearly not privileged.

claims to have represented him, with respect to communications regarding his personal financial obligations, duties as a member of ALH's supervisory board or as an officer of ALH and its affiliates. The descriptions of the documents provided in the privilege log disprove any such contention. Although Defendants contend that "[a]n *in camera* review of the documents is not required because Defendants can easily substantiate in this opposition that the disputed documents are protected by the attorney-client privilege and work product privileges" they have fallen woefully short of this "easy" task. Ans. Br. at 2.[3]

Similarly, Defendants have failed to demonstrate how communications <u>years</u> before the commencement of this action, or even before any indication in the record that the Class B Parties were actively considering litigation, were prepared in "anticipation of litigation." Such a broad view of "anticipation of litigation" would result in work product protection for documents prepared by an attorney whenever litigation is conceivable in the future. That is not the law.

Faced with a vast number of documents that were clearly not privileged and withheld in bad faith, in a footnote, Defendants acknowledge that their "initial position" of withholding any documents touched by an attorney "was incorrect." Ans. Br. at 29 n.21. Defendants still do not have it right.

---

[3]     Plaintiffs invite Defendants to bring all of the disputed documents to the hearing on this motion so the Court can make this determination.

ARGUMENT

I.    THE   CLASS   B   PARTIES   HAVE   NOT   ADEQUATELY DEMONSTRATED THE EXISTENCE OF AN ATTORNEY-CLIENT RELATIONSHIP WITH RESPECT TO THE COMMUNICATIONS ON THE PRIVILEGE LOG.

"To be protected under the attorney-client privilege, a document must be or contain a confidential communication made between a client and his lawyer (or the representatives of the client and the lawyer, or among the lawyers and their representatives representing the same clients) for the purpose of facilitating the rendition of legal services to the client." *Grimes v. LCC International, Inc.*, 1999 WL 252381, at *1 (Del. Ch. 1999); DRE 502(b).  The attorney-client privilege protects communications between a <u>client</u> and his attorney only when the attorney is acting in his <u>professional capacity</u> for the purpose of facilitating the rendition of <u>legal advice</u>.  DRE 502; *U.S. Bank Nat'l Ass'n v. U.S. Timberlands Klamath Falls*, 2005 Del. Ch. LEXIS 95, at *5 (Del. Ch. June 9, 2005); *Texaco, Inc. v. Pheonix Steel Corp.*, 264 A.2d 523 (Del. Ch. 1970).[4]  Thus, contrary to Defendants' apparent belief (*see* Ans. Br. at 11), their burden is not satisfied merely because the communications were between Lamm and Neuberger.

The proponent of the privilege assertion bears the burden of demonstrating that: (1) there is an attorney-client relationship between the parties to the communication; (2) that the

---

[4]      Defendants assert that Rule 502 "goes beyond any narrow view of the common law rule, by affirming the view espoused by Wigmore and covering all communications between attorney and client that are intended to be confidential and are made for the purpose of facilitating the rendering of legal advice." Ans. Br. at 9 (citing *Clausen v. Nat'l Grange Mut. Ins. Co.*, 730 A.2d 133, 138 (Del. Super. 1997).  *Clausen* involved an argument that the privilege had been <u>abrogated</u> with respect to the insurer's communications with their attorney in bad faith insurance litigation.  *Id.* at 141.  The Court simply reaffirmed the bi-directional approach to the attorney-client privilege set forth in DRE 502 unless the insurer injected the advice of counsel into the case.  *Id.*  Plaintiffs' position on this motion is not that the privilege should be abrogated, but rather that Defendant has not demonstrated that each of the elements of the privilege are satisfied.  *Clausen* does not permit the assertion of attorney client privilege when the attorney is not acting in his capacity as an attorney or when the communication is not made for the purpose of facilitating the rendition of legal advice.

attorney is acting in his capacity as an attorney rendering legal advice; and (3) adequately demonstrating each element of the privilege on a privilege log. DRE 502; *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1442-43 (D. Del. 1989); *In re Fuqua Indus. Inc. S'holders Litig.*, 1999 WL 959182, *2 (Del. Ch. Sept. 17, 1999); *Applied Biosystems, Inc. v. Cruachem, Inc.*, C.A. No. 89-579 (JJF), slip op. at 4-5 (D. Del. Oct. 16, 1991) & *Chao v. Koresko*, 2005 WL 2521886, at *4 (3d Cir. Oct. 12, 2005); *RCA Corp. v. Data Gen. Corp.*, 1986 WL 15693, at *4 (D. Del. 1986) To the extent that the existence of an attorney-client relationship is not clear, the assertion of privilege must be resolved against the Class B Parties. *Grimes,* 1999 WL 252381, at *2. *See also Applied Biosystems*, slip op. at 6–11 (repeatedly resolving privilege assertions against the party asserting privilege and ordering production or *in camera* inspection). Defendants' privilege log (even taken together with their letter and Answering Brief) falls far short of sustaining their burden as the proponent of the attorney-client privilege.

