IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE ALH HOLDINGS, LLC | ) <br> ) Consol. C.A. No. 04-1339 – SLR <br> ) |

**PLAINTIFFS' MOTION FOR FURTHER RELIEF
ON PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS**

Plaintiffs hereby move, pursuant to the Court's Order dated April 24, 2007 (the "Order") and FRCP 37(a)(4)(A), for further relief on Plaintiffs' Motion to Compel the Class B Parties to Produce Documents Claimed as Privileged or for In Camera Inspection and to Continue Certain Depositions (D.I. 116, the "Motion").

BACKGROUND

On February 1, 2007, Plaintiffs filed the Motion, seeking to compel Defendants to produce documents reflected in over 1,100 entries on their privilege logs, *inter alia*, on the grounds that:

- Neuberger provided business – not legal – advice;
- Neuberger's communications with Lamm were not privileged because Lamm was not acting in a capacity in which Neuberger was representing Lamm; and
- Defendants were not entitled to assert privilege over Lamm's communications with Zich -- Lamm's partner in the entity the managed ALH prior to the discovery of their wrongdoing.

Defendants promptly capitulated regarding their assertions of privilege over communications with Zich and those documents were cited extensively in Plaintiffs' briefing on the Motion as examples of documents that were clearly not privileged. Throughout discovery, however, Defendants stubbornly maintained their privilege assertions over Neuberger's communications,

represented these communications to be privileged, and blocked Plaintiffs from inquiring into these communications at depositions.[1]

On April 18, 2007, the Court granted the Motion by permitting Plaintiffs to identify 36 documents listed on Defendants' privilege logs for *in camera* inspection and noted that "if the Court determines from a review of this *sample of documents* that the claim of privilege has been inappropriately asserted, *the court shall grant further relief*." (D.I. 145) (emphasis added).

On April 25, 2007, upon reviewing the 36 documents *in camera*, the Court ordered that Defendants produce all 36 documents, holding that (1) the documents reflected business, not legal concerns, (2) Neuberger was acting as Lamm's business partner, not a lawyer, in connection with many of the communications, and (3) that only a "few sentences. . . arguably did relate to legal advice."[2] (D.I. 151).[3]

Rather than produce the documents immediately, however, Defendants filed an "emergency request" for clarification of the Court's ruling further delaying the documents over

---

[1] Defendants did acknowledge that their "initial position" of withholding any documents touched by an attorney "was incorrect" (D.I. 132 at 29 n.21) and produced a handful of the documents over which they were previously asserting privilege. On November 22 and December 12, 2006, after the deposition of Mr. Arenson. Many of these documents became exhibits at the depositions of other Class B Members, but Plaintiffs were precluded from using them with Mr. Arenson.

[2] The Court did not indicate whether that arguable legal advice was to a client in a capacity in which Neuberger claims to represent that client. For example, if Neuberger was advising Lamm regarding his personal obligations to ALH or in Lamm's capacity as a member of ALH's Supervisory Board those communications are not privileged because Neuberger has disavowed representing Lamm in such capacities.

[3] Amazingly, Defendants sought to avoid *in camera* inspection by falsely claiming that it "is not required because Defendants can easily substantiate in this opposition [brief] that the disputed documents are protected by the attorney-client and work product privileges and therefore have been properly withheld." (D.I. 132 at 2).

which they had asserted privilege, and effectively granted themselves a unilateral stay of this Court's Order by refusing to produce the documents pending resolution of their "emergency request."

Ultimately, on May 3, 2007, over a week after the Court's ruling and two business days before the start of trial, Defendants produced the 36 documents – purporting to preserve their right to recall the documents if the Court were to reconsider its prior rulings.

Thus, on the eve of trial, Plaintiffs have received only 36 of the documents over which Defendants improperly asserted privilege, have not had the opportunity to depose Defendants' trial witnesses on these documents, and have not received the remainder of the documents not included in the sample sent to the Court for *in camera* inspection over which Defendants are asserting privilege that are also subject to the Motion.

