IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE ALH HOLDINGS LLC | ) ) ) ) | Consol. C.A. No. 04-1339-SLR |

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR SANCTIONS**

Defendants, A. Arenson Holdings, Ltd. ("Arenson Holdings"), D.A. Gardens, Ltd. ("D.A. Gardens"), J12ALH Associates ("J12ALH"), Selk, LLC ("SELK"), Laurel Equity Group LLC ("Laurel") and Abraham Arenson ("Arenson") (collectively "Defendants")[1] by their undersigned counsel, file this Opposition to Plaintiffs' Motion For Further Relief on Plaintiffs' Motion to Compel and for Sanctions filed by Plaintiffs Shamrock Holdings of California, Inc. ("Shamrock"), Shamrock Capital Advisors, Inc. ("SCA"), Eugene I. Krieger ("Krieger"), George J. Buchler ("Buchler"), and Bruce J. Stein ("Stein") (collectively "Plaintiffs") (D.I. 153, the "**Motions**").

**FACTS**

A.  **Disputed Documents**

After reviewing thousands of documents, many of which were email communications involving trails of emails between multiple parties and, at times, multiple attorneys, Defendants produced most of the documents.

Defendants produced over four thousand pages of the Class B members non-privileged documents (the "**Class B production**").[2] In connection with the Class B production, Defendants prepared two privilege logs: a privilege log for the documents that are protected by the attorney-client or work product privileges (the "**Class B privilege log**"), and a privilege log for

---

[1] Defendant Abraham Arenson is not a counterclaim plaintiff in this action.
[2] Those documents were Bates stamped ClassB 001-ClassB5167.

documents containing redacted information that is protected by the attorney-client or work product privileges (the "**Class B redacted log**") (hereinafter collectively the "**Class B logs**").[3]

Defendants produced over eleven thousand pages of non-privileged documents of Mr. Lamm (the "**Lamm production**"), who is not a party to the lawsuit but is the managing member of Defendant SELK.[4] In connection with the Lamm production, Defendants prepared two privilege logs: a privilege log for the documents that are protected by the attorney-client or work product privileges (the "**Lamm privilege log**"), and a privilege log for documents containing redacted information that is protected by the attorney-client or work product privileges (the "**Lamm redacted log**") (hereinafter collectively the "**Lamm logs**").[5]

Plaintiffs challenged Defendants' claims of privilege as to 1100 entries on the Class B and Lamm Logs. Defendants reviewed the 1100 entries and for the Court's convenience, prepared Class B and Lamm logs modified to include only the approximately 263 disputed documents and to exclude duplicates and documents already produced (the "**disputed documents**").[6] (D.I. 132, Exhibit A). The following summarizes the disputed documents:

- Class B redacted log: 43 email trails, 1 fax cover letter and 1 internal chart.
- Class B privilege log: 42 email trails.
- Lamm privilege log: 127 email trails, 2 fax correspondences, 1 draft narrative and 4 memos
- Lamm redacted log: 42 email trails, 2 memos, 1 fax correspondence and 1 fax with handwritten notes

(D.I. 132, Exhibit A).

---

[3] References to the Class B logs refer to the revised logs produced to Plaintiffs on November 22, 2006.
[4] Those documents were Bates stamped L001-L12958.
[5] References to the Lamm logs refer to the revised logs produced to Plaintiffs on December 11, 2006.
[6] Defendants also removed entries that had been produced or were duplicative. For example, Lamm Privilege Log, L1307-13097 is an email trail containing three emails. Portions of that email trail were also produced at L14429-14430 and L14431. The log now has one entry for L1307-13097 and the duplicative emails are referenced by footnote.

B.   **The Parties' Attempts to Resolve this Discovery Dispute Without Judicial Intervention**

Plaintiffs claim that Defendants have engaged in "foot dragging" and had a "'cavalier attitude towards following court orders and discovery rules[.]'" (D.I. 152 at 5). To the contrary, Defendants have acted in good faith to provide additional information as requested and have extended every courtesy possible to facilitate the discovery process.

