IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE: ALH HOLDINGS, LLC     ) Civ. No. 04-1339-SLR

ORDER

At Wilmington this 15th day of May, 2007, having now reviewed *in camera* all of the documents submitted by defendants as being protected by the attorney client privilege;

IT IS ORDERED that all but a single document (L13098-L13104, and any other copies of it) shall be produced to plaintiffs, as I conclude that the remaining documents are not entitled to protection, for the reasons that follow:

1. Under Delaware law, the attorney client privilege protects "(1) communications (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." SIPCA Holdings S.A. v. Optical Coating Lab., Inc., Civ. A. No. 15129, 1996 WL 577143, at *2 (Del. Ch. Sept. 23, 1996). Although the application of the privilege is rarely disputed where a client is disclosing present facts to a retained lawyer for the sole or primary purpose of getting that lawyer's legal advice or professional assistance, the analysis becomes more complicated when the context primarily involves business communications or where the lawyer occupies multiple roles. In the first instance,

> the presence of a lawyer at a business meeting called to consider a problem that has legal implications does not itself shield the communications that occur at that meeting from discovery, even if all persons present at the meeting are bound by contract or

> professional ethics to keep the discussions confidential. What are protected are communications **to a lawyer by or on behalf of a client for the purpose of the rendition of legal services or lawyer statements constituting legal services.** The discussions that occur at [a] . . . corporate meeting are discussions among a body of persons for the purpose of formulating an appropriate business strategy. As such they are, in a sense, ultimately disclosures for the benefit of the responsible business decision-maker. Legal considerations may, of course, play a part in the formulation of a business policy or strategy, but unless the claimant of a privilege can specifically identify a disclosure made specifically to a lawyer for the purpose of assisting in the rendition of legal services (and not made at the meeting for purposes of business strategy), the fact that a lawyer gave incidental (or important) advice in the course of such a meeting does not protect from disclosure statements made at the meeting.

Id. (emphasis in original). Certainly written communications (e.g., emails) wherein business strategies constitute the primary focus of discussion fall within the analytical framework identified above. Moreover, in situations where a lawyer occupies multiple roles, so that it is not readily ascertainable from the documents whether they should be protected from disclosure by the privilege, the status of such documents

> should be resolved against the claim of privilege. . . . because it was the defendants who would have created the problem, by placing [the lawyer] in multiple - and potentially conflicting - fiduciary roles. Having created that conflict and its resulting ambiguity, and having been in a position to prevent the conflict from arising in the first place, the defendants . . . cannot be allowed to benefit from the ambiguity by asserting a privilege that might not otherwise have been available.

Grimes v. LCC Int'l, Inc., Civ. A. No. 16957, 1999 WL 252381, at *2 (Del. Ch. April 23, 1999) (citation omitted).

2. In the case at bar, both complicating factors are present. It is not apparent from the documents reviewed in camera[1] that the communications to and from Isaac Neuberger[2] are encompassed by the privilege. There is no unambiguous indication that Mr. Neuberger was retained as a lawyer by any party other than SELK;[3] indeed, many of the 2002 communications I reviewed involved Messrs. Neuberger and Lamm working in conjunction with Mr. Lamm's attorney (J. Jay Lobell) to put a deal together to salvage ALH generally, and the Class B investment specifically. Even if I were to assume that the parties involved in the communications at issue considered Mr. Neuberger to be a lawyer representing their interests, it is apparent that the focus of the communications was business strategy, not the rendition of traditional legal advice. Under these circumstances, I decline to allow defendants to benefit from the ambiguities they

---

[1]For instance, I extracted all of the emails created during the year 2002 (the first year at issue), put them in chronological order, and tracked the correspondence between the various players to try to determine their relationship.

[2]Mr. Neuberger was a lawyer who represented the majority ownership of SELK, one of the Class B investors in ALH. (L13813)

[3]Of the countless documents I reviewed, there is a single email from Mr. Lamm to Mr. Neuberger that is identified by Mr. Lamm as a communication between attorney and client. (L13925, dated May 22, 2002) This characterization is inconsistent with a later email, however, where Mr. Lamm suggests to Mr. Arenson that the Class B's should compensate Mr. Neuberger for the time and expenses he has devoted to the "B's". (CLASSB01439, dated July 31, 2002). There has been no retention agreement brought to my attention whereby Mr. Neuberger was formally retained by any of the parties to the transactions in dispute, or even any document wherein Mr. Neuberger claims that he is representing, as an attorney, the interests of Mr. Lamm or the Class B investors or anyone else.

created in this truly messy business deal gone awry, by blanketing their communications with the protection of the attorney-client privilege.

                                               _____
                                                        United States District Judge