IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE ALH HOLDINGS, LLC | )<br>)<br>) | Consol. C.A. No. 04-1339 – SLR |

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR
MOTION FOR FURTHER RELIEF ON PLAINTIFFS' MOTION TO COMPEL
AND FOR SANCTIONS**

Plaintiffs hereby respond to Defendants' Opposition to Plaintiffs' Motion

for Sanctions (D.I. 157, the "Opposition") in further support of Plaintiffs' Motion for

Further Relief and for Sanctions (D.I. 153, the "Motion for Further Relief").    In their

Opposition, Defendants contend that their assertion of privilege over the 263 disputed

documents was "substantially justified" under FRCP 37(a)(4)(A), notwithstanding the

objective fact that approximately 99.6% of their assertions of privilege were determined

to be without merit after *in camera* inspection.  Defendants' position is belied by the

documents that they previously withheld and the Court's Orders, and is contrary to the

purpose of FRCP 37(a)(4)(A) as set forth in the Advisory Committee Notes.  Plaintiffs

are entitled to an award of sanctions and to continued depositions of Abraham Arenson

("Arenson") and Shalom E. Lamm ("Lamm").

BACKGROUND

On August 23, 2006, shortly after receiving Defendants' *first* privilege

logs, Plaintiffs raised deficiencies in Defendants' privilege assertions with Defendants'

counsel. D.I. 119 Ex. E.  After an extensive series of letters and conferences, Defendants

produced revised privilege logs and slowly trickled out additional documents that they

had previously logged as privileged and refused to produce.

Many of the documents previously withheld as privileged and belatedly produced were *clearly* not privileged. For example:

- CLASSB001421 is simply a forward from Isaac M. Neuberger ("Neuberger") of a link to www.ohiosavings.com;

- CLASSB01507, 1634, 1769, & 1454 are forwards of magazine or newspaper articles;

- L13012 is a fax cover sheet from Neuberger to Lamm indicating that a Unanimous Written Consent received from Shamrock is attached;

- L13349-52 is an email from Lamm to Arenson and Neuberger forwarding the notes of ALH's CFO of a mediation that he attended on behalf of ALH;

- L14046 is an email chain between Lamm and Jon Zich ("Zich") regarding the amount of the capital contributions of the Class B Members;

- L13353 is an email from Lamm to Neuberger attaching a spreadsheet reflecting Lamm's financial analysis of a sale of ALH at $105 Million;

D.I. 119 Exs. H & K. Some of the more egregious examples were obviously withheld not because they reflected any legal advice, but because they included inflammatory language. For example, the Defendants previously redacted L3610U in which Lamm forwards George Buchler's ("Buchler") request that Lamm arrange the facilities for a board meeting in New York City to Zich stating:

> "Do you believe the Chutzpah of this f[]ing guy. He treats me like his f[]ing secretary. I am going to respond that he has a phone just as well as I do."

D.I. 119 Ex. I. Defendants also withheld the follow up correspondence between Lamm and Zich in its entirety in which Zich states:

> "He is unbelievable. They have a staff at SCA – they can do it. The telephone is no harder to use 3000 miles away." Lamm then responded "This flaming a[]hole sent me a curt

2

follow up email directing me to follow up with Kerry Heapes at ALH."

D.I. 119 Ex. J.

On February 1, 2007, Plaintiffs filed the motion to compel (D.I. 116, the "Motion to Compel"), seeking to compel Defendants to produce documents reflected in over 1,100 entries on their privilege logs,[1] *inter alia*, on the grounds that:

- Neuberger provided business – not legal – advice;
- Neuberger's communications with Lamm were not privileged because Lamm was not acting in a capacity in which Neuberger was representing Lamm; and
- Defendants were not entitled to assert privilege over Lamm's communications with Zich -- Lamm's partner in the entity that managed ALH prior to the discovery of their wrongdoing.

