IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE ALH HOLDINGS LLC | ) ) ) | Consol. C.A. No. 04-1339-SLR |

## DEFENDANTS' OBJECTION TO PLAINTIFFS' APPLICATION AND DECLARATION FOR ATTORNEYS' FEES

Dated:  May 20, 2008

Sean J. Bellew (#4072)
David A. Felice (#4090)
Cozen O'Connor
1201 N. Market Street, Suite 1400
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013

- and -

Thomas M. Wood, IV
Nichole M. Galvin
Brian M. Boyle
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street, 27th Floor
Baltimore, MD  21202-3201
Telephone:  (410) 332-8523
Facsimile:  (410) 332-8564
*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION ................................................................................................ 1

FACTS .............................................................................................................. 3

    I.     Motion to Compel .................................................................................... 3

    II.    The Declaration and Application ............................................................ 5

ARGUMENT ...................................................................................................... 5

    I.     Legal Standard ........................................................................................ 5

    II.    The Lodestar Amount Is Impossible to Calculate Because the Application
          Lacks Sufficient Specificity to Support the Fees Sought by Plaintiffs. ............... 7

        A.    Plaintiffs' Time Entries Lack the Required Specificity Necessary for
             the Court to Determine if They Relate to the Motions. ............................. 8

        B.    Plaintiffs' Time Entries Lack the Required Specificity Necessary for
             the Court to Determine if the Hours Claimed Are Reasonable. ............... 10

        C.    Time Entries Where Plaintiffs Failed to Contemporaneously Allocate
             Time for Work Related to the Motions Lack the Required Specificity. ..... 11

    III.   The Application Seeks Unreasonable, Excessive and Redundant Fees. ............... 14

        A.    Fees for Work Unrelated to the Motions and Work that Would Have
             Been Performed Regardless of the Discovery Dispute Are
             Unreasonable. ....................................................................................... 15

        B.    Hours Claimed Are Excessive for the Work Performed. ........................ 18

    IV.   Plaintiffs Have Not Met Their Burden of Establishing that the Hourly Rates
          are Reasonable. ..................................................................................... 20

        A.    Plaintiffs Fail to Provide the Court with Sufficient Information to
             Determine Whether the Hourly Rates are Reasonable. ........................... 20

        B.    Plaintiffs' Counsel Were Inefficient Given the Hourly Rates Claimed. ..... 21

        C.    Plaintiffs' Counsel Performed Work That Did Not Warrant the
             Amount of the Hourly Rates. ................................................................. 22

V.      Plaintiffs Have Provided Inadequate Documentation to Support Their Claim
        for Expenses...................................................................................................................24

CONCLUSION.............................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

CASES

*Amico v. New Castle County,*
 654 F. Supp. 982 (D. Del. 1987)................................................................. 6, 22-23

*Bell v. United Princeton Properties, Inc.,*
 884 F.2d 713 (3d Cir. 1989)....................................................................15

*Brytus v. Spang & Co.,*
 203 F.3d 238 (3d Cir. 2000)......................................................................6

*Cobell v. Norton,*
 231 F. Supp.2d 295 (D. D.C. 2002)........................................................15

*Cunningham v. City of McKeesport,*
 753 F.2d 262 (3d Cir. 1985)......................................................................7

*Evans v. Port Auth. of N.Y. & N.J.,*
 273 F.3d 346 (3d Cir. 2001)................................................................14, 21

*Green v. Baca,*
 225 F.R.D. 612 (C.D. Cal. 2005)............................................................23

*Hensley v. Eckerhart,*
 461 U.S. 424, 103 S.Ct. 1933 (1983)..................................................6-7, 13

*Interfaith Community Organization v. Honeywell Intern, Inc.,*
 426 F.3d 694 (3d Cir. 2005)................................................................6, 20-21

*Jeffries v. Secretary of Dept. of Health and Human Services,*
 2006 WL 3903710 (Fed. Cl. 2006)..........................................................11

*Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.,*
 487 F.2d 161 (3d Cir. 1973)................................................................6-7, 10

*Loughner v. Univ. of Pittsburgh,*
 260 F.3d 173 (3d Cir. 2001).....................................................................21

*Lyon v. Whisman,*
 1994 WL 827159 (D. Del., December 8, 1994).......................................21

*Maldonado v. Houstoun,*
 256 F.3d 181 (3d Cir. 2001).....................................................................14

*Mosaid Techs. Inc. v. Samsung Elecs. Co.,*
 224 F.R.D. 595 (D.N.J. 2004).............................................................8, 15-16

*Nadeau v. Helgemoe,*
    581 F.2d 275 (1st Cir. 1978)........................................................................7

*Pawlak v. Greenawalt,*
    713 F.2d 972 (3d Cir. 1983)...................................................................7, 10

*Pub. Int. Research Group of N.J., Inc. v. Windall,*
    51 F.3d 1179 (3d Cir. 1995).......................................................................14

*Rode v. Dellarciprete,*
    892 F.2d 1177 (3d Cir. 1990).............................................................7, 10-12

*Role Models Am., Inc. v. Brownlee,*
    353 F.3d 962 (D.C. Cir. 2004)...................................................................11

*Smith v. Philadelphia Housing Authority,*
    107 F.3d. 223, 225 (3d Cir. 1997)..............................................................21

*Stillman v. Edmund Scientific Co.,*
    522 F.2d 798 (4th Cir. 1975)......................................................................15

*Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.,*
    248 F.R.D. 64 (D. D.C. 2008).....................................................................15

*Turnbull v. Wilcken,*
    893 F.2d 256 (10th Cir. 1990) ...................................................................15

*Ursic v. Bethlehem Mines,*
    719 F.2d 670 (3d Cir. 1983)................................................................6, 22-23

*Washington v. Philadelphia County Court,*
    89 F.3d 1031 (3d Cir. 1996)........................................................................6

*Welch v. Metropolitan Life Ins. Co.,*
    480 F.3d 942 (9th Cir. 2007) .....................................................................11

*Westmoreland v. CBS, Inc.,*
    770 F.2d 1168 (D.C. Cir. 1985)..................................................................15

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 37(a)(5)(A)...........................................................5, 12

Rule 37..................................................................................................................15-16

Rule 37(b)(2)............................................................................................................15

Defendants, A. Arenson Holdings, Ltd. ("**Arenson Holdings**"), D.A. Gardens, Ltd. ("**D.A. Gardens**"), J12ALH Associates ("**J12ALH**"), SELK, LLC ("**SELK**"), Laurel Equity Group LLC ("**Laurel**") and Avie Arenson ("**Arenson**") (collectively, "**Defendants**"), object to the Declaration of Samuel T. Hirzel, Esquire, in support of Plaintiffs' Application for Attorneys' Fees Incurred in Connection with Plaintiffs' Motion for Further Relief on Plaintiffs' Motion to Compel and for Sanctions (D.I. 169-1, 169-2 and 169-3) (the "**Application**"), filed by Plaintiffs Shamrock Holdings of California, Inc. ("**Shamrock**"), Shamrock Capital Advisors, Inc. ("**SCA**"), Eugene I. Krieger ("**Krieger**"), George J. Buchler ("**Buchler**"), and Bruce J. Stein ("**Stein**") (collectively, "**Plaintiffs**").

