IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE ALH HOLDINGS, LLC | ) ) ) | Consol. C.A. No. 04-1339-SLR |

**PLAINTIFFS' REPLY MEMORANDUM IN RESPONSE TO
DEFENDANTS' OBJECTION TO PLAINTIFFS'
APPLICATION AND DECLARATION FOR ATTORNEYS' FEES**

A. Gilchrist Sparks, III (#467)
S. Mark Hurd (#3297)
Samuel T. Hirzel (#4415)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Plaintiffs and Counterclaim
Defendants*

May 30, 2008

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

BACKGROUND ............................................................................................................................ 3

ARGUMENT .................................................................................................................................. 9

I.  Plaintiffs Have Satisfied Their Evidentiary Burden Consistent With Third
    Circuit Case Law and Delaware Practice. ............................................................. 9

    A.  The Evidentiary Standard For Fee Petitions In The Third Circuit. ............ 9

    B.  Plaintiffs' Counsel's Fees Are Objectively Reasonable. ......................... 10

    C.  Plaintiffs Satisfied Their Burden Of Showing That Their Fees Were
        Reasonably Incurred In Connection With The Motions. ......................... 12

    D.  Defendants' Efforts To "Nit-Pick" Plaintiffs' Counsel's Time Entries
        Is Misplaced ........................................................................................ 20

    E.  Plaintiffs Are Entitled To the Expenses Claimed. ................................. 22

II. Plaintiffs Are Entitled To The Fees That They Incurred In Establishing The
    Reasonableness Of Their Fees. ........................................................................ 23

CONCLUSION ............................................................................................................................. 25

## TABLE OF AUTHORITIES

Page

CASES

*Aerwey Laboratories, Inc. v. Arco Poloymers, Inc.*,
   90 F.R.D. 563 (N.D. Ill. 1981)                                              23

*Arbitrium (Cayman Islands) Handels AG*,
   1998 Del. Ch. LEXIS 41, at *7 (March 23, 1998)                             13

*Chromalloy American Corp. v. Alloy Surfaces Co.*,
   353 F. Supp. 429 (D. Del. 1973)                                             14

*Cunningham v. City of McKeesport*,
   753 F.2d 262 (3d Cir. 1985)                                              12, 15

*Gorenstein Enterprise v. Quality Care U.S.A.*,
   874 F.2d 431 (7th Cir. 1989)                                               24

*Hall v. Harleysville Ins. Co.*,
   943 F. Supp. 536 (E.D. Pa. 1996)                                         14, 18

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)                                                        10

*Howes*,
   761 F. Supp. at 1197                                                    19, 23

*In re Fine Paper Antitrust Litig.*,
   751 F.2d 562 (3d Cir. 1984)                                             12, 14

*In Re Stauffer Seeds, Inc.*,
   817 F.2d 47 (8th Cir. 1987)                                                23

*Johnson v. Kakvand*,
   192 F.3d 656 (7th Cir. 1999)                                            10, 22

*Judge v. City of Rehoboth Beach*,
   1994 Del. Ch. LEXIS 55 (Del. Ch. 1994)                                     23

*Keenan v. City of Philadelphia*,
   983 F.2d 459 (3d Cir. 1992)                                     12-13, 17, 22

*Lyon v. Whisman*,
   1994 WL 827159 (D. Del. Dec. 8, 1994)                                      19

*Maldonado v. Houstoun*,
   256 F.3d 181 (3d Cir. 2001)                                            10, 23

*Mathis v. Spears*,
   857 F.2d 749 (Fed. Cir. 1988)                                             10

*Matter of Appraisal of Shell Oil Corp.*,
   18 Del. J. Corp. L. 1156 (Del. Ch. 1992)                                  10

*Norman v. Housing Authority of the City of Montgomery*,
   836 F.2d 1292 (11th Cir. 1998)                                          13

*Pawlak v. Greenawalt*,
   713 F.2d 972 (3d Cir. 1983)                                       12, 15, 20

*Public Interest Research Group of New Jersey, Inc. v. Windall*,
   51 F.3d 1179 (3d Cir. 1995)                                           12, 15

*Ranco Indus. Products Corp. v. Dunlap*,
   776 F.2d 1135 (3d Cir. 1985)                                              13

*Rapp v. Cameron*,
   2002 U.S. Dist. LEXIS 2801 (E.D. Pa. Feb. 20, 2002)                       19

*Rode v. Dellarciprete*,
   892 F.2d 1177 (3d Cir. 1990)                                          Passim

*Role Models Am., Inc. v. Brownlee*,
   353 F.3d 962 (D.C. Cir. 2004)                                          17-18

*S.A. v. Riverside Delanco School District Board of Education*,
   2006 U.S. Dist. LEXIS 22303 (D.N.J. Mar. 30, 2006)                        17

*Smith v. District of Columbia*,
   466 F. Supp. 2d 151 (D.D.C. 2006)                             16, 18, 22-23

*Southeast Legal Defense Group v. Adams*,
   657 F.2d 1118 (9th Cir. 1981)                                             23

*Tafeen v. Homestore, Inc.*,
   2005 Del. Ch. LEXIS 41, *aff'd* 2005 Del. LEXIS 462                       20

*Tamari v. Bache and Co.*,
   729 F.2d 469 (7th Cir. 1984)                                             23

*Washington v. Philadelphia Court of Common Pleas*,
   89 F.3d 1031 (3d Cir. 1996)                                              16

iii

**RULES AND STATUTES**

Chancery Court Rule 37 ......................................................................................................... 23

Plaintiffs hereby respond to Defendants' Objections to Plaintiffs' Application and Declaration for Attorneys' Fees (D.I. 172, the "Objection"). Plaintiffs' Application and Declaration for Attorneys' Fees (the "Declaration") was filed to provide the Court with documentary evidence supporting the amount of attorneys' fees incurred in connection with a series of completely successful motions[1] necessitated by Defendants' bad-faith refusal to produce contemporaneous communications – which are inconsistent with and significantly undermine Defendants' litigation position – between Shalom Lamm and others and Isaac Neuberger, the lead named partner in the firm representing Defendants in this action, based upon specious claims of privilege.

