IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

IN RE:  ALH HOLDINGS LLC                    ) Civ. No. 04-1339-SLR
                                            ) (consolidated)
                                            )
                                            )
                                            )
                                            )
                                            )
                                            )

## MEMORANDUM ORDER

At Wilmington this 12th day of February, 2010, having previously determined that defendants must pay plaintiffs' attorney fees and expenses in connection with plaintiffs' motion to compel defendants to produce certain documents improperly withheld on grounds of privilege (D.I. 116), and having considered the materials submitted in connection therewith;

IT IS ORDERED that defendants must reimburse plaintiffs' fees and expenses in the amount of $102,675.40.

**1. Background**.  This litigation arises out of the actions taken by plaintiff directors of ALH Holdings LLC ("ALH") in selling off the subsidiaries of ALH.  Plaintiffs sought, and received, inter alia, a declaration that no breach of fiduciary duty resulted from these actions.  (D.I. 197)  The factual background of this dispute is set forth in sufficient detail in the opinion issued on December 22, 2009.  (D.I. 196)  The relevant context for purposes of this memorandum order consists of defendants' actions during the discovery phase and, more specifically, the deficiencies in defendants' assertions of privilege.

a. Plaintiffs began to question defendants' privilege assertions after receiving defendants' first privilege logs. (D.I. 119, ex. E) A series of correspondence between the parties led defendants to submit revised privilege logs and release additional documents previously withheld on grounds of privilege.[1] Defendants' revised privilege logs failed to completely address the identified deficiencies.

b. On February 1, 2007, plaintiffs moved to compel the production of certain documents reflected in the over 1,100 entries on defendants' revised privilege logs ("the motion to compel").[2] (D.I. 116) Defendants responded by withdrawing the assertion of privilege from some documents, but refused to produce any that contained the communications of attorney Isaac Neuberger ("Neuberger").[3] Defendants' privilege logs, revised a second time, indicated that the 1,100 entries corresponded to 263 distinct documents. The court granted the motion to compel in part and permitted plaintiffs to identify 36 documents listed on defendants' privilege logs for *in camera* inspection. (D.I. 145) The court cautioned that "if the court determines from a review of this sample of documents that the claim of privilege has been inappropriately asserted, the court shall grant further relief." (*Id.*)

c. Upon conclusion of its review, the court ordered defendants to produce

---

[1]The subsequently released documents contained no legal advice. Some were seemingly withheld solely because they contained inflammatory language directed at plaintiffs. (*Id.*, exs. I, J)

[2]Plaintiffs alleged that these documents essentially consisted of business and not legal advice.

[3]As set forth in the background of the December 22, 2009 opinion, it is evident that Neuberger, the trustee of an entity heavily invested in ALH, acted primarily in a business capacity in connection with ALH.

each of the 36 documents, holding that (1) the documents reflected business, not legal concerns, (2) Neuberger was acting in a business capacity and not as a lawyer in connection with many of his communications, and (3) that a "few sentences . . . arguably did relate to legal advice." (D.I. 151)

d.  Defendants did not produce any of the 36 documents until May 3, 2007, two business days before trial was originally scheduled to commence and one week after the court's order.[4] The information contained in these belatedly produced documents led to plaintiffs' amendment of the complaint to add a claim for bad-faith litigation. (See PTX 148)  On May 4, 2007, plaintiffs filed a motion requesting, inter alia, immediate production of the remainder of the documents on defendants' privilege logs; an award of plaintiffs' attorney fees and expenses in connection with the motion pursuant to Fed. R. Civ. P. 37(a)(5)(A); and leave to amend the pretrial order to include a claim for attorney fees and expenses pursuant to the bad faith exception to the American Rule ("the motion for further relief").  (D.I. 153)  Defendants responded to the motion for further relief, but requested additional time to brief the issue more fully at a later date.  (D.I. 154)

e.  Counsel for defendants notified the court that the motion for further relief created a possible conflict position that would preclude him from continuing the trial until he spoke with his malpractice insurance carrier, clients and partners.  (D.I. 156)  In light of this potential conflict, the court postponed the trial from the originally scheduled May 9, 2007 start date.  (Id.)  In the interim, defendants requested, and