A.    Defendants Have Not Demonstrated That Neuberger Was Acting In His Professional Capacity Or Rendering Legal Advice.

Defendants attempt to downplay Neuberger's role in the facts giving rise to this action by suggesting that he merely acted as legal counsel.[5]  In fact, Neuberger:

- was involved in identifying a possible buyer for ALH;

---

[5]    Defendants misstate this issue regarding documents color coded yellow. The disputed documents color coded yellow must be produced because Defendants have not demonstrated that Neuberger was acting in his capacity as counsel for the purpose of rendering legal advice. With respect to many of those communications, it appears that if anything, business matters were discussed. With respect to some of these matters, however, Mr. Neuberger may also have been involved as the trustee for the controlling member of SELK, or as a personal confidant. The issue is whether Defendants have demonstrated that Neuberger was acting in his professional capacity for the purpose of rendering legal advice. If the communication was for any other purpose, or Defendants simply have not sustained their burden of proof, the documents must be produced.

- conveyed to Shamrock the Class B Members' opposition to the sale of ALH's operations;

- sought to attend meetings of ALH's Supervisory Board;

- acted as a confidant to Lamm regarding his personal debts to ALH and participated in discussions between Lamm and his personal attorney regarding the ALH's efforts to collect on Lamm's debts to ALH;

- participated in the Class B Members' "buyout" strategy sessions – including suggesting actions that Lamm could take in his management role to assist the Class B Members' buyout efforts;

- communicated directly with ALH's officers regarding business matters and in conjunction with the Class B Member's buyout strategies;

- "ghost wrote" emails for Arenson making business, not legal, arguments; and

- made threats that led to the filing of this declaratory judgment action.

Simply put, Neuberger's role was not limited to that of a legal advisor. Rather, he was actively involved in the business aspects of the Class B Members' investment in ALH and their negotiations with Shamrock regarding a potential buyout of Shamrock's interests. By July 2002, he was copied on *all* of the Class B Representative's ALH related emails and "considered himself a part of the company in a real way." Arenson Dep. at 18-19 & 241: Lamm Dep. at 501.

More recently Plaintiffs have discovered additional facts about Neuberger's involvement in the Class B Members' business dealings. Mose Victor "Michel" Konig ("Konig"), whose family owns 70% of SELK through multiple entities, testified that Neuberger is, in fact, the trustee for the trust that controls his family's 70% interest in SELK, has been the trustee since the 1980s, and that all of his information about the trust's investments comes through Neuberger. Konig Dep. at 6, 13-14, 29, 53(Exhibit A). Neuberger was the principal decision maker for the largest Class B Member. Defendants played it very close to the vest and did not respond fully to Plaintiffs' prior inquiries regarding the individuals behind the SELK

entity and sought to avoid a deposition of Konig.  Plaintiffs did not discover this highly probative fact – which Defendants mysteriously fail to address in their Answering Brief -- until they traveled to Geneva, Switzerland to depose Konig.

It is well settled that business advice and underlying facts are not protected by the attorney-client privilege, even if an attorney is one of the parties to the communication. *See, e.g., Synalloy Corp. v. Gray*, 142 F.R.D. 266, 269 (D. Del. 1992) (citing *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983,* 731 F.2d 1032, 1037 (2d Cir. 1984) ("[T]he privilege is triggered only by a clients request for legal, as contrasted with business, advice.")); *Coleman v. American Broadcasting Cos., Inc.,* 106 F.R.D. 201, 205-06 (D.D.C. 1985)("Business and personal advice are not covered by the privilege."). "Only if the attorney is 'acting as a lawyer' giving advice with respect to the legal implications of a proposed course of conduct may the privilege be properly invoked." *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 147 (D. Del. 1977); *Applied Biosystems*, slip op. at 6-9 (ordering production of certain documents not shown to be for the primary purpose of facilitating legal advice and *in camera* inspection of addition documents to determine whether they are primarily business or legal communications).