ARGUMENT

Plaintiffs' review of the 36 documents submitted for *in camera* inspection confirms that Defendants did not have a good faith basis for their privilege assertions. Rather, Defendants have acted to obstruct legitimate discovery by withholding damaging documents. Accordingly, and pursuant to the Court's April 18 and 24, 2007 Orders, Plaintiffs request four forms of further relief: (1) immediate production of the remainder of the documents on Defendants' privilege logs (subject to three narrow exceptions for which a legitimate claim of privilege may exist); (2) continued depositions of Messrs. Arenson and Lamm; and (3) an award of Plaintiffs' attorneys' fees and expenses in connection with the Motion pursuant to FRCP 37(a)(4)(A); and (4) leave to amend the pre-trial order to include the issue of whether Plaintiffs' are entitled to attorneys' fees and costs under the bad faith exception to the American rule.

First, Defendants should be ordered to produce the remainder of the documents on their privilege log with three exceptions: (1) documents *solely* between Lamm and his personal attorney Jay Lobell;[4] (2) documents dated after January 11, 2004 - when Lamm sent an email indicating that the Class B members intended to sue Shamrock and for which a work product claim is asserted; and (3) internal emails between Neuberger, other members of his firm and Moses Victor ("Michel") Konig. The remainder (and vast majority) of the documents are not privileged for the reasons stated in the briefing on the Motion and in the Order.

As the Court concluded from reviewing the sample of 36 documents submitted for *in camera* inspection, Neuberger was acting as a businessman, not a lawyer. (D.I. 51). For example:

- in L13028, Lamm reports to Neuberger (who was not representing him in his personal capacity) on his personal debts to ALH and business discussions relating to interviews with investment bankers;
- in L14078, Lamm and Neuberger discuss a strategy for transferring the assets of BBC to hinder the plaintiffs in litigation against Bowden from promptly collecting on a judgment;
- in L14185, Lamm conveys his thoughts regarding a last gasp effort to find a buyer for the Company as a whole and notes that "This is all VERY OFF THE RECORD";
- in ClassB01693, Lamm and Neuberger report on unsuccessful discussions with a potential buyout partner;
- L13330-31 is an email from Lamm to Neuberger forwarding a memorandum (which appears to have been prepared for all of the Class B Members participating in a potential buyout) entitled "ALH Narrative Memo" in which Lamm notes that "One of the major impairments to the

---

[4] When Neuberger is also on the communication, however, the privilege is waived because Neuberger is not within the scope of the privilege with respect to Lamm's personal financial obligations to ALH.

> proper financing of the ALH divisions has been its balance sheet, which has suffered from an overabundance of debt. A change in ownership and strategic vision is a good time for a renewed look at the strategic vision of the company. . . . During this period the entire focus of the company for a period of, say, 3-4 years ought to be reduction of debt, reduction of debt, reduction of debt."

Moreover, some of the documents do not reflect Neuberger's input at all. For example, L13041 appears to be an agenda or summary regarding the Class B Members meeting at the Heathrow Airport on July 29, 2002 and in L14380 Neuberger is merely copied on Arenson and Lamm's musings over the business merits of selling BBC. Clearly Plaintiffs' characterizations of the withheld documents were not "unfounded characterizations" that were "little more than an attempt to mischaracterize Mr. Neuberger's representation in an effort to sidestep the well established law" as Defendants earlier represented to the Court. (D.I. 132 at 17). Nor is it surprising that Neuberger was wearing his business "hat" in connection with his dealings with ALH. As Plaintiffs learned at the depositions of Konig and Neuberger, Neuberger is the trustee for the trust that owns the 70% member of SELK, LLC, which is in turn the largest Class B member of ALH. The Court's conclusions with respect to the sample of 36 documents submitted for *in camera* inspection are correct and Neuberger's true role is now clear. He was acting as Mr. Lamm's business partner and personal confidant and fancied himself as a dealbroker. He was not acting as an attorney providing legal advice to clients with whom he had formed an attorney client relationship.