On September 25, 2006, Plaintiffs' counsel objected to the descriptions in the Class B logs and asked for clarification regarding when the Class B members became clients of Mr. Neuberger and Neuberger, Quinn, Gielen, Rubin & Gibber, P.A. (D.I. 117, Exhibit E). On October 3, 2006, Defendants' counsel responded with revised Class B logs, additional documents previously withheld as privileged and a letter responding to Plaintiffs' questions. (D.I. 132, Exhibit B). On October 10, 2006, Defendants produced the Lamm logs.

Thereafter, on November 10, 2006, Plaintiffs' counsel raised objections about the revised Class B and Lamm logs relating to the detail in the logs, the identity of certain persons referenced in the logs and the extent of the privilege, i.e. business versus legal advice. (D.I. 117, Exhibit G). After considering the objections, Defendants' counsel again reviewed the documents, revised the Class B logs and the Lamm logs, produced additional documents previously withheld as privileged and provided a privilege log key identifying the persons referenced on the privilege logs. In addition, Defendants' counsel gave a detailed explanation of the basis for the privileges and expressed a willingness to resolve any additional objections but asked that Plaintiffs' counsel please reference specific documents by Bates number if they had any further objections. (D.I. 132, Exhibit C). Plaintiffs' counsel never raised any additional written objections but instead filed their motion to compel.

This chronology of events demonstrates Defendants' good faith. Defendants evaluated Plaintiffs' position with respect to Defendants' claims of privilege and either disagreed or concurred with Plaintiffs' position and produced additional documents.

C. **Motion to Compel**

On February 1, 2007, Plaintiffs filed their Motion to Compel and it was fully briefed by both parties by March 12, 2007. (D.I. 116, 132, 135). On March 23, 2007, Plaintiffs filed a Motion to Supplement the Record (D.I. 138), and Defendants responded to the Motion to Supplement on March 30, 2007, (D.I. 140). On April 18, 2007, the Court entered an order stating:

> IT IS ORDERED that said motion (D.I. 116) is granted to the following extent: On or before April 19, 2007, plaintiffs shall identify a total of 36 documents listed in the Class B Parties' logs. On or before 12:00 p.m. on April 23, 2007, unredacted copies of such documents shall be provided to the court by the Class B Parties for *in camera* inspection. If the court determines from a review of this sample of the documents that the claim of privilege has been inappropriately asserted, the court shall grant further relief.

(D.I. 145). Plaintiffs identified 36 documents and Defendants produced 36 unredacted documents to the Court. Thereafter, on April 24, 2007,[7] the Court ordered that the 36 documents be produced "as the contents of said documents relate to business, not legal, matters" (the "Order"), and further stated that the documents were produced with redactions and as a result "I chose not to further redact the few sentences I found which arguably did relate to legal advice." (D.I. 151). Further, the Court based its decision that the documents related to business matters, in part, on Bates L14058, an email from Mr. Lamm to Messrs. Neuberger and Arenson in which Mr. Lamm indicates that he will "consult his attorney." Apparently, the Court was unaware that Mr. Lamm had another attorney other than Mr. Neuberger at that time. The same day the Order was filed, Defendants filed an emergency request for a teleconference requesting clarification of

---

[7] The Court's order was dated April 24, 2007, but it was not entered and received until April 25, 2007.

the Order because; (1) Defendants provided the Court with all 36 unredacted documents as well as the redacted versions to demonstrate which portions of the emails were withheld as privileged, and (2) in L14058 Mr. Lamm did not refer to his attorney on matters relating to SELK (Mr. Neuberger), but referred to his attorney on matters relating to Mr. Elovic.[8] Plaintiffs opposed the emergency request for a teleconference until May 1, 2007, when Plaintiffs requested an emergency teleconference. On May 1, 2007, Defendants joined in Plaintiffs' request for a teleconference.