Defendants promptly capitulated regarding their assertions of privilege over most of the communications between Lamm and Zich. Throughout discovery, however, Defendants stubbornly maintained their privilege assertions over Neuberger's communications, represented these communications to be privileged, and blocked Plaintiffs from inquiring into these communications at depositions.

On April 18, 2007, the Court granted the Motion to Compel by permitting Plaintiffs to identify 36 documents listed on Defendants' privilege logs for *in camera* inspection and noted that "if the Court determines from a review of this sample of documents that the claim of privilege has been inappropriately asserted, the court shall grant further relief." D.I. 145.

---

[1]    Defendants subsequently clarified that, notwithstanding the manner in which they had made entries in their logs, there wee substantially fewer actual documents at issue.

On April 25, 2007, upon reviewing the 36 documents *in camera*, the Court ordered that Defendants produce all 36 documents, holding that (1) the documents reflected business, not legal concerns, (2) Neuberger was acting as Lamm's business partner, not a lawyer, in connection with many of the communications, and (3) that only a "few sentences. . . arguably did relate to legal advice." D.I. 151. Defendants then emailed an "emergency request" for clarification of the Court's ruling effectively granting themselves a unilateral stay of this Court's Order which position they later reconsidered when on May 3, 2007, over a week after the Court's ruling and two business days before the start of trial as originally scheduled, Defendants produced the 36 documents – purporting to preserve their right to recall the documents if the Court were to reconsider its prior rulings. Among the documents produced were emails in which Lamm expresses his hatred for Shamrock and in CLASSB01742 Lamm emails Neuberger:

> Forgive a crazy thought. As an alternative to a fight with Shamrock in which the B investors try to get their funds back from SCA, what if the negotiations were made easier by telling SCA that an alternative solution is for all of the A investors to walk from the investment leaving the companies and operations to the B investors? The first order of business would be assembling a management team, assessing what potential exists and what investment would be required to realize it, and then to aggressively work on a severe cram down with respect to Swiss Re.

Neuberger responded, "How, in your view, would we get this presented?"

Lamm answered:

> …. As part of a negotiation. The first part being a meeting between Michael & Avie (and you?) in which, for various reasons, demands be made that SCA buy-out the B's at par. Sword Rattling to commence. As part of a follow up "compromise" – the offer for them to "walk" becomes the

solution with all parties agreeing to stop pursuing each other. Then on to Swiss Re for a showdown. This is a scripted play.

On May 4, 2007, the Court denied Defendants' "emergency request" for reconsideration, and that same day, pursuant to the Court's April 18 and 24, 2007 Orders, Plaintiffs requested four forms of further relief: (1) immediate production of the remainder of the documents on Defendants' privilege logs (subject to three narrow exceptions for which a legitimate claim of privilege may exist); (2) continued depositions of Messrs. Arenson and Lamm; (3) an award of Plaintiffs' attorneys' fees and expenses in connection with the Motion pursuant to FRCP 37(a)(4)(A); and (4) leave to amend the pre-trial order to include the issue of whether Plaintiffs' are entitled to attorneys' fees and costs under the bad faith exception to the American rule.   D.I. 153.

On May 7, 2007, Defendants filed a written response to the Motion for Further Relief and but requested the opportunity to brief the issue more fully at a later date.  D.I. 154.  That same day, Plaintiffs filed a reply in further support of their Motion for Further Relief.  D.I. 155.

On May 9, 2007, the first day of trial, counsel for Defendants indicated that the Motion for Further Relief put him in a possible conflict position and that he could not continue with the trial until after he spoke with his malpractice insurance carrier, clients and partners.  D.I. 156.  In light of Defendants' counsel's position, the Court postponed the trial.  D.I. 156.  Counsel for Defendants then requested the opportunity to argue the Motion to Compel, and after oral argument Defendants submitted the remainder of the disputed documents for *in camera* inspection.  D.I. 156.