## INTRODUCTION

Plaintiffs seek an award of attorneys' fees and expenses in excess of $84,000 in connection with their Motion to Compel. The discovery dispute set forth in the Motions[1] was essentially limited to 263 documents withheld by Defendants on the basis that the documents were protected by the attorney-client privilege and the work-product doctrine. As will be shown, the Application is deficient in a number of material respects. In addition, on its face, a reimbursement of $84,000 for a motion to compel is unreasonable and excessive.

Plaintiffs' request for attorneys' fees and expenses should be denied, or in the alternative reduced, for at least four reasons:

First, the Application does not contain the requisite specificity to support the fees sought by Plaintiffs. In many instances, Plaintiffs' time entries contain obscure and cryptic one-line descriptions, such as "conference," "telecalls," "legal research," and "document review," thus making it impossible to determine whether the claimed fees relate to the underlying discovery dispute, much less if the fees are reasonable. Likewise, Plaintiffs failed to contemporaneously

---

[1] Hereinafter reference to "the Motions" will include Plaintiffs' Motion to Compel (D.I. 116, 135), Motion to Supplement (D.I. 140), and Motion for Further Relief and for Sanctions (D.I. 153, 155, 160).

allocate time for work performed on the Motions, but instead, more than a year after the work was performed, arbitrarily allocated hours based on little more than after the fact guesswork. Because Plaintiffs have failed to provide the required specificity in the Application, any fee award should be disallowed, or alternatively, reduced to avoid recovery for fees that were not incurred as a result of the discovery dispute.

Second, the Application and time records reveal unreasonable, excessive and redundant time. *See* Exhibit A at 7.[2] Indeed, several time entries consist of legal services that necessarily would have been performed on Plaintiffs' behalf regardless of the underlying discovery challenge. Many time entries include excessive time spent on routine tasks, such as office conferences among attorneys, document review and general legal research. Moreover, Plaintiffs include numerous time entries for work that is unrelated to the discovery dispute addressed in the Motions. Any fee award should be denied, or alternatively, reduced because the time spent is unreasonable, excessive, and redundant.

Third, the hourly rates Plaintiffs claim in the Application are unreasonable. In order to recover a fee award, the moving party has the burden of proving that the attorneys' hourly rates are reasonable in light of the legal services provided. Plaintiffs have not provided any proof of the reasonableness of their attorneys' hourly rates relative to the underlying discovery dispute. Moreover, in many instances it appears that Plaintiffs' counsel charged their standard hourly rates—between $160 and $675 an hour—while working an inordinately high number of hours. Additionally, Plaintiffs' counsel charged their usual hourly rates for routine tasks that should have been delegated. Accordingly, the Court should reduce the hourly rates commensurate the rates with the services provided.

---

[2] Exhibit A is a spreadsheet of the time entries from D.I. 169-2 presented in chronological order with Defendants' objections added.

Fourth, a substantial portion of the $3,767.45 in expenses sought by Plaintiffs is not reimbursable. The vast majority of these expenses should be disallowed because there is no documentation to substantiate that they were incurred solely as a result of the discovery dispute. Defendants should not be forced to pay Plaintiffs' discovery expenses unrelated to the Motions.

## FACTS

### I.    Motion to Compel

On February 1, 2007, Plaintiffs filed a motion to compel challenging Defendants' assertions of privilege and work product protection for 263 documents. (D.I. 116). Specifically, Plaintiffs argued: (1) Defendants' privilege logs lacked adequate descriptions; (2) communications with Defendants' attorney, Isaac Neuberger, were business advice not legal advice; (3) communications involving Shalom Lamm were not privileged; and (4) Defendants waived claims of privilege as a result of deficiencies in the privilege logs. The motion to compel was fully briefed by both parties on March 12, 2007. (D.I. 116, 132, 135). On March 23, 2007, Plaintiffs filed a motion to supplement the record requesting that portions of Mr. Neuberger's deposition be included in the motion to compel. (D.I. 138). Defendants responded to that motion on March 30, 2007 (D.I. 140).

On April 18, 2007, the Court ruled, in part, on the motion to compel stating:

> IT IS ORDERED that said motion (D.I. 116) is granted to the following extent: On or before April 19, 2007, plaintiffs shall identify a total of 36 documents listed in the Class B Parties' logs. On or before 12:00 p.m. on April 23, 2007, unredacted copies of such documents shall be provided to the court by the Class B Parties for *in camera* inspection. If the court determines from a review of this sample of the documents that the claim of privilege has been inappropriately asserted, the court shall grant further relief.

(D.I. 145). On April 19, 2007, Plaintiffs identified 36 documents, (D.I. 147), and Defendants produced those 36 documents to the Court. Thereafter, on April 24, 2007, the Court found that

the 36 documents "relate to business, not legal, matters . . . [and] that Mr. Neuberger was acting as a business partner, not a lawyer, in connection with these communications" and ordered that the 36 documents be produced. (D.I. 151).[3]  Defendants produced the 36 documents to Plaintiffs.

On May 4, 2007, Plaintiffs filed a Motion for Further Relief and for Sanctions. (D.I. 153). Defendants filed a short opposition and requested additional time to fully respond. (D.I. 154).

On May 9, 2007, the parties appeared before this Court to begin trial.  Although the trial was postponed, the Court heard arguments on the Motion to Compel and granted Defendants additional time to fully respond to the Motion for Further Relief and for Sanctions.  At that time, Defendants produced, for *in camera* review, all of the 263 documents that were at issue.  On May 14, 2007, Defendants filed an Opposition to Plaintiffs' Motion for Further Relief and for Sanctions. (D.I. 157).  On May 22, 2007, Plaintiffs filed a Reply in Support of their Motion for Further Relief and for Sanctions.  (D.I. 160).

On May 15, 2007, the Court granted Plaintiffs' Motion to Compel concluding that 262 of the 263 documents at issue were not privileged because Mr. Neuberger was not acting as an attorney and/or the communications involved business not legal advice.  (D.I. 158).  While the order granting the Motion to Compel suggested there was insufficient evidence showing that Mr. Neuberger was the attorney for the Class B members other than SELK, Plaintiffs never raised this issue but merely argued that Mr. Neuberger rendered business not legal advice.