Defendants' Opposition, given their conduct in attempting to hide from Plaintiffs and the Court documents detrimental to their case, evinces pure chutzpah. Their Opposition to the award of fees Plaintiffs incurred *and paid* in connection with the Motions reflects a fundamental misconception of Delaware practice and misapplication of legal standards applicable to fee applications in this Court. In short, Plaintiffs' application for $80,305.00[2] in fees associated with the Motions is reasonable based on Plaintiffs' *complete success*, the quality

---

[1]    The filings relevant to the motions included, among others, briefing on Motion to Compel the Class B Parties to Produce Documents Claimed as Privileged or for *In Camera* Inspection and to Continue Certain Depositions (D.I. 116-20, 124, 132, 135); briefing on Plaintiffs' Motion to Supplement the Record with Deposition Testimony Taken After the Close of Briefing on Plaintiffs' Motion to Compel the Class B Parties to Produce Documents Claimed as Privileged or for *In Camera* Inspection and to Continue Certain Depositions (D.I. 138 & 140); Plaintiffs' Identification of Documents Pursuant to April 18, 2007 Order on Plaintiffs' Motion to Compel (D.I. 147 & 149); Defendants' April 25, 2007 email request for emergency relief (no D.I. number); and Plaintiffs' Motion for Further Relief on Plaintiffs' Motion to Compel and for Sanctions (D.I. 153, 154, 155, 157 & 160) (together, the "Motions").

[2]    Plaintiffs have reduced the fees requested by $480 to account for two mathematical errors identified by Defendants in footnote 18 of their Opposition.

1

of the work performed, and the fact that these fees were actually paid by Plaintiffs.  Moreover, Defendants' contention that Plaintiffs did not submit enough information to determine if the fees were incurred in connection with the Motions is inconsistent with decisions of the Third Circuit Court of Appeals and simply ignores the good-faith representation in the Declaration that counsel removed time entries unrelated to the Motions after consulting with the attorneys involved in this action.

Similarly unfounded is Defendants' *ipse dixit* challenge to the reasonableness of Plaintiffs' counsel's standard hourly rates.  The rates included are regular, not premium, rates. Defendants' related arguments challenging the reasonableness of the time devoted to various tasks, moreover, proceed from an obviously false premise.[3]  Defendants caused Plaintiffs to incur fees and expenses that would not have been required if Defendants had complied with their discovery obligations.  Defendants must now reimburse Plaintiffs for that wrongful conduct.

---

[3]     By way of example, Defendants claim that Plaintiffs' counsel devoted six hours to prepare a five page letter, but conveniently ignore the undisputed fact that the time also included review of the privilege logs, consultation among the involved attorneys regarding which documents should be identified in the letter, as well as drafting and editing of the letter for filing with the Court.

2

BACKGROUND

The background surrounding the motions is well documented in prior filings with the Court.  *See, e.g.,* D.I. 153.  A summary is set forth below to demonstrate the specious nature of Defendants' opposition to the $80,305.00 in fees and $3,624.41 in expenses[4] applied for in connection with nearly two years of completely successful motion practice.

Plaintiffs first raised deficiencies in Defendants' privilege assertions with Defendants' counsel shortly after receiving Defendants' *first* privilege logs nearly two years ago. D.I. 119, Ex. E.  After an extensive series of letters and conferences, Defendants produced revised privilege logs and slowly trickled out additional documents that they had previously logged as privileged and refused to produce.  Many of the documents previously withheld as privileged and belatedly produced were *clearly* not privileged.  *See, e.g.*, D.I. 117 at 8-9 & Ex. H. Defendants' counsel withheld documents not because they reflected any legal advice, but because they included inflammatory language.  *See, e.g.*, D.I. 117 at 9 & Exs. I & J (obscene and vulgar emails from Shalom Lamm to Jon Zich regarding George Buchler).  These bad faith assertions of privilege made it clear that Defendants were still trying to sanitize the discovery record.

On February 1, 2007, Plaintiffs filed the motion to compel (D.I. 116, the "Motion to Compel"), seeking to compel Defendants to produce documents reflected in over *1,100 entries* on their then current privilege logs, *inter alia*, on the grounds that:  Neuberger provided business – not legal – advice; Neuberger's communications with Lamm were not privileged

---

[4]    Plaintiffs will reduce the Petition for expenses by the $125.04 incurred on 4/3/08 on the grounds that those expenses were not directly related to Plaintiffs' successful prosecution of the Motions.

because Lamm was not acting in a capacity in which Neuberger was representing Lamm; and Defendants were not entitled to assert privilege over Lamm's communications with Zich – Lamm's partner in the entity that managed ALH prior to the discovery in 2001 of wide-ranging wrongdoing by Lamm, Zich and Hourihan. Defendants promptly capitulated regarding their assertions of privilege over most of the communications between Lamm and Zich. Throughout discovery, however, Defendants stubbornly clung to their privilege assertions over Neuberger's communications, represented these communications to be privileged, and blocked Plaintiffs from inquiring into these communications at depositions.

In connection with briefing the Motion to Compel, Defendants yet again submitted revised logs representing that, notwithstanding the varying and different descriptions of the documents on Defendants' prior privilege logs, the 1,100 entries reflected 263 distinct documents. Although these representations came well after Plaintiffs' counsel was forced to spend many hours wading through the 1,100 unorganized entries on Defendants' earlier privilege logs, Defendants now suggest that they should not be responsible for the fees Plaintiffs incurred in attempting to cut through Defendants' attempts at obfuscation.

On April 18, 2007, the Court granted the Motion to Compel by permitting Plaintiffs to identify 36 documents listed on Defendants' privilege logs for *in camera* inspection and noted that "if the Court determines from a review of this sample of documents that the claim of privilege has been inappropriately asserted, the court shall grant further relief." D.I. 145.