---

[4]Rather, defendants emailed an emergency request for clarification of the court's order, which the court subsequently denied.

received, the opportunity to argue the motion to compel.  In connection with this argument, defendants submitted the remainder of the disputed documents for *in camera* inspection.  (*Id.*)

   f.  On May 15, 2007, the court entered an order requiring defendants to produce all but one of the remaining 227 disputed documents.  (D.I. 158)  Many of the documents withheld were highly detrimental to defendants' position.[5]  The court subsequently granted the motion for further relief, finding that defendants' privilege log was not compiled with substantial justification so as to obviate the assessment of attorney fees.  (D.I. 165)  Accordingly, the court noted that "[i]t is appropriate for defendants to pay plaintiffs their attorney fees and expenses" and ordered plaintiffs to "submit for the court's review (with copies to defendants) the underlying documentation for the attorney fees and costs claimed by plaintiffs."  (*Id.*)  Plaintiffs have submitted documentation associated with an application for $102,675.40 in fees and expenses ("the application").[6]  The parties have fully briefed the application.  (D.I. 169; D.I. 172; D.I. 173)

---

[5]For example, an email from defendant Abraham Arenson ("Arenson"), the Class B representative on ALH's Supervisory Board, to Neuberger (and other Class B members) relates a conversation between Arenson and George Buchler ("Buchler"), a plaintiff director of ALH, regarding the sale of an ALH subsidiary.  Defendants' claim that plaintiffs breached fiduciary duties in the sale of ALH's subsidiaries is belied by Arenson's admission that "I told [Buchler] that the [Class B members] were not interested in going above 3 million [to purchase plaintiffs' interest in ALH], and that [Buchler] should go ahead with the sale."  (DTX 293)

[6]This amount reflects plaintiffs' initial request for $80,305.00 in fees and $3,624.41 in expenses, (D.I. 169 at 2), as well as an additional $18,746.00 in fees and expenses in connection with efforts required to respond to defendants' continued objections to plaintiffs' application for attorney fees.  (D.I. 173 at 25)

4

**2. Standard of Review.** The court calculates attorney fees pursuant to the "lodestar" approach. *Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000). The lodestar amount results from multiplying the amount of time reasonably expended by reasonable hourly rates. *Id.* The court may exclude from the lodestar calculation unnecessary hours or hours that lack proper documentation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The prevailing community market rates assist the court in determining a reasonable hour rate. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The prevailing party bears the burden of establishing the reasonableness of both the time expended and the hourly rates. *Hensley*, 461 U.S. at 434; *Blum*, 465 U.S. at 895 n.11.

b. Calculation of the lodestar does not end the inquiry, as the court may adjust the lodestar upward or downward. A district court may use twelve factors[7] (the "Johnson factors") to adjust the lodestar. *Hensley*, 461 U.S. at 434. A court "can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Hensley*, 461 U.S. at 434-37). A court may not sua sponte reduce a request for attorney fees. *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 719 (3d Cir. 1989). However, "the district court retains a great deal of discretion in deciding what a reasonable fee award is, so

---

[7]The twelve factors are:  (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

long as any reduction is based on objections actually raised by the adverse party." *Id.* at 721. The party who asks for the fees to be adjusted has the burden of proving an adjustment is necessary. *Stenson*, 465 U.S. at 898.

**3. Discussion**. Defendants object to the amount of fees set forth in the application, requesting that the court deny the award in full or, alternatively, substantially reduce the award. In support of these requests, defendants assert that the application suffers from a lack of specificity as to properly documented time expended, as well as unreasonable rates and excessive time expenditures. The court addresses each alleged defect in turn.

a. Defendants argue that the lack of specificity creates significant doubt as to whether the time submitted by plaintiffs relates to or, if so, was reasonably spent upon, the motion to compel and the motion for further relief (collectively, "the motions"). The Third Circuit has explained that the evidentiary burden born by a fee petitioner includes

> some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates. However, it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney. A fee petition is required to be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed.