Defendants correctly note that Delaware courts apply the "primary purpose" test in determining whether communications seeking or rendering both business and legal advice are privileged and that "inextricably interwoven" legal and non legal advice is privileged.  Ans. Br. at 15 (citing *Hercules*, 434 F. Supp. at 147 and *Sealy Mattress Co. of New Jersey v. Sealy Inc.*, 1987 WL 12500, *3 (Del. Ch. 1987)).  However, application of this test only strengthens Plaintiffs' motion.  Defendants have not demonstrated that the communications as to which they are claiming privilege were for the purpose of seeking or rendering legal advice or that legal and

non-legal communications were inextricably interwoven – much less that legal advice was the primary purpose of those communications.

Nor is it appropriate to resolve doubts in favor of the privilege. *Hercules* involved the application of privilege to technical factual information in connection with seeking patent and trademark applications. There was no question about whether the attorney was acting in his capacity as an attorney, but rather whether the substance of the document was legal or technical. Similarly, as Defendants recognize, in *In re Grand Jury Subpoena*, 713 F.2d at 1037-38, the documents that were found to be privileged related to the legality of the sale of a subsidiary and an attorney's opinion regarding the lawfulness of the transaction. Ans. Br. at 17.

Here, there is a question as to Neuberger's professional capacity and there has been no demonstration (beyond the *ipse dixit* statements in Defendants' discovery letter) that the substance of the communications were for the primary purpose of facilitating legal advice. The descriptions of the documents in Defendants' privilege log belie their assertion that these communications were primarily legal. *See* Plaintiffs' Opening Brief in Opposition to Plaintiffs' Motion to Compel the Class B Parties to Produce Documents Claimed as Privileged or for In Camera Inspection and to Continue Certain Depositions (D.I. 117) ("Opening Brief" or "Op. Br.") at 17-18 (listing patently inadequate descriptions). Konig's recent deposition testimony completely vitiates Defendants' contention that the list of emails in Plaintiffs' Opening Brief describing business advice, communications of underlying facts or demonstrating that Neuberger was acting as a conduit were "unfounded characteriza[tions] of Neuberger's role "in an effort to sidestep" well established law. Ans. Br. at 17. In light of Konig's recent testimony, it is not surprising that Neuberger was copied on *all* of the Class B Representative's ALH related emails and "considered himself a part of the company in a real way." Arenson Dep. at 18-19 & 241;

Lamm Dep. at 501. Neuberger was the individual responsible for the business decisions of the largest Class B Member. Konig Dep. at 6, 13-14, 29.

Defendants have not sustained their burden of <u>demonstrating</u> (as opposed to stating conclusorily) that these communications were for the primary purpose of rendering legal advice. Accordingly, the Class B Parties should be ordered to produce all the documents highlighted in yellow on Exhibit A or, alternatively, ordered to submit these documents for *in camera* inspection.[6]

> **B.    Lamm Was Not A Client For Purposes Of The Communications Described On Defendants' Privilege Log.**

Defendants acknowledge Lamm's various roles in connection with ALH and this dispute. Ans. Br. at 18. He was a Class E Member, the Class D representative on ALH's Supervisory Board; an officer of ALH and its affiliates; the "managing member" of SELK – the largest Class B investor; a member of Lion & Lamm, the entity that managed ALH; and after Lion & Lamm's wrongdoing was discovered became a multi-million dollar debtor to ALH.[7]

Remarkably, the Class B Parties assert that Neuberger's extensive "communications with Shalom Lamm were in his capacity as managing member of SELK and are therefore privileged." Ans. Br. at 18; Ex. C; Lamm Dep. at 17-20, 22-23. This would include communications described as, *inter alia*:

---

[6]    In addition, the privilege logs still contain communications between Zich and Lamm. Ans. Br. at 11, n.2 & 25 n. 17. Zich was a member of Lion & Lamm and involved in Lamm's admitted "mismanagement." Indeed, Defendants' state that "Mr. Zich represented Mr. Lamm in connection with <u>their dispute</u> with Plaintiffs." Ans. Br. at 29 n. 17. Defendants cannot in good faith claim that Zich was acting in his capacity as Lamm's counsel in a dispute in which he was directly implicated as one of the three members of the entity that managed ALH, and that misappropriated millions of dollars.

[7]    Lamm ultimately -- and in patent breach of his duties as a fiduciary – obtained a release of his obligations to ALH by taking the position that he would only agree to provide a release required by the buyer of one of ALH's subsidiaries if Lamm obtained a release of his personal obligations to ALH.