Moreover, by asserting privilege improperly throughout the course of this litigation until the eve of trial -- even after twice revising their privilege logs and being put on notice of the issues by Plaintiffs' briefing -- Defendants have waived any privilege that they could have asserted. *See, e.g., Coastal Corp. v. Duncan*, 86 F.R.D. 514, 523 (D. Del. 1980); *Applied Biosystems, Inc. v. Cruachem, Inc.*, 1990 WL 495458, at *2 (D. Del. Aug. 3, 1990).

This case involves precisely the sort of egregious conduct by the party claming privilege justifying a finding of waiver. *See id.* Defendants have engaged in the type of "foot dragging" and "cavalier attitude towards following court orders and discovery rules" that supports a finding of waiver. *Ritacca v. Abbott Labs*, 203 F.R.D. 332, 335 (N.D. Ill. 2001).

Second, Plaintiffs have not yet had the opportunity to depose a number of Defendants' trial witnesses on the basis of these documents. Plaintiffs should not be prejudiced by Defendants' improper invocation of the privilege. Accordingly, Plaintiffs request that Messrs. Arenson and Lamm be required to return to Delaware for an additional two hours of deposition testimony sufficiently in advance of their trial testimony to permit Defendants to effectively use that deposition testimony.

Third, as the prevailing party on the Motion, Plaintiffs are entitled to their reasonable expenses, including attorneys' fees, in connection with the Motion. FRCP 37(a)(4)(A).

Finally, Defendants' privilege assertions and the positions that they have taken with respect to those assertions are so egregious as to call into question the *bona fides* of Defendants' counterclaims in this action. For example, in ClassB01742 Lamm emails Neuberger:

> Forgive a crazy thought. As an alternative to a fight with Shamrock in which the B investors try to get their funds back from SCA, what if the negotiations were made easier by telling SCA that an alternative solution is for all of the A investors to walk from the investment leaving the companies and operations to the B investors? The first order of business would be assembling a management team, assessing what potential exists and what investment would be required to realize it, and then to aggressively work on a severe cram down with respect to Swiss Re.

Neuberger responded, "How, in your view, would we get this presented?" Lamm answered:

> .... As part of a negotiation. The first part being a meeting between Michael & Avie (and you?) in which, for various reasons, demands be made that SCA buy-out the B's at par. Sword Rattling to commence. As part of a follow up "compromise" – the offer for them to "walk" becomes the solution with all parties agreeing to stop pursuing each other. Then on to Swiss Re for a showdown. This is a scripted play.

In other words, it appears that Defendants' "sword rattling", much of which is quoted at length in their counterclaims, began as nothing more than Lamm and Neuberger's "scripted" attempt to extort Plaintiffs into walking away from their investment. At present, Plaintiffs can only speculate as to what the remaining documents contain, but note that other documents and testimony to be presented at trial also strongly suggest that Defendants' litigation strategy was formed more than a year before the sale of ABI, which is at the core of their claims in this case. Accordingly, Plaintiffs request that the Pre-Trial Order be amended to include the issue of whether Plaintiffs' are entitled to attorneys' fees on the grounds that Defendants prosecuted their counterclaims in bad faith.[5]

---

[5] This is not a position that Plaintiffs (or their counsel) assert lightly. Accordingly, Plaintiffs did not include a boiler plate request for attorneys' fees or costs in their pleading other than through a request for "further relief as the Court may deem just and proper." (D.I. 37 at 50).

WHEREFORE, Plaintiffs seek the further relief in connection with the Motion and sanctions against the Class B Parties as set forth herein.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
A. Gilchrist Sparks, III (#467)
S. Mark Hurd (#3297)
Samuel T. Hirzel (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
  *Attorneys for Plaintiffs &*
  *Counterclaim Defendants*

May 4, 2007

819750.2

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2007, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to the following:

>Sean J. Bellew
>David A. Felice
>Cozen O'Connor
>Chase Manhattan Centre
>1201 North Market Street, Suite 1400
>Wilmington, DE 19801

*/s/ Samuel T. Hirzel*
_____
Samuel T. Hirzel (#4415)