On May 3, 2007, Defendants produced the 36 documents but reserved their right to recall the documents if, in its response to Defendants' emergency request, the Court revised its earlier ruling. On May 4, 2007, Plaintiffs filed their Motions for Further Relief and for Sanctions, (D.I. 153 at 3), and sent an email to the Court stating: "Because of the nature of the Motion and the commencement of trial on Monday, May 7, Plaintiffs respectfully request that the Motion be heard promptly and will be prepared to address the Motion on Monday morning at the commencement of trial or at such other time as the Court directs." In the Motion for Further Relief, Plaintiffs claim that "Defendants have acted to obstruct legitimate discovery by withholding damaging documents" and request the following relief:

(1) immediate production of the remainder of the 263 documents on Defendants' privilege logs[9]
(2) continued depositions of Messrs. Arenson and Lamm;[10]
(3) an award of Plaintiffs' attorneys' fees and expenses in connection with the Motion pursuant to Fed. Rule Civ. Pro. 37(a)(4)(A); and

---

[8] Mr. Lamm's attorneys at Weil, Gotshal & Manges represented him in a lawsuit filed by Mr. Elovic and assisted in drafting a settlement agreement resolving that dispute. Mr. Lamm was concerned that Mr. Elovic's email to Mr. Arenson was a violation of that settlement agreement.
[9] In Plaintiffs' Reply in Further Support of Their Motion for Further Relief, Plaintiffs limited their request to "one copy (regardless of multiple bates ranges) of those documents highlighted on Exhibit A to the Opening Brief and not produced as part of the sample." (D.I. 155 at 3).
[10] Defendants oppose any further depositions of Messrs. Arenson and Lamm because Plaintiffs have already taken extensive deposition testimony from them. If, however, the Court deems further depositions appropriate, such depositions should be limited to two hours and conducted via telephone. In addition, these depositions should be limited in scope to issues directly relating to documents produced subsequent to their prior deposition testimony.

(4)     leave to amend the pre-trial order to include the issue of whether Plaintiffs are entitled to attorneys' fees and costs under the bad faith exception to the American rule.

In light of Plaintiffs' request to argue the Motion for Further Relief one business day after it was filed, Defendants filed a short opposition and requested additional time to brief the motion for sanctions. On May 9, 2007, the Court heard arguments on the Motion to Compel and the Motion for Further Relief and granted Defendants additional time to brief the motion for sanctions.

For the reasons that follow, Plaintiffs' motion for sanctions should be denied.

## ARGUMENT

Plaintiffs argue that the prevailing party on a Motion to Compel is entitled to reasonable expenses, including attorneys' fees under Federal Rule of Civil Procedure 37(a)(4)(A).[11] Plaintiffs, however, are not entitled to attorneys' fees in this case because Defendants' withholding of documents was substantially justified. FRCP 37(a)(4)(A) provides:

> (A) If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Federal Rule of Civil Procedure 37.

In *Zoltek Corp. v. U.S.*, 71 Fed. Cl. 160 (Fed. Cl. 2006), the Federal Claims Court explained substantial justification:

> Substantial justification is justification sufficient to satisfy a reasonable person that parties could disagree as to whether compliance with the disclosure

---

[11] It has not been finally determined that Plaintiffs are the prevailing party on the motion to compel.

> requirement was required. The test is satisfied if there is a genuine dispute with respect to compliance. If a reasonable person could conclude "that the duties which the law imposes did not require production of the evidence, the dispute should be deemed genuine, the party's position would be deemed substantially justified, and no sanction would be imposed."

*Zoltek*, 71 Fed. Cl. at 170 (internal citations omitted); *see also Peterson v. Hantman*, 227 F.R.D. 13, 16 (D.D.C. 2005) ("A party's actions are substantially justified if the issue presented is one that "could engender a responsible difference of opinion among conscientious, diligent[,] but reasonable advocates.") (internal citation omitted). In addition, "[a]ccording to the Supreme Court, a party meets the 'substantially justified' standard when there is a 'genuine dispute' or if 'reasonable people could differ' as to the appropriateness of the motion." *Peterson*, 227 F.R.D. at 16 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

Defendants have not sought to evade discovery but have zealously protected documents believed, in good faith, to be within the scope of the attorney-client and work product privileges. *American Nat. Bank and Trust Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867, 879 (7th Cir. 2005) (quoting *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 90 (3d Cir. 1992) ("As candid attorney-client communications are [] 'worthy of maximum legal protection,' it is expected that clients and their attorneys will 'zealously' protect documents believed, in good faith, to be within the scope of the privilege."). In *American National Bank*, the Seventh Circuit held that the district court abused its discretion by ordering general disclosure of all documents withheld as privileged where the defendant "sought to protect documents for which a good-faith argument in support of privilege could be made, and it did so while treading in an area of privilege law that is generally recognized to be 'especially difficult' namely, distinguishing in-house counsels' legal advice from business advice." *Id.* at 879.