On May 14, 2007, Defendants filed the Opposition, their second written response to the Motion for Further Relief, generally arguing that withholding of the disputed document was "substantially justified" and that Plaintiffs are therefore not entitled to fees and expenses pursuant to FRCP 37(a)(4)(A).  In a footnote, Defendants also seek to impose certain limitations on any further depositions of Lamm and Arenson. D.I. 157 at 5 n. 10.

On May 15, 2007, after reviewing *in camera* all of the documents submitted by Defendants, the Court entered an Order requiring Defendants to produce all but one of the remaining 227 disputed documents reflected on their privilege logs.  D.I. 158.  After indicating that the documents would be delivered on May 17, 2007, they ultimately were delivered to Plaintiffs on Saturday, May 19, 2007.

 Defendants' assertion of privilege over the remaining 226 disputed documents that they were compelled to produce suffered from many of the same inadequacies that Plaintiffs had identified previously, including the lack of any legal advice in the communications.  *See, e.g.,* L14391; L4042; L13999; L14016; L4040 (clearly not reflecting legal advice).  Some of these documents, however, are also highly detrimental to Defendants' position in this litigation.  For example, in CLASSB00412, an April 4, 2003 email from Arenson to Konig, Jesselson and Neuberger relating a conversation with George Buchler, Arenson, the Class B Representative on ALH's Supervisory Board, states:

> [George] explained that since the sale of Jacksonville is
> going ahead, he simply thought it proper to offer the B's a
> final chance to buy out the A's.  He explained that the
> offers are all about $20 million for equity, subject to

different initial payment schedules. He always was aware
of the 2.7 ALHII owes to Atlantic.

He expects the A's will clear 5 million (and the B's in
proportion) from Jacksonville and whatever Memphis and
Charlotte will net will be in addition.

**I told him that the B's were not interested in going
above 3 million, and that he should go ahead with the
sale**.

(emphasis added). This clear admission – only two months before the sale of ABI (the

Jacksonville operation) that Defendants and Neuberger that Defendants now claim was a

breach of fiduciary duty – evidences the bad faith underlying Defendants' litigation

position and supports an exception to the American rule in this case. Similarly, n

L14103, Lamm relates to Neuberger that Michel Konig, the "money" behind SELK, "told

me in no uncertain terms that he has no intention of adding a penny to his investment."

Other documents evidence Neuberger's substantial involvement in Lamm's personal

dispute with Shamrock, and effort to concoct claims against Plaintiffs. *See*, *e.g.*, L13891;

L13925; L14236. It appears that Defendants' "test" for the existence of privilege was

rather singular in its focus -- if the document was harmful, withhold it.

<u>ARGUMENT</u>

A.    Plaintiffs Are Entitled To Fees And Expenses Pursuant to FRCP
      37(a)(4)(A).

If a motion to compel is granted:

> the court *shall*, after affording an opportunity to be heard,
> *require the party* or deponent whose conduct necessitated
> the motion *or the party or attorney advising such conduct
> or both of them to pay the moving party the reasonable
> expenses incurred in making the motion, including
> attorney's fees*, unless the court finds that the motion was
> filed without the movant's first making a good faith effort
> to obtain the disclosure or discovery without court action,

> or that the opposing party's nondisclosure, response or
> objection was substantially justified or that other
> circumstances make an award of expenses unjust.

FRCP 37(a)(4)(A) (emphasis added).

"Rule 37 was revised in 1970 in order to encourage such sanctions where appropriate. The wrongdoer has the burden to show that his actions were, in fact, justified or that other circumstances make the award unjust." *Bader v. Fisher*, 504 A.2d 1091, 1096 (Del. 1986). The Advisory Committee Notes to FRCP 37(a)(4) (1970) provide:

> This subdivision amends the provisions for award of
> expenses, including reasonable attorney's fees, to the
> prevailing party or person when a motion is made for an
> order compelling discovery. At present, an award of
> expenses is made only if the losing party or person is found
> to have acted without substantial justification. The change
> requires that expenses be awarded unless the conduct of the
> losing party or person is found to have been substantially
> justified. The test of "substantial justification" remains, but
> the change in language is intended to encourage judges to
> be more alert to abuses occurring in the discovery process.
>
> On many occasions, to be sure, the dispute over discovery
> between the parties is genuine, though ultimately resolved
> one way or the other by the court. In such cases, the losing
> party is substantially justified in carrying the matter to
> court. But the rules should deter the abuse implicit in
> carrying or forcing a discovery dispute to court when no
> genuine dispute exists. And the potential or actual
> imposition of expenses is virtually the sole formal sanction
> in the rules to deter a party from pressing to a court hearing
> frivolous requests for or objections to discovery.
>
> The present provision of Rule 37(a) that the court shall
> require payment if it finds that the defeated party acted
> without "substantial justification" may appear adequate, but
> in fact it has been little used. Only a handful of reported
> cases include an award of expenses, and the Columbia
> Survey found that in only one instance out of about 50
> motions decided under Rule 37(a) did the court award

expenses. <u>It appears that the courts do not utilize the most important available sanction to deter abusive resort to the judiciary</u>.

<u>The proposed change provides in effect that expenses should ordinarily be awarded</u> unless a court finds that the losing party acted justifiably in carrying his point to court. At the same time, a necessary flexibility is maintained, since the court retains the power to find that other circumstances make an award of expenses unjust--as where the prevailing party also acted unjustifiably. The amendment does not significantly narrow the discretion of the court, but rather <u>presses the court to address itself to abusive practices</u>.

(emphasis added).[2]    Thus, pursuant to FRCP 37(a)(4)(A) fees and expenses should ordinarily be granted to the prevailing party on a motion to compel.

Defendants have not met their burden of showing that their actions were "substantially justified."   First, the documents that Defendants trickled out over the course of discovery indicated that they were taking an improperly broad view of the attorney client privilege.  Indeed, it appears that Defendants' initial position was that all documents that a person with a law degree touched were conclusively deemed privileged – without regard to that person's capacity, the factual circumstances of the communication, or the substance of the communication.  For example, no reasonable attorney could conclude that a forward of a link to www.ohiosavings.com, or Lamm and Zich's inflammatory communications are privileged.  Although, after being pressed, Defendants acknowledged that their initial position was not correct, D.I. 132 at 29 n.21,

---

[2]    The Delaware Court of Chancery has similarly stated that "[a]n award of expenses and fees is <u>mandatory</u> under Rule 37 where a party is found to have failed to honor a discovery request 'unless the Court finds that the failure was substantially justified or that other circumstances make the award unjust.'"  *Beck v. Atlantic Coast PLC*, 868 A.2d 840, 851-52 (Del. Ch. 2005) (dismissing action with prejudice on the grounds of egregious Rule 37 violation) (emphasis added).

9

they continued to draw indefensible lines. It appears that Defendants' later test was that if Neuberger (a named partner in Defendants' litigation counsel's law firm) was a sender or recipient, and the document was harmful, they would assert privilege. Defendants' position was plainly contrary to settled law.

Second, even after being put on notice of the substantial questions that Plaintiffs raised regarding Neuberger's capacity as a business advisor, Lamm's capacity as a client, and the substance of the communications not supporting a privilege claim, Defendants clung to their unfounded privilege assertions over communications involving Neuberger. Even after the Court ruled that Defendants had gone 0 for 36 with respect to their claims of privilege over the sample submitted for *in camera* review, Defendants filed an "emergency motion" for the reconsideration, requested further argument and then, recognizing that it could not get worse than 0 for 36, burdened the Court with further *in camera* review. Ultimately, however, *in camera* inspection only further highlighted the impropriety of Defendants' position. Remarkably, only 1 of the 263 documents was found to be properly claimed as privileged. Rule 37 provides consequences for imposing such unnecessary costs, expenses and time on an adversary and the Court – sanctions.