On March 31, 2008, the Court granted Plaintiffs' Motion for Further Relief and for Sanctions and ordered that Plaintiffs submit a declaration for attorneys' fees and that Mr. Lamm and Mr. Arenson be made available for an additional two hours of deposition testimony.  Mr.

---

[3] The Court based its decision, in part, on Bates L14058, an email from Mr. Lamm to Messrs. Neuberger and Arenson in which Mr. Lamm indicated that he would "consult his attorney."  Plaintiffs, however, never argued that Mr. Neuberger was acting as a business partner, and Defendants believe that when rendering its decision, the Court was unaware that Mr. Lamm had attorneys representing him in other matters.

Lamm was deposed for two hours on April 8, 2008. Mr. Arenson was deposed for an hour and a half on April 13, 2008. On April 22, 2008, Plaintiffs filed its Declaration and Application.

## II.    The Declaration and Application

The Application includes Plaintiffs' timesheets and expense disbursements. Plaintiffs seek the following attorneys' fees:

| Timekeeper | Hours Claimed | Hourly Rate Range | Total |
|---|---|---|---|
| A. Gilchrist Sparks III | 9.8 | $600 - $675 | $6,313.50 |
| Alan J. Stone | 5.0 | $600 | $3,000.00 |
| Julia Heaney | 0.2 | $475 | $95.00 |
| S. Mark Hurd | 55.4 | $475 - $525 | $27,352.50 |
| Samuel T. Hirzel II | 133.0 | $260 - $355 | $37,244.00 |
| John P. DiTomo | 22.2 | $245 | $5,439.00 |
| Carol N. Powell | 0.4 | $175 | $70.00 |
| Karl Randall | 15.7 | $160 | $2,512.00 |
| **Total** | **241.7** | | **$82,026.00** |

See Exhibit M at 8.[4]  The eight-paragraph Declaration filed by Plaintiffs' counsel in support of the Application provides no factual basis to support the reasonableness of the time spent or the hourly rates. The Declaration identifies the persons performing the work, but fails to provide any factual basis justifying the reasonableness of the hourly rates charged. The Declaration and Application fall far short of the required standards of specificity and reasonableness.

## ARGUMENT

## I.    Legal Standard

The Court ordered Defendants to pay Plaintiffs "their attorney fees and expenses related to their motion to compel pursuant to Fed. R. Civ. P. 37(a)(5)(A)[.]" (D.I. 165). Federal Rule of Civil Procedure 37(a)(5)(A) authorizes the Court to award the moving party "reasonable expenses incurred in making the motion, including attorney's fees."

---

[4] Exhibit M is a spreadsheet of the time entries from D.I. 169-2 presented with the total time spent by each attorney.

It is within the district court's discretion to determine the reasonableness of an award of attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941 (1983); *Amico v. New Castle County*, 654 F. Supp. 982, 996 (D. Del. 1987). In the exercise of its discretion, the court must "set forth the specific reasons underlying the award-what the Supreme Court has described as the need to 'provide a concise but clear explanation of its reasons for the fee award.'" *Ursic v. Bethlehem Mines*, 719 F.2d 670, 676 (3d Cir. 1983) (quoting *Hensley v. Eckerhart*, 461 U.S. at 347). "In all phases of the fee determination, the district judge must cast a critical eye on the award request." *Id.* at 676.

In determining the reasonableness of attorneys' fees, the Court must first determine "whether the hours claimed are adequately documented." *Amico v. New Castle County*, 654 F. Supp. 982, 997 (D. Del. 1987). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. The Court then must determine the "lodestar" amount, which is reached by calculating "the appropriate billing rate for the party's attorneys as well as the number of hours those attorneys reasonably expended on the action." *Interfaith Community Organization v. Honeywell Intern, Inc.*, 426 F.3d 694, 703 (3d Cir. 2005); *see also Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000) and *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973). The district court should exclude hours that are not reasonably expended; *i.e.* hours that are excessive, redundant, or otherwise unnecessary. *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983).

Plaintiffs bear the burden of demonstrating the reasonableness of their hours and fees. *See, e.g., Interfaith Community Organization,* 426 F.3d at 703 (3d Cir. 2005); *Washington v. Philadelphia County Court*, 89 F.3d 1031, 1035 (3d Cir. 1996). The determination as to whether the hourly rate or the fees sought are reasonable is a factual determination based on the evidence

presented by the parties. *Cunningham v. City of McKeesport,* 753 F.2d 262, 266-67 (3d Cir. 1985).

## II.    The Lodestar Amount Is Impossible to Calculate Because the Application Lacks Sufficient Specificity to Support the Fees Sought by Plaintiffs.

Plaintiffs' vague task descriptions and inadequate time allocations make it impossible for the Court to conduct a fair and thorough examination of the number of hours reasonably expended. In preparing a fee application, the Supreme Court has explained:

> The applicant should exercise "billing judgment" with respect to hours worked, . . . and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims. We recognize that there is no certain method of determining when claims are "related" or "unrelated." Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures. *See Nadeau v. Helgemoe,* 581 F.2d 275, 279 (1st Cir. 1978) ("As for the future, we would not view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorney's fees in a suit in which plaintiffs were only partially successful if counsel's records do not provide a proper basis for determining how much time was spent on particular claims.").

*Hensley,* 461 U.S. at 436.  The Third Circuit requires that a fee application "be specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'"  *Rode v. Dellarciprete,* 892 F.2d 1177, 1190 (3d Cir. 1990) (quoting *Pawlak v. Greenawalt,* 713 F.2d 972, 978 (3d Cir. 1983)).  Further, while it is true that a fee application need not contain "the exact number of minutes spent nor the precise activity to which each hour was devoted," the fee petition must contain "some fairly definite information as to the hours devoted to various general activities[.]" *Rode,* 892 F.2d at 1190 (citing *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167 (3d Cir. 1973)).

### A.    Plaintiffs' Time Entries Lack the Required Specificity Necessary for the Court to Determine if They Relate to the Motions.

Numerous time entries in the Application are vague and lack sufficient specificity to enable the Court to determine if the subject matter of the work relates to the Motions.  *See* Exhibit B.[5]  The Application contains numerous time entries containing **no** information other than the following conclusory descriptions: "conference," "telecalls," "document review," "trial," "legal research," and "writing memorandum."  *See* Exhibit B.  These descriptions are woefully inadequate and provide the Court with no basis to determine whether the work relates to the Motions.