On April 25, 2007, upon reviewing the 36 documents *in camera*, the Court ordered that Defendants produce *all 36 documents*, holding that (1) the documents reflected business, not legal concerns, (2) Neuberger was acting as Lamm's business partner, not a lawyer,

in connection with many of the communications, and (3) that only a "few sentences. . . arguably did relate to legal advice." D.I. 151.

Defendants refused to accept defeat and emailed an emergency request for "clarification" of the Court's ruling, effectively granting themselves a stay of this Court's Order. On May 3, 2007, over a week after the Court's ruling and two business days before the start of trial as originally scheduled, Defendants belatedly complied with the Court's Order to produce the 36 documents, but purported to preserve their right to recall the documents if the Court were to reconsider its prior rulings. Among the documents produced were emails that caused Plaintiffs to amend their pleadings to add a claim for bad-faith litigation based on the fact that Lamm and Neuberger had conceived their plot to sue Shamrock nearly *one year before* any of the decisions that formed the bases of their claims were made. *See* PX 148 (August 6, 2002 email between Lamm and Neuberger, more than ten months before the Supervisory Board's June 26, 2003 decision to sell ABI, discussing suing Shamrock).

On May 4, 2007, the Court denied Defendants' "emergency request" for reconsideration, and that same day, pursuant to the Court's April 18 and 24, 2007 Orders, Plaintiffs requested four forms of further relief: (1) immediate production of the remainder of the documents on Defendants' privilege logs (subject to three narrow exceptions for which a legitimate claim of privilege may exist); (2) continued depositions of Messrs. Arenson and Lamm; (3) an award of Plaintiffs' attorneys' fees and expenses in connection with the Motion pursuant to FRCP 37(a)(4)(A); and (4) leave to amend the pre-trial order to include the issue of whether Plaintiffs' are entitled to attorneys' fees and costs incurred in the litigation under the bad faith exception to the American rule. D.I. 153 (the "Motion for Further Relief").

On May 7, 2007, Defendants filed a written response to the Motion for Further Relief but requested the opportunity to brief the issue more fully at a later date. D.I. 154. That same day, Plaintiffs filed a reply in further support of their Motion for Further Relief. D.I. 155.

On May 9, 2007, the first scheduled day of trial, counsel for Defendants indicated that the Motion for Further Relief put him in a possible conflict position and that he could not continue with the trial until after he spoke with his malpractice insurance carrier, clients and partners – highlighting the importance of the issues raised in connection with the Motions. D.I. 156. In light of Defendants' counsel's stated position, the Court postponed the trial. D.I. 156. Counsel for Defendants then requested a second bite at the apple in the form of the opportunity to argue the Motion to Compel, and after oral argument Defendants submitted the remainder of the disputed documents for *in camera* inspection. D.I. 156. Defendants continued to fight – opposing Plaintiffs' Motion for Further Relief by attempting to reargue the Motions and claiming that their privilege assertions were "substantially justified." D.I. 157. The attempt at revisionist history presented in Defendants' opposition, however, was not successful.

On May 15, 2007, after indulging Defendants' request that the Court review *in camera* all 227 of the documents submitted by Defendants, the Court entered an Order requiring Defendants to produce *all but one of the remaining 227 disputed documents reflected on their privilege logs*. D.I. 158.

Defendants' assertion of privilege over the 226 disputed documents that they were compelled to produce suffered from many of the same inadequacies that Plaintiffs had identified previously, including the lack of *any* legal advice in the communications. *See, e.g.,* PX 395 (email from Arenson regarding plans to travel to Los Angeles), PX 435 (memorandum from Shalom Lamm reflecting conversation with Bill Lanius in which Lanius indicated that the sale of

ABI "had a native logic to it"), PX 446 (email from Lamm to Konig regarding potential sale proceeds and applying a 4.5 multiple of EBITDA) & PX 468 (email chain reflecting conversation with Rudy Stern and application of a 5x multiple of EBITDA).  Many of these documents were also highly detrimental to Defendants' position in this litigation.[5]  For example, in an April 4, 2003 email to Konig, Jesselson and Neuberger relating a conversation with George Buchler, Arenson, the Class B Representative on ALH's Supervisory Board, stated:

> [Buchler] explained that since the sale of Jacksonville is going ahead, he simply thought it proper to offer the B's a final chance to buy out the A's.  He explained that the offers are all about $20 million for equity, subject to different initial payment schedules. He always was aware of the 2.7 ALHII owes to Atlantic.
>
> He expects the A's will clear 5 million (and the B's in proportion) from Jacksonville and whatever Memphis and Charlotte will net will be in addition.
>
> **I told him that the B's were not interested in going above 3 million, and that he should go ahead with the sale**.

DX 293 (emphasis added).  This clear admission – only two months before the sale of ABI in Jacksonville that Neuberger and Defendants now claim was a breach of fiduciary duty – further evidenced the bad-faith underlying Defendants' litigation position.  Similarly, in a July 24, 2002 email, at the same time that the B's were purportedly agreeing to offer to acquire the A's interests in ALH, Lamm provided a glimpse of candor when he related to Neuberger that Konig, the "money" behind SELK, "told me in no uncertain terms that he has no intention of adding a penny to his investment."  *See* PX 419.  Other withheld documents evidenced Neuberger's

---

[5]     Given the unprecedented approach to valuation taken by Defendants' expert, it is not surprising that Defendants attempted to hide their own witnesses' contemporaneous use of 4.5x and 5.0x multiples of EBITDA to value ALH.

substantial involvement in Lamm's personal dispute with Shamrock and effort to concoct claims against Shamrock. *See, e.g.*, PX 393, PX 462 & PX 464.

On March 31, 2008, the Court granted Plaintiffs' Motion for Further Relief, finding that "[i]t is appropriate for defendants to pay plaintiffs their attorney fees and expenses," ordering Defendants "to make both Arenson and Lamm available for further deposition in Delaware" and ordering Plaintiffs to "submit for the court's review (with copies to defendants) the underlying documentation for the attorney fees and costs claimed by plaintiffs." D.I. 165.