*Rode*, 892 F.2d at 1190 (internal citations omitted). In support of the application, plaintiffs have submitted time diaries that reflect the time spent by the individual attorneys associated with this litigation, as well as a general description of the task associated with each entry. While some of the task descriptions in the time diaries are

6

less descriptive than others,[8] these entries occur contemporaneously with the time period that counsel would have been expected to address the motions. Accordingly, the court is satisfied that plaintiffs have supported the application with information "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Id.*

b. The court turns next to the reasonableness of plaintiffs' counsel's hourly rates. The Third Circuit has endorsed the use of an attorney's usual billing rate as a starting point in the reasonableness inquiry. *Public Interest Research Group v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995). These hourly rates represent "the price that [an attorney's] time normally commands in the marketplace for legal services in which those services are offered." *In re Fine Paper Antitrust Litigation*, 751 F.2d 562, 590 (3d Cir. 1984) (citing *Hensley*, 461 U.S. at 447). The hourly rates of counsel who billed time to the motions range from an associate's $160 per hour to a senior partner's $675 per hour.

c. The court "is presumed knowledgeable as to the fees charged by attorneys in general and as to the quality of legal work presented to [it] by particular attorneys." *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 169 (3d Cir. 1973). As a general matter, plaintiffs' counsel are seasoned and well respected litigators. Insofar as performance specific to this action is concerned, counsel have achieved almost unilateral success for plaintiffs. Moreover,

---

[8]Defendants take issue with several labels, including "conference," "telecalls," "document review," "trial," "legal research," and "writing memorandum." (D.I. 172, ex. B)

the rates charged by plaintiffs' counsel are commensurate with those charged by Wilmington counsel of similar stature in similar matters.  Therefore, the court finds that an inference of reasonableness is present in the quality of counsel's legal work, both in general and specific to this matter, as well as counsel's conformity with the hourly rates of the relevant market.

        d.  Plaintiffs' timely and complete payment of all legal fees further support a finding that plaintiffs' counsel command reasonable hourly rates.  Plaintiffs' fee arrangement with counsel was not based on a contingency, and plaintiffs had no guarantee of success.  Yet plaintiffs remitted payment to counsel on an ongoing basis. Assuming that plaintiffs are economically rational actors, the willingness of plaintiffs to maintain this arrangement with counsel suggests the reasonableness of hourly rates charged in light of the risk presented.  *See Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 547 (Del. 1998) (finding no error in the Court of Chancery's correlation between the reasonableness of hourly rates and a litigant's commitment to paying fees irrespective of the outcome of the litigation); *see also Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) (recognizing that clients are generally economically rational and will not pay for unreasonable legal fees).

        e.  The court similarly finds that counsel expended a reasonable amount of time in connection with the motions.  Defendants exhibited resistance at every step of the discovery dispute, amplifying the time plaintiffs' counsel required to address these issues.  Indeed, the delay caused by defendants' slow release of documents is appropriately reflected in the approximately 300 hours billed by plaintiffs' counsel. Moreover, while any motion that entails the review of depositions or documents involves

some work that might also be done in other contexts, the court is unable to identify any excessively duplicative items in counsel's time diaries.

f.  Defendants are similarly liable for the time expended by plaintiffs' counsel to establish the reasonableness of its fees. *See, e.g., Rode*, 892 F.2d at 1190 (including at least 35 hours for time incurred in preparing fee petition); *Howes v. Medical Components, Inc.*, 761 F. Supp. 1193, 1201 (E.D. Pa. 1990) (awarding fees including 204.5 hours spent on the fee petition).

g.  Insofar as defendants have not demonstrated any justification for reducing this award, the *Johnson* factors do not mandate a downward adjustment. Neither do the Johnson factors warrant an upward adjustment, as $102,675.40 is "reasonable in light of the results obtained." *Rode,* 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 434-37).  Consequently, the court finds no reason to deviate from the requested amount of $102,675.40, which represents plaintiffs' reasonable attorney fees.

**4. Conclusion**.  For the forgoing reasons, the court grants plaintiffs' motion for further relief and awards plaintiffs $102,675.40 in attorney fees.

United States District Judge