- "Email re: Draft of Letter to Board Members re: Audit Rep Letter;"

- "Email re: Response to Kreiger Memo," "Email re: Response to e-mail from Buchler," and "Email re: Strategy for dealing with Shamrock" at a time that appears to coincide with Kreiger's questions regarding Lamm's personal finances and ability to honor his financial commitments to ALH;

- "Email re: JMP Engagement Letter Extension and Elovic correspondence;"

- "Email re: Execution of Engagement Letter Extension;"

- "Email re: Lamm confession of judgment;"

- "Email re: J. Zich's Conversation with Counsel for Swiss Re;"

- "Correspondence re: Strategy for meeting with JMP, meeting of division presidents;"

- "Email re: Execution of Unanimous Written Consent and Contribution Agreement;" and

- "Email re: Execution of proposed resolutions."

SELK was not a manager of ALH and had no role in the "Audit Rep Letter", was not implicated in ALH's efforts to collect on Lamm's multi-million dollar personal obligation to ALH, had no right or authority to sign off on any engagement letter extensions, and was not charged with negotiating with Swiss Re. At deposition, the Class B Parties' counsel also instructed Lamm not to answer questions regarding Neuberger's advice to Lamm regarding Lamm's decision as a member of the Company's Supervisory Board to award Shamrock a fee for its efforts in connection with the sale of ABI, which sale the Class B Parties and the very same counsel now seek to challenge. Lamm Dep. at 606-11. SELK, however, was not a member of the Supervisory Board and had no decision-making authority on the Supervisory Board.

Defendants' response is a makeweight argument that Lamm (who accepts responsibility for the mismanagement that occurred on his watch, but attempts to put blame on

the other two principals within the three-man Lion & Lamm organization) was so important to ALH that "Lamm's continued participation at ALH was necessary to preserve [the Class B Parties'] investment and therefore, communications with Mr. Neuberger on issues such as Mr. Lamm's compensation when ALH was sold [which he was trying to renegotiate], Shamrock's [purported] representation that Mr. Lamm's debt under the July 1, 2001 [settlement] agreement would be resolved and other issues impacting Mr. Lamm's continued involvement at ALH, were communications in [Lamm's] capacity as managing member of SELK" because the possibility that if ALH refused to renegotiate his compensation in the event of a sale or pressured him on his obligations under the 2001 settlement agreement it would cause him to leave the Company would somehow harm the Class B Member's investment. Ans. Br. at 21. *See also* Lamm Dep. at 293-96. While creative, this must be seen for what it is, a completely incredible after-the-fact attempt to cloak damaging communications in privilege.

Moreover, if this were in fact true, Neuberger would be in a clear conflict position in his representation of Lamm along with the other Class B Parties. The situation here is unlike those cited by Defendants (Ans. Br. at 22-23) where there is a common interest among the parties asserting privilege. The Class B Members, like Shamrock, would have benefited from ALH's recovery of the millions of dollars that Lamm owed to ALH and any renegotiation of Lamm's interest in the event of a sale would have depleted the funds available to the other members. Defendants have represented that they do not have any conflict waiver letters. Thus, Neuberger was not within the circle of privilege when Lamm communicated with his personal attorney while Neuberger was present and no privilege attaches to such communications.[8]

---

[8] If Neuberger were truly representing the Class B Members in connection with these communications, they would take the form of adversarial negotiations with Lamm because the Class B Members stood to benefit from

(continued . . .)

As in *Grimes*, the application of privilege to Lamm's communications with Neuberger turns on the capacity in which he was acting. It applies to communications regarding communications in his capacity as managing member of SELK (assuming that Neuberger was acting in his professional capacity), but not in his capacity as a member of the Supervisory Board or as an officer, and it certainly does not apply to his personal disputes with ALH and Shamrock. As the proponents of the privilege, Defendants bear the burden of proving that each element of the privilege -- including that Lamm was acting in his capacity as a "client" of Neuberger -- is satisfied. *RCA Corp.*, 1986 WL 15693, at *4. Defendants have not satisfied this burden. Nor is Lamm entitled to a presumption of privilege resolving ambiguities in favor of privilege. While he is not an attorney like the general counsel at issue in *Grimes*, and therefore perhaps does not deserve "personal admonitions" for creating this privilege quagmire, his communications were with multiple attorneys. The attorneys with whom Lamm communicated could have (and should have) avoided any "potential ambiguities."

Because the descriptions of the documents and Neuberger's relationship with Lamm belie Defendants' conclusory assertions that the challenged communications were solely in Lamm's capacity as managing member of SELK, Defendants have not sustained their burden with respect to the disputed documents and they must be produced.

---

(. . . continued)
Lamm honoring his multi-million dollar debt to ALH. It would be strange, indeed, for Lamm and Neuberger to be deemed within the same circle of privilege during such adversarial negotiations.