In addition, the court affirmed the district court's denial of the plaintiff's motion for additional sanctions in the form of attorneys' fees and costs. In that case, the defendant produced 20,000 documents but initially withheld approximately 750 documents, asserting the attorney-client privilege. *American Nat.*, 406 F.3d at 870. The defendant "was tackling privilege issues involving in-house counsels, their notes, their emails and fine line distinctions between legal and nonlegal (*i.e.*, business) advice." *Id.* The district court referred the matter to a magistrate judge who met with the parties. After a lengthy process involving four amended privilege logs, the production of documents previously withheld as privileged and several *in camera* reviews of samples of the documents, the plaintiff filed a motion for sanctions under Federal Rules of Civil Procedure 26 and 37 asking for the disclosure of all documents. The magistrate judge decided that the plaintiff would select twenty documents for *in camera* review and if four or more of the twenty contained non-privileged material, the defendant would be ordered to produce all the documents. The magistrate judge determined that four of the twenty documents were not privileged and ordered the production of all the documents. The Seventh Circuit reversed and held that given the absence of bad faith, willfulness or fault, the defendant should not have been sanctioned because the defendant had a good-faith argument for withholding the documents and had exhibited good faith throughout the proceedings by conceding the need to revise its initial privilege log, volunteering to revise its second and third logs and generally cooperating to try to resolve the dispute.

Similarly, in the present case, Defendants sought to protect documents for which a good-faith argument in support of the privilege could be made, and they did so while treading in the "especially difficult" area of distinguishing legal advice from business advice. Specifically, Defendants maintain that the disputed documents reflect communications with Mr. Neuberger in

his capacity as an attorney not as a businessman for the primary purpose of obtaining legal advice. Additionally, communications between Mr. Neuberger and Mr. Lamm are protected because Mr. Lamm acted in his capacity as the managing member of SELK and Mr. Neuberger was the attorney for SELK. As in *American National Bank*, Defendants have also cooperated in the discovery process by voluntarily revising the initial logs, producing documents previously withheld as privileged and expressing a willingness to address additional issues with Plaintiffs. Accordingly, Defendants' withholding of documents was substantially justified.

A.   **Communications with Mr. Neuberger**

Defendants, moreover, were substantially justified in withholding the documents containing communications with Mr. Neuberger because Defendants believed in good faith that the disputed documents contained communications with Mr. Neuberger in his capacity as an attorney for SELK and the Class B members, not as a businessman.

Plaintiffs repeatedly mischaracterize Mr. Neuberger's role to cast unsubstantiated doubt on Defendants' claims of privilege. To correct any confusion, Defendants again clarify that in connection with ALH, Mr. Neuberger has represented SELK, a Class B member, since 1997 and began his representation of the Class B members in February 2002.

The representation of SELK arose out of Mr. Neuberger's representation of Michel Konig ("Mr. Konig"), which began in the early nineties. In connection with that representation, Mr. Neuberger serves as the trustee of The Davidovici Family Trust and Mr. Konig is a beneficiary of the Trust and advises Mr. Neuberger in connection with investments of the Trust. In addition, Mr. Neuberger represents and is an agent for NACA Holdings, Inc. ("NACA"), which is wholly owned by the Davidovici Family Trust.

In or about 1997, Mr. Lamm approached Mr. Konig about investing with him as a Class B member in ALH. SELK was formed as the investment vehicle for that purpose. The members of SELK are Mr. Lamm and NACA. NACA owns a 70 percent residual profits interest and Mr. Lamm owns a 30 percent residual profits interest in SELK, subject to the cash distribution and profit allocation priorities contained in Articles IV and V of the SELK Operating Agreement, as amended. Mr. Lamm is the managing member of SELK.