Defendants, citing *American Nat'l Bank and Trust Co. of Chicago v. Equitable Life Assur. Soc. Of U.S.*, 406 F.3d 867, 879 (7th Cir. 2005), suggest that they were substantially justified because they "zealously protected documents believed, in good faith, to be within the scope of the attorney-client and work product privileges." D.I. 157 at 7. *American National* does not excuse Defendants conduct here. In *American National*, a magistrate judge struck an *entire* 400 document privilege log as a discovery

sanction because five non-privileged documents were included on its sampling of 20 documents. In other words, the Court imposed a "global-disclosure sanction." Two of the five non-privileged documents were handwritten notes from meetings with in-house counsel concerning defendants' response to plaintiff's sub-trading activity.[3] The appellate court noted that including those documents in the log was a good-faith assertion of privilege because, under certain circumstances when legal matters are at issue, notes of meetings with counsel have been held to be privileged. *Id.* at 879 n.6.[4] Here, none of the documents that have been ordered to produce raises such difficult questions. Apart from the documents listed in bullet points above that were once withheld as privileged, the more recently produced documents also included documents providing business

_____

[3]    In *Derry Finance N.V. v. Christiana Companies, Inc.*, 102 F.R.D. 892, 897 (D. Del. 1984), the court found that the "substantial justification" was "based on reasonable arguments of privilege and relevance" and on difficulties in obtaining documents from former counsel. Clearly that is not the case here. The lead named partner in Defendants' counsels' firm was a sender or recipient of the vast majority of the disputed documents, there was no question regarding relevance, and as explain in the briefing on the Motion to Compel and Motion for Further Relief, Defendants' privilege arguments were without any legal basis.

[4]    Here, while the Court also utilized the common sampling approach the Court found that *all* 36 of 36 documents in the sample were not properly claimed as privileged. Moreover, the Court also reviewed the remainder of the documents *in camera* and found that only 1 of the 263 disputed documents was properly claimed as privileged. Thus, unlike the Court in *American National*, this Court cannot be faulted for unnecessarily extending the sample to the remainder of the documents identified on the privilege log because the Court reviewed *all* of the disputed documents *in camera*. In addition, the reversal of the sanction of fees and expenses in *American National* was justified in part because the Court could not put the cat back in the bag after all privileged documents were ordered produced based on a 25% sampling rate for documents as to which the court had found were not appropriately withheld. *Id.* at 880. Here, there is no need for such corrective action.

updates and efforts to schedule meetings.  Defendants cannot realistically claim that they were "substantially justified" in withholding such documents because those communications clearly did not convey legal advice.   The mere presence of an attorney does not make a communication privileged under DRE 502.   "[A]s recognized by this Court, '[i]t is essential that the communications between client and attorney concern legal assistance and advice in order to be privileged.' Accordingly, 'communications made in the routine course of business ... which disclose no privileged matters and which are devoid of legal advice or requests for such advice are not protected.'  Furthermore, the privilege does not protect facts which an attorney obtains from other sources and then conveys to his client." *Synalloy Corp. v. Gray*, 142 F.R.D. 266, 268-269 (D. Del. 1992) (internal citations omitted, citing *Hercules Inc. v. Exxon Corp.,* 434 F. Supp. 136, 144-45 (D. Del. 1977); *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983,* 731 F.2d 1032, 1037 (2d Cir. 1984) ("[T]he privilege is triggered only by a client's request for legal, as contrasted with business, advice."); *Coleman v. American Broadcasting Cos., Inc.,* 106 F.R.D. 201, 205-06 (D.D.C.1985) ("Business and personal advice are not covered by the privilege."); *Hickman v. Taylor,* 329 U.S. 495, 508 (1947)).