Time entries that refer to "discovery" or "discovery issues" do not necessarily relate to the discovery dispute at issue in the Motions.  *See generally Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 224 F.R.D. 595, 597 (D.N.J. 2004) (finding entry regarding "discovery issues" did not on its face reveal fees associated with sanctions).  In this case, throughout the discovery process, there were various "discovery issues," including deposition scheduling and the production of documents from ALH, that are unrelated to the discovery dispute in the Motions.  For example, on January 22, 2007, Mr. Hurd has a time entry for "emails re discovery issues."  *See* Exhibit B at 2.  At that time, Defendants' document production was complete but there was correspondence between the parties about coordinating the depositions of Mr. Robbins and Mr. Jesselson.  *See* Exhibit D at 38-39.  Thus, it is likely the discovery issues referenced in that entry are unrelated to the Motions but were included in the Application because the description is too vague even for Plaintiffs to assess whether it relates to the Motions.  In addition, on February 12, 2007, after the motion to compel had been filed, Mr. Hurd has a time entry for "teleconference re discovery issues."  *See* Exhibit B at 2.  On that date, Defendants' counsel communicated with

---

[5] Exhibit B is a spreadsheet of time entries from D.I. 169-2 that Defendants object to because the descriptions are vague and lack sufficient specificity.

Plaintiffs regarding serving the deposition notice on Mr. Krieger and the logistics for Mr. Krieger's deposition. *See* Exhibit D at 36-37. These examples demonstrate the inadequacy of the description "discovery" or "discovery issues" to prove that the fees were incurred as a result of the Motions.

Time entries for "document review" with no further detail should be excluded because the Court cannot determine whether these entries relate to the Motions. For example, on October 11, 2006, Mr. Hurd spent two hours on "Document review; chronology; outline re open discovery issues." *See* Exhibit B at 2. There is no way for the Court to determine whether the document review related to the Motions or was part of Mr. Hurd's preparation of his chronology and thus unrelated to the Motions. The description "document review" does not demonstrate that the work related to the Motions.

Finally, the time entries on Exhibit B relating to letters and correspondence lack sufficient specificity to determine whether they relate to the discovery dispute at issue in the Motions. Although it is Plaintiffs' burden to establish that the letters/correspondence relate to the Motions, Defendants have attached relevant correspondence showing that many of the time entries are indisputably unrelated to the Motions. *See* Exhibit D. For example, on October 6, 2006, Mr. Hurd has a time entry for "review and revise draft correspondence to opposing counsel," but the letter drafted by Mr. Hurd on October 6, 2006 is unrelated to the Motion to Compel. *See* Exhibit D at 9-11. In fact, the October 6, 2006 letter makes clear that the letter relates to discovery matters unrelated to the Motions: "We have not yet had the opportunity to review defendants' revised privilege log and log of redacted documents in any detail . . . We will be back to you soon with any additional questions and/or concerns we have regarding the revised logs. **This letter addresses only issues pertaining to document production and depositions.**" Exhibit D at 9 (emphasis added). These examples demonstrate that time entries for

correspondence with opposing counsel is not sufficiently specific to demonstrate the correspondence related to the Motions.

Accordingly, the time entries on Exhibit B containing vague one or two word descriptions, or general references to "discovery," "discovery issues," "document review," and "correspondence" provide insufficient detail for this Court to determine if the work performed relates to the Motions.

### B.     Plaintiffs' Time Entries Lack the Required Specificity Necessary for the Court to Determine if the Hours Claimed Are Reasonable.

The time entries on Exhibit B do not provide sufficient detail regarding the nature of the work performed for the Court to determine if the hours claimed are reasonable. "A fee petition is required to be specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'" *Rode,* 892 F.2d at 1190 (citing *Lindy Bros. Builders, Inc.,* 487 F.2d at 167; *Pawlak,* 713 F.2d at 978).

For example, on August 17 and 18, Mr. DiTomo spent four hours on "Document review; legal research concerning discovery." On April 25, 2007, Mr. Randall spent 8.6 hours on "legal research." Without more information concerning the nature of the research by Mr. DiTomo and Mr. Randall, the Court is unable to determine whether the time was excessive. These examples demonstrate that the time entries on Exhibit B lack sufficient specificity to allow the Court to perform its duty to independently verify the reasonableness of the fees sought by Plaintiffs. Thus, the time entries on Exhibit B do not provide sufficient detail regarding the nature of the work performed to enable the Court to assess whether the hours spent were reasonable.

The lodestar amount, therefore, is impossible to calculate because the time entries on Exhibit B are too vague for the Court to determine if the work relates to the discovery issues in the Motions or if the hours claimed are reasonable for the type of work performed. Thus, the

time entries on Exhibit B should be disallowed or, alternatively reduced to prevent recovery for unrelated work.

C.     **Time Entries Where Plaintiffs Failed to Contemporaneously Allocate Time for Work Related to the Motions Lack the Required Specificity.**

Having failed to contemporaneously allocate time for work performed on the Motions, Plaintiffs arbitrarily allocated hours to work related to the Motions at least a year after the work was performed.   The Application includes numerous time entries where Plaintiffs' counsel combined multiple tasks—including tasks unrelated to the Motions—into one entry with an aggregate number of hours for the day and then, in May 2008 when preparing the Application, arbitrarily allocated hours to work related to the Motion making it impossible for the Court to determine whether the time allocated was reasonable.  *See* Exhibit C.[6]

Courts have held that it is inappropriate to aggregate time.  *See Role Models Am., Inc. v. Brownlee,* 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness"); *Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942, 948 (9th Cir. 2007); *Jeffries v. Secretary of Dept. of Health and Human Services,* 2006 WL 3903710, 8 (Fed. Cl. 2006) ("Regarding billing entries, attorneys should not bill large blocks of time since they do not allow for proper review of the specific tasks completed.").

In *Rode,* the Third Circuit held that "[a]ggregating tasks and hours by day, while not the best method of listing hours expended, does not in this case prevent review by the district court" and thus, the fee petition was not reduced for lack of specificity.  *Rode v. Dellarciprete*, 892 F.2d at 1191.  In that case, the plaintiffs were seeking an award of fees for the entire case.  In support of their petition, the plaintiffs submitted computer-generated time sheets in chronological order

---

[6] Exhibit C is a spreadsheet of time entries from D.I. 169-2 that Defendants object to because Plaintiffs arbitrarily allocated time and provided insufficient information to determine which hours relate to the Motions and whether the allocations are reasonable.

with the general nature of the activity and the subject matter of the activity where possible. Further, for an eighteen-month period prior to the conclusion of the case, the plaintiffs submitted monthly time summaries to the court, and the court raised no objections. In opposition to the plaintiffs' fee petition, the defendants argued that because the plaintiffs aggregated the number of hours and tasks performed each day it was difficult for the court to determine the hours devoted to each task. *Id.* at 1181. The Third Circuit held that the time records were sufficiently detailed to allow the court to review the reasonableness of their request despite the practice of aggregated billing.