On April 22, 2008, in accordance with the Court's order to provide the underlying documentation for the attorney fees and costs claimed by Plaintiffs, Plaintiffs' counsel submitted a two-page declaration attaching the time diaries and disbursements relating to the Motions that were sent to Plaintiffs and paid by Plaintiffs (the "Declaration", D.I. 169). After requesting an extension and approximately one month after the Declaration was filed, Defendants responded with a 26 page brief in opposition (the "Opposition", D.I. 172).

<u>ARGUMENT</u>

I.    PLAINTIFFS HAVE SATISFIED THEIR EVIDENTIARY
      BURDEN CONSISTENT WITH THIRD CIRCUIT CASE LAW
      <u>AND DELAWARE PRACTICE.</u>

Plaintiffs' concern that Defendants were hiding behind a false privilege proved correct. Defendants attempted to shield harmful documents – documents that substantially undermined their claims and that led Plaintiffs to seek leave to amend the pleadings to include a claim for bad-faith litigation – from discovery. Defendants' obstinacy – or desire to protect Neuberger – required Plaintiffs to expend substantial resources to confirm their suspicions. Defendants cannot now escape the consequences of their actions by second-guessing the Court's conclusions, criticizing the efficiency of Plaintiffs' counsel's highly successful efforts and nit-picking Plaintiffs' counsel's time sheets.

A.    The Evidentiary Standard For Fee Petitions In The Third
      <u>Circuit.</u>

In *Rode v. Dellarciprete*, the seminal case on calculating attorneys' fees in the context of a prevailing party in a civil rights action, the Third Circuit Court of Appeals rejected arguments nearly identical to those made by Defendants in their Opposition. *See* 892 F.2d 1177, 1189 (3d Cir. 1990). In reversing the district court's decision to reduce a fee application on the basis of a failure to break down specific tasks and issues in a fee petition, the Third Circuit Court of Appeals declined to impose such an "onerous burden" on the fee petitioner and held that a fee applicant must present

> 'some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates.' However, 'it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted, nor the specific attainments of each attorney.' A fee petition is required to be specific enough to

9

allow the district court to 'determine if the hours claimed are unreasonable for the work performed.'

*Id.* at 1190. The Declaration satisfies this standard.

B. <u>Plaintiffs' Counsel's Fees Are Objectively Reasonable.</u>

Plaintiffs' complete success on the Motions necessitated by Defendants' bad-faith conduct fully justifies the $80,305 in attorneys' fees requested. The United States Supreme Court has noted that, when evaluating a prevailing party, contingent fee application, "the most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). "The result is what matters." *Id. See also Matter of Appraisal of Shell Oil Corp.*, 18 Del. J. Corp. L. 1156, 1166, 1167 (Del. Ch. 1992); *Johnson v. Kakvand*, 192 F.3d 656, 662 (7th Cir. 1999) (noting that "the degree of success a plaintiff obtains is one of the most important factors to be considered in determining whether the attorneys' fees requested [] are reasonable" and affirming fee award and sanctions on that basis). "Where, as here, a prevailing party 'has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended....'" *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988). *See also Maldonado v. Houstoun*, 256 F.3d 181, 185 (3d Cir. 2001) (noting that "plaintiffs presented an excellent case and a high quality brief. Accordingly, they are entitled to all hours "reasonably expended on the litigation.").

Defendants were ordered to produce 262 of 263 documents subject to the Motion to Compel. To get there, however, Plaintiffs were forced to, among other things: slug through over 1,100 entries on Defendants' disorganized privilege logs (which were later revised requiring additional work by Plaintiffs' counsel); repeatedly point out deficiencies to Defendants' counsel;

analyze documents that were belatedly produced as they trickled in; adjust their motion papers based on the newly produced documents; and make numerous filings with the Court.[6]  Over the course of 22 months, Plaintiffs' counsel spent 241.7 hours (over half of which was by associates) in connection with Motions that proved critically important to obtaining a complete factual picture from Defendants.  For example, Neuberger did not recall that he and Lamm drafted correspondence to Arenson in February 2002 seeking relief from Lamm's obligations to ALH and a better deal on Lamm's "back end" until his recollection was refreshed with a document that was ordered to be produced after his deposition.  *See, e.g.* PX 461, PX 456 & PX 428.  In addition, Lamm's role in putting Neuberger in contact with Arenson and other B investors after Lamm's wrongdoing had been exposed, and the B's decision to sue Shamrock nearly one year before any of the actions giving rise to this litigation would not have been discovered had Plaintiffs not pursued the Motions.

In fact, the outcome of the Motions was so critical that when Lamm and Neuberger's conspiracy was revealed, it caused Defendants' counsel to seek relief from the original trial schedule so that he could confer with his insurance carrier, partners and clients.  In short, the diligent, quality work by Plaintiffs' counsel to ferret out the withheld documents was fully justified given the critical role many of those documents played in the trial of the case.

---

[6]    Defendants' efforts to spin the past two years of motion practice as a simple area of law and a "relatively straightforward" exercise while at the same time highlighting the supposed "complex task" that they faced with respect to the privilege quagmire that Neuberger and Lamm created (Opposition at 18) is belied by a cursory review of the docket in this action.

C.    Plaintiffs Satisfied Their Burden Of Showing That Their Fees Were Reasonably Incurred In Connection With The Motions.

The $80,305 in attorneys' fees claimed in connection with the series of 10 filings necessary to prosecute the Motions is fully supported by the contemporaneous documentation provided in the Declaration.