II.     THE DESCRIPTIONS IN THE PRIVILEGE LOGS ARE PATENTLY
        INADEQUATE TO SUSTAIN DEFENDANTS' BURDEN AS
        PROPONENT OF ATTORNEY-CLIENT PRIVILEGE.

The descriptions of the documents as to which the Class B Parties and Lamm are

claiming privilege are patently inadequate to sustain their burden with respect to their privilege

claim – especially in light of the extensive non-legal activities of Neuberger and Lamm's

multiple roles. *See* Op. Br. at 17-18 (listing examples of facially insufficient descriptions). *See*

*United States v. Construction Products Research, Inc.,* 73 F.3d 464, 473 (2d Cir. 1996); *High*

*Plains Corp. v. Summit Res. Mgmt., Inc.,* 1997 WL 109659 (D. Kan. 1997), at * 1; *Union Pac.,*

1997 U.S. Dist. LEXIS 24215, at *4 (holding that descriptions such as "Resources Spinoff" and

"Potential Transaction" are "facially inadequate")[9]; *Applied Biosystems,* slip. op. at 6 - 9

(ordering production and *in camera* inspection on the basis of inadequate descriptions).[10]

Defendants now contend that "under Delaware law, '[i]f the privilege log lists

either the sender or the recipient as [the plaintiff's] counsel and the other side as [the plaintiff's]

director or other Privilege party or parties and no other recipients or senders are listed, then the

document is subject to the attorney client privilege.'" Ans. Br. at 10-11 (citing *In re Fuqua*

*Indus. Inc. S'holders Litig.,* 1999 WL 959182, *2 (Del. Ch. Sept. 17, 1999).    First, this

contention is both a gross misstatement and taken out of context.   The quoted language arose in

---

[9]      The fact that Defendants produced a "key" identifying the persons named in the log – which was only produced after Plaintiffs requested it – does not distinguish the inadequate descriptions in Defendants' log from those in *Union Pacific. Cf.* Ans. Br. at 13. Again, the mere fact that a person with a law degree is included in the communication does not render it a privileged communication.

[10]     Defendants also suggest that complete descriptions of the documents that they are claiming as privileged would be unduly burdensome. Ans. Br. at 10 (citing FRCP 26(b)(5) advisory committee's note (1993)). Defendants have, in fact, endeavored to provide a complete privilege log.  They cannot claim that to do so properly would be unduly burdensome.  Moreover, the assertion of privilege by category is usually reserved for documents such as draft proxy statements, draft merger agreements, post-filing emails with litigation counsel, and the like, not the emails at issue on this motion.  They do not provide an excuse for the shortcomings in the privilege log that Defendants produced in this action.

response to an argument that the privilege log must identify the persons to whom documents *were not* provided to demonstrate that the documents were confidential. *Fuqua*, 1999 WL 959182, *2. The attorney-client privilege only attaches when the communications are for the primary purpose of facilitating legal advice and the persons involved are acting in their capacity as attorney and client. Second, unlike Neuberger, the attorneys involved in the communications in *Fuqua* acted *solely* as legal counsel. They did not complicate the privilege analysis by immersing themselves in the underlying business transaction and were not principals, as Neuberger is, for the party asserting privilege.[11]

Defendants suggest that their burden would be satisfied by merely adding "confidential" and "legal advice" to each of the descriptions. It would not. This would be precisely the type of *ipse dixit* assertion that this Court has deemed inadequate. Rather, Defendants must "describe the nature of the documents . . . in a manner that . . . will enable other parties to assess the applicability of the privilege or protection." *Chao*, 2005 WL 2521886, at *4; *Applied Biosystems*, slip op. at 5 (stating that one purpose of a proper designation is to "enable opposing counsel. . . to intelligently determine whether to challenge the claim of privilege.").[12]

Moreover, Defendants' contention that descriptions such as "Email re: Potential "B" Buyout" is an adequate description when coupled with the fact that Neuberger was on the communication and when viewed in light of the blunderbuss *ipse dixit* assertion in Defendants'

---

[11]     Neuberger took the lead role in a meeting with ALH's CFO for the purpose of exploring a recapitalization of ALH and possible acquisition of the Class A Members' interest. Lanius Dep. at 178-79 (Exhibit B).