Contrary to Plaintiffs' characterizations, Mr. Neuberger's "true role" is not as "Mr. Lamm's business partner and personal confidant" or as a joint venturer with Mr. Lamm. (D.I. 152 at 5). Mr. Neuberger's roles as trustee of The Davidovici Family Trust and agent for NACA give him no direct or indirect financial interest in SELK or ALH and do not involuntarily convert his role from attorney to business partner or joint venturer.

Relying on *Hercules v. Exxon Corp.*, 434 F. Supp. 136, 144 (D. Del. 1977), Defendants believe that the communications in the disputed documents contain both legal advice and limited business advise intertwined with legal advise, but the primary purpose of the communications with Mr. Neuberger was to obtain legal advice. In *Hercules,* the court stated:

> If the primary purpose of a communication is to solicit or render advice on non-legal matters, the communication is not within the scope of the attorney-client privilege. Only if the attorney is "acting as a lawyer" giving advice with respect to the legal implications of a proposed course of conduct may the privilege be properly invoked. **In addition, if a communication is made primarily for the purpose of soliciting legal advice, an incidental request for business advice does not vitiate the attorney-client privilege....** If the primary purpose of the document is to solicit legal advice based on that information, the privilege applies.

*Id.* at 147-48 (emphasis added). In reaching its decision, the court explained: "[t]he determinations have been particularly difficult in instances of communications primarily factual in nature. Generally, when factual information was communicated so that the attorney could disclose it in a patent or trademark application, the communication was viewed as non-privileged.

On the other hand, documents containing considerable technical factual information but which were nonetheless primarily concerned with giving legal guidance to the client were classified as privileged. **In other words, doubts have been resolved in favor of the privilege.**" *Id.* at 148 (emphasis added).

Defendants made every effort to distinguish between legal and non-legal advice and withheld only those documents they believed in good faith contained privileged information. Accordingly, Defendants' assertion of attorney-client and work product privileges over the communications with Mr. Neuberger were "substantially justified" because a reasonable person could conclude "that the duties which the law imposes did not require production of the evidence[.]" *Zoltek*, 71 Fed. Cl. at 170.

### B.   Communications with Mr. Lamm

Defendants were also substantially justified in withholding the documents containing communications between Mr. Neuberger and Mr. Lamm because Defendants had a good-faith basis for withholding the documents. Specifically, Defendants maintain that when Mr. Lamm was communicating with Mr. Neuberger, he was doing so as the managing member of SELK with respect to matters that could affect SELK or with respect to matters relating to the Class B members. Defendants' argument is supported by the fact that although Mr. Lamm had many roles, he also had many attorneys that he consulted to protect his various interests.

Mr. Lamm had many roles: (1) an investor in ALH (Class E member); (2) the Class D representative on the Supervisory Board of ALH; (3) the managing member of SELK, a Class B member of ALH; (4) a member in the entity that managed ALH (Lion & Lamm); and (5) an officer of ALH. Mr. Lamm had different attorneys representing him in these different roles. For example, Mr. Lamm conferred with Fried Frank, ALH and Shamrock's lawyers, regarding ALH

matters; Mr. Lamm conferred with Mr. Lobell on personal matters and corporate matters relating to Lion & Lamm; Mr. Lamm conferred with Clifford Brandeis in connection with the July 1, 2001 Management Agreement; and Mr. Lamm conferred with Joseph Capobianco in connection with the December 2004 Settlement and Mutual Release.

Defendants asserted the attorney-client and work product privileges over communications between Mr. Lamm and Mr. Neuberger, only when those communications related to matters involving SELK and the Class B members. The scope of those communications was broad because Mr. Neuberger's representation of the Class B members involved a variety of topics, all of which related to the preservation of the Class B members' equity in ALH. Once Plaintiffs' interests diverged from the Class B members, Mr. Lamm consulted with Mr. Neuberger before making decisions relating to ALH to obtain Mr. Neuberger's advice on the legal impact his decisions could have on SELK and the other Class B members.