Defendants also suggest that they were substantially justified in resolving doubts about Neuberger's communications in favor of privilege while "treading in the 'especially difficult' area of distinguishing legal advice from business advice." D.I. 157 at 8, & 11.  This was not, however, a particularly difficult exercise.  Defendants were on notice of the issues as a result of Plaintiffs' briefing.  Moreover, the Court noted in its April 25, 2007 Order that only a "few sentences. . . arguably did relate to legal advice." D.I. 151.  Even if Defendants were unwilling to acknowledge Plaintiffs' arguments as

correct, they should have reconsidered their position in light of the Court's ruling. Second, as the Court noted in its most recent Order, "in situations where a lawyer occupies multiple roles, so that it is not readily ascertainable from the documents whether they should be protected from disclosure by the privilege the status of such documents 'should be resolved against the claim of privilege . . . . because it was the defendants who have created the problem, by placing [the lawyer] in multiple – and potentially conflicting fiduciary roles." D.I. 158 at 2 (quoting *Grimes v. LLC Int'l, Inc.*, Civ. A. No. 16957, 1999 WL 252381, at \*2 (Del. Ch. April 23, 1999)). Defendants cannot feign ignorance of this law. Plaintiffs cited *Grimes* twice in their Opening Brief, and noted that to the extent that the existence of an attorney client relationship is not clear, the assertion of privilege must be resolved against the Class B Parties. *Grimes*, 1999 WL 252381, at \*2. In short, Lamm and Neuberger attempted to create a privilege quagmire and should not benefit from those efforts. *See id.*

Finally, Defendants contend that "there is no question that Mr. Lamm's role when speaking with Mr. Neuberger is an issue that could engender responsible differences of opinion among conscientious, diligent and reasonable advocates." D.I. 157 at 13. This argument is sophistry as Defendants acknowledge that both Lamm and Neuberger wore "many hats." They were not permitted to simply ignore those multiple hats or choose the hat most likely to benefit them with respect to a particular document. Moreover, as demonstrated by the nature of the documents withheld, Defendants' *ipse dixit* and all too convenient assertion of a good faith "difference of opinion" resulted in an indefensibly broad view of the privilege. Only 1 of 263 documents was found to be properly claimed as privileged after *in camera* inspection. Rule 37, as amended in 1970,

13

mandates the award of fees and expenses as a sanction to prevent precisely this type of conduct.

Defendants were ultimately ordered to produce 262 of 263 documents subject to the Motion to Compel and unnecessarily delayed the commencement of trial. Nonetheless, Defendants continue to resist the further relief requested by Plaintiffs, and even have the chutzpah to argue that "[i]t has not been finally determined that Plaintiffs were the prevailing party on the motion to compel." D.I. 157 at 6 n.11. If Defendants' conduct in during the course of discovery in this case is not sanctionable, it is hard to imagine a situation in which sanctions ever would be awarded. Defendants should bear the consequences of causing Plaintiffs and the Court to expend substantial resources addressing their meritless privilege assertions.

    B.    Defendants Have Offered No Rationale For Imposing Restrictions
            On The Continued Depositions Of Lamm And Arenson.

Defendants suggest in a footnote (D.I. 157 at 5 n.10) that further depositions of Arenson and Lamm should be limited to two hours, be conducted by telephone and limited in scope to issues directly relating to documents produced subsequent to their prior deposition testimony. These limitations are not appropriate. First, Plaintiffs should not be limited to issues "directly relating" to the documents produced subsequent to their prior deposition testimony because improperly withheld documents may generate further questions on documents previously produced, and on lines of questions previously pursued. Second, in light of the large number of probative documents produced after their depositions, and the potential use of this information with respect to other documents and lines of questioning, Plaintiffs may need more than two hours, and both Arenson and Lamm were identified as persons who were excepted by

14

prior Court Order from the typical seven hour limit. Third, Defendants' 11th hour reluctance to proceed with trial has opened up a substantial period of time in which in-person depositions may be scheduled in Delaware. Any inconvenience is of Defendants' own making.

## CONCLUSION

For the forgoing reasons, Plaintiffs' Motion for Further Relief should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


/s/ Samuel T. Hirzel
A. Gilchrist Sparks, III (#467)
S. Mark Hurd (#3297)
Samuel T. Hirzel (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Plaintiffs &*
*Counterclaim Defendants*

May 22, 2007

830187