In the present case, unlike *Rode*, the Court must determine not only whether the time is reasonable for the nature of the work but whether the work even relates to the Motions because the fee award is limited to "reasonable expenses incurred in making the motion" pursuant to Fed. R. Civ. P. 37(a)(5)(A). Further, in contrast to the petition in *Rode*, the Application here lacks sufficient detail regarding the nature and subject matter of the work. Thus, without contemporaneous allocations of time and sufficient detail regarding the nature and subject matter of the work, the Court cannot independently review Plaintiffs' allocations to determine if they are reasonable.

In support of the allocations of time in the Application, Mr. Hirzel states "Where unrelated tasks that were not associated with the Motions are included on a Time Sheet within a time entry reflecting time spent on the Motion, I have conferred with the other attorneys working on the matter and made a good faith allocation of time spent on each task as reflected in the margins of the individual time entries." D.I. 169-1, ¶ 6. Plaintiffs' allocations are little more than *post hoc* guesswork and speculation that was done in an arbitrary manner.

For example, on February 12, 2007, Mr. Hurd spent 3.8 hours on "teleconferences re discovery issues," and he allocated 1 of the 3.8 hours to work relating to the Motions. From this

entry, it is difficult to determine what, if any, time could relate to the Motions since the Motion to Compel had already been filed and Defendants had not yet responded. Additionally, it is impossible to reasonably and accurately estimate, more than a year after the time entry was prepared, how much time was spent on tasks relating to the Motions. For example, Mr. Hurd could not accurately estimate his time just two weeks after performing the work:

| Date | Attorney | Description | Entry Hours | Hours Claimed | Hourly Rate | Total |
|------|----------|-------------|-------------|---------------|-------------|-------|
| 4/13/2008 | Hurd | Deposition preparation; deposition of A Arenson | 3.5 | 3.5 | $525.00 | $1,837.50 |
| 4/13/2008 | Hurd | Trial preparation; Arenson deposition | 14.0 | 4.0 | $525.00 | $2,100.00 |

*See* Exhibit M at 3. The first entry was made at the time the work was performed. In contrast, the second entry is an allocation made two weeks later when the Application was prepared.

Further, it appears that for at least some of the time entries, Plaintiffs allocated time in equal portions to each of the tasks listed. For the following examples, it appears that time was divided in half because there were two tasks in each entry:

| Date | Attorney | Description | Entry Hours | Hours Claimed |
|------|----------|-------------|-------------|---------------|
| 8/16/2006 | DiTomo | Document review; draft outline for production deficiencies. | 4.0 | 2.0 |
| 8/17/2006 | DiTomo | Document review; legal research concerning discovery. | 4.0 | 2.0 |

*See* Exhibit C. Without further description regarding the nature and quantity of documents reviewed or the type of research performed, there is no basis to allocate equal time to both tasks. This method of allocating time is unfairly prejudicial to Defendants. In *Hensley*, the Supreme Court held that an applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims[.]" *See Hensley,* 461 U.S. at 437. Plaintiffs should have anticipated that they would be seeking fees in connection with the Motions and should have contemporaneously allocated the time within their time records.

Plaintiffs have not and cannot meet their burden of providing sufficient specificity regarding the time spent on tasks related to the Motions for the Court to independently decide whether the allocation of time is reasonable. Accordingly, the Court should exclude, as unsubstantiated, the allocations of time listed in Exhibit C. In the alternative, to the extent the Court can independently review the allocation to determine if it is reasonable, the time should be substantially reduced to mitigate the prejudice to Defendants caused by Plaintiffs' failure to keep contemporaneous time.

## III.     The Application Seeks Unreasonable, Excessive and Redundant Fees.

Plaintiffs cannot establish that the hours expended are reasonable. The Application seeks in excess of $82,000 for 241 hours of legal services on routine motions. *See* Exhibit A at 8. On its face, this amount is unreasonable and excessive. Moreover, a substantial amount of this time was billed for work that would have been performed regardless of the underlying discovery challenge and for work unrelated to the Motions. Also, many entries include excessive time spent on routine tasks, such as office conferences among attorneys, document review and general legal research.

In reviewing whether the number of hours in a fee application is reasonable, the Court must conduct "a thorough and searching analysis," and "it is necessary that the Court 'go line, by line, by line' through the billing records supporting the fee request." *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001). The Court must "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (quoting *Pub. Int. Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)).

"[T]he district court retains a great deal of discretion in deciding what a reasonable fee award is...." *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 721 (3d Cir. 1989). The Third Circuit has recognized that "[i]n determining whether the fee request is excessive ... the court will inevitably be required to engage in a fair amount of 'judgment calling' based upon its experience with the case and its general experience as to how much time a case requires." *Id.*

### A.    Fees for Work Unrelated to the Motions and Work that Would Have Been Performed Regardless of the Discovery Dispute Are Unreasonable.

Plaintiffs inappropriately seek fees for over 100 hours of work that would have been performed regardless of the underlying discovery challenge and for work unrelated to the Motions. Plaintiffs have included over 80 hours at a cost of over $27,000 for reviewing documents and performing other ordinary litigation activities. *See* Exhibit F.[7]

Rule 37 does not contemplate an award of fees or expenses that would have been incurred regardless of the discovery dispute. *See Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 224 F.R.D. 595, 598 (D. N.J. 2004) (excluding fees for reviewing documents); *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 248 F.R.D. 64, 69 (D. D.C. 2008) (excluding fees under Rule 37 for "hours spent on document review or related activities (i.e. document indexing, labeling, etc)"). Moreover, "[a] near 'but for' relationship must exist between the Rule 37 violation and the activity for which fees and expenses are awarded. *Id.* (quoting *Cobell v. Norton*, 231 F. Supp.2d 295, 300 (D. D.C. 2002)); *see also Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1179 (D.C. Cir. 1985) (requiring fees and expenses awarded to be "incurred because of" the sanctioned violation); *Turnbull v. Wilcken*, 893 F.2d 256, 258 (10th Cir. 1990) (remanding after finding the causal connection between the Rule 37(b)(2) violation and the fees assessed less than entirely clear); *Stillman v. Edmund Scientific Co.*, 522 F.2d 798, 801 (4th Cir. 1975) ("Rule [37]

---

[7] Exhibit F is a spreadsheet of time entries from D.I. 169-2 that Defendants object to because the time entries are for work that would have been performed regardless of the discovery dispute.

by its terms limits an assessment thereunder to fees and expenses flowing from an abuse of the discovery process).