1.    Plaintiffs' Counsel's Hourly Rates Are Reasonable.

"The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate." *Public Interest Research Group of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995).  Third Circuit "caselaw has recognized that billing rates are usually reflective of market rates.  'The value of an attorney's time generally is reflected in his normal billing rate.'" *Keenan v. City of Philadelphia*, 983 F.2d 459, 475 (3d Cir. 1992) (quoting *Lindy Bros. Builders, Inc. v. Am. Radiator and Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973)).  *See also See, e.g., In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 591 (3d Cir. 1984) ("Our premise has been that the reasonable value of an attorney's time is the price that time normally commands in the marketplace for legal services in which those services are offered."); *Public Interest Research Group of New Jersey*, 51 F.3d at 1185 (noting that attorney's usual billing rate is the "starting point" in determining a reasonable hourly rate); *Cunningham v. City of McKeesport*, 753 F.2d 262, 267 268 (3d Cir. 1985) (noting that "an attorney's time is generally reflected in his normal billing rate" and adopting firm's regular billing rates for purposes of lodestar calculation); *Pawlak v. Greenawalt*, 713 F.2d 972, 979 (3d Cir. 1983) (affirming use of counsel's assertions of prevailing hourly rates and noting that "[t]his court has determined that the value of an attorney's services is generally measured in his billing rate.").

The Third Circuit has also noted that "'[a] judge is presumed knowledgeable as to the fees charged by attorneys in general and as to the quality of legal work presented to him by particular attorneys.'  For this reason, the expert assistance that might be necessary when assessing the reasonableness of charges by other professionals is not required in determining reasonable attorneys' fees." *Ranco Indus. Products Corp. v. Dunlap*, 776 F.2d 1135, 1140 (3d Cir. 1985) (quoting *Lindy Bros.*, 487 F.2d at 169).  It cannot reasonably be disputed that this Court is particularly well acquainted with the reputation, abilities, and quality of legal work of Plaintiffs' counsel in this action.

The fact that Plaintiffs paid their counsel's bills is itself evidence of the reasonableness of Plaintiffs' counsel's rates.  This is not a case where Plaintiffs' counsel was working on a contingency fee basis and the Court must guess at what would be an appropriate hourly rate if the time had been billed on a per hour basis.  *See Keenan*, 983 F.2d at 474 (emphasizing that the case did not involve a not-for profit law firm seeking market rates for its services).  Plaintiffs' counsel billed at their standard hourly rates and Plaintiffs paid their attorneys on an ongoing basis, with full knowledge of the tasks for which they were billed, and with no guarantee of success.  Declaration ¶ 8.  This is strong evidence of the reasonableness of the attorneys' fees.  *Arbitrium (Cayman Islands) Handels AG*, 1998 Del. Ch. LEXIS 41, at *7 (March 23, 1998) (noting that "Mr. Vendel agreed to pay fees at the hourly rates charged by Skadden, Arps regardless of the outcome, and he actually paid those fees.  That Mr. Vendel agreed to do this with no contingency arrangement, and despite the considerable risk that the fees would be sizable even though he might lose the case, evidences his belief that the fees he incurred were reasonable."), *aff'd*, 720 A.2d 542 (Del. 1998); *Norman v. Housing Authority of*

*the City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1998) (recognizing that clients are generally economically rational and will not pay for unreasonable legal fees).

> Indeed, this Court has expressly noted that:

> [t]he fee contract between the defendants and their attorney must be given considerable weight, although the Court is not bound by it. If it appears that the hourly rate charged is within a range normally charged for the defense of a patent infringement suit by attorneys of comparable experience and expertise, the Court will look no further. Only if the evidence reveals that the rate actually charged is abnormally high or abnormally low will the Court base an attorney fee award on an hourly rate at variance with the bill for legal services that was actually rendered to the client.

*Chromalloy American Corp. v. Alloy Surfaces Co.*, 353 F. Supp. 429, 431 (D. Del. 1973) (concluding that "no evidence was adduced to show either that the defendants' counsel deliberately held their hourly rate below their normal and usual billing charges, or that they deliberately padded their statements in anticipation of an application for attorney fees"). Defendants have not presented any evidence to show that Plaintiffs' counsel's fees, which were billed to and paid by Plaintiffs, and incurred in an important and completely successful series of motions, were unreasonably high. In these circumstances, the market evidence of the reasonableness of Plaintiffs' counsels' fees and the Court's familiarity with Plaintiffs' counsel is sufficient to establish the reasonableness of counsel's rates.[7]

---

[7] Defendants do not point to any evidence suggesting that the rates billed to and paid by Plaintiffs were *un*reasonable for a firm providing the services of Morris, Nichols, Arsht & Tunnell LLP or the attorneys involved in this case based on their skill, experience and reputation. Defendants argue that affidavits from other attorneys in comparable practices are necessary to establish market rates, Opposition at 20-21, while ignoring cases that indicate such affidavits are not required. *See, e.g.*, *Hall v. Harleysville Ins. Co.*, 943 F. Supp. 536, (E.D. Pa. 1996) (noting that "[i]n the absence of such affidavits, however, the petition does not fail (as Harleysville claims) but, rather, the 'district court must exercise discretion in fixing a reasonable hourly rate.'"); *In re Fine Paper*, 751 F.2d at 591 ("Our
(continued . . .)

2.    Plaintiffs' Counsel Billed Efficiently.

Defendants contend that Plaintiffs' counsel billed at "Michelangelo" rates for "painting a farmer's barn." Opposition at 23. This contention however, is belied by their own data compilation at page five of their Opposition, a copy of which is reproduced below:

| Timekeeper | Hours Claimed | Hourly Rate Range | Total |
|---|---|---|---|
| A. Gilchrist Sparks III | 9.8 | $600 - $675 | $6,313.50 |
| Alan J. Stone | 5.0 | $600 | $3,000.00 |
| Julia Heaney | 0.2 | $475 | $95.00 |
| S. Mark Hurd | 55.4 | $475 - $525 | $27,352.50 |
| Samuel T. Hirzel II | 133.0 | $260 - $355 | $$37,244.00 |
| John P. DiTomo | 22.2 | $245 | $5,439.00 |
| Carol N. Powell | 0.4 | $175 | $70.00 |
| Karl Randall | 15.7 | $160 | $2,512.00 |
| **Total** | **241.7** | | **$82,026.00** |

Defendants' chart reflects a model hierarchical structure among the attorneys at Morris Nichols. Morris Nichols associates did over 70% of the hourly work on the Motions. Mr. Hirzel worked 133 hours and on the Motions and delegated 37.9 hours to more junior associates, Messrs.