[12]     In *Apollo Computer*, 707 F. Supp. 1443, this Court held a party to its descriptions of documents noting the party asserting privilege "could easily have ascertained the standard of particularity expected by this Court and could have met that standard. Allowing it to do so now would encourage dilatory discovery practices." *See also Tulip Computers Intern., B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 105 (D. Del. 2002).

discovery letter that "it is implicit in each description that the communication is for the purpose of obtaining legal advice" is disproved by the very parentheticals that they include with the cases they cite.  As Defendants note, the documents at issue in *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037-38 (2d Cir. 1984), dealt with the <u>legality of</u> the sale of a subsidiary and an attorneys opinion regarding <u>the lawfulness of the transaction</u>.  There is no indication that the communications at issue here involved questions about the <u>legality of</u> the B's buying out Shamrock.  Rather, from the descriptions, it seems far more likely that Neuberger was involved in business, not legal issues in connection with the communications such as those described as "valuation of ALH", "estimate of proceeds of a sale of ALH", "Financing strategies for B buyout", or "Conference with Goldberg [of Ohio Savings Bank] re: Value of ALH."

The descriptions in Defendants' privilege log are inadequate and would be inadequate even if they were all viewed in the context of Defendants' say so assertions in their discovery letter and Answering Brief.  Simply adding the words "legal advice re" would not render the privilege log adequate, and Plaintiffs submit would render it affirmatively misleading.  Accordingly, Plaintiffs request an Order compelling the Class B Parties to produce the documents highlighted in Blue on Exhibit A or requiring that all such documents be submitted for *in camera* inspection.

III.    DEFENDANTS CANNOT ASSERT "WORK PRODUCT" FOR DOCUMENTS CREATED TWO YEARS PRIOR TO THE COMMENCEMENT OF THIS LITIGATION.

Defendants' contend that they are entitled to work product protection for documents prepared years prior to the commencement of this action.  Work-product protection is limited to those documents "prepared in anticipation of litigation."  FRCP 23(b)(3); *Coastal Corp. v. Duncan*,  86 F.R.D. 514, 522 (D. Del. 1980); *Hercules Inc. v. Exxon Corp.*, 434 F.Supp.

136, 150-51 (D. Del. 1977). This is because "the policy behind this rule is not to protect all recorded opinions, observations and impressions of an attorney made in connection with any legal problem, but to protect the integrity of the adversary process." *Id.* An assertion of work-product protection is proper only when a party can point "with specificity to the litigation anticipated" and the documents must be "written specifically in preparation for threatened or anticipated litigation." *Coastal Corp.*, 86 F.R.D. at 522 (emphasis added); *Riggs Nat'l Bank v. Zimmer*, 355 A.2d 709, 715 (Del. Ch. 1976).

      The Class B Parties have asserted work-product protection over communications on the Lamm privilege logs as early as September 25, 2001 and on the Class B privilege logs as early as November 11, 2002. The first indication that the Class B Members intended to pursue litigation, however, is on or about January 11, <u>2004</u>. Op. Br. Ex. L.

      In a case cited by Defendants, the Court of Chancery noted that difficult questions of work product protection often arise because "documents are sometimes created prior to litigation with an independent business purpose (*i.e.,* independent of factual investigation of historical facts or of strategic thinking about an existing possible litigation) but those documents *may be affected in some way by strategizing concerning the possibility of such claim.*" *Carlton Investments v. TLC Beatrice Intern. Holdings, Inc.*, 1996 WL 535407, *2 (Del. Ch.). In *TLC Beatrice*, the documents were created over an eight year period and the proponent of the work product assertion argued, as Defendants do here, that the attorneys assisting on the transaction "had in mind the threat that litigation between their client and persons associated with plaintiff" when the documents were created. *Id.* at *1. The Court noted that, as with the communications at issue in this action, "the factual context is quite different from the traditional scenario that triggered the work product doctrine, involving requests for documents produced by litigation

adversaries in preparation for trial." *Id.* at *2. The Court further ruled that the "test should be whether in light of the nature of the documents and the factual situation in the particular case, the documents can be fairly said to have been prepared or obtained because of the prospect of litigation" and provided the following guidance:

> In order to determine whether documents produced prior to the commencement of litigation were produced "in anticipation of litigation" under the Rule, one may ask first, do the documents reflect the collection of information with respect to historical fact relating to a potential claim that is actually considered in connection with that research activity. Documents satisfying this test (e.g., witness statement) would represent a paradigm instance of documents created in anticipation of litigation. If documents do not meet this gathering-of-historical-fact test standard, they still may qualify as being created in anticipation of litigation, but they are likely to do so only if they directly reflect consideration of legal strategies, tactics or theories of foreseen future litigation.

*Id.*, at *3. The Court then appointed a special discovery master to review the documents in camera.