For example, Defendants maintain that L14058, an email trail between Mr. Lamm and Messrs. Neuberger and Arenson, supports their contention that Mr. Lamm was communicating with Mr. Neuberger as the managing member of SELK. First, Mr. Lamm sought guidance from Mr. Neuberger and Mr. Arenson about extending the JMP engagement letter and the potential impact his dissent would have on SELK and the other Class B members. Second, Mr. Lamm responded to Mr. Arenson's request for additional information about an email from Mr. Elovic in which Mr. Elovic claimed he had been assigned Mr. Lamm's 30% interest in SELK. Mr. Lamm was involved in litigation with Mr. Elovic unrelated to ALH and SELK, which was resolved pursuant to a settlement agreement. In connection with the Elovic litigation, Mr. Lamm was represented by attorneys at Weil, Gotshal & Manges ("Weil Gotshal"). Mr. Lamm's response to Mr. Arenson that "I will consult with my attorney today to see whether his note is actionable"

refers to his attorney at Weil Gotshal. Mr. Lamm's statement that he will "consult his attorney," therefore, is not probative of Mr. Neuberger's role as the attorney for SELK and the other Class B members. To the contrary, Mr. Lamm had other attorneys handling a number of other matters, including Weil Gotshal, and accordingly limited his request for advice from Mr. Neuberger to the extension of the engagement letter which could potentially impact SELK and the other Class B members' interests in ALH. This email demonstrates an attorney-client relationship between Mr. Lamm and Mr. Neuberger and shows that Mr. Neuberger was not "Mr. Lamm's business partner and personal confidant," as suggested by Plaintiffs. Clearly Mr. Lamm consulted Mr. Neuberger to assess the legal impact the extension of the letter would have on SELK and the other Class B members; therefore the communication is protected by the attorney-client privilege.

Moreover, the attorney-client relationship between Mr. Lamm and Mr. Neuberger is clearly demonstrated by CLASSB0172 – 0173 where Mr. Lamm and Mr. Neuberger discuss legal strategy to deal with Plaintiffs' breaches of fiduciary duty. This email communication occurred in March 2004 after the sale of ABI and immediately prior to the sale of BBC. This communication by Mr. Lamm, as the managing member of SELK, was for purposes of obtaining legal advice for handling the Class B dispute with Shamrock.[12]

"A party's actions are substantially justified if the issue presented is one that "could engender a responsible difference of opinion among conscientious, diligent[,] but reasonable advocates." *Peterson v. Hantman*, 227 F.R.D. 13, 15 (D.D.C. 2005) (quoting *Athridge v. Aenta Cas. & Sur. Co.*, 184 F.R.D. 202, 205 (D.D.C. 1998)). Here, there is no question that Mr. Lamm's role when speaking with Mr. Neuberger is an issue that could engender responsible differences of opinion among conscientious, diligent and reasonable advocates. Accordingly,

---

[12] Ironically, this privileged communication between Mr. Neuberger and Mr. Lamm has been misinterpreted by Plaintiffs and used as an attempt to justify a claim for a bad faith exception to the "American Rule."

Defendants' assertion of attorney-client and work product privileges over the communications with Mr. Neuberger was "substantially justified."

In *Derry Finance N.V. v. Christiana Companies, Inc.*, 102 F.R.D. 892, 897 (D. Del. 1984), this Court explained "[s]anctions are not to be imposed as a matter of course upon the losing party in a discovery dispute. In evaluating the behavior of litigants unable to cooperate, courts are required to exercise sound discretion, taking account of both the need to encourage compliance with discovery rules and the rights of parties to make good faith arguments in their own interest." Defendants sought to protect documents for which a good faith argument in support of the privilege could be made and cooperated with Plaintiffs throughout the discovery process. Accordingly, Defendants' withholding of documents and opposition to the motion to compel was substantially justified and Plaintiffs' motion for sanctions including reasonable expenses and attorneys' fees should be denied.

Dated: May 14, 2007

                  /s/ David A. Felice
Sean J. Bellew (#4072)
David A. Felice (#4090)
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013

                  - and –

Thomas M. Wood, IV
Nichole M. Galvin
Brian M. Boyle
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street, 27th Floor
Baltimore, MD 21202-3201
Telephone: (410) 332-8523
Facsimile: (410) 332-8564
*Attorneys for Defendants*