Plaintiffs request fees for approximately 64 hours of "document review" alone.  First, it is unlikely that Plaintiffs' document review related to the Motions because the discovery dispute at issue concerned whether Defendants were justified in *withholding* documents containing information they claimed was privileged.  Thus, there were no documents to review.  Moreover, any document review in connection with the Motions would have been performed regardless of the discovery challenge.  In *Mosaid*, the district court refused to award fees under Rule 37 for document review. *Mosaid*, 224 F.R.D. at 598.  The court explained:

> Many of the fees would have been incurred in any event, and I therefore disallow these.  For example, the firm spent many hours "reviewing" documents actually *produced* by defendants.  While such review may have been tangentially related to the sanctions motion, plaintiff most likely would have performed this work irrespective of the instant dispute.

> \*       \*       \*

> While I appreciate the fact that an analysis of documents produced is necessary to determine what deficiencies exist, and that many of the documents reviewed were the subject of one discovery dispute or another, most of this work would have been performed in any event.

*Id.* (internal citations omitted).  Plaintiffs' time entries on Exhibit F for document review, therefore, should be disallowed.

Plaintiffs also request fees for ordinary litigation activities such as reviewing the file and reading depositions.  *See* Exhibit F at 2.  For example, on March 8, 2007, Mr. Hirzel spent 6.3 hours on "Edit reply brief. Read transcript. Read Konig deposition." *Id.* at 2.  Mr. Hirzel would have read the transcript and Mr. Konig's deposition in the ordinary course of the litigation. Editing the Reply brief is the only activity in that entry that would not have been performed if no

discovery dispute existed.[8]  In addition, in August 2006, Mr. DiTomo spent time reviewing the file, reviewing privilege logs and reviewing standards for attorney-client privilege and work product doctrine.  *See* Exhibit F at 2-4.  Plaintiffs cannot establish that absent the discovery dispute, Mr. DiTomo would not have performed these tasks.  Accordingly, time entries on Exhibit F for reading depositions and other ordinary litigation activities should be excluded.

Plaintiffs request fees in excess of $11,000 for over 27 hours of work clearly unrelated to the discovery dispute at issue in the Motions.  *See* Exhibit E.[9]  Most of the time entries on Exhibit E are for correspondence[10] between counsel concerning "discovery issues" that are unrelated to the discovery challenge in the Motions.  The following table is a summary of the unrelated correspondence from Plaintiffs to Defendants attached hereto as Exhibit D:

| Date of Correspondence | Exh. D Page No. | Description of Communication |
|---|---|---|
| 10/6/2006 | 9-11 | Plaintiffs' objections to Defendants' response to their request for production of documents and issues regarding depositions |
| 10/17/2006 | 15-16 | Confirming that Defendants destroyed privileged documents produced by Plaintiffs |
| 10/19/2006 | 18-19 | Issues regarding depositions of Messrs. Arenson, Lamm, Jesselson, Frankel, and Konig |
| 11/8/2006 | 22 | Issues regarding scheduling depositions of lawyers from Fried Frank and Messrs. Stein, Jesselson, and Konig |
| 1/12/2007 | 32 | Defendants' production of documents regarding the Arbor Debt, QACC, Cousy, and the SELK operating agreement |
| 1/19/2007 | 33 | Issues relating to deposition of Mr. Konig |
| 1/22/2007 | 34-35 | Issues relating to depositions of Jesselson and Robbins |
| 2/12/2007 | 36-37 | Issues relating to production of documents by JMP and Krieger deposition |

---

[8] Because Mr. Hirzel did not contemporaneously allocate his time, but instead aggregated all tasks into one entry, it is impossible to determine how much time Mr Hirzel spent editing the brief.  *See* Section IIC, supra.

[9] Exhibit E is a spreadsheet of time entries from D.I. 169-2 that Defendants object to because the time entries are for work unrelated to the discovery dispute in the Motions.

[10] There are two time entries for work other than correspondence that are unrelated to the discovery dispute: (1) on October 2, 2006, Mr. Hurd's time entry includes hours spent on "review opinion...conference re ALH document production," but there was no opinion issued regarding the Motions and Plaintiffs produced ALH's documents so it has no bearing on the Motions; and (2) on April 14, 2008, Mr. Hirzel has a time entry for "Trial," which is clearly unrelated to the Motions.  *See* Exhibit E.

*See* Exhibit D.  Despite the unrelated nature of the correspondence, Plaintiffs have included in the Application time spent drafting the letters and for conferences related to the letters.  Mr. Hirzel also has a time entry for "Read Wood letters" on October 23, 2006, but Mr. Wood's letter from that date was about unrelated discovery issues such as deposition scheduling.  *See* Exhibit D at 20-21.  The time entries on Exhibit E should be disallowed because they are for work unrelated to the Motions.

### B.     Hours Claimed Are Excessive for the Work Performed.

There was nothing novel or particularly complex about the law involved in the Motions.  While reviewing documents to determine if the communications involve attorney-client privilege can be a complex task—particularly with respect to deciphering between legal and business advise—drafting the Motions should have been relatively straightforward since it involved established rules of law relating to the attorney-client privilege.  The lack of specificity in the Application including vague descriptions and the arbitrary allocation of time renders it impossible for Defendants to object to the excessiveness of time spent on specific tasks.  Thus, Defendants are summarily objecting to the excessiveness of the time incurred on each motion.

Plaintiffs spent an excessive amount of time preparing the Motion to Compel and the reply in support of the motion.  Plaintiffs are seeking fees of $47,275 for 147.5 hours they claim were spent preparing a motion to compel and reply in support totaling 44 pages.[11]  *See* Exhibit G.[12]  Essentially, Plaintiffs ask this Court to reimburse them for approximately three hours per page at a cost of $1,074 per page.  The issues addressed in the motion to compel and reply in support are not novel and do not justify spending such an excessive amount of time.

---

[11]  The brief in support of the motion to compel was 24 pages including 11 pages of legal argument and approximately 18 legal citations.  (D.I. 117).  The reply in support of the motion to compel was 20 pages including 17 pages of legal argument and approximately 22 legal citations.  (D.I. 135).

[12]  Exhibit G is a spreadsheet of time entries from D.I. 169-2 from August 2, 2006 through March 12, 2007.  The Motion to Compel was filed on February 1, 2007, and the reply in support of the Motion to Compel was filed on March 12, 2007.

Plaintiffs spent an excessive amount of time preparing the Motion to Supplement. (D.I. 138). On March 23, 2007, Plaintiffs filed a five paragraph Motion to Supplement the Record requesting that portions of Mr. Isaac Neuberger's deposition be included in the Motion to Compel. Plaintiffs seek $2,030 in fees for 5.5 hours to prepare this simple motion. *See* Exhibit H.[13] The excessiveness of the request of approximately three hours per page at a cost of $1,015 per page is particularly outrageous for a paper that contains no legal authority.