---

(. . . continued)

premise has been that the reasonable value of an attorney's time is the price that time normally commands in the marketplace for legal services in which those services are offered."); *Public Interest Research Group of New Jersey*, 51 F.3d at 1185 (noting that attorney's usual billing rate is the "starting point" in determining a reasonable hourly rate); *Cunningham,* 753 F.2d at 267 & 268 (noting that "an attorney's time is generally reflected in his normal billing rate" and adopting firm's regular billing rates for purposes of lodestar calculation); *Pawlak,* 713 F.2d at 979 (affirming use of counsel's undocumented assertions of prevailing hourly rates and noting that "[t]his court has determined that the value of an attorney's services is generally measured in his billing rate."). Plaintiffs do not believe that such affidavits are necessary here where: (1) the Motions were important and completely successful; (2) the fees were paid by the client; (3) the Court is very familiar with Plaintiffs' counsel; and (4) Defendants failed to submit any evidence that the rates charged are unreasonable. In the event the Court concludes such additional materials would be helpful, Plaintiffs are prepared to submit evidence demonstrating comparable hourly rates by lawyers with firms similar to Plaintiffs' counsel.

DiTomo and Randall. Mr. Hurd and Mr. Stone (both partners) worked 60.4 hours in connection with the Motions. Mr. Sparks (a senior partner) worked 9.8 hours in connection with the Motions. In light of their own chart, Defendants' charge that Plaintiffs' counsel engaged in inefficient billing of routine work by senior attorneys rings hollow.

Defendants' contention that Plaintiffs' counsel should have delegated tasks such as "color code new privilege logs for motion to compel" and "review new privilege documents and compare to privilege logs" for the Motion to Compel is also misplaced. Opposition at 23. These were not tasks that could be effectively delegated given Defendants' production of inconsistent and misleading privilege logs containing over 1,100 entries which required legal judgments and determinations that Defendants themselves characterize as a "complex task." Opposition at 18. Similarly, comparing belatedly produced documents to the descriptions on Defendants' privilege logs – one of the key points underlying the Motion to Compel and Motion for Further Relief – was not a task that could be delegated to paralegal or secretaries because the entries were, by Defendants' own admission, inconsistent and duplicative. "This kind of second guessing is neither useful nor realistic in evaluating the reasonableness of hours that were spent…" *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 159 (D.D.C. 2006).

      3.      Plaintiffs' Counsel's Time Sheets Provide The Requisite Specificity For The Court To Make Its Reasonableness Determination.

The Third Circuit Court of Appeals has cautioned against application of "too exacting" a standard of specificity for fee petitions. *Washington v. Philadelphia Court of Common Pleas*, 89 F.3d 1031, 1038 (3d Cir. 1996); *Rode*, 892 F.2d at 1189. In *Rode*, the Court of Appeals held that an application for attorneys' fees containing a list of "time devoted to the action by each attorney and law clerk/paralegal with a general indication of the legal issue involved" by day (and with respect to some bills by month), was "very specific" and enabled to

16

district court to make its determination that the feels claimed were not unreasonable. *Id.* at 1190-91.

Plaintiffs' counsel's Declaration provides the best contemporaneous evidence of the fees that Plaintiffs incurred in connection with the Motions, with detailed time diaries broken down by day and the tasks performed specified. *See Keenan*, 983 F.2d at 472 (noting that "'[c]ontemporaneously recorded time sheets are the preferred practice.'"). This is consistent with the practice of producing a computer-generated time sheet that provide[] 'the date the activity took place' that the Third Circuit has found sufficient in *Keenan*, *Washington*, and *Rode* and is sufficient evidence for the Court to make its reasonableness determination. *See S.A. v. Riverside Delanco School District Board of Education*, 2006 U.S. Dist. LEXIS 22303, at *24-25 (D.N.J. Mar. 30, 2006) (finding that computer printouts listing billed activities in chronological order and including a general description, date and duration for each entry provide "'enough information as to what hours were devoted to various activities by whom' for the Court to find that they are reasonable").

Defendants contend that Plaintiffs' fee application should be denied entirely or cut by more than half (by $44,105.50) because Plaintiffs' counsel allegedly "block billed" their clients and made it impossible to obtain a precise allocation of time spent on the Motion. Opposition at 11 & Ex C.[8] For a number of reasons, however, counsel's billing methodologies

---

[8]    Defendants cite *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004) for the proposition that the Court can reduce requested hours because "block billing" makes it difficult to evaluate reasonableness. *Role Models*, however, was recently distinguished on the grounds that it was clear from that opinion that the Court of Appeals was "outraged by a fee petition that was, by any standard, extraordinarily high" for "the type of garden variety administrative law matter that major Washington law firms handle routinely" and that "involved no discovery, no travel, no evidentiary hearings, no uncontested facts, and no petitions for rehearing" and imposed a "drastic 50% across-the (continued . . .)

are not the type of "block billing" that prevents the Court from concluding that the fees requested are reasonable.

First, as explained above, Plaintiffs' counsels' fee application is objectively reasonable in light of the success attained and the importance of the Motion to Plaintiffs' case. Minute by minute precision is not required under Third Circuit precedent. Indeed, in *Rode* the Court of Appeals noted that "[a]ggregating tasks and hours by day, while not the best method of listing hours expended, does not in this case prevent review by the district court" and did not reduce the fee petition for lack of specificity. *Rode*, 892 F.2d at 1191. "In examining [a] fee petition and evaluating the reasonableness of the hours claimed, it is essential for the trial Court to be practical and realistic about how lawyers actually operating in their day-to-day practice.... Trial Courts must recognize how lawyers work and how they notate their time. It must be remembered that the ultimate inquiry is whether the total time claimed is realistic." *Smith,* 466 F. Supp. 2d at 158 (declining to reduce hours claimed based on alleged "block billing"). *See also Hall*, 943 F. Supp at 544 (same).