Defendants contend that work product protection is justified for documents prepared by Neuberger as early as summer of 2002 because that is when "Plaintiffs decided to sell the operating units."[13] Ans. Br. at 25. Defendants ignore completely, however, the fact that Lamm did not oppose the sale of ABI in June <u>2003</u> and Mr. Arenson and Lamm awarded a fee to

---

[13]     Plaintiffs are willing to accept Defendants' representations regarding Mr. Lobell's work product (unless it was shared with Neuberger) from the commencement of his retention in June 2002. Plaintiffs are not willing to accept, however, the suggestion that Mr. Zich was acting as an attorney anticipating litigation regarding Lion & Lamm's wrongdoing when he collaborated with Lamm to compile a narrative of their disputes with ALH and Shamrock. Ans. Br. at 25 n. 17. Mr. Zich, a member of Lion & Lamm was personally involved in Lion & Lamm's wrongdoing. Lamm cannot claim that he was acting in his capacity as counsel at that time. In any event, because Lion & Lamm was the manager of ALH, Plaintiffs would share in any privilege that would attach to such communications.

Shamrock for its efforts in connection with that sale of ABI and congratulated them on a job well done.[14]

Other than a limited few documents that Plaintiffs are not seeking, the disputed documents over which work product protection is asserted do not appear to concern the "gathering of historic facts" standard. Nor do the descriptions suggest that they "directly reflect legal strategies, tactics or theories of foreseen litigation." Rather, they concern topics such as: "Management meeting and B buyout strategy," "impact of Bowden litigation on B-buyout and Konig's loan," "Walter deal and mediation in Bowden litigation," "Strategy for potential B buyout," "Miami Meeting with Landstar and strategy for B-buyout," "Meeting with Bob Goldberg re: potential investors for a B buyout," "Engagement Letter Extension and Elovic correspondence." Accordingly, production of the documents or appointment of a special discovery master to conduct an *in camera* inspection is appropriate.

IV.     THE CLASS B PARTIES HAVE WAIVED ANY CLAIM OF PRIVILEGE BY FAILING TO ADDRESS THE DEFICIENCIES IN THEIR PRIVILEGE LOGS IN A TIMELY MANNER.

Notwithstanding the repeated requests from Plaintiffs that the many inadequacies in the privilege log be corrected, the Class B Parties have not done so in a timely manner. Plaintiffs raised their concerns, the Class B Parties then produced numerous documents which

---

[14]     In fact, Jolson Merchant Partners, the investment banking firm that was unanimously retained by ALH's Supervisory Board, had suggested selling the geographically remote subsidiaries separately because there were no operating synergies among the three divisions. Moreover, Mr. Neuberger's August 6, 2002 letter referred to in the Answering Brief acknowledges that Shamrock had the right to sell the operating units under the Operating Agreement. In August 6, 2002 (and now) Mr. Neuberger's letters reflect nothing more than a difference in business judgment – not anticipation of litigation.

had been included on their logs but for which no good faith claim of privilege could exist, and twice provided revised logs that still fail to comply with their obligations.[15]

Defendants suggest that they should be afforded yet another opportunity to revise their privilege logs. Ans. Br. at 27. Defendants did not get it right the first or second time they revised their logs and, despite substantial revisions to the log produced as Exhibit A to Defendants' Answering Brief, failed to correct the descriptions on their third opportunity.[16] By the time the Defendants try for the fourth time (which would likely necessitate a renewed motion to compel) the discovery period will be long over. "This Court has consistently emphasized that the party asserting the attorney-client privilege bears the burden of proof. Before compiling its

---

[15]    Defendants rely on their willingness to return Plaintiffs' inadvertently produced privileged documents as evidence of their "good faith" and criticize Defendants' request for the return of a document at the deposition of Mr. Robbins. Ans. Br. at 4 n. 3, 21 n.16. First, returning inadvertently produced documents is a legal and ethical obligation under Delaware law, not merely a professional courtesy. *E.g., Berg Electronics, Inc. v. Molex, Inc.*, 875 F.Supp. 261, 263 (D. Del. 1995). Second, the document recalled at Mr. Robbins's deposition concerned subject matter for which Shamrock's counsel obtained a clear consent letter indicating that it represented only Shamrock with respect to the specific transaction, and while Defendants counterclaims falsely allege otherwise, Defendants now know that there was a signed waiver letter indicating that Fried Frank was acting solely as counsel to Shamrock in connection with the 2002 Loan. Third, Plaintiffs do not reference the substance of the document recalled Defendants, and in any event, at best, that document should have been redacted. Finally, Defendants' "good faith" return of inadvertently produced documents has no bearing on Defendants' privilege assertions that are the subject of this motion.