Plaintiffs likewise spent an excessive amount of time preparing a letter to the Court identifying 36 documents for *In Camera* review. (D.I. 147) The five-page letter filed by Plaintiffs on April 19, 2007, consisted of a brief introduction and then a list of 36 documents Plaintiffs wanted the Court to review. Plaintiffs seek $2,021 in fees for 6 hours to prepare the letter. *See* Exhibit I.[14] Plaintiffs request of one hour per page at $404 per page for this letter is excessive given the nature of the work involved in identifying the documents.

Plaintiffs spent an excessive amount of time preparing the Motion for Further Relief and for Sanctions (D.I. 153), Response to Defendants Opposition (D.I. 155) and Reply in Support of their Motion for Further Relief and for Sanctions. (D.I. 160). Plaintiffs seek fees of $20,722.50 for 62.2 hours of work between April 25, 2007 and May 22, 2007 for work in preparing a total of 25 pages.[15] *See* Exhibit J.[16] Plaintiffs ask this Court to reimburse them for two and a half hours per page at a cost of $829 per page. As with the Motion to Compel, there was nothing novel or

---

[13] Exhibit H is a spreadsheet of time entries from D.I. 169-2 from March 13, 2007 through March 23, 2007. The Motion to Supplement was filed on March 23, 2007.

[14] Exhibit I is a spreadsheet of time entries from D.I. 169-2 from April 18, 2007 to April 19, 2007. On April 18, 2007, the Court ordered Plaintiffs to identify the 36 documents for *in camera* review by April 19, 2007. On April 19, 2007, Plaintiffs filed a letter identifying the 36 documents.

[15] The Motion for Further Relief and for Sanctions was seven pages including approximately five pages of legal argument and three legal citations. The Response to Defendants Opposition was three pages and included no legal citations. The Reply in Support of their Motion for Further Relief and for Sanctions was fifteen pages including approximately eight pages of legal argument and twelve legal citations.

[16] Exhibit J is a spreadsheet of time entries from D.I. 169-2 from April 25, 2007 to May 22, 2007. On April 25, 2007, the Court ordered Defendants to produce the 36 documents and said Plaintiffs could ask for additional relief. On May 4, the Motion for Further Relief and for Sanctions was filed. On May 22, 2007, the Motion for Further Relief and for Sanctions was fully briefed.

complex about the Motion for Further Relief and for Sanctions. Plaintiffs cannot establish that the time spent is reasonable given the nature of the work performed.

Accordingly, Plaintiffs seek reimbursement for an unreasonable number of hours for the type of work performed, and the Court should deny the Application or substantially reduce the time.

## IV.   Plaintiffs Have Not Met Their Burden of Establishing that the Hourly Rates are Reasonable.

The Application demonstrates a lack of reasonable billing judgment by Plaintiffs' counsel. In order to recover a fee award, the moving party has the burden of proving the attorneys' hourly rates are reasonable in light of the legal services they provided. Here, Plaintiffs have provided no proof as to the reasonableness of their attorneys' hourly rates.

### A.   Plaintiffs Fail to Provide the Court with Sufficient Information to Determine Whether the Hourly Rates are Reasonable.

The reasonableness of hourly rates is determined by the prevailing market rate in Wilmington, Delaware. *Interfaith Community Organization v. Honeywell Intern., Inc.*, 426 F.3d 694, 708 (3d Cir. 2005). The burden is on Plaintiffs to produce evidence of the prevailing rates to show that their counsel's hourly rates are reasonable:

> We have settled that to determine "the prevailing market rates in the relevant community," a court must "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *See Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001) (citations and internal quotations omitted). The party seeking fees "bears the burden of establishing by way of satisfactory evidence, in addition to [the] attorney's own affidavits ... that the requested hourly rates meet this standard."

*Interfaith Community Organization*, 426 F.3d 694 at 708; *see also Evans v. Port Authority of New York and New Jersey*, 273 F.3d 346, 361 (3d Cir. 2001) (quoting *Smith v. Philadelphia Housing Authority*, 107 F.3d. 223, 225 (3d Cir. 1997) ("'The plaintiff bears the burden of

producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case.'")

Plaintiffs have failed to provide any evidence as to the reasonableness of their hourly rates. Plaintiffs do not provide affidavits of other attorneys with similar skills and experience practicing in Delaware. In addition, Plaintiffs have not even supplied the Court with information regarding the experience or skill of the attorneys for which they are seeking attorneys' fees. Accordingly, Plaintiffs have failed to provide sufficient evidence to allow the Court to assess the reasonableness of Plaintiffs' counsel's hourly rates.

Plaintiffs' apparently rely on the fact that "[t]he rates reflected in the Time Sheets are the rates at which the Firm billed its services to Plaintiffs" in an attempt to show that the hourly rates are reasonable. (D.I. 169 at ¶ 3). However, a "claim that a reasonable rate is determined by what an affluent plaintiff would be willing to pay ignores the above standard" and should be rejected. *Lyon v. Whisman*, 1994 WL 827159, *2 (D. Del., December 8, 1994) (holding that plaintiff "failed to meet his burden of establishing that an hourly rate of $350 is reasonable" and reducing the rate to $225).

Accordingly, Plaintiffs have failed to meet their burden of proof with respect to the reasonableness of the hourly rates and the request for fees should be rejected.[17]

**B.    Plaintiffs' Counsel Were Inefficient Given the Hourly Rates Claimed.**

Plaintiffs cannot have it both ways: if the hourly rates claimed are reasonable then they needed to be more efficient. The Third Circuit prohibits "double dipping:"

> An attorney cannot insist on a hefty hourly rate-based on his reputation or familiarity with the applicable law-and then spend an

---

[17] If Plaintiffs, in their reply, provide affidavits and additional information relating to the prevailing market rate in Wilmington, Delaware, Defendants, in the interest of fairness, should be given the opportunity to respond to this new information in a sur-reply.

> inordinate amount of time researching that same law. "Double
> dipping, in any form, cannot be condoned," holds the Third
> Circuit.

*Amico v. New Castle County*, 654 F. Supp. 982, 997 (D. Del. 1987) (quoting *Ursic v. Bethlehem*

*Mines*, 719 F.2d 670, 677 (3d Cir. 1983).

Plaintiffs seek reimbursement for high hourly rates; therefore counsel should have been

efficient. To the contrary, Plaintiffs seek reimbursement for excessive hours in connection with

the Motions. *See* Section III, supra. For example, Mr. Hurd and Mr. Hirzel spent a total of five

and half hours on a one and half page, five paragraph motion to supplement the record which

contained no legal citations. *See* Exhibit H. This inefficient use of time on a simple motion to

supplement does not justify the hourly rates of Mr. Hurd which range from $475 to $525 and Mr.