Plaintiffs have submitted the best contemporaneous evidence of their time in the form of the Declaration. The time diaries attached to the Declaration are in the form that they

_____

(. . . continued)
    board reduction in the number of hours of legal work included in the award." *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 157 (D.D.C. 2008). In *Smith*, the Court declined to reduce the fees based on "block billing" noting that "[t]rial Courts must recognize how lawyers work and how they notate their time. It must be remembered that the ultimate inquiry is whether the total time claimed is reasonable." *Id.* at 158. Here, the Motions were time consuming, spanned nearly two years, are supported by contemporaneous billing records based on one-tenth hour increments, and the fee requested is objectively reasonable. Defendants nonetheless argue it would be appropriate to reduce Plaintiffs' fee application by more than the "drastic" cut imposed in *Role Models*, an argument that is supported neither by law nor logic.

were sent to Plaintiffs, who paid their bills without discount, and were prepared at a time when there was no reason to allocate separately, for example, time devoted to legal research on the Motion from time devoted to drafting the Motion.  Moreover, Plaintiff's counsel's time records are as (and in many case much more) detailed than the statements approved by the Third Circuit in *Keenan, Washington* and *Rode*.  Indeed, even "reconstructed time records" are adequate to support a fee petition when there are no contemporaneous time diaries from which to make a reasonableness determination.  *Rapp v. Cameron*, 2002 U.S. Dist. LEXIS 2801, at *23 (E.D. Pa. Feb. 20, 2002).

In addition, the time was allocated based on a good faith estimate by Delaware attorneys who were intimately involved in the proceedings after conferring with the other attorneys whose time was at issue, and in a circumstance where time is billed in tenth of an hour increments.  This Court has previously accepted such good faith efforts to allocate time after the fact in similar circumstances.  *See Lyon v. Whisman*, 1994 WL 827159, at *4 (D. Del. Dec. 8, 1994) (accepting counsel's effort to compensate for billing methodology of rounding to the nearest half hour by subtracting one-quarter of an hour from each entry in the application); *Howes*, 761 F. Supp. at 1197 (accepting counsel's effort to provide an allocation of fees between two matters when only one of them was subject to the fee petition and concluding that that allocation was reasonable).  Defendants' suggestion that the Court should eliminate the time entirely, moreover, is gross overreaching and flatly inconsistent with Third Circuit law:

> Total denial of requested fees as a purely prophylactic measure,
> however, is a stringent sanction, to be reserved for only the most
> severe of situations, and appropriately invoked only in very limited
> circumstances. Outright denial may be justified when the party
> seeking fees declines to proffer *any* substantiation in the form of
> affidavits, timesheets or the like, or when the application is grossly
> and intolerably exaggerated, or manifestly filed in bad faith.

*Pawlak*, 713 F.2d at 978 (emphasis added).

D.    Defendants' Efforts To "Nit-Pick" Plaintiffs' Counsel's
Time Entries Is Misplaced.

Delaware courts "have historically insisted upon high standards for lawyers practicing before them and have concomitantly thought it unwise to attempt to micromanage the way those lawyers practiced through detailed supervision of their fee requests." *Tafeen v. Homestore*, Special Master Report (February 24, 2005), adopted by *Tafeen v. Homestore, Inc.*, 2005 Del. Ch. LEXIS 41, *aff'd* 2005 Del. LEXIS 462.   Here, Plaintiffs' counsel submitted an affidavit with the best contemporaneous evidence of the fees Plaintiffs actually incurred in connection with the Motions and made good faith allocations to the extent that it was required. Defendants do not contend that any of those allocations were fraudulent or even aggressive, but instead contend that they should be denied because they were not sufficiently detailed to show that the fees were reasonably incurred in connection with the Motions.  Opposition at 8-10.

Defendants' nit-picking is misplaced.  For example, Defendants contend that Plaintiffs' counsel's time descriptions are not sufficiently descriptive to determine that they were incurred in connection with the Motion.  Opposition at 8.  Defendants ignore entirely, however, that those entries correspond temporally with items related to the Motions on the docket and fall squarely within the times that Plaintiffs' counsel would have been, and were, focusing on the Motions.

Defendants also contend that "several time entries consist of legal services that necessarily would have been performed on Plaintiffs' behalf regardless of the underlying discovery challenge" and seek arbitrarily to cut the fees by 35% ($27,905.50) on that basis. Opposition at 2, 15 & Ex. F.  Of course, any motion that entails the review of depositions or documents involves some work that might also be done in other contexts.  Tasks like "document

review" or "review of deposition" are often conducted with reference to specific correspondence or briefs as they were here. In addition, Defendants conveniently ignore the fact that they trickled out documents previously withheld as privileged -- without any good faith basis for asserting privilege -- throughout the dispute and many of those documents factored prominently into the Motions. For example, the Opening Brief on the Motion to Compel (D.I. 117) includes multiple lists describing the documents previously withheld as privileged and attaches a compendium of those documents as Exhibits H-K. Plaintiffs' counsel also "reviewed documents" in drafting Plaintiffs' Motion for Further Relief on Plaintiffs' Motion to Compel and for Sanctions and included lists describing a number of those documents. D.I. 153 at 4. As Plaintiffs' counsel represented in the Declaration, the fees applied for were incurred in connection with the Motions. Defendants have provided no basis to contradict that sworn representation.

Defendants' suggestion that it is necessary to correct for the "efficiencies" of being able to use the review of documents for multiple purposes after the disputed documents were produced is both unsupported and simply ignores the inefficiencies that Defendants caused by failing to comply with their discovery obligations in good faith in the first instance. For example, Plaintiffs would have preferred to have all of the disputed documents before taking Lamm and Arenson's depositions the first time. With the benefit of the disputed documents, Plaintiffs would have had fewer factual gaps to fill in the background of the dispute and Plaintiffs could have focused on preparing for cross examinations rather than spending significant time during trial on discovery of facts known only to Defendants. Obstructive and

persistent baseless conduct by an opponent is itself relevant to determining the reasonableness of a fee petition.[9]  *See Johnson*, 192 F.3d at 662; *Smith*, 466 F. Supp. 2d at 157.