[16]    Seeking to obfuscate their failure to satisfy their burden, Defendants fault Plaintiffs for not identifying specifically each document that they challenge. Ans. Br. at 7. In light of the massive number of documents as to which Defendants are asserting privilege, this would be no small task. Instead, Plaintiffs requested in writing that Defendants revise their log to comply with Delaware law on multiple occasions, discussed orally some of the deficiencies, identified in the color coded logs the assertions that they are challenging, and have invited the appointment of a special master to review the documents *in camera*. It is Defendants burden adequately to describe the documents as to which they are asserting privilege. It is not Plaintiff's obligation to point out each and every deficiency with specificity.

Defendants also fault Plaintiffs for making insufficient efforts to resolve this dispute without Court intervention. Ans. Br. at 6. As noted in Plaintiffs' Opening Brief, acknowledged in the Answering Brief and discussed above, Plaintiffs discussed this issue numerous times in deficiency letters and orally. Defendants twice revised their privilege logs. Each time, Plaintiffs waited months for the revised log. Defendants have now revised their logs yet again in connection with this motion but have failed even to attempt to supplement the deficient descriptions. Thus, it seems safe to assume that further discussion would have been futile, and would have likely resulted in months of further delay resulting in this motion being filed outside of the discovery period – a point that Defendants would have undoubtedly noted in their response.

withheld document list, [the party asserting privilege] could easily have ascertained the standard of particularity expected by this Court and could have met that standard. Allowing it to do so now would encourage dilatory discovery practices." *Apollo Computer*, 707 F. Supp. at 1443 (disallowing plaintiff to modify its privilege log and stating "Plaintiff will not be permitted at this time to embellish insufficient descriptions to avoid complying with defendant's legitimate discovery requests."). *See also Applied Biosystems, Inc. v. Cruachem, Inc.*, 1990 WL 495458, at *2 (D. Del. Aug. 3, 1990) (noting that it is "settled law" that a party producing an inadequate privilege log is not entitled to augment its descriptions and noting that allowing such augmentation is "an unorthodox procedure"); *Coastal Corp.*, 86 F.R.D. at 523 (noting that "[p]erhaps the DOE anticipated receiving from this Court yet another opportunity to properly support its claims of privilege, . . . reason and experience, dictate that this procedure no longer be followed.").

Defendants note that waiver of privilege is only appropriate in the most egregious cases. Ans. Br. at 27. This is precisely such a case. The Class B Parties have repeatedly produced facially inadequate privilege logs, failed to revise them to conform to Rule 26 in a timely manner, and when pressed to provide revised logs, subsequently produced documents that demonstrate that prior assertions of privilege were not made in good faith – including a document that was nothing more than a link to www.ohiosavings.com (Op. Br. Ex. H) and a variety of non-privileged and profane communications by Lamm evidencing his personal animosity for Plaintiffs. Under these circumstances, a finding of waiver is appropriate. If any lesser alternative is appropriate, it is *in camera inspection*, which Plaintiffs have also requested.

V.     PLAINTIFFS MUST BE AFFORDED THE RIGHT TO EXAMINE THE
       WITNESSES ON ANY DOCUMENTS THAT ARE ORDERED TO BE
       PRODUCED.

Defendants note that Plaintiffs provide no argument in support of their request that certain depositions be resumed and witnesses be ordered to respond to questions as to which privilege was wrongfully asserted. Ans. Br. at 29. No argument is necessary. It is simply a fundamental issue of fairness that a party be permitted to examine a witness prior to trial on the basis of documents that were wrongfully withheld from production. That Defendants would contest this point is absurd – but consistent with Defendants' other contentions with respect to this motion.

CONCLUSION

For the foregoing reasons, Shamrock respectfully requests that the Court Order the Class B Parties to produce all documents that Plaintiffs have highlighted on Exhibit A to their Opening Brief, conduct an *in camera inspection* of those documents or appoint a Discovery Master at the Class B Parties' expense. Shamrock also requests an Order requiring Arenson, Lamm, Konig and Neuberger to appear for a continuation of their depositions and Order them to answer all questions as to which an in improper claim of privilege was asserted and regarding documents improperly withheld as privileged.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

A. Gilchrist Sparks, III (#467)
Alan J. Stone (#2677)
S. Mark Hurd (#3297)
Samuel T. Hirzel (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Plaintiffs & Counterclaim Defendants*

March 12, 2007