Hirzel which range from $260 to $355.[18]  Mr. Hurd and Mr. Hirzel both were inefficient with

their time given the amount of their hourly rates; therefore the Court should reduce the "hefty"

hourly rates claimed.

Accordingly, either the number of hours spent must be reduced (*see* section III, supra) or

the hourly rates of Mr. Hurd and Mr. Hirzel should be substantially reduced to adjust for these

inefficiencies.

### C.     Plaintiffs' Counsel Performed Work That Did Not Warrant the Amount of the Hourly Rates.

Plaintiffs' counsel, specifically Mr. Hurd and Mr. Hirzel, performed tasks that could have

been delegated to less experienced attorneys or support personnel; therefore the hourly rate for

these tasks should be reduced. Plaintiffs' counsel should not be compensated at their usual

---

[18] In exhibit A to D.I. 169, Plaintiffs seek reimbursement for two hours of work performed by Mr. Hirzel on October 11, 2006 at a rate of $475/hr. In addition, Plaintiffs seek reimbursement for a half hour of work performed by Mr. Hirzel on March 22, 2007 at the rate of $380/hr. These appear to be errors and the amount for the October 2006 entry should be $520 for two hours of work at Mr. Hirzel's 2006 hourly rate of $260 and the March 2007 entry should be $140 for a half hour of work at Mr. Hirzel's 2007 hourly rate of $280.

hourly rates for performing tasks that did not require the expertise that purportedly justifies their

high hourly rates:

> Another practice that is not condoned is the wasteful utilization of expensive legal talent for work that could be delegated to non-professionals or less experienced people.    Routine tasks, if performed by senior people, should not be billed at their usual rates.  "A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn."

*Amico v. New Castle County*, 654 F. Supp. 982, 997 (D. Del. 1987) (quoting *Ursic v. Bethlehem*

*Mines*, 719 F.2d 670, 677 (3d Cir. 1983); *see also Green v. Baca*, 225 F.R.D. 612, 616 (C.D. Cal.

2005) (stating, "Clearly, when skilled practitioners of notable reputation . . . are engaged in

performing services that are 'not complex' or which involve 'clerical tasks' or other 'simple

matters,' the Court may reduce the hourly rate and/or number of hours requested by counsel.")

(internal citations omitted).

Exhibit L, lists time entries showing that Mr. Hurd and Mr. Hirzel performed tasks that

did not require the expertise that would justify their high hourly rates.  For example, Plaintiffs

seek hourly rates ranging from $260 to $280 for Mr. Hirzel to "[c]olor code new privilege logs

for Motion to Compel," "compile exhibits" for the Motion to Compel, "[i]ncorporate comments

to Motion to Compel," and "[r]eview new privilege documents and compare to [the] privilege

logs."  These are tasks the should have been delegated to support staff such as paralegals or law

clerks.  The amount of education and experience which purportedly justifies an hourly rate of

$280 is not required to color code spreadsheets, compare documents to a list, or to compile

exhibits.  Mr. Hurd, likewise, performed tasks that could have been delegated when he spent an

extensive amount of time on "document review" allegedly related to the Motions.[19]  While it

---

[19] As discussed supra, in Section IIA the description "document review" is wholly inadequate to make a determination as to whether these tasks even relate to the Motions, but if the Court finds that this work does relate to the Motion, Plaintiffs should not be compensated at Mr. Hurd's usual hourly rate.

- 23 -

may be reasonable for a senior partner to charge an hourly rate of $525 to review documents in preparation for trial; it is unreasonable for Mr. Hurd, an experienced attorney, to extensively review documents in preparation of the Motions. Mr. Hurd could have delegated this task to a junior associate or law clerk; therefore Plaintiffs should not be awarded Mr. Hurd's usual hourly rate for the time spent on "document review."

Because Mr. Hurd and Mr. Hirzel performed tasks that did not require the expertise that justifies their hourly rates and could have been performed by less experienced attorneys or support personnel, the hourly rates for the tasks listed in Exhibit L should be substantially reduced.

**V.    Plaintiffs Have Provided Inadequate Documentation to Support Their Claim for Expenses.**

A substantial portion of the $3,767.45 in expenses sought by Plaintiffs is not reimbursable. The majority of these expenses should be disallowed because there is no documentation to substantiate that they were incurred as a result of the discovery dispute at issue in the Motions. For example, Plaintiffs charged $37.60 for research performed by Mr. Hirzel on November 30, 2006, and $ 125.04 for research performed by Ms. Kishpaugh on April 4, 2008. There are, however, no corresponding time entries for research for Mr. Hirzel and no time entries at all for Ms. Kishpaugh. Thus, it is impossible for the Court to determine whether the research costs are related to the Motions.

Moreover, the descriptions in the Application provide insufficient information for the Court to determine if they are reasonable. For example, the research costs provide no description as to the nature of the research or the time spent researching. Moreover, it is unclear from some of the descriptions what was done. For example, on December 18, 2006, there is a charge of $159.00 for "Court Costs-WEST PAYMENT CENTER-FEDERAL RECORD CENTER FEE." It is unclear what this cost is much less whether it relates to the Motions.

Finally, some of the expenses are clearly excessive. For example, on April 25-26, 2007, Mr. Randall, an attorney[20] not previously involved in this litigation, spent $747.95 on research. Although there is no indication from either the time records or the cost records as to the nature of his research, it is likely he was working on the Motion for Further Relief and for Sanctions (D.I. 153) that was filed on May 4, 2007. The eight-page Motion contained only three legal citations. The excessiveness of this charge is further demonstrated by Mr. Hirzel's total research costs of approximately $716 for a seven month period of time.

Plaintiffs have provided insufficient information and documentation to demonstrate that the expenses are related to the Motions and are likewise reasonable. Therefore, Plaintiffs' application for expenses should be denied or reduced.

---

[20] It is unclear whether Mr. Randall was an attorney at the time he performed this work.

**CONCLUSION**

For the reasons set forth above, the Court should deny Plaintiffs' application for fees or, alternatively, substantially reduce the award to an amount that comports with the Court's determination of what is fair and reasonable.

Dated: May 20, 2008

_____
Sean J. Bellew (#4072)
David A. Felice (#4090)
Cozen O'Connor
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013

- and -

Thomas M. Wood, IV
Nichole M. Galvin
Brian M. Boyle
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street, 27th Floor
Baltimore, MD 21202-3201
Telephone: (410) 332-8523
Facsimile: (410) 332-8564
*Attorneys for Defendants*

WILMINGTON\78093\1 069198.000

- 26 -