Defendants also challenge legal research time by two junior associates, Messrs. DiTomo and Randall, because they question, without any factual basis, whether such research was reasonable.  Messrs. DiTomo and Randalls' *only* involvement in this litigation involved research that was incorporated into the Motions.  Thus, there can be no dispute that the time was incurred in connection with the Motions.  Defendants' contention that such research might be excessive, moreover, is flatly inconsistent with their argument that more work should have been delegated to junior attorneys.  Finally, this work was billed to Plaintiffs and paid without dispute at a time when there was no indication that Plaintiffs would be awarded fees in connection with the Motions, again providing strong evidence of reasonableness.

E.      Plaintiffs Are Entitled To the Expenses Claimed.

Defendants also argue that Plaintiffs' expenses should be disallowed because Defendants cannot "substantiate" them with documentary evidence.  The expenses claimed were actually incurred and billed to Plaintiffs as reflected in the Declaration.  Moreover, a review of the expenses shows that they match temporally with attorney time spent in connection with the Motions.  Accordingly, Plaintiffs are entitled to reimbursement of the expenses claimed.

---

[9]      In their Opposition, Defendants specifically point to an October 6, 2006 letter as "address[ing] only issues pertaining to document production and depositions." Opposition at 9.  Defendants, however, too quickly discount the good faith representation of counsel in the Declaration.  Without delving into privilege or work product, counsel can represent that earlier versions of the letter included an additional three paragraph section titled "Privilege Issues" that was later used in connection with the privilege dispute.  Inclusion of such time is appropriate.  *See Keenan*, 893 F.2d at 474 (noting that testimony from an arbitration proceeding that was later used at trial was properly included in the fee petition).

II.    PLAINTIFFS ARE ENTITLED TO THE FEES THAT THEY
       INCURRED IN ESTABLISHING THE REASONABLENESS OF
       THEIR FEES.

Plaintiffs are also entitled to reimbursement of the attorneys' fees incurred in litigating the reasonableness of the fees to be awarded. *See Aerwey Laboratories, Inc. v. Arco Poloymers, Inc.*, 90 F.R.D. 563, 565–66 (N.D. Ill. 1981) (noting Rule 37(a) sanctions "should encompass all expenses, whenever incurred . . . ." and awarding fees incurred in connection with obtaining the award of expenses on the Rule 37 motion); *In Re Stauffer Seeds, Inc.*, 817 F.2d 47, 50 (8th Cir. 1987). "The Rule awards expenses 'caused by the failure' of the disobedient party to comply with a court order." *Tamari v. Bache and Co.*, 729 F.2d 469, 475 (7th Cir. 1984). Failure to award fees-on-fees could greatly offset the very award the prevailing party obtained and undermines the policy considerations justifying attorneys' fees for sanctionable discovery conduct. *Id.* (allowing fees and expenses incurred in defending award of sanctions on appeal). *See also Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1126 (9th Cir. 1981).

Fees incurred in connection with preparing and briefing a fee petition are routinely granted in the Third Circuit and elsewhere. *See, e.g., Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990) (including at least 35 hours for time incurred in preparing fee petition); *Maldonado*, 256 F.3d at 188 (awarding 12.7 hours in connection with a fee petition); *Howes*, 761 F. Supp. at 1200-01 (awarding fees including 204.5 hours spent on the fee petition); *Judge v. City of Rehoboth Beach*, 1994 Del. Ch. LEXIS 55 (Del. Ch. 1994) ("Plaintiffs are entitled to an award for charges incurred from the time of the filing of the complaint, including reasonable hours spent in preparation thereof, up to the time the court awards favorable judgment, and *including time spent on a petition for attorneys' fees*."); *Smith v. District of Columbia*, 466 F. Supp. 2d at 159 (D.D.C. Dec. 19, 2006) (including 84 hours incurred in connection with fee petition and supporting brief in fee award).

23

"There is a time to fight and a time to quit… it is plain that most of the [fees that Defendants] must pay is due to their own obduracy." *Gorenstein Enterprise v. Quality Care U.S.A.*, 874 F.2d 431, 438 (7th Cir. 1989) (awarding fees on appeal for a meritless appeal). Defendants could and should have ended this fight many months ago.  Defendants repeatedly made bad faith assertions of privilege in an attempt to hide from Plaintiffs and from the Court the conspiracy of Lamm and Neuberger, nearly a year before the sale of ABI, to try to set up Shamrock for the claims they have asserted.  The fees that Plaintiffs have been awarded for Defendants' sanctionable conduct during discovery in this action should not be diminished by their obduracy.

<u>CONCLUSION</u>

For the forgoing reasons, Plaintiffs' Application For Attorneys' Fees Incurred In Connection With Plaintiffs' Motion For Further Relief On Plaintiffs Motion To Compel And For Sanctions should be granted in the amount requested ($80,305.00 in fees and $3,624.41 in expenses) plus $18,746.00 in fees and expenses[10] incurred in connection with the Motion to date.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Samuel T. Hirzel*

A. Gilchrist Sparks, III (#467)
S. Mark Hurd (#3297)
Samuel T. Hirzel (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
*Attorneys for Plaintiffs and Counterclaim
Defendants*

May 30, 2008

2338318.1

---

[10]     Additional time sheets reflecting attorneys' fees incurred in connection with this reply are attached as Exhibit A.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 30, 2008, I electronically filed the foregoing document

with the Clerk of Court using CM/ECF, which will send notification of such filing to the following:

> Sean J. Bellew
> David A. Felice
> Cozen O'Connor
> Chase Manhattan Centre
> 1201 North Market Street, Suite 1400
> Wilmington, DE  19801

*/s/ Samuel T. Hirzel*

_____

Samuel T. Hirzel (#4415)